# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **PHILLIP CALLAIS, et al.,** <br><br> **Plaintiffs,** <br><br> vs. <br><br> **NANCY LANDRY, in her official capacity as Louisiana Secretary of State,** <br><br> **Defendant.** | Case No. 3:24-cv-00122-DCJ-CES-RRS |

## MOTION TO INTERVENE

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 2

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT .................................................................................................................................. 5

    I.    Proposed Intervenors are entitled to intervention as of right. .............................................. 6

        A.    This motion is timely. ................................................................................................. 6

        B.    Proposed Intervenors maintain significant interests in this action .............................. 6

        C.    The disposition of this case may impair Proposed Intervenors' significant interests. ................................................................................................. 8

        D.    No other party adequately represents Proposed Intervenors' interests. ........................ 9

    II.    Proposed Intervenors satisfy the requirements for permissive intervention. ..................... 11

CONCLUSION ............................................................................................................................. 12

CERTIFICATE OF SERVICE AND CONSENT SOUGHT ....................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Milligan*,
    599 U.S. 1 (2023).................................................................................................................3

*Ardoin v. Robinson*,
    142 S. Ct. 2892 (2022)..........................................................................................................3

*Ardoin v. Robinson*,
    143 S. Ct. 2654 (2023)..........................................................................................................3

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ......................................................................................7, 10, 11

*Chiglo v. City of Preston*,
    104 F.3d 185 (8th Cir. 1997) ...............................................................................................11

*Galmon v. Ardoin*,
    No. 3:22-cv-00214-BAJ-RLB (M.D. La. Mar. 30, 2022)......................................................2

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ......................................................................................5, 6, 8, 9

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    999 F.2d 831 (5th Cir. 1993) .................................................................................................7

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) .................................................................................................8

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022)...............................................5, 10

*Robinson v. Ardoin*,
    605 F. Supp. 3d 759 (M.D. La. 2022).............................................................3, 4, 5, 8, 9, 10

*Robinson v. Ardoin*,
    86 F.4th 574 (5th Cir. 2023) .........................................................................................3, 4, 7

*Robinson v. Ardoin*,
    No. 22-30333 (5th Cir. June 11, 2022) .................................................................................4

*Robinson v. Ardoin*,
    No. 3:22-cv-00211-SDD-SDJ (M.D. La.) ....................................................................3, 5, 9

*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) ...................................................................................6

*Shaw v. Hunt*,
    517 U.S. 899 (1996)...................................................................................................9

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ....................................................................................7

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)...................................................................................................9

*United States v. City of New Orleans*,
    540 Fed. App'x 380 (5th Cir. 2013) ......................................................................11

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ..............................................................................6, 11

**Statutes**

52 U.S.C. § 10301..............................................................................................................1

**Constitutional Provisions**

La. Const. art. IV, § 7....................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 24..........................................................................................1, 5, 6, 7, 11, 12

*Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting*
    (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-
    special-session-on-court-ordered-redistricting.  .....................................................4

Local Rule 7.6....................................................................................................................2

For two long years, Louisiana voters Edward Galmon, Sr., Ciara Hart, Norris Henderson, and Tramelle Howard (collectively, "Galmon Movants") have pursued what the Voting Rights Act promises them: a second congressional district in their state where Black voters like themselves have an equal opportunity to elect their candidates of choice (*i.e.*, a second "Black-opportunity district"). *See* 52 U.S.C. § 10301. In 2022, they took this claim to federal court, promptly secured preliminary relief, and then weathered just about every twist and turn that civil litigation can take—three different Fifth Circuit panels, two emergency applications to the Supreme Court, and one year-long stay that compelled them to vote in unlawful districts in the 2022 midterm elections. Finally, they won the electoral opportunity to which they are entitled when, on January 22, 2024, Louisiana's political branches accepted that Galmon Movants' legal claim would ultimately prevail and enacted a new districting plan that made Congressional District ("CD") 6 the state's second Black-opportunity district.

