**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION**

PHILLIP CALLAIS, LLOYD PRICE,
BRUCE ODELL, ELIZABETH ERSOFF,
ALBERT CAISSIE, DANIEL WEIR,
JOYCE LACOUR, CANDY CARROLL
PEAVY, TANYA WHITNEY, MIKE
JOHNSON, GROVER JOSEPH REES,
ROLFE MCCOLLISTER,

               *Plaintiffs*,

    v.

NANCY LANDRY, in her official capacity
as Secretary of State for Louisiana,

               *Defendant*.

Civil Action No. 3:24-cv-00122

Judge David C. Joseph

Circuit Judge Carl E. Stewart

Judge Robert R. Summerhays

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO INTERVENE AS DEFENDANTS AND TO TRANSFER</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 7

    I.      Movants Should Be Granted Intervention ............................................. 8

        A.     Movants Are Entitled to Intervene as of Right ......................... 8

            1.    This Motion is Timely ................................................... 9

            2.    Movants Have A Strong Interest in the Maintenance of Two Majority-Black Congressional Districts in Louisiana and in Protecting the Legal Rulings in Their Favor in *Robinson*. ................................................................. 10

            3.    Disposition of Plaintiffs' Racial Gerrymandering Claims Would Impair Movants' Opportunity to Elect a Candidate of Choice ..................................................................... 12

            4.    The Existing Parties Do Not Adequately Represent Movants' Interests .......................................................... 14

        B.     In the Alternative, the Court Should Grant Permissive Intervention ........ 17

    II.    This Case Should Be Transferred to the Middle District of Louisiana ................. 18

CONCLUSION .................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amerijet Int'l, Inc.*,
    785 F.3d 967 (5th Cir. 2015) ..................................................................................19

*State* v. *Biden*,
    538 F. Supp. 3d 649 (W.D. La. 2021)......................................................................19

*Brumfield* v. *Dodd*,
    749 F.3d 339 (5th Cir. 2014) ......................................................................... *passim*

*Cadle Co.* v. *Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ..................................................................................20

*City of Houston* v. *American Traffic Solutions, Inc.*,
    668 F.3d 291 (5th Cir. 2012) ..........................................................................10, 15

*Clark* v. *Putnam Cnty.*,
    168 F.3d 458 (11th Cir. 1999) ..................................................................................6

*United States* v. *Commonwealth of Virginia*,
    282 F.R.D. 403 (E.D. Va. 2012) ..............................................................................9

*Cormeum Lab Servs., LLC* v. *Coastal Lab'ys, Inc.*,
    No. CV 20-2196, 2021 WL 5405219 (E.D. La. Jan. 15, 2021) ..............................19

*Def. Distributed* v. *Platkin*,
    55 F.4th 486 (5th Cir. 2022) ..........................................................................18, 19

*Edwards* v. *City of Houston*,
    78 F.3d 983 (5th Cir. 1996) ....................................................................................9

*Energy Gulf States La., L.L.C.* v. *EPA*,
    817 F.3d 198 (5th Cir. 2016) ..................................................................................8

*Hanover Ins. Co.* v. *Superior Lab. Servs., Inc.*,
    179 F. Supp. 3d 656 (E.D. La. 2016)....................................................................17

*Harris Cnty., Tex.* v. *CarMax Auto Superstores Inc.*,
    177 F.3d 306 (5th Cir. 1999) ................................................................................19

*Int'l Fid. Ins. Co.* v. *Sweet Little Mexico Corp.*,
    665 F.3d 671 (5th Cir. 2011) ................................................................................19

*Johnson* v. *Mortham*,
915 F. Supp. 1529 (N.D. Fla. 1995)...................................................................6, 11

*Kneeland* v. *Nat'l Collegiate Athletic Ass'n*,
806 F.2d 1285 (5th Cir. 1987) ...............................................................................16

*La Union del Pueblo Entero* v. *Abbott*,
29 F.4th at 305 ........................................................................................... *passim*

*League of United Latin American Citizens, District 19* v. *City of Boerne*,
659 F.3d 421 (5th Cir. 2011) ...........................................................................11, 14

*Mullins* v. *De Soto Secs. Co.*,
3 F.R.D. 432 (W.D. La. 1944) ..................................................................................9

*N.A.A.C.P., Inc.* v. *Duplin Cnty., N.C.*,
No. 7:88-CV-00005-FL, 2012 WL 360018 (E.D.N.C. Feb. 2, 2012)....................10

*New Orleans Pub. Serv., Inc.* v. *United Gas Pipe Line Company*,
732 F.2d 452 (5th Cir. 1984) ............................................................................6, 10

*Robinson* v. *Ardoin*,
37 F.4th 208 (5th Cir. 2022) ....................................................................................3

*Robinson* v. *Ardoin*, No. 22-30333
(5th Cir. Dec. 15, 2023) ...........................................................................................2

*Robinson* v. *Ardoin*,
605 F. Supp. 759 (M.D. La. 2022)............................................................................2

*Robinson* v. *Ardoin*,
86 F.4th 574 (5th Cir. 2023) ...............................................................................3, 14

*Robinson* v. *Landry*,
No. 22-cv-211-SDD-SDJ (Apr. 29, 2022) ..............................................................16

*Robinson, et al. v. Landry*,
No. 3:22-cv-02111-SDD-SDJ (M.D. La.) ................................................................1

*Shaw* v. *Hunt*,
1993 WL 13149438 (E.D.N.C. Nov. 3, 1993)....................................................11, 13

*Salazar* v. *Bloomin' Brands, Inc.*,
No. 2:15-CV-105, 2016 WL 1028371 (S.D. Tex. Mar. 15, 2016) ..........................19

*Schauss* v. *Metals Depository Corp.*,
757 F.2d 649 (5th Cir. 1985) ..................................................................................18

*Stallworth* v. *Monsanto Co.*,
    558 F.2d 257 (5th Cir. 1977) .......................................................................9

*Students for Fair Admissions, Inc.* v. *Univ. of Tex. at Austin*,
    338 F.R.D. 364 (W.D. Tex. 2021) ...............................................................9

