**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION**

PHILIP CALLAIS, LLOYD PRICE, )
BRUCE ODELL, ELIZABETH ERSOFF, )
ALBERT CAISSIE, DANIEL WEIR, )
JOYCE LACOUR, CANDY CARROLL )
PEAVY, TANYA WHITNEY, MIKE )
JOHNSON, GROVER JOSEPH REES, )
ROLFE MCCOLLISTER, )
                             )    Case No. 3:24-cv-00122-DCJ-CES-RRS
       Plaintiffs, )
                             )
v. )     District Judge  David C. Joseph
                             )     Circuit Judge Carl E. Stewart
NANCY LANDRY, IN HER OFFICIAL )     District Judge  Robert R. Summerhays
CAPACITY AS LOUISIANA )
SECRETARY OF STATE, )     Magistrate Judge Kayla D. McClusky
                             )
       Defendant. )

**PLAINTIFFS' MEMORANDUM IN RESPONSE
TO MOTIONS TO INTERVENE AND MOTION TO TRANSFER**

i

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

RESPONSE TO MOVANT'S BACKGROUND FACTS ............................................... 3

ARGUMENT ................................................................................................................. 6

    I.       The Movants are not entitled to intervention of right. ...................................... 6

        A.  No voter has a legally protectable interest in the principle of two African American-majority congressional districts existing in Louisiana. ......................... 7

              i.     *The requisite interest must be legally protectable.* .......................... 7

              ii.    *The Movants' interests are not legally protectable or endangered.* .. 8

        B.  Movants have not demonstrated that their interests will not be adequately represented by the State Defendant. .............................................................. 10

        C.  There is no basis for the Galmon Movants–the original Galmon plaintiffs and the new individual they recruited–to intervene here. .............................. 12

    II.      The Movants are not entitled to permissive intervention. ............................ 13

    III.    Transfer is unwarranted. ............................................................................. 15

        A.  28 U.S.C. § 2284 bars transfer. ................................................................. 15

        B.  Venue is proper in this Court. ..................................................................... 17

        C.  There is no longer a case or controversy in the Middle District of Louisiana. .. 18

        D.  The first-to-file principle does not apply. ..................................................... 21

               i.     *The statutory mandate trumps this principle of comity.* .................... 22

              ii.    *Alternatively,* Robinson *does not "substantially overlap."* .............. 23

             iii.   *Alternatively, compelling reasons bar application of the rule.* .............. 24

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018) ........................................................................................... 15

*Allen v. Milligan*,
    599 U.S. 1 (2023) ......................................................................... 4, 7, 10, 17, 2, 22

*Baker v. Carr*,
    369 U.S. 186 (1962) .............................................................................................. 19

*Barnett v. Alabama*,
    171 F. Supp. 2d 1292 (S.D. Ala. 2001) ................................................................ 24

*Bethune-Hill v. Va. State Bd. of Elecs.*,
    137 S. Ct. 788 (2017) ...................................................................................... 15, 17

*Bush v. Viterna*,
    740 F.2d 350 (5th Cir. 1984) ................................................................................ 11

*City of Houston v. Am. Traffic Sols., Inc.*,
    668 F.3d 291 (5th Cir. 2012) ...................................................................... 7, 10, 12

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) .............................................................................................. 21

*Cooper v. Harris*,
    581 U.S. 285 (2017) ........................................................................................ 16, 17

*Evenwel v. Abbott*,
    578 U.S. 54 (2016) ................................................................................................ 17

*Fantasy Ranch Inc. v. City of Arlington, Tex.*,
    459 F.3d 546 (5th Cir. 2006) ................................................................................ 20

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) .............................................................................................. 19

*Harris v. Ariz. Indep. Redistricting Comm'n*,
    578 U.S. 253 (2016) .............................................................................................. 16

*Hollingsworth v. Perry*,
    133 S. Ct. 2652 (2013) ......................................................................................... 21

*In re Landry*,
    83 F.4th 300 (5th Cir. 2023) ............................................................ 4, 5

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
    665 F.3d 671 (5th Cir. 2011) ........................................................ 22, 23

*Johnson v. DeGrandy*,
    512 U.S. 997 (1994) ........................................................................... 9

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
    806 F.2d 1285 (5th Cir. 1987) .......................................................... 14

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) .............................................................. 8

*LULAC v. Perry*,
    548 U.S. 399 (2006) ......................................................................... 17

*Mann Mfg., Inc. v. Hortex, Inc.*,
    439 F.2d 403 (5th Cir. 1971) ............................................................ 23

*Miller v. Johnson*,
    515 U.S. 900 (1995) ......................................................................... 17

*Moosehead Sanitary Dist. v. S.G. Phillips Corp.*,
    610 F.2d 49 (1st Cir. 1979) .............................................................. 11

*Nairne v. Ardoin*,
    2023 WL 7427789 (M.D. La. Nov. 9, 2023) ................................... 22

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d. 452 (5th Cir. 1984) ........................................................... 14

*North Carolina v. Covington*,
    138 S. Ct. 2548 (2018) ..................................................................... 20

*Perry v. Perez*,
    565 U.S. 388 (2012) ......................................................................... 17

*Pool v. City of Houston*,
    87 F.4th 733 (5th Cir. 2023) ................................................... 18-20, 24

*Portchartrain Partners, LLC v. Tierra de Los Lagos, LLC*,
    48 F.4th 603 (5th Cir. 2022) ............................................................ 24

*Reno v. Bossier Parish Sch. Bd.*,
117 S. Ct. 1491 (1997) .................................................................................17

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) ...................................................................4-6, 21

*Robinson v. Ardoin*,
No. 3:22-cv-00211-SDD-SDJ (M.D. La. Feb. 6, 2024) ...................3, 9, 18, 19

*Robinson, et al. v. Landry*,
605 F. Supp. 3d 759 (M.D. La. 2022) .............................................................1

*Shapiro v. McManus*,
577 U.S. 39 (2015) ..........................................................................15-17, 22

*Shaw v. Hunt*,
517 U.S. 899 (1996) .......................................................................................7

*Shaw v. Reno*,
509 U.S. 630 (1993) .....................................................................................17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .....................................................................................21

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......................................................................................24

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
600 U.S. 181 (2023) .....................................................................................16

*Sutter Corp. v. P & P Indus, Inc.*,
125 F.3d 914 (5th Cir. 1997) ........................................................................22

*Texas v. United States*,
805 F.3d 653 (5th Cir. 2015) ..............................................................7, 10, 11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...............................................................................19, 21

*United States v. Hays*,
515 U.S. 737 (1995) .....................................................................................17

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) .............................................................................20, 21

**Constitutional Provisions**

28 U.S.C. § 1331 ....................................................................................................17

28 U.S.C. § 1343 ....................................................................................................17

28 U.S.C. § 2284 ..............................................................................................*passim*

42 U.S.C. § 1983 ....................................................................................................17

42 U.S.C. § 1988 ....................................................................................................17

U.S. Const. art. III, § 2 ....................................................................................18, 20

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................................18

Fed. R. Civ. P. 24 ............................................................................................14, 15

# INTRODUCTION

The Callais Plaintiffs brought this claim seeking speedy relief from a January 2024 Congressional redistricting map ("SB8") that racially gerrymanders them (and all Louisianians) into six districts based solely on race. The facts will show that the State started with a goal of drawing two majority African American districts, an impermissible racial quota. It then traced nearly the same bizarre district outline that this Court invalidated 30 years ago as an obvious racial gerrymander. This jagged gash cuts hundreds of miles across the state to nearly-perfectly carve in clusters of African American voters. It encompasses no community of interest and earns nearly the lowest score possible on most compactness scales. The Movants, two sets of plaintiffs[1] from an earlier case, seem to actually agree that a two-majority-minority district goal predominated, but for them, this was SB8's core feature, not a bug. They then seem prepared to argue that the bizarre shape and mathematically precise inclusion of African American voters was consistent with a non-racial political deal. If this is all Movants can add to the State's defense of SB8, then it should quickly fall both as a racial gerrymander under the Fourteenth Amendment and as invidious discrimination and vote dilution under the Fourteenth and Fifteenth Amendments.

What, then, is the harm of adding Movants as parties defendant under Rule 24? Simply this: Movants have no intention of litigating before this Court or any other three-judge court. They seek instead to trigger a delay-inducing round of procedural briefing. This allegation is not made lightly, but Movants' papers do not inspire confidence. They fail to even cite the controlling statute, 28 U.S.C. § 2284(a), which requires that the current three-judge court try and issue a judgment in

---

[1] The Plaintiffs here will designate them as the "Robinson" and "Galmon" Movants based on the first-named plaintiffs in two cases, brought by two separate groups of attorneys, that were consolidated into an earlier case, *Robinson, et al. v. Landry*, 605 F. Supp. 3d 759 (M.D. La. 2022), *vacated and remanded*, 86 F.4th 574 (5th Cir. 2023). As will be seen, the Galmon Movants also include one newly-recruited individual who did not participate in *Robinson*. Even with this new recruit, the basic characteristics of the Galmon Movants add nothing, for standing or relief purposes, to the slightly more diverse characteristics of the Robinson Movants, which include two associations claiming associational standing.

this case; they presumably plan to spring their position in Replies. Nor does either Movant reveal to this Court that they had made filings in *Robinson* —over which Chief Judge Dick solely presides in the Middle District of Louisiana—admitting that they have no objections to litigate over SB8. They instead tell this Court that a *Robinson* trial is set for March 2024—but, given their *Robinson* filings, trial over what? Movants again seem to be reserving their Replies to answer these obvious questions. Finally, the Movants are apparently re-filing the parties' filings before this Court in *Robinson,* but they are failing to disclose key *Robinson* filings in this Court. This hides the ball.

All of this aside, familiar principles require that neither intervention nor transfer should be granted. Movants' interest in a map with two majority-minority districts is not legally protectable and in any event is adequately protected by the State, which everyone agrees drew SB8 with precisely that goal. The individual Movants uniformly claim to endorse SB8 for drawing two majority-minority districts, yet it has no discernible impact on half of them. For others, SB8 may move them out of true majority-minority district into a district that can't perform. These Movants have no legally protectable interest in trading off their own voting strength just to see other members of their race gain districts elsewhere. If the Court has any doubt, the Galmon Movants— and an entirely duplicative set of lawyers, experts, and schedules—can be eliminated because for standing and remedy purposes, the Robinson Movants have them totally covered.

Finally, there is no good-faith basis for transfer. The Robinson Movants refused to provide any basis for transfer—even upon request—in a perfunctory pre-motion email. Venue is proper here; only this Court can have jurisdiction under 28 U.S.C. § 2284; the *Robinson* Court no longer has a case or controversy; and the first-to-file principle can't apply. For all of these reasons, both Motions to Intervene and the Motion to Transfer should be denied and the parties should advance to the Preliminary Injunction hearing.

## RESPONSE TO MOVANTS' BACKGROUND FACTS

The Movants concede that they won no final judgment in their Voting Rights Act case. **Galmon Movants' Motion to Intervene ("Galmon Motion"), Doc. 10 at 8** (admitting preliminary relief was stayed and then vacated by the United States Court of Appeals for the Fifth Circuit). The Movants had challenged HB1, Louisiana's 2022 map. HB1 was fully repealed by SB8, a new map. The Movants support SB8 and tout it as their own historic victory. ***Id.* at 6; Robinson Movants' Memorandum of Law in Support of Motion to Intervene as Defendants and Transfer ("Robinson Motion"), Doc. 18-1 at 8**.

Yet neither set of Movants discloses to this Court the decisive event that occurred just eight days ago, on February 6, 2024. At the direction of the Middle District of Louisiana, they each filed consents stating that they do not object to SB8. *Notice Regarding Plaintiffs' Position on New Enacted Congressional Map*, *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Feb. 6, 2024), ECF 347 [hereinafter *Robinson Plaintiffs' Notice*]; *Galmon Plaintiffs' Notice Regarding the New Enacted Congressional Map*, *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Feb. 6, 2024), ECF 356 [hereinafter *Galmon Plaintiffs' Notice*]. On February 8, 2024, the deadline for amended pleadings in *Robinson* came and went. No dispute lingers over fees or other ancillary matters. No case or controversy remains in *Robinson*. The State Defendants pointed this out to the Middle District in a Motion to Dismiss filed on February 9, 2024. Yet the Robinson Movants represent to this Court that trial is "set" for March 2024 and that some dispute there remains pending. **Robinson Motion, Doc. 18-1 at 9**. That the Movants would make this representation to this Court at the end of a purportedly exhaustive procedural history, but without disclosing their concession regarding SB8 in their required February 6, 2024, filings, shows less than full candor.

The Movants also portray the *Robinson* case as having somehow secured a legally protectable interest, to wit, that every potential Louisiana congressional map must include two

majority-minority districts. But Movants merely obtained a preliminary injunction that was never implemented and later dissolved. At minimum, the procedural history deserves closer scrutiny.

The Movants' complaints were filed in March and April 2022. They obtained a preliminary injunction in early June 2022, but the injunction was stayed and HB1 was used for the 2022 election. *In re Landry*, 83 F.4th 300, 304 (5th Cir. 2023); *Robinson v. Ardoin*, 86 F.4th 574, 586 (5th Cir. 2023). The Fifth Circuit recognized that trial might well be litigated with very different facts and law than the State had relied on at the preliminary injunction hearing. *In re Landry*, 83 F.4th at 306 n.6 (noting that the State had previously put "all its eggs" in one legal basket, and that "[n]o litigant . . . is bound at trial on the merits to a defense strategy that failed to succeed on a preliminary injunction"); *id.* at 305 ("That the state lacked a full opportunity to mount a defense on the merits is likely accurate.").

The appellate merits panel, too, noted that the State had made the strategic decision to rest on legal arguments rather than joining issue with the plaintiffs on the facts. *Robinson*, 86 F.4th at 599. It noted that the State asserted legal theories without knowing they would later be undermined by the Supreme Court's 5-4 decision in *Allen v. Milligan*, 599 U.S. 1 (2023), which was issued during the seventeen months of near-inactivity that elapsed between the preliminary injunction hearing and the Fifth Circuit's merits review. *Robinson*, 86 F.4th at 599.

In conducting that review in the fall of 2023, the merits panel agreed with an earlier motions panel that the plaintiffs' arguments were not "without weakness," but the panel found its hands tied on the merits: it was "primarily" charged with conducting "clear error" review to sustain the district court's heavily fact-reliant reasoning. *See, e.g.*, *id.* at 591-94, 597. At no point did the Fifth Circuit find, remark, or suggest that the VRA likely entitled the plaintiffs to "two" (or any other fixed quota of) majority-minority districts in future map configurations. Instead, it merely held

that, taking the 2022 map as the starting point (as it had to under the posture of the case), the District Court did not commit clear error in its factual findings and in deciding plaintiffs were likely to prevail on a Voting Rights Act challenge *to that 2022 map. Id.* at 583, 588-89. There was no holding that future redistricting must yield districts like the Movants' proposed remedial plans, and there was no holding that future Louisiana plans had to draw two majority-minority districts. Movants' claim to have achieved a massive legal victory compelling two districts, then, is a myth.

As noted above, the Fifth Circuit concluded by dissolving the preliminary injunction. Again, it noted that the State might mount a different or more fulsome defense at trial, *in re Landry*, 83 F.4th at 306 n.6, *Robinson*, 86 F.4th at 584, or that the Legislature could resolve the matter by passing a map acceptable to the plaintiffs, *id*. at 583-84.

Just days ago, the State chose option two. Of its own volition, the State chose not to put on a new factual and legal case at trial. It instead enacted into law a new map, SB8. As the Callais Plaintiffs show in their Motion for Preliminary Injunction (**Doc. 17**), SB8 resurrects a 1993 map this Court found to have been racially gerrymandered, featuring a long, sinuous district stretching from pockets of African American voters in Southeastern Baton Rouge to other pockets Northwest of Shreveport. Strikingly, the facts will show that approximately 82% of the African American population in 2024's SB8 was included in 1993's judicially invalidated racial gerrymander.

Also as noted above, the Movants each made filings before the Middle District of Louisiana conceding that they did not object to SB8. This ended any case or controversy between the Movants-qua-plaintiffs and the State. Yet given their prior position, this was no foregone conclusion. Movants consented to SB8 despite its failure to provide most of the actual named plaintiffs with legally cognizable relief. In contrast to SB8's effort to link Shreveport with Baton Rouge, the plaintiffs' proposed remedial maps had generally veered Northeast in search of African

American voters, stretching from East Baton Rouge to the Northern reaches of the Mississippi Delta counties. Most of the maps would have placed the Galmon Movants either in what they claimed was a newly-created majority-minority district, or kept them in their pre-existing majority-minority districts with marginally reduced majorities. With respect to the Robinson Movants, only a few individuals potentially saw a reduction in their alleged "voter dilution" injury under SB8. SB8 simply brought no meaningful gain for Movants (indeed, it may have harmed several), assuming their initial claims of injury were really about packing, cracking, and voter dilution.

Perhaps for that reason, the Movants now retrospectively redefine what they had been seeking in *Robinson*. The district court "win" that gives rise to their intervention interest, they say, was in generally mandating that two of the six districts must be majority-minority. But as noted above, the Fifth Circuit recognized that such racial-proportion claims were not and could not be the basis for decision under the VRA. *Robinson*, 86 F.4th at 597-99. As shown below, these Movants are now mere bystanders who are cheerleading for a 4-2 map. They neither intensify nor meaningfully diverge from the State's interest in defending SB8, a map the Movants did not seek and which conferred little benefit on them. That the Movants are cheered by the two purportedly majority-minority districts drawn by SB8 gives them no unique or concrete interest in contesting the Callais Plaintiffs' racial gerrymandering and other constitutional claims.

## ARGUMENT

### I.   The Movants are not entitled to intervention of right.

The Movants' wish for two majority-minority districts is not a legally protectable interest. Even if it were, they have not demonstrated that State Defendants will not adequately protect it.

**A. No voter has a legally protectable interest in the principle of two African American-majority congressional districts existing in Louisiana.**

       *i.   The requisite interest must be legally protectable.*

Intervention is only appropriate for a "legally protectable" interest. *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015). Where as here movants wish to secure some non-pecuniary benefit of a challenged state action, they must at least be "intended beneficiaries" of that action such that their interest is protected by the Due Process Clause. *Id*. at 660 (immigrants who stood to lose the benefit of deferred action under DAPA had a Fifth Amendment right to due process in deportation proceedings, even if they had no *legally enforceable right* to deferred action). In redistricting, the "intended beneficiary" criterion imposes particular limits on what can constitute a legally protectable interest: when can a voter claim to be an "intended beneficiary" of a given redistricting map? One such limit applies here. The statewide mass of voters of a particular race have no legally protectable interest—let alone a legally enforceable right—in elections with a particular quota of districts in which their preferred candidate can be expected to win. Indeed, it would not even be lawful to attempt to vindicate such a group interest, for "[f]orcing proportional representation is unlawful and inconsistent with this Court's approach to implementing § 2." *Allen*, 599 U.S. at 28.

In contrast, individual voters subjected to racial gerrymandering or a VRA-violative instance of packing or cracking in their individual districts may have an interest in protecting their own voting within those districts. *See, e.g.*, *Shaw v. Hunt*, 517 U.S. 899, 904 (1996). Associations of those voters may have associational standing. But in a redistricting case, it will not do to resort to considerations from inapplicable cases, such as the moral right of initiative proponents to defend a red-light-camera ordinance they spent substantial funds to pass in the face of possibly collusive litigation between a hostile city and camera vendor, *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012), or the right of political committees who train poll watchers to

challenge a law that regulates poll watchers, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022).

Unlike the intervenors in those cases, the individual Movants here do not allege that they have spent any funds of their own or have devoted any substantial time lobbying for SB8. Indeed, as discussed below, because SB8 actually seems to have *excluded* many of the individual Movants from majority-minority districts or to have undermined the weight of their votes, it is hard to understand what unique interest they might now add, other than the cheerleading interest in watching other voters of the same race cast ballots in other supposedly majority-minority districts.

*ii.   The Movants' interests are not legally protectable or endangered.*

The following chart indicates that at least seven of the fourteen individual Movants received no benefit from, or were objectively harmed by, SB8. Five highlighted Movants started in, and under SB8 remained in, non-African American majority districts in which, because of SB8's packing of non-African American voters, these unfortunate Movants became an even smaller minority. One highlighted Galmon Movant, Norris Henderson, stayed in the longtime majority-minority District 2, although he faces a sharp drop in minority control, from 58.65 to 51.01% BVAP, and his brief tellingly does not cite him as receiving a benefit.[2] Ross Williams, in red, is a new Movant recruited by the Galmon Movants to join them as an intervenor, and is unaffected by SB8 because as of Movants' filing, he likely remained a Texas voter.[3] Five individuals, bolded, moved from old District 2 to the newly-created District 6, staying within African American majority districts but experiencing a drop in their percentage of control from

---

[2] See State of Louisiana calculations online at https://redist.legis.la.gov/2024_Files/2024CONGRESSACT2 (SB8, 2024 map) and https://redist.legis.la.gov/2023_07/2023CONGRESSACT5 (HB1, 2022 map).

[3] The facts will show that as of January 12, 2024, the last Texas voter file update, he remained registered there; as of February 1, 2024, he did not appear in Louisiana's voter file. The Galmon Movants may have known this, as they do not actually claim he is a Louisiana voter, has registered, or plans to vote.

58.65 to 53.99% BVAP. Only Clee Lowe and Dorothy Nairne (both Robinson Movants) actually moved from a non-majority-minority district (old 6) into a majority-minority district (new 2).

**Robinson Movants (highlighted saw no change; bolded moved from Dist. 2 to 6)**

| First Name | Last Name | City | Parish | 2022 HB1 | 2024 SB8 |
|---|---|---|---|---|---|
| **Press** | **Robinson** | **Baton Rouge** | **EBR** | **2** | **6** |
| **Edgar** | **Cage** | **Baker** | **EBR** | **2** | **6** |
| Dorothy | Nairne | Napoleonville | Assumption | 6 | 2 |
| Edwin | Soule | Hammond | Tangipahoa | 5 | 1 |
| Alice | Washington | Baton Rouge | EBR | 6 | 5 |
| Clee | Lowe | Baton Rouge | EBR | 6 | 6 |
| **Davante** | **Lewis** | **Baton Rouge** | **EBR** | **2** | **6** |
| **Martha** | **Davis** | **Baton Rouge** | **EBR** | **2** | **6** |
| Ambrose | Sims | W. Feliciana | West Feliciana | 5 | 5 |

**Galmon Movants (individual in red did not appear in Louisiana voter rolls as of 2/1/24)**

| First Name | Last Name | City | Parish | 2022 HB1 | 2024 SB8 |
|---|---|---|---|---|---|
| Edward | Galmon | Greensburg | St. Helena | 5 | 5 |
| Ciara | Hart | Baton Rouge | EBR | 6 | 5 |
| Norris | Henderson | New Orleans | Orleans | 2 | 2 |
| **Tramelle** | **Howard** | **Baton Rouge** | **EBR** | **2** | **6** |
| Ross | Williams | Natchitoches | Natch. | (in Texas) | (in Texas) |

Despite such divergent results, Movants' counsel have represented in *Robinson* that each Movant uniformly supports SB8. *Robinson Plaintiffs' Notice*, *supra*, at 2; *Galmon Plaintiffs' Notice*, *supra*, at 1-2. Indeed, counsel trumpet SB8 as an unambiguous "win" because, in place of their clients, it allows *non-clients* of the same race to vote in two purportedly majority-minority districts. This position bodes ill for civil rights litigation. It is a premise of "highly suspect validity" to suggest that "the rights of some minority voters under § 2 may be traded off against the rights of others of the same minority class" in service of some overall proportionality-based quota. *Johnson v. DeGrandy*, 512 U.S. 997, 1019 (1994) (rejecting State's proposed "safe harbor" of proportionality for § 2 purposes). Sacrificing one's own alleged voting power to support a

9

statewide race-based quota may for some feel like an act of altruism, but it cannot be a "legally protectable interest," and should never become the basis for intervention in federal court.

More broadly, there is no such thing as a statewide racial group's legally protectable interest in controlling two districts. *See Allen*, 599 U.S. at 28. The desire to see two majority-minority districts—now, wrongly claimed as the result of and even the mandate arising from *Robinson*—is no basis for intervention. If any group or person is allowed to intervene, it should be a litigant that can establish an interest in protecting an individual voting rights benefit (undoing a "pack" or "crack") from a threat that could materialize in this litigation if the Court adopts a remedy. But that is not what these Movants allege. No Movant so much as speculates that a departure from SB8 may pack or crack any particular voter. Instead, the Movants simply base their "interest" on the "right" to two majority-minority districts. That right does not exist. Therefore, the Movants cannot show a "legally protected interest" that could be impaired or endangered by this litigation.

### B. Movants have not demonstrated that their interests will not be adequately represented by the State Defendant.

Two presumptions control. First, a "public entity must normally be presumed to represent the interest of its citizens and to mount a good faith defense of its laws." *City of Houston*, 668 F.3d at 294. In *City of Houston*, that presumption was overcome only because the City and its red-light-camera vendor, which were both opposed to a citizen-initiated red-light-camera measure and which each had "millions of dollars" at stake, appeared to have engaged in "hasty" and collusive litigation, including an agreed-order to preserve the cameras, raising "substantial doubts" about the City's "motives and conduct" within the litigation. *Id*. As in *City of Houston*, the intervenor must show "that its interest is in fact different from that of the government entity and that the interest will not be represented by it." *Texas v. United States*, 805 F.3d at 661-662.

A second presumption arises where the "would-be intervenor has the same ultimate objective as a party to the lawsuit;" it is overcome by showing "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.*; *see also Bush v. Viterna*, 740 F.2d 350, 355 (5th Cir. 1984). Movants must "produce something more than speculation as to the purported inadequacy." *Moosehead Sanitary Dist. v. S.G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979).

Both presumptions apply, but Movants overcome neither because they cannot make the showings required in *Texas v. United States*. Starting with the state-entity presumption, Movants did not show that their interest is different from the Defendant's. This Court must take Movants at their word that their interest is in protecting the two-district quota for African American majorities, rather than in protecting any particular Movant from cracking or packing. As the Callais Plaintiffs pleaded and showed in their Motion for Preliminary Injunction, meeting this two-district quota was the sole reason for SB8. **Doc. 17-1, at 2, 15-24, 27-28**. This conclusion is amply cited by direct evidence as well as circumstantial evidence, such as the bizarre shape of new District 6 that is perfectly traced to encompass African American populations over a several-hundred-mile stretch.

The Movants cite no reason whatsoever to disbelieve that the current Defendant—a new State officeholder who was not a party defending the prior law, HB1—would somehow refuse to enforce SB8. Instead, Movants cite back to *other* State officeholders' original defense of HB1 in *Robinson*. Had SB8 not been enacted, or had Movants taken the position that SB8 was an inadequate remedy that betrayed the State's resistance to their claims, Movants would be on the road to an argument. But Movants claim that SB8 is the result of their "win" in *Robinson* and was compelled by *Robinson*. They have told the Middle District and this Court that they support SB8. Thus, there's no evidence that Movants and the Defendant have different interests or objectives.

11

For similar reasons, Movants cannot overcome the second presumption. They did not show adversity of interest, nonfeasance, or collusion. So far, the Defendant in this case has taken no steps to injure Movants. Simply put, Movants cannot on the one hand sound the trumpet of triumph by claiming that their *Robinson* win compelled a 4-2 map and that the State acceded in SB8, but then on the other claim that the State somehow remains recalcitrant. There is no evidence of inadequate representation.

### C. There is no basis for the Galmon Movants—the original Galmon plaintiffs and the new individual they recruited—to intervene here.

"A court must be circumspect about allowing intervention of right by public-spirited citizens in suits by or against a public entity for simple reasons of expediency and judicial efficiency." *City of Houston*, 668 F.3d at 294. The greatest danger in admitting intervenors to a fast-moving case like this is the possibility of delay and procedural maneuvering. That danger is not theoretical. The Movants' primary purpose is not the defense of SB8 before this three-judge Court where the case must be tried, but instead, the improper transfer of this proceeding back to a single-judge district court which no longer presides over any case or controversy. *See infra* Part II-III. Such procedural maneuvering wastes party and judicial resources and, more importantly, delays the fact-finding and legal analysis that must occur quickly in an election year.

Here, if any Movants will be admitted, there is one set—the Galmon Movants—whose interest is particularly thin and, more importantly, who merely duplicate (at best) the interests of organizational entities and other individuals who are represented by another group of counsel. The Galmon Movants include four plaintiffs from *Robinson* and one newly-recruited individual, and none can contribute any unique facts or injury that is not already represented among the Robinson entity-plaintiffs or some of the individual Robinson Movants. Two of the original Galmon plaintiffs began and, under SB8, remain in non-majority-minority districts. One original plaintiff

began in and remains in District 2 under SB8, and one other original plaintiff began in District 2 and moves to the new District 6 under SB8—fact patterns already represented by no fewer than four Robinson Movants. *See supra*, Part I.A.ii. If these Robinson Movants intervene, there is no reason to admit a fifth person with the exact same characteristics, bringing in an entirely new team of lawyers and experts and the attendant costs and delay.

The original Galmon plaintiffs seemingly recognized this problem, recruiting a brand new individual solely for purposes of intervention in the apparent hope that the new recruit could be used to bootstrap the original individuals into party status. This new recruit, Ross Williams, claims to "reside" in Natchitoches Parish, which moved from District 4 to the new District 6 under SB8. But tellingly, Williams does not claim to be *registered* in Natchitoches Parish, to have been burdened by *voting* in the old District 4, or to have specific plans to *vote* in SB8's new District 6. A review of Louisiana voter rolls reveals that Ross Williams has *never* been registered to vote in Natchitoches Parish. The last place he was registered to vote was in DeSoto, Texas. His mere residence in a "corridor" parish, which was narrowly included in District 6 on its path between areas with larger African American populations, does not create a sufficient interest to grant him (and a host of attorneys) intervention of right in addition to the Robinson Movants.

In short, in the event this Court is inclined to admit any Movant-Intervenor, it should be limited to a few of the unique Robinson Movants. The Galmon Movants add nothing and, in any event, derived little or no benefit from SB8. On the other hand, avoiding a superfluous set of counsel and experts will expedite the case and result in substantial savings for the other parties.

## II.    The Movants are not entitled to permissive intervention.

Movants alternatively seek permissive intervention pursuant to Rule 24(b). Movants have the burden to show they "(A) [are] given a conditional right to intervene by a federal statute; or (B) [have] a claim or defense that shares with the main action a common question of law or fact."

Fed. R. Civ. P. 24(b)(1). Only (B) is at issue here. And even if Movants satisfy Rule 24(b)(1), permissive intervention remains discretionary. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). It is never required. Critically, "[i]n exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). These Movants should not join the case; their case shares no questions of law or fact the present one, they are already adequately represented, and their proposed intervention can only disturb the efficient disposition of this case.

First, Movants have not satisfied the commonality requirement of Rule 24(b). They merely claim they "are uniquely situated to contribute to full development of the factual record in this case." **Robinson Motion, Doc. 18-1 at 24**. But the facts are entirely different here. SB8, not HB1, is the basis for this litigation. The Federal Constitution, not the VRA, is the basis for the claims.

Second, Movants are not entitled to permissive intervention because, as shown above, they are already adequately represented by another party. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d. 452, 472 (5th Cir. 1984) (noting that the district court should consider, among other factors, whether intervenors are adequately represented). As stated above, Movants have not demonstrated any inadequacy in the Defendant's defense or any divergent interest. At a minimum, it is unnecessary to allow the Galmon Movants to intervene, as they duplicate the Robinson Movants and no one has shown that they cannot adequately represent voters' interests.

Third, Movants' reason for intervening in this litigation appears to simply be to create a procedural hurdle by forcing an improper transfer, *see infra* Part III, which will only cause undue delay. The resulting prejudice and undue delay to Plaintiffs, who have suffered unconstitutional injury that must be immediately repaired, weigh against intervention. Fed. R. Civ. P. 24(b)(3).

### III.      Transfer is unwarranted.

This Court should deny Robinson Movants' Motion to Transfer for several independent reasons: (A) the application of 28 U.S.C. § 2284 bars transfer; (B) Plaintiffs and Movants agree that venue is proper in this tribunal; (C) the proposed transferee court no longer has Article III jurisdiction over Movants' original case; and (D) the first-to-file principle does not apply.

### A.  28 U.S.C. § 2284 bars transfer.

Congress has granted Plaintiffs an undeniable statutory right to litigate their constitutional claims before this three-judge Court. 28 U.S.C. § 2284(a); *Shapiro v. McManus*, 577 U.S. 39, 43 (2015). 28 U.S.C. § 2284 says that a "district court of three judges *shall* be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). As the United States Supreme Court has stated:

> That text's initial prescription could not be clearer: "A district court of three judges *shall be convened* ... when an action is filed challenging the constitutionality of the apportionment of congressional districts...." 28 U.S.C. § 2284(a) (emphasis added). Nobody disputes that the present suit is "an action ... challenging the constitutionality of the apportionment of congressional districts." It follows that the district judge was *required* to refer the case to a three-judge court, for § 2284(a) admits of no exception, and "the mandatory 'shall' ... normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see also National Assn. of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661–662 (2007) (same).

*Shapiro*, 577 U.S. at 43.[4] There is absolutely no "grant of discretion to the district judge to ignore § 2284(a)." *Id.* It's clear that "Congress intended a *three-judge court*, and *not a single district*

---

[4] *See also Abbott v. Perez*, 138 S. Ct. 2305, 2315 (2018) (noting that a case where plaintiffs brought constitutional and VRA claims that "some of the districts in the new plans were racial gerrymanders, some were based on intentional vote dilution, and some had the effect of depriving minorities of the equal opportunity to elect the candidates of their choice . . . was assigned to a three-judge court, *as required* by 28 U.S.C. § 2284(a) (emphasis added)); *Bethune-Hill*

*judge*, to enter *all* final judgments in cases satisfying the criteria of § 2284(a)." *Shapiro*, 577 U.S. at 44 (emphasis added); *see also* 28 U.S.C. § 2284(b)(3) (forbidding a single judge from taking such action). It would plainly violate the express command of a Congress for a single judge to adjudicate constitutional claims that meet the "low bar" of § 2284. *Shapiro*, 577 U.S. at 46.

Moreover, Congress's plain text requires that the *specific* three-judge Court empaneled under § 2284(b)(1) both try the case and enter judgment, including a remedy. *See* 28 U.S.C. § 2284(b)(3). Congress even prevented a single judge from entering a preliminary injunction. *Id*. Once plaintiffs request a three-judge panel (which happened here, **Doc. 1**), and the court grants the request (which happened here, **Doc. 5**), and the chief judge of the circuit empanels two other judges (which happened here, **Doc. 5**), the statute mandates: "The judges so designated, and the judge to whom the request was presented, *shall* serve as members of the court to hear and determine the action or proceeding." 28 U.S.C. § 2284(b)(1). Like "shall" in § 2284(b)(3), "shall" in § 2284(b)(1) is an "explicit command." *Shapiro*, 577 U.S. at 44. As with § 2284(a), "the mandatory 'shall' . . . creates an obligation impervious to judicial discretion." *Id*. at 43 (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)); *see also id.* (noting that § 2284(b)(1) must be read as "entirely compatible" with § 2284(a), a conclusion "bolstered by § 2284(b)(3)'s explicit command"); *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.,* 600 U.S. 181, 290 (2023) ("This Court has long recognized, too, that when Congress uses the same

---

*v. Va. State Bd. of Elecs.*, 137 S. Ct. 788, 796 (2017) ("Because the claims 'challeng[ed] the constitutionality of the appropriation of [a] statewide legislative body,' the case was heard by a three-judge District Court." (quoting 28 U.S.C. § 2284(a))); *Cooper v. Harris*, 581 U.S. 285, 293 n.2 (2017) ("Challenges to the constitutionality of congressional districts are heard by three-judge district courts, with a right of direct appeal to this Court."); *Harris v. Ariz. Indep. Redistricting Comm'n*, 578 U.S. 253, 257 (2016) (noting that 28 U.S.C. § 2284(a) "provid[es] for the convention of such a court *whenever* an action is filed challenging the constitutionality of apportionment of legislative districts" (emphasis added)).

terms in the same statute, we should presume they 'have the same meaning.'" (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005))).

Plaintiffs have plainly met the criteria for § 2284 by filing "an action . . . challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a); *Shapiro*, 577 U.S. at 46. They have filed an action challenging the constitutionality of Louisiana's congressional apportionment statute under the Fourteenth and Fifteenth Amendments. **Doc. 1.** Plaintiffs present the same Fourteenth Amendment gerrymandering challenge to this apportionment scheme presented in dozens of other cases where courts have empaneled a three-judge district court under § 2284.[5] **Doc. 1, 17**. Plaintiffs also satisfied any procedural requirements under § 2284(b)(1). **Doc. 1, 5**. Thus, Plaintiffs are entitled to have their constitutional challenges to the apportionment scheme heard before this three-judge Court. It would violate the "explicit command" of Congress for this Court to transfer the case to another single-judge court. *Shapiro*, 577 U.S. at 44.

### B. Venue is proper in this Court.

Additionally, the Robinson Movants agree with Plaintiffs that jurisdiction and venue are proper before this tribunal. **Robinson Motion, Doc. 18-2 at 2** ("Intervenor-Defendants admit that 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. 1331 and 1343(a)(3) and (a)(4) confer jurisdiction over the claims . . . ."); *see also* **Galmon Motion, Doc. 10-1 at 2** (stating in response to jurisdictional and venue paragraph in Plaintiffs' Complaint that it "contains a legal conclusion to which no response is required"); Fed. R. Civ. P. 8(b)(6) (failure to respond amounts to an

---

[5] *See, e.g.*, *Allen v. Milligan*, 599 U.S. 1, 16 (2023); *Abbott*, 138 S. Ct. at 2315; *Bethune-Hill*, 137 S. Ct. at 796; *Cooper*, 581 U.S. at 293 n.2; *Evenwel v. Abbott*, 578 U.S. 54, 62 (2016); *Perry v. Perez*, 565 U.S. 388, 391 (2012) (per curiam); *LULAC v. Perry*, 548 U.S. 399, 409 (2006); *Reno v. Bossier Parish Sch. Bd.*, 117 S. Ct. 1491, 1507 (1997); *United States v. Hays*, 515 U.S. 737, 741 (1995); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Shaw v. Reno*, 509 U.S. 630, 637 (1993).

admission). By their failure to properly deny the appropriateness of venue, the Movants posit that they have no qualms with the present venue. Transfer is wholly unwarranted.

### C.  There is no longer a case or controversy in the Middle District of Louisiana.

Even if the explicit command of § 2284 and the Movants' admissions on the present venue did not bar transfer, the absence of Article III jurisdiction and of a live controversy before the Middle District of Louisiana should. The Robinson Movants argue that transfer is necessary because "the *Robinson* action is pending and remains active" in the Middle District. **Doc. 18-1 at 24**. But there is no longer a case or controversy there; this Court should not transfer the case.

Article III limits the judicial power of federal courts to adjudicating "cases" and "controversies." U.S. Const. art. III, § 2. This requires federal courts to ensure, among other things, that parties have standing, the parties satisfy the adversariness requirement, the case is not moot, and the parties have not merely asked the court to issue an advisory opinion. If any of these elements are lacking, no case or controversy exists, and the court must immediately dismiss the case for lack of jurisdiction. *See Pool v. City of Houston*, 87 F.4th 733, 733 (5th Cir. 2023).

Movants' standing in their original case arose from their allegations that the State's 2022 redistricting plan (HB1) violated their rights under the VRA, that injury was traceable to the State, and that injury was redressable by the Court.

Galmon Movants recently informed the Middle District of Louisiana single-judge Court that "they do not oppose Senate Bill 8 ("S.B. 8"), the new enacted congressional map that was passed by the legislature in the 2024 First Extraordinary Session and was signed by the Governor and became effective on January 22, 2024." *Galmon Plaintiffs' Notice*, *supra*, at 1-2. They did so the same day they moved to intervene in this case. In doing so, they admitted that the injury they had asserted all along—the injury from an unlawful redistricting map—had been fully redressed by the State's action, and there was no additional action for the Middle District to take. However,

18

Movants still requested that the "Court retain jurisdiction of this action to adjudicate challenges to S.B. 8 and any related litigation regarding Louisiana's congressional map." *Id*. at 2.

Robinson Movants also told the Middle District that they "do not oppose the new enacted map." *Robinson Plaintiffs' Notice*, *supra*, at 2. They too thereby admitted that they no longer suffer an injury traceable to the State. They nonetheless argued that the case before the Middle District "is not moot" because the single-judge Court "should retain jurisdiction over this matter to determine the legal viability of the State's Remedial Map." *Id*.

These notices strip the Middle District of Louisiana of jurisdiction for several reasons.

First, all that is left for the Middle District to do is issue an advisory opinion. The Robinson Movants *admitted* in their notice to the Middle District that even though neither party opposed or contested SB8, the Court should nonetheless assess the legal viability of SB8. ***Id***. In doing so, they urged the Court to render an unconstitutional advisory opinion in violation of Article III. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions."); *see also Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). The Middle District may not do so; since there is no remaining adjudication, it must dismiss the case.

Second, the necessary adversariness for the Middle District to retain jurisdiction under Article III has fully ceased to exist now that the State has repealed HB1 and Movants have accepted SB8 without objection. *Baker v. Carr*, 369 U.S. 186, 204 (1962); *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023). That's evident from Movants' own admission to the original court and their position in this Court that they desire to defend the State and its recently enacted redistricting

map. Movants and the State agree on the legal issue before the Middle District—*i.e.* the legality of the State's redistricting map. Thus, "there is no adversity and hence no Article III case or controversy." *Pool*, 87 F.4th at 734.

Finally, the case before the Middle District is moot. Now that the State has repealed HB1 and enacted a new map, and Movants have *expressly* admitted that they have no qualms with the new map, all three of these required elements for standing have vanished from their original case. Thus, there is no longer the required Article III case or controversy for the single-judge Court to entertain. *See* U.S. Const. art. III. As the Supreme Court has recently stated:

> At all stages of litigation, a plaintiff must maintain a personal interest in the dispute. The doctrine of standing generally assesses whether that interest exists at the outset, while the doctrine of mootness considers whether it exists throughout the proceedings. To demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury. And if in the course of litigation a court finds that it can no longer provide a plaintiff with any effectual relief, the case generally is moot.

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021). Movants no longer assert an injury that is traceable to the State, and they no longer seek any remedy from the State. *Id*. Movants admit that the State HB1 has been fully repealed, and SB8 does not injure them in any way. *Fantasy Ranch Inc. v. City of Arlington, Tex*., 459 F.3d 546, 564 (5th Cir. 2006); *cf. North Carolina v. Covington*, 138 S. Ct. 2548, 2551 (2018) (where plaintiffs continued to contest the State's newly enacted map). Thus, the case is moot.

Admitting that they no longer suffer constitutional injury from the repealed law (and thus the *Robinson* Court no longer has Article III jurisdiction), Movants argue, nonetheless, that the case is not moot because they *may* someday suffer a new injury "[s]hould Plaintiffs succeed in invalidating SB8." **Robinson Motion, Doc. 18-1 at 26**. But that argument fails on several fronts.

Movants were not, nor have they ever been, entitled to the particular map enacted in SB8. Neither the Middle District nor the Fifth Circuit ever issued a final order entitling them to this

map—or even a map with two majority-minority districts. They have no enforceable judgment. Nor does the VRA entitle them to the map in SB8 or even a map with two majority-minority districts. *Allen*, 599 U.S. at 28; *Robinson*, 86 F.4th at 597-99.

Additionally, now that their original injury has vaporized, any injury they claim to suffer from this lawsuit is not a traditionally recognized injury at common law, *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); has plainly not materialized, *see Spokeo*, 578 U.S. at 339; and is too speculative to support standing and the continued jurisdiction of the single-judge Court, *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013). Moreover, any injury is plainly not traceable to State Defendants in the Middle District to support the single-judge Court's continued exercise of jurisdiction. *Uzuegbunam*, 141 S. Ct. at 796. The case is moot.

In sum, Movants no longer have a case or controversy in the Middle District. The presence of a lawsuit somewhere else does not revive Article III jurisdiction. Movants cannot cure this defect by dragging in another party to oppose them in the State's stead. *Cf. Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013). This Court should not grant the transfer motion.

### D.  The first-to-file principle does not apply.

In the face of all these bars to transfer, Movants rely wholly on the first-to-file principle. Movants claim "[t]his case raises substantially similar issues to the first-filed and currently pending Robinson action." **Robinson Motion, Doc. 18-1 at 24**. They tendered a "first-filed" motion to the Middle District two days before moving to transfer here. *Id.* **at 8 n.1**. Transfer based on the first-to-file principle, though, would be error for three independent reasons.

*i. The statutory mandate trumps this principle of comity.*

First, the first-to-file principle cannot apply because it is strictly a discretionary judicial principle of comity, and as such, it "must yield" to statutory commands. *Sutter Corp. v. P & P Indus, Inc*., 125 F.3d 914, 917 (5th Cir. 1997) (holding that "concerns about comity notwithstanding . . . the 'first to file rule' must yield" in the face of a federal statute, "even though the same issues were first raised" another court). This three-judge Court has been convened in this case pursuant to 28 U.S.C. § 2284, which now requires this three-judge Court to hear this case. *See* Part III.A, *supra*. Thus, first-to-file comity must yield to this statutory guarantee.

The principle is also "discretionary," not mandatory. *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011) (quotation omitted). Because § 2284 is mandatory and forbids the exercise of judicial "discretion," *Shapiro*, 577 U.S. at 43, this Court is not at liberty to exercise such discretion under the first-to-file principle.

Additionally, the first-to-file principle is inapplicable because it is only used where the transferor and transferee courts are of "coordinate jurisdiction and equal rank." *Sutter Corp*., 125 F.3d at 917 (quoting *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985)). Here, the jurisdiction and rank of this three-judge Court empaneled pursuant to a statutory mandate, and that of the *Robinson* single-judge Court, are not equal.

As Chief Judge Dick of the Middle District of Louisiana has recently noted based on Supreme Court precedent, redistricting cases may and often do operate on "parallel" tracks, given the unique application of § 2284 to some but not all redistricting claims. *Nairne v. Ardoin*, 2023 WL 7427789, at *1 (M.D. La. Nov. 9, 2023) (quoting *Allen*, 599 U.S. at 16). Thus, it's not uncommon for two redistricting cases to proceed simultaneously without reference to the first-to-file principle.

22

> ii.   Alternatively, *Robinson does not "substantially overlap."*

Even apart from that statutory trump card, the first-to-file principle does not apply here. Unlike § 2284, this Court has discretion to decide to apply the principle. *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677 (5th Cir. 2011) (quotation omitted). But before it exercises such discretion, the moving party must make several showings.

A party seeking transfer based on the first-to-file principle must show that the two actions "substantially overlap." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Actions do not overlap when they are "capable of independent development." *Id.* at 407. Crucially, if the dominant issues may "ultimately turn out to be distinct in each suit" transfer is unwarranted. *Mann Mfg.*, 439 F.2d at 408. "[S]ome risk of 'duplication'" between the cases also cannot compel transfer. *Int'l Fidelity Ins. Co.*, 665 F.3d at 678.

Transfer is unwarranted. This case is more than "capable of independent development." *Id.* at 407. Plaintiffs here seek redress for constitutional harms arising from SB8. *Robinson* plaintiffs previously sought redress for statutory harms related to the enactment of HB1. These cases implicate entirely different legal bases, state statutes, and facts. Movants have admitted that they have no qualms with SB8, and thus it is not the subject of litigation or any case or controversy in *Robinson*. Not only that, but there is no more "independent development" to be had in *Robinson* since it is plainly moot *Id*. Thus, all future development in this case is, by nature, independent.

Movants reason that this Court should grant transfer because of the *Robinson* Court's experience in the prior lawsuit. **Robinson Motion, Doc. 18-1 at 24**. But the facts of *that* case, HB1, and a VRA challenge to *that* map, do not inform the facts of *this* case, SB8, and constitutional challenges to *this* map. SB8's map was never litigated or discussed in *Robinson*. The constitutional questions in this case were never litigated or discussed in *Robinson*. SB8 was never litigated or

23

discussed in *Robinson*. Thus, factual development of this case, expert reports based on this new map, and discovery will be entirely different than *Robinson*.

Movants' fears regarding conflicting rulings are equally unavailing. Specifically, Movants worry that a "plan cannot simultaneously respect the *Robinson* court's ruling . . . *and* the ruling Plaintiffs seek here." **Robinson Motion, Doc. 18-1 at 27**. But again, the *Robinson* Court has issued no ruling or final order, and it has lost jurisdiction to enter a ruling that might have preclusive effect. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Pool*, 87 F.4th at 734 (barring district court from reaching merits or issuing preclusive judgment when it lacks jurisdiction and requiring it to immediately dismiss the case). Further, as shown in the Background, *supra*, *Robinson* did not require that all future maps have two majority-minority districts; it simply found, without deciding, that, from the starting point of HB1, the *Robinson* plaintiffs' proposed alternative maps likely showed that a second district could be drawn and therefore showed that HB1 likely violated the VRA. But now we are starting from SB8, or from no map at all. From this new slate, it may be that two majority-minority districts need not be drawn—particularly with new and more recent facts and analysis. Thus, there simply are no, nor will there be, any conflicting rulings.

> *iii.   Alternatively, compelling reasons bar application of the rule.*

Because the first-to-file principle does not apply, this Court need go no further. But if this Court were to favor its application, an exception should apply. The first-to-file principle is not a rigid rule to be mechanically applied; circumstances may compel the opposite outcome. *Portchartrain Partners, LLC v. Tierra de Los Lagos, LLC*, 48 F.4th 603, 606 (5th Cir. 2022). With respect to later-filed § 2284 redistricting cases, "it is appropriate to depart" from the first-to-file principle when the second action convenes a three-judge panel under § 2284, given the "special circumstances which justify giving priority to the second action." *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001). Likewise, the absence of a live Article III case or controversy in

the first-filed case is a compelling reason not to apply it. Thus, even if *Robinson* did substantially

overlap with this case, special circumstances preclude applying the rule. If Movants nonetheless

insist on consolidation, *Robinson* should be transferred and consolidated into this case—not vice

versa.

## CONCLUSION

Plaintiffs respectfully ask the Court to deny the Motions to Intervene and the Motion to

Transfer (**Doc. 10, 18**).

Dated this 14th day of February, 2024          Respectfully submitted,

**PAUL LOY HURD, APLC**                        **GRAVES GARRETT GREIM LLC**
*/s/ Paul Loy Hurd*                            */s/ Edward D. Greim*
Paul Loy Hurd                                  Edward D. Greim
Louisiana Bar No. 13909                        Missouri Bar No. 54034
Paul Loy Hurd, APLC                            *Admitted Pro Hac Vice*
1896 Hudson Circle, Suite 5                    Jackson Tyler
Monroe, Louisiana 71201                        Missouri Bar No. 73115
Tel.: (318) 323-3838                           *Admitted Pro Hac Vice*
paul@paulhurdlawoffice.com                     Matthew Mueller
*Attorney for Plaintiffs*                      Missouri Bar No. 70263
                                               *Admitted Pro Hac Vice*
                                               GRAVES GARRETT GREIM LLC
                                               1100 Main Street, Suite 2700
                                               Kansas City, Missouri 64105
                                               Tel.: (816) 256-3181
                                               Fax: (816) 256-5958
                                               edgreim@gravesgarrett.com
                                               *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that, on this 14th day of February 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
