IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **PHILLIP CALLAIS,** *et al.*, <br><br> **Plaintiffs,** <br><br> v. <br><br> **NANCY LANDRY, in her official capacity as Louisiana Secretary of State,** <br><br> **Defendant.** | Case No. 3:24-cv-00122-DCJ-CES-RRS |

*GALMON* **PROPOSED INTERVENORS' REPLY
IN SUPPORT OF MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 1

CONCLUSION ....................................................................................................................... 7

CERTIFICATE OF SERVICE AND CONSENT SOUGHT ................................................. 8

## TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Berry v. Ashcroft*,
  No. 4:22-CV-00465-JAR, 2022 WL 1540287(E.D. Mo. May 16, 2022)..................................5

*Bush v. Vera*,
  517 U.S. 952 (1996)..........................................................................................................6

*Clark v. Calhoun County*,
  88 F.3d 1393 (5th Cir. 1996) ............................................................................................6

*Clark v. Putnam County*,
  168 F.3d 458 (11th Cir. 1999) ..........................................................................................5

*Cooper v. Harris*,
  581 U.S. 285 (2017)......................................................................................................2, 6

*Easley v. Cromartie*,
  532 U.S. 234 (2001)..........................................................................................................2

*Idaho Farm Bureau Federation v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ............................................................................................3

*Little v. King*,
  768 F. Supp. 2d 56 (D.D.C. 2011) ....................................................................................2

*McQuilken v. A & R Development Corporation*,
  510 F. Supp. 797 (E.D. Pa. 1981) ....................................................................................4

*Prete v. Bradbury*,
  438 F.3d 949 (9th Cir. 2006) ............................................................................................3

*Robinson v. Ardoin*,
  605 F. Supp. 3d 759 (M.D. La. 2022), *vacated on other grounds*,
  86 F.4th 574 (2023)...........................................................................................................4

*Robinson v. Ardoin*,
  86 F.4th 574 (5th Cir. 2023) .............................................................................................2

*Theriot v. Parish of Jefferson*,
  185 F.3d 477 (5th Cir. 1999) ............................................................................................6

*Thornburg v. Gingles*,
  478 U.S. 30 (1986)............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 24 .................................................................................................................1, 3, 6, 7

*Gov. Jeff Landry Opens First Special Session on Court Ordered Redistricting*,
    Office of the Governor (Jan. 16, 2024), https://gov.louisiana.gov/news/governor-
    jeff-landry-opens-first-special-session-on-court-ordered-redistricting......................................3

La. Senate, Senate Comm. on Senate & Governmental Affairs, 51st Extraordinary
    Sess., Day 2, (Jan. 16, 2024),
    https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/01/011624SG2..................3

## INTRODUCTION

The basis for Plaintiffs' opposition to intervention, it turns out, is that Proposed Intervenors Edward Galmon, Sr., Ciara Hart, Norris Henderson, Tramelle Howard, and Ross Williams have legal interests that Plaintiffs do not share, views on the merits that Plaintiffs dispute, and arguments about procedure that Plaintiffs would prefer to avoid. But the fact that Proposed Intervenors disagree with Plaintiffs is no reason to exclude them—that adversity counsels *in favor* of granting intervention. Proposed Intervenors have protectable interests in preserving the second Black-opportunity district that they secured in related litigation, and in the electoral opportunities that their assigned congressional districts provide. Those interests are not shared by any other party to this suit. Nor is there any dispute that the motion to intervene is timely, or that Plaintiffs seek to dismantle the Black-opportunity district that resulted from Proposed Intervenors' related action. Accordingly, Proposed Intervenors are entitled to intervene as of right. *See* Fed. R. Civ. P. 24(a).

Proposed Intervenors also qualify for permissive intervention. Their defenses of S.B. 8's second Black-opportunity district—namely, that its creation was required by the Voting Rights Act, and that its configuration was motivated by political calculations—raise legal and factual questions that Plaintiffs will have to answer to succeed on their claims. *See* Fed. R. Civ. P. 24(b). The Court should grant the motion to intervene.[1]

## ARGUMENT

Plaintiffs appear to raise six arguments in opposition to Proposed Intervenors' motion to intervene, none of which is persuasive.

---

[1] After Proposed Intervenors filed their motion, Defendant Secretary of State represented through counsel that she does not oppose Proposed Intervenors' motion to intervene.

1

*First*, Plaintiffs would have this Court deny intervention because, as they tell it, evidence that political goals predominated in district drawing is not a defense to a racial gerrymandering claim. *See* Pls.' Mem. in Resp. to Mots. to Interv. & Transfer ("Mem.") at 1, ECF No. 33-1. This argument is plain wrong. *See Easley v. Cromartie*, 532 U.S. 234, 242–43 (2001) (reversing as clearly erroneous district court's finding that race rather than politics was predominant factor in state's congressional redistricting plan); *Cooper v. Harris*, 581 U.S. 285, 308 (2017) (explaining that racial gerrymandering plaintiffs must "disentangle race from politics and prove that the former drove a district's lines"). It is also entirely irrelevant to intervention. The fact that Proposed Intervenors dispute Plaintiffs' view of the merits is precisely why they seek to intervene—to secure an opportunity to present the evidence and legal authorities that defeat Plaintiffs' claims.

*Second*, Plaintiffs oppose intervention because Proposed Intervenors have indicated that this action relates to the congressional districting litigation that Mr. Galmon, Ms. Hart, Mr. Henderson, and Mr. Howard have been pursuing for the past two years in the Middle District of Louisiana (the "Middle District litigation"). *See* Mem. at 2–3. Plaintiffs' legal contention that cases assigned to a three-judge court can never be transferred to a more appropriate venue is incorrect. *See, e.g.*, *Little v. King*, 768 F. Supp. 2d 56, 64–69 (D.D.C. 2011). And more importantly for these purposes, Plaintiffs cite no authority for the notion that a forum dispute can defeat intervention. The motion to transfer filed by other proposed intervenors should be decided based on a full airing of the relevant considerations, not by muzzling and excluding any voices that take a different view than Plaintiffs.

*Third*, Plaintiffs dispute whether rulings in the Middle District litigation compelled the creation of a second Black-opportunity district. The public record makes clear that the challenged map was drawn as a direct result of Proposed Intervenors' litigation. *See Robinson v. Ardoin*, 86

2

F.4th 574, 601 (5th Cir. 2023) (remanding to provide the Legislature "an opportunity to consider a new map now that we have affirmed the district court's conclusion that the Plaintiffs have a likelihood of success on the merits"); *Gov. Jeff Landry Opens First Special Session on Court Ordered Redistricting*, Office of the Governor (Jan. 16, 2024) (urging Legislature to "heed the instructions of the Court" and adopt new map);[2] La. Senate, Senate Comm. on Senate & Governmental Affairs, 51st Extraordinary Sess., Day 2, at 32:05–33:14 (Jan. 16, 2024) (S.B. 8 sponsor explaining that the map "respond[s] appropriately to the ongoing federal Voting Rights Act case in the Middle District of Louisiana" and reminding committee members that "we are here now because of the federal court's order that we have a first opportunity to act [and the] court's order that we must have two majority-Black voting age population districts").[3] But for purposes of intervention, Proposed Intervenors need only "claim[] an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). Regardless of what consequences may have followed if the Legislature failed to create the second Black-opportunity district during its recent special session, there is no doubting that the special session was called because of the Middle District litigation, or that Proposed Intervenors claim an interest in the voting opportunities resulting from that process. As courts across the country have recognized, proposed intervenors maintain significant protectable interests in defending the outcomes of proceedings in which they participated. *See, e.g.*, *Prete v. Bradbury*, 438 F.3d 949, 954–56 (9th Cir. 2006) (holding that supporters of successful ballot measure maintained sufficient interest in defending measure's legality); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995) (concluding that involvement in administrative process constituted sufficient interest

---

[2] *Available at* https://gov.louisiana.gov/news/governor-jeff-landry-opens-first-special-session-on-court-ordered-redistricting.
[3] *Available at* https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2024/01/011624SG2.

3

action that could affect result reached by that process); *McQuilken v. A & R Dev. Corp.*, 510 F. Supp. 797, 803 (E.D. Pa. 1981) (granting intervention as of right where lawsuit "could impair [intervenor]'s ability to protect their legal interest in obtaining full compliance with the judgment" achieved in prior litigation).

*Fourth*, Plaintiffs claim that none of the Proposed Intervenors benefit from S.B. 8's changes to the previous map. But as Plaintiffs' own brief explains, Mr. Henderson's district, CD-2, was unpacked to allow for the creation of a second Black opportunity district, *see* Mem. at 8, curing the unlawful vote dilution that he suffered under Louisiana's previous congressional districting plan. *See Thornburg v. Gingles*, 478 U.S. 30, 46 n.11 (1986) (recognizing "[d]ilution of racial minority group voting strength may be caused by . . . the concentration of blacks into districts where they constitute an excessive majority"); *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 817–18 (M.D. La. 2022) (finding all individual plaintiffs in Middle District litigation, including Mr. Henderson, had standing because they resided in a district alleged to have been "packed or cracked"), *vacated on other grounds*, 86 F.4th 574 (2023). Mr. Howard, in turn, was reassigned from H.B. 1's packed CD-2 to S.B. 8's CD-6, the new Black-opportunity district. Surely, he has an interest in preserving the opportunities newly afforded by that district, particularly after he filed a lawsuit to create it. And while Dr. Williams recently moved back to Natchitoches Parish from Texas, Plaintiffs' action seeks *prospective* relief for the 2024 election. *See* Compl. at 31, ECF No. 1 (requesting "an injunction barring the State of Louisiana from using SB's map of congressional districts for any election"); *id.* at 5–6 (declaring each Plaintiff's "plans to vote in the 2024 congressional election"). Dr. Williams, too, plans to vote in the 2024 congressional election, and he maintains a strong interest in doing so in S.B. 8's new CD-6, where he is now registered.

*Fifth*, Plaintiffs suggest that Proposed Intervenors offer interests that are identical to the Defendant Secretary of State's, or, perhaps, redundant of interests offered by other proposed intervenors. *See* Mem. at 10–13. Neither is correct. The Secretary of State (like the State of Louisiana, which recently moved to intervene here) has opposed Proposed Intervenors' interests at every turn in the Middle District litigation. Indeed, Plaintiffs' own complaint emphasizes several instances where the government defendants in the Middle District action attacked the notion that federal law requires a second Black-opportunity congressional district in Louisiana. *See, e.g.*, Compl. at 4, 8–9. Adequate representation of Proposed Intervenors' interests cannot be entrusted to figures who have been overtly hostile to those very interests for the past two years. And, as even Plaintiffs appear to acknowledge, Louisiana officeholders do not maintain interests "in protecting any particular Movant from cracking or packing," Mem. at 11, which is precisely the injury that Proposed Intervenors seek to avoid.[4]

Additionally, Plaintiffs cite no authority for the suggestion that the interests of original proposed intervenors can be trumped and displaced by the motions of subsequent proposed intervenors. In fact, it is ordinary for multiple groups of voters to intervene in redistricting actions, particularly where, as here, both groups include "litigants in parallel [federal] court suits." *Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287, *1–3 (E.D. Mo. May 16, 2022) (granting intervention to two groups of voters who were simultaneously litigating a related action). Doing so is especially appropriate here, where the two groups of proposed intervenors reside in

---

[4] "Because elected officials in a majority-rule democracy may represent only part of the electorate (for instance, members of their party), 'it is normal practice in reapportionment controversies to allow intervention of voters . . . supporting a position that could theoretically be adequately represented by public officials.'" *Clark v. Putnam County*, 168 F.3d 458, 461 n.3 (11th Cir. 1999) (ellipsis in original) (quoting *Nash v. Blunt,* 140 F.R.D. 400, 402 (W.D. Mo. 1992), *summarily aff'd. sub nom. African Am. Voting Rts. Legal Def. Fund, Inc. v. Blunt*, 507 U.S. 1015 (1993)).

5

different parts of Louisiana, and thus may have different interests in the ultimate configuration of the state's congressional districts, and where both sets of intervenors include voters who have been actively litigating to protect their interests in parallel litigation. Courts may not trade off or wave away the rights of proposed intervenors just because other intervenors claim a similar right. When Proposed Intervenors filed their motion—and still today—no "existing parties adequately represent [their] interest." Fed. R. Civ. P. 24(a)(2). Because Proposed Intervenors fully satisfy the elements for intervention as of right, the motion should be granted.

*Sixth*, Plaintiffs oppose permissive intervention, mostly by rehashing unpersuasive arguments already made. *See* Mem. at 14. They also dispute whether Proposed Intervenors' defenses share a common question of law or fact with the main action because, they say, "[t]he Federal Constitution, not the VRA, is the basis for [Plaintiffs'] claims." *Id.* But that is no dispute at all. The Legislature's compliance with the VRA's obligations, courts have made clear, provides a defense against Plaintiffs' constitutional claims, *see Cooper*, 581 U.S. at 292–93; *Bush v. Vera*, 517 U.S. 952, 976–77 (1996); *id.* at 990–92 (O'Connor, J., concurring) ("States have a compelling interest in complying with the [Section 2] results test"),[5] and so the factual predicate and legal principles supporting Proposed Intervenors' VRA rights remain directly at issue.

Proposed Intervenors will show that "[w]hile [the Middle District's] previous finding of a [likely] Section 2 violation required [Louisiana] to redraw its districts, . . . the issue of race was plainly subordinate to the [Legislature's] preoccupation with protecting incumbency and maintaining other political advantages." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 485 (5th Cir. 1999). This showing does not merely share common questions with Plaintiffs' claim, *see* Fed. R.

---

[5] "On this point, at least four other Justices agreed with Justice O'Connor." *Clark v. Calhoun County*, 88 F.3d 1393, 1405 (5th Cir. 1996) (citing dissenting opinions of Stevens and Souter, J.J., joined by Ginsburg and Breyer, J.J.).

6

Civ. P. 24(b)(1)(B), it will foreclose Plaintiffs' claim altogether. Because the Court's adjudication will benefit from a robust presentation of these meritorious defenses—*especially* now that this litigation is proceeding directly to trial on the merits, Scheduling Order, ECF No. 63—it should grant intervention.

## CONCLUSION

The Court should grant Proposed Intervenors' motion to intervene as a matter of right under Rule 24(a)(2), or, in the alternative, permit them to intervene under Rule 24(b).

Respectfully submitted this February 23, 2024.

*s/ J.E. Cullens, Jr.*

J. E. Cullens, Jr. (LA # 23011)
Andrée Matherne Cullens (LA # 23212)
Stephen Layne Lee (LA # 17689)
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. One
Baton Rouge, LA 70810
(225) 236-3636
cullens@lawbr.net
acullens@lawbr.net
laynelee@lawbr.net

*s/ Abha Khanna*

Abha Khanna* (# 917978)
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

Lalitha D. Madduri* (# 917979)
Jacob D. Shelly* (# 917980)
Daniel Cohen* (# 917976)
Qizhou Ge* (# 917977)
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
lmadduri@elias.law
jshelly@elias.law
dcohen@elias.law
age@elias.law

* Admitted *pro hac vice*

Counsel for Proposed Intervenors

7

## CERTIFICATE OF SERVICE AND CONSENT SOUGHT

I hereby certify that on February 23, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system. Additionally, counsel for Defendant Secretary of State appeared in this case after Proposed Intervenors filed their motion to intervene. *See* ECF No. 32. Proposed Intervenors sought the Secretary's position on their intervention, and the Secretary indicated that she does not oppose Proposed Intervenors' motion.

*s/ Abha Khanna*
Abha Khanna

*Counsel for Proposed Intervenors*
