# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br> *Plaintiffs*, <br><br> v. <br><br> NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, <br><br> *Defendant*. | Civil Action No. 3:24-cv-00122 <br><br> Judge David C. Joseph <br><br> Circuit Judge Carl E. Stewart <br><br> Judge Robert R. Summerhays |

### *ROBINSON* MOVANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO RECONSIDER INTERVENTION ORDER

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1
LEGAL BACKGROUND ........................................................................................................ 4
ARGUMENT ............................................................................................................................ 4
   I.    Defendants' Submissions Show That Defendants Will Not Adequately Represent the *Robinson* Movants' Distinct Interests ........................................................... 5
   II.   Intervention at the Merits Stage is Essential to Protect *Robinson* Movants' Interests in the Remedial Phase ................................................................................ 9
   III.  At a Minimum, Movants Should Be Permitted to Participate Fully in the Litigation as Amici to Protect Their Interests and Provide the Court with a Complete Presentation of the Issues. ................................................................... 11
CONCLUSION....................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ardoin* v. *Robinson*,
    143 S. Ct. 2654 (2023) ............................................................................................................. 3

*Austin* v. *Kroger Texas, L.P.*,
    864 F.3d 326 (5th Cir. 2017) .................................................................................................... 4

*E.E.O.C.* v. *Boeing Co.*,
    109 F.R.D. 6 (W.D. Wash. 1985) ........................................................................................... 12

*Brumfield* v. *Dodd*,
    749 F.3d 339 (5th Cir. 2014) ................................................................................................ 5, 9

*Clark* v. *Putnam Cnty.*,
    168 F.3d 458 (11th Cir. 1999) .................................................................................................. 9

*Entergy Gulf States La., L.L.C.* v. *U.S. EPA*,
    817 F.3d 198 (5th Cir. 2016) .................................................................................................... 5

*United States* v. *Hooker Chemicals and Plastics Corp.*,
    749 F.2d 968 (2d Cir. 1984) ................................................................................................... 12

*La Union del Pueblo Entero* v. *Abbott*,
    29 F.4th 299 (5th Cir. 2022) ................................................................................................ 4, 8

*Lefebure* v. *D'Aquilla*,
    15 F.4th 670 (5th Cir. 2021) .................................................................................................. 12

*Morales* v. *Turman*,
    820 F. 2d 728 (5th Cir. 1987) ................................................................................................ 11

*Neonatology Assocs., P.A. v. Comm'r of Internal Revenue*,
    293 F.3d 128 (3d Cir. 2002) (Alito, J.) .................................................................................. 12

*Comfort ex rel. Neumyer* v. *Lynn Sch. Comm.*,
    283 F. Supp. 2d 328 (D. Mass. 2003), *aff'd* 418 F.3d 1 (1st Cir. 2005) (en
    banc) ........................................................................................................................................ 8

*Perry-Bey* v. *City of Norfolk, Virginia*,
    No. 2:08CV100, 2008 WL 11348007 (E.D. Va. Aug. 14, 2008) ........................................... 11

*Robinson* v. *Ardoin*,
    37 F.4th 208 (5th Cir. 2022) .................................................................................................... 9

*Robinson* v. *Ardoin*,
   86 F.4th 574 (5th Cir. 2023) ...................................................................................3, 9

*Robinson* v. *Ardoin*,
   No. 3:22-cv-00211-SDD-SDJ (M.D. La. Apr. 29, 2022) ...........................................6

*Russell* v. *Bd. of Plumbing Examiners of Cnty. of Westchester*,
   74 F. Supp. 2d 349 (S.D.N.Y. 1999), *aff'd*, 1 F. App'x 38 (2d Cir. 2001) ...............11

*Smith* v. *Hosemann*,
   No. 3:01-CV-855-HTW-DCB, 2022 WL 2168960 (S.D. Miss. May 23, 2022) .....11

*Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*,
   807 F.3d 472 (1st Cir. 2015) ....................................................................................11

*Terrell* v. *Richardson*,
   No. CV 20-999, 2022 WL 1597841 (W.D. La. May 18, 2022) .................................4

*Thomas* v. *Sch. Bd. St. Martin Par.*,
   544 F. Supp. 3d 651 (W.D. La. 2021), *aff'd in part, rev'd in part sub nom.*
   *Borel v. Sch. Bd. St. Martin Par.*, 44 F.4th 307 (5th Cir. 2022) ................................2

*Thomas* v. *Sch. Bd. St. Martin Par.*,
   No. 65-11314, 2023 WL 4926681 (W..D. La. July 31, 2023) ...................................2

*Trbovich* v. *Mine Workers*,
   404 U.S. 528 (1972) ...................................................................................................5

*Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) ....................................................................................5

*Wyatt By & Through Rawlins* v. *Hanan*,
   868 F. Supp. 1356 (M.D. Ala. 1994) .......................................................................11

**Statutes**

Voting Rights Act ............................................................................................... *passim*

**Other Authorities**

Louisiana Constitution ..................................................................................................6

Rule 24 ..............................................................................................................4, 5, 8, 13

Rule 54(b) ......................................................................................................................4

## **PRELIMINARY STATEMENT**

Movants are the plaintiffs in the extensive prior litigation challenging Louisiana's 2021 congressional plan under the Voting Rights Act ("VRA"). In the *Robinson* action, both the district court and two unanimous panels of the Fifth Circuit agreed with Movants that the 2021 plan likely violates the VRA, and that the remedy for this violation is a plan with two congressional districts that provide Black voters an opportunity to elect candidates of their choice. In ruling that the *Robinson* Movants need not participate in the liability phase of these proceedings, this Court concluded on the record then before it that Defendant Secretary of State and Defendant-Intervenor the State of Louisiana (together, the "Defendants") shared with Movants "a compelling interest" in defending the State's newly enacted congressional plan ("SB8") against Plaintiffs' racial gerrymandering claim. ECF No. 79 ("Order") at 8. The Court also expected that Defendants would adequately represent the *Robinson* Movants' interest. *Id.*

Unfortunately, Defendants' subsequent responses to Plaintiffs' motion for preliminary injunction show that the Court's confidence was misplaced. ECF Nos. 82, 86. The Secretary does not even oppose the preliminary injunction motion. Instead, she has submitted a bare three-paragraph response taking "no position" on the motion. ECF No. 82 at 1. Her stated indifference to the outcome of this motion contrasts starkly with the Secretary's aggressive defense of the 2021 plan in the *Robinson* case, including in forcefully opposing the *Robinson* Movants' preliminary injunction motion.

The State does little better than the Secretary. The State begrudgingly and, at best, nominally opposes the motion. Fundamentally, as Plaintiffs have pointed out in their reply brief in support of their preliminary injunction, *see* ECF No. 101, at 1, 7, the State fails to challenge *at all* core parts of Plaintiffs' argument, including their central contention that race was the predominant factor in the State's adoption of SB8 and that SB8 has a discriminatory effect on

"non-African American" voters. The State's response to the preliminary injunction submission—a submission consisting of a 33-page brief, a 28-page expert report, and more than 200 pages of exhibits—is a cursory 18-page brief that addresses the merits of Plaintiffs' claims in a mere six pages and includes no expert reports, exhibits, or any other evidence. Its brief does not even mention the extensive legislative record supporting SB8, despite the gross mischaracterizations of that record in Plaintiffs' complaint and preliminary injunction motion.

Nor has the State challenged the reliability or conclusions of Plaintiffs' sole expert, Michael Hefner. *Cf., e.g.*, *Thomas* v. *Sch. Bd. St. Martin Par.*, No. 65-11314, 2023 WL 4926681, at *12, *29, (W..D. La. July 31, 2023) (concluding that Mr. Hefner used "'guesswork,' flawed methodology, and inaccurate population measurements" and he lacked the credibility or credentials of other experts); *Thomas* v. *Sch. Bd. St. Martin Par.*, 544 F. Supp. 3d 651, 685 (W.D. La. 2021) (observing that Mr. Hefner's "testimony was argumentative and conclusionary"), *aff'd in part, rev'd in part sub nom. Borel* v. *Sch. Bd. St. Martin Par.*, 44 F.4th 307 (5th Cir. 2022). Moreover, the State proffered Mr. Hefner on the same subject matter in the *Robinson* action, yet it makes no mention of Mr. Hefner's evident conflict of interest or the inconsistencies in his opinions.

In contrast, Movants filed a 35-page amicus brief taking on these issues in detail. Movants provided transcripts of the legislative hearings on SB8 and explained the full legislative context that led to the passage of SB8. They provided a rebuttal to Plaintiffs' central argument that race predominated in the creation of SB8 that the State was evidently unwilling or unable to make. And rather than cursorily citing the rulings of the Robinson district court and the Fifth Circuit—with which the State continues to disagree—Movants provided a full discussion of the record in *Robinson* that led to the district court's conclusion that the 2021 plan likely violated Section 2.

Thankfully, the Court's Order on intervention foresaw the possibility of a half-hearted defense by the existing Defendants, and explicitly invited Movants to seek reconsideration if Defendants' interests and objectives diverge from their own. Order at 7. Defendants' faint responses to Plaintiffs' preliminary injunction motion have since clarified that this is the case. To be sure, the Order permits the Movants to participate as parties in any remedial proceedings, should this case proceed to that stage. *Id.* But Movants will be severely prejudiced, and the Court will be deprived of important argument and evidence, if Plaintiffs' substantive arguments on liability— including responding to Plaintiffs key claim that a map containing two majority-Black districts is a racial gerrymander or discriminates against "non-African-American" voters—go undisputed. Moreover, many of these key questions overlap with questions relevant to remedy, and this Court's findings made during the liability phase—potentially based on an incomplete record—may constrain the nature and breadth of the remedy contemplated by the Court during the remedial phase. That is particularly so because the arguments Plaintiffs urge here—which the State makes no effort to counter—were squarely rejected by the Fifth Circuit in the *Robinson* action. *See Robinson* v. *Ardoin*, 86 F.4th 574, 595 (5th Cir. 2023) (affirming that Movants' illustrative maps with two majority-Black districts were not illegal racial gerrymanders).

It is clear from their submissions that Defendants are unwilling to adequately represent Movants' interest in ensuring a VRA-compliant map with two districts in which Black voters can elect candidates of their choice is in place for the 2024 elections. *Cf. Ardoin* v. *Robinson*, 143 S. Ct. 2654 (2023) (ordering the resolution of the *Robinson* action in "advance of the 2024 congressional elections in Louisiana"). Movants have vigorously pursued their interests across two years of successful litigation the district court, Fifth Circuit, and Supreme Court and back

3

again. Accordingly, Movants respectfully request that this Court reconsider its Order on intervention and grant the request to intervene as parties in the liability phase of the case.

## LEGAL BACKGROUND

Under Rule 54(b), "the Court has broad discretion to 'reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *Terrell* v. *Richardson*, No. CV 20-999, 2022 WL 1597841, at *1 (W.D. La. May 18, 2022) (quoting *Melancon* v. *Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). The Court is "free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin* v. *Kroger Texas, L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere* v. *Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). When the Court issued its Order—in advance of the deadline for responses to the preliminary injunction motion—the Court concluded that "at this time" proposed intervenors had failed to establish "establish adversity of interest, collusion, or nonfeasance on the part of the State." Order at 6. But the Court was clear that the proposed intervenors could seek reconsideration of this ruling in light of later developments. The subsequently filed briefs demonstrate that, if intervention were not appropriate before, it is appropriate now.

## ARGUMENT

Rule 24 entitles parties to intervene and requires courts to grant intervention where four elements are satisfied: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and] (4) the applicant's interest must be inadequately represented by the existing parties to the suit. *La Union del Pueblo Entero* v. *Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (internal citation omitted). The Court has already concluded that Movants

4

established the first three elements for intervention as a matter of right, so the only factor at issue is adequacy of representation. Order at 4.

As the Court has recognized, for the fourth factor, the Movants have "the burden of demonstrating inadequate representation, but this burden is 'minimal.'" Order at 4 (quoting *Brumfield* v. *Dodd*, 749 F.3d 339, 345 (5th Cir. 2014)). The applicants' burden is satisfied if they show that the existing representation "may be inadequate"; this showing "need not amount to certainty." *Id.* (quoting *Guenther* v. *BP Ret. Accumulation Plan*, 50 F.4th 535, 543 (5th Cir. 2022)). Rule 24(a) is construed liberally, "with doubts resolved in favor of the proposed intervenor." *Entergy Gulf States La., L.L.C.* v. *U.S. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (internal quotation marks omitted).

I. **Defendants' Submissions Show That Defendants Will Not Adequately Represent the *Robinson* Movants' Distinct Interests**

The submissions by the State and the Secretary of State in response to Plaintiffs' preliminary injunction motion confirm the necessity of intervention by the *Robinson* Movants in the liability phase of the case. A state defendant's representation is inadequate where the proposed intervenor's private interests "are narrower than [the state's] broad public mission." *Wal-Mart Stores, Inc.* v. *Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016); *Brumfield* v. *Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) (similar). Defendants' responses here demonstrate the difference between a generalized governmental obligation to defend legislative acts and the particular interests of Movants in defending a congressional map adopted, in part, to vindicate their federally protected voting rights as a result of court rulings in their favor—interests that can only be vindicated through intervention. *See Trbovich* v. *Mine Workers*, 404 U.S. 528 (1972) (explaining that inadequacy of representation exists where a proposed intervenor seeks to vindicate

5

individual interests while the government defendant must to "bear in mind broader public policy implications").

In the case of the Secretary, there is not even the bare minimum of acknowledgment of an obligation to defend the map. Despite her status as the sole named Defendant in the case, the Secretary explicitly "takes no position" on the merits of the preliminary injunction. ECF No. 82 at 1. Instead, the Secretary blandly recites her ministerial obligations under the Louisiana Constitution and promises merely to effectuate the current law unless the Court orders otherwise. *Id.* at 2. There can be no starker example of "non-feasance" that would overcome a presumption of adequate representation. Order at 4–5.

Reading the Secretary's response, one might be tempted to conclude the Secretary as a matter of principle does not take positions on the merits of redistricting or defend maps resulting from such processes. No such principle animated the Secretary's response to the Movants' pleadings in the *Robinson* action, however. There, in response to Movants' motion for a preliminary injunction challenging the State's 2021 plan, the Secretary filed a comprehensive, 147 page submission—including two expert reports and two declarations by election administrators—aggressively defending the map against a preliminary injunction. *See* Def.'s Opp'n to Pls.' Mots. For Prelim. Inj., *Robinson* v. *Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Apr. 29, 2022), ECF No. 101–101-4.

In dramatic contrast, the Secretary's written response in this case barely totals one page and contains no such defense. Whatever the reason, the Secretary has made a deliberate choice here to stay silent about SB8. The Secretary's decision not to defend the constitutionality of SB8 means that she cannot adequately represent the Movants' interests in the liability phase of the case.

The submission by Louisiana similarly demonstrates a significant divergence between the State's interests and those of Movants—and certainly, between its half-hearted defense of SB8 and the comprehensive defense Movants are prepared to offer. On its face, and unlike the Secretary, the State's response purports to defend SB8. But that is where any alignment between the State and Movants ends. The State ignores the primary argument underpinning Plaintiffs' request for a preliminary injunction—that race predominated in the passage of SB8. Plaintiffs cite extensively (and misleadingly) to testimony from the Special Legislative Session in January 2024 to support this claim. *See* ECF No. 17-1 at 15–24.

The State does not dispute this selective evidence or cite any of the extensive evidence from the legislative record (thoroughly marshalled in the *Robinson* Movants' amicus brief, see Amicus Br., ECF No. 87-2, at 8–13, 17–23) showing that, contrary to Plaintiffs' position, race was not the predominant factor in the enactment of SB8. The State cites *no* legislative testimony or statements by the bill's sponsors or supporters from the legislative record, nor points to the extensive evidence that other factors, including political motivations and commonality of interests, explain the outcome of the redistricting process, all of which are discussed extensively by Movants in their amicus brief. *Id.* (discussing the legislative record).

Instead, the State's submission principally complains about the "tension" that it perceives in existing voting rights jurisprudence, explains that it saw the "writing on the wall" made evident through the *Robinson* action, and offers the narrowest possible defense of SB8, asserting that any racial motivations by the Legislature survive strict scrutiny. ECF No. 86 at 1–2, 7–12. Although Movants' agree that SB8 would be upheld under a strict scrutiny analysis, the evidence the State omits from its defense shows that strict scrutiny is not warranted, because race did not predominate in the passage of SB8. This divergence is evidence of the fundamental difference in the interests

7

of the State, which wishes—even after enacting SB8—to maintain its position that its original congressional map was lawful, and the Movants, who have litigated for two years to establish that it was not and that Section 2 of the VRA can constitutionally require the State to create a second majority-Black congressional district.  This divergence in interests is more than enough to clear the low threshold required for intervention.  Fed. R. Civ. P. 24; *see also La Union del Pueblo Entero* v. *Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) (reversing the denial of intervention because the private interests of intervenors differed from the public interests of the State).

Plaintiffs' reply confirms the threat to Movants' interests posed by the State's meager defense of SB 8. Plaintiffs contend that the State's failure to respond to the charge of racial predominance amounts to a "concession" that race predominated in SB 8." ECF No. 101 at 1. Plaintiffs again recite selective testimony from the legislative record—testimony that Defendants did not address or supplement—and assert that they have "have shown racial predominance by direct evidence." *Id.* at 3.  Movants' participation during the liability phase is essential to ensuring that this assertion does not go unrebutted.

Plaintiff also submitted the expert report of Michael Hefner in connection with their preliminary injunction motion, who offers an illustrative plan in his report containing one majority-Black district. ECF No. 17-3 at 12; ECF No. 101 at 7.  Mr. Hefner is the *same* expert that the State retained in the *Robinson* action,[1] and the State does not question any of his conclusions here.  Yet despite this obvious conflict of interest as well as the inconsistencies in Mr. Hefner's reports in this case and in *Robinson*, where he described a Red River community of interest running "from Shreveport to the Mississippi River," (*see* Ex. A attached hereto), the State has wholly failed to

---

[1] Although the State offered a lengthy expert report by Mr. Hefner in *Robinson* regarding communities of interest and included him on its pretrial witness list, it chose not to call him to testify at the preliminary injunction hearing in that case.

challenge Mr. Hefner's reliability or his conclusions. *Cf.*, *e.g.*, *Comfort ex rel. Neumyer* v. *Lynn Sch. Comm.*, 283 F. Supp. 2d 328, 341 (D. Mass. 2003), *aff'd* 418 F.3d 1 (1st Cir. 2005) (en banc) (finding expert who switched sides and positions not credible).

These are not mere differences in "litigation strategy" or "variation[s] on an argument." Order, ECF No. 79 at 5 (internal citations omitted). The State's inability or unwillingness to address key arguments made by Plaintiff or to challenge the credibility of Plaintiffs' expert (because that expert also works for the State) reflects a clear divergence between the State's interests and the interests of the *Robinson* Movants. This is evinced in the State's attempt to thread the needle through omission of references to the legislative process, its evident reluctance to criticize an expert that it has previously used (and perhaps may wish to use again), and its unwillingness to contradict prior positions that it has taken in public and in the *Robinson* action. The State's response further highlights the reality that it cannot adequately represent the *Robinson* Movants' interests in this action. *See Brumfield* v. *Dodd*, 749 F.3d 339, 346 (5th Cir. 2014) ("We cannot say for sure that the state's more extensive interest will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires."); *Clark* v. *Putnam Cnty.*, 168 F.3d 458, 461–62 (11th Cir. 1999) (finding "sufficient divergence of interest" between county commissioners and proposed defendant-intervenors representing Black voters).

## II. <u>Intervention at the Merits Stage is Essential to Protect *Robinson* Movants' Interests in the Remedial Phase</u>

The Court's intervention Order permits Movants to be present at hearings and to participate as parties in the remedial phase. Order, ECF No. 79 at 7. But in light of the Defendants' unwillingness to challenge Plaintiffs on critical legal and factual issues that are relevant to both liability and remedy, this late-stage intervention is insufficient to protect Movants' interests, or to

9

enable the Court to receive a fair and complete presentation of the issues implicating those interests.

Plaintiff has urged arguments that were squarely rejected in *Robinson*. If Plaintiffs' position is accepted at the liability stage of these proceedings, it could severely narrow the scope of any remedial hearing and limit potential remedies. For example, Plaintiff asserts in their preliminary injunction motion that *any* congressional map in Louisiana that has more than one majority-Black district is necessarily a racial gerrymander. ECF No. 17-1 at 4-5, 17-18. That assertion was squarely by the Fifth Circuit in *Robinson*. *See Robinson* v. *Ardoin* ("*Robinson II*"), 37 F.4th 208 (5th Cir. 2022); *Robinson* v. *Ardoin* ("*Robinson III*"), 86 F.4th 574 (5th Cir. 2023). Plaintiffs double down on this point in their reply, asserting that they "will show *at trial* that the VRA is fully satisfied with one majority-minority district because it is not possible to draw a second under *Gingles*." ECF No. 101 at 19 (emphasis added). Should Plaintiffs' argument be accepted by the Court during the liability phase, it could preclude Movants from offering evidence that race did not predominate in any proposed remedial map with two majority-Black districts and that such a map can, in fact, be used as a remedy.

Plaintiffs—relying on Mr. Hefner's presentation—also call on the Court to evaluate traditional restricting principles, including communities of interest, during the liability phase. ECF No. 17-1 at 9-10, 21. But any remedial map that complies with the VRA will also likely require analysis of communities of interest and other traditional redistricting principles. If the court has already made findings on these issues or accepted Mr. Hefner's opinions in the liability phase because Defendants did not challenge Plaintiffs' evidence, and Movants may be prejudiced at the remedial phase if they are precluded from litigating these issues.

As with Plaintiffs' other arguments, neither defendant disputes Plaintiffs' characterizations of these issues. *See* ECF Nos. 82, 86. Plaintiffs' reply reveals that allowing Movants to submit an amicus brief at the liability phase is insufficient to protect their interests in view of Defendants' failure to offer a robust defense of SB 8. Movants should be able to participate as full parties during discovery and trial to ensure that the Court may benefit from a complete record on these important legal and factual issues.

**III.** **At a Minimum, Movants Should Be Permitted to Participate Fully in the Litigation as Amici to Protect Their Interests and Provide the Court with a Complete Presentation of the Issues.**

If the Court declines to grant intervention in the liability phase, *Robinson* Movants respectfully request that the Court permit them to participate as amici in oral argument, discovery, and witness examinations—including by ordering that all papers, discovery, deposition transcripts be shared with the *Robinson* Movants—in order to protect their interests discussed above and to provide the Court with the expertise of Movants and their counsel and a complete evidentiary record.

This Court has the discretion to allow amicus participation in the development of the trial record. *See Morales* v. *Turman*, 820 F. 2d 728, 730 (5th Cir. 1987) (noting that amici actively participated in depositions, offered its own experts and witnesses, and cross-examined the parties' witnesses at trial). As one court has noted, amici "have been allowed at the trial level where they provide helpful analysis of the law, they have a special interest in the subject matter of the suit, or existing counsel is in need of assistance." *Perry-Bey* v. *City of Norfolk, Virginia*, No. 2:08CV100, 2008 WL 11348007, at *3 (E.D. Va. Aug. 14, 2008) (cleaned up). District courts adopt a "flexible" approach to amicus participation, permitting a "range of roles" as the circumstances demand, including by permitting a more "active participatory" role beyond providing mere information. *See Wyatt By & Through Rawlins* v. *Hanan*, 868 F. Supp. 1356, 1359 (M.D. Ala. 1994) (allowing

11

*amici* to conduct discovery and participate "fully in trial, including examining witnesses and presenting its own witnesses").

If a third-party is denied intervention, courts regularly provide them with the opportunity to participate as an amicus where doing so is in the interest of justice. *See, e.g.*, *Students for Fair Admissions, Inc.* v. *President & Fellows of Harvard Coll.*, 807 F.3d 472, 478 n.3 (1st Cir. 2015) (allowing would-be intervenors to serve as amici, including the right to submit briefs and exhibits on any dispositive motions, participate in oral argument, and submit declarations or affidavits); *United* States v. *Hooker Chemicals and Plastics Corp.*, 749 F.2d 968, 991-92 (2d Cir. 1984) (permitting amicus to submit briefs and call its own witnesses and cross-examine other witnesses); *Smith* v. *Hosemann*, No. 3:01-CV-855-HTW-DCB, 2022 WL 2168960, at *3 n.6 (S.D. Miss. May 23, 2022) (three-judge court) (permitting amici to file a brief with expert reports and participate in oral arguments); *E.E.O.C.* v. *Boeing Co.*, 109 F.R.D. 6, 11-12 (W.D. Wash. 1985) (denying intervention, but permitting amici to participate in "in various aspects of discovery and trial," including participation in trial and depositions and, with leave of the court, the ability to file independent motions and conduct discovery); *Russell* v. *Bd. of Plumbing Examiners of Cnty. of Westchester*, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999), aff'd, 1 F. App'x 38 (2d Cir. 2001).

To serve as litigating *amici*, Movants need only have an "interest in the case." *See Lefebure* v. *D'Aquilla*, 15 F.4th 670, 671 (5th Cir. 2021) (noting that the relevant interest need not be the same as a party or an interest sufficient for standing, and that an *amici* need not even be helpful to the court); *Neonatology Assocs., P.A.* v. *Comm'r of Internal Revenue*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.) (similar). "Courts should welcome amicus" because they help courts "avoid error in their judgments." *Lefebure*, 15 F.4th at 675. For the reasons articulated here and in Movants' intervention papers, *see* ECF No. 18-1, Movants unquestionably have an interest in this litigation,

12

and allowing their participation as amici in pretrial proceedings and trial is in the interest of justice because it would ensure that the Court has the benefit of legal arguments and evidentiary development that would otherwise be missing from the presentation of this case.

Should the Court deny the request for reconsideration of their motion to intervene, the *Robinson* Movants request the ability, as amici, to (i) participate in trial, including presenting its own witnesses and experts, cross-examining the parties' witnesses, and offering opening and closing statements or oral argument; (ii) participate in fact and expert discovery, including in depositions noticed by other parties; and (iii) with permission of the court, notice a limited number of narrowly targeted depositions. The Court should also require that all papers exchanged by the parties at the liability phase, including discovery requests and responses, produced documents, deposition transcripts, and expert reports be shared with the *Robinson* amici. Such participation is essential to enable Movants to participate fully in the remedial stage and to ensure the Court's review of questions relevant to both liability and remedy are based on a complete presentation of the issues and arguments.

## CONCLUSION

For all of the reasons above, the *Robinson* Movants respectfully request that this Court reconsider its reconsider its Order denying intervention and grant motion to intervene under Rule 24.

| | |
|---|---|
| DATED: March 9, 2024 | Respectfully submitted, |
| By: /s/ *Tracie L. Washington* <br> Tracie L. Washington <br> LA. Bar No. 25925 <br> Louisiana Justice Institute <br> 8004 Belfast Street <br> New Orleans, LA 70125 <br> Tel: (504) 872-9134 <br> tracie.washington.esq@gmail.com | By: /s/ *John Adcock* <br> John Adcock <br> Adcock Law LLC <br> 3110 Canal Street <br> New Orleans, LA 70119 <br> Tel: (504) 233-3125 <br> jnadcock@gmail.com |
| *Counsel for Amici Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule* | *Counsel for Amici* |

14

Stuart Naifeh (admitted pro hac vice)
Kathryn Sadasivan (admitted pro hac vice)
Victoria Wenger (admitted pro hac vice)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
vwenger@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (admitted pro hac vice)
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (admitted pro hac vice)
Megan C. Keenan (admitted pro hac vice)
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

*Additional counsel for Amici*

*Practice is limited to federal court.

Robert A. Atkins (admitted pro hac vice)
Yahonnes Cleary (admitted pro hac vice)
Jonathan H. Hurwitz (admitted pro hac vice)
Amitav Chakraborty (admitted pro hac vice)
Adam P. Savitt (admitted pro hac vice)
Arielle B. McTootle (admitted pro hac vice)
Robert Klein (admitted pro hac vice)
Neil Chitrao (admitted pro hac vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin (admitted pro hac vice)
Dayton Campbell-Harris (pro hac vice forthcoming)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (admitted pro hac vice)
Daniel Hessel (admitted pro hac vice)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu