IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER,<br><br>*Plaintiffs*,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana,<br><br>*Defendant*. | Civil Action No. 3:24-cv-00122<br><br>Judge David C. Joseph<br><br>Circuit Judge Carl E. Stewart<br><br>Judge Robert R. Summerhays |

**ROBINSON INTERVENORS' MEMORANDUM IN SUPPORT OF
THEIR MOTION IN LIMINE**

*Robinson* Intervenors move to exclude 1) evidence or argument offered to prove that SB 8 does not satisfy the *Gingles* standard, 2) evidence or argument on the question of whether Section 2 of the Voting Rights Act requires a congressional redistricting plan that includes two districts in which Black voters have an opportunity to elect candidates of their choice, and 3) testimony from Mr. Hefner regarding the *Hays* case. These issues are not relevant to the claims before this Court and evidence concerning these matters will only serve to confuse the issues and would prejudice the *Robinson* Intervenors.

First, the *Gingles* standard allows courts or legislatures to assess whether vote dilution in violation of Section 2 has occurred or would occur without remedial action. Where it has been determined that the *Gingles* standard has been satisfied and remedial action is therefore necessary, the Legislature is not required to adopt a map that itself would satisfy *Gingles* or comport with

traditional redistricting principles. Thus, whether SB 8—the Legislature's *remedial* map—would be sufficient as an *illustrative* map to prove a Section 2 violation under *Gingles* is not relevant to whether it is an appropriate remedy for a Section 2 violation for which the state already had a strong basis in evidence.

Second, assuming Plaintiffs can show that race was the predominant factor in the creation of SB 8, the question of whether the State had a compelling state interest to justify the predominant use of race turns on whether the State had a strong basis in evidence to believe Section 2 required remedial action. Where, as here, the State was acting on a finding by a federal district court, affirmed by a federal court of appeals, that the 2022 map likely violated Section 2, *see Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766 (M.D. La. 2022) ("*Robinson I*"); *Robinson v. Ardoin*, 37 F.4th 208, 215 (5th Cir. 2022) ("*Robinson II*"); *Robinson v. Ardoin,* 86 F.4th 574, 583 (5th Cir. 2023) ("*Robinson III*"), the question is whether those courts' rulings were sufficient to provide the requisite strong basis in evidence, not whether this Court would have reached the same conclusion had it been presented with the same or similar evidence.

## LEGAL STANDARD

Rule 702 requires expert testimony to be relevant. Fed. R. Civ. P. 702(a); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Ev. 702. 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (citation omitted)); *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) ("To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." (citing *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019)). Furthermore , "[a]n expert may never render conclusions of law." *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). Nor may an expert go beyond the scope of his expertise in giving his opinion. *First United Fin. Corp. v. U.S. Fid. & Guar. Co.*, 96 F.3d 135, 136 (5th Cir.1996).

2

## **ARGUMENT**

1. *The Court Should Exclude Any Evidence or Argument Concerning Whether SB 8 Satisfies Gingles.*

For a state to be justified in using race as a factor in drawing a district to avoid a violation of the Voting Rights Act, "[t]he state must have a 'strong basis in evidence' for finding that the threshold conditions for § 2 liability [i.e., the *Gingles* preconditions] are present." *Bush v. Vera*, 517 U.S. 952, 978 (1996). But once it has been shown—through, for example, the presentation of a reasonably configured illustrative redistricting plan—that the *Gingles* preconditions are present, nothing in Section 2 or the Equal Protection Clause obliges the state to create a remedial that looks like the illustrative plan.[1] "Section 2 does not forbid the creation of a noncompact majority-minority district." *League of United Latin Am. Citizens* v. *Perry*, 548 U.S. 399, 430 (2006) ("*LULAC*").

Accordingly, evidence that SB 8 could not satisfy *Gingles* because it fares worse on various traditional redistricting principles courts consider in Section 2 cases is irrelevant. SB 8 was not an illustrative plan offered to prove a Section 2 violation. It is a remedial plan created to avoid Section 2 liability where the Middle District of Louisiana and the Fifth Circuit, based on illustrative maps presented in those cases, found Section 2 likely required an additional district providing Black voters an opportunity to elect candidates of choice.

The Constitution does not require a court-adjudicated violation of Section 2 before a state may have the required strong basis in evidence to justify a race-conscious VRA remedy. *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015*)* (the state may "have good reasons to believe [consideration of race] is required, even if a court does not find that the actions were necessary for statutory compliance.") (cleaned up). In most racial gerrymandering cases, unlike this one, the only evidence that *Gingles* could be satisfied is the enacted map. See, e.g., *Cooper v. Harris*,

---

[1] The *Gingles* preconditions for a Section 2 claim are set forth in *Thornburg* v. *Gingles*, 478 U.S. 30, 46 (1986).

3

581 U.S. 285, 303 n.4 (2017). Here, however, a court (in fact, two courts) *did* determine that Section 2 likely required a race-conscious remedy, and that determination was based on a showing that the *Gingles* preconditions had satisfied. In this circumstance, the State was relying on court adjudications in determining that a second majority-Black district was required, and whether SB 8 would itself satisfy *Gingles* is no longer relevant. Thus, evidence concerning that issue should be excluded.

Even when evaluating whether SB 8 was narrowly tailored, it is not necessary to tie the map created in SB 8 to the specifics of the illustrative maps and evidence provided in the *Robinson* litigation. In this context, narrow tailoring does not "require an exact connection between the means and ends of redistricting," but rather just "'*good reasons*' to draft a district in which race predominated over traditional districting criteria." *Ala. Legis. Black Caucus v. Alabama*, 231 F. Supp. 3d 1026, 1064 (M.D. Ala. 2017) (three-judge court) (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)). To tie the Legislature precisely to the details of a potential Voting Rights Act claim would "afford state legislatures too little breathing room, leaving them 'trapped between the competing hazards of liability' under the Voting Rights Act and the Equal Protection Clause." *Bethune-Hill v. Virginia State Bd. of Elections*, 580 U.S. at 196 (quoting *Bush v. Vera*, 517 U.S. 952, 977 (1996)). The relevant questions in this case are only whether the Legislature has good reasons to believe § 2 required a district with two Black majority districts and whether SB 8 is narrowly tailored to achieve that goal.

Here, the State offers expert testimony from two experts to show that CD6, SB 8's new majority-Black district, is insufficiently compact to satisfy the *Gingles* standard. Specifically, Plaintiffs offer the opinion testimony of expert Michael Hefner purporting to evaluate the SB 8 in the context of customary traditional redistricting criteria as described in Section 2 of the Voting Rights Act. Because Section 2 does not require *states* (as opposed to *litigants*) to produce compact

4

redistricting plans once a violation has been shown, *LULAC*, 548 U.S. at 430, how well SB 8 comports with the traditional redistricting criteria applicable in the Section 2 analysis is irrelevant to whether SB 8 is a proper Section 2 remedy where the State had a strong basis in evidence for believing such a remedy was required based on court findings that the *Gingles* preconditions could be satisfied. Mr. Hefner's opinion testimony should thus be excluded in its entirety under Fed. R. Evid. 401 and 402.[2]

Similarly, Plaintiffs offer the expert testimony of Dr. D. Stephen Voss, in Section 5.4 of his expert report, concerning how SB 8 performs on traditional redistricting criteria compared to other proposals put forward to create a second majority-Black district outside of New Orleans. As explained above, Section 2 does not forbid non-compact districts. *LULAC*, 548 U.S. at 430. Thus, evidence that SB 8 is less compact than other plans that would also satisfy Section 2 does not tend to show that the use of race in SB 8 was not justified by the compelling state interest in complying with Section 2 and is therefore irrelevant. Accordingly, any testimony concerning the matters discussed in Section 5.4 of Dr. Voss's report should be excluded.

   2. *Any Evidence or Argument Concerning Whether Section 2 Requires a Second Black Opportunity District Should be Excluded.*

In evaluating whether a state had sufficient reason to consider race in redistricting decisions, courts evaluating claims of racial gerrymandering must determine whether the state had a "strong

---

[2] Mr. Hefner's opinion testimony should be excluded for the additional reason that it is unreliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); Fed. R. Ev. 702. As an expert for the State in the *Robinson* litigation, Mr. Hefner offered the opinion that the plaintiffs plan in that case divided Red River a community of interest running "from Shreveport to the Mississippi river," a community he disavows in his discussion of communities of interest in this litigation. And his credibility and findings have been called into question by this Court on more than one occasion. *See, e.g.*, *Thomas* v. *Sch. Bd. St. Martin Par.*, No. 65-11314, 2023 WL 4926681, at *12, *29, (W.D. La. July 31, 2023) (concluding that Mr. Hefner used "'guesswork,' flawed methodology, and inaccurate population measurements" and he lacked the credibility or credentials of other experts); *Thomas* v. *Sch. Bd. St. Martin Par.*, 544 F. Supp. 3d 651, 685 (W.D. La. 2021) (observing that Mr. Hefner's "testimony was argumentative and conclusionary"), *aff'd in part, rev'd in part sub nom. Borel* v. *Sch. Bd. St. Martin Par.*, 44 F.4th 307 (5th Cir. 2022); *see also Means v. DeSoto Parish*, No. 5:23-cv-669, transcript of hrg. on mot. for prelim. inj. (Jul 12, 2023) (finding that "the police jury received what I believe is properly characterized as constitutionally-suspect legal advice from its districting adviser, Mr. Hefner").

basis in evidence" to believe race-conscious line drawing was required. *See, e.g., Clark v. Calhoun Cty*, 88 F.3d 1391, 1405-06 (5th Cir. 1996) ("The State must have a strong basis in evidence for concluding that the three *Gingles* preconditions exist in order to claim that the redistricting plan is reasonably necessary to comply with § 2"). "That standard does not require the State to show that its action was 'actually ... necessary' to avoid a statutory violation, so that, but for its use of race, the State would have lost in court." *Bethune-Hill v. Virginia State Bd. of Elections*, 580 U.S. 178, 194 (2017). Thus, a state need not wait to be sued or for a final judgment before it may conclude that local conditions require remedial action. *See Clark v. Calhoun Cty*, 88 F.3d at 1407 ("a state need not await judicial findings to [the] effect" that the *Gingles* preconditions are present) (citing *Bush v. Vera*, 517 U.S. 952 (1996) (O'Connor, J., concurring)); *Bethune-Hill*, 580 U.S. at 194 (a state may have a strong basis in evidence to engage in race-conscious redistricting, "even if a court does not find that the actions were necessary for statutory compliance"). And it certainly need not exhaust every avenue of appeal to have a strong basis in evidence that it risks liability under the VRA if it does not act.

Accordingly, the question in this case is whether the decisions of the Middle District of Louisiana and the Fifth Circuit in *Robinson* themselves provided the required strong basis in evidence, not whether the courts that issued those decisions correctly evaluated the evidence before them or whether this Court would weigh that evidence differently. *See Bethune-Hill*, 580 U.S. at 194 (the court "does not [need to] find that the actions were necessary for statutory compliance—it is sufficient if the legislature has good reason to believe it must use race to satisfy the Voting Rights Act.") (internal quotation omitted); *see also Bush*, 517 U.S. at 978 ("The State must have a 'strong basis in evidence' for finding that the threshold conditions for § 2 liability [*i.e.*, the *Gingles*

6

preconditions] are present.") (internal citation omitted); *accord Shaw v. Hunter*, 517 U.S. 899, 915 (1996).[3]

Here, Plaintiffs offer expert evidence and legal argument to show that the *Gingles* preconditions cannot be satisfied, contrary to the decisions of the District Court and the Fifth Circuit in *Robinson*. That is, rather than offer evidence that the Legislature improperly relied on those decisions, Plaintiffs offer evidence to show those courts were wrong. For example, in Section 4 of his initial report, Dr. Voss offers his opinion that because his simulations did not produce two majority-Black districts in Louisiana using the limited redistricting criteria they incorporated, it is therefore not possible to draw two sufficiently compact Black majority congressional districts in LA. In other words, Dr. Voss's simulation analysis is offered not to elucidate the relationship between race and other traditional districting factors in the composition of SB 8, but on whether a second majority-Black district was actually necessary to satisfy Section 2. Voss Report at 7. Evidence on that question is irrelevant to the issues before this Court. *See Bethune-Hill*, 580 U.S. at 194.

Even if it were proper for this Court to engage in a *de novo* analysis of what Section 2 requires, Dr. Voss's opinion evidence based on his simulations would not be relevant. In *Milligan*, the Supreme Court rejected arguments made by the State of Alabama in reliance on simulation evidence and expressed strong doubts about the value in using simulations like ones Dr. Voss preformed here as a benchmark for assessing Section 2's requirements. *Allen v. Milligan*, 599 U.S. 1, 34-37 (2023). The Court held that "neither the text of § 2 nor the fraught debate that produced it suggests that equal access to the fundamental right of voting turns on computer simulations that are technically complicated, expensive to produce, and available to only a small cadre of university researchers that

---

[3] Indeed, Plaintiffs conceded when they strongly objected to consolidating this case with the still pending case in *Robinson*, that the *Robinson* case "implicated entirely different legal bases, statutes, and facts." Doc. No. 33-1 at 23-24, Plaintiffs' Response in Opposition to Motion to Intervene.

have the resources and expertise to run them," and concluded that "Section 2 cannot require courts to judge a contest of computers when there is no reliable way to determine who wins, or even where the finish line is." *Id.* at. 37 (cleaned up).  In *Robinson III*, the Fifth Circuit likewise rejected the notion that "a race-neutral benchmark calculated by a computer-simulated map" provides a relevant benchmark for assessing what Section 2 requires.  86 F.4th at 599; *see also Nairne v. Ardoin*, No. CV 22-178-SDD-SDJ, 2024 WL 492688, at *25–27 (M.D. La. Feb. 8, 2024) (finding simulations evidence irrelevant to the question of whether the first *Gingles* precondition could be satisfied).

In addition, as explained in Defendant-Intervenors expert report from Dr. Cory McCartan, Dr. Voss's simulation analysis does not "accurately represent[] the districting process in [Louisiana]," *Milligan*, 599 U.S. at 34, and therefore does nothing to make the satisfaction of the *Gingles* preconditions "more or less probable than it would be without the evidence." Fed. R. Evid. 401.  Dr. Voss's simulations evidence is thus insufficiently reliable or grounded in any accepted methodology to satisfy the requirements of Rule 702.  Fed. R. Evid. 702; see *Daubert*, 509 U.S. at 590–92.  This evidence should be excluded.

3. *Testimony from Mr. Hefner Regarding Hays v. Louisiana Should Also Be Excluded.*

Section VIII of Mr. Hefner's initial report and related testimony discussing the *Hays* case (*see, e.g., Hays v. State of Louisiana*, 862 F. Supp. 119 (W.D. La. 1994)) should be excluded because it is, in large part, irrelevant and presents legal conclusions.  This current case turns on whether race predominated in the construction of SB 8.  "[P]ast discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 74 (1980).  In other words, it does not matter whether legislation from many, many years ago may or may not have been unconstitutional, but whether Legislators in January 2024 used race excessively in constructing SB 8.  *Abbott v. Perez*, 585 U.S. 579, 605

8

(2018) (reversing the district court's failure to apply the presumption of legislative good faith where the enacted plan was similar to a prior invalided plan).

In Section VIII, Mr. Hefner opines that, in his opinion, SB 8 resembles the congressional map adopted in Louisiana in the 1990s. That map, three decades old, drafted entirely by different legislators under different circumstances, has no relevance to the map adopted this year in an entirely different political context.[4] *Abbott*, 585 U.S. at 603–04. The political realities governing Louisiana politics in the 1990s are very different from those of today. In addition, to the extent that a prior map was ruled unconstitutional is relevant, Mr. Hefner's opinions constitute legal conclusions. The Court is fully capable of analyzing the law and making a determination as to the central legal issue in this case: whether race predominated in the construction of SB 8. "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983); *see also Goodman*, 571 F.3d at 399. Focusing on the *Hays* case also neglects the decades of precedent since the 1990s that govern racial gerrymandering cases. *See, e.g., Abbott*, 585 U.S. 579 (2018); *Cooper*, 581 U.S. 285; *Bethune-Hill,* 580 U.S. 178.

## CONCLUSION

The Court should exclude 1) evidence or argument offered to prove that SB 8 does not satisfy the *Gingles* standard, 2) evidence or argument on the question of whether Section 2 of the Voting Rights Act requires a congressional redistricting plan that includes two districts in which Black voters have an opportunity to elect candidates of their choice, and 3) testimony from Mr. Hefner regarding the significance of the *Hays* case.

---

[4] As one example, Mr. Hefner engages in an apples-to-oranges comparison of compactness for plans with different numbers of districts. Plans with fewer districts will score better on compactness measures because the districts can be less expansive. Because the *Hays* plan contains seven congressional districts, as opposed to six in SB 8, comparing compactness scores provides little useful information.

DATED: April 2, 2024

Respectfully submitted,

By: /s/ *Tracie L. Washington*  
Tracie L. Washington  
LA. Bar No. 25925  
Louisiana Justice Institute  
8004 Belfast Street  
New Orleans, LA 70125  
Tel: (504) 872-9134  
tracie.washington.esq@gmail.com

By: /s/ *John Adcock*  
John Adcock  
Adcock Law LLC  
3110 Canal Street  
New Orleans, LA 70119  
Tel: (504) 233-3125  
jnadcock@gmail.com

*Counsel for* Robinson *Intervenors Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule*

*Counsel for* Robinson *Intervenors*

Stuart Naifeh (admitted pro hac vice)
Kathryn Sadasivan (admitted pro hac vice)
Victoria Wenger (admitted pro hac vice)
Colin Burke (admitted pro hac vice)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (admitted pro hac vice)
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (admitted pro hac vice)*
Megan C. Keenan (admitted pro hac vice)
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org
*Additional counsel for* Robinson *Intervenors*

Robert A. Atkins (admitted pro hac vice)
Yahonnes Cleary (admitted pro hac vice)
Jonathan H. Hurwitz (admitted pro hac vice)
Amitav Chakraborty (admitted pro hac vice)
Adam P. Savitt (admitted pro hac vice)
Arielle B. McTootle (admitted pro hac vice)
Robert Klein (admitted pro hac vice)
Neil Chitrao (admitted pro hac vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin (pro hac vice forthcoming)
Garrett Muscatel (pro hac vice pending)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
gmuscatel@aclu.org

T. Alora Thomas-Lundborg (admitted pro hac vice)
Daniel Hessel (admitted pro hac vice)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

*Practice is limited to federal court.