IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | | |
|---|---|---|
| PHILIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| v. | ) ) | District Judge  David C. Joseph Circuit Judge Carl E. Stewart |
| NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, | ) ) ) ) ) | District Judge  Robert R. Summerhays Magistrate Judge Kayla D. McClusky |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO INTERVENORS' MOTION TO STRIKE**

Plaintiffs' expert, Dr. Benjamin Overholt, will testify that the Robinson Intervenors' expert, Anthony Fairfax, fails to consider a key factor when he compares SB8 with other recently-proposed maps having 2 majority-minority districts. Fairfax claims that SB8's "less compact configuration than these alternatives seem[s] to be for political considerations and not race predominating." Doc. 145-2), ¶72. This is significant. That's because although Fairfax styles his report as a mere response to Plaintiffs' case-in-chief experts, the theory that SB8's inferiority to other 2-majority-minority district "alternatives" is significant **and that this inferiority denotes the presence of politics, not race**, advances beyond Plaintiffs' experts' earlier points and constitutes its own affirmative claim. Dr. Overholt rebuts Mr. Fairfax's premise that all 2-minority district maps are racially indistinguishable. That is, for a mapmaker trying to racially gerrymander to elect minority candidates, some 2-minority districts are preferable to others **for racial reasons**. This is because some districts turn out to perform far more consistently than others. Thus, SB8's

1

inferiority to the other 2-majority-minority districts when considering traditional criteria is most likely **not** due to the intrusion of some foreign factor like politics, but instead, is for a racial reason: because SB8 performs significantly better in electing minority candidates than those other 2-majority-minority districts—even though as it turns out, none of the districts generally elect the candidate preferred by most Black voters.

The Intervenors complain that this is sandbagging. But it is Mr. Fairfax's decision to compare SB8 with other 2-minority district maps, and then to lodge his own opinion that the maps' differences must be due to politics because they are racially indistinguishable, that requires a response. As Dr. Overholt will show, Mr. Fairfax's decision to advance the argument in this way is seriously flawed. Mr. Fairfax should have considered differences in racial performance among the 2-majority-minority districts, and if he had, he would have found SB8 the clear racial winner.

## ARGUMENT

Dr. Overholt presents proper rebuttal because "[t]he test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is 'intended solely to contradict or rebut evidence on the same subject matter' of an opponent's expert report." *Teledyne Instruments. Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *17 (M.D. Fla. Oct. 25, 2013). "[R]ebuttal and reply reports 'may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert.' " *Withrow v. Spears*, 967 F.Supp.2d 982, 1002 (D. Del. 2013) (internal quotes omitted). Further, it is enough that the rebuttal testimony logically refutes the testimony to be rebutted; they need not be the same type of expert testimony or be expressly opposite statements. *See, e.g.*, *Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 364 (S.D.N.Y. 2023) (holding that rebuttal expert could testify that an individual did not actually "download" items, where rebutted expert had not

2

expressly identified that individual and had merely opined that "download means download," because "Rule 26(a)(2)(D)'s requirement that a rebuttal expert report be based on the 'same subject matter' need not be so narrowly construed.").

The applicable test, which Dr. Overholt meets here, can be applied in three parts.

> To determine whether a disclosure is properly included under Rule 26(a)(2)(C) rather than under Rule 26(a)(2)(B), it will often be helpful to answer these three questions: First, what evidence does the rebuttal expert purport to contradict or rebut? Second, is the evidence disclosed as rebuttal evidence on the same subject matter as that identified by another party in its Rule 26(a)(2)(B) disclosure? Third, is the evidence disclosed as rebuttal evidence intended solely to contradict or rebut that evidence?

*Complete Logistical Servs., LLC v. Rulh*, No. CV 18-3799, 2019 WL 2340933, at *2 (E.D. La. June 3, 2019). Applying those factors:

1. Dr. Overholt's analysis rebuts Mr. Fairfax's opinion that if there are substantial differences in traditional redistricting criteria among 2-minority plans, those differences were unnecessary for racial reasons and must therefore be due to other factors. *See* Robinson Intervenors' Motion, Fairfax Report (Doc. 145-2), ¶ ¶56, 72:

   56. …Thus, [Voss's] table shows that the state legislature could have adopted a plan with two majority Black districts and that was more compact than SB8. Consequently, Dr. Voss's data demonstrates that—contrary to his conclusions—the lower compactness scores of the SB8 plan were *not* driven by the desire to create two majority Black districts and must have been driven by some other goal.

   72… Once again, the state legislature's choice of a different, less compact configuration than these alternatives seem to be for political considerations and not race predominating.

2. Dr. Overholt's testimony is on the same subject matter as Mr. Fairfax's opinions. The "subject matter" is what factor explains differences in compactness among the 2-minority plans—was it race, or as Mr. Fairfax opined, something else, like political performance? As Overholt stated on page 1 of his report:

3

> The Intervenors' experts, Anthony Fairfax and Cory McCartan,[1] each opine that differences between SB8 and several other 2-majority-minority district maps considered by the Legislature are significant. Those differences, Fairfax and McCartan argue, show that SB8's metrics regarding parish-splits, compactness, and other factors are the result of SB8 considering criteria other than race. I was retained by Plaintiffs as an expert to test this hypothesis by reviewing the five different redistricting plans for Louisiana's new congressional map that have been brought forward as providing a second viable majority-minority district by the intervenor defendants in this case, and to determine the effect each plan would have on black voters in the state. I was asked to specifically compare the voting trends in the new and hypothetical maps to the well-established majority-minority district from the 2022 map (HB1) to determine if any of the new or proposed maps provide two majority-minority districts.
>
> As shown below, my opinion is that the assumptions of Mr. Fairfax and Dr. McCartan are incorrect. In fact, SB8 can be explained as an effort to maximize racial performance because it has superior performance to the other legislatively-considered maps cited by either Mr. Fairfax or Dr. McCartan, even though SB8 itself fails to perform and fails to provide a second functioning majority-minority district.
>
> *See* Robinson Intervenors' Motion, Overholt Report (Doc. 145-7),

3. Dr. Overholt's evidence is intended solely to rebut or contradict Mr. Fairfax's testimony that the reason for differences in compactness between competing 2-minority district plans was due to politics, rather than due to race. *Id*.

Aside from these three controlling factors, the Robinson Intervenors' concerns about sandbagging are unjustified. The Robinson Intervenors seek to introduce reams of expert reports and transcripts from their prior litigation. Importantly, these include expert reports from Dr. Lisa Handley, who performs on HB1 (the 2022 maps) the same type of racial performance analysis Dr. Overholt performed on SB8 and the alternative 2-minority district plans. Dr. Overholt's form of analysis is hardly unknown to the Robinson Intervenors. The Robinson Intervenors, who have been studying SB8 since it was offered in January 2024, could have proffered an analysis on racial

---

[1] Mr. Overholt was made available for a deposition on April 4, 2024. No transcript is yet available, but he made clear that his rebuttal was only to Mr. Fairfax and not to Dr. McCartan.

4

performance from Dr. Handley. Instead, they chose to have Mr. Fairfax expose himself by reaching for the opinion that compactness differences among the 2-minority district plans cannot be due to race and must be due to politics, without conducting any adequate analysis of racial differences among those 2-minority plans. Someone like Dr. Handley, in contrast, could have tried to show the opposite of Dr. Overholt: that in fact, racial performance **cannot** explain SB8's uglier shape.

We cannot know, but perhaps the Robinson Intervenors did not take this step because no such analysis is possible. Regardless, it was unfair to smuggle that desired conclusion into the report of Mr. Fairfax, hoping that his failure to support his conclusion with the requisite comparative racial analysis would eliminate any rebuttal from Plaintiffs. Plaintiffs contend that this was a legal miscalculation, however, because what matters is whether Dr. Overholt addresses the subject covered by Mr. Fairfax to actually rebut him, not whether he uses the same method or type of analysis as Mr. Fairfax. *See, e.g.*, *Better Holdco, Inc.*, 666 F. Supp. 3d at 364. In short, Dr. Overholt's report meets the requirements of Rule 26(a)(2)(D)(ii), he was deposed to the same extent as all other experts, and his testimony should be admitted at trial.

The Robinson Intervenors briefly argue that Dr. Overholt's analysis is insufficient under Fed. R. Evidence 702(a) and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579, 591 (1993). To begin, Intervenors assume the relevance of Dr. Overholt is on the question of strict scrutiny, since—on the way to comparing the racial performance of SB8-District 6 to the other 2-minority-district alternatives—he found that none of the districts actually performed as Voting Rights Act districts. But as noted above, Dr. Overholt's testimony was offered to rebut Mr. Fairfax's opinion on the first part of Plaintiff's *Shaw* claim—whether race (or, as Fairfax claimed, politics) explains SB8-D6's divergence from the second-minority district under other maps.

5

Even if Dr. Overholt's testimony is considered on the question of strict scrutiny, a question where the State and Intervenors—not Plaintiffs—must carry the burden on their own case in chief, it is admissible. Intervenors cite back to the legal argument in their omnibus Motion in Limine (Doc. 144 and 144-1) that this Court rejected as premature when posed as an evidentiary motion: that there can be no evidence on VRA compliance because the fact of a preliminary injunction order in the Robinson Intervenors' earlier case completely disposes of strict scrutiny. As Plaintiffs showed in their response (Doc. 146), this is completely wrong. Districting maps that sort voters by race "are by their very nature odious." *Shaw v. Reno*, 509 U.S. 630, 643 (1993). That is why strict scrutiny demands a "strong basis in evidence" for believing that the VRA "required" such racial sorting. *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 426 (2006). This requires at minimum a "strong showing of a pre-enactment analysis with justifiable conclusions." *Abbott v. Perez*, 585 U.S. __, 138 S.Ct. 2305, 2335 (2018). The state must "carefully evaluate" whether the *Gingles* preconditions are met, and it is improper to reduce the *Gingles* totality-of-circumstances analysis to a "single factor," like proportionality. *Wisconsin Legislature v. Wisconsin Elections Comm'n.*, 595 U.S. 398, 404-405 (2022). The state cannot outsource this inquiry by relying on third party analysis, whether that is a non-final judicial factfinding at an expedited hearing or a well-supported letter after months of analysis by experts at the U.S. Department of Justice Civil Rights Division, Voting Section. *Shaw v. Hunt*, 517 U.S. 899, 918 (1996) (DOJ letter insufficient; state made a factual showing); *Miller v. Johnson*, 515 U.S. 900, 923-24 (1995) (same); *Hays v. State of La.*, 936 F. Supp. 360, 372 (W.D. La. 1996) (same).

Even if this were not the law, as Plaintiffs argued earlier (Doc. 146), the Robinson Intervenors' original case only addressed the minority populations, wrongs, remedies, and laws at issue in 2022; not the new law, different area of minority population, and different legal theory at

issue in 2024. In short, this Court should not decide that the State may, as a matter of law, rest on the vacated preliminary injunction in the Robinson Intervenors' original case. The Court should take evidence from Dr. Overholt and others on whether the State actually did form a belief that the VRA required SB8's particular majority-minority district (District 6), and if so, whether District 6 is supported by a strong showing, consisting at the very least of a strong pre-enactment analysis with justifiable conclusions. *Abbott*, 138 S.Ct. at 2335.

## CONCLUSION

For the foregoing reasons, Intervenors' Motion to Strike, **Doc. 145**, should be denied.

Dated this 5th day of April, 2024                                   Respectfully submitted,

| | |
|---|---|
| **PAUL LOY HURD, APLC** | **GRAVES GARRETT GREIM LLC** |
| */s/ Paul Loy Hurd* | */s/ Edward D. Greim* |
| Paul Loy Hurd | Missouri Bar No. 54034 |
| Louisiana Bar No. 13909 | *Admitted Pro Hac Vice* |
| Paul Loy Hurd, APLC | Jackson Tyler |
| 1896 Hudson Circle, Suite 5 | Missouri Bar No. 73115 |
| Monroe, Louisiana 71201 | *Admitted Pro Hac Vice* |
| Tel.: (318) 323-3838 | Matthew Mueller |
| paul@paulhurdlawoffice.com | Missouri Bar No. 70263 |
| *Attorney for Plaintiffs* | *Admitted Pro Hac Vice* |
| | Katherine Graves |
| | Missouri Bar No. 74671 |
| | *Admitted Pro Hac Vice* |
| | GRAVES GARRETT GREIM LLC |
| | 1100 Main Street, Suite 2700 |
| | Kansas City, Missouri 64105 |
| | Tel.: (816) 256-3181 |
| | Fax: (816) 256-5958 |
| | edgreim@gravesgarrett.com |
| | jtyler@gravesgarrett.com |
| | mmueller@gravesgarrett.com |
| | kgraves@gravesgarrett.com |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I do hereby certify that, on this 5th day of April, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

                                          */s/ Edward D. Greim*
                                          Edward D. Greim
                                          *Attorney for Plaintiffs*