IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, *Plaintiffs*, v. NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, *Defendant*. | Civil Action No. 3:24-cv-00122 Judge David C. Joseph Circuit Judge Carl E. Stewart Judge Robert R. Summerhays |

***ROBINSON* INTERVENORS' MEMORANDUM IN FURTHER SUPPORT OF THE EXCLUSION OF DR. BEN OVERHOLT AND IN SUPPORT OF MOTION TO RECONSIDER DENIAL OF LEAVE TO PRESENT RESPONSIVE EXPERT TESTIMONY**

Defendant-Intervenors Press Robinson, Edgar Cage, Dorothy Nairne, Edwin Rene Soule, Alice Washington, Clee Earnest Lowe, Davante Lewis, Martha Davis, Ambrose Sims, the National Association for the Advancement of Colored People Louisiana State Conference, and the Power Coalition for Equity and Justice (the "*Robinson* Intervenors") respectfully make this submission (i) in further support of their motion to strike and exclude the irrelevant and improper rebuttal testimony of Dr. Ben Overholt, based upon Dr. Overholt's testimony at his deposition yesterday; and (ii) in support of their motion for reconsideration of the Court's order denying their motion for leave to submit expert testimony responding to Dr. Overholt.[1]

## PRELIMINARY STATEMENT

Dr. Overholt's deposition testimony confirms that his report is improper rebuttal and would seriously prejudice the *Robinson* Intervenors.  Dr. Overholt's deposition makes clear that his report did not respond in substance to any of *Robinson* Intervenors' expert reports, and instead is focused on a topic—the performance of CD 6 in the enacted plan and the performance of majority-Black districts in other alternative plans the Legislature considered—that none of the *Robinson* Intervenors' experts addressed.  Dr. Overholt conceded that he did not analyze the methodology of the experts proffered by the *Robinson* Intervenors whose reports he purports to rebut.  Dr. Overholt also testified that he started working on his report in late January or early February, long before the expert reports of *Robinson* Intervenors were submitted.  He thus had ample time to prepare his report by the deadline for initial expert reports.  Finally, he testified that in preparing his report he relied on a database and computer code.  That code and data should have been produced with his report on April 1 pursuant to Rule 26(a)(2)(B)(ii).  Instead, Plaintiffs only produced the code four days later—on the business day before trial.

---

[1] On April 5, 2024, Plaintiffs filed a Response to the Motion to Strike the Testimony of Dr. Overholt.

The *Robinson* Intervenors also respectfully request that the Court reconsider its denial of their motion to present expert testimony in response to Dr. Overholt and permit the *Robinson* Intervenors to present testimony by Dr. Lisa Handley that is directly responsive to Dr. Overholt's report.  In support of this motion, the *Robinson* Intervenors are submitting herewith a proposed Surrebuttal Report by Dr. Handley.  *See* Ex. 1.  Dr. Handley's proposed report raises serious questions about the validity and reliability of Dr. Overholt's performance analysis.  Refusing to allow the *Robinson* Intervenors to present testimony by Dr. Handley if Dr. Overholt is allowed to testify would deprive the Court of important evidence bearing on its assessment of Dr. Overholt's opinions and would gravely prejudice the *Robinson* Intervenors.  There would be no unfair surprise or prejudice to Plaintiffs in permitting Dr. Handley to testify.  To the contrary, Dr. Overholt testified that he is familiar with Dr. Handley's work on performance; indeed, he testified that she was used as an expert in a number of cases by the Department of Justice, and that he himself assisted her over a number of months in providing expert testimony when he worked at the Department.  Dr. Overholt also testified that Plaintiffs' counsel provided him a copy of Dr. Handley's expert report on performance in the *Robinson* litigation before he prepared his report in this case, and he claimed that the methodology he used in his report "kind of follow[ed] a little bit of her lead."  *See* Ex. 2, Overholt Dep. Rough Tr. 135:12-22.  The Court should not permit Plaintiffs to present testimony by Dr. Overholt at trial while precluding the *Robinson* Intervenors from offering Dr. Handley to respond.

## ARGUMENT

I. **Deposition testimony confirms that Dr. Overholt's expert testimony is improper rebuttal.**

The deposition testimony elicited from Dr. Overholt provides compelling reasons beyond those presented in the *Robinson* Intervenors' motion, Doc. No. 145-1, that his testimony should be excluded.

*First*, Dr. Overholt's testimony makes clear that his report was not proper rebuttal testimony. Dr. Overholt testified repeatedly that the key findings and analyses in *Robinson* Intervenors' expert reports were not germane to his performance analysis, and that none of the *Robinson* Intervenors' experts analyzed the performance issues that Dr. Overholt addressed. For example, Dr. Overholt said that "compactness"—a standard map-drawing principle analyzed by Mr. Fairfax—was "actually fairly irrelevant" to his analysis. Ex. 2 at 74:10-14. Dr. Overholt did not include in his report—or even look at—the other redistricting principles Mr. Fairfax relied upon—minimizing subdivision splits, adhering to district cores, contiguity, socioeconomic factors. *Id.* at 85:3- 87:22; 88:4-6; 89:10-12; *id.* at 93:22-23 (testimony that Dr. Overholt did not analyze the distribution of the Black population in Louisiana because such an analysis would be unnecessary for his purposes). Dr. Overholt conceded that the scope of his expert work was relevant to only the second and third factors of the Voting Rights Act analysis under *Gingles* (relating to whether voting is polarized by race). *Id.* at 80:2-9. By contrast, Mr. Fairfax's report is relevant only to *Gingles I*—whether the Black population is sufficiently large and geographically compact to constitute a majority in a single member district that is reasonably compact and drawn in conformity with traditional redistricting principles. Dr. Overholt likewise was unable to identify any part of the analysis by Dr. McCartan (another expert proffered by the *Robinson* Intervenors whose report Dr. Overholt purports to respond to) that he studied and analyzed. *Id.* at 103:5-23.

4

Indeed, during the deposition, counsel for Plaintiffs stated that "our argument on the rebuttal is related to Fairfax's report, not McCartan," thereby apparently withdrawing Dr. Overholt as a rebuttal expert to Dr. McCartan. *Id.* at 104:2-14. Plaintiffs should not be permitted to submit a report purporting to rebut one set of experts, only later to have their counsel announce that it is intended to respond to just one of those experts.

Dr. Overholt similarly conceded that none of the *Robinson* Intervenors' experts addressed the performance of CD 6 or any actual or contemplated majority-Black Congressional district. He testified Mr. Fairfax "misses" the measurement of "whether or not it will actually perform for the minority community of interest." *Id.* at 82:9-18. And he expressly conceded that Mr. Fairfax does not analyze "performance" as Mr. Overholt defines it. *Id.* at 98:21-99:7.

*Second*, Dr. Overholt also acknowledged that he has little or no familiarity with the methodologies that Mr. Fairfax employed and did not respond to or rely upon that methodology in his report. Mr. Fairfax's expert report drew on his thirty years' experience as a demographer and mapping consultant to conclude that none of Plaintiffs' experts established racial predominance. Dr. Overholt testified that he has never drawn legislative maps of any kind. *Id.* at 23:10-16. He was unable to answer basic questions about that methodology, including even what redistricting software Mr. Fairfax used in his analysis. *Id.* at 90:10-15.

*Third*, Dr. Overholt testified that he began working on this case in late January or early February. Dr. Overholt testified that he first spoke to Plaintiffs' counsel about this case in "early February, maybe late January." *Id.* at 27:13-16. *See also id*. at 27:22-24. In the nearly two months beginning at that time, he testified to having billed Plaintiffs for over 90 hours on his work. *Id.* at 30:10-21. Dr. Overholt's testimony underscores that Dr. Overholt had ample time to complete his

5

work by the Court-ordered March 22 deadline for opening expert reports, and that Plaintiffs simply chose to withhold his report until after the Robinson Intervenors' expert reports were produced.

*Fourth*, Dr. Overholt's deposition testimony demonstrated that Plaintiffs have failed to comply with their obligations under Rule 26(a)(2)(B)(ii) to produce "the facts and data considered by [Dr. Overholt] in forming [his opinions]." Dr. Overholt testified that his work relied on a voter file that was prepared by "computer scientists" and provided to Dr. Overholt. *Id.* at 33:20-34:2; 123:18-24; 124:7-9. These data were provided to Dr. Overholt "through counsel." *Id.* at 34:14-18. Dr. Overholt's deposition also for the first time identified computer code that he relied on in doing his work. *See id.* at 104:20-105:13. That data and the code should have been produced to the *Robinson* Intervenors simultaneously with his report. Instead, the computer code was produced today, four days after Dr. Overholt's report was produced, a day after his deposition, and one business day before the start of trial. Ex. 3.

For these reasons, and those provided in the Robinson Intervenors' motion to exclude Dr. Overholt's testimony, ECF No. 145, Dr. Overholt's testimony should be excluded.

**II.     *Robinson* Intervenors should be given a fair opportunity to rebut the testimony of Dr. Overholt pending a decision on the Motion to Strike**

Deposition testimony and the enclosed report by Dr. Handley establishes that the *Robinson* Intervenors would also be prejudiced were they not provided an opportunity to present testimony by Dr. Handley responding to Dr. Overholt if the Court permits Dr. Overholt to testify.[2]

---

[2] Dr. Overholt's testimony is about *Gingles* II and III. And, as discussed in the *Robinson* Intervenors' motion in limine and supporting memorandum, *Gingles* II and III are not relevant to the Court's current inquiry. *See Robinson* Intervenors' Motion in Limine, ECF No. 144-1 at 3–5. However, if Dr. Overholt is allowed to testify on *Gingles* II and III, *Robinson*-Intervenors would be greatly prejudiced in not being allowed rebuttal expert analysis. None of the previous experts noticed by *Robinson*-Intervenors have addressed *Gingles* II and III or have the expertise to address the issues raised for the first time by Dr. Overholt.

Dr. Handley is a renowned expert in racially polarized voting and related issues (including the performance of majority-minority electoral districts) who has published multiple peer-reviewed articles and has been engaged as a testifying expert multiple times by the Department of Justice. Ex. 2 at 15:24-16:2. Courts have repeatedly permitted her to testify as an expert about those subjects and relied upon her testimony.[3] The court in *Robinson* found Dr. Handley's analysis of racially polarized voting in Louisiana reliable and credible. *Robinson* v. *Ardoin*, 605 F. Supp. 3d 759, 800, 842 (M.D. La. 2022). By contrast, Dr. Overholt testified that, to his knowledge, no Court has ever accepted Dr. Overholt's testimony on any topic. *Id.*. 25:25-26:4. Dr. Overholt deposition demonstrates real concern about his credibility, admitting to never having produced any peer-reviewed publications, or publications of any kind aside from his dissertation. *Id.* at 13:5-8.

Indeed, Dr. Overholt testified that Plaintiffs' counsel in this case provided him with a copy of Dr. Handley's report in the *Robinson* case and that his report followed the methodology Dr. Handley employed in that case. Dr. Overholt testified that the "final conclusion table" in his report was "loosely based on what [Dr. Handley] used for the conclusion in her rebuttal report [in *Robinson*]." *Id.* at 135:11-136:3; 137:8-24. He similarly testified that his analysis of voter turnout "mirror[ed] almost exactly what Lisa had done." *Id.* at 178:9-21. But Dr. Handley's proposed expert report, submitted herewith, shows that Dr. Overholt made fundamental mistakes in applying that methodology to Louisiana elections, and as such his opinions are accordingly not reliable.

---

[3] *See, e.g.*, *Nairne* v. *Ardoin*, No. CV 22-178-SDD-SDJ, 2024 WL 492688, at *36 (M.D. La. Feb. 8, 2024) (finding Dr. Handley "credible and her conclusions reliable and well supported"); *Alpha Phi Alpha Fraternity Inc.* v. *Raffensperger*, No. 1:21-CV-05337-SCJ, 2023 WL 7037537, at *21 (N.D. Ga. Oct. 26, 2023) (accepting Dr. Handley as an expert and noting she has routinely been qualified as an expert in cases where she used the same methodology she employed here); *Lopez* v. *Abbott*, 339 F. Supp. 3d 589, 610 (S.D. Tex. 2018) (crediting Dr. Handley's testimony); *United States* v. *Vill. Of Port Chester*, 704 F. Supp. 2d 411, 427, 441 (S.D.N.Y. 2010) (relying on Dr. Handley as an expert and noting that "[t]he methods employed by Dr. Handley," including ecological inference analysis, "have been accepted by numerous courts in voting rights cases").

In these circumstances, it would be gravely prejudicial to the *Robinson* Intervenors to permit Dr. Overholt to testify to his opinions while precluding Intervenors from presenting rebuttal testimony from Dr. Handley.  And it would be a disservice to this Court's factfinding process to allow Dr. Overholt to testify while refusing to hear from Dr. Handley, especially when Dr. Overholt explicitly claimed to be following Dr. Handley's methodology.

At yesterday's final pretrial conference, the Court expressed a willingness to permit the *Robinson* Intervenors to present a supplemental report by one of their previously disclosed experts to respond to Dr. Overholt, but concluded that it was too late to present testimony by a new expert. But the fact that none of the *Robinson* Intervenors' previously disclosed experts has previously testified about the subject matter of Dr. Overholt's report and lacks the expertise to address his analysis *only underscores why Dr. Overholt's testimony is not proper rebuttal*.  It also illustrates the prejudice to the *Robinson* Intervenors of precluding them from presenting Dr. Handley's testimony.  In any event, we respectfully submit that there is no rationale for permitting the *Robinson* Intervenors to present expert testimony and a new expert report about a new subject by a previously disclosed expert while prohibiting them from presenting the same testimony and the same report by a different expert.

## **CONCLUSION**

For all of the reasons above, the *Robinson* Intervenors respectfully request that the Court exclude any expert testimony by Dr. Ben Overholt, or, if the Court permits Dr. Overholt to testify, to permit the *Robinson* Intervenors to present rebuttal testimony by Dr. Lisa Handley consistent with the proposed expert report submitted herewith.

DATED:  April 5, 2024                                                             Respectfully submitted,

| | |
|---|---|
| By: /s/ *Tracie L. Washington* <br> Tracie L. Washington <br> LA. Bar No. 25925 <br> Louisiana Justice Institute <br> 8004 Belfast Street <br> New Orleans, LA 70125 <br> Tel: (504) 872-9134 <br> tracie.washington.esq@gmail.com <br><br> *Counsel for* Robinson *Intervenors Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule* | By: /s/ *John Adcock* <br> John Adcock <br> Adcock Law LLC <br> 3110 Canal Street <br> New Orleans, LA 70119 <br> Tel: (504) 233-3125 <br> jnadcock@gmail.com <br><br> *Counsel for* Robinson *Intervenors* |

9

Stuart Naifeh (admitted pro hac vice)
Kathryn Sadasivan (admitted pro hac vice)
Victoria Wenger (admitted pro hac vice)
Colin Burke (admitted pro hac vice)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (admitted pro hac vice)
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (admitted pro hac vice)
Megan C. Keenan (admitted pro hac vice)
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

Robert A. Atkins (admitted pro hac vice)
Yahonnes Cleary (admitted pro hac vice)
Jonathan H. Hurwitz (admitted pro hac vice)
Amitav Chakraborty (admitted pro hac vice)
Adam P. Savitt (admitted pro hac vice)
Arielle B. McTootle (admitted pro hac vice)
Robert Klein (admitted pro hac vice)
Neil Chitrao (admitted pro hac vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin (admitted pro hac vice)
Garrett Muscatel (admitted pro hac vice)
Dayton Campbell-Harris (pro hac vice forthcoming)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
gmuscatel@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (admitted pro hac vice)
Daniel Hessel (admitted pro hac vice)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

*Additional counsel for* Robinson *Intervenors*

*Practice is limited to federal court.

Case 3:24-cv-00122-DCJ-CES-RRS   Document 155-1   Filed 04/05/24   Page 11 of 12 PageID #: 2474

## **CERTIFICATE OF SERVICE**

      I, John Adcock, counsel for the *Robinson* Intervenors, hereby certify that on April 5, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system.

      By: */s/ John Adcock*
      John Adcock
      Adcock Law LLC
      3110 Canal Street
      New Orleans, LA 70119
      Tel: (504) 233-3125
      jnadcock@gmail.com

      *Counsel for* Robinson *Intervenors*