IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br>*Plaintiffs*, <br><br>v. <br><br>NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, <br><br>*Defendant*. | Civil Action No. 3:24-cv-00122 <br><br>Judge David C. Joseph <br><br>Circuit Judge Carl E. Stewart <br><br>Judge Robert R. Summerhays |

**MEMORANDUM IN SUPPORT OF *ROBINSON* INTERVENORS' MOTION FOR CONTINUANCE OR, IN THE ALTERNATIVE, TO DECONSOLIDATE PRELIMINARY HEARING FROM THE MERITS TRIAL**

This case has moved at breakneck speed, based largely on a schedule proposed by Plaintiffs and unopposed by Defendants. Doc. 43 (Unopposed Motion for Expedited Preliminary Injunction and Trial Schedule); Doc. 63 (Scheduling Order). Trial of this important and complex matter—which will determine the congressional representation of 4.6 million Louisianans for the rest of the decade—is scheduled to begin 68 days (and end 70 days) after Plaintiffs commenced this action. The Court entered that schedule before it determined the *Robinson* Intervenors ("Intervenors") had a right to participate in the liability phase (on reconsideration of its earlier order denying them that right), and Intervenors thus had no input on the schedule. By the time the

Court granted Intervenors' leave to participate in the liability phase, only twenty-four days remained before trial.

While Intervenors have made every effort to hew to the Court's schedule, it is clear that this highly compressed schedule has deprived them of the ability to fully develop and present their case and is incompatible with their due process rights. Intervenors have been unable to take meaningful fact discovery; have had to exchange expert reports and conduct expert discovery involving seven separate experts in only two weeks; and have been given only eight hours—to be shared with two other separately represented defendants—to present their case and cross-examine Plaintiffs' witnesses. Respectfully, several of the Court's pre-trial decisions, which Intervenors understand were driven by the perceived need to maintain the current schedule, have underscored and even aggravated that harm. This situation would be bad enough if next week's hearing were only for preliminary relief—it is even more unjust and untenable for a full trial on the merits leading to a final judgment.

The prejudice to Intervenors is magnified by the fact that neither of the other parties on the Defendants' side are presenting a substantial factual or expert defense to Plaintiffs' claims. The State has not proffered a single expert witness (including any expert witnesses to respond to any of the Plaintiffs' array of experts) or designated a single fact witness for trial. The Secretary has gone even further. She is not defending the statute at all and has identified only one "may call" witness to testify about election administration, whose testimony appears to be relevant only to the timing of any remedy if the Court rules in Plaintiffs' favor on liability. Thus, the defense against Plaintiffs' claims at the liability hearing has fallen almost entirely on the Intervenors, who as of yesterday will have been involved in the liability phase for exactly three weeks.

Intervenors therefore respectfully move the Court to continue the trial scheduled for April 8-10 by three weeks. In the alternative, if the Court denies that request, Intervenors respectfully request that the Court deconsolidate the preliminary injunction hearing from the full trial on the merits and continue the preliminary injunction hearing by one week. In either event, Intervenors further request that the court set the trial for four days to allow each side to fully present its case.

## BACKGROUND

Plaintiffs filed this case on January 31, alleging that SB8—which was enacted in response to court rulings finding the State of Louisiana in likely violation of Section 2 of the Voting Rights Act of 1965—is a racial gerrymander, Doc. 1, and moved for a preliminary injunction on February 7, Doc. 17. Also on February 7, the *Robinson* Intervenors moved to intervene as a matter of right or permissively to defend the law. Doc. 18. The next day, this Court ordered that, once Plaintiffs served the Defendant Secretary of State, they contact the Court to determine a briefing and hearing schedule on both the preliminary injunction motion and Intervenors' then-pending motion to intervene. Doc. 19. Six days later, on February 14, Plaintiffs opposed intervention. Doc. 33. Although the Court's order implicated Intervenors' then-pending motion, Plaintiffs never contacted Intervenors regarding scheduling. Ex. 1, Decl. of Stuart C. Naifeh ("Naifeh Decl.") ¶ 3. Instead, they moved on February 19 for an expedited briefing schedule, Doc. 43, and asserted that briefing on the Intervention Motion was complete and the motion ripe for resolution (although Intervenors had yet to file a reply), Doc. 43-1 at 3.

In that motion, Plaintiffs proposed an extraordinarily aggressive schedule for this case. They asked the Court to set a preliminary injunction hearing for March 25 and 26, and to consolidate that hearing with a full trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). Doc. 43. The Secretary of State, the only other party to the case at that time, did not

3

oppose that motion. *Id*. Because Intervenors' motion for leave to intervene was still pending, they had no opportunity to respond to Plaintiffs' scheduling motion. Naifeh Decl. ¶ 3. By Order entered February 21, 2024, the Court scheduled a two-day trial, consolidated under Rule 65(a)(2), beginning April 8. Doc. 63. (In a subsequent order, the Court extended the trial to three days, but kept the April 8 start date. Doc. 130.) The Court also set expert designations and reports to be exchanged among the parties by March 22, 2024. Doc. 63.

Since entry of the Court's initial Scheduling Order, two new parties (or groups of parties) have joined the case. First, the State of Louisiana, through its Attorney General, moved to intervene as a defendant. Doc. 53. The State's intervention motion was granted on February 26, 2024, after the Scheduling Order was in place. The named Defendant Secretary of State (who had not opposed consolidation of the preliminary injunction and trial or the expedited schedule) has subsequently made clear that she will not defend SB8 on its merits, leaving that effort to the State and the Intervenors. Doc. 101.

Second, after initially granting the *Robinson* Intervenors motion to intervene only to the extent of permitting them to participate in any remedial hearing, Doc. 79, the Court subsequently granted Intervenors' motion for reconsideration and permitted them to participate to a limited extent in the liability phase. Doc. 114. That motion was granted on March 15—twenty-four days before trial commenced, and more than three weeks after the Scheduling Order was entered. One week later, the Court held a status conference in which it told the parties that each side of the case would be limited to eight hours of trial time (including cross-examination), and that the three sets of Defendants, including Intervenors, would have to split the time amongst themselves. Doc. 130.

The schedule set by the Court has not allowed Intervenors a fair opportunity to conduct discovery. For example, even though Intervenors were granted permission to intervene "for the

4

limited purpose of partaking in the remedial phase of trial," on February 26, 2024, Doc. 79, at 7, and expressly requested Plaintiffs share any discovery they propounded or received on March 7, it was only through the Secretary's counsel's transmission of her responses and objections to Plaintiffs discovery requests on March 18 that Intervenors were made aware of the ongoing discovery in the case. Naifeh Decl. ¶¶ 4-5.

Intervenors received Plaintiffs' expert reports on March 22, 2024, a week after they were granted leave to participate in the liability phase. Naifeh Decl. ¶ 7. None of these reports were the same ones included in their motion for a preliminary injunction and indeed included two new witnesses unmentioned by Plaintiffs in any of their previous papers. *Id*. Intervenors were then required to submit rebuttal reports by March 27, a mere three business days thereafter. *Id*. Data relied upon by one expert, Dr. Stephen Voss, was not provided to Intervenors when the reports were submitted. Naifeh Decl. ¶ 8. Plaintiffs submitted three more expert reports on April 1, a week before trial, including a report by a brand-new purported rebuttal expert, Dr. Ben Overholt. Naifeh Decl. ¶ 10; *see also* Doc. 145-1, at 2-5. Dr. Overholt revealed at his deposition on April 4, 2024, that he had relied on code to conduct his analysis that Plaintiffs' counsel had failed to turn over along with his report. Naifeh Decl. ¶ 10; *see also* Doc. 155, at 6. That material was finally provided by Plaintiffs' counsel on Friday April 5, the Friday before the commencement of trial. Naifeh Decl. ¶ 10; *see also* Doc. 155, at 6; Doc. 155-5.

Even though Dr. Overholt's testimony was not timely disclosed by the Court-imposed deadline for the submission of expert reports on March 22, and was improperly offered as rebuttal testimony given that his principal opinion is that Congressional District 6 in SB 8 will not "perform" for the Black voters in that district, which does not "contradict or rebut evidence on the same subject matter" offered by any opposing expert, Fed. R. Civ. P. 26(a)(2)(D)(ii), the Court

5

deferred ruling on Intervenors' motion until the witness was offered at trial. Doc. 152, at 2. The Court simultaneously denied Intervenors' request to offer any rebuttal testimony to Dr. Overholt from any new expert witness on the ground that the Court believed it was too close to trial to add an expert witness.

At the Final Pretrial Conference on April 4, 2024, Intervenors sought a reciprocal addition of a mere two hours for presentation of evidence for both sides, given the complexity of the issues presented in this case and the number of witnesses the parties have designated to testify—a total of ten "will call" witnesses and an additional nine "may call" witnesses. As Intervenor noted in making the request, the additional time (resulting in twenty total hours of trial time) would not prevent the trial from being completed in the scheduled three days. Docs. 152, 63, 130. The Court, however, declined to allow any additional time. While the Court stated that "upon completion of each case-in-chief and for good cause shown, the Court may revisit this issue and consider awarding additional time," Doc. 152, the parties cannot assume that any such request will be granted, and thus must plan and present their cases within the eight-hour time the Court has allowed.

## ARGUMENT

### A. The Court Should Continue the Trial

"It [is] highly prejudicial" to compel Intervenors "to pull together their entire case . . . on such short notice." *Dillon v. Bay City Construction Company*, 512 F.2d 801, 804 (5th Cir. 1975). The Supreme Court has long made clear that due process requires that a party have the opportunity to develop and present evidence in support of its case. *See, e.g.*, *Fayerweather v. Ritch*, 195 U.S. 276, 299 (1904). In addition, as the courts have recognized, "discovery is necessary for the parties to adequately pursue and defend this case and to meaningfully prepare for trial," *Carollo v. ACE*

*Am. Ins. Co.*, No. CV 18-13330-WBV-KWR, 2019 WL 4038602, at *4 (E.D. La. Aug. 27, 2019), and Federal Rule of Civil Procedure 26 gives them that right, *see, e.g.*, *Dillon*, 512 F.2d at 804.

Intervenors have been deprived of those rights in this case, based on a timeline that the Court set following Plaintiffs' motion for an expedited schedule—which Intervenors had no opportunity to weigh in on, and which was unopposed by a Defendant who concededly is not defending against Plaintiffs' claims. This schedule has forced Intervenors to forgo most discovery and limit the little discovery they could pursue. Next week, it will force them to present a complex case in less than eight hours.

In particular, Intervenors have been prejudiced by a trial schedule that is incompatible with an appropriate discovery process. By the time Intervenors were belatedly granted permission to vindicate their rights in defense of SB8, only fifteen business days stood between them and trial. The Court made clear at a status hearing a week later that the litigants would have to shoehorn any discovery into the timeframe before trial. That approach has had the result of depriving Intervenors of a meaningful opportunity to conduct discovery.

The prejudice to Intervenors is amplified by the fact that they are the only parties on the defense side presenting a substantial factual or expert defense at the liability hearing. The State has not proffered any expert witnesses and has not identified any fact witnesses it intends to call at trial. Doc. 157. The Secretary concededly is not defending the statute at all and has identified only one "may call" witness to testify about election mechanics, whose testimony appears to be relevant only to the timing of any remedy if the Court rules in Plaintiffs' favor on liability. Doc. 136. In contrast, Plaintiffs have submitted reports from four experts (one of whom they subsequently decided not to call at trial), and have identified five "will call" witnesses (including three experts) and another "may call" witness. Doc. 141. The *Robinson* Intervenors have similarly

7

identified five "will call" witnesses (including three experts, two of whom were called to respond to testimony by Plaintiffs' experts) and four additional "may call" fact witnesses, and have asked the Court for leave to present an additional expert to respond to Dr. Overholt, one of Plaintiffs' experts. Doc. 143. Thus, the defense against Plaintiffs' claims at the liability hearing has fallen almost entirely on the Intervenors.

The impairment of Intervenors' ability to conduct meaningful discovery is particularly prejudicial in this case, which centers on questions of legislative intent. Racial gerrymandering claims require a court to undertake a "holistic analysis" that accounts for the "districtwide context" to determine "the legislature's predominant motive for the design of the district as a whole." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 192 (2017). Because intent can be difficult to ascertain, this analysis typically involves "'direct evidence' of legislative intent, 'circumstantial evidence of a district's shape and demographics,' or a mix of both," *Cooper v. Harris*, 581 U.S. 285, 291 (2017) (citation omitted), often relying on expert testimony. In the ordinary course, a litigant seeking to probe legislative intent would also seek discovery from the legislature. Such discovery can be time-consuming because it can implicate legislative privilege issues that the parties and potentially the Court need to work through. *See, e.g.*, *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228 (5th Cir. 2023) (interlocutory appeal following denial of legislative privilege protections). Here, the schedule has provided the *Robinson* Intervenors no time to conduct such discovery.

Worse yet, the schedule afforded Intervenors virtually no time to prepare expert reports. *See In re Landry*, 83 F.4th at 305 n.5 (noting importance of expert testimony to cases involving redistricting). Based on the Court's order, Plaintiffs served their expert reports on Friday, March 22, 2024. Naifeh Decl. ¶ 7. Intervenors' affirmative expert reports and rebuttal reports were due

8

on Wednesday, March 27—three business days later—based on an agreement between the parties reached in light of the Court's trial schedule. *Id*. Plaintiffs' counsel resisted making even a single Plaintiff available for a deposition and refused to make their expert witnesses available for depositions of more than three hours. Naifeh Decl. ¶¶ 6, 9. Ultimately Intervenors were only able to spend a *total* of eight hours to depose witnesses. *But see* Fed. R. Civ. Proc. 30(d)(1) (ordinarily, *each* deposition can last up to seven hours). And these depositions involved complex expert reports using a variety of technical methods. Finally, at the eleventh hour, Plaintiffs disclosed an improper "rebuttal" report that far exceeds the scope of any existing report or opinion, and that reflects work begun shortly after the complaint was filed and withheld until the eve of trial. *See* Docs. 145, 155; *see also Conway v. Chem. Leaman Tank Lines, Inc.*, 687 F.2d 108, 112 (5th Cir. 1982) ("[T]his Court has acknowledged that continuance is a preferable remedy for prejudicial error from unfair surprise."). Taken together, the Court's unrelenting schedule has "inhibited altogether the extensive discovery and investigation necessitated" by the claim "and to which [the parties] had a right under [Federal Rule of Civil Procedure] 26." *Dillon*, 512 F.2d at 804.

Several of the Court's subsequent orders, which the Court has explained have been largely driven by the trial schedule, have compounded this harm, making it impossible for Intervenors to effectively present their case. The Court has given each side of the dispute eight hours over three days to present their case, including any cross-examination time. *Robinson* Intervenors must split that time with both the Defendant Secretary of State and Intervenor-Defendant State of Louisiana. Doc. 130. Although it will not present any witnesses, the State has reserved 15 minutes per witness called by any other party for its own questioning. For the ten "will-call" witnesses designated by the Plaintiffs and the *Robinson*-Intervenors, that amounts to 2.5 hours, leaving Intervenors with only 5.5 hours to present their case and cross-examine Plaintiffs' witnesses—assuming the

Secretary does not need some of that time for her "may call" witness. That is insufficient time for a fact-heavy case involving complex witness testimony. In contrast, a recent racial gerrymandering trial in South Carolina took eight trial days and involved "the testimony of numerous witnesses" and "hundreds of exhibits." *S.C. State Conf. of NAACP v. Alexander*, 649 F. Supp. 3d 177, 183 (D.S.C. 2023); *see also Bethune-Hill v. Va. State Bd. of Elections*, 326 F. Supp. 3d 128, 143 (E.D. Va. 2018) (considering evidence presented at initial four-day trial *and* a second four-day trial after remand); *Ala. Legislative Black Caucus v. Alabama*, 231 F. Supp. 3d 1026, 1032 (M.D. Ala. 2017) (four-day bench trial supplemented after remand by hundreds of additional exhibits).[1] It would be challenging for Intervenors to fully put on their case in (some subdivided portion of) eight hours under the best of circumstances. It is near-impossible for them to do so under the current circumstances. Without a sufficient opportunity to depose Plaintiffs' experts, Intervenors, despite their best efforts, may have to engage in time-consuming cross-examinations that they could otherwise streamline based on depositions. Similarly, the inability to depose third-party fact witnesses will force Intervenors to either risk calling witnesses who don't prove useful but expend precious time, or decline to call those witness, who may have been helpful, to save time.[2]

Several orders from the bench at the Final Pretrial Conference, again, as the Court explained, justified by the need to maintain of the schedule, further aggravated the situation. First, the Court denied Intervenors' request for a modest, bilateral extension to ten hours per side, even though this would not have required additional trial days. Pretrial Conf. Tr. (April 4, 2024) at 18:9-

---

[1] To be sure, some courts have held shorter racial gerrymandering trials. The court *Harris v. McCrory,* for example, held a three-day bench trial, as this Court intends to do. 159 F. Supp. 3d 600, 604 (M.D.N.C. 2016). But there, trial commenced two years after the claim was filed and after extensive discovery that allowed the parties to streamline their trial presentations. *Id*. at 609–10.

[2] Intervenors sought to alleviate these burdens and streamline the trial with stipulated facts. Plaintiffs declined to stipulate to many of Intervenors' proposed facts.

10

20:22. That request reflected the underlying complexity of the case and the fact that, since the Court announced the eight-hours-per-side rule, the parties have noted ten "will call" witnesses and another nine "may call" witnesses. While the Court left open the possibility of revisiting that decision at the end of trial, that does not mitigate the harm to Intervenors. They must still plan a case and conduct all of their witness examinations on the assumption that they will have only eight hours.

Second, and relatedly, the Court declined to admit the underlying expert reports into evidence, even where the expert is available for cross-examination at trial, meaning the parties must now spend precious trial time going into details of the experts' opinions. There is no prejudice to the parties in admitting an expert's written reports where the expert has been qualified by the court and can be cross-examined about their opinions, and the bilateral admission into evidence of expert reports in such circumstances is par-for-the-course in redistricting cases and bench trials generally.

Third, the Court denied without explanation Intervenors' motion in limine. *See* Doc. 142. Plaintiffs seek to introduce irrelevant evidence that substantially expands the scope of this case to encompass a range of factors potentially relevant under VRA Section 2 but not to Plaintiffs' claim for racial gerrymandering. Again, while the Court left open the possibility of sustaining objections at trial, Intervenors must still prepare to rebut this testimony in their (portion of) eight hours.

Fourth, the Court declined to strike the irrelevant and improper rebuttal testimony of Dr. Ben Overholt while denying Intervenors' request for leave to offer expert testimony in response. *See* Doc. 145. Initially, at the April 4 Final Pretrial Conference, the Court indicated willingness to accept a rebuttal served by the end-of-day on April 5. Pretrial Conf. Tr. (April 4, 2024) at 4:25-5:7. When Intervenors made clear that a new expert, rather than one of Intervenors' existing

11

experts, would be needed to offer this rebuttal opinion, *id.* at 5:8-5:24, 7:8-7:13, the Court reversed course and precluded that option, *id.* at 7:14-7:18. But the fact that Intervenors' existing witnesses lack expertise in fields related to Dr. Overholt's testimony only underscores that his is not proper *rebuttal* testimony, but a whole new opinion unmoored from any other experts in the case. The Court did not clarify why it would permit Intervenors to present this testimony from an existing witness, but not a new witness.

These circumstances, taken together, have undermined Intervenors' "right to the 'integrity and accuracy of the fact-finding process,'" *United States v. Thoms*, 684 F.3d 893, 900 (9th Cir. 2012) (quoting *United States v. Bergera*, 512 F.2d 391, 393 (9th Cir. 1975)). It is appropriate for the Court to exercise its discretion and continue trial for three weeks to allow limited time for additional fact and expert discovery.

### B. In The Alternative, The Court Should Reconsider its Decision to Advance the Trial on the Merits in this Case Pursuant to FRCP 65(a)(2)

A continuance is the most appropriate course of action, because even holding a hearing on a preliminary injunction motion under these circumstances is highly prejudicial. But, at the very least, in the alternative, this Court should deconsolidate the full trial on the merits from the preliminary injunction hearing—a decision that was made based on an unopposed motion before either the *Robinson* Intervenors or State Intervenors were part of this case.

This case, on its current schedule, is unsuitable for a consolidated trial under Federal Rule of Civil Procedure 65(a)(2). While the rule allows a court to "advance the trial on the merits and consolidate it with the [preliminary injunction] hearing," FRCP 65(a)(2), the Supreme Court has held that "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Consolidation must "still afford the parties a full opportunity to present their respective cases." *Id.* (citation omitted). As a result, "[c]onsolidation is most appropriate when the relevant issues are solely legal, not factual, and the parties agree that they have had a full opportunity to introduce evidence in support of and argue their case." *Kyocera Document Sols. Am., Inc. v. Div. of Admin.*, No. 23-cv-4044, 2023 WL 8868837, at *8 (D.N.J. Dec. 22, 2023).[3]

Unlike cases most suitable for Rule 65(a)(2) consolidation, this case is extraordinarily fact-heavy. Racial gerrymandering claims involve "a two-step analysis." *Cooper*, 581 U.S. at 291. First, plaintiffs must prove "race was the predominant factor motivating the . . . decision to place a significant number of voters within or without a particular district," *Miller v. Johnson*, 515 U.S. 900, 916 (1995), and "that the legislature subordinated traditional race neutral districting principles . . . to racial considerations," *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 187 (2017). This "holistic analysis," *id.* at 192, typically involves both direct and "circumstantial evidence," *Cooper*, 581 U.S. at 291 (quoting *Miller*, 515 U.S. at 916). While this case should end at that first step because race did not predominate here, "[w]here a challenger succeeds in establishing racial predominance, the burden shifts to the State to demonstrate that its districting legislation is narrowly tailored to achieve a compelling interest." *Bethune-Hill*, 580 U.S. at 193 (cleaned up). That, too, is an intensely factual inquiry, which requires an assessment of whether the State "ha[d] 'good reasons to believe' it must use race in order to satisfy the Voting Rights Act." *Id.* at 194 (quoting *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015)).

---

[3] It is important to acknowledge that at the time the Court ordered consolidation, no existing party opposed the effort. Doc. 63. The Secretary of State, the only Defendant at the time, did not oppose Plaintiffs' proposal. Doc. 43-1. And it appears that the State Intervenor-Defendant's defense of SB8 may forgo any argument that politics, not race, drove SB8, *see* Doc. 86, at 7-8, thus limiting many of the factual disputes at issue. With *Robinson* Intervenors' more fulsome defense of SB8, that fact-heavy inquiry is at the core of this case.

13

As Intervenors described above, they have been stymied in their ability to develop and present their case. This situation precludes Rule 65(a)(2) consolidation. "[T]he Trial Judge must not force the parties by the consolidation to sacrifice their right to fully present the available evidence." *Dillon*, 512 F.2d at 804; Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2950 (3d ed.) ("[T]he key is that the notice should provide a reasonable time to permit a litigant to prepare a showing upon which the final outcome of the case may depend"). That's why consolidation is usually appropriate when a case can be decided on legal issues alone, rather than factual disputes or credibility determinations. Here, the nature of the claim and defenses requires both factual investigation and expert assessment. Even where courts consolidate more fact-heavy cases such as this one, they do so only after "grant[ing] the parties multiple continuances to allow them to gather evidence and prepare for trial." *Texas v. Garland*, No. 5:23-CV-034-H, 2024 WL 814498, at *12 (N.D. Tex. Feb. 27, 2024), superseded, No. 5:23-CV-034-H, 2024 WL 967838 (N.D. Tex. Feb. 27, 2024).

Once granted intervention, Intervenors have made every effort to hew to the schedule the Court had previously adopted. Lamentably, it is now clear that this schedule will prejudice their ability to present their case and violate their due process rights. Under the circumstances, it is necessary to either continue the consolidated trial sufficiently to ensure each party has fair opportunity to develop its case or to deconsolidate the full trial on the merits from the preliminary injunction hearing and grant a shorter continuance of the preliminary injunction hearing.

## CONCLUSION

The Court should grant the *Robinson* Intervenors' motion to continue the trial by three weeks, or, in the alternative, deconsolidate the merits with the preliminary injunction hearing and

continue the preliminary injunction hearing by one week. In either event, Intervenors further request that the court set the trial for four days to allow each side to fully present its case.

DATED:  April 6, 2024

By: /s/ *Tracie L. Washington*
Tracie L. Washington
LA. Bar No. 25925
Louisiana Justice Institute
8004 Belfast Street
New Orleans, LA 70125
Tel: (504) 872-9134
tracie.washington.esq@gmail.com

*Counsel for* Robinson *Intervenors*
*Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule*

By: */s/ John Adcock*
John Adcock
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

*Counsel for* Robinson *Intervenors*

Stuart Naifeh (admitted pro hac vice)
Kathryn Sadasivan (admitted pro hac vice)
Victoria Wenger (admitted pro hac vice)
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
ksadasivan@naacpldf.org
vwenger@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani (admitted pro hac vice)
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon (admitted pro hac vice)
Megan C. Keenan (admitted pro hac vice)
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

Robert A. Atkins (admitted pro hac vice)
Yahonnes Cleary (admitted pro hac vice)
Jonathan H. Hurwitz (admitted pro hac vice)
Amitav Chakraborty (admitted pro hac vice)
Adam P. Savitt (admitted pro hac vice)
Arielle B. McTootle (admitted pro hac vice)
Robert Klein (admitted pro hac vice)
Neil Chitrao (admitted pro hac vice)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin (admitted pro hac vice)
Dayton Campbell-Harris (pro hac vice forthcoming)*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg (admitted pro hac vice)
Daniel Hessel (admitted pro hac vice)
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

*Additional counsel for* Robinson *Intervenors*

*Practice is limited to federal court.