# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | |
|---|---|
| PHILIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br>    Plaintiffs, <br><br>v. <br><br>NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, <br><br>    Defendant. | Case No. 3:24-cv-00122-DCJ-CES-RRS <br><br>District Judge  David C. Joseph <br>Circuit Judge Carl E. Stewart <br>District Judge  Robert R. Summerhays <br><br>Magistrate Judge Kayla D. McClusky |

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO CONTINUE**

At 7:30 p.m. on Saturday, April 6, 2024, as counsel and witnesses had begun travel for trial on Monday, April 8, 2024, the Robinson Intervenors (the "Intervenors") filed a Motion for Continuance or, in the Alternative, to Deconsolidate Preliminary Injunction Hearing from the Merits Trial (Doc. 161). Such a request on the eve of trial is usually reserved for emergencies, natural disasters, or personal tragedy. Intervenors' filing, in contrast, is a litany of grievances they have apparently been nursing since joining this action as limited-purpose parties under this Court's Order (Doc. 114) on March 15, 2024. Whatever the reason for the delay in Intervenors' filing, the substance of their motion should not move this Court. The Intervenors' factual recitation is misleading and certainly does not require delay of this trial.

The Intervenors' claims of unfairness due to sharp dealing by the Plaintiffs and quick, but necessary, scheduling by the Court are, regrettably, based on a series of half-truths and outright fabrications. Intervenors first complain that they were unfairly excluded from the Court's decision

1

to set trial for April 8 and 9. Doc. 161-1, at 3-4. But the Intervenors were not yet in the case. Doc. 114. And the trial schedule was a fact of which Intervenors were well aware when they intervened. In fact, Intervenors represented to the Court in their Motion for Reconsideration of their Motion to Intervene, Doc 112, that they would be able to meet all deadlines, including the trial deadline, when Plaintiffs raised a concern about undue delay. Doc. 112-1, at 9 ("Plaintiffs raise the unfounded specter of intervention delaying or prejudicing the adjudication of the action. Pls. Opp. at 9-10. The facts demonstrate otherwise. . . . Nor is the number of lawyers is a proxy for calendar delay. Pls. Opp. at 9. If intervention is permitted, Movants will swiftly take any document discovery and meet the remaining deadlines in the case."). Based on those representations, the Court granted their intervention. Doc. 114.

Intervenors claim deep experience in redistricting cases (fairly so, having just completed one), but upon their entry, they did not lodge complaints about the timing or length of trial. After their intervention, in a pre-conference meeting with the parties or at the March 22 initial conference with the Court, the Robinson Intervenors did not push for a later trial date or more trial time. Edward D. Greim Declaration ("Greim Dec."), ¶ 1. Nor did they complain that they were being treated unfairly or couldn't participate in discovery. *Id*.

Indeed, after the Robinson Intervenors were admitted to the case on March 15 (Doc. 114), they served no additional written discovery on any party. Greim Dec. ¶2. This is surprising, given that as non-parties, they had improperly served requests for production of documents to Plaintiffs on March 14, demanding a response by March 22, 2024. *Id*. The Plaintiffs nonetheless complied, made a complete and on-time production, and worked in good faith with all parties to define discovery deadlines in the absence of a formal Rule 26 conference. *Id*. Plaintiffs stood ready to engage in other written discovery. None was forthcoming. Greim Dec. ¶3. Even after the Plaintiffs

2

served written discovery on the Intervenors on March 20, seeking responses by March 27 under the parties' agreement, the Intervenors declined to issue additional written discovery. Greim Dec. ¶4.

Indeed, the Intervenors never requested any other written discovery, formally or informally, either from the Plaintiffs or the State. Greim Dec. ¶5.

The Intervenors' one and only pursuit of factual discovery was a blind notice, issued Friday night, March 22, 2024, for the deposition of Plaintiff Rolph McCollister on Thursday, March 28, 2024. Greim Dec. ¶6. No pleading, brief, or party's Rule 26 disclosures identified McCollister, who is not a legislator, lobbyist, or expert, as having any particular knowledge on the legislature's intent or any other fact issue. *Id*. Intervenors would not disclose and have never disclosed why the deposition was necessary, but claimed to want to designate his testimony rather than live questioning at trial—something the Court has repeatedly stated is disfavored. *See, e.g.*, Doc. 63, at 3 ("Deposition testimony is disfavored by the Court and will only be authorized for good cause shown."). Though Plaintiffs attempted to draw the Intervenors' attention to this Court instruction, they did not relent. *Id*.

Neither McCollister nor Plaintiff's counsel was available until Monday, April 1. Greim Dec. ¶7. Given the press of time and the Court's instructions, Plaintiffs offered an alternative: to ensure his attendance at trial. *Id*. Plaintiffs further offered to answer interrogatories or other written discovery probing McCollister's knowledge on 36 hours' notice so that Intervenors could decide whether McCollister was truly worth the time. *Id*. Intervenors declined both offers, claiming it would reveal their strategy. Greim Dec. ¶8. They withdrew their notice after deciding they did not want to offer his testimony as a mere designation. *Id*. From the parties' discussions to the present

3

motion, Intervenors have never articulated what particularly useful information McCollister is supposed to have. *Id*.

Next, Intervenors claim Plaintiffs misled them regarding the sharing of discovery. *See* Doc. 161-1, at 4-5; Doc. 162, at ¶¶ 4-5. In truth, Intervenors requested the parties share discovery with them before they were even parties to this portion of the case on March 7. Greim Dec. ¶9. Plaintiffs' counsel responded on March 12, still before Intervenors were parties to this portion of the case, thanking the Intervenors for reaching out and stating, "Plaintiffs will share discovery with the Robinson Intervenors once it has been produced." *Id*., Ex. A. The Intervenors' complaint seems to be that *before they became parties on the merits*, they did not receive *copies of requests* that had been served but not yet answered—a promise they incorrectly believed had been made. Instead, when non-parties, Plaintiffs gratuitously promised Intervenors that they would receive all productions. Within days of being made parties, Intervenors received all requests that had been made at that point. Greim Dec. ¶10. They received all of the existing parties' productions, and engaged in all discovery conferences on all matters, including serious disputes between the Plaintiffs and the State. *Id*. They participated fully and on equal footing with all other parties. *Id*.

Intervenors and Plaintiffs negotiated timing for the receipt and exchange of expert reports, deals which Plaintiffs believed were satisfactory and which they hardly expected to later find cited as a form of oppression. Greim Dec. ¶11. It is true that Dr. Voss' data was not ready when his report was issued, but to account for this, Plaintiffs gave and Intervenors accepted an extra day for the expert—McCartan—they had designated as responding to the technical part of Dr. Voss's report. Such give-and-take is common in trial preparation. *Id*. Finally, Intervenors' complaints regarding Dr. Benjamin Overholt's allegedly improper rebuttal of Mr. Fairfax, and their Friday night attempt to add Dr. Lisa Handley as a sur-rebuttal witness, are addressed in Plaintiffs' opposition, Doc. 158.

Intervenors also complain that Plaintiffs would not agree to much of their stipulations. Plaintiffs communicated expeditiously with the parties, including Intervenors, regarding stipulations and joint exhibits on March 21. Greim Dec. ¶12, Ex. B, C. The Robinson Intervenors gave no response, not even to suggest redlines, until March 28. *Id*. That same day, Plaintiffs reviewed Intervenors' redlines and began responding. Intervenors had inserted many disputed facts to which Plaintiffs simply could not agree. *Id*. In the end, the parties agreed to basic party facts and no more. *Id*. Similarly, Plaintiffs attempted several times to rouse the Robinson Intervenors regarding joint exhibits, even circulating a draft joint exhibit list multiple times, beginning on March 21, 2024. Greim Dec. ¶13. Such attempts to work together to lessen the parties' burden were not well received. *Id*. It was not until after this Court's final pre-trial conference on Thursday, April 4 that the Robinson Intervenors decided to work with Plaintiffs. *Id*. Plaintiffs again circulated the exhibit list that same day—the same list Plaintiffs had originally circulated two weeks earlier, with no response. *Id*.

Intervenors' claim that this case is exceptionally complex is belied by their actual conduct in seeking almost no fact discovery from any party. Indeed, Intervenors claim that their earlier case is preclusive now, so that no party should be permitted to introduce evidence or argue the issue of strict scrutiny. If this position is serious, it eliminates the majority of the case. Intervenors must have genuinely held this position, for when it was time to submit reports, Intervenors' experts assiduously avoided (with one exception in a portion of Mr. Fairfax's report) doing anything other than critiquing the analysis of Plaintiffs' experts. Intervenors claimed to have involvement in securing SB8's passage, experience litigating in Louisiana for years, deep connections with the Legislature, and a bevy of top Democratic experts that they used in their prior litigation. Their

5

decision to bring none of this to bear was strategic. It is not the fault of the other parties or the Court.

The Intervenors also make much of the State and Secretary's strategy in this case. Doc. 161-1, at 7-8. But this is not a new complaint. They made this same argument in their Motion to Reconsider their Motion to Intervene, Doc. 18, 112-1. Under this reasoning, the Motion for Continuance was ripe weeks ago, not 36 hours before trial. Moreover, different party strategies are part of litigation; and in fact, this is why Intervenors pressed to the enter the litigation in the first place. Ironically, the litigating position of the Robinson Intervenors and the State has since become virtually identical.

Moreover, the Intervenors' attempt to extend this case could potentially create a *Purcell* problem—a problem they accused *Plaintiffs* of potentially creating in their Amicus Brief in Opposition to Plaintiffs' Motion for Preliminary Injunction. Doc. 94, at 39 ("Given the timing of the litigation, there is also a concern that the court could adequately litigate both a liability and remedial phase in time to prevent the type of voter confusion that *Purcell* and its progeny warn courts against. *See generally Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)."). Now, Intervenors have seemingly seized upon a strategy of nightly motion practice, hoping the frenzy of paper clogs the litigation and makes their early "warning" of delay into a reality. Plaintiffs would be deeply prejudiced by further delay and would potentially be deprived of their constitutional rights if forced to vote under this unconstitutional map in November 2024.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask the Court deny the Motion for Continuance.

Dated this 7th day of April, 2024

**PAUL LOY HURD, APLC**
*/s/ Paul Loy Hurd*
Paul Loy Hurd
Louisiana Bar No. 13909
Paul Loy Hurd, APLC
1896 Hudson Circle, Suite 5
Monroe, Louisiana 71201
Tel.: (318) 323-3838
paul@paulhurdlawoffice.com
*Attorney for Plaintiffs*

Respectfully submitted,

**GRAVES GARRETT GREIM LLC**
*/s/ Edward D. Greim*
Edward D. Greim,* Missouri Bar No. 54034
A. Bradley Bodamer,* Missouri Bar No. 28676
Matthew Mueller,* Missouri Bar No. 70263
Jackson Tyler,* Missouri Bar No. 73115
Katherine Graves,* Missouri Bar No. 74671
**Admitted Pro Hac Vice*
GRAVES GARRETT GREIM LLC
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
bbodamer@gravesgarrett.com
mmueller@gravesgarrett.com
jtyler@gravesgarrett.com
kgraves@gravesgarrett.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

    I do hereby certify that, on this 7th day of April, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

                                                       /s/ *Edward D. Greim*
                                                      Edward D. Greim