IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, <br><br> Defendant. | Case No. 3:24-cv-00122 |

**INTERVENOR-DEFENDANT THE STATE OF LOUISIANA'S
PROPOSED FINDINGS OF FACT**

Pursuant to the Court's Order at the conclusion of the Bench Trial on April 10, 2024, EFC No. 178, Attorney General Elizabeth Murrill, on behalf of the State of Louisiana (the "State"), submits these proposed findings of fact:

1. This saga of Louisiana redistricting began in April of 2021 when the United States delivered the 2020 census data. *See* ECF No. 17–1 at 10–11; *Robinson v. Ardoin*, 605 F.Supp.3d 759, 767 (M.D. La. 2022).

2. The task of drawing legislative districts is a power usually reserved for State Legislatures. *See Reynolds v. Sims*, 377 U.S. 533, 586 (1964) ("[L]egislative reapportionment is primarily a matter for legislative consideration and determination[.]").

3. In February of 2022 the Louisiana Legislature passed HB1; it was later vetoed by then-Governor Edwards, but his veto was overridden by the Legislature and HB1 went into effect. *See* ECF No. 86 at 8; ECF No. 17–1 at 11.

4. Litigation followed immediately thereafter.

5. Two separate complaints, later consolidated, challenged HB1 under Section 2 of the Voting Rights Act ("VRA"). ECF No. 86 at 8 (citing Complaint, *Robinson v. Ardoin*, No. 3:22-cv-211 (M.D. La. Mar. 30, 2022), ECF No. 1, *consolidated with* Complaint, *Galmon v. Ardoin*, No. 3:22-cv-214 (M.D. La. Mar. 30, 2022)).

6. The State, as well as the then-Speaker and then-President Pro Tempore of the Louisiana Legislature, intervened. *Robinson v. Ardoin*, No. 3:22-cv-211, 2022 WL 1154607 (W.D. La. Apr. 19, 2022).

7. Plaintiffs filed motions for preliminary injunctions in the consolidated *Robinson* litigation. *Robinson*, 605 F. Supp. 3d at 766.

8. During a five-day preliminary injunction hearing in the United States District Court for the Middle District of Louisiana, the parties presented testimony from seven fact witnesses and fourteen experts. *Id.* at 768–69.

9. After that five-day hearing, the district court for the Middle District enjoined Louisiana's congressional map in a 152-page opinion that found the VRA required two majority-minority districts in Louisiana. *See generally id.*

10. The State appealed the preliminary injunction ruling to the Fifth Circuit.

2

11. Although the Fifth Circuit denied a stay pending appeal, *see Robinson v. Ardoin*, 37 F.4th 208, 215 (5th Cir. 2022), the Supreme Court granted one. *See Ardoin v. Robinson*, 142 S. Ct. 2892 (2022).

12. After the Supreme Court lifted the stay, *see Ardoin v. Robinson*, 143 S. Ct. 2654 (2023), the Fifth Circuit held that the district court had not clearly erred in concluding that the plaintiffs were likely to succeed on the merits of their § 2 challenge to HB1. *Robinson*, 86 F.4th 574, 583 (5th Cir. 2023).

13. But the Fifth Circuit also vacated the district court's preliminary injunction on procedural grounds and gave the Legislature an opportunity to enact a new congressional districting map; if the Legislature did not enact a new map, the case would proceed to trial on the merits of HB1. *See id.* at 601–02.

14. Adhering to the Fifth Circuit's instruction that the challenge to HB1 be resolved sufficiently in advance of the 2024 election, the district court for the Middle District gave the Legislature until January 30, 2024, to adopt a new congressional map, or it would proceed to trial on HB1. *See Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ, (M.D. La. Nov. 27, 2023) (ECF No. 315) ("If the Defendant/Intervenors fail to produce a new enacted map on or before [January 30, 2024], this matter will proceed to a trial on the merits on [February 5, 2024], which shall continue daily until complete. If a new enacted map is produced, exchanged with Plaintiffs['] counsel, and filed in the record on or before [January 30, 2023], a trial on the merits shall be held commencing on [March 25, 2024], and shall continue daily until complete.").

15. Newly-inaugurated Governor Landry (who was the Attorney General for most of the Robinson proceedings) and the Louisiana Legislature chose to "heed" the prompting of the federal judiciary. *See* ECF No. 181-8 at 11 (Governor Landry speaking to joint special session of Legislature in 2024 about redistricting).

16. Soon after his inauguration, Governor Landry called for a special session to focus on redistricting, where he stated: "[l]et us make the necessary adjustments to heed the instructions of the Court, take the pen out of the hand of a nonelected judge and place it in your hands. In the hands of the people. It's really that simple." Trial Tr. vol. III, 591:3-7, April 10, 2024; *see also* ECF No. 181-8 at 11 (same).

17. Governor Landry explained, in a joint special session of the Legislature, that the federal judiciary had forced another round of redistricting upon the State despite the State's best efforts to defend HB1. *See* Trial Tr. vol. III, 590:11-23, April 10, 2024 ("I defended the redistricting plan adopted by this body as the will of the people. We sought a stay in the Fifth Circuit. We successfully stayed the case at the United States Supreme Court for more than a year allowing the 2022 elections to proceed. Last October we filed for a writ of mandamus which was granted in the Fifth Circuit which would again allow us one more chance to take care of our business. However, when the Fifth Circuit panel ruled against us later in the fall we filed for an en banc hearing which they denied. We have exhausted all legal remedies and we have labored with this issue for far too long."); *see also* ECF No. 181-8 at 11 (same).

18. That the federal judiciary had forced the Legislature to redistrict became a continual refrain of the 2024 First Extraordinary Session. *See, e.g.*, Trial

Tr. vol. III, 588:11-17, April 10, 2024 ("Judge Dick has put us in a position and the Fifth Circuit, the panel that reviewed that decision, and the whole court, when I asked them to go en banc, by declining to go on en banc, have put us in a position pus of where we are today where we need to draw a map."); ECF No. 181-1 at 46:5–10[1] (same); *see also* Trial Tr. vol. III, 589:1-3, April 10, 2024 ("The courts, never the less, have told us to draw a new map. And they have indicated that we have a deadline to do that or Judge Dick will draw the map for us."); ECF No. 181-1 at 36:14–17 (same); ECF No. 181-9 at 33 (Senator Price: "Regardless of what you heard, we are on a court order and we need to move forward. We would not be here if we were not under a court order to get this done."); ECF No. 181-9 at 1 (Senator Fields: "[B]oth the district and the appeals court have said we need to do something before the next congressional elections."). Multiple members of the legislature reflected the Governor's comments in their own floor and committee statements.  ECF No. 181-4 at 26:12–24 (Chairman Beaullieu: "Senator Womack, why are we here today?  What -- what brought us all to this special session as it -- as it relates to, you know, what we're discussing here today?"; Senator Womack: "The middle courts of the district courts brought us here from the Middle District, and said, 'Draw a map, or I'll draw a map.'"; Chairman Beaullieu:  "Okay."; Senator Womack: "So that's what we've done."; Chairman Beaullieu: "And -- and were you -- does -- does this map achieve that middle court's orders?"; Senator Womack: "It does.").

---

[1] For citations to the legislative transcript, we have cited to the page number and line number listed in the document, rather than the ECF page number.

19. Indeed, the State's chief legal official, Attorney General Murrill, explained the *Robinson* litigation at length during a House Governmental Affairs Committee meeting, in which she outlined the requirements of the VRA as interpreted by the Middle District in *Robinson* and fielding questions about the same. *See* ECF No. 181-1 at 35:24–54:6; 60:13–70:15; 75:17–78:13.

20. Thus, it was apparent to the Legislature that whatever map it passed must contain a second majority-Black district to comply with the VRA and the federal courts' instructions. *See, e.g.*, ECF No. 181-9 at 4 (Senator Price: "We all know that we've been ordered by the court that we draw congressional districts with two minority districts. This map will comply with the order of both the Fifth Circuit Court of Appeal and the district court. They have said that the legislature must pass a map that has two majority black districts."); ECF No. 181-6 at 5:1-7 (Representative Beaullieu: "As Senator Stine said earlier in this week, 'It's with a heavy heart that I present to you this other map,' but we have to. It's that clear. A federal judge has ordered us to draw an additional minority seat in the state of Louisiana."); ECF No. 181-7 at 11:3–7 (Senator Carter: "[W]e came together in a effort to comply with a federal judge's order that Louisiana provide equal representation to the African Americans in the State of Louisiana, and we have an opportunity to do that."); ECF No. 181-9 at 18 (Representative Marcelle: "Let's not let Judge Dick have to do what our job is, which is to create a second minority-majority district."); The comments of the Attorney General were similarly reflected by members of the legislature who observed her testimony. ECF No. 181-3 at 20:22–21:4 (Senator Duplessis: "It's about

a federal law called the Voting Rights Act that has not been interpreted just by one judge in the Middle District of Louisiana who was appointed by former president Barack Obama, but also a US Fifth Circuit Court of Appeals that's made up of judges that were appointed by predominantly Republican presidents, and a United States Supreme Court that has already made rulings. ").

21. Indeed, Plaintiffs' witnesses here—including legislators who opposed SB8's adoption—recognized that the Legislature was redrawing the congressional map because of the court orders in the *Robinson* litigation. *See e.g.* Trial Tr. vol. I, 47:22-48:1, April 8, 2024 (Senator Seabaugh: "Well, the -- really, the only reason we were there was because of the other litigation; and Judge Dick saying that she -- if we didn't draw the second minority district, she was going to. I think that's the only reason we were there."); Trial Tr. vol. I, 69:24-70:4, April 8, 2024 (Senator Pressly: "We were told that we had to have two performing African-American districts. And that we were -- that that was the main tenet that we needed to look at and ensure that we were able to draw the court -- draw the maps; otherwise, the Court was going to draw the maps for us."); Trial Tr. vol. I, 174:18-19, April 8, 2024 (Dr. Voss: "I understood that the *Robinson* court was the catalyst for the whole process, yes.").

22. Therefore, although the Legislature would have kept HB1 absent litigation, the inevitability of the Middle District imposing its own judge-drawn map drove the Legislature to act. *See, e.g.*, Trial Tr. vol. III, 589:20-25, April 10, 2024 (Governor Landry: "These maps will satisfy the Court and ensure that the congressional districts of our state are made right here in this legislature and not by

7

some heavy-handed federal judge. We do not need a federal judge to do for us what the people of Louisiana have elected you to do for them.); ECF No. 181-4 at 95:3-96:4 (Representative Carlson stating he would rather this decision rest in the legislature's hands than in the hands of an unelected judge); ECF No. 181-4 at 88:17-25 (Representative Beaullieu emphasizing that they would prefer have this map drawn in committee than have it drawn by "some Obama-appointed judge").

23. Once the decision to redistrict Louisiana to include two majority-Black districts had been forced on the Legislature, it sought to protect its political interests via Senator Womack's introduction of SB8. *See* ECF No. 181-2 at 4:9–15 (Senator Womack: "I firmly submit the congressional voting boundaries represented in this bill best achieve the goals of protecting Congresswoman Letlow's seat, maintaining strong districts for Speaker Johnson and Majority Leader Scalise, ensuring four Republican districts, and adhering to the command of the federal court in the Middle District of Louisiana."); *see also* ECF No. 181-6 at 8:14–20 (Representative Beaullieu: same); ECF No. 181-2 at 5:3–6:7 (Senator Fields questioning Senator Womack on the political, as opposed to racially, predominant nature of SB8).

24. SB8 was, at its core, a political map designed to protect several interests of the Legislature. *See* Trial Tr. vol. III, 582:22-583:12, April 10, 2024; *see also* Trial Tr. vol. I, 78:22-79:16, April 8, 2024; *see also* ECF No. 181-4 at 24:25–25:2 (Representative Larvadain: "So this is more of a political map."; Senator Womack: "Exactly."); ECF No. 181-4 at 11:18–22 (Representative Marcelle: "So in your opinion,

your map does two things. It satisfies the Court, and it also protects the politics, or our congressional members. Is that -- is that. . ."; Senator Womack: "Yes, ma'am.").

    25. First, SB8 was an unabashed attempt to avoid pairing Congresswoman Julia Letlow with any other incumbents, thereby protecting her position on the powerful U.S. House Appropriations Committee and its important agriculture subcommittee and ensuring that Louisiana did not lose the only woman in its congressional delegation. *See* ECF No. 181-2 at 1:21–2:5 (Senator Womack: "First, as you know -- all are aware, Congresswoman Letlow, Julia Letlow, is my representative in Washington, DC. The boundaries in this bill I'm proposing ensure that Congresswoman Letlow remains both unimpaired with any other incumbents and in a congressional district that should continue to elect a Republican to Congress for the remainder of this decade. I have great pride in the work Congresswoman Letlow has accomplished, and this map will ensure that Louisianans will continue to benefit from her presence in the halls of Congress for a long -- for as long as she decides to continue to serve our great state."); ECF No. 181-6 at 5:10–23 (Representative Beaullieu: same); ECF No. 181-3 at 14:16–15:6 (Senator Stine: "This map, imperfect as it is, stands as a bulwark protecting not just lines on a map, but the very pillars of our representation in Congress. It safeguards the positions of pivotal figures, the United States Speaker of the House, the majority leader, and notably, the sole female member of our congressional delegation. Her role is not merely symbolic. She is a lynchpin in the appropriations, education, and workforce committees which are vital to the prosperity and well-being of our state. We are the guardians of Louisiana's

voice on the national stage. Our decision today, while constrained, is crucial. It's about more than lines on a map.  It's about ensuring our state's continued influence in the halls of power where decisions are made that affect every citizen we represent."); ECF No. 181-2 at 12:13–13:5 (Senator Cloud: "As a Republican woman, I want to stand here -- or sit here, rather, and offer my support for the amendment to the map, which I believe further protects Congresswoman Julia Letlow.  She is the only woman in the Louisiana's congressional district. She is a member of the Appropriations Committee in the US House, as Senator Womack stated, and also a member of the Agricultural Committee in the US House.  It's -- it's important to me and all of the other residents of our area that -- to have these two representatives from our crucial region in our state. I think that politically, this map does a great job protecting Speaker Johnson and Congresswoman Julia Letlow as well as Majority Leader Scalise.  It keeps CD5 in the northern Louisiana area and allows Congresswoman Letlow to keep doing the great job that she's been doing. So I just sit here and offer my support of the amendment.").

26. Second, SB8 was an attempt to protect the incumbency of the two highest-ranking congressional members of the majority party— Speaker of the U.S. House of Representatives, Mike Johnson, and U.S. House Majority Leader, Steve Scalise. ECF No. 181-2 at 2:6–20 (Senator Womack: "Second, of Louisiana's six congressional districts, the map and the proposed bill ensures that four of our safe Republican seats, Louisiana Republican presence in the United States Congress has contributed tremendously to the national discourse.  And I'm very proud of both

10

Speaker of the US House of Representatives Mike Johnson and US House Majority Leader Steve Scalise are both from our great state. This map ensures that the two of them will have solidly Republican districts at home so that they can focus on the national leadership that we need in Washington, DC. The map proposed in this bill ensures that the conservative principles retained by the majority of those in Louisiana will continue to extend past our boundaries to our nation's capital."); ECF No. 181-6 at 5:24–6:14 (Representative Beaullieu: same); ECF No. 181-4 at 11:18–22, 121:19–122:1; ECF No. 181-2 at 5:3–6:7, 13:9–14:3.

27. Speaker Johnson lives in one of the western parishes of North Louisiana (specific parish not identified for privacy and security reasons), and Representative Letlow lives in the eastern side of North Louisiana (specific parish not identified for privacy and security reasons). Trial Tr. vol. I, 59:25-60:4, 60:21-23, April 8, 2024.

28. Majority Leader Steve Scalise lives in the New Orleans area, not far from Representative Carter. (Specific parishes and locations not identified for privacy and security reasons). Trial Tr. vol. I, 60:5-7, April 8, 2024.

29. Third, SB8 was the Legislature's good-faith attempt to satisfy the VRA as interpreted by the *Robinson* courts through a map of its choosing, as opposed to a map drawn by the federal judiciary—*i.e.*, it was protecting its constitutionally delegated redistricting role. *See supra* at 1.

30. SB8 was eventually passed and signed into law by Governor Landry on January 22, 2024. ECF No. 86 at 9.

11

31. SB8 created two majority-minority districts, in accordance with what the Louisiana Legislature reasonably concluded was required under Section 2 of the VRA based on the orders handed down in the Middle District of Louisiana and the Fifth Circuit. *See supra.*

32. SB8 did not pair Speaker Johnson, Majority Leader Scalise or Representative Letlow with any other member.

33. SB8 protected Representative Letlow's district. As a result, she is expected to continue to win in subsequent elections.

34. Despite the State's good-faith effort to satisfy the VRA and commands of the Middle District and Fifth Circuit, SB8 was challenged as a racial gerrymander. *See* ECF No. 1; ECF No. 73.

Dated this 17th day of April, 2024

Respectfully submitted,

Dated: April 17, 2024

Jason B. Torchinsky (DC Bar No. 976033)*
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC
2300 N Street, NW
Suite 643A
Washington, DC 20037
Tel: 202-737-8808
Email: jtorchinsky@holtzmanvogel.com

Phillip M. Gordon (VA Bar No. 95621)*
Zachary D. Henson (NY Bar No. 5907340)*
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC
15405 John Marshall Hwy.
Haymarket, VA 20169
Telephone: (540) 341-8808
Facsimile: (540) 341-8809
Email: pgordon@holtzmanvogel.com
　　　　zhenson@holtzmanvogel.com

Brennan A.R. Bowen (AZ Bar No. 036639)*
Drew C. Ensign (DC Bar No. 976571)**
HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC
2575 East Camelback Rd, Ste 860
Phoenix, AZ 85016
602-388-1262
Email: bbowen@holtzmanvogel.com

　　　*admitted *pro hac vice*

Respectfully Submitted,

*/s/ Morgan Brungard*
Morgan Brungard (LSBA No. 40298)
　　*Deputy Solicitor General*

Carey Tom Jones (LSBA No. 07474)
Office of the Attorney General
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 326-6000 phone
(225) 326-6098 fax
BrungardM@ag.louisiana.gov
JonesCar@ag.louisiana.gov

*Counsel for Intervenor-Defendant State of Louisiana*

13

## CERTIFICATE OF SERVICE

I hereby declare that I served the foregoing document on counsel for all parties via email on April 17, 2024.

<u>*/s/ Morgan Brungard*</u>
Morgan Brungard