# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **PHILLIP CALLAIS,** *et al.*, <br><br> **Plaintiffs,** <br><br> vs. <br><br> **NANCY LANDRY, in her official capacity as Louisiana Secretary of State,** <br><br> **Defendant.** | Case No. 3:24-cv-00122-DCJ-CES-RRS |

## *GALMON* AMICI'S POST-TRIAL AMICUS BRIEF

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    I.    The Middle District and the Fifth Circuit properly determined that a second majority-minority district could be drawn in Louisiana without violating the Equal Protection Clause. ............................................................................................................................ 2

        A.    The Middle District and Fifth Circuit determined that a second majority-minority district could be drawn without violating the Equal Protection Clause. ................. 2

        B.    The Middle District litigation was properly before a single judge. .......................... 4

    II.   Plaintiffs' racial gerrymandering arguments are meritless. ............................................... 8

CONCLUSION ..................................................................................................................... 13

CERTIFICATE OF SERVICE ............................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. Milligan*,
  599 U.S. 1 (2023)..................................................................................................7, 8, 9

*Ardoin v. Robinson*,
  143 S. Ct. 2654 (2023)..................................................................................................11

*Arena v. Graybar Elec. Co., Inc.*,
  669 F.3d 214 (5th Cir. 2012) ........................................................................................5

*Armour v. Ohio*,
  925 F.2d 987 (6th Cir. 1991) ........................................................................................7

*Bethune-Hill v. Va. State Bd. of Elections*,
  580 U.S. 178 (2017)......................................................................................................11

*Castañon v. United States*,
  444 F. Supp. 3d 118 (D.D.C. 2020) .............................................................................6

*Caster v. Merrill*,
  No. 2:21-cv-1536-AMM, 2022 WL 264819
  (N.D. Ala. Jan. 24, 2022) ..............................................................................................8

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987).....................................................................................................6, 7

*Chestnut v. Merrill*,
  356 F. Supp. 3d 1351 (N.D. Ala. 2019) .......................................................................5

*Cooper v. Harris*,
  581 U.S. 285 (2017).......................................................................................................10

*Easley v. Cromartie*,
  532 U.S. 234 (2001).......................................................................................................10

*Johnson v. Ardoin*,
  No. CV 18-625-SDD-EWD, 2019 WL 4318487
  (M.D. La. Sept. 12, 2019) ..............................................................................................5

*Kontrick v. Ryan*,
  540 U.S. 443 (2004).......................................................................................................6

*In re Landry*,
  83 F.4th 300 (5th Cir. 2023) ..................................................................................................10

*Merrell Dow Pharms. Inc. v. Thompson*,
  478 U.S. 804 (1986)................................................................................................................6

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) ..............................................................................................................8

*Milligan v. Allen*,
  No. 2:21-cv-1530-AMM
  (N.D. Ala. Sept. 5, 2023), ECF No. 272 ...............................................................................11

*Nixon v. Richey*,
  513 F.2d 430 (D.C. Cir. 1975) ................................................................................................6

*Robinson v. Ardoin*,
  37 F.4th 208 (5th Cir. 2022) ...................................................................................................3

*Robinson v. Ardoin*,
  605 F. Supp. 3d 759 (M.D. La. 2022).....................................................................2, 3, 10, 12

*Robinson v. Ardoin*,
  86 F.4th 574 (5th Cir. 2023) .........................................................................................1, 4, 10

*Sands v. Wainwright*,
  491 F.2d 417 (5th Cir. 1973) ..................................................................................................6

*Singleton v. Merrill*,
  No. 2:21-cv-01291-AMM
  (N.D. Ala. Nov. 23, 2021), ECF No. 45 .................................................................................8

*The Fair v. Kohler Die & Specialty Co.*,
  228 U.S. 22 (1913)..................................................................................................................7

*Theriot v. Parish of Jefferson*,
  185 F.3d 477 (5th Cir. 1999) ...............................................................................9, 10, 11, 13

*Thomas v. Bryant*,
  919 F.3d 298 (5th Cir. 2019) ..................................................................................................5

*Thomas v. Reeves*,
  961 F.3d 800 (5th Cir. 2020) ...............................................................................................4, 5

*United States v. Ron Pair Enters., Inc.*,
  489 U.S. 235 (1989)................................................................................................................4

*United States v. Texas*,
    523 F. Supp. 703 (E.D. Tex. 1981) ..........................................................................................6

*Wilson v. Gooding*,
    431 F.2d 855 (5th Cir. 1970) ...................................................................................................6

**Statutes**

28 U.S.C. § 2284(a) ................................................................................................................4, 5

# INTRODUCTION

Plaintiffs' arguments have been rejected or otherwise foreclosed several times over by the Fifth Circuit's decision in *Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023). There, the court affirmed the Middle District of Louisiana's conclusion that the Legislature's failure to create a second majority-minority congressional district likely violated Section 2, *notwithstanding* the State's primary defense that any map with two majority-minority districts would run afoul of the Constitution's prohibitions on racial gerrymandering. *See id.* at 583. The Fifth Circuit's rejection of that argument was explicit, *see id.* at 592–95; it was necessary to the court's ultimate holding greenlighting remedial proceedings, *see id.* at 601–02; and it was plainly within the scope of the court's jurisdiction. Federal law required the Section 2 claim to be heard by a single-judge district court, with any injunction appealable to the Fifth Circuit, and those courts' exercise of their ordinary obligation to review defendants' defenses and to order remedies that comply with the Constitution was not beyond their jurisdiction. Accordingly, Plaintiffs' ahistorical effort to scrub the Fifth Circuit's rejection of a racial gerrymandering defense, and their atextual effort to radically expand the narrow statutory requirement for three-judge district courts, should be soundly rejected.

The Fifth Circuit ultimately vacated the preliminary injunction of the then-existing congressional map so that the Legislature could "take advantage of an opportunity to consider a new map now that we have affirmed the district court's conclusion that the Plaintiffs have a likelihood of success on the merits" of their Section 2 claim. *Id.* at 601. That is, the court invited the political branches to decide—free from judicial interference—where to locate the second majority-minority congressional district that federal law compels. Plaintiffs would recast that invitation as a trap: had the Legislature failed to create a second majority-minority district, it would have forfeited its redistricting prerogative to the Middle District; but the Legislature having

discharged its obligation, Plaintiffs now say that it forfeited its redistricting prerogative to the Western District. That is not the law of redistricting. Because the Legislature had good reason to believe that a second majority-minority district was required, its enactment was lawful. Plaintiffs' requested injunction should be denied.

**ARGUMENT**

**I.  The Middle District and the Fifth Circuit properly determined that a second majority-minority district could be drawn in Louisiana without violating the Equal Protection Clause.**

At the start of trial, the Court asked (i) whether the Middle District and the Fifth Circuit determined that two majority-minority congressional districts could be drawn in Louisiana without violating the Equal Protection Clause and (ii) whether those courts had the statutory authority to make such a determination. Tr. 36:16–23, ECF No. 184. The answer to both questions is unequivocally yes.

**A.  The Middle District and Fifth Circuit determined that a second majority-minority district could be drawn without violating the Equal Protection Clause.**

Defendants in the Middle District proceedings raised as their primary defense the same argument that Plaintiffs advance here: that drawing a second majority-minority congressional district in Louisiana is not possible without violating the Equal Protection Clause. *See, e.g.*, Combined Opp. to Pls.' Mtn. for Preliminary Injunction at 13, *Robinson v. Ardoin*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Apr. 29, 2022), ECF No. 108 ("Plaintiffs' proposed exemplar maps show that no constitutional second majority-minority congressional district is possible in Louisiana."). During preliminary injunction proceedings, the Section 2 plaintiffs introduced seven different illustrative maps demonstrating districting configurations with two majority-minority districts, all of which the "[d]efendants insist[ed] . . . [we]re racial gerrymanders as a matter of law" *because* of their second majority-minority district. *Robinson v. Ardoin*, 605 F. Supp. 3d 759,

2

831 (M.D. La. 2022), *vacated on other grounds and remanded*, 86 F.4th 574 (5th Cir. 2023). Indeed, Plaintiffs here repeatedly point to Defendants' argument in the Middle District as conclusive evidence that their views on racial gerrymandering must be true. *See, e.g.*, ECF No. 17-1 at 4–5, 26 ("The State thereby admitted that it could not create two majority-minority districts without violating the Constitution."). But there is one glaring fact that Plaintiffs overlook: The Middle District *rejected* that argument "for both legal and factual reasons," finding "*no factual evidence* that race predominated in the creation of the illustrative maps in this case," and holding that "all Defendants have demonstrated is that the mapdrawers considered race after they were asked to consider race. . . . This does not offend the Constitution." 605 F. Supp. 3d at 834–39; *see also id.* at 838 ("Race consciousness does not lead inevitably to impermissible race discrimination." (quoting *Shaw v. Reno*, 509 U.S. 630, 646 (1993))).

Both a motions panel and a merits panel of the Fifth Circuit unanimously agreed with the Middle District's ruling. The Fifth Circuit motions panel denied the defendants' motion to stay the preliminary injunction and, in so doing, rejected defendants' racial gerrymandering defense to Section 2 compliance. *See Robinson v. Ardoin*, 37 F.4th 208, 217 (5th Cir. 2022) (holding that defendants failed to demonstrate likelihood of success on the merits of their appeal where they had "put all their eggs in the basket of racial gerrymandering"). The motions panel explained:

> Race was undoubtedly a factor in the drawing of the illustrative maps. But, as the district court noted, racial consciousness in the drawing of illustrative maps does not defeat a *Gingles* claim. And even if it did, the defendants have not shown that the plaintiffs' maps prioritized race so highly as to commit racial gerrymandering, **or that complying with the district court's order would require the Legislature to adopt a predominant racial purpose**.

*Id.* at 222 (emphasis added). The Fifth Circuit merits panel subsequently confirmed that intentionally drawing maps with two majority-Black districts "does not automatically constitute

3

racial predominance," *Robinson*, 86 F.4th at 594, and affirmed the district court's "factual findings that the illustrative maps were not racial gerrymanders." *Id.* at 595.

In short, over the last two years, seven federal judges have unanimously held that the illustrative maps provided by the Middle District plaintiffs were not racial gerrymanders, confirming that it is possible to draw two majority-minority congressional districts in Louisiana without offending the Equal Protection Clause.

### B.  The Middle District litigation was properly before a single judge.

Not only did the single-judge Middle District court properly exercise jurisdiction over the parties' Section 2 claims and constitutional defenses, but a three-judge court would have been statutorily barred from adjudicating that case. "The three-judge district court statute traces back more than a century. In its long history, no court has applied the statute unless confronted with a challenge to a law's constitutionality." *Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (Costa, J., concurring). This Court should not be the first to suggest otherwise.

The plain language of 28 U.S.C. § 2284(a) provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed *challenging the constitutionality* of the apportionment of congressional districts or the apportionment of any statewide legislative body" (emphasis added). The text of the statute leaves no room for ambiguity: three-judge courts are convened only where plaintiffs raise constitutional claims. *See, e.g.*, *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." (citation omitted)). The plaintiffs in the Middle District litigation challenged Louisiana's 2022 congressional plan under Section 2 of the Voting Rights Act, thus raising only statutory—not constitutional—claims. *See* Compl. ¶¶ 164–68, *Robinson v. Ardoin*, No. 3:22-cv-211-SDD-SDJ (M.D. La. Mar. 30, 2022), ECF No. 1; Compl. ¶¶ 93–100, *Galmon v. Ardoin*, No. 3:22-cv-

4

00214-BAJ-RLB (M.D. La. Mar. 30, 2022), ECF No. 1. Because the plaintiffs in the Middle District litigation do not "challeng[e] the constitutionality of the apportionment of congressional districts," 28 U.S.C. § 2284(a), those cases fall outside the scope of the three-judge court provision.

Fifth Circuit precedent forecloses any argument that a standalone Section 2 claim triggers jurisdiction before a three-judge court. All eleven Fifth Circuit judges who addressed the issue en banc were unanimous that § 2284 does not allow for a three-judge court to hear purely *statutory* challenges to *congressional* maps. *See Reeves*, 961 F.3d at 802 (Costa, J., concurring) (concluding on behalf of six judges that § 2284 "require[s] a three-judge court only for constitutional challenges" to both state legislative and congressional maps); *id.* at 811 (Willett, J., concurring) (concluding on behalf of five judges that § 2284 may require a three-judge court for statutory challenges to state legislative maps but agreeing that "only *constitutional* challenges to *federal* maps require three judges"). Previously, a Fifth Circuit motions panel rejected the proposed invocation of a three-judge court for a Section 2 claim, noting that "no reported case has ever used a three-judge panel for a case challenging district lines only under Section 2 of the Voting Rights Act." *Thomas v. Bryant*, 919 F.3d 298, 304 (5th Cir. 2019); *see also Johnson v. Ardoin*, No. CV 18-625-SDD-EWD, 2019 WL 4318487, at *3 (M.D. La. Sept. 12, 2019) (citing decisions from the Fifth Circuit and district courts in Louisiana, Mississippi, and Alabama to demonstrate that there's no "substantial ground for difference of opinion" on this question); *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284.").

Section 2284's limitations, moreover, are jurisdictional, and thus not subject to waiver by the parties or discretion by the courts. *See Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 223 (5th Cir. 2012) (holding federal courts "must consider jurisdiction *sua sponte* if not raised by the

5

parties"). Statutes "delineating the classes of cases . . . falling within a court's adjudicatory authority" serve as limits on federal courts' "subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). That is just what § 2284 does in defining which cases a three-judge court may hear. As a result, where a case falls outside the three-judge court statute, "there is no . . . jurisdiction" for a three-judge court to hear the case. *Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970); *see also Castañon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (referring to § 2284 as the three-judge court's "statutory jurisdictional grant").[1]

This unwavering jurisdictional limitation applies even where defendants raise a constitutional defense to a Section 2 claim. It is blackletter law that "the plaintiff [is] the master of the claim," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987), and "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced," *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986)). In *Caterpillar*, the Supreme Court rejected the notion that a defendant may invoke federal court jurisdiction by raising a federal defense to a state law claim. *See* 482 U.S. at 393 ("Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."). So too here. A defendant cannot "transform" an action into a constitutional case "merely by injecting" a constitutional defense to a statutory claim, "thereby selecting the forum in which the claim shall

---

[1] Consistent with this command, the Fifth Circuit has made clear that the three-judge court requirement is "'a serious drain upon the federal judicial system'" and must "be narrowly construed." *Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (quoting *Phillips v. United States*, 312 U.S. 246, 250 (1941)). Three-judge courts therefore may be "convened only where compelled by the express terms of the statute," *United States v. Texas*, 523 F. Supp. 703, 725 (E.D. Tex. 1981), not at the preference of a litigant or a court. *See also Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975) ("[T]he three-judge apparatus is not to be utilized freely, but only and strictly as Congress has prescribed.").

be litigated." *Id.* at 399; *see also The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) (holding that jurisdiction for a claim "cannot depend upon the answer, and accordingly jurisdiction cannot be conferred by the defense"); *cf. Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) ("[T]he sufficiency of the complaint for three-judge jurisdictional purposes must be determined by the claims stated in the complaint and not by the way the facts turn out."). In determining whether a lawsuit triggers a three-judge court, therefore, courts look only to the actual claims asserted in the complaint, regardless of whether the defenses to those claims raise constitutional issues.

Indeed, Section 2 defendants routinely raise the specter of racial gerrymandering to ward off Section 2 claims, yet no purely Section 2 claim has ever triggered three-judge court jurisdiction. In *Thomas*, for instance, the defendants argued that granting relief for the plaintiffs' Section 2 claim would "run[] squarely into the prohibition of using race as the predominant factor in devising legislative districts[.]" Defs.' Mem. In Supp. of Mot. for J. as a Matter of L. at 7, *Thomas v. Bryant*, No. 3:18-cv-00441-CWR-FKB (S.D. Miss. Feb. 6, 2019), ECF No. 54; *see also* Answer to Pls.' Am. Compl. & Affirmative Defs. at ¶ 102, *Johnson v. Ardoin*, No. 3:18-cv-625-SDD-EWD (M.D. La. Sept. 23, 2019), ECF No. 106 (defendants asserting the affirmative defense: "The Fourteenth and Fifteenth Amendments . . . barred the State of Louisiana from drawing two majority-minority districts in Louisiana."); Answer to Am. Compl. at 19 ¶ 4, *Chestnut v. Merrill*, No. 2:18-CV-00907-KOB (N.D. Ala. Aug. 6, 2018), ECF No. 17 (defendant asserting affirmative defense: "To the extent that Section 2 would require a racial gerrymander to create a second majority-minority district, it is unconstitutional.").

Just last year, the U.S. Supreme Court affirmed a single-judge district court's holding in a Section 2 case that "race did not predominate" in the creation of illustrative maps including an additional majority-minority district in Alabama. *Allen v. Milligan*, 599 U.S. 1, 32 (2023). In

7

*Caster v. Merrill*, plaintiffs brought a Section 2 claim before a single district judge, "challeng[ing] the congressional map on statutory grounds only." No. 2:21-cv-1536-AMM, 2022 WL 264819, at *1 (N.D. Ala. Jan. 24, 2022). A three-judge panel denied a request to consolidate or join *Caster* with other cases asserting constitutional claims in part because doing so "could exceed the limited jurisdiction of this court under [§ 2284]." Order at 7, *Singleton v. Merrill*, No. 2:21-cv-01291-AMM (N.D. Ala. Nov. 23, 2021), ECF No. 45. Defendants in *Caster* argued that the plaintiffs' illustrative maps were unconstitutional racial gerrymanders, but the single district judge rejected that argument, noting its "flawed factual premise" because the maps "prioritized race only as necessary" to determine whether it was "possible to draw two reasonably compact majority-Black congressional districts," as well as its "flawed legal premise" because "a rule that rejects as unconstitutional a remedial plan for attempting to satisfy *Gingles* I would preclude any plaintiff from ever stating a Section Two claim." *Caster*, 2022 WL 264819, at *79–80. The Supreme Court heard the *Caster* case on certiorari review, *see Merrill v. Milligan*, 142 S. Ct. 879 (2022), and affirmed the "judgment[] of the District Court for the Northern District of Alabama in the *Caster* case." *Allen*, 599 U.S. at 42; *see also id.* at 16 (noting that the "*Singleton* and *Milligan* actions were consolidated before the three-judge Court for purposes of preliminary injunction proceedings, while *Caster* proceeded before [a single district judge] on a parallel track").

In sum, the plain language of the three-judge court statute, along with the governing case law, is clear: The Middle District and Fifth Circuit acted within their authority in adjudicating—and rejecting—the defense that map-drawers necessarily violate the Equal Protection Clause by creating a second majority-minority district in Louisiana.

## II. Plaintiffs' racial gerrymandering arguments are meritless.

The rulings from the Middle District litigation are plainly relevant here. Not only did that litigation squarely refute Plaintiffs' contention here that intentionally drawing a majority-Black

8

district in Louisiana to comply with the Voting Rights Act automatically triggers (let alone fails) constitutional scrutiny, it also supplied the Louisiana Legislature with "good reasons" to believe that a second majority-Black district is required by federal law, which independently defeats Plaintiffs' racial gerrymandering claim. To the extent Plaintiffs contend that the Middle District litigation provided "good reasons" to warrant only a remedial map similar to the illustrative maps evaluated in that case, then the proper remedy is the adoption of such a map—not a wholesale restart of the redistricting process—to ensure compliance with both the Voting Rights Act and the Constitution.

*First*, Plaintiffs' assertion that race predominates any time a legislature sets out to create a new majority-minority district, *see* Tr. 603:4–8, ECF No. 186, is wrong—both on the law and the facts. The Fifth Circuit has explained that race is "inherently a consideration" when a legislature must remedy a Section 2 violation, but "strict scrutiny does not apply to all cases involving the intentional creation of majority-minority districts." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 488 (5th Cir. 1999) (quoting *Clark v. Calhoun County*, 88 F.3d 1393, 1404 (5th Cir. 1996)). Instead, as the Supreme Court recently affirmed, "[t]he line that [courts] have long drawn is between [race] consciousness and [racial] predominance." *Allen*, 599 U.S. at 33; *cf. id.* (rejecting notion that "racial predominance plagues *every single illustrative map ever adduced* at the first step of *Gingles*" just because "those maps were created with an express [racial] target in mind"). The Middle District litigation applied this well-established rule to find that a second majority-Black district could be drawn in Louisiana in service of Section 2 without race predominating. *See supra* I.A. Accordingly, the Fifth Circuit has already rejected Plaintiffs' theory of the case—under which "no court could find or ever require any jurisdiction to address a Section 2 violation because race

9

emerges as a relevant issue," *Theriot*, 185 F.3d at 488 n.23—both as a matter of law, *see id.* at 488, and in the context of Louisiana's congressional map specifically, *Robinson*, 86 F.4th at 594.[2]

*Second*, even if Plaintiffs could satisfy their "demanding burden of proof to show that [S.B. 8] is unexplainable on grounds other than race," *Easley v. Cromartie*, 532 U.S. 234, 235 (2001) (cleaned up), *but see* ECF No. 85–1 at 19–24 (explaining why Plaintiffs cannot satisfy this burden), S.B. 8 satisfies strict scrutiny because the Legislature had "good reasons" to believe that race-based redistricting was required to comply with the Voting Rights Act. *Cooper v. Harris*, 581 U.S. 285, 293 (2017); *see also id.* at 292–93 ("When a State invokes the VRA to justify race-based districting, it must show . . . that it had 'a strong basis in evidence' for concluding that the statute required its action." (quoting *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 278 (2015))). The Middle District litigation provided those "good reasons" here. The district court's meticulous 152-page order—following a five-day hearing with 20 testifying witnesses—detailed the "a strong basis in evidence" to conclude that plaintiffs were "substantially likely to prevail on the merits of their claims brought under Section 2 of the Voting Rights Act" and that "[t]he appropriate remedy . . . is a remedial congressional redistricting plan that includes an additional majority-Black congressional district." *Robinson,* 605 F. Supp. 3d at 766. And the Middle District's conclusion was affirmed or otherwise undisturbed in multiple subsequent challenges before three Fifth Circuit panels and the Supreme Court, in which not a single judge or justice ever indicated that the district court's Section 2 holding was likely in error. *See supra* I.A; *In re Landry*, 83 F.4th 300, 307 (5th Cir. 2023) (Fifth Circuit panel issuing mandamus to "afford[] the Louisiana legislature the first opportunity to comply with [the district court's] ruling" requiring second

---

[2] To the extent Plaintiffs were concerned that the Section 2 litigation would compel a remedy in tension with their views of the Equal Protection Clause, they could have sought intervention in that case to assert their position in tandem with the other defendants.

10

majority-minority district); *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023). If the unanimous voices of multiple federal judges in multiple postures over multiple years does not provide "good reasons" for a legislature to believe it needed to draw a second majority-Black district to comply with the Voting Rights Act, nothing would satisfy this standard. *See Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 195–96 (2017) ("Holding otherwise would afford state legislatures too little breathing room, leaving them trapped between the competing hazards of liability under the Voting Rights Act and the Equal Protection Clause." (quotation marks omitted)).

Plaintiffs' suggestion that the Legislature needed to conduct its own duplicative analysis to demonstrate a Section 2 violation before enacting a remedial map containing a second majority-Black district, Tr. 610:10–19, ECF No. 186, is entirely baseless. Where federal courts have found a likely Section 2 violation, nothing in the law requires litigants to "prove a Section 2 violation all over again" in fashioning a remedy. *Theriot*, 185 F.3d at 490; *see also id.* ("We decline to impose such a requirement."). Here, the legislature had more than "good reasons" to "heed the instructions of the Court" by enacting a VRA-compliant map, not only based on the judicial findings in the Middle District and Fifth Circuit, but also based on the example provided in neighboring Alabama, where—just months earlier—the legislature refused to draw a second minority-opportunity district in response to the courts' finding of a likely Section 2 violation and thus forfeited its map-drawing prerogative to the court. *See* Injunction, Opinion, & Order at 5–7, *Milligan v. Allen*, No. 2:21-cv-1530-AMM (N.D. Ala. Sept. 5, 2023), ECF No. 272 (concluding that the legislature's new plan "does not remedy the likely Section Two violation that we found and the Supreme Court affirmed" because it "does not include an additional opportunity district" and directing special master to "commence work forthwith on a remedial map"); *see also id.* at 7 ("We are three years into a ten-year redistricting cycle, and the Legislature has had ample opportunity to draw a lawful map.").

11

*Third*, to the extent Plaintiffs contend that the Middle District litigation provided the legislature a "strong basis in evidence" to draw a remedial district only in the precise locations where the illustrative maps in that case proposed, *see* Tr. 13:13–22, ECF No. 184; Tr. 611:10–15, ECF No. 186; ECF No. 17–1 at 24–26, the appropriate course of action is to order the adoption of such a remedy, not to ignore Section 2 and the Middle District litigation altogether. *See* ECF No. 17–1 at 33 (Plaintiffs asking Court to strike S.B. 8 and adopt "Illustrative Plan 1," which has only one majority-Black district). Thus, even if this Court agrees with Plaintiffs' concern that S.B. 8 is not "narrowly tailored to redress the wrong found in the VRA," Tr. 14:4–5, ECF No. 184, that concern is addressed by tailoring the remedy to the wrong found in the Middle District litigation. *See Robinson*, 605 F. Supp. 3d at 822, 832 (finding that plaintiffs "are substantially likely to prove that Black voters are sufficiently 'geographically compact' to constitute a majority in a second congressional district" with illustrative plans that "draw a second majority-Black district by connecting parts of East Baton Rouge Parish with the Delta Parishes in their proposed CD 5").

This approach would not only satisfy Plaintiffs' concerns, *see* Tr. 13:13–15, ECF No. 184 (arguing that "[t]he fear of violating the VRA somewhere does not allow the State to draw a racially gerrymandered district anywhere"), but also would conserve judicial resources and ensure that the end result of the years-long battle over Louisiana's congressional districts in federal court actually complies with both the Voting Rights Act and the Constitution. Prior to the enactment of S.B. 8, the Middle District was prepared to proceed to trial on the Section 2 claim and adjudicate the appropriate remedy to the likely Section 2 violation affirmed by the Fifth Circuit. *See* Minute Entry at 2, *Robinson*, No. 3:22-cv-00211-SDD-SDJ (M.D. La. Nov. 27, 2023), ECF No. 315 ("This matter is scheduled for a remedial hearing on the preliminary injunction set to commence on February 5, 2024. Pursuant to the Fifth Circuit's most recent ruling in this case the remaining

procedure will be converted to a trial on the merits."). There is no reason that remedial process could not pick up where it left off—either in this Court or that one—with the participation of Plaintiffs here. Proceeding to a remedy in this case without regard to the findings in the Middle District case, by contrast, would only further embroil the State in indefinite litigation and make it "conceivable that courts may never reach the merits" of a proper remedy under the Voting Rights Act. *Theriot*, 185 F.3d at 490; *cf. id.* at 488 n.23 ("Indeed, much of Appellants' argument appears designed collaterally to attack this court's previous finding of a Section 2 violation.").

In sum, as the Middle District litigation has demonstrated, Louisiana need not choose between compliance with the Voting Rights Act and compliance with the Constitution. The law and the facts demonstrate that S.B. 8 complies with both. But if the Court is not persuaded that the legislature's chosen configuration of the additional majority-Black district is justified by the Middle District's findings, it should remedy the problem by ordering a map that more closely aligns with the well-documented conclusions of the Middle District and Fifth Circuit, thereby curing any constitutional violation while ensuring compliance with the Voting Rights Act.

## CONCLUSION

The Court should deny Plaintiffs' motion and enter judgment for Intervenor-Defendants.

Respectfully submitted this April 17, 2024.

| | |
|---|---|
| *s/ J.E. Cullens, Jr.* | *s/ Abha Khanna* |
| J. E. Cullens, Jr. (LA # 23011)<br>Andrée Matherne Cullens (LA # 23212)<br>Stephen Layne Lee (LA # 17689)<br>WALTERS, THOMAS, CULLENS, LLC<br>12345 Perkins Road, Bldg. One<br>Baton Rouge, LA 70810<br>(225) 236-3636<br>cullens@lawbr.net<br>acullens@lawbr.net<br>laynelee@lawbr.net | Abha Khanna* (# 917978)<br>ELIAS LAW GROUP LLP<br>1700 Seventh Ave., Suite 2100<br>Seattle, WA 98101<br>(206) 656-0177<br>akhanna@elias.law<br><br>Lalitha D. Madduri* (# 917979)<br>Jacob D. Shelly* (# 917980)<br>Daniel Cohen* (# 917976)<br>Qizhou Ge* (# 917977)<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Ave. NW, Suite 400<br>Washington, DC 20001<br>(202) 968-4490<br>lmadduri@elias.law<br>jshelly@elias.law<br>dcohen@elias.law<br>age@elias.law<br><br>* Admitted *pro hac vice*<br><br>Counsel for Proposed Amici |

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, and that service will be provided through the CM/ECF system.

*/s/Abha Khanna*
Abha Khanna

Counsel for *Proposed Amici*
