# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, *Plaintiffs*, v. NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, *Defendant*. | Civil Action No. 3:24-cv-00122<br><br>Judge David C. Joseph<br><br>Circuit Judge Carl E. Stewart<br><br>Judge Robert R. Summerhays |

*ROBINSON* **INTERVENORS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR STAY PENDING APPEAL**

Press Robinson, Edgar Cage, Dorothy Nairne, Edwin Rene Soule, Alice Washington, Clee Earnest Lowe, Davante Lewis, Martha Davis, Ambrose Sims, the National Association for the Advancement of Colored People Louisiana State Conference, and the Power Coalition for Equity and Justice (the "*Robinson* Intervenors") move for the Court to stay its April 30, 2024 Order, ECF No. 198, enjoining Louisiana's congressional map ("SB8") pending a resolution of the *Robinson* Intervenors' appeal to the United States Supreme Court. The *Robinson* Intervenors have duly filed a notice of appeal.

All four factors relevant to a stay pending appeal support granting *Robinson* Intervenors' motion. *See Nken* v. *Holder*, 556 U.S. 418, 426 (2009). *Robinson* Intervenors are likely to succeed on the merits because the Court erred by failing to afford the Legislature the latitude the Constitution allows when states have good reason to believe the Voting Rights Act requires race-conscious redistricting, applying an incorrect legal standard for racial predominance, and improperly subjecting SB8 to a *Gingles* analysis. *See Thornburg* v. *Gingles*, 478 U.S. 30 (1986). The Order deprives the Legislature of the breathing room to craft a map that complies with the Voting Rights Act and the 14th Amendment to which the State is entitled under longstanding Supreme Court precedent. *See, e.g.*, *Bethune-Hill* v. *Va. St. Bd. of Elec.*, 580 U.S. 178, 196 (2017). The *Robinson* Intervenors and all Louisiana voters will be irreparably harmed absent a stay, and the public interest and balance of the equities support staying these proceedings until the Supreme Court has considered and resolved the *Robinson* Intervenors' appeal.

## ARGUMENT

Courts apply a four-part test when weighing whether to grant a stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

1

substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken* v. *Holder*, 556 U.S. 418, 426 (2009). *See also NFIB* v. *Dep't of Lab.*, *Occupational Safety & Health Admin.*, 142 S. Ct. 661, 665–66 (2022). These factors are not to be applied "in a rigid or mechanical fashion." *Campaign for S. Equal.* v. *Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (alterations accepted). A movant "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *United States* v. *Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983) (citation omitted).

All four *Nken* factors support a stay here.

### I. *Robinson* Intervenors are likely to prevail on the merits.

*Robinson* Intervenors are likely to succeed on the merits of their appeal because, among other errors, the Court erred in applying the *Gingles* standard to the State's enacted plan, SB8; failed to afford the State flexibility in remedying the likely Section 2 violation found by the Middle District and affirmed by the Fifth Circuit; and improperly equated consideration of race in an effort to remedy a Section 2 violation with racial predominance, contrary to the Supreme Court's repeated teachings.

*First*, the Court committed a categorical error in holding that SB8 was required to satisfy the first *Gingles* precondition. The Court held that "the State simply has not met its burden of showing that District 6 satisfies the first *Gingles* factor." ECF No. 198 at 52. *See also id.* at 47–48 (asserting that the State's assumed compelling interest in complying with the Voting Rights Act "does not support the creation of a district that does not comply with the factors set forth in *Gingles* or traditional districting principles").

But where, as here, the Legislature has a strong basis in evidence to conclude that the VRA requires an additional majority-minority district, the Supreme Court has never held that a plan adopted by the Legislature must itself satisfy *Gingles* or traditional redistricting principles, so long as any departure from those principles is not predominantly motivated by race. As the Court itself noted, "*Gingles* set out how courts must evaluate claims *alleging a Section 2 violation* of the Voting Rights Act." ECF No. 198 at 49 (emphasis added). *See also Allen* v. *Milligan*, 599 U.S. 1, 17 (2023) ("For the past forty years, we have evaluated *claims brought under § 2* using the three-part framework developed in our decision [in *Gingles*]") (emphasis added); *id.* at 19 ("To succeed in proving a § 2 violation under *Gingles*, plaintiffs must satisfy three 'preconditions.'"). The State's burden in this case was to show that it had a strong basis in evidence to believe that the *Gingles* factors existed, necessitating a second majority-Black district to comply with Section 2, not that the map it adopted itself satisfied *Gingles*. *See Cooper* v. *Harris*, 581 U.S. 285, 302 (2017); *Bush* v. *Vera*, 517 U.S. 952, 978 (1996). The Court's opinion cites no authority to support the proposition that a map adopted by the State must satisfy *Gingles I* where, as here, the State has a strong basis in evidence—in the form of a prior court order, affirmed on appeal, that already found that *Gingles I* could readily be satisfied—that Section 2 required race-conscious districting.

The Court also improperly disregarded the rulings by the Middle District and the Fifth Circuit in *Robinson* that the Black voting age population in Louisiana does satisfy *Gingles I*. *See Robinson* v. *Ardoin,* 605 F. Supp. 3d 759, 820–31 (M.D. La. 2022) ("*Robinson I*"); *Robinson* v. *Ardoin*, 86 F.4th 574, 589–592 (5th Cir. 2023) *(*"*Robinson III*"). The Middle District found that the plaintiffs there "put forth several illustrative maps which show that two congressional districts with a BVAP of greater than 50% are easily achieved," that this population is "sufficiently 'geographically compact,'" and that "the illustrative plans developed by Plaintiffs' experts satisfy

3

the reasonable compactness requirement of *Gingles I*." *Robinson I*, 605 F. Supp. 3d at 821–22, 831; *see also Robinson III*, 86 F.4th at 592 (finding "no clear error by the district court when it found . . . the first *Gingles* precondition was met"). The Court's opinion does not dispute these findings, and its conclusory observation that "the State's Black population is dispersed" outside of Southeast Louisiana does not change the result for *Gingles I*. ECF No. 198 at 52.

*Second*, the Court's opinion erred by failing to afford the Legislature "breathing room" to navigate the competing demands of the VRA and the 14th Amendment. *Bethune-Hill*, 580 U.S. at 196; *see also Vera*, 517 U.S. at 977 (rejecting, as "impossibly stringent," the view that a district must have the least possible amount of irregularity in shape such that the state is "'trapped between the competing hazards of liability' by the imposition of unattainable requirements under the rubric of strict scrutiny") (citation omitted)). Because the Middle District and the Fifth Circuit held that Louisiana is likely required to maintain two majority-Black districts to comply with Section 2, the State had "'*good reasons* to believe' it must use race in order to satisfy the Voting Rights Act." *Bethune-Hill*, 580 U.S. at 194 (emphasis in original); *see also Abbott* v. *Perez*, 585 U.S. 579, 616 (2018) (evidence from litigation record could provide "good reasons" to use race in remedial map; *Clark* v. *Calhoun Cnty., Miss.*, 88 F.3d 1393, 1408 (5th Cir. 1996) (holding that there was a strong basis in evidence for concluding a VRA-compliant map was necessary where court had "already found that the three *Gingles* preconditions exist[ed] [t]here"); *Theriot* v. *Par. of Jefferson*, 1996 WL 637762, at *1 (E.D. La. Nov. 1, 1996) ("copious litigation and appeals" finding that each *Gingles* precondition was satisfied provided the state with "a strong basis in evidence to believe a black-majority district was reasonably necessary to comply with Section 2 and thus provided a compelling interest in drawing [an additional] majority-minority district") (internal quotations omitted).

4

In these circumstances, the Legislature was free, in selecting among possible maps to remediate the likely Section 2 violation found in *Robinson*, to select a less compact map (or one that otherwise departs from traditional redistricting principles) for political or other non-racial reasons. Here, the Legislature properly exercised that discretion by prioritizing incumbent protection and the Red River community of interest over competing district configurations (such as the SB4 plan originally supported by Senator Duplessis and the *Robinson* Intervenors and amendments to SB8 to make it more compact). ECF No. 198 at 19–20; *id.* at 94–95 (Stewart J., dissenting). The Middle District and the Fifth Circuit properly did not direct the Legislature to draw the map in a particular manner, so long as it complied with Section 2, and these courts recognized that the political and policy choices implicated by redistricting are committed to the Legislature's judgment. *See Robinson I*, 605 F. Supp. 3d at 857 (emphasizing the State's "broad discretion in drawing districts to comply with the mandate of § 2" and noting that the State need not "draw the precise compact district that a court would impose in a successful § 2 challenge") (quoting *Shaw II*, 517 U.S. at 917 n.9 and *Vera*, 517 U.S. at 978)).

By contrast, the Court here faulted the Legislature on the ground that "the evidence in the record does not show that District 6 in its current form was the only way to achieve" incumbent protection and second majority-Black district. ECF No. 198 at 44. The Court asserts that "the State could have achieved its political goals in other ways." *Id.* at 45. But that assertion erroneously imposes on the State the straitjacket against which the Supreme Court has warned. *See Vera*, 517 U.S. at 977 ("If the State has a 'strong basis in evidence,' for concluding that creation of a majority-minority district is reasonably necessary to comply with § 2, and the districting that is based on race 'substantially addresses the § 2 violation,' it satisfies strict scrutiny.") (citations omitted); *Bethune-Hill*, 580 U.S. at 196; *Perez*, 585 U.S. at 587.

5

*Third*, the Court erred by treating the State's intent to create a second majority-Black district for purposes of complying with the VRA as direct evidence that race was the predominant factor in its adoption of SB8. The Supreme Court has cautioned against just that presumption. "Strict scrutiny does not apply merely because redistricting is performed with consciousness of race" and it does not "apply to all cases of intentional creation of majority-minority districts." *Vera*, 517 U.S. at 958, 962 (evidence that the State was "committed from the outset to creating majority-minority districts" was not "independently sufficient to require strict scrutiny"); *see also Shaw I*, 509 U.S. at 646 ("[R]ace consciousness does not lead inevitably to impermissible race discrimination"); *DeWitt* v. *Wilson*, 856 F. Supp. 1409 (E.D. Cal. 1994) (declining to apply strict scrutiny to an intentionally created majority-minority district), *aff'd*, 515 U.S. 1170 (1995); *cf. Milligan*, 599 U.S. at 31–32 (plurality) (holding that race did not predominate in an illustrative map drawn to satisfy *Gingles* by including a greater than 50% Black Voting Age population); *id.* at 34 n.7 (rejecting the argument that the intentional creation of a majority-minority district in an illustrative plan dooms the enterprise and observing that "[t]he very reason a plaintiff adduces a map at the first step of *Gingles* is precisely *because of* its racial composition—that is, because it creates an additional majority-minority district that does not then exist."). The Court improperly based its racial predominance determination on statements by legislators that they sought to draw a second majority-Black district in order to comply with the Middle District and Fifth Circuit's orders. ECF No. 198 at 41–45. The Court thus disregarded the commands of *Vera* and *Shaw I* by treating the State's determination to create a second majority-Black district when it had every reason to think it must as "racially motivated gerrymandering." *Id.* at 44. By this standard, Louisiana had no way to avoid liability: it would violate Section 2 if it decided not to draw a second majority-Black district, or it would violate the Constitution if it did. This is the wrong standard.

6

*Vera*, 517 U.S. at 962 ("commit[ing] from the outset to creat[e] majority-minority districts" is not "independently sufficient to require strict scrutiny").[1]

## II. *Robinson*-Intervenors will be irreparably injured absent a stay.

*Robinson* Intervenors have a direct and substantial interest in this litigation, *see* ECF Nos. 18, 79, 103, 114—an interest that will be irreparably harmed absent a stay.

The *Robinson* district court and two unanimous panels of the Fifth Circuit have held that the Voting Rights Act likely requires Louisiana to enact a congressional map with two majority-Black districts, and the *Robinson* plaintiffs would suffer irreparable harm if a congressional election were held using a map with only one majority-Black district. *Robinson I*, 605 F. Supp. 3d at 766; *Robinson* v. *Ardoin*, 37 F.4th 208, 228–32 (5th Cir. 2022) ("*Robinson II*"); *Robinson III*, 86 F. 4th at 583. That harm has already occurred once when the Middle District's preliminary injunction was stayed, and the 2022 congressional election was held using the previously enacted map. Thereafter, the Supreme Court and the Fifth Circuit merits panel instructed that the violation be remedied in advance of the 2024 congressional election. *See, e.g.*, *Ardoin* v. *Robinson*, 143 S. Ct. 2654 (2023) (dismissing writ of certiorari dismissed as improvidently granted and vacating stay to "allow the matter to proceed . . . in advance of the 2024 congressional elections in Louisiana"); *Robinson III*, 86 F. 4th at 600–02. The Legislature proceeded to enact a map with a second majority-Black congressional district, which was the remedy that *Robinson* Intervenors had sought through years of litigation and advocacy. Permitting SB8 to be struck down would reverse

---

[1] The Court's injunction erred in other respects as well. Among other things, the Court's reliance on the *Hays* decisions from the 1990s is misplaced given the substantial demographic changes in Louisiana since those cases were decided and the fact that—in contrast to the extensive record evidence here that SB8 was driven by political considerations—the map drawer in *Hays* acknowledged that he "considered essentially no other factor" apart from race. *Hays* v. *State*, 936 F. Supp. 360, 368 (W.D. La. 1996). The Court also failed to address the extensive testimony by Mayor Glover, Pastor Harris, Ms. Shelton, and Commissioner Lewis—all lifetime residents of Louisiana—attesting to the communities of interest tied together in CD6.

the opportunity Louisiana has finally afforded after years of litigation for Black Louisianians to have an equal choice in their representatives to Congress.

Simply put, without SB8 in place, there is a significant risk—accounting for the time it will take for any remedial proceedings to occur and for appeals to be litigated to conclusion—that a VRA-compliant map will not be in place for the 2024 elections. That outcome irreparably harms *Robinson* Intervenors and contravenes the Supreme Court and Fifth Circuit's expectation that a map compliant with Section 2 will be in place ahead of the 2024 elections.

### III. The Balance of Equities and Public Interest Clearly Favor the Issuance of a Stay.

The harm to the State's interest in enforcing its laws, the minimal harms to Plaintiffs' interest, and the public's interest in the resolution of this litigation all weigh in favor of the issuance of a stay. A stay is justified because a stay will substantially injure neither the Plaintiffs' interest nor the State's interest and because the public interest is plainly served by permitting the plan enacted by the State's Legislature to remain in place and by ending the uncertainty surrounding Louisiana's congressional map while this case makes its way through the appellate process.

Nor are Plaintiffs harmed by the issuance of a stay. Plaintiffs presented no evidence at trial—nor could they—that they were injured by SB8. Most do not even live in the challenged district. Unlike *Robinson* Intervenors, none of the Plaintiffs testified about the harm they faced as a result of SB8. None testified or otherwise entered evidence into the record about their racial identity. *See* ECF No. 198 at 61, n.1 (Stewart, J., dissenting). Plaintiffs cannot be irreparably injured by allowing SB8 to remain in effect pending appellate review when they failed to prove that SB8 had a discriminatory effect on them because of their race. *Id.*

Lastly, the public interest is undoubtedly served by the issuance of a stay. As a result of this litigation and the extensive *Robinson* litigation, if this Court's injunction of SB8 is not stayed

8

pending appeal, Louisianans will be deprived of the congressional district plan approved by their Legislature and their newly elected Governor. As a result of the Court's order, there is currently no map in place, resulting in uncertainty and confusion for voters, voter advocacy organizations, political candidates, and election officials alike. A stay would serve the public interest because it would afford Louisiana's voters certainty about the congressional map in advance of the 2024 congressional election while this proceeding works its way through the appellate process.

## CONCLUSION

The Court should stay its April 30, 2024, Order pending appeal to the United States Supreme Court.

DATED: May 1, 2024

By: /s/ *Tracie L. Washington*
Tracie L. Washington
LA. Bar No. 25925
Louisiana Justice Institute
8004 Belfast Street
New Orleans, LA 70125
Tel: (504) 872-9134
tracie.washington.esq@gmail.com

*Counsel for Robinson Intervenors Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule*

Respectfully submitted,

By: /s/ *Stuart Naifeh*
Stuart Naifeh (admitted pro hac vice)
NAACP Legal Defense and
   Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org

*Counsel for the Robinson Intervenors*

Kathryn Sadasivan*
Victoria Wenger*
Colin Burke*
NAACP Legal Defense and
    Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
ksadasivan@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani*
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon*
Megan C. Keenan*
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

John Adcock
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

Robert A. Atkins*
Yahonnes Cleary*
Jonathan H. Hurwitz*
Amitav Chakraborty*
Adam P. Savitt*
Arielle B. McTootle*
Robert Klein*
Neil Chitrao*
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin*
Garrett Muscatel*
Dayton Campbell-Harris (pro hac vice forthcoming)**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
gmuscatel@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg*
Daniel Hessel*
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

*Additional counsel for the Robinson Intervenors*

\*  Admitted pro hac vice.
\*\*Practice is limited to federal court.

11

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which provides electronic notice of filing to all counsel of record, on this first day of May, 2024.

/s/ *Stuart Naifeh*
Stuart Naifeh