IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | |
|---|---|
| PHILIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, <br><br> Plaintiffs, <br><br> v. <br><br> NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, <br><br> Defendant. | Case No. 3:24-cv-00122-DCJ-CES-RRS <br><br> District Judge David C. Joseph <br> Circuit Judge Carl E. Stewart <br> District Judge Robert R. Summerhays <br><br> Magistrate Judge Kayla D. McClusky |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
ROBINSON INTERVENORS' MOTION TO STAY PENDING APPEAL**

The Robinson Intervenors' Motion to Stay is effectively a Motion to Reconsider the Order this Court entered just two days ago enjoining enforcement of a blatantly unconstitutional gerrymander. Rather than preserving the status quo "pending appeal," a stay would virtually ensure that SB8 rises from the ashes to control the 2024 election. Millions of voters would be forced to cast ballots in districts in which they have been grouped predominantly by race—a morally repugnant classification. The Robinson Intervenors seek to gain the fruits of victory not by pointing to some major oversight, but instead by quibbling around the edges of this Court's decision, distorting the record and law. This Court's Order was amply supported, and the Robinsons cannot hope to prevail on appeal. Indeed, *they cannot even hope to appeal*, as they lack standing on the merits, and the United States Supreme Court cannot review the several non-merits orders of which they complain. This latest effort to delay Plaintiffs' relief must be rejected.

1

I. **Legal Standard**

To determine whether a party is entitled to a stay pending appeal, courts apply four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009) (quotation omitted). The burden to meet each of these factors rests on the movant. *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021). And even if the movant meets this burden, the court retains discretion to deny a stay:

> A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co.*, 272 U. S., at 672. It is instead "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.*, at 672–673. . . . The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.

*Nken*, 556 U.S. at 434 (citation omitted). Critically, courts grant stays "only in extraordinary circumstances." *All. for Hippocratic Medicine v. FDA*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. Apr. 12, 2023) (per curiam). This rule reflects the fact that "a stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)). A "decree creates a strong presumption of its own correctness," which often counsels against a stay. *Id.* (quoting *Virginian Ry. Co.*, 272 U.S. at 673). But the Court need not even reach the question of whether to exercise such discretion because Robinson Intervenors have not satisfied their burden to meet the *Nken* factors to warrant this extraordinary relief.

II. **Application of *Nken* Factors**

a. **The Robinsons have not made a strong showing of likely success on merits.**

First, the Court should reject the stay application because Robinson Intervenors have not made a "strong showing" that they are likely to succeed on the merits. *Nken*, 556 U.S. at 434. This

is one of the "most critical" preconditions for a stay. *Id*. The Court need not look further than its own April 30 Order (the "Order"), where it held in permanently enjoining SB8 that Defendants and Defendant-Intervenors did *not* succeed on the merits. **Doc. 198**. In challenging that final order where the merits have already been "conclusively determined," Robinson Intervenors' Motion for a Stay really operates as a Motion for Reconsideration rather than a traditional stay. *Nken*, 556 U.S. at 428. Thus, this Court should hold Robinson Intervenors to the higher standard of showing actual success on the merits to overturn a permanent injunction. *Crown Castle Fiber, L.L.C. v. City of Pasadena, Tex.*, 76 F.4th 425, 441 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 820 (2024). Regardless, Robinson Intervenors have not made a strong showing of a likelihood of success on the merits.

Robinson Intervenors three allegations of error fail on the law and facts. Even were their qualms valid, they are too trivial to meet their heavy burden to effectively overturn the Order.

### i. Court correctly applied the *Gingles* standard.

First, Robinson Intervenors allege that the Court erred in looking to the *Thornburg v. Gingles*, 478 U.S. 30 (1986), factors to determine whether the State had a strong basis in evidence. To create an alleged remedial district to comply with the VRA, the State must first determine that there is a VRA violation and that the newly created district will remedy that violation. *Cooper v. Harris*, 581 U.S. 285, 306 (2017); *Shaw v. Hunt* (*Shaw II*), 517 U.S. 899, 916 (1996). The only way for the State to do so is by analyzing the *Gingles* factors. *Wis. Legislature v. Wis. Elecs. Comm'n*, 595 U.S. 398, 403 (2022) (per curiam); *Cooper*, 581 U.S. at 302; *Bush v. Vera*, 517 U.S. 952, 978 (1996) (plurality). The State must "carefully evaluate" whether the *Gingles* preconditions and totality-of-circumstances are met based on "evidence at the district level." *Wis. Legislature*, 595 U.S. at 404-405. The State may not "improperly rel[y] on generalizations to reach the conclusion that the preconditions were satisfied." *Id*. at 404. And *Gingles* is not just a test for a

VRA claim; *Gingles* is the standard by which to evaluate the State's burden to show a strong basis in evidence for believing the VRA demanded such a district in response to a Fourteenth Amendment claim. *Wis. Legislature*, 595 U.S. at 401-02; *see also Cooper*, 581 U.S. at 302 ("If a State has good reason to think that all the "*Gingles* preconditions" are met, then so too it has good reason to believe that § 2 requires drawing a majority-minority district. *See Bush v. Vera*, 517 U.S. 952, 978 (1996) (plurality opinion). But if not, then not."). That requires analysis and evidence that a § 2 plaintiff could demonstrate *each Gingles* factor and the totality of the circumstances in *each* particular remedial district. *Wis. Legislature*, 595 U.S. at 404-405; *Cooper*, 581 U.S. at 302; *Bush*, 517 U.S. at 978; *Gingles*, 478 U.S. at 79. The State concededly failed to conduct such an analysis and adduce such evidence, instead drawing this gerrymandered district based on generalizations. **Trial Tr. 1**, 25:8-26:10 (opening); **Trial Tr. 3**, 624:5-625:1 (closing). Accordingly, its racially gerrymandered map fails strict scrutiny. *Wis. Legislature*, 595 U.S. at 404-405.

Additionally, the Court correctly analyzed the application of traditional redistricting principles to determine that SB8 was not narrowly tailored to comply with the VRA. A state legislature must always satisfy traditional redistricting principles to comply with the VRA. *Allen v. Milligan*, 599 U.S. 1, 30 (2023); *LULAC v. Perry*, 548 U.S. 399, 431 (2006); *Bush*, 517 U.S. at 979. The Court rightly recognized that SB8 does not and struck it down.

Moreover, this Court correctly concluded that decisions in *Robinson v. Ardoin* cannot save the gerrymandered map. Robinson Intervenors argue that *Robinson's* analysis of *Gingles I* is dispositive here, and that the Court does not adequately "dispute these findings." **Doc. 201-1, at 5**. But the *Gingles* analysis is "an intensely local appraisal," so discussion of other potential remedial districts in the *Robinson* litigation cannot provide the requisite *Gingles* analysis for SB8's districts, particularly where SB8 creates an allegedly remedial district in another part of the state

4

with a different population than at issue in *Robinson*. *Gingles*, 478 U.S. at 79; *see also Wis. Legislature*, 595 U.S. at 404. Even if the State has some inkling that a VRA violation exists somewhere, it cannot draw a remedial district just anywhere. *LULAC*, 548 U.S. at 431; *Bush*, 517 U.S. at 979; *Shaw v. Hunt* (*Shaw II*), 517 U.S. at 916-17. The *Gingles* factors do not apply state-wide. *Wis. Legislature*, 595 U.S. at 404. Moreover, it is not the Court's burden to show the *Gingles* factors were *not* met; it was the State's burden alone to show that these factors *were* met—a burden the State did not, or even try to, satisfy. Accordingly, the Court's analysis was more than sufficient.

### ii. Court gave the State sufficient breathing room.

Second, Robinson Intervenors claim the Court gave the State insufficient breathing room. While states have some breathing room, "[s]trict scrutiny remains, nonetheless, strict." *Bush*, 517 U.S. at 978. The State blasted far past any "room" needed for breathing when it refused to conduct *any* pre-enactment *Gingles*-factor analysis and cynically used race to gerrymander a noncompact district using different voters in another part of the state. *Cooper*, 581 U.S. at 293; *Wis. Legislature*, 595 U.S. at 404. The Court properly exercised its Article III authority.

### iii. The Court correctly determined that the State acted with racial predominance, not mere racial consciousness.

Third, Robinson Intervenors wrongly claim the State was conscious of race, but race did not predominate. Race consciousness can quickly become predominance, given that the "moral imperative of racial neutrality is the driving force of the Equal Protection Clause." *Bartlett v. Strickland*, 556 U.S. 1, 21-22 (2009) (plurality) (quoting *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 518, 519 (1989) (Kennedy, J., concurring in part and concurring in judgment)). Here, racial predominance, not mere consciousness, was clear. The Court properly weighed the mountain of evidence of racial predominance and determined that the State veered far into unconstitutional territory. **Doc. 98, at 34** ("Race consciousness, on its own, does not make a district an

5

unconstitutional racial gerrymander or an act of impermissible race discrimination."); *id*. **at 35-45** (analyzing facts and reaching the unavoidable conclusion of racial predominance).[1]

Robinson Intervenors wrongly rely on *Robinson* and legislative remarks about that case as showing mere race consciousness. "[R]ace-based redistricting, even that done for remedial purposes, is subject to strict scrutiny" *because it shows* racial predominance. *Clark v. Calhoun County, Miss*., 88 F.3d 1393, 1405 (5th Cir. 1996); *Shaw v. Reno*, 509 U.S. 630, 657 (1993) ("Racial classifications with respect to voting carry particular dangers. Racial gerrymandering, even for remedial purposes, may balkanize us into competing racial factions; it threatens to carry us further from the goal of a political system in which race no longer matters—a goal that the Fourteenth and Fifteenth Amendments embody, and to which the Nation continues to aspire."). The State's *motives* for racial gerrymandering have no bearing on the racial predominance analysis. Even had the State truly desired to comply with the court order and truly thought it had violated the VRA, its action would still be subject to strict scrutiny. *Clark*, 88 F.3d at 1407.

Regardless, this gripe applies to just one source of evidence of racial predominance (*i.e.*, legislators' remarks about *Robinson*). The Robinsons' passing scowl at an anthill ignores the remaining mountain of direct and circumstantial evidence of racial predominance. Nor does it meet their burden to make a strong showing of likely success on the merits. *Nken*, 556 U.S. at 434.

### b. The Robinson Intervenors fail to show irreparable injury.

Primarily, the Robinson Intervenors claim irreparable harm if a "VRA-compliant map [is not] in place for the 2024 elections." **Doc. 201-1, at 9**. This allegation hinges on two misguided

---

[1] Contrary to Robinson Intervenors' position, the evidence of racial predominance went far beyond "statements by legislators that they sought to draw a second majority-Black district in order to comply with the Middle District and Fifth Circuit's orders." **Doc. 201-1, at 7**.

notions: (1) that this Court will be unable to swiftly adjudicate the remedial phase of this case; and (2) that even if this Court does timely impose a remedial map, it will not comply with the VRA.

Addressing the first notion, this Court, conscious of the time constraints regarding the 2024 election, has moved expeditiously throughout this litigation, in spite of the Robinson Intervenor's multiple attempts at delay. *See e.g.*, **Doc. 161** (Robinson Intervenors' Motion to Continue Trial), **Doc. 200** (Robinson Intervenors' Notice of Appeal challenging, among other things, this Court's Scheduling Order and this Court's Order Denying Motion to Continue). These repeated and unfounded attempts to delay judicial proceedings belie the Robinson Intervenors' sudden supposed fear that a constitutional map will not be in place for the 2024 election.

Second, the Robinson Intervenors provide no reason, and none exists, to believe that a map from this Court will violate the VRA. This purely speculative harm cannot support a stay. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant.").

### c. The issuance of a stay would cause Plaintiffs substantial harm.

As a preliminary matter, the Robinson Intervenors assert the third stay factor is the balance of equities and the public interest. **Doc. 201-1, at 9**. This is wrong for two reasons. First, the third prong evaluates the harm to other parties, not the balance of equities. *Nken*, 556 U.S. at 435. Second, the third and fourth stay factors do not merge because the Government is not an opposing party to this appeal. *Id.* The Court must consider the third and fourth stay factors separately.

With regard to the third factor (harm to other parties), issuance of a stay will seriously harm Plaintiffs and other parties. This Court already found that Plaintiffs are *irreparably* harmed absent an injunction. **Doc. 198, at 59**. Plaintiffs and other non-party voters will at least be *substantially* harmed (a lesser standard) if that injunction is now stayed because a blatant gerrymander will rise from the ashes, even if technically just "pending appeal." The inevitable delay in adjudication

7

would nearly ensure that the State could not pass a remedial map in time for the 2024 election—effectively reinstating the gerrymander and preventing relief to the prevailing party. This Court should be reluctant to grant a stay with the effect of "giv[ing] appellant the fruits of victory whether or not the appeal has merit." *Jimenez v. Barber*, 252 F.2d 550, 553 (9th Cir. 1958). *See also BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618. (5th Cir. 2021).

Finally, the Robinson Intervenors claim that because no Plaintiff testified at trial, they were unharmed in the first place and ipso facto are unharmed by a stay. **Doc. 201-1, at 9**. This is wrong. Each Plaintiff is harmed *as a matter of law* because they are subject to a racial gerrymander under SB8. *See North Carolina v. Covington*, 138 S. Ct. 2548, 2552-54 (2018) (per curiam) (holding that plaintiffs can establish a cognizable injury by showing "they had been placed in their legislative districts on the basis of race"); *see also Miller v. Johnson*, 515 U.S. 900, 911 (1995); *United States v. Hays*, 515 U.S. 737, 744-45 (1995); *Shaw v. Reno (Shaw I)*, 509 U.S. 630, 650 (1993); *Harding v. Cnty. of Dallas, Tex.*, 948 F.3d 302 (5th Cir. 2020). Contrary to the Robinson Intervenors' purely speculative harm, if Plaintiffs are forced to vote under SB8, a map this Court already found is unconstitutional, their harm would be real and imminent.

Delay in implementing a remedy would also harm other parties. The Secretary of State's *only* interest is in the proper and timely administration of the 2024 election. *See* Doc. 82 (Defendant Secretary of State's Response to Plaintiffs' Motion for Preliminary Injunction). Any needless delay in imposing a remedial map will necessarily harm the Secretary and voters.

The State, for its part, has no interest in enforcing an unconstitutional law; the Robinson Intervenors have no valid interest in voting under an unconstitutional scheme. *BST*, 17 F.4th at 618 ("Any interest . . . in enforcing an unlawful (and likely unconstitutional) [law] is illegitimate.").

This Court should not award the Robinson Intervenors "the fruits of victory" mere days after ruling against them on the merits, especially after they made every attempt to stall proceedings.

### d. The public interest weighs against a stay.

Finally, the public interest weighs heavily against a stay. The harm to Plaintiffs is shared by every Louisiana voter. Once a scheme is found unconstitutional, "it would be the unusual case in which a court would be justified in not taking appropriate action to ensure that no further elections are conducted under the invalid plan." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964). This is no such case; no equitable considerations justify the withholding of immediate relief. *Id.*

The Robinson Intervenors allude to the principle that the public interest is best served when a state legislature draws congressional districts. **Doc. 201-1, at 9-10**. Yet this Legislature used its available time and resources to pass a map that was clearly unconstitutional and was prepared with no *Gingles* analysis of any kind. It is too late for a third bite at the apple.

### III. Court should deny a stay because Robinson Intervenors cannot appeal the Order.

Moreover, the Court should deny a stay because it would be futile. Robinson Intervenors solely plan to appeal the Order to the U.S. Supreme Court. **Doc. 201-1, at 2**. But Robinson Intervenors are merely permissive intervenors, **Doc. 198, at 16**, and lack standing to appeal this Order, *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019); *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013); *Louisiana v. Haaland*, 86 F.4th 663, 666 (2023).[2]

*Hollingsworth v. Perry*, 570 U.S. 693 (2013), decides this case. There, as here, private parties intervened as defendants alongside the State in the district court to defend a constitutional challenge to a state law. *Id.* at 705. There, as here, the court declared the law unconstitutional and

---

[2] Robinson Intervenors did not need to and did not establish standing when they permissively intervened. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 339 (2017); *see also Town of Chester*, 581 U.S. at 339. Thus, the issue of standing to appeal arises for the first time now.

enjoined enforcement. *Id*. There, as here, the private-party-intervenor-defendants were the only parties to appeal the order, even though "the District Court had not ordered them to do or refrain from doing anything." *Id*. There, as here, the private-party-intervenor-defendants claimed they had standing to appeal because they participated in the enactment of the law. *Id*. at 706-07 (noting that private-party-intervenor-defendants were "the official 'proponents'" of the measure that became law and was the subject of the litigation). There, as here, the private-party-intervenor-defendants nonetheless did not have standing. *Id*. at 706-07. The Court determined: "Their only interest in having the District Court order reversed was to vindicate the constitutional validity of a generally applicable [State] law," and "such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing." *Id*. at 706. There, as here, private-party-intervenor-defendants "have no role—special or otherwise—in the enforcement of" the law, and "therefore have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen." *Id*. at 707 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

For the same reasons as in *Hollingsworth*, Robinson Intervenors lack standing to appeal. Their grievances are generalized and do not belong to them alone. *Id*. at 706. Their participation in the *Robinson* litigation and testimony before the Louisiana Legislature does not give them the right to enforce the law nor does it give them a particularized grievance. *Id*. at 706-07; *id*. at 707 ("No matter how deeply committed petitioners may be to upholding [the state law] or how 'zealous [their] advocacy,' *post*, at 2669 (Kennedy, J., dissenting), that is not a 'particularized' interest sufficient to create a case or controversy under Article III."). Therefore, because Robinson Intervenors lack standing to appeal, this Court should deny their Motion to Stay Pending Appeal.

## **CONCLUSION**

For the foregoing reasons, the Motion for Stay should be denied.

10

Dated this 2nd day of May, 2024            Respectfully submitted,

| | |
|---|---|
| **PAUL LOY HURD, APLC** | **GRAVES GARRETT GREIM LLC** |
| */s/ Paul L. Hurd* | */s/ Edward D. Greim* |
| Paul Loy Hurd | Edward D. Greim |
| Louisiana Bar No. 13909 | Missouri Bar No. 54034 |
| Paul Loy Hurd, APLC | *Admitted Pro Hac Vice* |
| 1896 Hudson Circle, Suite 5 | Jackson Tyler |
| Monroe, Louisiana 71201 | Missouri Bar No. 73115 |
| Tel.: (318) 323-3838 | *Admitted Pro Hac Vice* |
| paul@paulhurdlawoffice.com | Matthew Mueller |
| *Attorney for Plaintiffs* | Missouri Bar No. 70263 |
| | *Admitted Pro Hac Vice* |
| | Katherine Graves |
| | Missouri Bar No. 74671 |
| | *Admitted Pro Hac Vice* |
| | GRAVES GARRETT GREIM LLC |
| | 1100 Main Street, Suite 2700 |
| | Kansas City, Missouri 64105 |
| | Tel.: (816) 256-3181 |
| | Fax: (816) 256-5958 |
| | edgreim@gravesgarrett.com |
| | *Attorneys for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

      I do hereby certify that, on this 2nd day of May, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

                                                */s/ Edward D. Greim*
                                                Edward D. Greim
                                                *Attorney for Plaintiffs*