# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| PHILLIP CALLAIS, *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Louisiana Secretary of State,<br><br>                Defendant. | Case No. 3:24-cv-00122-DCJ-CES-RRS<br><br>Judge David C. Joseph<br>Judge Carl E. Stewart<br>Judge Robert R. Summerhays<br><br>Magistrate Judge Kayla D. McClusky |

## DECLARATION OF SHERRI WHARTON HADSKEY

Now comes Sherri Wharton Hadskey, who deposes and says:

    1.    I am over 18 years of age, legally competent to give this declaration, and have personal knowledge of the facts set forth in it.

    2.    I have worked in election administration for over 30 years. I am currently Commissioner of Elections for the State of Louisiana, a position I have held since August of 2017.

    3.    I began working in administration of elections in Louisiana in 1986 as a student worker for the Department of Elections and Registrations for the state of Louisiana, and continuing in 2004 when the Department of Elections and Registration was abolished and all functions of the Department were merged into the office of the Secretary of State. I have been involved in election work in the areas of elections purchasing, registration, accounting, IT, and programming.

    4.    In 2005, I was appointed Director of Elections within the office of the Secretary of State and served in that capacity until I was appointed Commissioner of Elections in 2017.

    5.    In 2005, I was a member of the committee which selected election equipment for the state of Louisiana and my duties included– implementing the entire system for the state,

including training all Registrars of Voters, Clerks of Court, and field staff personnel, oversight of acceptance, testing and delivery of all equipment, voter outreach on the new equipment, and knowledge of the entire electronic system to program the machines.

6. In 2017, I received a certification as a Certified Elections Registration Administrator (CERA) from The Election Center, upon completion of a two year educational curriculum for elections administrators.

7. In January of 2017, I received the Dunbar Award for Civil Service, which is the highest honor a classified employee can receive for service to the citizens of Louisiana.

8. Currently, in my position as Commissioner of Elections I have approximately 235 people working under my supervision all over the state in the fields of election services, election field operation, and elections IT/ programming.

9. In the course and scope of my duties, I work closely with parish registrars of voters. We provide administrative support and direct assistance to the sixty-four registrars across the state, and we work closely with them on the administration of absentee by mail voting and early voting for each election. This office also works with the registrar of voters on all election day procedures including tabulation of early voting and absentee by mail ballots, support election day guidance and service calls, and following the election for inspection, auditing the election and recounts when necessary. I do not have direct control over the parish registrars, but we work with them on the conducting of the annual canvass of registered voters. This office works closely with the registrars of voters on the maintenance of lists for registration and other records.

10. I also work with parish Clerks of Court across the state regarding matters of voting machines, ballots, receipt of votes from Clerks of Court on election night, and any other matters prescribed by the Louisiana Election Code.

11. As Commissioner of Elections, I am familiar with the procedures for registration and voting in this State. It is primarily my responsibility to ensure that the elections run on schedule, and that all deadlines for election administration are met. I also work with the Secretary of State to implement any election related laws, including redistricting plans, passed by the Legislature, or other parishes, local municipalities, and school boards. I am also responsible for working with the Secretary of State to supervise the conduct of orderly, fair, and open elections, and ensuring that elections in Louisiana are administered in such a way as to preserve the integrity of, and protect the public confidence in, the democratic process.

12. The 2024 election cycle requires the commitment of significant administrative resources by state and parish level officials. Specifically, voters need to be assigned to new voting districts in accordance with statewide plans passed by the Louisiana Legislature, and to any new voting district subject to redistricting at the municipality, or parish level.

13. Specifically, each voter must be assigned to their new districts in our elections database system called ERIN. Once voters are assigned to new districts, the information must be carefully proofed before it goes "live" in the ERIN system. This includes coordination with parish Registrars of Voters.

14. At this time, the only Congressional plan loaded into ERIN is H.B. 1, last utilized in the 2022 federal election cycle.

15. In the months leading up to an election, every day matters. The first statutory election deadline pertaining to congressional districting is June 19, 2024, which is the deadline for candidates to submit nominating petitions. La. R.S. 18:465(E)(1).

3

16. In order to meet this deadline, I conferred with our staff and the Secretary. Together we determined that a congressional districting plan was needed no later than May 15, 2024. If we receive a plan by that date, our schedule to code this plan is as follows:

   a. On May 16, 2024 we would begin review of precinct numbers that would need to change in each parish statewide for the new plan. A document would then be created for each parish. This document must then be proofed and submitted to the parishes for their review as well. This must occur this year for both congressional and state Supreme Court districts. In 2022 it took a week just to review H.B. 1 for changes prior to implementation.

   b. By May 22, 2024 we must create a schedule for parishes that have to implement the most coding changes and contact each Registrar of Voters for proofing changes.

   c. May 23, 2024 is the earliest date by which we could begin making changes in ERIN. This would be done parish by parish to build up to the statewide plan. If 30 or more parishes are impacted this takes at least 3 weeks. Notably no other work in ERIN may go on while this is implemented. In ERIN you can only implement one plan at a time. This means that Annual Canvass, which is scheduled to begin on May 18, 2024, will be delayed. Annual Canvass must be completed by June 30, 2024.

   d. By June 11, 2024 all parish Registrars of Voters must have plans proofed and approved by this date for both Supreme Court and Congressional districts and any other municipal jurisdictional changes.

   e. By June 12, 2024 all work must be completed in ERIN, so that parish Registrars of Voters can update their information that was put on hold while implementing

4

      statewide districting plans. The Secretary's team will then begin creating and printing identification cards to voters for both canvass and redistricting.

    f. On June 17, 2024, U.S.P.S. begins delivering voter cards for redistricting and canvass to voters. These cards inform voters what district they reside in.

This means that under the current schedule there is already a mere five-week period to code and assign all voters to their election districts, so that candidate qualifying by nominating petition can open on June 19, 2024. As such, this schedule already leaves virtually no room for error or unforeseen issues. A delay in receiving the map or any unforeseen issues could impact the Secretary's ability to meet these deadlines. Moreover, the further condensed this period becomes, the less clarity candidates will have to determine whether they want to run in that particular district, and who they may be running against.

17. In addition to these deadlines, we must begin yearly maintenance of voter machines and equipment on June 3, 2024. Yearly maintenance touches the following:

    a. All AVC Election Day voting machines (currently 9541 statewide);

    b. All ICX Early Voting machines (currently 820 statewide);

    c. All Canon Scanners (currently 110 statewide);

    d. All software and password updates for all laptops (over 600 statewide);

    e. Implementing all 2024 General Legislative Updates to all manuals and forms.

18. During this time we will also be working to assign voters to the new state Supreme Court districts. We anticipate moving approximately 2 million voters based on this change in the statewide plan. And while statewide redistricting plans take longer to code and proof than smaller redistricting plans at the parish or municipality level, we will also be implementing changes for the 21 municipalities and parishes that may redistrict ahead of the Fall 2024 election.

19. Election administration work continues after the June 19, 2024 deadline. The following subsequent deadlines are also in force:

   a. June 30, 2024 is the deadline by which the Annual Canvass must be complete. Again, no other work in ERIN may go on while redistricting plans are implemented in each parish, including work on the Annual Canvass.

   b. July 1, 2024 is the deadline for Parish Governing Authorities to submit any precinct changes (including a precinct being established or altered in any way, including alpha divisions by voter surname).

   c. July 10, 2024 is the deadline for parish Registrars of Voters to assign voters in ERIN to each voting district for all races, accounting for precinct changes.

   d. Qualifying begins on July 17, 2024 and ends on July 19, 2024 at 4:30 PM. Certified lists of candidates and qualifying fees are submitted to the Secretary by the Clerks of Court.

   e. July 24, 2024 the Secretary must furnish a list of candidates to campaign finance.

   f. July 26, 2024 is the deadline for objections to candidacy or any candidates to withdraw. These objections to candidacy may be filed in the state district courts.

   g. August 7, 2024 is the deadline for Registrars of Voters to publish the names and addresses of those persons on the inactive list in the official journal of the Parish Governing Authority.

   h. September 21, 2024 is the deadline for the Registrars of Voters to mail all overseas ballots. This is a deadline under both state and federal law.

20. Because this redistricting is going on at the same time as implementation for the Supreme Court districts and other municipal redistricting plans, there is still a significant amount

of coding to be completed in this tight time frame allotted for coding in the ERIN system. An addition of a Congressional plan after May 15, 2024 may render the Secretary of State unable to meet the assignment deadline ahead of the start of candidate qualifying.

21.     In order for ballot coding to be complete by September 13, 2024, ballot coding must begin prior to that so that ballots can be printed and proofed. This is especially true for the federally required provisional ballots which are the first ballots to be prepared and printed.

22.     For the November 2024 election the Secretary of State's office will need to prepare numerous different ballots depending on qualifying reports. A ballot will need to be prepared for each unique combination of districts that a potential voter will vote in.

23.     The already condensed timeframe makes accomplishing all of these tasks difficult. And this schedule assumes that nothing goes wrong. Moving any of the aforementioned deadlines further would result in a tighter timeframe for ballot drafting, printing, and importantly, decreased time for ballot proofing ahead of the hard federal deadline for mailing ballots of September 21, 2024. Decreasing the time to code, print, and proof these ballots increases the likelihood that a serious mistake will be made that ultimately results in a voter receiving an incorrect ballot or voting in an incorrect district.

24.     Such a mistake occurred in 2022.  Municipal elections that ran on March 26, 2024 on new redistricted lines, saw administration problems. Late census information caused a rushed entry of voter information and led to entry of incorrect voter information, ultimately resulting in the issuance of incorrect ballots in Calcasieu Parish.  As a result, a judge required state and local officials to hold a special municipal election in to remedy the issue. It is clear that rushing the voter assignment process creates an unacceptable risk of error that leads to flawed elections.

25. Further complicating this matter, parishes, by law, can merge precincts. The deadline to submit ordinances on mergers is July 1, 2024. However, practically, these mergers cannot be implemented in ERIN while Congressional redistricting is ongoing, as precincts can only be merged when all districts are in alignment. The Secretary of State's office has no control over the mergers, as they are controlled by demographers and parish councils. Therefore, later congressional districting work makes it possible a parish council could pass a merger ordinance that practically cannot be implemented because Congressional districts were still being implemented.

26. I am aware that as of the time of the execution of this declaration, that there is no Congressional districting plan either enacted by the legislature or ordered by the Court for the State to use in the November 2024 election. If a new map has split precincts we may not be able to implement that districting plan in time for the election. As discussed previously, the Secretary of State's staff needed a week to review and study H.B. 1 prior to the start of coding. That map had no split precincts. Because all split precincts will need to be addressed by the local Registrars of Voters, the Secretary of State will no longer be able to control the timeline of completing the Plan in ERIN. Implementation of any map, if it is possible at all, will only be feasible with the use of significant overtime in the form of staff working nights and weekends, as well as the likely hiring of temporary employees.

Pursuant to 28 U.S. Code §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 6th day of May, 2024, in Baton Rouge, Louisiana.

SHERRI WHARTON HADSKEY

4889-1254-0453 v.1