IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

| | | |
|---|---|---|
| PHILIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, ROLFE MCCOLLISTER, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| v. | ) ) ) | District Judge David C. Joseph Circuit Judge Carl E. Stewart |
| NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, | ) ) ) ) | District Judge Robert R. Summerhays Magistrate Judge Kayla D. McClusky |
| Defendant. | ) ) | |

**PLAINTIFFS' OPPOSITION TO ROBINSON AND GALMON INTERVENORS' MOTION FOR CLARIFICATION AND RECONSIDERATION AND CROSS-MOTION TO EXCEED PAGE AND TIME LIMITATIONS**

Plaintiffs respectfully request this Court deny *Robinson* and *Galmon* Intervenors' ("Intervenors") Motion for Clarification and Reconsideration (Doc. 224), and grant Plaintiffs' Cross-Motion to Exceed the Page and Time Limitations in the Scheduling Order (Doc. 219).

**I. The Court should deny Intervenors' first request.**

Intervenors claim to need "clarification" on whether or not this Court "intends to adhere to the findings of the Middle District of Louisiana that the Voting Rights Act likely requires two congressional districts in which Black voters have the opportunity to elect their preferred candidate." Doc. 224, at 2. In pre-filing discussions with the Intervenors, no other party expressed any uncertainty on this point. Any such "clarification" should be rejected for multiple reasons.

1

First, the *Robinson* Intervenors (and *Galmon* as amici) previously raised this question as a pre-trial legal issue. In their Motion in Limine, they urged this Court to "exclude… evidence or argument on the question of whether Section 2 of the Voting Rights Act requires a congressional redistricting plan that includes two districts in which Black voters have an opportunity to elect candidates of their choice." Doc. 144 at 1. "These issues **are not relevant** to the claims before this Court and evidence concerning these matters will only serve to **confuse the issues** and would **prejudice** the Robinson Intervenors." *Id*. (emphasis added).

The *Robinson* Intervenors argued that the "strong basis in evidence" required for strict scrutiny had to be the preliminary decisions in the *Robinson* case "themselves," and that the Court was barred from considering VRA evidence on its own or "weighing that evidence differently." Doc. 144-1 at 6. Arguing that it was impermissible for this three-judge Court to take any evidence that was supposedly "contrary to" the preliminary Robinson decisions (*id*. at 7), it fought to exclude evidence from Plaintiffs' experts Voss and Hefner (and later Overholt) that would have shown that SB8 lacked a strong basis in the VRA, and that indeed, the Black population was too widely scattered outside of Southeast Louisiana to draw another district. *See generally* Doc. 144-1.

The *Robinson* Intervenors lost this motion at the April 4, 2024, pretrial conference, but the Court invited them to renew their objections at trial. Doc. 152, at 2. This, they utterly failed to do. All of Plaintiffs' evidence came in. Dr. Voss and Mr. Hefner showed that drawing a second majority-minority district outside of Southeast Louisiana was not possible. Then, in its Judgment, this Court carefully considered it as part of a *Gingles* analysis under strict scrutiny. Doc. 198, pp. 45-58. The Court was convinced by the massive weight of the evidence, finding that "The record reflects that, outside of southeast Louisiana, the State's Black population is dispersed." *Id*. at 52.

This was not merely a waiver of an objection. The *Robinson* Intervenors doggedly refused to put in evidence on their own side. They insisted that their experts were not offering their own opinions on whether SB8 complied with the VRA, or on whether a second majority-minority district could or must be drawn outside of Southeast Louisiana. Even with eight hours to present their case (Doc. 130), they called not one witness to testify on the *Gingles* preconditions. Though the Robinsons now belatedly reference the myriad experts in the *Robinson* case, they offer no justification for not calling more of those witnesses in this case—or at least adducing testimony regarding the VRA from the experts they did call. Of course, though *Robinson* Intervenors have complained multiple times about the time allotted to them to put on their case (*see, e.g.*, Doc. 161, *Robinson* Intervenors' Motion to Continue), they did not even use all of their allotted time at trial and the parties went home early.

The closest the *Robinson* Intervenors came to attempting to present VRA evidence at trial was their premature and unsuccessful plan to have this Court admit the entire *Robinson* record, including expert reports, as exhibits, but only as evidence of what the Legislature relied on. Tr., Vol. II, 351:7-15. Upon objection, the Court questioned the relevance of these reports because there was no evidence that any legislator actually viewed or relied on them. Tr., Vol. II, 352:1-17. Though the Court sustained Plaintiffs' objections to the admission of these exhibits, the Court instructed the *Robinson* Intervenors exactly how to lay the proper foundation in order to have the reports received as evidence. Tr., Vol. II, 353:20-352:2 ("I'll leave it open if you wish to, if you wish to try to -- again, it would be admissible if you were to do that. Only first you would have to establish foundation that it was relied upon by those witnesses, that the Legislature relied upon it in connection with the passage of Senate Bill 8."). The *Robinson* Intervenors failed to do so. Not a single legislator testified that they relied upon the expert reports in *Robinson*. In fact, outside of

3

one failed attempt to present such testimony, thwarted only by *Robinson* Intervenors' own mistakes, *Robinson* Intervenors neglected to even attempt to present such testimony though they certainly had the time to do so and even called an additional legislative witness.

Thus, there is no lack of "clarity." The current Motion is simply a renewed effort that stretches back to the Motion in Limine. The *Robinson* Intervenors, hoping to return to the Middle District and have that Court draw the remedial map, want to deny that this three-judge District Court can take jurisdiction to provide a full analysis and remedy for blatant racial gerrymandering. At the liability phase, they wanted this Court to simply adopt preliminary decisions in *Robinson*, refusing to undertake its own analysis about whether there was a strong basis to believe SB8 was required by the VRA. Now at the remedial phase, they fail to remind the Court of this procedural history. As if it never happened, they make the same ask: that the Court should simply refuse to determine whether the VRA requires one of the Robinsons' proposed remedial maps, even in the face of racial gerrymandering. The Court should reject this invitation, which is really an invitation that it shirk its duty to maintain jurisdiction as a three-judge Court remedying an Equal Protection violation.

Lest the Court doubt that this is the *Robinson* Intervenors' plan, the *Galmon* Intervenors, though admitted in this Court, are carrying out the other half of the gambit. Rather than forthrightly arguing here that the VRA requires a second Black-majority district, they are actively encouraging the Middle District of Louisiana, where they litigated their now-mooted VRA challenge to HB1, to seize jurisdiction over the remedy in this case. *See Robinson v. Landry*, 3:22-cv-00211-SDD-RLB, Doc. 372, *Galmon* Plaintiffs' Motion to Reconsider Dismissal Ruling and to Schedule Remedial Proceedings [hereinafter *Robinson*, Doc. 372]; *see also id.*, Doc. 376, *Robinson* Plaintiffs' Notice of Joinder in *Galmon* Plaintiffs' Motion to Reconsider Dismissal Ruling and to

4

Schedule Remedial Proceedings. As recently as yesterday, May 9, 2024, the *Galmon* Intervenors filed a "Notice" in the Middle District (Doc. 385, p.1) attaching the State Defendants/Intervenors' filings in this case (Doc.222-1) which asserts that HB1 is still coded into the election system.

*Galmon* Intervenors raise this request urging the Middle District to intervene even though *only* this Court has jurisdiction to enter a remedy under 28 U.S.C. § 2284 and Article III of the U.S. Constitution, even though Plaintiffs are not and could not be parties to that proceeding, and even though any remedial proceedings before the Middle District would violate Section 2284's command. *See Shapiro v. McManus*, 577 U.S. 39, 43 (2015) (holding that three-judge courts *must* decide all questions, including remedies, related to constitutional challenges to apportionment schemes).

These moves show Intervenors' hand. As is now clear, Intervenors' conscious failure to meet their burden to establish their VRA defense was a strategic decision to avoid having this Court rule against them on that ground. That failed. Now, in the guise of a "Motion for Clarification," Intervenors want their VRA defense tried before the Middle District or before no court. The Motion for Clarification is really a Motion to Reconsider the Court's Judgment or a Motion to Abstain. Rather than taking the bait to rule either way, this Court should reiterate that the May 17, 2024 filings are the place for the Intervenors (who, in coordination together and likely with amici who will appear at the last minute, will have multiple proposed maps, hundreds of pages and unlimited exhibits) to actually establish that the VRA demands one of their proposed maps.

II. **This Court should deny Intervenors' second and third requests..**

Intervenors next request this Court to allow the parties to submit up to two maps each, suggesting that "additional maps will aid the Court as it undertakes the monumental task of imposing a remedial redistricting plan." Doc. 224-1, at 4. This is unnecessary and can only cause

5

further delay. Intervenors hope to spread the field by vastly increasing the number of potential plans that will, undoubtedly, spring in at the last minute.

If there is any doubt, this sudden demand for additional proposed maps should be viewed in light of the *Robinson* and *Galmon* Intervenors' extraordinary lack of cooperation. They have rejected multiple requests—which Plaintiffs began making at the remedial phase Court conference, and have renewed almost daily—that any proposed map be shared well in advance. The reason for Plaintiffs' request is simple: to allow all parties to submit evidence on all maps when they submit their May 17 evidence and briefing. This request burdens no party to disclose these already-drawn maps now. The Intervenors have been litigating this case for years, have a full stable of experts, and every single proposed map has included two-majority minority districts in the same basic region. The Intervenors must have these maps, as they are telling the Middle District that the remedial proceeding should start immediately there. *Robinson*, Doc. 372. But apparently the same urgency does not apply here. Hide-the-ball tactics deprive the parties of the ability to submit—and deprives this Court of the ability to weigh—expert opinions on their opponents' maps. As the *Robinson* and *Galmon* Intervenors know, depriving the Court of the best available data and expert analysis can only hobble its efforts to expeditiously order a remedy tailored to address the State's constitutional violation. Accordingly, the Court should deny Intervenors' second request.

Finally, regarding Intervenors' related request for guidance concerning the "criteria that the Court intends to evaluate when choosing between proposed maps, including the weight the Court intends to apply to each criterion," (Doc. 224, at 4-5) the Court need not provide such guidance. Importantly, Supreme Court precedent outlines with particularity the requirements and criteria courts must use in selecting remedial maps based on appropriate benchmarks, and those instructions need no further explanation for lawyers with years of redistricting litigation under

their belts. *Perry v. Perez*, 565 U.S. 388 (2012) (per curiam); *Abrams v. Johnson*, 21 U.S. 74 (1997); *Upham v. Seamon*, 456 U.S. 37 (1982) (per curiam). Again, this request seems more targeted to getting the Court "on record" so that its orders can be used in filings elsewhere than to answer a genuine need for instruction on the law.

### III.     The Court should grant Plaintiffs' request to exceed the page and time limitations.

Plaintiffs cross-move for limited relief regarding the later part of the Court's scheduling Order, which threatens to drown out Plaintiffs by putting them at a massive disadvantage in terms of briefing pages and oral argument against an array of adverse parties and amici. This Court's Scheduling Order, Doc. 219, at 3, instructed that on May 24: "Each party may file a single response, responding to one or more of the other parties' proposed maps. Each response shall be limited to twenty-five pages per party." *Id*. at 4. And it instructed that on May 30, "The Court will hold a hearing in Courtroom 1, in Lafayette, Louisiana. No evidence will be introduced at the hearing, but parties may make arguments in support of their proposal and against any other party's proposal. Argument will be limited to forty five minutes per party." *Id.*.

Plaintiffs respectfully request the Court allow Plaintiffs to exceed these limitations. While the Defendants in this case, including Intervenors, will receive only one materially adverse brief from Plaintiffs on the May 15 deadline, Plaintiffs will receive four oppositional briefs, not to mention the anticipated filing of untold amicus briefs. This leaves Plaintiffs in the unfortunate position of responding to several adverse briefs on the May 24 deadline but with the same twenty-five (25) pages Defendants will have to address just a single adverse party.

This same imbalance will appear again at the May 30 hearing where each party will have forty-five (45) minutes of oral argument. Now that the *Galmon* Intervenors have been admitted into this case, the current playing field allows for three hours of oral argument for Defendants against forty-five (45) minutes for Plaintiffs.

Plaintiffs request this Court apply its precedent of balancing the parties' ability to advocate their positions. *See* Tr., Vol. II, 499:5-11 (altering the parties' allotted time for closing to thirty minutes per side). Accordingly, Plaintiffs request this Court allow Plaintiffs to file a brief up to fifty (50) pages in length on May 24. For oral argument on May 30, Plaintiffs request the Court order the Robinson and Galmon Intervenors to split forty-five (45) minutes, the State and Secretary of State to split forty-five (45) minutes, and the Plaintiffs to have up to one hour and fifteen (15) minutes. This arrangement still provides Defendants with more time for oral argument than Plaintiffs but somewhat levels the playing field.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court deny *Robinson* and *Galmon* Intervenors' Motion for Clarification and Reconsideration and grant Plaintiffs' Cross-Motion to Exceed Page and Time Limits.

Dated this 10th day of May, 2024                                   Respectfully submitted,

| | |
|---|---|
| PAUL LOY HURD, APLC | GRAVES GARRETT GREIM LLC |
| */s/ Paul Loy Hurd* | */s/ Edward D. Greim* |
| Paul Loy Hurd | Missouri Bar No. 54034 |
| Louisiana Bar No. 13909 | *Admitted Pro Hac Vice* |
| Paul Loy Hurd, APLC | Jackson Tyler |
| 1896 Hudson Circle, Suite 5 | Missouri Bar No. 73115 |
| Monroe, Louisiana 71201 | *Admitted Pro Hac Vice* |
| Tel.: (318) 323-3838 | Matthew Mueller |
| paul@paulhurdlawoffice.com | Missouri Bar No. 70263 |
| *Attorney for Plaintiffs* | *Admitted Pro Hac Vice* |
| | Katherine Graves |
| | Missouri Bar No. 74671 |
| | *Admitted Pro Hac Vice* |
| | GRAVES GARRETT GREIM LLC |
| | 1100 Main Street, Suite 2700 |
| | Kansas City, Missouri 64105 |
| | Tel.: (816) 256-3181 |
| | Fax: (816) 256-5958 |
| | edgreim@gravesgarrett.com |
| | jtyler@gravesgarrett.com |
| | mmueller@gravesgarrett.com |
| | kgraves@gravesgarrett.com |
| | *Attorneys for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I do hereby certify that, on this 10th day of May, 2024, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs*