## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

PHILLIP CALLAIS, LLOYD PRICE,
BRUCE ODELL, ELIZABETH ERSOFF,
ALBERT CAISSIE, DANIEL WEIR,
JOYCE LACOUR, CANDY CARROLL
PEAVY, TANYA WHITNEY, MIKE
JOHNSON, GROVER JOSEPH REES,
ROLFE MCCOLLISTER,

                    *Plaintiffs*,

        v.

NANCY LANDRY, in her official capacity
as Secretary of State for the State of
Louisiana,

                    *Defendant*.

Civil Action No. 3:24-cv-00122

Judge David C. Joseph

Circuit Judge Carl E. Stewart

Judge Robert R. Summerhays

---

### *ROBINSON* AND *GALMON* INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION FOR CLARIFICATION AND RECONSIDERATION AND RESPONSE TO PLAINTIFFS' CROSS-MOTION TO EXCEED PAGE AND TIME LIMITS

    Intervenor-Defendants Press Robinson, Edgar Cage, Dorothy Nairne, Edwin Rene Soule, Alice Washington, Clee Earnest Lowe, Davante Lewis, Martha Davis, Ambrose Sims, the National Association for the Advancement of Colored People Louisiana State Conference, and the Power Coalition for Equity and Justice (the "*Robinson* Intervenors") and Edward Galmon, Sr., Ciara Hart, Norris Henderson, and Tramelle Howard (the "*Galmon* Intervenors") (collectively, "Intervenors") submit this reply in further support of their motion, ECF No. 224, to clarify and reconsider the Court's May 7, 2024, Scheduling Order, ECF No. 219, and in response to Plaintiffs' cross-motion to exceed the page and time limitations in the Scheduling Order, ECF No. 225.

1

1.  **This Court Should Clarify Whether It Intends to Follow the *Robinson* Court's Ruling That a Second Black Opportunity District Is Likely Required by Section 2 of the VRA.**

Intervenors seek clarification from the Court on whether it intends to adhere to the determination by the courts in *Robinson* that Section 2 of the Voting Rights Act ("VRA") likely requires two congressional districts in which Black voters have the opportunity to elect their representatives of choice.  ECF No. 224-1, at 2–4 (citing *Robinson* v. *Ardoin*, 605 F. Supp. 3d 759, 766 (M.D. La. 2022) ("*Robinson I*"); *Robinson* v. *Ardoin*, 37 F.4th 208 (5th Cir. 2022) ("*Robinson II*"); *Robinson* v. *Ardoin*, 86 F.4th 574 (5th Cir. 2023) ("*Robinson III*")).  Plaintiffs respond only by mischaracterizing the record and this Court's ruling.

As an initial matter, Plaintiffs do not and cannot contend that the Court has already determined whether Section 2 requires two Black-opportunity districts.  To the contrary, Plaintiffs acknowledge that Intervenors remain free to present arguments in the remedial phase about what Section 2 requires.  *See* ECF 225 at 5 ("[T]his Court should reiterate that the May 17, 2024 filings are the place for the Intervenors … to actually establish that the VRA demands one of their proposed maps[.]").  While the Court's liability ruling held that the State did not meet its burden of showing that *District 6 in SB8* satisfied strict scrutiny, ECF No. 198 at 52, the Court specifically noted that it "d[id] not decide on the record before us whether it is feasible to create a second majority-Black district in Louisiana that would comply with the Equal Protection Clause of the Fourteenth Amendment," *id.* at 58–59.  The question remains, then, whether the Court is now planning to incorporate the conclusions from *Robinson* regarding the requirement for a second majority-Black congressional district under Section 2 of the Voting Rights Act, or whether it plans to adjudicate that question anew in the remedial phase.

Contrary to Plaintiffs' arguments, the Court's evidentiary rulings in the liability phase do not suggest that it has already determined not to follow the courts' rulings in *Robinson*.  ECF No.

225, at 2–4.  Plaintiffs principally rely on the Court's denial without prejudice (and without written explanation) of the *Robinson* Intervenors' motion in limine to exclude evidence regarding whether Section 2 requires a congressional redistricting plan containing two Black opportunity districts. ECF No. 144.  But that motion addressed an entirely distinct issue.  The focus of that motion was not whether the Court should follow the *Robinson* ruling at the *remedial* phase.  Instead, the *Robinson* Intervenors argued that evidence regarding whether evidence regarding whether Section 2 requires a second Black opportunity district was irrelevant to *liability*.   As the *Robinson* Intervenors argued:

> [T]he question in this case is whether the decisions of the Middle District of Louisiana and the Fifth Circuit in *Robinson* themselves provided the required strong basis in evidence [for the Legislature to conclude that Section 2 required a second Black opportunity district], not whether the courts that issued those decisions correctly evaluated the evidence before them or whether this Court would weigh that evidence differently.

ECF No. 144-1, at 6; *see also id.* at 7 (arguing that evidence "on whether a second majority-Black district was actually necessary to satisfy Section 2 . . . is irrelevant to the issues before this Court"). Plaintiffs argued in response that the consideration of the *Gingles* factors was relevant to "whether the requisite strong basis in evidence . . . exists," ECF No. 146, at 2, and that *Robinson* only "analyzed HB1, a map that has since been repealed and does not resemble SB8."  *Id*. at 7.  Thus, the Court's denial of the *Robinson* Intervenors' motion without prejudice does not imply that this Court will not follow *Robinson* in determining whether Section 2 requires a second Black opportunity district in a remedial map.

Plaintiffs also rely on the Court's denial of the *Robinson* Intervenors' motion to introduce in evidence the full record in *Robinson*.  As the hearing transcript makes clear, however, the only issue addressed in that ruling was whether the Legislature actually relied on the *Robinson* record to conclude that a second Black opportunity district was required—not whether, for remedial

purposes here, the Court should or should not follow the ruling in that case.  Tr. Vol. II, 351:7 – 354:15.  Finally, for the same reasons, the *Robinson* Intervenors did not waive any argument that the Court should follow *Robinson* in the remedial phase of this case by not calling witnesses to testify about the *Gingles* factors at the liability phase.  *Cf.* ECF No. 225, at 2–3.

Plaintiffs further mischaracterize *Galmon* Intervenors' role in these proceedings.  They suggest that *Robinson* Intervenors' pre-trial motion in limine was joined by "*Galmon* as amici." ECF No. 225 at 2.  But *Galmon* Intervenors provided only two briefs as amici during the liability phase—an amicus brief in opposition to Plaintiffs' motion for preliminary injunction, ECF No. 93, and an amicus post-trial brief, ECF No. 197.  *Galmon* Intervenors played no role in the presentation of evidence at trial because they were excluded from the liability phase.  Plaintiffs further accuse *Galmon* Intervenors of not arguing "forthrightly" that Section 2 requires a second Black-opportunity district and instead "actively encouraging" the Middle District to "seize jurisdiction over the remedy in this case."  ECF No. 225 at 4.  But *Galmon* Intervenors have been clear about their position on what Section 2 of the Voting Rights Act requires since they first sought intervention in this case—and in every pleading they have filed since.  Mot. to Intervene, ECF No. 10, at 7 ("Both the district court and the Fifth Circuit recognized that Galmon Movants were likely to prevail on their Section 2 claim, which would *require* a second opportunity district for Black voters"); *Galmon* Amici's Opp. To Mot. for Preliminary Inj., ECF No. 93, at 20 ("The Legislature correctly understood that a U.S. District Court, affirmed in every relevant part by the Fifth Circuit, had determined that Section 2 *required* any newly enacted congressional map to include a second Black-opportunity district"); Reply in Support of Mot. to Intervene, ECF No. 75, at 2 ("[R]ulings in the Middle District litigation compelled the creation of a second Black-opportunity district"); *Galmon* Movants' Mot. to Reconsider Order Denying Intervention, ECF No. 96-1, at 6 (noting

4

that any remedial map must comply with Section 2); Reply in Support of Mot. to Reconsider, ECF No. 117, at 8 (contending that Plaintiffs challenge the scope of the State's Section 2 obligations as determined by the Middle District); *Galmon* Amici's Post-Trial Amicus Brief, ECF No. 197, at 15 (describing the Middle District's conclusion that plaintiffs were "substantially likely to prevail" on their Section 2 claim and that a "remedial congressional districting plan [with] an additional majority-Black congressional district" was the "appropriate remedy").

Indeed, Intervenors plainly stated in their motion for clarification that the Middle District's conclusions that Section 2 requires two Black-opportunity districts "should be given effect in any remedial plan for Louisiana's congressional districts."  ECF No. 224-1, at 2–3.  And during this Court's May 10, 2024 status conference, counsel for *Galmon* Intervenors expressly explained their position that this Court should either stay its injunction of SB8, enter SB8 on an interim basis, or, to the extent it determines that an expedited remedial process is necessary, allow it to proceed in the Middle District where there was already an extensive record on how to comply the Voting Rights Act without running afoul of the Equal Protection Clause.  *See also* ECF No. 197, at 2–4 (highlighting that the Middle District and multiple appellate panels have unanimously held that the illustrative maps provided were not racial gerrymanders and confirmed that it was possible to draw two majority-minority districts in Louisiana without offending the Equal Protection Clause). Intervenors have already explained why Plaintiffs are wrong to suggest that the Middle District lacks jurisdiction to impose a remedy, ECF No. 197, at 2–8, and would not oppose Plaintiffs' belated request for intervention in that case.[1]

---

[1] Plaintiffs still have not explained why they never sought to intervene in the *Robinson* litigation despite their asserted view that any redistricting plan in Louisiana with a second majority-minority district would be an unconstitutional racial gerrymander.  Compl., ECF No. 1, at 9, 25, 27.

Finally, Plaintiffs do not at all dispute, or even mention, Intervenors' showing that the remedial process currently in place would be insufficient for the Court to allow a full hearing on all of the complex issues needed to be addressed to determine de novo whether Section 2 of the Voting Rights Act requires a second Black opportunity District.  *See* ECF No. 224-1, at 3–4. Accordingly, Plaintiffs have effectively conceded the point.  *Kellam v. Servs.*, No. 3:12-CV-352-P, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("[T]he failure to respond to arguments constitutes abandonment or waiver of the issue").

### 2.  The Court Should Grant Intervenors' Second and Third Requests.

Plaintiffs contend that the Court should not allow the parties to submit more than one proposed remedial map on the ground that additional maps would purportedly be "unnecessary" and "cause further delay."  ECF No. 225 at 5.  Plaintiffs do not explain why the submission of additional proposed maps on the current schedule would cause any delay.  And the submission of alternative maps, far from being "unnecessary," would enable the Court to consider a fuller range of alternative maps and provide the Court with a greater range of options in imposing an appropriate remedial map.

Plaintiffs make the puzzling assertion that Intervenors are engaging in "[h]ide-the-ball tactics" by not providing proposed maps to Plaintiffs before the time required by the Court's schedule.  *Id.* at 6.  But Intervenors' choice to follow the Court's schedule in disclosing maps—rather than the arbitrary deadline unilaterally imposed by Plaintiffs—is neither a "tactic" nor does it have any bearing on whether the Court should consider an additional map per party.

### 3.   Plaintiffs' Cross Motion Is Improper and Should Be Denied.

Plaintiffs' request to exceed the page and time limitations set by this Court should be rejected.  As a threshold matter, Plaintiffs' cross motion is improper under the Local Rules, which require a motion to be accompanied by a notice of motion and proposed order.  L.R. 7.3-7.4.

Moreover, the faulty rationale underpinning Plaintiffs' request is a non-starter even if the Court overlooks the procedural deficit of the request.  Plaintiffs group the anticipated filings by the parties into "adverse" briefs, making the argument that they must respond to "four oppositional briefs, not to mention the anticipated filing of untold amicus briefs," ECF No. 225 at 7, and citing to the Court's decision to alter oral argument time during the April hearing and trial as prior precedent to support doing so here.  *Id.* at 8.

But Plaintiffs' argument overlooks the simple and important distinction that this is no longer the liability phase of the case.  At this remedial stage, the Court's order requires the parties submit memoranda and argument in support of their respective proposed maps.  Regardless of their position on SB8 during the liability phase, the parties are free now to submit maps that best comport with their differing views as to the proper composition of Louisiana's congressional districts.  Plaintiffs' filing (and oral argument) will advocate for merely one among the several maps submitted to the Court.  There is no justification at this stage of the proceedings to accord the Plaintiffs extra time.  Doing so would unduly favor Plaintiffs and prejudice the other parties submitting varied options to the Court.

Plaintiffs' claim that the Court may receive "untold amicus briefs" in support of Defendants' position does not change the calculus.  Any additional amici that participate during the remedial process may support any or all of the parties, including Plaintiffs, in proffering submissions to the Court.  Indeed, the only amicus submission thus far explicitly did not support

any party.  ECF No. 212 at 1 (submitting amicus "in support of neither party, to show that computational redistricting … could produce a map that fully remedies any violation of Section 2 of the Voting Rights Act").  And just today, the *Robinson* Intervenors received a request from counsel for another proposed amicus for consent to file a brief in the remedial phase of this case in support of Plaintiffs.

## **CONCLUSION**

For the reasons set forth above and in the Intervenors' motion, the Court should reconsider and clarify its May 7, 2024, Scheduling Order.

DATED: May 14, 2024

By: */s/ Tracie L. Washington*
Tracie L. Washington
LA. Bar No. 25925
Louisiana Justice Institute
8004 Belfast Street
New Orleans, LA 70125
Tel: (504) 872-9134
tracie.washington.esq@gmail.com

*Counsel for Robinson Intervenors Dorothy Nairne, Martha Davis, Clee Earnest Lowe, and Rene Soule*

Respectfully submitted,

By: */s/ Stuart Naifeh*
Stuart Naifeh (admitted pro hac vice)
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org

*Counsel for the Robinson Intervenors*

Kathryn Sadasivan*
Victoria Wenger*
Colin Burke*
NAACP Legal Defense and
Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
ksadasivan@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

R. Jared Evans
LA. Bar No. 34537
I. Sara Rohani*
NAACP Legal Defense and
Educational Fund, Inc.
700 14th Street N.W. Ste. 600
Washington, DC 20005
Tel: (202) 682-1300
jevans@naacpldf.org
srohani@naacpldf.org

Sarah Brannon*
Megan C. Keenan*
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org
mkeenan@aclu.org

Nora Ahmed
NY Bar No. 5092374 (pro hac vice forthcoming)
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org

John Adcock
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Tel: (504) 233-3125
jnadcock@gmail.com

Robert A. Atkins*
Yahonnes Cleary*
Jonathan H. Hurwitz*
Amitav Chakraborty*
Adam P. Savitt*
Arielle B. McTootle*
Robert Klein*
Neil Chitrao*
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
jhurwitz@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

Sophia Lin Lakin*
Garrett Muscatel*
Dayton Campbell-Harris (pro hac vice forthcoming)**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
gmuscatel@aclu.org
dcampbell-harris@aclu.org

T. Alora Thomas-Lundborg*
Daniel Hessel*
Election Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
dhessel@law.harvard.edu

*Additional counsel for the Robinson Intervenors*

*  Admitted pro hac vice.
**Practice is limited to federal court.

_s/ J.E. Cullens, Jr._

J. E. Cullens, Jr. (LA # 23011)
Andrée Matherne Cullens (LA # 23212)
Stephen Layne Lee (LA # 17689)
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. One
Baton Rouge, LA 70810
(225) 236-3636
cullens@lawbr.net
acullens@lawbr.net
laynelee@lawbr.net

_s/ Abha Khanna_

Abha Khanna* (# 917978)
ELIAS LAW GROUP LLP
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
(206) 656-0177
akhanna@elias.law

Lalitha D. Madduri* (# 917979)
Jacob D. Shelly* (# 917980)
Daniel Cohen* (# 917976)
Qizhou Ge* (# 917977)
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
(202) 968-4490
lmadduri@elias.law
jshelly@elias.law
dcohen@elias.law
age@elias.law

* Admitted _pro hac vice_

Counsel for _Galmon_ Intervenors

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the Clerk of Court using the CM/ECF system, which provides electronic notice of filing to all counsel of record, on this fourteenth day of May, 2024.

/s/ *Stuart Naifeh*
Stuart Naifeh