# EXHIBIT 1

Case 3:24-cv-00122-DCJ-CES-RRSB   Document 263-1   Filed 05/01/26   Page 1 of 52
Case 3:24-cv-00122-DCJ-CES-RRSB   Document 263-1   Filed 05/01/26   Page 1 of 52
PageID #: 5721

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE
RELIEF; EMERGENCY MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION; MOTION TO CONVENE
A THREE-JUDGE DISTRICT COURT PURSUANT TO 28 U.S.C. § 2284;
AND INCORPORATED MEMORANDUM IN SUPPORT**

**COMPLAINT**

Plaintiffs, by and through undersigned counsel, file this Verified Complaint pursuant to 42 U.S.C. § 1983, the Voting Rights Act of 1965, 52 U.S.C. § 10301, the First, Fourteenth, and Fifteenth Amendments to the United States Constitution, the Elections Clause, U.S. Const. art. I, § 4, cl. 1, the federal election-timing statutes, 2 U.S.C. §§ 1 and 7, and the Constitution of the State of Louisiana, and aver as follows:

**I. PRELIMINARY STATEMENT**

1.      On Wednesday, April 29, 2026, the Supreme Court of the United States issued its decision in Louisiana v. Callais, No. 24-109, 608 U.S. ___ (2026), invalidating Louisiana's enacted congressional districting plan as an unconstitutional racial gerrymander. The Court remanded the matter to the United States District Court for the Western District of Louisiana for further proceedings. The Court did not order the cancellation, postponement, or suspension of any election.

2. At the moment Callais was decided, an election was already underway. Pursuant to La. R.S. § 18:1303, absentee-by-mail balloting had commenced, and a substantial number of absentee ballots had already been received and cast by qualified electors. Pursuant to La. R.S. § 18:1309, in-person early voting was scheduled to commence at 8:30 a.m. on Saturday, May 2, 2026, less than seventy-two (72) hours after the Supreme Court's decision was announced.

3. The May 16, 2026, ballot is not limited to one race. It is a comprehensive electoral event encompassing: (a) the United States Senate primary; (b) the United States House of Representatives primary; (c) the Louisiana Supreme Court election (one seat); (d) the Louisiana Board of Elementary and Secondary Education election (one seat); (e) two positions on the Louisiana Public Service Commission; and (f) five proposed amendments to the Louisiana Constitution. A second primary election is scheduled for June 27, 2026, for any contests on the May 16 ballot in which no candidate receives a majority.

4. On April 30, 2026, Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, posted on the social-media platform X, from the verified official account of the Louisiana Secretary of State, a series of two statements (the 'Suspension Announcement') publicly announcing that 'LOUISIANA U.S. HOUSE OF REPRESENTATIVES RACES SUSPENDED' and that, 'Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races.' Within hours, on the same day, Defendant Governor Jeff Landry signed and issued Executive Order Number JML 26-038, titled 'STATE OF EMERGENCY — SUSPENSION OF CLOSED PARTY PRIMARY ELECTIONS FOR THE OFFICES OF REPRESENTATIVE IN THE UNITED STATES CONGRESS,' attested by Secretary of State Nancy Landry, formally suspending both the May 16, 2026 and June 27, 2026 closed party primary elections for the offices of United States Representative (the 'Executive Order'). The full text of the Suspension Announcement is set forth at Paragraphs 28–30 below; the operative text of the Executive Order is set forth at Paragraphs 31–36 below. Both are attached as Exhibits A and B, respectively.

5. The Suspension Announcement and Executive Order JML 26-038 were issued at a time when (a) tens of thousands of absentee ballots had already been mailed under La. R.S. § 18:1303 to elderly, disabled, hospitalized, student, and military voters, and a material number of

those ballots had already been completed and returned to parish registrars; (b) early in-person voting was hours from commencing; (c) qualifying for both the May 16 primary and the June 27 second primary had closed in February 2026; (d) no remedial congressional map existed and none could lawfully be promulgated absent legislative enactment and judicial review on remand; (e) the Supreme Court's judgment in Callais was not yet final under Supreme Court Rule 44.1, the 25-day rehearing window having not yet closed and the certified judgment having not yet been transmitted to the Western District of Louisiana under Supreme Court Rule 45.3; and (f) hundreds of qualified candidates and millions of registered Louisiana voters had organized their lives, their absentee submissions, and their plans to participate in the comprehensive May 16 ballot.

6.      Both the Suspension Announcement and Executive Order JML 26-038 are now consummated administrative and executive acts with immediate legal and operational consequences. The Executive Order, by its express terms, suspends the closed party primaries for the offices of United States Representative in Congress for the duration of both the May 16, 2026, and June 27, 2026 election cycles, and 'until July 15, 2026 or until such time as determined by the Legislature.' The action thus extends not to one but to two federal congressional primary elections. Plaintiffs do not allege a future threat; they challenge presently effective state action causing presently unfolding harm. The standing analysis is direct: a constitutional injury is being inflicted now. Susan B. Anthony List v. Driehaus, 573 U.S. 149 (2014); Steffel v. Thompson, 415 U.S. 452 (1974).

7.      Plaintiffs seek a temporary restraining order, a preliminary injunction, a permanent injunction, and a declaratory judgment requiring Defendants to: (a) refrain from giving any force or effect to Executive Order JML 26-038 or to the Secretary of State's certification under La. R.S. § 18:401.1(B); (b) proceed with the May 16, 2026 federal congressional primary and the June 27, 2026 federal congressional second primary under the existing election calendar and the existing congressional districts pending entry of a remedial plan by the Western District of Louisiana on remand from Callais; (c) count every absentee ballot already cast; (d) refrain from disenfranchising any qualified Louisiana voter or de-listing any qualified candidate in any contest on the May 16, 2026 or June 27, 2026 ballot; and (e) provide such further relief as the Court deems just and proper.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3)–(4) (civil rights). Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

9. Plaintiffs invoke 42 U.S.C. § 1983 to vindicate rights secured by the First, Fourteenth, and Fifteenth Amendments to the United States Constitution and by the Elections Clause, U.S. Const. art. I, § 4, cl. 1, as informed by 2 U.S.C. §§ 1 and 7.

10. Plaintiffs invoke Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, as construed in Louisiana v. Callais, 608 U.S. ___ (2026).

11. Because the action challenges conduct directly connected to the apportionment of Louisiana's congressional districts and the conduct of federal elections under that apportionment, Plaintiffs respectfully request convocation of a three-judge district court pursuant to 28 U.S.C. § 2284(a). See Shapiro v. McManus, 577 U.S. 39 (2015).

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). The Governor, the Attorney General, and the Secretary of State each maintain their official offices in Baton Rouge, East Baton Rouge Parish; the challenged conduct was effected from within East Baton Rouge Parish; and a substantial part of the events and omissions giving rise to this action has occurred and will occur in this District.

## III. PARTIES

13. Plaintiff Lindsay Garcia is a citizen of Louisiana, a resident and registered voter domiciled within the Fifth Congressional District, and a qualified candidate for the Democratic Party Primary for the United States House of Representatives from the Fifth Congressional District of Louisiana. Plaintiff Garcia satisfied all qualification requirements during the qualifying period that closed in February 2026, paid the qualifying fee under La. R.S. § 18:464, and has incurred substantial campaign expenditures in reliance on the May 16, 2026, election date. Plaintiff Garcia brings this action individually and as a representative of a putative class of similarly situated Louisiana voters and candidates under Federal Rule of Civil Procedure 23(b)(2).

14. Plaintiff Eugene Collins is a citizen of Louisiana, a resident and registered voter of East Baton Rouge Parish within the Fifth Congressional District, and intends to vote in the May

16, 2026, election. Plaintiff Collins has a vested interest in having his ballot counted in every contest on the May 16, 2026, ballot.

15.     Defendant Jeff Landry is the Governor of the State of Louisiana. He is sued in his official capacity. Governor Landry is the executive officer who, on April 30, 2026, signed and issued Executive Order JML 26-038, set forth at Paragraphs 31–36 below, formally suspending the closed party primary elections for the offices of Representative in the United States Congress for the May 16, 2026 and June 27, 2026 election cycles. He has the constitutional and statutory authority to direct, supervise, and control the actions of the executive branch of the State of Louisiana, including the conduct of statewide elections. La. Const. art. IV, § 5(A); La. R.S. § 49:214 et seq. He acts under color of state law for purposes of 42 U.S.C. § 1983.

16.     Defendant Elizabeth B. Murrill is the Attorney General of the State of Louisiana. She is sued in her official capacity. Attorney General Murrill is the chief legal officer of the State, La. Const. art. IV, § 8, and possesses authority to enforce, defend, and advise upon the legality of the challenged action. In public statements following the Callais decision, she has called upon the Legislature and the executive branch to take action affecting the May 16, 2026 elections. She acts under color of state law for purposes of 42 U.S.C. § 1983.

17.     Defendant Nancy Landry is the Secretary of State of the State of Louisiana. She is sued in her official capacity. The Secretary of State is the chief election officer of Louisiana, La. R.S. § 18:18, and is responsible for the administration, certification, and conduct of elections, including the May 16, 2026 and June 27, 2026 elections. Secretary Landry is the author and publisher of the Suspension Announcement set forth at Paragraphs 28–30 below, the official who issued the certification under La. R.S. § 18:401.1(B) on April 30, 2026, and the attesting officer of Executive Order JML 26-038 set forth at Paragraphs 31–36 below. She has the direct enforcement authority required for prospective relief under Ex parte Young, 209 U.S. 123 (1908). She acts under color of state law for purposes of 42 U.S.C. § 1983.

## IV. STATEMENT OF FACTS

*A. The May 16, 2026, Ballot Is Comprehensive.*

18.     By Act of the Louisiana Legislature in the Second Extraordinary Session of 2025, party-specific federal primary elections were scheduled for May 16, 2026, with a second primary scheduled for June 27, 2026. This is the first time since 2010 that Louisiana is holding party-specific primary elections, departing from the State's customary jungle-primary system.

19.     The May 16, 2026, ballot contains the following contests and questions, all of which qualified voters statewide are entitled to consider:

  a.     Primary election for the United States Senate seat for Louisiana, conducted as a party-specific primary;

  b.     Primary elections for each of Louisiana's six seats in the United States House of Representatives, conducted as party-specific primaries;

  c.     Election for one seat on the Supreme Court of the State of Louisiana, conducted as a party-specific contest;

  d.     Election for one seat on the Louisiana Board of Elementary and Secondary Education (BESE), conducted as a party-specific contest;

  e.     Elections for two seats on the Louisiana Public Service Commission, conducted as party-specific contests;

  f.     Five (5) proposed amendments to the Louisiana Constitution, presented to all qualified electors of the State for ratification or rejection.

20.     Qualifying for these contests closed in February 2026. Hundreds of candidates qualified, paid filing fees under La. R.S. § 18:464, and have invested substantial resources in their campaigns. Proponents and opponents of the five proposed constitutional amendments have organized statewide campaigns, raised funds, purchased advertising, and engaged voters in reliance on the May 16, 2026, ballot date.

*B. Voting Has Already Begun, and Thousands of Absentee Ballots Have Been Mailed.*

21.     Pursuant to La. R.S. § 18:1303, absentee-by-mail balloting for the May 16, 2026, election commenced more than thirty (30) days before the election. Louisiana law extends absentee-by-mail voting privileges to specific categories of qualified electors, including: persons sixty-five (65) years of age or older; persons who are physically disabled or hospitalized; students, professors, and other persons enrolled or employed at out-of-state educational institutions; members of the Armed Forces, Merchant Marine, and uniformed services on active duty, and their spouses and dependents; persons in the custody of law-enforcement agencies; persons whose work duties require absence from the parish on Election Day; and other categories specified by statute. La. R.S. § 18:1303(B)–(I); see also 52 U.S.C. § 20302 (Uniformed and Overseas Citizens Absentee Voting Act).

22.     On information and belief, the Louisiana Department of State and the parish registrars of voters have, in the aggregate, mailed in excess of one hundred thousand (100,000) absentee ballots for the May 16, 2026, election to qualified electors statewide. These absentee ballots have been delivered to elderly voters, disabled voters, hospitalized voters, students at out-of-state colleges and universities, active-duty military servicemembers stationed at installations in the United States and abroad, and other qualified electors who, by reason of age, infirmity, deployment, or distance, are statutorily and practically unable to appear in person on Election Day.

23.     By April 29, 2026, the date of the Supreme Court's Callais decision, a material and growing number of these absentee ballots had been completed, executed, and returned to parish registrars, and had been received and cast in accordance with La. R.S. §§ 18:1306 and 18:1307. Each such ballot is a single physical instrument on which the elector has voted in every contest and on every question identified in Paragraph 19 above — including the United States Senate primary, the United States House primary, the Louisiana Supreme Court election, the Louisiana Board of Elementary and Secondary Education election, the two Louisiana Public Service Commission contests, and each of the five proposed amendments to the Louisiana Constitution.

24.     Pursuant to La. R.S. § 18:1309, in-person early voting was scheduled to commence on Saturday, May 2, 2026, at 8:30 a.m., and to continue through Saturday, May 9, 2026, at every parish registrar's office in the State of Louisiana.

25.     Voters who have already cast absentee ballots cannot be partially disenfranchised. Their cast ballots cannot be opened, parsed, sorted, or selectively voided race-by-race without violating the procedural-due-process principles of Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982); the equal-protection principles of Bush v. Gore, 531 U.S. 98 (2000); and, as to military and overseas voters specifically, the protections of the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq.

## C. The Supreme Court Issued Callais Without Ordering Cancellation.

26.     On April 29, 2026, the Supreme Court issued Louisiana v. Callais, holding the State's enacted congressional plan an unconstitutional racial gerrymander and remanding the matter to the United States District Court for the Western District of Louisiana for further proceedings. The Court's mandate did not require, recommend, or authorize the suspension of any election. The Court did not direct the State to halt voting already underway, did not enjoin any election official, and did not address the timing of remedial measures. Counsel for the Callais plaintiffs requested the expedited issuance of a certified judgment to permit redrawing for the 2026 cycle; according to public filings, the Secretary of State did not oppose that request. On April 29, 2026, Attorney General Murrill stated publicly that 'state and federal law would not prevent the Legislature from drawing a new map this year' but acknowledged 'judicial principles that limit a court's ability to create a new map close to an election'; she stated that she would 'be looking to the Legislature to see which direction they want to go.' She did not state that the May 16 election was canceled.

## D. The Certified Emergency, the Suspension Announcement, and Executive Order JML 26-038.

27.     On April 30, 2026, Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, posted to the social-media platform X, from the verified official account of the Louisiana Secretary of State, a series of two related statements that, taken together, publicly announced and effected the partial suspension of the May 16, 2026, election.

28.     The first statement, accompanied by an embossed image of the Louisiana Secretary of State's official seal, declared in operative text:

*"LOUISIANA U.S. HOUSE OF REPRESENTATIVES RACES SUSPENDED — Early Voting Begins Saturday For All Other Races."*

29.     The second statement, posted in immediate sequence to the first, quoted Secretary Landry directly as follows:

*"Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races."*

True and correct screenshots of these publications, bearing the verified-account badge, the official Louisiana Secretary of State seal, the timestamp, and the engagement metrics, are attached to this Verified Complaint as Exhibit A and incorporated by reference. (Together, the 'Suspension Announcement.')

30.     By the Suspension Announcement, Defendant Secretary of State Landry has publicly represented that she has, pursuant to La. R.S. § 18:401.1(B), formally certified to the Governor that an 'emergency' exists with respect to the May 16, 2026 federal congressional primaries. The certification, by the Secretary's own admission, is a 'mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races.' The certification is a final and effective administrative act, taken under color of state law, the immediate and intended legal consequence of which is to authorize the Executive Order described below.

31.     Within hours of the Suspension Announcement, on the same date — Thursday, April 30, 2026 — Defendant Jeff Landry, in his official capacity as Governor of the State of Louisiana, executed and issued Executive Order Number JML 26-038, titled 'STATE OF EMERGENCY — SUSPENSION OF CLOSED PARTY PRIMARY ELECTIONS FOR THE OFFICES OF REPRESENTATIVE IN THE UNITED STATES CONGRESS' (the 'Executive Order'). The Executive Order was attested by Defendant Nancy Landry, in her official capacity as Secretary of State, and bears the Great Seal of Louisiana. A true and correct copy of the Executive Order is attached to this Verified Complaint as Exhibit B and incorporated by reference.

32.     The Executive Order's preambulary recitations include, in pertinent part: that the Supreme Court 'held that the map is an unconstitutional gerrymander, and its use would violate the plaintiffs' constitutional rights'; that R.S. 18:401.1(B) provides 'the governor may, upon issuance of an executive order declaring a state of emergency or impending emergency, suspend or delay any qualifying of candidates, early voting, or elections,' and 'shall take such action only upon the certification of the secretary of state that a state of emergency exists'; that 'on April 30, 2026, the Secretary of State certified to the Governor that a state of emergency exists that would affect the electoral process, pursuant to R.S. 18:401.1'; and that the Governor 'concur[s] that an emergency exists, as electing members to Congress under an unconstitutional map flies in the face of the United States Constitution and subjects Louisiana voters to representatives that are impermissibly elected as determined by the United States Supreme Court, in a 6-3 decision.'

33.     Section 1 of the Executive Order provides: 'Due to the election emergency of unconstitutional maps as determined by the United States Supreme Court in Louisiana v. Callais et al., the closed party primary elections for the offices of representative in the United States Congress are hereby suspended for the duration of the May 16, 2026 and June 27, 2026 election cycles and until July 15, 2026 or until such time as determined by the Legislature.' The Executive Order thus suspends not one but two scheduled federal congressional primary elections — the May 16, 2026, closed party primary, and the June 27, 2026, closed second party primary — and does so for an open-ended duration that depends upon prospective and uncertain action by the Louisiana Legislature.

34.     Section 2 of the Executive Order provides: 'The Legislature is hereby encouraged to pass legislation to enact new Congressional maps and schedule those elections as soon as practical, including laws governing qualification of candidates, in order to conduct the November 3, 2026, election.' By its own express text, Section 2 acknowledges that the authority to enact congressional maps and schedule federal elections rests with 'the Legislature', not with the Governor. The Executive Order is therefore self-confessedly a usurpation of legislative authority under the Elections Clause, U.S. Const. art. I, § 4, cl. 1, accomplished prior to and in the absence of any legislative action.

35.     Section 3 of the Executive Order provides: 'No other race or proposition on the ballot for May 16, 2026, and June 27, 2026 shall be affected by this Order.' This Section confirms

the selectivity of the suspension. By its express terms, the Executive Order targets only the United States House of Representatives races; it leaves intact, on the same ballots, the United States Senate primary, the Louisiana Supreme Court election, the Louisiana Board of Elementary and Secondary Education election, the two Louisiana Public Service Commission contests, and the five proposed amendments to the Louisiana Constitution.

36.     The penultimate preambulary recitation of the Executive Order asserts: 'nothing in this Order alters the date fixed by Congress for the election of United States Representatives pursuant to 2 U.S.C. § 7, and the congressional election identified herein shall be held on the date prescribed by federal law; this Order affects only the closed party primaries scheduled for May 16, 2026 and June 27, 2026 for those offices.' That recitation is an admission against interest. It admits that 2 U.S.C. § 7 governs the timing of federal congressional elections in Louisiana. Yet under Foster v. Love, 522 U.S. 67 (1997) , itself a Louisiana case, the Supreme Court held that primary elections that are integral to the selection of United States Representatives are governed by the federal election-timing statutes, 2 U.S.C. §§ 1 and 7. By admitting federal statute coverage of the general election while purporting to suspend its predicate primaries, the Executive Order is preempted as a matter of federal law.

### E. The Operative Effect of the Executive Order.

37.     The Executive Order is now in operative effect. Section 4 of the Executive Order provides that the Order 'is effective upon signature and shall remain in effect from Thursday, April 30, 2026, until Saturday, May 30, 2026, unless amended, modified, terminated, or rescinded earlier by the Governor, or terminated by operation of law.' The Executive Order is presently being implemented by the Department of State, by parish registrars of voters, by clerks of court, and by parish boards of election supervisors throughout the State. Early in-person voting opens at 8:30 a.m. on Saturday, May 2, 2026, within hours of this filing, and parish registrars have been instructed to administer that early voting under the operative effect of the Executive Order, with the United States House primaries removed from voter ballots even as voting proceeds on every other contest. Without immediate intervention from this Court, two federal congressional primary elections will be unconstitutionally cancelled.

38.     The suspension is selective by its own express terms. Section 3 of the Executive Order provides that '[n]o other race or proposition on the ballot for May 16, 2026 and June 27, 2026 shall be affected by this Order.' By that express directive, the Executive Order leaves intact, on the same May 16, 2026 ballot: (a) the United States Senate primary; (b) the Louisiana Supreme Court election; (c) the Louisiana Board of Elementary and Secondary Education election; (d) the two Louisiana Public Service Commission contests; and (e) the five proposed amendments to the Louisiana Constitution. The Executive Order also leaves intact the June 27, 2026, second-party primary as to all contests other than the United States House. Voters arriving at parish registrars' offices on Saturday morning will be given a ballot bearing every contest except the U.S. House race.

39.     On information and belief, no comparable executive order has issued, and no comparable suspension has been ordered, with respect to congressional primaries in any State similarly situated to Louisiana with respect to redistricting litigation following Callais but lacking the racial composition of Louisiana's electorate or of the invalidated Sixth Congressional District. The Executive Order targets the only contest on the May 16, 2026, ballot, and the only contest on the June 27, 2026, ballot, involving the Black-preferred congressional incumbent of the invalidated majority-Black District.

40.     La. R.S. § 18:401.1, the sole provision invoked by the Secretary of State and the Governor as authority for the certification and the Executive Order, is a statute of state law. It does not, and cannot, authorize state officials to suspend a federal congressional election in derogation of the Elections Clause, U.S. Const. art. I, § 4, cl. 1; the federal election-timing statutes, 2 U.S.C. §§ 1 and 7; the Voting Rights Act, 52 U.S.C. § 10301; the First, Fourteenth, and Fifteenth Amendments; or the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq. To the extent La. R.S. § 18:401.1 purports to vest such authority in any state officer with respect to federal congressional elections, it is preempted and unconstitutional as applied. The Executive Order's own admission at its penultimate WHEREAS clause, that 2 U.S.C. § 7 governs the timing of federal elections, confirms that federal law governs and forecloses the State's authority to suspend the integral primaries that produce the candidates for those federal elections. Foster v. Love, 522 U.S. 67 (1997).

**F. The Cascade of Harm Across the Entire Ballot.**

**41.** The Suspension Announcement, the certification under La. R.S. § 18:401.1(B), and Executive Order JML 26-038, operating in tandem, inflict cascading and irreparable harm across both the May 16, 2026, election and the June 27, 2026, second primary, and across every contest and question on those ballots:

a.      Voters who have already cast absentee ballots, including elderly voters, disabled voters, students at out-of-state institutions, hospitalized patients, and active-duty military servicemembers stationed in the United States and abroad, have voted, in a single sealed ballot, on each contest identified in Paragraph 19 above. Severing the U.S. House race from those cast ballots — counting some races but not others on the same physical instrument — raises insoluble due-process and equal-protection problems under Logan and Bush v. Gore. Discarding any portion of an already-cast military or overseas ballot raises additional concerns under UOCAVA, 52 U.S.C. § 20301 et seq.

b.      Voters who planned to participate in early in-person voting beginning Saturday, May 2, 2026, face confusion, depressed turnout, and the prospect of being turned away from polling places that no longer know which contests are open and which are closed.

c.      Voters who planned to participate on Election Day, May 16, 2026, face the same confusion and depressed turnout, with consequent injury to their participation in the contests for the United States Senate, the Louisiana Supreme Court, BESE, the Public Service Commission, and the five constitutional amendments — even if those contests nominally remain on the ballot.

d.      Qualified candidates for the United States Senate who paid filing fees, conducted primary campaigns, and built voter turnout operations face suppressed turnout among voters confused by the federal-primary uncertainty, regardless of whether their own race is included in any suspension.

e.      Qualified candidates for the United States House of Representatives, including Plaintiff Lindsay Garcia and incumbent Congressman Cleo Fields of the Sixth Congressional District, face the loss of ballot access and the disenfranchisement of their constituents in mid-cycle and after voting has begun.

f.      Candidates for the Louisiana Supreme Court, BESE, and the Public Service Commission face the same suppressed turnout and the same disruption of their campaign-ground operations, even though their contests have nothing to do with the Callais decision and bear no relationship to congressional apportionment.

g.      Proponents and opponents of the five proposed amendments to the Louisiana Constitution, three of which require statewide majorities and two of which involve significant fiscal and structural reforms, face the prospect that turnout suppression on May 16, 2026 will distort the popular ratification process for amendments to the State's most fundamental charter.

h.      Parish registrars of voters, who must administer the May 16, 2026, election in all sixty-four (64) parishes, face administrative chaos, the inability to communicate consistent guidance to election workers, and the risk of administrative liability.

i.      Black voters in the Sixth Congressional District face the targeted disenfranchisement of the only contest on the ballot featuring the Black-preferred congressional incumbent of an invalidated majority-Black district — a sequence that supports a strong inference of intentional discrimination on the basis of race within the meaning of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, as construed in Callais.

**42.**      These harms are not speculative. They are imminent: early in-person voting commences on Saturday, May 2, 2026. They are irreparable: once an election day passes, no monetary remedy can restore the franchise. League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 247 (4th Cir. 2014). And they are concrete and particularized as to each Plaintiff. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

### *G. The Callais Judgment Is Not Yet Final.*

**43.**      The Supreme Court's judgment in Louisiana v. Callais, although announced on April 29, 2026, is not yet final in the operative sense. Pursuant to Supreme Court Rule 44.1, '[a]ny petition for the rehearing of any judgment or decision of the Court on the merits shall be filed within 25 days after entry of the judgment or decision, unless the Court or a Justice shortens or

extends the time.' The default 25-day rehearing window in Callais will close on or about May 24, 2026, eight (8) days after the May 16, 2026, election.

44.     Pursuant to Supreme Court Rule 45.3, applicable to appeals from federal courts (including the three-judge district court whose judgment was reviewed in Callais), 'a formal mandate does not issue unless specially directed; instead, the Clerk of this Court will send the clerk of the lower court a copy of the opinion or order of this Court and a certified copy of the judgment.' The final sentence of Rule 45.3 incorporates by reference the timing provisions of Rule 45.2, including the default 25-day waiting period and the principle that a timely petition for rehearing stays issuance of the certified judgment until disposition of the petition.

45.     Counsel for the Callais plaintiffs has moved the Supreme Court for expedited issuance of a certified judgment under Rule 45 to permit redrawing of Louisiana's congressional districts for the 2026 election cycle. According to public filings in that proceeding, Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, does not oppose that motion. The Court has not yet ruled on the motion. Until the Court grants the motion, or until the default 25-day period expires without a rehearing petition having been filed, no certified judgment will be transmitted to the Western District of Louisiana.

46.     Until the certified judgment is transmitted under Rule 45.3, the United States District Court for the Western District of Louisiana has no jurisdiction on remand to commence any remedial proceeding, no power to receive any draft remedial map from the Louisiana Legislature, and no authority to supervise the implementation of any new congressional districts. The congressional districts in effect on April 28, 2026, remain the only operative districts under which a federal congressional election in Louisiana can lawfully be conducted. There is no remedial map; there is no remedial proceeding; there is no court yet positioned to receive a remedial map; and there is, accordingly, no lawful predicate for the suspension Defendants have ordered.

## V. STANDING AND IMMINENCE

47.     Each Plaintiff has Article III standing. Plaintiff Lindsay Garcia, a qualified candidate for the U.S. House of Representatives in the Fifth Congressional District, faces imminent loss of ballot access and competitive injury, with sunk qualifying fees and campaign expenditures.

Plaintiff Eugene Collins, a voter, faces the imminent partial or complete voidance of his vote in the party primary set for May 16, 2026.

48.     The harm is not merely imminent; it is presently occurring. The Suspension Announcement set forth at Paragraphs 27–30 above, and Executive Order JML 26-038 set forth at Paragraphs 31–36 above are completed acts of state government that, by their express terms, are now in operative effect. Each Plaintiff faces concrete, particularized, and presently inflicted injury. Even if the Court were to view the harm in pre-enforcement terms, Plaintiffs satisfy the standing test of Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158–60 (2014), under which standing exists where plaintiffs allege 'an intention to engage in a course of conduct' that is constitutionally protected and 'there exists a credible threat of [adverse government action].' Id. at 159. Plaintiffs intend to vote in, and to remain candidates in, the May 16, 2026, and June 27, 2026 elections; the Executive Order is, at minimum, a credible threat of adverse government actionand, in fact, the very adverse government action itself.

49.     The threat is fairly traceable to Defendants' conduct and redressable by an order of this Court. Steffel v. Thompson, 415 U.S. 452, 459 (1974); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–29 (2007). An order enjoining Defendants from suspending the May 16 and June 27 elections would fully redress Plaintiffs' anticipated injuries.

## VI. CAUSES OF ACTION

### COUNT I

### 42 U.S.C. § 1983 — Fourteenth Amendment

*(Due Process and Equal Protection — Anderson-Burdick; Logan; Bush v. Gore)*

50.     Plaintiffs incorporate by reference all preceding paragraphs.

51.     The right to vote is fundamental. Reynolds v. Sims, 377 U.S. 533, 561–62 (1964). Once an election is underway, ballots already cast cannot be discarded without violating procedural due process. Logan, 455 U.S. at 433–34.

52.     Under Anderson v. Celebrezze, 460 U.S. 780, 789 (1983), and Burdick v. Takushi, 504 U.S. 428, 434 (1992), severe burdens on the right to vote trigger strict scrutiny. Total disenfranchisement of an already-cast absentee ballot, covering not only the U.S. House primary but the U.S. Senate primary, the Louisiana Supreme Court election, the BESE seat, the Public Service Commission seats, and five constitutional amendments, is the most severe burden imaginable. The State has no compelling interest sufficient to justify it.

53.     Treating identically situated voters differently, counting some early ballots and voiding others, or voiding the federal-primary portion of a ballot while counting the same elector's votes for state Supreme Court and constitutional amendments on the same ballot,  violates the equal-protection principles of Bush v. Gore, 531 U.S. at 104–05.

54.     Defendants' conduct, under color of state law, will deprive Plaintiffs of rights secured by the Fourteenth Amendment, in violation of 42 U.S.C. § 1983.

## COUNT II

### 42 U.S.C. § 1983 — First and Fourteenth Amendments

*(Associational Rights and Ballot Access)*

55.     Plaintiffs incorporate by reference all preceding paragraphs.

56.     The First and Fourteenth Amendments guarantee voters and candidates the right to political association and ballot access. Williams v. Rhodes, 393 U.S. 23, 30–31 (1968); Anderson, 460 U.S. at 786–88.

57.     Plaintiff Lindsay Garcia and similarly situated candidates for state Supreme Court, BESE, and the Public Service Commission qualified, paid filing fees, secured endorsements, and conducted campaigns in reliance upon the May 16, 2026, election date. Suspension of the election mid-cycle, without due process, severely burdens their associational and ballot-access rights, as well as the corresponding rights of voters who chose to support them.

58.     The State's asserted interest in re-mapping cannot justify the burden.

## COUNT III

### 42 U.S.C. § 1983 — Elections Clause

*U.S. Const. art. I, § 4, cl. 1; 2 U.S.C. §§ 1, 7*

59.     Plaintiffs incorporate by reference all preceding paragraphs.

60.     The Elections Clause vests authority to regulate the time, place, and manner of congressional elections in 'the Legislature' of each State. The Governor of Louisiana, acting unilaterally by executive order, is not 'the Legislature' for Elections Clause purposes. Smiley v. Holm, 285 U.S. 355, 365–67 (1932); Moore v. Harper, 600 U.S. 1, 26–37 (2023). Even action by the Legislature itself remains 'subject to the ordinary constraints of judicial review.' Moore, 600 U.S. at 36.

61.     Federal election timing is governed by 2 U.S.C. §§ 1 and 7, and by the principle of Foster v. Love, 522 U.S. 67 (1997), which the Supreme Court enforced against the State of Louisiana to invalidate a state-law mechanism that interfered with federal-election timing. The suspension of the U.S. House primaries, federal elections regulated by federal law, particularly violates these provisions. The Executive Order's own admission at its penultimate WHEREAS clause, that 2 U.S.C. § 7 governs the timing of federal congressional elections, is fatal: by accepting that 2 U.S.C. § 7 governs the November general election while purporting to suspend the primaries that produce candidates for that election, Defendants have done precisely what Foster forbids.

62.     Section 2 of the Executive Order itself confesses the constitutional defect. By 'encourag[ing]' the Legislature 'to pass legislation to enact new Congressional maps and schedule those elections as soon as practical,' the Executive Order admits that the authority to enact maps and schedule federal elections rests with 'the Legislature', not with the Governor. The Governor cannot 'encourage' the Legislature to act while simultaneously usurping the very authority he concedes belongs to that Legislature.

## COUNT IV

### Section 2 of the Voting Rights Act, 52 U.S.C. § 10301

*(Intentional Discrimination as Construed in Callais)*

63.     Plaintiffs incorporate by reference all preceding paragraphs.

64.     Section 2 of the Voting Rights Act, as construed by the Supreme Court in Louisiana v. Callais, 608 U.S. ___ (2026), continues to prohibit voting practices and procedures that result from intentional discrimination on the basis of race or color.

65.     On information and belief, the Suspension Announcement set forth at Paragraphs 27–30, the certification under La. R.S. § 18:401.1(B), and Executive Order JML 26-038 set forth at Paragraphs 31–36 are directed in particular at the only race on the May 16, 2026 ballot — and the only race on the June 27, 2026 ballot, involving the incumbent of the invalidated majority-Black Sixth Congressional District. The selectivity of the Executive Order is expressed on its face: Section 3 provides that '[n]o other race or proposition on the ballot for May 16, 2026, and June 27, 2026 shall be affected by this Order.' Suspending only the U.S. House primary while leaving in place the U.S. Senate primary, the Louisiana Supreme Court election, the BESE seat, the Public Service Commission contests, and the five constitutional amendments, on the same ballot, in the same election cycle, supports a strong inference of intentional discrimination on the basis of race within the meaning of Callais.

66.     The temporal sequence (the action taken only after Callais), the public statements of state officials, the racial composition of the affected district, and the differential treatment between contests on the same ballot all bear upon the totality-of-circumstances analysis Callais now requires.

## COUNT V

### 42 U.S.C. § 1983 — Fifteenth Amendment

67.     Plaintiffs incorporate by reference all preceding paragraphs.

68.     The Fifteenth Amendment provides that '[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.' U.S. Const. amend. XV, § 1. The selective suspension by the Executive Order, in its provenance, timing, and consequences, abridges the right of Black voters in Louisiana to vote on account of race within the meaning of the Fifteenth Amendment. The Fifteenth Amendment claim survives Callais unimpaired and indeed is reinforced by the

majority's reliance upon Section 1 of the Fifteenth Amendment as the constitutional anchor of voting-rights protection.

<div align="center">

**COUNT VI**

**Louisiana Constitution, Article I, §§ 3 and 10**

*(Pendent State Claim — Equal Protection and Right to Vote)*

</div>

**69.**     Plaintiffs incorporate by reference all preceding paragraphs.

**70.**     Article I, § 10 of the Louisiana Constitution guarantees that '[e]very citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote.' Article I, § 3 imposes a higher equal-protection floor than the federal minimum. Under Moore v. Harper, federal election regulation by state legislatures and executive officers remains subject to ordinary state constitutional review. The Executive Order exceeds any authority recognized by the Louisiana Constitution and violates the rights it secures.

## VII. CLASS ALLEGATIONS

**71.**     Plaintiffs Lindsay Garcia and Eugene Collins bring this action individually and as representatives of a putative class of all qualified Louisiana electors who were entitled to vote in the May 16, 2026 election, pursuant to Federal Rule of Civil Procedure 23(b)(2). The class is so numerous (approximately three million qualified electors statewide) that joinder is impracticable. Common questions of law and fact predominate. The claims of the named Plaintiffs are typical of those of the class. Counsel is competent to represent the class. Defendants have acted on grounds generally applicable to the class, making final injunctive relief appropriate respecting the class as a whole.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

  A. Convene a three-judge district court pursuant to 28 U.S.C. § 2284(a);

  B. Issue a Temporary Restraining Order, returnable at the earliest possible date, enjoining Defendants from giving any force or effect to Executive Order JML 26-038, to the certification of emergency under La. R.S. § 18:401.1(B) issued April 30, 2026, or to any

other suspension, postponement, or cancellation of the May 16, 2026 federal congressional primary election or the June 27, 2026 federal congressional second primary election or any portion thereof;

C. Order Defendants to proceed with the May 16, 2026 election in its entirety — including the United States Senate primary, the United States House primaries, the Louisiana Supreme Court election, the BESE election, the Public Service Commission contests, and the five proposed constitutional amendments — and to proceed with the June 27, 2026 second primary election in its entirety, all under the existing congressional districts pending entry of a remedial plan by the Western District of Louisiana on remand from Callais;

D. Order Defendants to count every absentee ballot already cast, and every absentee ballot timely received, including, without limitation, absentee ballots cast under La. R.S. § 18:1303 by elderly, disabled, hospitalized, student, and military voters, and ballots cast under the Uniformed and Overseas Citizens Absentee Voting Act, and to refrain from de-listing any qualified candidate in any contest on the May 16, 2026, or June 27, 2026 ballot;

E. Issue a preliminary and permanent injunction to the same effect;

F. Declare that Executive Order JML 26-038 and the certification of emergency under La. R.S. § 18:401.1(B) violate the First, Fourteenth, and Fifteenth Amendments to the United States Constitution; the Elections Clause, U.S. Const. art. I, § 4, cl. 1; 2 U.S.C. §§ 1 and 7; Section 2 of the Voting Rights Act, 52 U.S.C. § 10301; the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq.; and Article I, §§ 3 and 10 of the Louisiana Constitution;

G. Certify a class of qualified Louisiana electors under Federal Rule of Civil Procedure 23(b)(2);

H. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b) and 52 U.S.C. § 10310(e); and

I. Award such further and additional relief as this Court deems just and proper.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who respectfully move this Honorable Court for the entry of a Temporary Restraining Order, returnable at the earliest possible date, and a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, and aver:

1.      Plaintiffs filed their Verified Complaint, set forth above and incorporated by reference.

2.      Defendant Secretary of State Nancy Landry has publicly announced, on the verified official X account of the Louisiana Secretary of State, the suspension of the May 16, 2026 federal congressional primaries, and has certified an emergency under La. R.S. § 18:401.1(B). The full text of that announcement (the 'Suspension Announcement') is set forth at Paragraphs 27–30 of the Verified Complaint and is attached as Exhibit A. On the same date, April 30, 2026, Defendant Governor Jeff Landry signed and issued Executive Order JML 26-038 (the 'Executive Order'), formally suspending the closed party primaries for the offices of Representative in the United States Congress for the duration of both the May 16, 2026 and June 27, 2026 election cycles. The Executive Order is set forth at Paragraphs 31–36 of the Verified Complaint and is attached as

Exhibit B. The Executive Order is presently in operative effect and is being implemented by parish registrars and election officials throughout the State.

3.       Without immediate injunctive relief, Plaintiffs and approximately three million similarly situated Louisiana voters will be irreparably harmed across every contest and question on the May 16, 2026 and June 27, 2026 ballots. The harm extends to: voters who have already cast absentee ballots; qualified candidates for the United States Senate, the United States House of Representatives, the Louisiana Supreme Court, the Louisiana Board of Elementary and Secondary Education, and the Louisiana Public Service Commission; proponents and opponents of five proposed amendments to the Louisiana Constitution; and parish election officials in all sixty-four (64) parishes.

4.       Plaintiffs satisfy each element required for the issuance of a Temporary Restraining Order under Rule 65 and Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008).

5.       Pursuant to Federal Rule of Civil Procedure 65(b)(1)(B), undersigned counsel certifies that on April 30, 2026, counsel provided notice of the filing of this Motion to: (a) the Office of the Governor of Louisiana, by electronic mail and by telephone; (b) the Office of the Attorney General of Louisiana, by electronic mail and by telephone; and (c) the Office of the Secretary of State of Louisiana, by electronic mail and by telephone. In the alternative, if circumstances require an ex parte hearing, counsel certifies in good faith that giving advance notice would render the requested relief moot, given that early voting opens at 8:30 a.m. on Saturday, May 2, 2026, and any further delay would defeat the very right Plaintiffs seek to vindicate.

6.       No security under Rule 65(c) should be required. The relief sought is the vindication of fundamental constitutional rights against state officials acting in their official capacities. Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996); Pulliam v. Allen, 466 U.S. 522, 539 (1984).

7.       A proposed Order is set forth at Part Five of this filing.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court issue the requested Temporary Restraining Order forthwith, set this matter for preliminary-injunction hearing at the earliest practicable date, and grant such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

## MOTION TO CONVENE A THREE-JUDGE DISTRICT COURT PURSUANT TO 28 U.S.C. § 2284

NOW INTO COURT, through undersigned counsel, come Plaintiffs, who respectfully move this Honorable Court, pursuant to 28 U.S.C. § 2284, for an order: (1) determining that this action requires a three-judge district court; and (2) directing the Clerk of Court to immediately notify the Chief Judge of the United States Court of Appeals for the Fifth Circuit, who shall designate two additional judges, at least one of whom shall be a circuit judge, to hear and determine this action together with the assigned district judge. In support, Plaintiffs aver:

1.      The Verified Complaint asserts claims under the First, Fourteenth, and Fifteenth Amendments; the Elections Clause; 2 U.S.C. §§ 1 and 7; and Section 2 of the Voting Rights Act.

2.      The action implicates the apportionment of Louisiana's congressional districts within the meaning of 28 U.S.C. § 2284(a). Executive Order JML 26-038 is causally and substantively connected to the apportionment scheme invalidated by the Supreme Court in Louisiana v. Callais, 608 U.S. ___ (2026), and the relief sought directly affects the conduct of federal elections under the existing congressional-district plan.

3.      Under Shapiro v. McManus, 577 U.S. 39, 44–46 (2015), a single district judge faced with a constitutional challenge governed by § 2284 must convene a three-judge court unless

the claim is 'wholly insubstantial and frivolous.' Plaintiffs' claims, predicated upon binding Supreme Court precedent and a verified factual record, are plainly substantial.

    **4.**      A proposed Order is set forth at Part Five of this filing.

     WHEREFORE, Plaintiffs respectfully pray that this Honorable Court grant the Motion, determine that a three-judge district court is required by 28 U.S.C. § 2284, and immediately notify the Chief Judge of the Fifth Circuit pursuant to § 2284(b)(1).

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

**<u>MEMORANDUM IN SUPPORT</u>**

**<u>I. INTRODUCTION</u>**

This Court is asked to do something simple: stop a state from canceling an election that is already underway. Thousands of absentee ballots have been mailed to Louisiana voters, including elderly, disabled, hospitalized, and student voters, as well as active-duty military servicemembers stationed at home and overseas. A material number has been returned and cast. Early in-person voting begins at 8:30 a.m. Saturday, May 2, 2026. Qualifying for every contest on the ballot closed in February 2026. The Supreme Court's decision in Louisiana v. Callais, 608 U.S. ___ (2026), did not order the May 16 election canceled — and did not authorize it. The judgment in Callais is not yet even final under Supreme Court Rule 44.1; the certified judgment has not been transmitted to the Western District of Louisiana under Rule 45.3.

Yet on April 30, 2026, Defendant Secretary of State Nancy Landry posted to her verified official X account a published declaration that the U.S. House primaries are 'SUSPENDED' and a separate statement representing that she had, pursuant to La. R.S. § 18:401.1(B), 'certified the emergency in light of the Supreme Court ruling.' Within hours, on the same day, Defendant Governor Jeff Landry executed and issued Executive Order JML 26-038, formally suspending not one but two scheduled federal congressional primaries: the May 16, 2026, closed party primary and the June 27, 2026, closed second primary, for an open-ended duration that depends upon

prospective and uncertain action by the Louisiana Legislature. Parish registrars across the State have been put on notice that, when their doors open Saturday morning, the U.S. House contests are off the ballot, even though absentee ballots already in their custody bear those very contests.

The May 16, 2026, ballot is comprehensive. It contains the United States Senate primary, the United States House primaries, the Louisiana Supreme Court election, a seat on the Louisiana Board of Elementary and Secondary Education, two seats on the Louisiana Public Service Commission, and five proposed amendments to the Louisiana Constitution. Executive Order JML 26-038 threatens cascading harm across every one of these contests.

The Executive Order violates the Due Process Clause, the Equal Protection Clause, the First and Fourteenth Amendments' associational guarantees, the Elections Clause, the federal election-timing statutes, Section 2 of the Voting Rights Act as construed by Callais, the Fifteenth Amendment, and the Louisiana Constitution. Plaintiffs ask that the May 16 and June 27, 2026, elections proceed as scheduled, with all already-cast absentee ballots counted, pending entry of a remedial congressional plan by the Western District of Louisiana on remand from Callais.

## II. STANDING AND IMMINENCE

Plaintiffs satisfy the three elements of Article III standing: injury in fact, traceability, and redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Plaintiff Garcia, a qualified candidate for the U.S. House Fifth Congressional District Democratic Primary, faces imminent loss of ballot access and the loss of campaign expenditures already sunk; Plaintiff Collins, an early absentee voter, faces the imminent voiding of an already-cast ballot.

The standing analysis is unusually straightforward because the harm is no longer prospective; it has been fully consummated. Executive Order JML 26-038 was signed by Defendant Governor Landry on April 30, 2026, and is in operative effect, suspending the closed party primaries for U.S. House for the May 16, 2026, and June 27, 2026 election cycles. The Secretary of State's certification of emergency under La. R.S. § 18:401.1(B), publicly announced on her verified official X account, is the predicate for the Executive Order. Plaintiffs do not seek pre-enforcement relief in the abstract; they challenge a final, signed, sealed, and in effect executive directive. Even were the Court to view this case in pre-enforcement terms, however, Plaintiffs comfortably satisfy Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158–60 (2014): they intend

to vote in, and to remain candidates in, the May 16 and June 27 elections; the Executive Order is a credible threat of adverse government action, and indeed, the very adverse government action itself.

Tweets and executive orders from elected officials acting in their official capacities constitute official action for many constitutional purposes. See Knight First Amendment Institute v. Trump, 928 F.3d 226 (2d Cir. 2019), vacated and remanded on mootness grounds, 141 S. Ct. 1220 (2021); Lindke v. Freed, 601 U.S. 187 (2024). They suffice to support pre-enforcement injunctive relief. Steffel v. Thompson, 415 U.S. 452, 459 (1974); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128–29 (2007).

## III. STANDARD OF REVIEW

A movant for a temporary restraining order or preliminary injunction must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest. Winter, 555 U.S. at 20; Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011).

In civil-rights actions of constitutional dimension, the Fifth Circuit has long recognized that the four factors collapse into one another: where constitutional rights are at stake, irreparable harm is presumed, the equities tilt sharply toward the plaintiff, and the public interest favors enforcement of constitutional limits. Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality op.); Opulent Life Church v. City of Holly Springs, 697 F.3d 279, 295 (5th Cir. 2012).

## IV. ARGUMENT

### A. Plaintiffs Are Substantially Likely to Succeed on the Merits.

Plaintiffs assert six independent claims. Success on any one suffices.

1. Fourteenth Amendment Due Process and Equal Protection. Once an election is underway, the State cannot retroactively void cast ballots without violating procedural due process. Logan, 455 U.S. at 433–34. The right to vote is fundamental, Reynolds v. Sims, 377 U.S. 533, 561–62 (1964), and severe burdens on it trigger strict scrutiny under Anderson-Burdick. The

Executive Order would void portions of absentee ballots already cast, ballots that include votes for the United States Senate, the Louisiana Supreme Court, BESE, the Public Service Commission, and five constitutional amendments, and would do so on the basis of race-correlated geography and the racial composition of the only district where the Black-preferred congressional incumbent is running.

Treating identically situated voters differently, counting some early ballots and voiding others, or counting the constitutional-amendment portion of a ballot while voiding the federal-primary portion of the same ballot, is the precise equal-protection violation condemned in Bush v. Gore, 531 U.S. at 104–05.

2. First and Fourteenth Amendment Associational Rights. Plaintiff Lindsay Garcia, a candidate for the U.S. House Fifth Congressional District Democratic Party Primary, and similarly situated candidates for the Louisiana Supreme Court, BESE, and the Public Service Commission, qualified, paid filing fees, and conducted campaigns in reliance on the May 16 election. Mid-cycle suspension severely burdens their ballot-access rights and the corresponding rights of voters. Williams v. Rhodes, 393 U.S. 23, 30–31 (1968); Anderson, 460 U.S. at 786–88.

3. Elections Clause, Federal Election Timing, and Preemption of La. R.S. § 18:401.1. The Elections Clause vests authority in 'the Legislature' of each State. The Governor, acting alone by executive order, is not 'the Legislature.' Smiley v. Holm, 285 U.S. 355, 365–67 (1932). Even legislative action remains 'subject to the ordinary constraints of judicial review.' Moore v. Harper, 600 U.S. 1, 36 (2023). Federal election timing is governed by 2 U.S.C. §§ 1 and 7 and by Foster v. Love, 522 U.S. 67 (1997). Foster — itself a Louisiana case — held that federal law preempts state arrangements that interfere with federal-election timing. The U.S. Senate primary on May 16 is a federal election; the U.S. House primaries are federal elections; an executive order from the Governor cannot suspend any of them.

Defendant Secretary of State invokes La. R.S. § 18:401.1(B), the state-law 'emergency' provision, as the source of authority for the certification that purports to authorize the Governor's executive order. To the extent La. R.S. § 18:401.1 is construed to permit a state executive officer to suspend a federal congressional election, the statute is preempted as applied. The Supremacy

Clause and Foster make clear that a state statute cannot override the federal election-timing rules of 2 U.S.C. §§ 1 and 7. Nor can a state statute authorize the violation of constitutional rights.

The Executive Order's own admission defeats it. The penultimate WHEREAS clause of Executive Order JML 26-038 expressly recites that 'nothing in this Order alters the date fixed by Congress for the election of United States Representatives pursuant to 2 U.S.C. § 7, and the congressional election identified herein shall be held on the date prescribed by federal law.' That admission is fatal. Foster holds that 2 U.S.C. § 7 governs not only the date of the November general election but also the timing of any state-law process integral to the selection of United States Representatives. A primary that determines who appears on the November general-election ballot is integral to that selection. By admitting that 2 U.S.C. § 7 governs the November election, and then purporting to cancel the primaries that produce candidates for that election, the Executive Order works precisely the kind of state-law derailment of federal-election timing that Foster forbids. The State cannot accept federal preemption of the November date and reject federal preemption of the May and June primary dates that feed it; the two are inseparable. The Executive Order is preempted on its own admitted terms.

Section 2 of Executive Order JML 26-038 'encourages' the Louisiana Legislature to pass legislation to enact new Congressional maps and schedule those elections as soon as practical, including laws governing qualification of candidates, in order to conduct the November 3, 2026, election.' That language is itself a confession that the authority to enact maps and schedule federal elections rests with the Legislature, not with the Governor. Yet the same Executive Order has, in Section 1, already exercised that legislative authority unilaterally by suspending two scheduled federal congressional primary cycles. The Governor cannot 'encourage' the Legislature to act while simultaneously usurping the very authority he concedes belongs to that Legislature. The Executive Order is ultra vires.

4. Section 2 of the Voting Rights Act. Section 2, as construed in Callais, continues to prohibit voting practices that result from intentional racial discrimination. The Executive Order, in its express terms, suspends only the U.S. House primary while leaving every other contest on the ballot — including the U.S. Senate primary, the Louisiana Supreme Court election, the BESE seat, the PSC contests, and the five constitutional amendments, intact. That selectivity is on the face of Section 3 of the Order. The temporal sequence (suspension issued only after Callais), the

racial composition of the affected District, and the differential treatment of contests on the same ballot all support the strong inference of intentional discrimination that Callais requires.

5. Fifteenth Amendment. The Fifteenth Amendment forbids abridgment of the right to vote on account of race. Selective targeting of contests in which Black voters and Black-preferred candidates participate constitutes such an abridgment. The Fifteenth Amendment claim survives Callais unimpaired.

6. Louisiana Constitution. Louisiana Constitution Article I, § 10 guarantees the right to register and vote, and Article I, § 3 imposes a higher equal-protection floor than the federal minimum. Moore v. Harper preserves ordinary state-constitutional review of federal-election regulations. 600 U.S. at 36.

### B. The Callais Judgment Is Not Yet Final and Cannot Support the Cancellation.

The State's premise is that the Supreme Court's decision in Louisiana v. Callais requires the May 16, 2026, election to be canceled. The premise is wrong because the Callais judgment is not yet final in any operative sense.

Supreme Court Rule 44.1 provides that '[a]ny petition for the rehearing of any judgment or decision of the Court on the merits shall be filed within 25 days after entry of the judgment or decision, unless the Court or a Justice shortens or extends the time.' By default, that window in Callais will close on or about May 24, 2026, which is eight days after the May 16 election.

Supreme Court Rule 45.3, governing appeals from federal courts (including the three-judge district court below), provides that no formal mandate issues unless specially directed; instead, 'the Clerk of this Court will send the clerk of the lower court a copy of the opinion or order of this Court and a certified copy of the judgment.' The final sentence of Rule 45.3 incorporates by reference the timing provisions of Rule 45.2, which provides that the mandate issues '25 days after entry of the judgment, unless the Court or a Justice shortens or extends the time' and that 'the filing of a petition for rehearing stays the mandate until disposition of the petition, unless the Court orders otherwise.'

The practical consequence is decisive. Until the Supreme Court transmits the certified judgment to the Western District of Louisiana under Rule 45.3, that court has no jurisdiction on

remand to commence any remedial proceeding. No court is positioned to receive a draft remedial map from the Louisiana Legislature. No remedial map exists. No operative substitute exists for the existing congressional districts.

The Callais plaintiffs themselves have moved the Supreme Court for expedited issuance of the certified judgment. The Supreme Court has not yet ruled on the expedition motion.

The State, in short, has no lawful predicate for the cancellation it has ordered. It cannot conduct a primary under a remedial map that does not yet exist, in a remedial proceeding that has not yet begun, before a court that does not yet have jurisdiction. The lawful course is the obvious one: proceed with the May 16, 2026, election under the existing districts; permit the Western District of Louisiana, upon transmittal of the certified judgment, to commence remedial proceedings on remand; and adopt a remedial congressional map for the November 3, 2026, general election.

## C. Plaintiffs Will Suffer Irreparable Harm Across Every Contest on the Ballot.

'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' Elrod, 427 U.S. at 373. The same principle applies to the right to vote and to ballot access. Once election day passes, no monetary remedy can restore the franchise. League of Women Voters of N.C., 769 F.3d at 247.

The cascade of irreparable harm extends to every contest and question on the May 16, 2026 ballot:

- United States Senate Primary. A federal election under Foster v. Love and 2 U.S.C. §§ 1 and 7. Suspension by executive order is unlawful in itself, and any partial suspension that suppresses Senate-primary turnout independently injures the Senate candidates and their supporters.

- United States House Primary. The contest most directly implicated by the Callais ruling. Ballot access is destroyed for qualified candidates, including Plaintiff Garcia; representational continuity is destroyed for Louisiana voters.

- Louisiana Supreme Court. A contest entirely unrelated to congressional apportionment. Voters were entitled to elect their own state Supreme Court justice on May 16; turnout suppression and voter confusion will distort that contest.

- Board of Elementary and Secondary Education. The single statewide BESE contest on the ballot. Education is among the most important state-level concerns; Louisiana voters are entitled to select their representative free of federal-cancellation chaos.

- Public Service Commission. Two seats. Utility regulation in Louisiana is among the most consequential state functions. Mid-election disruption distorts that selection.

- Five Proposed Constitutional Amendments. Amendments to the State's most fundamental charter. Voter turnout determines ratification. The Executive Order suppresses turnout statewide and corrupts the ratification process for amendments that, in some cases, require statewide majorities.

- Already-Cast Absentee Ballots: Thousands of ballots have been mailed statewide. Pursuant to La. R.S. § 18:1303, more than one hundred thousand absentee-by-mail ballots have been mailed to qualified Louisiana electors — including voters age 65 and over, hospitalized voters, disabled voters, students at out-of-state institutions, and active-duty military servicemembers stationed in the United States and abroad under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq. A material number of those ballots have been completed and returned. Each ballot is a single sealed instrument bearing every contest on the May 16 ballot. Severing the U.S. House race from those ballots — counting some races but not others on the same physical instrument — is operationally impossible without disenfranchising the elector as to every other contest, and is constitutionally impossible under Logan v. Zimmerman Brush Co., Bush v. Gore, and (as to military and overseas voters) UOCAVA.

- Black Voters in the Sixth Congressional District. Targeted disenfranchisement of the only contest on the ballot featuring the Black-preferred congressional incumbent of the invalidated majority-Black district — a sequence supporting the strong inference of intentional discrimination required by Callais.

- Election Administration in 64 Parishes. Parish registrars must administer the May 16 election. They cannot do so coherently when the Governor's executive order contradicts the published election calendar and absentee ballots already in their custody bear contests that the Order has now suspended.

## D. The Balance of Equities Favors Plaintiffs.

The State's asserted administrative interest is to draw a new congressional map. That interest can be satisfied for the November 3, 2026 general election, more than six months away. Plaintiffs' interest is constitutional — the right to vote, the right to have already-cast ballots counted, and the right to remain on the ballot. There is no equity in canceling an election that is already underway when the cancellation is unnecessary to vindicate any state interest.

## E. The Public Interest Strongly Favors an Injunction.

'It is always in the public interest to prevent the violation of a party's constitutional rights.' Awad v. Ziriax, 670 F.3d 1111, 1132 (10th Cir. 2012). Public confidence in elections requires predictability, statutory grounding, and judicial review of unilateral executive action. An executive order canceling a federal election is the antithesis of orderly election administration.

## F. The Purcell Principle Cuts Against Defendants, Not Plaintiffs.

Defendants will surely invoke Purcell v. Gonzalez, 549 U.S. 1 (2006), to argue that this Court should refrain from intervening close to an election. That argument inverts Purcell. The Purcell principle counsels against judicial alteration of established election rules on the eve of an election. Here, the Court is not being asked to alter the rules — it is being asked to preserve them. It is the State that has changed the rules mid-election, by executive order. An injunction restoring the status quo ante is the precise remedy Purcell contemplates.

## G. A Three-Judge District Court Is Required.

Title 28, United States Code, section 2284(a) requires a three-judge court when an action is filed 'challenging the constitutionality of the apportionment of congressional districts.' Under Shapiro v. McManus, 577 U.S. 39, 44–46 (2015), the assigned judge has only a narrow gatekeeping role and must convene the panel unless the claim is 'wholly insubstantial and frivolous.' This action is causally and substantively connected to the congressional apportionment

invalidated in Callais; the relief sought directly governs the conduct of federal elections under the existing apportionment; and the claims are plainly substantial. Shapiro requires immediate referral to the Chief Judge of the Fifth Circuit. The single district judge to whom this case is assigned retains, however, the authority to grant emergency injunctive relief pending the panel's convocation. 28 U.S.C. § 2284(b)(3).

### H. No Bond Should Be Required.

Federal Rule of Civil Procedure 65(c) commits the bond determination to the sound discretion of the district court. Kaepa, 76 F.3d at 628. Where the action vindicates fundamental constitutional rights against state officials in their official capacities, courts routinely waive bond. Pulliam, 466 U.S. at 539; Corrigan Dispatch Co. v. Casa Guzman, S.A., 569 F.2d 300, 303 (5th Cir. 1978). The State faces no monetary risk from an order requiring it to conduct an election it had already scheduled and budgeted for.

## V. CONCLUSION

The Supreme Court did not order this election canceled. The judgment in Callais is not even final yet, as Supreme Court Rule 44.1 gives parties 25 days to seek rehearing, and Rule 45.3 conditions the transmission of the certified judgment on the expiration of that window or its earlier abridgment by the Court. Until the certified judgment issues, the Western District of Louisiana has no jurisdiction on remand, no remedial proceeding is pending, and no remedial map exists. The State nonetheless has canceled the May 16, 2026, federal congressional primary on its own, by Secretary-of-State certification and gubernatorial executive order, mid-election, after voting began, with over 100,000 absentee ballots already in the field and a material number already cast, and has extended the cancellation to the June 27, 2026, second primary as well. Plaintiffs respectfully request that this Court enter the proposed Temporary Restraining Order forthwith, convene a three-judge district court under 28 U.S.C. § 2284, set a preliminary-injunction hearing at the earliest available date, and order that the May 16, 2026, and June 27, 2026, elections proceed as scheduled in their entirety.

100,000 absentee ballots have been mailed to Louisiana voters, including elderly, disabled, hospitalized, and student voters.

<div style="margin-left:40%;">

RESPECTFULLY SUBMITTED,

*/s/ Jamar Lanier Ennis*
JAMAR LANIER ENNIS
La. Bar Roll #37455
**Ennis Law Firm, LLC**
412 N. 4th Street, Suite 102
Baton Rouge, Louisiana 70801
Phone: (225) 400-6600
Fax: (225) 308-2053

</div>

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

## PROPOSED ORDER ON TEMPORARY RESTRAINING ORDER

Considering Plaintiffs' Verified Complaint, Emergency Motion for Temporary Restraining Order and Preliminary Injunction, and supporting memorandum, and the record before the Court;

The Court FINDS that Plaintiffs have established each element required for issuance of a temporary restraining order under Federal Rule of Civil Procedure 65 and Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008): (1) Plaintiffs have shown a substantial likelihood of success on the merits of their claims under the First, Fourteenth, and Fifteenth Amendments; the Elections Clause; 2 U.S.C. §§ 1 and 7; Section 2 of the Voting Rights Act, 52 U.S.C. § 10301; and the Louisiana Constitution; (2) Plaintiffs face a substantial threat of irreparable harm absent immediate injunctive relief; (3) the threatened harm to Plaintiffs substantially outweighs any harm an injunction may cause Defendants; and (4) entry of this Order is in the public interest;

**IT IS THEREFORE ORDERED that:**

1. Defendants Jeff Landry, Elizabeth B. Murrill, and Nancy Landry, each in their official capacities, together with their respective officers, agents, servants, employees, attorneys, and any persons in active concert or participation with them who receive actual notice of this Order, are

hereby ENJOINED and RESTRAINED from giving any force or effect to any suspension, postponement, or cancellation of the May 16, 2026 federal congressional primary election or the June 27, 2026 federal congressional second primary election, or any portion thereof, including but not limited to: (a) Executive Order JML 26-038, signed by Defendant Jeff Landry on April 30, 2026, and attested by Defendant Nancy Landry, in its entirety; (b) the certification of emergency under La. R.S. § 18:401.1(B) issued by Defendant Nancy Landry on April 30, 2026; (c) any social-media publication, agency directive, parish-level guidance, or other pronouncement purporting to communicate the suspension of any contest on the May 16, 2026 or June 27, 2026 ballot to election officials or to the public; and (d) any modification of ballot styles, electronic voting machines, paper ballots, or absentee ballots that would remove the United States House of Representatives primary from any portion of the May 16, 2026 or June 27, 2026 election;

2. Defendants are FURTHER ORDERED to proceed with the May 16, 2026 election in its entirety — including the United States Senate primary, the United States House primaries, the Louisiana Supreme Court election, the Louisiana Board of Elementary and Secondary Education election, the Louisiana Public Service Commission contests, and the five proposed amendments to the Louisiana Constitution — and to proceed with the June 27, 2026 second primary election in its entirety — including any United States House of Representatives second primary contests required by the results of the May 16, 2026 primary — all under the congressional districts in effect as of April 28, 2026, pending entry of a remedial congressional plan by the United States District Court for the Western District of Louisiana on remand from Louisiana v. Callais, 608 U.S. ___ (2026);

3. Defendants are FURTHER ORDERED to count, in accordance with Louisiana law, every absentee ballot already cast and every absentee ballot timely received between the date of this Order and the close of polls on May 16, 2026, including without limitation the in excess of one hundred thousand (100,000) absentee ballots issued under La. R.S. § 18:1303 to elderly, disabled, hospitalized, student, and military voters, and including all ballots cast under the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq., as to every contest on the May 16, 2026 ballot, including the United States House of Representatives primary;

4. Defendants are FURTHER ORDERED to refrain from de-listing any qualified candidate, refunding any qualifying fee in lieu of ballot placement, or taking any other action

inconsistent with the conduct of the May 16, 2026 or June 27, 2026 elections under the existing election calendar;

5. Defendants are FURTHER ORDERED to issue, within twenty-four (24) hours of entry of this Order, public guidance to all parish registrars of voters and to all clerks of court confirming that the May 16, 2026 election will proceed as previously scheduled in its entirety, and to publish such guidance on the official website of the Louisiana Department of State;

6. No security shall be required of Plaintiffs under Federal Rule of Civil Procedure 65(c);

7. This Order shall remain in full force and effect until _____, or until further order of this Court following the preliminary-injunction hearing scheduled below;

8. A hearing on Plaintiffs' Motion for Preliminary Injunction is hereby SET for [DATE], at [TIME], in Courtroom ____.


This Order is entered this ____ day of _____, 2026, at _____ o'clock ____.m.


_____

**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

Lindsay Garcia, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on behalf of
of all others similarly situated;
and Eugene Collins, a qualified voter
v.

JEFF LANDRY, in his official capacity as Governor
of the State of Louisiana; ELIZABETH B. MURRILL,
in her official capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her official
capacity as Secretary of State of the State of Louisiana.

## PROPOSED ORDER CONVENING THREE-JUDGE DISTRICT COURT

Considering Plaintiffs' Motion to Convene a Three-Judge District Court Pursuant to 28 U.S.C. § 2284 and the Verified Complaint;

The Court FINDS that this action challenges conduct directly connected to the apportionment of Louisiana's congressional districts within the meaning of 28 U.S.C. § 2284(a); that the constitutional claims presented are not 'wholly insubstantial and frivolous' within the meaning of Shapiro v. McManus, 577 U.S. 39, 44–46 (2015); and that the action accordingly requires a three-judge district court.

**IT IS THEREFORE ORDERED that:**

1. The Clerk of Court is DIRECTED to immediately notify the Chief Judge of the United States Court of Appeals for the Fifth Circuit, pursuant to 28 U.S.C. § 2284(b)(1), of the filing of this action and of the requirement that a three-judge district court be convened;

2. The Chief Judge of the Fifth Circuit is respectfully requested to designate, on an expedited basis, two additional judges, at least one of whom shall be a circuit judge, to hear and determine this action together with the assigned district judge;

3. Pending the convocation of the three-judge district court, the assigned district judge retains authority under 28 U.S.C. § 2284(b)(3) to conduct all proceedings except trial of the action and to enter all interlocutory orders, including orders granting temporary or preliminary injunctive relief.

This Order is entered this _____ day of _____, 2026.


_____

**UNITED STATES DISTRICT JUDGE**

**VERIFICATION**

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared LINDSAY GARCIA, a person of the full age of majority, who, after being duly sworn, did depose and state:

That I am a Plaintiff in the foregoing action; that I have read the foregoing Verified Complaint, Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Motion to Convene a Three-Judge District Court, and Memorandum in Support; that the factual allegations made on personal knowledge are true and correct to the best of my knowledge, information, and belief; and that those alleged on information and belief I believe to be true.

_____/s/*Lindsay Garcia*_____

**LINDSAY GARCIA**

Sworn to and subscribed before me this _30___ day of April, 2026.

_____

Notary Public

Bar Roll / Notary No. _____

My commission is for life / expires: _____

**VERIFICATION**

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned authority, personally came and appeared EUGENE COLLINS, a person of the full age of majority, who, after being duly sworn, did depose and state:

That I am a Plaintiff in the foregoing action; that I have read the foregoing Verified Complaint, Emergency Motion for Temporary Restraining Order and Preliminary Injunction, Motion to Convene a Three-Judge District Court, and Memorandum in Support; that the factual allegations made on personal knowledge are true and correct to the best of my knowledge, information, and belief; and that those alleged on information and belief I believe to be true.

__/s/*Eugene Collins*_____

**EUGENE COLLINS**

Sworn to and subscribed before me this __30__ day of April, 2026.

_____

Notary Public

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _30___ day of April, 2026, a copy of the foregoing was served upon all counsel of record by the Court's CM/ECF system, and additionally, in light of the emergency nature of the relief sought, by electronic mail and hand delivery upon: the Office of the Governor of Louisiana, Attn: Executive Counsel; the Louisiana Department of Justice, Office of the Attorney General, Attn: Solicitor General; and the Louisiana Department of State, Attn: General Counsel.

_____/s/Jamar Lanier Ennis_____

**EXHIBIT INDEX**

Exhibit A — True and correct screenshots of the Suspension Announcement issued by Defendant Nancy Landry, in her official capacity as Secretary of State of Louisiana, on the social-media platform X, from the verified official account of the Louisiana Secretary of State, on April 30, 2026, referenced and quoted at Paragraphs 27–30 of the Verified Complaint. The screenshots include (i) the published declaration that 'LOUISIANA U.S. HOUSE OF REPRESENTATIVES RACES SUSPENDED — Early Voting Begins Saturday For All Other Races,' accompanied by the embossed image of the Louisiana Secretary of State's official seal; and (ii) the immediately following statement quoting Secretary Landry that, 'Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races.'

Exhibit B — True and correct copy of Executive Order Number JML 26-038, titled 'STATE OF EMERGENCY — SUSPENSION OF CLOSED PARTY PRIMARY ELECTIONS FOR THE OFFICES OF REPRESENTATIVE IN THE UNITED STATES CONGRESS,' signed by Defendant Jeff Landry, in his official capacity as Governor of the State of Louisiana, on April 30, 2026, attested by Defendant Nancy Landry, in her official capacity as Secretary of State, bearing the Great Seal of Louisiana, and effective by its terms from April 30, 2026 through May 30, 2026. Referenced and quoted at Paragraphs 31–36 of the Verified Complaint.

Case 3:24-cv-00122-DCJ-CES-RRS    Document 263-1    Filed 05/01/26    Page 47 of 50



**Louisiana Secretary of State** ✔ · 12m                          X

🧵  Statement from Louisiana Secretary of State Nancy Landry:

LOUISIANA U.S. HOUSE OF REPRESENTATIVES RACES SUSPENDED
Early Voting Begins Saturday For All Other Races



Statement from Secretary of State
Nancy Landry

💬 2          ↺ 8          ♡ 5          ‖‖ 844          🔖    ⬆

**Show this thread**



**Louisiana Secretary of State** ✔ · 12m                    ⌀   ⋯
"Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races," Secretary Landry said.



**EXECUTIVE DEPARTMENT**
**OFFICE OF THE GOVERNOR**
**EXECUTIVE ORDER NUMBER JML 26-038**

---

## *STATE OF EMERGENCY -*
## *SUSPENSION OF CLOSED PARTY PRIMARY ELECTIONS FOR*
## *THE OFFICES OF REPRESENTATIVE IN THE UNITED STATES*
## *CONGRESS*

---

**WHEREAS,** the State of Louisiana currently has a Party Primary and Municipal Primary Election scheduled to be held on May 16, 2026 for various offices, including the offices of U.S. Representative, Congressional Districts 1 through 6;

**WHEREAS,** the early voting period for the May 16, 2026 Party Primary and Municipal Primary Election is scheduled to begin on Saturday, May 2, 2026, at 8:30 a.m. and end on Saturday, May 9, 2026, at 6:00 p.m. (excluding Sunday, May 3, 2026);

**WHEREAS,** the Second Party Primary and Municipal General Election is scheduled to be held on June 27, 2026;

**WHEREAS,** the early voting period for the June 27, 2026 Second Party Primary and Municipal General Election is scheduled to begin on Friday, June 12, 2026, at 8:30 a.m. and end on Saturday, June 20, 2026, at 6:00 p.m. (excluding Sunday, June 14, 2026 and Friday, June 19, 2026);

**WHEREAS,** the Congressional General and Open Primary Election is scheduled to be held on November 3, 2026;

**WHEREAS,** on April 29, 2026, the United States Supreme Court issued its decision in *Louisiana v. Callais, et al.*, No 24-109;

**WHEREAS,** in the case of *Louisiana v. Callais et al.*, plaintiffs challenged Louisiana's map of Congressional districts for the United States House of Representatives, as enacted by SB 8 of the 2024 First Extraordinary Session of the Louisiana Legislature, challenging the map as an unconstitutional gerrymander;

**WHEREAS,** the United States Supreme Court held that the map is an unconstitutional gerrymander, and its use would violate the plaintiffs' constitutional rights;

**WHEREAS,** the *Louisiana v. Callais et al.* decision effectively revives a district court injunction barring Louisiana from conducting any congressional elections under SB 8 of the 2024 First Extraordinary Session of the Louisiana Legislature;

**WHEREAS,** R.S. 18:401.1(A) provides a process, "to ensure maximum citizen participation in the electoral process and provide a safe and orderly procedure for persons seeking to qualify or exercise their right to vote, to minimize to whatever degree possible a person's exposure to danger during declared states of emergency, and to protect the integrity of the electoral process";

**WHEREAS,** R.S. 18:401.1(B) provides, in pertinent part, "[t]he governor may, upon issuance of an executive order declaring a state of emergency or impending emergency, suspend or delay any qualifying of candidates, early voting, or elections. The governor shall take such action only upon the certification of the secretary of state that a state of emergency exists";

**WHEREAS,** on April 30, 2026, the Secretary of State certified to the Governor that a state of emergency exists that would affect the electoral process, pursuant to R.S. 18:401.1;

**WHEREAS,** as Governor, I concur that an emergency exists, as electing members to Congress under an unconstitutional map flies in the face of the United States Constitution and subjects Louisiana voters to representatives that are impermissibly elected as determined by the United States Supreme Court, in a 6-3 decision;

**WHEREAS,** nothing in this Order alters the date fixed by Congress for the election of United States Representatives pursuant to 2 U.S.C. § 7, and the congressional election identified herein shall be held on the date prescribed by federal law; this Order affects only the closed party primaries scheduled for May 16, 2026 and June 27, 2026 for those offices.

**NOW THEREFORE, I, JEFF LANDRY,** Governor of the State of Louisiana, by virtue of the authority vested by the Constitution and laws of the State of Louisiana, order and direct as follows:

Section 1:    Due to the election emergency of unconstitutional maps as determined by the United States Supreme Court in *Louisiana v. Callais et al.*, the closed party primary elections for the offices of representative in the United States Congress are hereby suspended for the duration of the May 16, 2026 and June 27, 2026 election cycles and until July 15, 2026 or until such time as determined by the Legislature.

Section 2:    The Legislature is hereby encouraged to pass legislation to enact new Congressional maps and schedule those elections as soon as practical, including laws governing qualification of candidates, in order to conduct the November 3, 2026 election.

Section 3:    No other race or proposition on the ballot for May 16, 2026 and June 27, 2026 shall be affected by this Order.

2

Section 4:    This Order is effective upon signature and shall remain in effect from

Thursday, April 30, 2026, until Saturday, May 30, 2026, unless amended, modified, terminated,

or rescinded earlier by the Governor, or terminated by operation of law.



**IN WITNESS WHEREOF,** I have set my hand officially and caused to be affixed the Great Seal of Louisiana in the City of Baton Rouge, on this 30th day of April 2026.

Jeff Landry
**GOVERNOR OF LOUISIANA**

**ATTEST BY THE**
**SECRETARY OF STATE**

Nancy Landry
**SECRETARY OF STATE**

3