There is now only one obstacle standing between Galmon Movants and the relief that they won: this action. Plaintiffs here ask the Court to declare the new map unconstitutional and enjoin its use, which would perpetuate the very injury that Galmon Movants have worked so hard, for so long, to lift. Galmon Intervenors hereby seek to intervene to protect their interests from the devastating outcome that Plaintiffs seek. Joining them in this motion is Dr. Ross Williams, a Black resident of Natchitoches Parish. His parish was previously in CD 4, a majority-white district where Black voters had no meaningful opportunity to elect their preferred candidates. But Natchitoches Parish is included in the newly drawn CD 6, where he is afforded the very opportunity that Plaintiffs now seek to prevent.

Rule 24(a) entitles Galmon Movants and Dr. Williams (collectively, "Proposed Intervenors") to intervene as of right. As required, this motion is timely, following almost

1

immediately after Plaintiffs filed suit. Any success that Plaintiffs achieve in blocking the Defendant Secretary of State from administering congressional elections under the new map will directly impair Proposed Intervenors' interests in preserving both their own voting rights and the victory that Galmon Movants achieved as a result of their litigation. Finally, no other party adequately represents the interests that Proposed Intervenors seek to vindicate. Plaintiffs are explicitly hostile to the imperative of a second Black opportunity congressional district, and the Secretary—far from representing Proposed Intervenors' interests—has actively opposed them for two years in court.

Alternatively, the Court should grant Proposed Intervenors permissive intervention. Proposed Intervenors will raise defenses inextricably intertwined with issues previewed in Plaintiffs' complaint, and their participation will enhance the Court's ability to resolve those issues without causing any undue prejudice or delay. Because all elements of intervention are satisfied, the motion should be granted.[1]

## BACKGROUND

On March 30, 2022, Galmon Movants filed a complaint in the Middle District of Louisiana alleging that the congressional map then in place violated Section 2 of the Voting Rights Act because it failed to include a second district where Black Louisianians would have an opportunity to elect their candidates of choice (*i.e.*, a second "Black-opportunity district"). Complaint, *Galmon*

---

[1] As required by Local Rule 7.6, Proposed Intervenors presented their proposed Answer to counsel for Plaintiffs and sought consent to this motion. Counsel for Plaintiffs indicated that they oppose intervention while the first-filed motion in the Middle District action remains pending. Proposed Intervenors have not been able to identify counsel for Defendant to seek her position. Counsel inquired on February 5 whether the private counsel representing her in the Middle District action will also represent her here, but as of this filing Proposed Intervenors have not received confirmation.

*v. Ardoin*, No. 3:22-cv-00214-BAJ-RLB (M.D. La. Mar. 30, 2022), ECF No. 1.[2] To support their claim, Galmon Movants submitted a series of illustrative maps showing that, in addition to a New Orleans-based district, a second compact majority-Black district could be drawn that unites Baton Rouge and the delta parishes along the Mississippi River. *See Robinson v. Ardoin*, 605 F. Supp. 3d 759, 771–72 (M.D. La. 2022), *preliminary injunction vacated*, 86 F.4th 574 (5th Cir. 2023). On June 6, 2022, the district court determined that Galmon Movants and other consolidated plaintiffs were "substantially likely to prevail on the merits of their claims" and preliminarily enjoined the existing map. *Id.* at 766.

The Supreme Court stayed this injunction for a full year while it adjudicated a similar dispute out of Alabama. *See Ardoin v. Robinson*, 142 S. Ct. 2892 (2022) (mem.) (granting stay); *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023) (mem.) (vacating stay). In the Alabama litigation, the Court ultimately determined that the plaintiffs' methods of proving a Section 2 violation—parallel to those employed by Galmon Movants in the Middle District—were not foreclosed by the Constitution's restrictions on racial gerrymandering. *Allen v. Milligan*, 599 U.S. 1, 41–42 (2023).[3] After the Supreme Court vacated its stay, the appeal of the Louisiana preliminary injunction continued in the Fifth Circuit. In the proceeding most relevant here, that court determined that the "district court did not clearly err in its necessary fact-findings nor commit legal error in its conclusions that the Plaintiffs were likely to succeed on their claim that there was a violation of Section 2 of the Voting Rights Act." *Robinson,* 86 F.4th at 583. But because the next congressional elections were no longer imminent, the Fifth Circuit concluded that the urgency of adopting a new

---

[2] This case was later consolidated with *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La.) (the "Middle District action").

[3] By Plaintiffs' definition, the Alabama action and the Middle District action are "Goose" cases. *See* Compl. 3.

map had lifted. *Id.* at 600–01. The court vacated the preliminary injunction and remanded to the district court with instructions to provide the Louisiana Legislature additional time to enact a new remedial congressional districting plan before commencing trial. *Id.* at 601–02.

For much of this Section 2 litigation, Jeff Landry opposed Galmon Movants' efforts to achieve a second Black-opportunity district. In his official capacity as Attorney General, representing Intervenor-Defendant the State of Louisiana, he sought to prevent, and then overturn, the preliminary injunction. *See* State's Combined Opp'n to Pls.' Mots. for Prelim. Inj., *Robinson*, No. 3:22-cv-00211-SDD-SDJ (M.D. La Apr. 29, 2022), ECF No. 108; Appellants' Opening Br., *Robinson v. Ardoin*, No. 22-30333 (5th Cir. June 11, 2022), ECF No. 155. But on January 8, 2024, Landry assumed office as Louisiana's Governor, explained that he had "exhausted ALL legal remedies" to avoid the relief sought by Galmon Movants, and called a special legislative session to redraw the state's congressional districts. Office of the Governor, *Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting* (Jan. 16, 2024)[4]; Compl. 9–10. Legislators introduced a variety of district configurations. Eventually the Legislature, with the Governor's support, coalesced around a configuration that created a second district in which Black voters would have an opportunity to elect their preferred candidates while also achieving the Legislature's political goals by connecting Baton Rouge with Shreveport. The new map passed by the Legislature and signed by the Governor contains two majority-Black districts, as Galmon Movants sought.

Plaintiffs in this action now seek to duplicate litigation over Louisiana's congressional maps—Galmon Movants' action in the Middle District is still pending—and repeal the progress

---

[4] Available at https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting.

4

that Galmon Movants won in securing a map with two Black opportunity districts. Plaintiffs filed their complaint on January 31, 2024, and this motion to intervene follows four business days later.[5]

## LEGAL STANDARD

Rule 24 provides for intervention as of right and permissive intervention. Fed. R. Civ. P. 24(a), (b). As relevant here, a proposed party may intervene as of right where it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." *Id.* 24(a)(2). Even where proposed parties are not entitled to intervention, the court may permit intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact," so long as intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(1), (3).

"It is the movant's burden to establish the right to intervene, but Rule 24 is to be liberally construed." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (cleaned up) (reversing denial of intervention). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Id.* (cleaned up); *see also see Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *4 (5th Cir. Mar. 22, 2022) (reversing denial of intervention and noting Fifth Circuit's "broad policy favoring intervention" and the intervenors' "minimal" burden).

## ARGUMENT

---

[5] On February 5, 2025, Galmon Movants moved the Court in the Middle District action to deem the action filed there "first-filed" relative to this one for purposes of the first-filed rule. *See Robinson*, No. 3:22-cv-00211-SDD-SDJ, ECF No. 345. Regardless of where this case ultimately is adjudicated, Proposed Intervenors seek intervention to ensure they have an opportunity to participate in this substantially related case.

5

I.  **Proposed Intervenors are entitled to intervention as of right.**

Rule 24 requires courts to grant intervention where four elements are satisfied:

(1) the application for intervention must be timely;

(2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and

(4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*La Union del Pueblo Entero*, 29 F.4th 299 at 305. Proposed Intervenors meet each of these requirements.

A.  **This motion is timely.**

Courts consider four factors to determine whether a motion to intervene is timely: "the length of time the movant waited to file, the prejudice to the existing parties from any delay, the prejudice to the movant if intervention is denied, and any unusual circumstances." *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021). This motion is undoubtedly timely, as the complaint was filed merely six days ago, there is not yet a scheduling order, and this is the first motion to be docketed. Because there has been no delay, Plaintiffs cannot claim any prejudice from delay; Proposed Intervenors, in contrast, would be severely prejudiced if intervention is denied, as explained below. In short, this motion is filed well within the period that courts consider timely. *See, e.g.*, *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565–66 (5th Cir. 2016) (reversing denial of intervention and deeming motion to intervene timely even when filed after discovery had commenced).

B.  **Proposed Intervenors maintain significant interests in this action.**

Proposed Intervenors' direct interest in the configuration of Louisiana's congressional map satisfies the second requirement for intervention as of right. This element does not require movants

6

to identify a property interest, pecuniary interest, or even a legally enforceable interest. *Texas v. United States*, 805 F.3d 653, 658–59 (5th Cir. 2015). Rather, "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Id.* Additionally, Rule 24(a)'s "interest requirement may be judged by a more lenient standard if the case involves a public interest question." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (cleaned up) (reversing denial of intervention).

The Galmon Movants maintain an interest in any action, including this one, that relates to the number of congressional districts in Louisiana where Black voters have the opportunity to elect their candidates of choice—the very issue they have been litigating in the Middle District for the past two years. Indeed, Plaintiffs' complaint makes clear that the map they challenge would not exist but for Galmon Movants' successful efforts in that related action. *See* Compl. 8–10 (introducing Middle District litigation as predicate for new map). As that related litigation demonstrates, Galmon Movants' interests in preserving the voting opportunities created by the new map are rooted in federal law, and thus necessarily give rise to a legally protectable interest: Both the district court and the Fifth Circuit recognized that Galmon Movants were likely to prevail on their Section 2 claim, which would *require* a second opportunity district for Black voters. *See Robinson*, 86 F.4th at 583 (affirming district court on this point). Dr. Williams, in turn, maintains a particular interest in the new map because it has drawn him and his fellow Black residents of Natchitoches Parish into a district where, for the first time, they have an opportunity to elect their congressional candidates of choice.

Further, redistricting is a quintessential matter of public interest, and affected voters are regularly granted intervention in actions challenging that districting. *See, e.g.*, *League of United*

7

*Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 845 (5th Cir. 1993) (en banc) (recognizing judges had standing as voters to intervene in action challenging single-district system for judicial elections); *cf. League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention to voters in action seeking to modify consent decree reached in related Section 2 litigation). Proposed Intervenors easily satisfy this lenient element.

### C. The disposition of this case may impair Proposed Intervenors' significant interests.

To satisfy the third element, Proposed Intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307. Here, the possibility of impairment is extremely high. This action does not merely *concern* the second Black-opportunity district that the new map creates; Plaintiffs' entire goal is to *dismantle* and *eliminate* it. *See* Compl. 8 (urging Court to "declare this map invalid and enjoin its use" *because of* second majority-Black district). If successful, Plaintiffs' action would eviscerate the victory for Black voters that Galmon Movants secured after 22 months of vigorous litigation.

Additionally, any injunction that Plaintiffs achieve would inflict an especially grievous injury on Dr. Williams and Tramelle Howard, who each live in areas that are now assigned to Congressional District 6, the new Black-opportunity district created by the new map. *See* Compl. 15–16. Natchitoches Parish, where Dr. Williams resides, was previously assigned to CD 4, a majority white district. And Mr. Howard resides in an area of Baton Rouge that was unlawfully packed with Black voters in the previous congressional map. *See Robinson*, 605 F. Supp. 3d at 781 (recounting conclusion of Galmon Movants' expert that congressional plan packed Black voters);

8

*id.* at 826–27 (crediting Galmon Movants' expert).[6] Thus, the only way that Plaintiffs can achieve their desired outcome is by casting Dr. Williams and Mr. Tramelle back into districts where their voting strength is diluted. *See Shaw v. Hunt*, 517 U.S. 899, 914 (1996) (recognizing that a districting map that "fragments" or "packs" members of the minority population "and thereby dilutes the voting strength" of those members may violate the Voting Rights Act). Thus, the significant impairment that Plaintiffs' action threatens is sufficient to warrant intervention under this element.

### D. No other party adequately represents Proposed Intervenors' interests.

Finally, the existing parties to this action will not adequately represent Proposed Intervenors' interests. Proposed Intervenors "'need not show that the representation by existing parties will be, for certain, inadequate,' but instead that it *may* be inadequate." *La Union del Pueblo Entero*, 29 F.4th at 307–08 (quoting *Texas,* 805 F.3d 653, 661 (5th Cir. 2015)). The Supreme Court has explained that "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972).

Here, the fact that Proposed Intervenors do not have "the same ultimate objective as a party to the lawsuit," and that their "'interest is in fact different from that of the' governmental party" named as defendant, suffices to defeat any presumption that may weigh in favor of adequate representation in other contexts. *La Union del Pueblo Entero*, 29 F.4th at 308 (quoting *Texas*, 805 F.3d at 661–62). Plaintiffs' objective, after all, is to destroy Louisiana's second Black-opportunity district; Proposed Intervenors' objective is to save it. And for the entirety of the Middle District action, Louisiana's Secretary of State, who is also the named defendant there, has opposed Galmon

---

[6] Mr. Tramelle's declaration identifying his home address is available on the Middle District docket. *See* Decl. of Pl. Tramelle Howard, *Robinson*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Apr. 15, 2022)*,* ECF No. 50-4.

9

Movants' efforts to secure a second Black-opportunity district. *See, e.g.*, Def.'s Opp'n to Pls.' Mots. For Prelim. Inj., *Robinson*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Apr. 29, 2022), ECF No. 101. While the occupant of that office changed last month, the duties of the position remain the same. The Secretary of State is charged with preparing and certifying ballots, promulgating election returns, and administering a variety of election laws. La. Const. art. IV, § 7. Notably, none of the Secretary's official interests pertains to championing any particular configuration of congressional boundaries—let alone the districts' racial composition—and therefore Galmon Movants' interests and the Secretary's interests "may not align precisely." *Brumfield*, 749 F.3d at 345.

Even if the Secretary intends to defend the newly enacted map, a shared goal is not the same as shared interests. *See Miller*, 2022 WL 851782, *3–4 (5th Cir. Mar. 22, 2022) (reversing denial of intervention even though proposed intervenor and government defendant shared ultimate objective in defending challenged policy from claim that it unconstitutionally advantaged racial minorities). In *Brumfield*, for example, plaintiffs named Louisiana's superintendent of public education as a defendant in their effort to enjoin the state from awarding certain school vouchers, and parents whose children received those vouchers sought to intervene. *See Brumfield*, 749 F.3d at 340. The Fifth Circuit reasoned that, "[a]lthough both the state and parents vigorously oppose dismantling the voucher program . . . . [t]he state has many interests in this case," including maintaining relationships with the federal government and courts, that were not shared by the parents. *Id.* at 345–46. Thus, "[w]e cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation," the court concluded, "but surely they might, which is all that the rule requires." *Id.* Similarly here, any interests that the Secretary does pursue in defense of the new enacted map will necessarily differ from those of Black Louisianians, like Proposed

10

Intervenors, who seek to vindicate their own electoral opportunities and secure the fruits of the victory that Galmon Movants achieved over the Secretary's opposition in the Middle District action. This "lack of unity in all objectives" is sufficient to demonstrate that representation may be inadequate, and so this final requirement is also satisfied. *Id.* at 346; *cf. Chiglo v. City of Preston*, 104 F.3d 185, 187–88 (8th Cir. 1997) ("If the citizen stands to gain or lose from the litigation in a way different from the public at large, the *parens patriae* would not be expected to represent him.").

## II. Proposed Intervenors satisfy the requirements for permissive intervention.

Rule 24 also authorizes courts to grant permissive intervention to proposed intervenors who may not qualify as of right. Fed. R. Civ. P. 24(b). "Permissive intervention is left to the discretion of the district court, and is appropriate when the intervention request is timely, the intervenor's 'claim or defense and the main action have a question of law or fact in common,' and granting intervention will not unduly delay or prejudice the original parties in the case." *United States v. City of New Orleans*, 540 Fed. App'x 380, 381 (5th Cir. 2013) (quoting Fed. R. Civ. P. 24(b)(2)). As with intervention as of right, the rule on permissive intervention "is to be liberally construed." *Wal-Mart Stores*, 834 F.3d at 565 (quoting *Texas*, 805 F.3d at 656).

Proposed Intervenors check each of these boxes. This motion remains timely, as the case has only just begun. The thrust of their anticipated defense—that federal law requires Louisiana to create a second Black-opportunity district, and evidence will indicate that the Legislature was predominately motivated by purposes unrelated to race in choosing the new district's specific contours—is inextricably bound up with the legal and factual issues presented by the main action. And granting intervention will not unduly delay or prejudice the original parties. Galmon Movants are intimately familiar with Louisiana's redistricting process and the relevant law given their successful litigation in the Middle District. Proposed Intervenors' participation in this case will

11

simply ensure that a robust defense of the congressional map's second majority-Black district is offered by the very voters who have demanded it, achieved it, and now expect to benefit from it.

## CONCLUSION

For the reasons stated above, Proposed Intervenors respectfully request that the Court grant their motion to intervene as a matter of right under Rule 24(a)(2), or, in the alternative, permit them to intervene under Rule 24(b).

Respectfully submitted this February 6, 2024.

By: /s/*Abha Khanna*

J. E. Cullens, Jr.  
Andrée Matherne Cullens  
S. Layne Lee  
WALTERS, THOMAS, CULLENS, LLC  
12345 Perkins Road, Bldg. One  
Baton Rouge, LA 70810  
(225) 236-3636

Abha Khanna*  
ELIAS LAW GROUP LLP  
1700 Seventh Ave. Suite 2100  
Seattle, Washington 98101  
(206) 656-0177  
akhanna@elias.law

Lalitha D. Madduri*  
Jacob D. Shelly*  
Daniel Cohen*  
Qizhou Ge*  
ELIAS LAW GROUP LLP  
250 Massachusetts Ave, NW Suite 400  
Washington, D.C. 20001  
(202) 968-4490  
lmadduri@elias.law  
jshelly@elias.law  
dcohen@elias.law  
age@elias.law

\* *Pro hac vice* application forthcoming

Counsel for Proposed Intervenors

## CERTIFICATE OF SERVICE AND CONSENT SOUGHT

I hereby certify that on February 6, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system. Additionally, counsel for Plaintiffs were advised by electronic email on February 5, 2024, of this filing and were provided with Proposed Intervenors' proposed Answer. Counsel for Plaintiffs indicated they oppose intervention unless Galmon Movants withdraw their first-filed motion in the Middle District action (which Galmon Movants do not intend to do). Despite contacting Defendant's attorneys in the Middle District action, Proposed Intervenors have been unable to identify counsel for Defendant in this matter.

*/s/Abha Khanna*
Abha Khanna

*Counsel for Proposed Intervenors*