*Trbovich* v. *United Mine Workers of Am.*,
    404 U.S. 528 (1972).....................................................................................14

*Tex.* v. *U.S.*,
    805 F.3d 653 (5th Cir. 2015) ...........................................................8, 14, 15

*W. Gulf Mar. Ass'n* v. *ILA Deep Sea Local 24*,
    751 F.2d 721 (5th Cir. 1985) .....................................................................21

*Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ............................................................. *passim*

## Rules

Fed. R. Civ. P. 24(a) ..................................................................... *passim*

Fed. R. Civ. P. 24(a)(2)...........................................................................7

Fed. R. Civ. P. 24(b) ...................................................................6, 7, 16

Fed. R. Civ. P. 24(b)(1)..........................................................................15

Fed. R. Civ. P. 24(b)(1)(B) ....................................................................7

Fed. R. Civ. P. 24(b)(3)..........................................................................15

## Other Authorities

Attorney General Liz Murrill (@AGLizMurill), X (Jan. 16, 2024, 4:53 PM),
    https://twitter.com/AGLizMurill/status/1747376599446516056 ...........................................15

*Governor Jeff Landry Opens First Special Session on Court Ordered
    Redistricting* (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-
    landry-opens-first-special-session-on-court-ordered-redistricting ................................2, 3, 15

Kelsey Brugger, *Garret Graves defiant as state lawmakers cut up his district*,
    E&E NEWS (Jan. 19, 2024), https://www.eenews.net/articles/garret-graves-
    defiant-as-state-lawmakers-cut-up-his-district/ .......................................................5

Piper Hutchinson, *Graves to lose U.S. House seat under Louisiana redistricting plan that adds minority seat*, *Legislature*, Shreveport Times (Jan. 23, 2024), https://www.shreveporttimes.com/story/news/2024/01/23/garret-graves-blasts-new-louisiana-congressional-map-as-boneheaded-move-by-governor-jeff-landry/72318012007/ ...............................................................................................5

Senate Bill 8 ........................................................................................................ *passim*

Statement of Senator Womack
    https://redist.legis.la.gov/default_video?v=house/2024/jan/0118_24_HG_P2 ....................5, 6

## PRELIMINARY STATEMENT

Proposed Intervenor-Defendants ("Movants") are Black Louisiana voters and civil rights organizations.  For nearly two years, they have been actively—and successfully—pursuing claims under Section 2 of the Voting Rights Act ("VRA") in the pending case of *Robinson, et al.* v. *Landry*, No. 3:22-cv-02111-SDD-SDJ (M.D. La.).   In *Robinson*, Movants seek to compel Louisiana to adopt a congressional district map with two districts that will give Louisiana's Black voters an equal opportunity to elect candidates of their choice.  As a direct consequence of multiple court rulings in their favor on the merits of their Section 2 claims, the Legislature enacted and the Governor signed Senate Bill 8 ("SB8") to provide for new congressional districting plan with two majority-Black districts. Any changes to the SB8 map that may result from decisions in this case would directly implicate the relief Movants have sought and secured in *Robinson*.

Both *Robinson* and this case center on the same core question: must Louisiana draw a congressional plan with two opportunity districts for Black voters?  The district court in *Robinson* has held that it likely must, and two unanimous panels of the Fifth Circuit agreed with that conclusion.  Each of those courts has likewise rejected the State's argument that any efforts to draw a second majority-Black district would require the unconstitutional elevation of race as a predominant districting consideration.  Plaintiffs here, meanwhile, contend that Louisiana need not draw a second majority-Black district, and in fact that it cannot constitutionally do so.

Movants should be granted leave to intervene because they have a strong interest in defending the *Robinson* courts' core factual findings and legal conclusions against the claims in this case that SB8—or any other congressional map with two majority-Black districts—represents an unconstitutional racial gerrymander.  They also have a direct interest in ensuring that a map with a second congressional district in which Black voters have an opportunity to elect the candidate of their choice remains in place for the 2024 congressional election. Plaintiffs' challenge

to SB8 should fail because the shape of the district they challenge represents predominately political rather than racial choices. Moreover, even if Plaintiffs are successful in striking down SB8, this Court would be required to devise a remedial map that complies with Section 2 and the rulings in favor of Movants in *Robinson*, which demonstrate that Louisiana could easily create a second constitutional Black opportunity district consistent with traditional redistricting principles.

Additionally, this case should be transferred to the Middle District of Louisiana, given the ongoing nature of the *Robinson* proceeding and the likelihood that *Robinson* will continue if SB8 is invalidated, to avoid the possibility of conflicting rulings by different courts regarding the same map and duplication of effort with that court.[1]

## BACKGROUND

The map at issue in this case, SB8, is the direct result of Movants' successful litigation of the *Robinson* action.  Office of the Governor, *Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting* (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting.  After a week-long evidentiary hearing, during which the district court reviewed 244 exhibits and heard and weighed testimony from 22 witnesses, and based on extensive pre- and post-hearing briefing, Chief Judge Shelly Dick in the Middle District of Louisiana granted Movants a preliminary injunction enjoining enforcement of the State's previous congressional district plan, concluding that Movants were "substantially likely to prevail on the merits of their claims brought under Section 2 of the Voting Rights Act" and that "[t]he appropriate remedy in this context is a remedial congressional

---

[1] Movants have filed in the *Robinson* case a motion requesting that Judge Dick deem that action first-filed.  *See* ECF No. 345, *Robinson* v. *Landry*,  No. 3:22-cv-02111-SDD-SDJ (M.D. La. Feb. 5, 2024).  The district court has directed Defendants in that case, including Secretary of State Nancy Landry, to file a response by February 15 and set a status conference in the case for February 21.  ECF No. 349.

redistricting plan that includes an additional majority-Black congressional district." *Robinson* v. *Ardoin*, 605 F. Supp. 759, 766 (M.D. La. 2022).  A motions panel of the Fifth Circuit unanimously denied the defendants' motion for a stay pending appeal based on its assessment that the defendants were unlikely to overturn the district court's injunction order, *Robinson* v. *Ardoin*, 37 F.4th 208, 215 (5th Cir. 2022), and a merits panel subsequently affirmed Chief Judge Dick's "conclusions that the Plaintiffs were likely to succeed on their claim that there was a violation of Section 2 of the Voting Rights Act," *Robinson* v. *Ardoin*, 86 F.4th 574, 583 (5th Cir. 2023).  The Fifth Circuit subsequently denied the defendants' petition for rehearing *en banc*, with no judge on the court asking for a poll on the petition.  Order, Dkt. No. 363 at 2, *Robinson* v. *Ardoin*, No. 22-30333, (5th Cir. Dec. 15, 2023).  Chief Judge Dick, at the Fifth Circuit's direction, gave the Legislature an opportunity to enact a new remedial map, and, in the event Louisiana failed to enact a Section 2 compliant map, established a schedule for trial.  The *Robinson* case is still pending and is currently set for trial to begin on March 25, 2024. Dkt. No. 315, *Robinson, et al.* v. *Landry*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Nov. 27, 2023).

The Legislature adopted SB8 in an effort by the State to comply with the *Robinson* courts' rulings and with the VRA, and to avoid the district court imposing its own VRA-compliant remedial map that may not reflect the Legislature's policy preferences.  As the Governor urged the Legislature at the outset of the special session called to adopt a new congressional districting plan, a new plan was necessary because "we have exhausted all legal remedies" and the Legislature should "make the adjustments necessary [and] heed the instructions of the Court."[2]  The Governor called upon the Legislature to adopt its own redistricting plan that reflected the wishes of the

---

[2] Office of the Governor, *Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting* (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting.

Legislature rather than surrender the drafting to Chief Judge Dick, urging the legislature to "take the pen out of the hand of non-elected judges and place it in your hand—the hand of the people."[3] Legislator after legislator echoed these sentiments.

The legislative record makes clear that the contours of the new map adopted in SB8 were not predominantly motivated by improper racial considerations on the Legislature's part as Plaintiffs contend.  Instead, the record reflects that the Legislature's goals were to protect favored congressional incumbents, further the interests of the majority party, and connect communities of interest along the Red River and the I-49 corridor, as well as to comply with the rulings by Chief Judge Dick and the Fifth Circuit.

Throughout the *Robinson* litigation and during the Special Session, Movants had proposed maps that would protect their rights under the VRA, by including two majority-Black districts. Movants' proposed maps and would also better comply with all traditional redistricting principles(such as geographic compactness and limiting the number of Parish splits) and the guidelines outlined by the Legislature in Joint Rule 21, than the map the Legislature enacted in 2022, which Louisiana used in the 2022 elections.  In the *Robinson* litigation, Movants offered a remedial plan with a very different configuration than SB8, with a new majority-Black district extending into the Delta Parishes instead of along the Red River and I-49.  Other examples for potential configurations that include two majority-Black districts were provided to the Legislature in 2022.[4]

---

[3] *Id.*

[4] *See* H.B. 4, 1st Spec. Sess. (La. 2022); H.B. 5, 1st Spec. Sess. (La. 2022); H.B. 7, 1st Spec. Sess. (La. 2022); H.B. 8, 1st Spec. Sess. (La. 2022); H.B. 9, 1st Spec. Sess. (La. 2022); H.B. 12, 1st Spec. Sess. (La. 2022); S.B. 2, 1st Spec. Sess. (La. 2022); S.B. 4, 1st Spec. Sess. (La. 2022); S.B. 6, 1st Spec. Sess. (La. 2022); S.B. 9, 1st Spec. Sess. (La. 2022); S.B. 10, 1st Spec. Sess. (La. 2022); S.B. 11, 1st Spec. Sess. (La. 2022); S.B. 16, 1st Spec. Sess. (La. 2022); S.B. 18, 1st Spec. Sess. (La. 2022); Amendment #88 to H.B. 1, 1st Spec. Sess. (La. 2022); Amendment #99 to H.B.

Movants' proposed remedial plan and other plans with two majority-Black districts offered in 2022 would have placed incumbent Congresswoman Julia Letlow in a newly created majority-Black district, potentially imperiling her chances for reelection.

In contrast, SB8 places incumbent Congressman Garret Graves in the new majority-Black district, reflecting the Legislature's political preferences.[5] As the sponsor of SB8 emphasized in presenting the bill and rejecting the *Robinson* Movants' more compact configurations:

> While this is a different map than the plaintiffs in the [Robinson] litigation have proposed, **this is the only map I reviewed that accomplished the political goals I believe are important** for my district for Louisiana for my country. While I did not draw these boundaries myself, I carefully considered a number of different map options. I firmly submit that the Congressional voting boundaries which are represented in this bill best achieved **the goal of protecting Congresswoman Letlow['s] seat, maintaining strong districts for Speaker Johnson and Majority Leader**

---

1, 1st Spec. Sess. (La. 2022); Amendment #153 to H.B. 1, 1st Spec. Sess. (La. 2022); Amendment #62 to S.B. 2, 1st Spec. Sess. (La. 2022); Amendment #116 to S.B. 5, 1st Spec. Sess. (La. 2022); Amendment #91 to S.B. 5, 1st Spec. Sess. (La. 2022).

[5] Numerous media reports make clear that the map was driven by political goals, including protecting favored Republican incumbents. *E.g.*, Piper Hutchinson, *Graves to lose U.S. House seat under Louisiana redistricting plan that adds minority seat*, LOUISIANA ILLUMINATOR (Jan. 19, 2024), https://lailluminator.com/2024/01/19/graves-to-lose-u-s-house-seat-under-louisiana-redistricting-plan-that-adds-minority-seat/ ("While no Republican has outwardly said so, Graves was clearly chosen as the Republican sacrifice . . . legislators were explicit about who they wanted to protect . . . [lawmakers] said they would rather approve a map drawn with their political interests in mind rather than allow a judge to do so"); Greg Hilburn, *Garret Graves blasts congressional map as 'boneheaded' move by Louisiana governor, Legislature*, SHREVEPORT TIMES (Jan. 23, 2024), https://www.shreveporttimes.com/story/news/2024/01/23/garret-graves-blasts-new-louisiana-congressional-map-as-boneheaded-move-by-governor-jeff-landry/72318012007/ ("Many believe Landry targeted Graves' district because the congressman supported Republican Stephen Waguespack in last fall's governor's election"); Kelsey Brugger, *Garret Graves defiant as state lawmakers cut up his district*, E&E NEWS (Jan. 19, 2024), https://www.eenews.net/articles/garret-graves-defiant-as-state-lawmakers-cut-up-his-district/ ("Ostensibly, Landry and the state Legislature are trying to get ahead of Obama-appointed Judge Shelly Dick from redrawing the congressional map to comply with the Voting Rights Act. But observers say interparty [*sic*] politics are also at play.").

*Scalise, ensuring four Republican districts*, and adhering to the command of the federal court in the Middle District of Louisiana.[6]

In addition to the political and partisan motivation for anchoring the new majority-Black district in Shreveport and Baton Rouge, the Legislature heard testimony and evidence that constructing such a district would keep intact a Red River community of interest. For example, Senator Womack, SB8's sponsor, noted that the map that became SB8 "goes along the Red River, it's the I-49 corridor," and that "[w]e have commerce through there. We have a college through there. We have a lot of ag[riculture], cattlemen, as well as farm[s], row crop, and a lot of people up through that corridor come back to Alexandria using that corridor for their healthcare."[7]

During the Special Session in January 2024, maps reflecting Movants' proposed districting configurations were introduced by Senators Price and Duplessis as S.B. 4 and Representative Marcelle as H.B. 5 and are a part of SB8's legislative record. Those plans were rejected by the Legislature, which chose instead to adopt SB8. The legislative record thus makes clear that the Legislature's choice of the map that extends from Shreveport to Baton Rouge rather than a map similar to the ones Movants supported was predominantly motivated by politics and policy preferences rather than race. Although the Legislature ultimately chose a different configuration than those Movants preferred, SB8 does provide a second Black opportunity district, as Movants sought, and may, if approved by Chief Judge Dick and not disturbed in this parallel litigation, provide a basis for resolving the *Robinson* litigation.

---

[6] *See* Statement of Senator Womack, at 33:50 – 34:22 (Jan. 16, 2024), https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/01/011624SG2.
[7] *See* Statement of Senator Womack, at 03:56 – 04:22 (Jan. 18, 2024), https://redist.legis.la.gov/default_video?v=house/2024/jan/0118_24_HG_P2.

## **ARGUMENT**

Movants should be granted leave to intervene because they have a "direct, substantial, [and] legally protectable" interest in defending SB8 and in protecting their rights under the VRA, *New Orleans Pub. Serv., Inc.* v. *United Gas Pipe Line Company*, 732 F.2d 452, 463 (5th Cir. 1984), and those interests would be gravely impaired if Plaintiffs prevail in this case. Courts have recognized the appropriateness of intervention in precisely this circumstance, where prior litigants seek to defend a district map drawn to ensure compliance with Section 2. *See, e.g.*, *Clark* v. *Putnam Cnty.*, 168 F.3d 458, 460 (11th Cir. 1999); *Johnson* v. *Mortham*, 915 F. Supp. 1529, 1536 (N.D. Fla. 1995); *United Jewish Orgs. of Williamsburg, Inc.* v. *Carey*, 430 U.S. 144, 151-53 (1977). And Black and other registered voters regularly intervene in racial gerrymandering cases to defend legislative maps. *See, e.g., Easley* v. *Cromartie*, 532 U.S. 234, 241 (2001); *Lawyer* v. *Dep't of Justice*, 521 U.S. 567, 572 (1997); *Clark*, 168 F.3d at 462 (collecting cases); *Theriot* v. *Par. of Jefferson*, No. CIV. A. 95-2453, 1996 WL 517695, at *1 (E.D. La. Sept. 11, 1996). Nor can Defendant—the Louisiana Secretary of State—adequately represent Movants' interests in this case. Defendant is herself a defendant in the *Robinson* action, and (as the Complaint makes clear) her predecessor aggressively contested Movants' claims in that action for nearly two years. The other factors relevant under Rules 24(a) and 24(b) likewise warrant granting Movants leave to intervene.

The Court should also transfer this action to the Middle District of Louisiana for consolidation or coordination with the *Robinson* action pursuant to the first-to-file rule in view of the substantial factual and legal overlap between this case and *Robinson*, both of which centrally concern the lawfulness of Louisiana's congressional map, and to avoid the potential for conflicting rulings if two actions involving the same fundamental issues are litigated in two different courts.

## I.     <u>Movants Should Be Granted Intervention</u>

Intervention is appropriate pursuant to Rule 24 of the Federal Rules of Civil Procedure as a matter of right and, alternatively, by permission.   Rule 24(a) requires federal courts to grant intervention by right to a non-party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  Alternatively, Rule 24(b) authorizes courts to permissively allow intervention by non-parties who raise "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "Rule 24 is to be liberally construed" in favor of intervention.  *Brumfield* v. *Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).  Intervention should be granted—whether as of right or at the court's discretion—"where no one would be hurt and the greater justice could be attained."  *Tex.* v. *U.S.*, 805 F.3d 653, 656 (5th Cir. 2015) (citations omitted); *see also Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n,* 834 F.3d 562, 565 (5th Cir. 2016).  The court's inquiry is "flexible" and should be based on a "practical analysis of the facts and circumstances of each case."  *Brumfield*, 749 F.3d at 341.  Movants satisfy the requirements for intervention as of right and, in the alternative, for permissive intervention under Fed. R. Civ. P. 24.

### A.     <u>Movants Are Entitled to Intervene as of Right</u>

Intervention as of right must be granted where a party satisfies Rule 24(a)'s four prerequisites: (1) "the application for intervention must be timely"; (2) "the applicant must have an interest relating to the property or transaction which is the subject of the action"; (3) "the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest"; and (4) "the applicant's interest must be inadequately represented by the existing parties to the suit."  *See Brumfield*, 749 F.3d at 341.  Courts in the Fifth

Circuit construe Rule 24(a) liberally, "with doubts resolved in favor of the proposed intervenor." *Energy Gulf States La., L.L.C.* v. *EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (internal quotation marks omitted).

Movants satisfy each of the requirements of Rule 24(a).

### 1.     This Motion is Timely

There can be no question that Movants' motion is timely.  Courts in this Circuit assess four factors to determine the timeliness of an intervention motion: (1) the length of time the potential intervenor waited to file; (2) the prejudice to the existing parties from any delay that may result from a grant of intervention; (3) the prejudice to the potential intervenor if intervention is denied; and (4) any unusual circumstances when determining the timeliness of an intervention motion. *See, e.g.*, *Stallworth* v. *Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

The filing of this motion is timely.  The Complaint was filed less than a week ago, and no other action has taken place.  Courts routinely permit intervention at a far more advanced stage. *See Edwards* v. *City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (finding that motion to intervene filed after "only 37 and 47 days . . . [was] not unreasonable"); *Students for Fair Admissions, Inc.* v. *Univ. of Tex. at Austin*, 338 F.R.D. 364, 368-69 (W.D. Tex. 2021) (motion to intervene timely when filed nearly five months after complaint); *United States* v. *Commonwealth of Virginia*, 282 F.R.D. 403, 405 (E.D. Va. 2012) ("Where a case has not progressed beyond the initial pleading stage, a motion to intervene is timely."); *Mullins* v. *De Soto Securities Co.*, 3 F.R.D. 432, 433 (W.D. La. 1944) (finding motion to intervene timely during the initial pleading stage); *see also Wal-Mart Stores, Inc.*, 834 F.3d at 565 (motion to intervene timely when filed after discovery had commenced because it did not seek to delay the litigation).   The docket does not reflect that Defendant has even been served, and Defendant has yet to file a responsive pleading.

Intervention at this early stage of the litigation will not prejudice any of the existing parties to the action. "This factor is concerned only with the prejudice caused by the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards*, 78 F3d at 1002. Given the early stage of the proceedings, the proposed intervention will not cause any material delay, the existing parties will not be prejudiced by intervention.

Lastly, Movants would be severely prejudiced if intervention is denied. As discussed above, Movants have extensively and successfully litigated their claim that a Louisiana congressional districting plan with fewer than two majority-Black districts dilutes their votes in violation of Section 2 of the Voting Rights Act. And as explained below, no other party has the same interest as Movants in ensuring the rulings in their favor in *Robinson* are not undermined.

> ### 2. Movants Have A Strong Interest in the Maintenance of Two Majority-Black Congressional Districts in Louisiana and in Protecting the Legal Rulings in Their Favor in *Robinson*.

Under Rule 24(a), proposed intervenors must have a "direct, substantial, [and] legally protectable" interest in the subject matter of this litigation. *New Orleans Pub. Serv., Inc.*, 732 F.2d at 463. "[A]n interest that by itself could be a case or controversy will meet the requirement, but … it is not necessary for an intervenor to have a right to bring suit independently." *N.A.A.C.P., Inc.* v. *Duplin Cnty., N.C.*, No. 7:88-CV-00005-FL, 2012 WL 360018, at *3–4 (E.D.N.C. Feb. 2, 2012) (citing *U.S.* v. *Philip Morris USA Inc.*, 566 F.3d 1095, 1145 (D.C. Cir. 2009)). In addition, the Fifth Circuit has held that in cases involving matters of public interest brought by a public interest group, the "interest requirement may be judged by a more lenient standard." *La Union del Pueblo Entero* v. *Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (quoting *Brumfield*, 749 F.3d at 344). Movants—both the individual voters, as well as the Louisiana NAACP and Power Coalition— plainly satisfy this requirement. Their claims implicate distinct legally protectable interests that warrant intervention.

Specifically, Movants have a legally protectable interest in defending legislation brought about through the *Robinson* litigation against the same party who is the Defendant in this litigation. The Fifth Circuit has held that parties with a concrete and particularized interest in the maintenance of government policies they helped bring about or that protect their individual interests may intervene as of right.  In *City of Houston* v. *American Traffic Solutions, Inc.*, for example, the Fifth Circuit held that individual organizers who "engineered the drive that led to a city charter amendment over the nearly unanimous, well funded, and longstanding opposition of the Mayor and City Council" had a legally protected interest for purposes of Rule 24(a) in litigation challenging the amendment.  668 F.3d 291, 294 (5th Cir. 2012).  Here, Movants have succeeded through the *Robinson* litigation in securing the passage of SB8 and protecting against the unlawful vote dilution in congressional elections in violation of Section 2, and they have an interest in ensuring that their success in that effort is not undermined or reversed in this case.

Additionally, even if protecting the rulings in their favor in *Robinson* were not enough, the individual Movants have a stake in this case because the relief Plaintiffs seek would impair their right to vote.  As demonstrated in the *Robinson* litigation, any districting congressional districting plan without two opportunity districts for Black voters in Louisiana denies the individual Movants their rights under Section 2 of the Voting Rights Act.  That threat to Movants' right to vote alone is sufficiently concrete and specific to support intervention.  *See League of United Latin American Citizens, District 19* v. *City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (interest in protecting the intervenors' interest in voting in at-large elections, which could be adversely affected by litigation, was sufficient to support intervention as of right).  The Individual Movants "plainly have an interest in this action sufficient to satisfy Rule 24(a), since the action challenges the legality of a redistricting plan that implicates their voting rights."  *Shaw* v. *Hunt*, 1993 WL 13149438 at *1

(E.D.N.C Nov. 3, 1993).

The Louisiana NAACP and Power Coalition likewise have a legally protectable interest sufficient to satisfy the Fifth Circuit's "lenient" standard. *La Union del Pueblo Entero*, 29 F.4th at 305 (quoting *Brumfield*, 749 F.3d at 344). The Louisiana NAACP has members who reside in every congressional district in Louisiana, including CD 2 and CD 6, who have a right under Section 2 to have an equal opportunity to elect candidates of choice. *See Johnson* v. *Mortham*, 915 F. Supp. at 1538 (Florida NAACP had a "protectable interest" in the litigation "to the extent [they] represent[ed] voters" within the challenged district). In addition, both the Louisiana NAACP and Power Coalition have a direct interest in this action by virtue of their long history of working to engage Black voters across the state of Louisiana in the political process. The Louisiana NAACP and Power Coalition expend considerable resources educating, mobilizing, and registering voters throughout the state, and the "claims brought by [Plaintiffs] could affect [their] ability to participate and maintain the integrity of the election process" for Black voters across the state. *La Union del Pueblo Entero*, 29 F.4th at 304, 306 (where organizations that expend "substantial resources towards educating, mobilizing, assisting, training, and turning out voters, volunteers, and poll watchers" had a "direct and substantial interest in the proceedings").

Accordingly, Movants have demonstrated sufficiently concrete, legally protectable interests that support intervention by right.

### 3. Disposition of Plaintiffs' Racial Gerrymandering Claims Would Impair Movants' Opportunity to Elect a Candidate of Choice

Prospective intervenors "must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield* v. *Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted). "Though the impairment must be 'practical' and not merely

'theoretical,' [applicants] need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union del Pueblo Entero*, 29 F.4th at 307.

Movants readily satisfy this requirement, as they would be severely prejudiced if intervention is denied.  As noted, the district court and two panels of the Fifth Circuit have unanimously concluded that Movants are likely to prevail on their claim that they and other Black Louisiana voters must be afforded the opportunity to elect candidates of choice in two majority-Black congressional districts.  As also discussed above, SB8 was enacted in recognition of those rulings.

Yet Plaintiffs in this action seek a declaration from the Court that SB8 is an unconstitutional racial gerrymander and that the State "could not create two majority-African American districts without violating the U.S. Constitution."  Compl. ¶ 9.  Movants will be gravely harmed if they are precluded from defending the map that was the direct result of their litigation in *Robinson* or from defending against Plaintiffs' claim that the Voting Rights Act cannot require the adoption of a different map with two majority Black districts.  *Id*. ¶¶ 99-107.  Furthermore, Movants will be harmed if they are precluded from participating in any proceeding (as Plaintiffs request) "institut[ing] a congressional map that remedies" the alleged constitutional infirmities in SB8.  *See, e.g., League of United Latin Am. Citizens*, 659 F.3d at 434 (explaining that a movant for intervention would be "severely prejudiced" if his motion was denied, where there was no other mechanism to persuade the court of his injury under the Voting Rights Act).

If Plaintiffs prevail here, Movants and other Black Louisiana voters will be deprived of the second majority-Black congressional district that the *Robinson* court held the Voting Rights Act likely requires, and that they finally received after years of fighting for this outcome in litigation. *See La Union del Pueblo Entero*, 29 F.4th at 307 (impairment requirement satisfied where statute

"grants rights" to proposed intervenors that "could be taken away if the plaintiffs prevail"); *see also Shaw*, 1993 WL 13149438 at *1 (ruling striking down the enacted plan as unconstitutional would impair the proposed intervenors' interest because it could "result in the adoption of an alternative redistricting plan which was unfavorable to the[ir] political interests"). Similarly, "[i]f the district court either partially or fully grants the relief sought by [Plaintiffs], [Movants] will have to expend resources to educate their members [and voters across the state] on the shifting situation in the lead-up to the [2024] election." *La Union del Pueblo Entero*, 29 F.4th at 307. Movants' interests thus could be practically impaired as a result of this litigation, warranting intervention as a matter of right.

### 4.    The Existing Parties Do Not Adequately Represent Movants' Interests

The burden to show inadequate representation "should be treated as minimal." *Trbovich* v. *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Brumfield*, 749 F.3d at 345. The applicant need only show that the existing parties' representation "may be" inadequate, *see Trbovich*, 404 U.S. at 538 n.10, not that it "will be, for certain, inadequate." *La Union del Pueblo Entero*, 29 F.4th at 307–08 (quoting *Tex.*, 805 F.3d at 661). The Fifth Circuit recognizes a presumption of adequate representation where (i) the would-be intervenor has the same ultimate objective as a party, which may be overcome by showing adversity of interests, collusion, or nonfeasance on the part of an existing party; or (ii) where the putative representative is a governmental body or officer charged with representing the intervenor's interests, which may be overcome if the intervenor shows that the interest is in fact different from that of the governmental entity and the interest will not be represented by the entity. *See Tex.*, 805 F.3d at 662–63.

Neither presumption applies here. Plaintiffs plainly do not represent Movants' interests. On the contrary, their claims directly threaten the maintenance of two majority-Black districts in Louisiana, which the district court in *Robinson* held is likely required by Section 2 of the VRA.

*See Robinson* v. *Ardoin*, 86 F.4th 574 (5th Cir. 2023) (holding that district court did not err in its analysis that plaintiffs were likely to succeed on the merits of claim that VRA requires two majority-Black districts in Louisiana); *see also League of United Latin Am. Citizens*, 659 F.3d at 435 (existing parties opposed relief intervenor sought and therefore did not adequately represent his interest).

Defendant likewise cannot be relied upon to adequately represent Movants' interests.  *See Tex.*, 805 F.3d at 661; *Brumfield*, 749 F.3d at 346 ("The lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate").  As the Complaint itself acknowledges, the defendants in *Robinson*, including the Defendant here, aggressively opposed Movants' claims for over two years, and the Legislature adopted SB8 only after repeated court rulings in Movants' favor.  *See City of Houston* v. *American Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (city may inadequately represent interests of intervenors who enacted city charter amendment over city's opposition, where intervenors demonstrated interest in cementing their victory and defending the amendment, and an unfavorable ruling would mean "their money and time will have been spent in vain.").  State officials have continued to insist that they disagree with these court rulings and adopted SB8 only as a matter of prudence because their litigation options had been exhausted.  For example, in opening the January 2024 special session of the Legislature, Governor Landry—who was himself a defendant in *Robinson* in his previous position as Attorney General—said:

> I have done everything I could to dispose of this litigation.  I defended the re-districting plan adopted by this body as the will of the people . . . We have exhausted ALL legal remedies . . . Let's make the adjustments necessary, heed the instructions

of the Court, take the pen out of the hand of non-elected judges and place it in your hand – the hand of the people."[8]

Likewise, Louisiana's new Attorney General stated: "We have exhausted all reasonable and meaningful avenues for legal remedies available to us.  Now, we have a federal judge holding her pen in one hand and a gun to our head in the other."[9]  Movants cannot be asked to have their interests in this action represented by State officials who vigorously litigated against their claims and continue to express their disagreement with the court decisions in Movants' favor.

The Defendant cannot be expected to adequately represent the interests of Movants for other reasons as well.  Movants' principal interest is assuring that their votes and those of other Black Louisiana voters are not unlawfully diluted.  Defendant, as the principal State official charged with overseeing State elections, has asserted multiple interests, including "maintaining the continuity of representation in its districting plans" and the efficient administration of elections. Dkt. No. 101 at 18, 20-21, *Robinson* v. *Landry*, 22-cv-211-SDD-SDJ (Apr. 29, 2022).  These differences in interest likewise cut against any finding that Defendant can represent Movants' interests here.  *See Brumfield*, 749 F.3d at 346 (intervenors did not share all of the state's "many interests," which "surely" might result in adequate representation); *Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (state defendant's representation was inadequate where the proposed intervenor's private interests "are narrower than" the defendant's "broad public mission").

Movants thus satisfy all of the requirements for intervention as of right and their motion to intervene under Rule 24(a) should be granted.

---

[8] Office of the Governor, *Governor Jeff Landry Opens First Special Session on Court Ordered Redistricting* (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting.
[9] Attorney General Liz Murrill (@AGLizMurill), X (Jan. 16, 2024, 4:53 PM), https://twitter.com/AGLizMurrill/status/1747376599446516056.

**B.**    **In the Alternative, the Court Should Grant Permissive Intervention**

Rule 24(b)(1) provides that, on timely motion, "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." The court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  Courts may also consider whether the existing parties adequately represent the prospective intervenor's interests and whether the intervenors will significantly contribute to fully developing the factual record.  *See Kneeland* v. *Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987).  As with intervention as of right, Rule 24 is to be "liberally construed" and "[f]ederal courts should allow intervention when no one would be hurt and the greater justice could be attained."  *See Wal-Mart Stores, Inc.*, 834 F.3d at 565 (citations omitted).

For the reasons already stated, Movants' motion is timely, and poses no risk of delay or prejudice to the original parties.  *See supra* Section I(A)(1).  And, as discussed, Movants' interests are not adequately represented by the existing parties.  *See supra* Section I(A)(4).  That leaves only the question of whether Movants have a claim or defense that shares a common question of law or fact presented in this action.

There are ample common questions of law and fact between this case and *Robinson*.  The court has "broad discretion" to allow intervention where the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact."  *Hanover Ins. Co.* v. *Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 667 (E.D. La. 2016).  Indeed, this case turns on multiple questions of law or fact that are at the heart of Movants' claims in *Robinson*.  The core legal question in cases is whether Louisiana permissibly may or indeed must draw a congressional plan with two majority-Black districts.  Plaintiffs contend that Louisiana need not draw a second

majority-Black congressional district: the legal question central to the *Robinson* litigation, which Movants vigorously dispute. *See, e.g.*, Ex. A at 27. And even the constitutional issue itself overlaps with *Robinson*, where both the district court and the Fifth Circuit have *rejected* the State's argument that efforts to draw a second Black-opportunity district would necessarily violate the Constitution—the same argument that Plaintiffs recycle here, and that Movants again dispute.

Plaintiffs' claims, Defendants' defenses, and Movants' anticipated defenses arise from Louisiana's redistricting process following the 2020 decennial census, the subsequent litigation prosecuted by Movants, and the enactment of SB8 in response to *Robinson*. Because Movants are still litigating the Louisiana congressional map's compliance with the VRA, and have done so for nearly two years, they are uniquely situated to contribute to full development of the factual record in this case. Adjudication of Movants' defenses would efficiently resolve the factual and legal questions arising from the enactment of SB8 and facilitate full development of the factual record.

Accordingly, permissive intervention under Rule 24(b) should be granted.

## II.   This Case Should Be Transferred to the Middle District of Louisiana

In addition to allowing Movants to intervene, this Court should transfer this case to the Middle District of Louisiana, where the *Robinson* action is pending and remains active. This case raises substantially similar issues to the first-filed and currently pending *Robinson* action, which risks duplicative dispositions and waste of judicial resources, and thus should be transferred under the well-settled first-to-file rule. Plaintiffs' claims concerning SB8 should be heard in the Middle District, where Chief Judge Dick has overseen years of litigation relating to Louisiana's obligations under the VRA, the constitutionality of alternative congressional maps, and the implementation of a new congressional map in accordance with federal law, and has heard and weighed extensive documentary evidence and lay and expert testimony on these issues. If this Court were to issue the injunction and declaration Plaintiffs seek and proceed to a remedial phase,

it would significantly risk conflict with the proceedings in the *Robinson* action.  Transfer to the Middle District would benefit the parties, the witnesses, and the court system by allowing for adjudication of the substantially overlapping issues in this action and the *Robinson* action in a single, finally determined action.

The Fifth Circuit has "long advocated that district courts exercise their discretion to avoid duplication of proceedings where related claims are being litigated in different districts." *Schauss* v. *Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985).  Under the "first-to-file" rule applied in this Circuit, "[c]ourts prophylactically refus[e] to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court."  *Def. Distributed* v. *Platkin*, 55 F.4th 486, 494 (5th Cir. 2022) (citations omitted).  Neither the substance of the cases nor the parties need to overlap perfectly.  *Harris Cnty., Tex.* v. *CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) (citations omitted).  "[T]he crucial inquiry is one of substantial overlap."  *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015) (citations omitted).  In deciding whether a substantial overlap exists, courts in the Fifth Circuit consider "whether core issues are the same or whether much of the proof adduced would likely be identical."  *Cormeum Lab Servs., LLC* v. *Coastal Lab'ys, Inc.*, No. CV 20-2196, 2021 WL 5405219, at *3 (E.D. La. Jan. 15, 2021).  "Where overlap between two suits is less than complete, the judgment is made case-by-case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage, and the interest of each forum in resolving the dispute."  *State* v. *Biden*, 538 F. Supp. 3d 649, 653–54 (W.D. La. 2021) (citations omitted).

The first-filed rule does not require perfect overlap of issues or parties. "Instead, the crucial inquiry is one of 'substantial overlap.'" *In re Amerijet Int'l, Inc.*, 785 F.3d 967, 976 (5th Cir. 2015), as revised (May 15, 2015) (citations omitted). To determine if substantial overlap exists, the Fifth

Circuit "has looked at factors such as whether 'the core issue . . . was the same' or if 'much of the proof adduced . . . would likely be identical.'" *Int'l Fid. Ins. Co.* v. *Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (citations omitted).  Even where the overlap between two suits is "less than complete," the first-filed rule can still be applied on a "case by case [basis], based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id*; *see, e.g.*, *Salazar* v. *Bloomin' Brands, Inc*., No. 2:15-CV-105, 2016 WL 1028371, at *4 (S.D. Tex. Mar. 15, 2016) (finding "imperfect overlap" but "conclud[ing] that the risk of conflict and the courts' comparative interests in these actions favor transfer").  This is a textbook case for application of the first-to-file rule.

In their Complaint, Plaintiffs ask this Court to strike down SB8 as a violation of the Equal Protection Clause and "institute a congressional districting map" that, according to the Plaintiffs, may not constitutionally include a second majority-Black district. Should Plaintiffs succeed in invalidating SB8, the *Robinson* plaintiffs are entitled to a trial on their Section 2 claim. And should the *Robinson* plaintiffs prevail—which, again, two panels of the Fifth Circuit and the district court held they are likely to do—the *Robinson* district court must then order a congressional plan containing two majority-Black districts to be implemented, pursuant to the Fifth Circuit's instructions on remand, no later than the end of May 2024. The result of a ruling such as the Plaintiffs seek here, in other words, is that two separate federal district courts will simultaneously be charged with crafting new and likely conflicting congressional maps, both of which cannot be implemented, leaving the Secretary of State—a defendant in both cases—in the impossible position of having to violate one court's order or the other.

Even if competing maps could be avoided, allowing two courts to proceed in parallel in adjudicating these overlapping claims and factual questions would violate one of the primary goals of the first-filed rule: avoiding "piecemeal resolution of issues that call for a uniform result." *Cadle*

*Co.* v. *Whataburger of Alice, Inc.*, 174 F.3d, 599, 603 (5th Cir. 1999).  It is hard to imagine an issue less suited for competing decisions than a State's congressional redistricting plan. Redistricting cannot tolerate dueling decisions on the relationship between the VRA, the Fourteenth Amendment, and the State's congressional plan. Ultimately, the 2024 elections will need to be held under a single plan.  Of course, that plan cannot simultaneously respect the *Robinson* court's ruling that Louisiana must have a second Black-opportunity district, *and* the ruling Plaintiffs seek here, which might preclude that very same second Black-opportunity district.

In short, allowing this case to proceed before this Court would force the Court to consider legal issues and evidence that the *Robinson* court has already weighed.  Worse, it risks "the waste of duplication," a "ruling[] which may trench upon the authority of" another federal district court, and "piecemeal resolution of issues that call for a uniform result."  *W. Gulf Mar. Ass'n* v. *ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).  Applying the first-filed rule and transferring this case to the Middle District of Louisiana would alleviate those concerns and the Court should do so here.

## **CONCLUSION**

For the foregoing reasons, this Court should permit Movants to intervene in this action under Fed. R. Civ. P. 24 and file Movants' answer to the complaint.  The Court should also transfer this case to the Middle District in accordance with the first-to-file rule.

DATED:  February 7, 2024

Respectfully submitted,

By:  _/s/ Tracie L. Washington_
Tracie L. Washington
LA. Bar No. 25925
Louisiana Justice Institute
8004 Belfast Street
New Orleans, LA 70125
Tel: (504) 872-9134
tracie.washington.esq@gmail.com

By: _/s/ John Adcock_
John Adcock
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

_Counsel for Proposed Intervenor-Defendants Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule_

_Counsel for Proposed Intervenor-Defendants_

Stuart Naifeh (pro hac vice forthcoming)
Kathryn Sadasivan (pro hac vice forthcoming)
Victoria Wenger (pro hac vice forthcoming)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
vwenger@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (pro hac vice forthcoming)
NAACP Legal Defense and Educational Fund,
Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (pro hac vice forthcoming)*
Megan C. Keenan (pro hac vice forthcoming)
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

*Additional counsel for Proposed Intervenor-Defendants*

*Practice is limited to federal court.

Robert A. Atkins (pro hac vice forthcoming)
Yahonnes Cleary (pro hac vice forthcoming)
Jonathan H. Hurwitz (pro hac vice forthcoming)
Amitav Chakraborty (pro hac vice forthcoming)
Adam P. Savitt (pro hac vice forthcoming)
Arielle B. McTootle (pro hac vice forthcoming)
Robert Klein (pro hac vice forthcoming)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue Of The Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com

Sophia Lin Lakin (pro hac vice forthcoming)
Dayton Campbell-Harris (pro hac vice forthcoming)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (pro hac vice forthcoming)
Daniel Hessel (pro hac vice forthcoming)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu