# EXHIBIT 2

**NINETEENTH JUDICIAL DISTRICT COURT**
**PARISH OF EAST BATON ROUGE**
**STATE OF LOUISIANA**

|  |  |
|---|---|
| Ambrose Sims, Jr., Joyce Davis Sims, Phyllis V. Mercadel, Louisiana State Conference of the National Association for the Advancement of Colored People, League of Women Voters of Louisiana, League of Women Voters of Louisiana Education Fund, and Power Coalition for Equity and Justice, <br><br> *Plaintiffs*, <br><br> vs. <br><br> Jeff Landry, in his official capacity as Governor for Louisiana, and Nancy Landry, in her official capacity as Secretary of State for Louisiana, <br><br> *Defendants*. | Civil Action No. _____ |

**PETITION FOR TEMPORARY RESTRAINING ORDER**

Plaintiffs Ambrose Sims Jr., Joyce Davis Sims, Phyllis V. Mercadel, the Louisiana State Conference of the National Association for the Advancement of Colored People ("Louisiana NAACP"), the League of Women Voters of Louisiana, and League of Women Voters of Louisiana Education Fund (the "LWVLA"), and the Power Coalition for Equity and Justice (the "Power Coalition"),[1] through undersigned counsel respectfully request that the Court issue a temporary restraining order under Louisiana Code of Civil Procedure Article 3601(C), to prevent Defendant Governor Jeff Landry and Defendant Secretary of State Nancy Landry from suspending the May 16, 2026 primary elections for congressional races after voters have already cast absentee ballots and with early voting beginning tomorrow, Saturday, May 2, 2026. The Governor's issuance of Executive Order 26-038 ("Executive Order") violates the Louisiana Constitution for two separate reasons.

*First*,  this Executive Order is *ultra vires* because it exceeds the Governor's authority under Louisiana's laws and Constitution to invoke emergency power to stop the congressional primary elections based on a U.S. Supreme Court ruling and not a natural disaster, public health, or similar emergency threatening the physical safety of Louisianians. Under Louisiana's Constitution, the power to set elections belongs solely to the State Legislature.  *Second*, this Executive Order

---

[1] Plaintiffs' declarations will be supplemented forthcoming.

1

deprives Plaintiffs, their members, and many other Louisianians of their right to vote guaranteed by Article I, Section 10 of the Louisiana Constitution.

A temporary restraining order is necessary to prevent irreparable harm to Plaintiffs. Plaintiffs will be irreparably harmed if they or their members have their votes cancelled because of the Governor's unlawful Executive Order purporting to cancel the May 16, 2026 congressional primary elections. The Executive Order amounts to an improper attempt by the Governor to usurp the authority of the United States Supreme Court to determine the appropriate timing and disposition of its decision in *Louisiana v. Callais*. Until the Supreme Court does so, S.B. 8 remains Louisiana's operative congressional plan. A temporary restraining order is necessary to preserve the status quo and protect Louisiana voters from potential disenfranchisement pending the Supreme Court's action on its decision in Callais.

The people of Louisiana, including Plaintiffs and their members, are further harmed at this very moment because of the uncertainty and confusion that the Governor's unlawful Executive Order has created about how votes will be cast in the primary and whether votes already cast will be counted.  This uncertainty is particularly harmful to the organizational Plaintiffs who are currently engaged in voter education and advocacy to encourage voter participation but now do not know if they need to change or update their voter education and advocacy materials or even what information should be included in any such updates. In some circumstances, they will be unable to update materials, including materials printed in advance of the start of early voting tomorrow.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction over the subject matter of this action because the matter concerns "civil or political right[s]." La. Const. art. V, § 16(A).

2.      Venue is proper in this district because the cause of action arises in the district where this Court has original jurisdiction *See* La Stat. § 13:5104(A).

3.      This Court has authority to grant injunctive relief under the Louisiana Code of Civil Procedure Article 3601(A).

## PARTIES

4.      Plaintiff Ambrose Sims, Jr. resides in West Feliciana Parish, Louisiana. He is a member of the NAACP and serves as president of the NAACP's West Feliciana Branch. Mr. Sims is a

citizen and is lawfully registered to vote as Democrat. He participates in Louisiana's absentee by mail program. In April 2026, he received his absentee ballot to vote in the May 16, 2026 elections. He voted in the Congressional District 5 Democratic primary race, in other races, and on constitutional amendments through his ballot. Mr. Sims returned his ballot by mail on April 30, 2026, before the Governor issued the Executive Order. Mr. Sims's vote in the congressional primary race will not be counted if Governor Landry's Executive Order suspending the closed party primaries for congressional elections is allowed to take effect.

5.    Plaintiff Joyce Davis Sims resides in West Feliciana Parish, Louisiana. She is a citizen and is lawfully registered to vote in Congressional District 5 and is a registered Democrat. Mrs. Sims participates in Louisiana's absentee by mail program and received a ballot to vote in the May 16, 2026 elections. On April 30, 2026, before the Governor issued the Executive Order, Mrs. Sims returned her ballot by mail. Mrs. Sims's ballot included her vote in the congressional primary race, along with other races and constitutional amendments that she voted for on her ballot. Mrs. Sims's vote in the congressional race will not be counted if Governor Landry's Executive Order suspending the closed party primaries for the congressional elections is allowed to take effect. Ms. Sims is a member of the NAACP.

6.    Plaintiff Phyllis V. Mercadel (together with Mr. and Mrs. Sims, "Individual Plaintiffs") is a resident of Orleans Parish, Louisiana. She is lawfully registered to vote in Congressional District 2 as a Democrat. Ms. Mercadel votes absentee because she is over the age of sixty-five and has limited mobility. She received her absentee ballot for the May 16, 2026 election and returned it before April 19, 2026, as recorded in the voter portal. Ms. Mercadel voted in the congressional Democratic primary race on her ballot, along with other races and constitutional amendments. Her vote in the congressional race will not be counted if the Governor's Executive Order suspending the closed party primaries for the congressional elections is allowed to take effect.

7.    Plaintiff Louisiana State Conference of the National Association for the Advancement of Colored People (the "Louisiana NAACP") is a state chapter of the National Association for the Advancement of Colored People, Inc. It is one of the oldest and most significant civil rights organizations in Louisiana. Since its founding in 1943, the Louisiana NAACP has worked toward its mission to ensure the political, educational, social, and economic equality of all persons and to eliminate race-based discrimination. Among the Louisiana NAACP's central objectives and

3

mission are ensuring the protection of voting rights and equitable political representation and eliminating racial discrimination in the democratic process. Its work includes efforts to register, educate, and advocate on behalf of Black voters throughout Louisiana. Cancelling the primary election and refusing to count votes that have already been cast by voters in Louisiana will impede the Louisiana NAACP's mission to achieve equitable political representation.

8.     The Louisiana NAACP has approximately 5,000 members throughout Louisiana, including Black Louisianians who are registered voters. The Louisiana NAACP has over forty branches comprising adult members and sixteen youth and college chapters across the state. Members live and are registered voters in nearly every parish in Louisiana.

9.     The Louisiana NAACP has members who are registered voters and live in each of the six congressional districts in the congressional redistricting plan. By the morning of April 30, 2026, numerous Louisiana NAACP members had already cast their absentee ballots in the 2026 congressional primaries.

10.     The Louisiana NAACP usually engages in Get Out the Vote efforts throughout the state, including organizing voter-education events and preparing voting materials.

11.     The Louisiana NAACP has devoted significant resources to educating voters on how and when to cast their vote in the 2026 congressional primaries.

12.     Plaintiff League of Women Voters of Louisiana and Plaintiff League of Women Voters of Louisiana Education Fund (collectively "LWVLA") are nonpartisan, nonprofit organizations that seek to encourage informed and active participation in government. Formed in the 1940s, LWVLA is the Louisiana state affiliate of the national League of Women Voters ("LWV"). LWVLA operates statewide, with local Leagues in Caddo-Bossier, Lafayette, New Iberia, Orleans, St. Tammany, and Tangipahoa Parishes.  . LWVLA has 236 members across the state. LWVLA's mission is to encourage informed and active participation in government, increase voter understanding of major public-policy issues, and influence public policy through education and advocacy. LWVLA ensures that all eligible individuals have the opportunity and the information needed to vote, with a particular focus on traditionally underrepresented and underserved communities, including voters impacted by the criminal legal system, people of color, naturalized citizens, and first-time voters. LWVLA's members include individuals across the state of Louisiana who share in its mission to educate and engage eligible voters.

4

13.     Voter education is part of the LWVLA's core mission and is part of the LWVLA's core mission to encourage the maximum voter participation of eligible voters.

14.     LWVLA is known in the community as a trusted resource for voter education and information. In line with this mission to educate voters, LWVLA engaged in voter-education efforts around the 2026 primary election in Louisiana.

15.     LWVLA is responsible for the Louisiana page on VOTE411.org, which is a nonpartisan voter information resource coordinated by LWV. LWVLA has also expended considerable resources educating voters about the new voting process for the primary on May 16, 2026. LWVLA received a large grant specifically to conduct education about the changes in the election process for the primary on May 16, 2026.  LWVLA has held voter-education events across the state as part of this work.

16.     If the closed-party congressional primary election currently on-going and required by state law to conclude on May 16, 2026 is suspended pursuant to the Governor's Executive Order, LWVLA will be required to provide significant education to the voters about the changes, including updating VOTE411.org.This will cause LWVLA to divert significant resources away from its other core activates like voter registration and voter education with young voters in schools and work on felony voter rights restoration.

17.     There will also be significant voter confusion caused by this last-minute change, and that will significantly impede the ability of LWVLA to educate and persuade voters to participate in elections in Louisiana. This will also impede LWVLA's ability to carry out its core mission of achieving maximum voter participation of eligible voters in Louisiana elections.

18.     There are LWVLA members who have already received their absentee ballots that included congressional primaries, have already returned their ballots, and have already cast votes in both the Republican and Democratic congressional primaries elections.

19.     Plaintiff Power Coalition for Equity and Justice ("Power Coalition") is a coalition of groups from across Louisiana whose mission is to organize, educate, and turn out voters, and fight for policies that create a more equitable and just society in Louisiana.  The Power Coalition brings together various community-based organizations that work together to educate and empower voters across Louisiana through community organizing and voter-engagement initiatives.

20.     In 2025, the Power Coalition mobilized a statewide campaign of 325 outreach teams (paid $25 an hour) to knock on 56,969 doors across Louisiana. The Power Coalition added to this

5

robust voter-engagement effort with 306,861 calls and 1,005,630 text messages to Louisiana voters. For the May 16, 2026 primary election, Power Coalition created sample ballots for print and digital distribution reflecting the dates, offices, and amendments for the elections that had been set months ago. Power Coalition created and printed these materials at substantial cost. Power Coalition also engaged in a statewide roadshow to educate voters about the items on their ballots, including congressional races. This roadshow remains underway. In response to Governor Landry's Executive Order, Power Coalition will need to create new materials to rapidly equip voters with the information they need about the upcoming elections and pivot from their scheduled agenda.

21.    Defendant Jeff Landry is the Governor of the State of Louisiana. He is sued in his official capacity. On April 30, 2026, Governor Landry signed the Executive Order, which is the principal subject of this action.

22.    Defendant Nancy Landry is the Secretary of State of the State of Louisiana. She is sued in her official capacity. The Secretary of State is the chief election officer of Louisiana, La. Rev. Stat. § 18:18, and is responsible for the administration, certification, and conduct of elections, including the May 16, 2026 primary election.

## FACTUAL ALLEGATIONS

I.    Louisiana enacts S.B. 8 and is subsequently sued

23.    Louisiana enacted its current congressional map ("S.B. 8") on January 22, 2024.

24.    Nine days later, on January 31, 2024, a group of voters challenged the map as unconstitutional. A three-judge federal district court in a split opinion ruled that S.B. 8 violated the Equal Protection Clause of the U.S. Constitution and issued an injunction preventing the Secretary of State from administering elections under that map.

25.    Both the State of Louisiana and a group of individual Black voters and advocacy organizations appealed to the Supreme Court and moved for a stay of the District Court's opinion. On May 15, 2024, the Supreme Court stayed the District Court's injunction leaving S.B. 8 in place, citing *Purcell v. Gonzalez*, 549 U. S. 1 (2006) for the principle that it was too close to the November 2024 election to change the electoral map. In the 2024 general election, Louisiana voters cast ballots under S.B. 8 and sent representatives to Congress from those districts.

26.     S.B. 8 remains the State's official map governing congressional primary and general elections until the Legislature passes a new map or the Supreme Court reinstates the District Court's injunction. Neither event has happened.

**The State begins preparations for elections under S.B. 8.**

27.     Louisiana's primary election is scheduled for May 16, 2026, with early voting set to begin on May 2, 2026. Absentee voting began in April and is already underway. A runoff election, if necessary, is scheduled for June 27, 2026.

28.     Under La. Rev. Stat, § 18:410.3(A), Louisiana conducts semi-closed party primaries for elections to seats in the United States House of Representatives, among other offices. The use of party primaries is the result of legislation enacted in 2024. *See* Act 1 of the 2024 First Extraordinary Session.

29.     Under this system, candidates who are members of a political party run in that party's primary. Only voters who are members of a party or who are unaffiliated may vote in a party's primary. La. Rev. Stat § 18:410.3. Voters affiliated with a political party may not cast their votes for candidates of a party they are not affiliated with in the primary election. *Id*.

30.     Under the closed-primary system currently in place, the winner of the primary for each party in each congressional district in which at least one candidate for that party qualified will appear on the general-election ballot. This system of closed primaries for any election is new in Louisiana and in place for the 2026 election cycle for the first time. Before this year, Louisiana employed an open-primary system, in which candidates of all parties appeared on the same ballot, and voters could cast their vote for any candidate regardless of whether they were affiliated with the candidate's party. Under Louisiana's open-primary system, if no candidate for a particular office received more than 50% of the votes cast, the two candidates with the highest vote shares go on to a general election. It is possible—and under Louisiana's open-primary system it was a frequent occurrence—that the top two candidates in the general election belong to the same party. In such cases, other parties will have no candidate on the ballot in the general election.

31.     Between February 11 and February 13, 2026, Louisiana held its qualifying period for the May 16 primary election for Congress. During this three-day period, individuals submitted their nominating petition or paid the qualifying fee to qualify as a candidate on the primary election ballot. The qualifying period for the 2026 congressional primaries has ended.

32.    At least forty-five days before the primary election, on or before April 2, 2026, Louisiana registrars were required to and did mail ballots to overseas voters pursuant to the federal Uniformed and Overseas Citizen Absentee Voting Act ("UOCAVA"). *See* 52 U.S.C. § 20310.

33.    At least twenty days before a primary election, or on before April 25, 2026, the Louisiana Secretary of State was required to and did "deliver to the registrar in each parish in which the election is to be held the paper absentee by mail ballots, envelopes, certificates, instructions to be used in voting an absentee by mail ballot in that election[.]" *See* La. Rev. Stat. § 18:1306(C)(1). Upon receipt of those materials, registrars were required to and did mail ballots to all eligible voters who had previously requested to vote by mail and who qualified to do so. *See* La. Rev. Stat. §18:1308(A)(1)(a). Thereafter, ballots were required to be mailed and were mailed upon receipt of a valid vote-by-mail request from a qualified voter. *See id*.

34.    Many voters who received their mail ballots pursuant to these procedures,  including the Individual Plaintiffs, have already marked and returned their ballots, including casting votes in the congressional party primary for the party they had selected as part of their voter registration or in their absentee ballot requests.

**35.    The Supreme Court holds Louisiana's congressional map is unconstitutional.**

36.    On April 29, 2026, the Supreme Court issued its decision in *Louisiana v. Callais*, No. 24-109, 608 U. S. ____ (2026), holding that S.B. 8 violated the Equal Protection Clause of the U.S. Constitution, and ordered the case remanded back to the three-judge federal district court. Under Supreme Court rules, the Court's judgment will issue 32 days after its decision, or about May 31, 2026, *see* Sup. Ct. Rule 45.3, unless a petition for rehearing is filed, in which case the judgment will not issue until that motion's to petition resolution. Until the judgment issues, the Supreme Court's stay of the District Court's injunction remains in effect.  With the stay in effect, S.B. 8 remains Louisiana's operative congressional districting map.

**37.    The Governor suspends the election after ballots have been cast.**

38.    Despite the fact that the Supreme Court's stay leaving S.B. 8 in place is still in effect, on April 30, 2026, Governor Landry inaccurately asserted that the "stay automatically terminated with yesterday's decision," and that "[a]ccordingly, the State is currently enjoined from carrying out congressional elections under the current map." As a consequence of this erroneous understanding of the status of the stay and the injunction, he then posited that he was "working together with the Legislature and the Secretary of State's office to develop a path forward."

8

39.     On April 30, 2026, the Secretary of State certified her belief that there was a state of emergency in Louisiana affecting the congressional primaries. Her office issued a statement saying "Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races. All other races on the ballot, besides the U.S. House races, will continue as scheduled, with early voting beginning on Saturday." News Release, Nancy Landry, *Louisiana U.S. House of Representatives Races Suspended* (Apr. 30, 2026).

40.     Just a few hours later, Governor Landry issued an executive order purporting to cancel the congressional primary elections, previously set for May 16, 2026. Echoing Governor Landry's previous misstatement about the status of the *Callais* District Court's injunction, the Executive Order inaccurately states "the *Louisiana v. Callais* decision effectively revives a district court injunction barring Louisiana from conducting any congressional elections under SB 8[.]" Office of the Gov., Exec. Order No. JML 26-038 at 2 (April 30, 2026), attached as Exhibit A (hereinafter "Executive Order").

41.     The Executive Order stated: "Due to the election emergency of unconstitutional maps as determined by the United States Supreme Court in *Louisiana v. Callais et al*., the closed party primary elections for the offices of representative in the United States Congress are hereby suspended for the duration of the May 16, 2026 and June 27, 2026 election cycles and until July 15, 2026 or until such time as determined by the Legislature." Executive Order at 2.

42.     Governor Landry issued the Executive Order after voters, including each of the Individual Plaintiffs, had already cast their ballots.

43.     Before the Governor issued his Executive Order, Louisiana NAACP members had already cast their absentee ballots in the May 16, 2026 congressional primary, including Mr. Sims and Mrs. Sims.

44.     Before the Governor issued his Executive Order, LWVLA members had already cast their absentee ballots in the May 16, 2026 congressional primary.  These members have already filled out their ballots completely, including voting on their congressional primary election, and delivered their ballots to election official officials.

45.     As a result of the Governor suspending the elections, the Louisiana NAACP's efforts to educate voters on the timing of the May 16, 2026 congressional primaries were wasted. Furthermore, the Louisiana NAACP will need to expend more resources educating voters on when

9

and how to cast their ballot, if those primaries are rescheduled. Additionally, the Louisiana NAACP will need to spend additional resources towards Get-Out-the-Vote efforts for these new elections.

46.    As a result of the Governor suspending the elections, LWVLA's efforts to educate voters on the timing of the May 16, 2026 congressional primaries were wasted. Furthermore, LWVLA will need to expend more resources educating voters on when and how to cast their ballot, if those primaries are rescheduled.

## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

47.    Louisiana courts grant temporary restraining orders when (1) the injury, loss, or damage the plaintiffs will suffer if the injunction is not issued may be irreparable; (2) the plaintiffs are entitled to the relief sought; and (3) plaintiffs will likely prevail on the merits of the case. *General Motors Acceptance Corp. v. Daniels*, 377 So.2d 346, 348 (La. 1979); La. Code Civ. P. Art. 3603. A preliminary injunction shall also issue under a similar test. *See General Motors Acceptance Corp.* 377 So.2d at 348; *St. Raymond v. City of New Orleans*, 769 So. 2d 562, 564 (La. App. 4 Cir., 2000). A "preliminary injunction requires less proof than is required in an ordinary proceeding for permanent injunction and the trial court has great discretion to grant or deny a preliminary injunction." *Breaud v. Amato*, 657 So. 2d 1337, 1339 (La. App. 5 Cir., 1995).

48.    A petitioner is entitled to injunctive relief even without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, *i.e.*, when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. *See City of New Orleans v. Board of Com'rs of Orleans Levee Dist.*, 640 So.2d 237, 253 (La., 1994); *Davenport v. Chew*, 375 So.3d 973 (La. App. 1 Cir., 2023); *Hill v. Jindal*, 2014-1757 (La. App. 1 Cir. 6/17/15), *writ denied*, 2015-1394 (La. 10/23/15); *Star Enter. v. State*, 676 So.2d 827, 834 (La. App. 1 Cir., 1996). "Once a plaintiff has made a *prima facie* showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists." *Jurisich v. Jenkins*, 749 So.2d 597, 599–600 (La., 1999) (citing *Oachita Parish Police Jury v. Am. Waste & Pollution Control*, 606 So.2d 1341 (La. App. 2d Cir., 1992)).

49.    Plaintiffs easily meet the requirements to grant a temporary restraining order and a preliminary injunction.

**Plaintiffs are Substantially Likely to Demonstrate that Louisiana's
Governor Acted Contrary to Louisiana's Constitution and Laws in Several Respects.**

50.    Plaintiffs are substantially likely to prevail on the merits of their claims because the Executive Order violates Louisiana law and the Louisiana Constitution's fundamental right to vote.

**I. Violation of Louisiana laws (ultra vires)**

51.    There is a provision of Louisiana law that provides Governors limited authority to issue "an executive order declaring a state of emergency or impending emergency," that "suspend[s] or delay[s] any qualifying of candidates, early voting, or elections." La. Rev. Stat. § 18:401.1(B).

52.    Section 401.1's text makes clear that the kind of "emergenc[ies]" it contemplates are natural disasters or similar emergencies.  The Legislature intentionally provided that the statute's purpose was to "provide a safe and orderly procedure for persons seeking to qualify or exercise their right to vote" and "minimize to whatever degree possible a person's exposure to danger during declared states of emergency." La. Rev. Stat. § 18:401.1(A). Subsection B of Section 401.1 empowers local officials to bring emergencies "due to natural disasters" to the Secretary's attention. *Id*. § 18:401.1(B). Subsection D requires local election officials, at the conclusion of the emergency, to "identify the number of polling places that are functional and the number of polling places that have been destroyed," *id*. § 18:401.1(D)(1), something that may result from natural disasters, but not from purported legal emergencies.

53.    In the past, Governors have only invoked this provision to delay elections due to natural disasters or similar emergencies that posed threats to health and safety. For example, Governor Jindal delayed elections in 2008 after Hurricane Gustav. *See Cash v. Jindal*, No. 08-1388, 2008 WL 5210538, at *1 (W.D. La. Dec. 10, 2008). Governor Edwards delayed elections twice due to the COVID-19 pandemic. *See Greene v. Ardoin*, 313 So.3d 298, 300 (La. App. 1st Cir., 2020).

54.    Governor Landry and Secretary Landry do not claim an emergency because of a natural disaster or any physical dangers threatening voters. Rather, the Executive Order claims "an emergency exists" because of voters voting for alleged "representatives that are impermissibly elected[.]" Executive Order at 2. Even if that were the case, Section 401.1 is limited to emergencies that endanger "safe[ty] and order[]" and create "exposure to danger," none of which the Supreme Court's decision does. A Supreme Court opinion—if it can even be described as an emergency at all—is not the sort of emergency contemplated by Section 401.1. There is no threat to the safety of any voter as a result of the Supreme Court's decision. This is evident in the fact that under the Executive Order, the May 16 primary election will go forward for all other races on the ballot.

55.     Moreover, Section 401.1 must be employed "to ensure maximum citizen participation in the electoral process," but the Executive Order does exactly the opposite. Its effect will be to cancel many votes that have already been cast, including those of the Individual Plaintiffs and members of the Louisiana NAACP and LWVLA. Nothing in Section 401.1 suggests that votes that have already been cast can be cancelled or thrown out. Rather, it contemplates that an election may be suspended and then the same election resumed at a later time when the threat to human safety has subsided.

56.     In sum, Section 401.1 does not authorize the suspension or cancellation of an election in the circumstances or in the manner in which the Executive Order purports to suspend the May 16 primary election.

57.     Nor does state law provide a basis for the Governor or Secretary of State to suspend the May 16 primary election. The legislature has not spoken to the Governor's power in this circumstance, yet the Governor has taken it upon himself to usurp the Legislature's role by issuing the Executive Order. This is inconsistent with the separation of powers "[t]he fundamental purpose of [which] is to check the extent of power exercisable by any one branch of Government in order to protect the people from oppression." *Graham v. Jones*, 3 So. 2d 761, 794 (1941).

## II.     Right to Vote

58.     The Louisiana Constitution provides an explicit "right to register and vote" for eligible individuals. La. Const. art. I, § 10.

59.     This "right of qualified citizens of Louisiana to vote and to have their votes counted, inherent in our republican form of government and the democratic process, is a fundamental and constitutionally protected right." *Adkins v. Huckabay*, 755 So. 2d 206, 211 (La. 2000).

60.     This includes the right of an eligible voter casting an absentee ballot to have that ballot counted "in the absence of fraud, undue influence, or intentional wrongdoing," or "a substantial failure to comply with the essential requirements of the absentee voting law." *Id*. at 218.

61.     Here, the Individual Plaintiffs and members of Plaintiff organizations have all cast valid ballots for the congressional primary. Cancelling the election and negating that effective ballot, as the Executive Order does, violates Plaintiffs' right to vote under the Louisiana Constitution.

**Plaintiffs will suffer irreparable injury without immediate relief.**

62.     An irreparable injury is a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. *Star Enter. v. State Through Dep't of Revenue and Tax'n*, 676 So.2d 827, 834 (La. 1997). When the act sought to be enjoined is unlawful or when a deprivation of a constitutional right is involved, the injury, as a matter of law, cannot be measured by a pecuniary standard, and a showing of irreparable injury is therefore not necessary. *Maynard Batture Venture v. Parish of Jefferson*, 694 So.2d 391, 392 (La. App. 5th Cir. 1996).

63.     Nonetheless, Plaintiffs here will be irreparably injured by the impending cancellation of their lawfully cast votes in the congressional primary. Individual Plaintiffs have already cast their ballots for their candidate of choice. They would be deprived of their fundamental right to vote under the Louisiana Constitution if that vote was cast aside. Unless a TRO is issued today, Plaintiffs and other voters across Louisiana will not be allowed to vote. The TRO will also afford the United States Supreme Court time to act on whether to lift its stay.

64.     Organizational Plaintiffs also have members who will similarly be irreparably injured by the cancellation of their lawfully cast vote in the congressional primary. Their members have already cast ballots for their candidate of choice and would be deprived of their fundamental right to vote under the Louisianna Constitution if that vote was cast aside.

65.     As with the Individual Plaintiffs, Organizational Plaintiffs, will also be harmed. When a challenged law raises new obstacles [that] unquestionably "mak[e] it more difficult for" organizations like the Leagues to accomplish their primary mission of increasing voter participation, this constitutes "irreparable harm." *League of Women Voters U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016); *League of Women Voters of La. v. Landry*, No. CV 25-413-JWD-SDJ, 2025 WL 3516786, at *8 (M.D. La. Dec. 8, 2025) (finding that LWVLA would be prejudiced having "'already diverted'"—and are continuing to divert—resources away from their 'core activities'"). Organizational Plaintiffs are longstanding nonpartisan organizations dedicated to increasing voter participation through voter education, outreach, and registration. Each Organizational Plaintiff incorporates voter education in the run-up to elections as a core part of their work. Plaintiffs would sustain irreparable injuries from the Order's interference with their core missions if they had to do new voter education for primary.

66.     Organizational Plaintiffs are trusted resources of information about elections in Louisiana.  In order to maintain their status as trusted resources, which is key to their core missions,

they will be required to divert significant recourse to make changes to their voter education and outreach as quickly as possible if the Order stays in effect.

67.    Additionally, the Governor's last minute change in the primary elections where early voting starts in just one day, on May 2, 2026 and Election Day is just 15 days away will cause significant voter confusion, which will make it more difficult for Organizational Plaintiffs to achieve their core missions of encourage maximum voter participation.

**The Plaintiffs are entitled to the relief sought.**

68.    Under Louisiana law, generally, an injunction will issue only in its prohibitory form. However, where a defendant obstructs a plaintiff in the enjoyment of a real right, the plaintiff may "be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done." *Harris v. Pierce*, 73 So.2d 330, 334 (La. Ct. App. 1954).

69.    Here, Plaintiffs are entitled to a prohibitory injunction preventing Defendant Landry from suspending the May 2026 primary election as doing so would be an ultra vires action outside of the scope of his authority, a violation of separation of power, and would violate the their individual right to vote and the right to vote of their members.

**The public interest weighs heavily in Plaintiffs' favor.**

70.    Preserving Louisianians' voting rights is strongly in the public interest, and the threat of disenfranchising Louisianians who have already cast their ballots in the May 16 primary vastly outweighs the potential administrative burden an injunction might impose on Defendant.  In addition to the three required prongs of the injunctive test, Louisiana courts also typically consider whether "the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest." *Council of City of New Orleans v. Edward Wisner Donation*, 409 So.3d 22, 34, *writ denied*, 400 So.3d 926 (La. 2/19/25), and *writ denied*, 400 So.3d 931 (La. 2/19/25) (quoting *Freeman v. Treen*, 442 So.2d 757, 763 (La. App. 1st Cir. 1983)); *see also Two Canal St. Invs., Inc. v. New Orleans Bldg. Corp.*, 193 So.3d 278, 288 (La. App. 4 Cir. 4/20/16).

71.     Individual Plaintiffs and many members of Organizational Plaintiffs, along with hundreds of thousands of Louisiana voters, will receive a ballot with a congressional race on the ballot, causing mass confusion among Louisiana voters.  It is in the public interest not to confuse

14

and potentially disenfranchise possibly hundreds of thousands of Louisiana voters and conduct an orderly election.

**CLAIMS FOR RELIEF**

**COUNT I: Ultra Vires**

Against the Governor and Secretary of State

72.    Plaintiffs reallege and reincorporate by reference paragraphs 1-71 of this Petition and the paragraphs in the count below as through fully set forth herein.

73.    The Executive Order is unlawful because it exceeds the Governor's authority under La. Rev. Stat. § 18:401.1; s*ee* La. Const. art. IV, § 5(A); La. Rev. Stat. § 49:215(A).

74.    The Secretary of State's certification of an emergency is unlawful because it is outside the statutory grant of authority under La. Rev. Stat. § 18:401.1.

75.    There is no emergency such that the Governor is empowered to postpone the election under La. Rev. Stat. § 18:401.1.

76.    There is no emergency such that the Secretary of State is empowered to certify an emergency under La. Rev. Stat. § 18:401.1.

77.    Section 18:401.1(B) provides that "[t]he governor may, upon issuance of an executive order declaring a state of emergency or impending emergency, suspend or delay any qualifying of candidates, early voting, or elections. The governor shall take such action only upon the certification of the secretary of state that a state of emergency exists."

78.    Section 18:401.1(A) further details the purposes of the section: "Due to the possibility of an emergency or common disaster occurring before or during a regularly scheduled or special election, and in order to ensure maximum citizen participation in the electoral process and provide a safe and orderly procedure for persons seeking to qualify or exercise their right to vote, to minimize to whatever degree possible a person's exposure to danger during declared states of emergency, and to protect the integrity of the electoral process, it is hereby found and declared to be necessary to designate a procedure for the emergency suspension or delay and rescheduling of qualifying, early voting, and elections."

79.    The Supreme Court declaring Louisiana's congressional map unconstitutional is not an emergency as contemplated in Section 401.1, and therefore, the Governor has no authority to postpone elections on that basis. Likewise, the Secretary of State has no authority to certify an emergency.

15

80.    No other current state or federal law authorizing the Governor or Secretary of State to postpone House elections.

81.    Setting the date of an election, including postponing an election, is a legislative lawmaking function under Louisiana law.

82.    Postponing an election is a legislative lawmaking function that is solely within the authority of the Legislature. *See* La. Const. art. III, § 2. The Governor or Secretary of State postponing the House elections would be a violation of separation of powers.

83.    The Louisiana Constitution divides the powers of government into three separate branches: legislative, executive, and judicial. La. Const. art. III, § 1.

84.    The Louisiana Constitution further provides that no branch may exercise power belonging to another branch. La. Const. art. III, § 2.

85.    The Executive Order is therefore beyond the lawful authority of the Governor and is void.

### COUNT II: Right to Vote (La. Const. Art. I, § 10)

Against the Governor and Secretary of State

86.    Plaintiffs reallege and reincorporate by reference paragraphs 1-85 of this Petition and the paragraphs in the count below as through fully set forth herein.

87.    The Louisiana Constitution guarantees that "[e]very citizen of the state, upon reaching eighteen years of age, shall have the right to register and vote." La. Const. art. I, § 10.

88.    The Executive Order unconstitutionally infringes on Louisianians' right to vote protected under La. Const. Art. I, § 10.

### Prayer for Relief

WHEREFORE, Plaintiffs request that this Court

A. Declare that the Executive Order is unlawful, including that: (a) the *Callais* decision does not constitute an emergency under La. Rev. Stat. § 18.401.1(B) and (b) the Governor may not unilaterally alter, suspend, or postpone federal election on the basis of the *Callais* decision;

B. Enjoin the implementation of the Executive Order pending the U.S. Supreme Court's decision on whether to lift the stay;

C. Declare the Executive Order contrary to law;

16

D.  Grant such relief as may be necessary to effectuate the Court's injunctions; and

E.  Grant such other relief, including plaintiffs and attorneys' fees and costs, as the Court

considers just.

Dated: May 1, 2026

By:    */s /Gideon T. Carter, III*
        Gideon T. Carter, III
        Bar Roll Number 14136
        P.O. Box 80264
        4962 Florida Blvd FL4 (70806-4031)
        Baton Rouge, LA 70898-0264
        T: (225) 214-1546
        F: (225) 341-8874
        gideontcarter3d@gmail.com

Stuart Naifeh*
John S. Cusick*
Victoria Wenger*
Colin Burke*
NAACP Legal Defense and Educational Fund, Inc.
40 Rector Street, 5th Floor
New York, NY 10006
Tel: (212) 965-2200
snaifeh@naacpldf.org
jcusick@naacpldf.org
vwenger@naacpldf.org
cburke@naacpldf.org

Deuel Ross
I. Sara Rohani
NAACP Legal Defense and Educational Fund, Inc.
700 14th Street, Suite 600
Washington DC 20005
dross@naacpldf.org
srohani@naacpldf.org

Malcolm Lloyd
Nora Ahmed*
ACLU Foundation of Louisiana
1340 Poydras St, Ste. 2160
New Orleans, LA 70112
Tel: (504) 522-0628
nahmed@laaclu.org
mlloyd@laaclu.org

Sophia Lin Lakin*
Dayton Campbell-Harris*
Davin Rosborough
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
slakin@aclu.org
dcampbell-harris@aclu.org
drosborough@aclu.org
tlee@aclu.org

John Adcock
Adcock Law LLC
L.A. Bar No. 30372
8131 Oak Street, Unit 100
New Orleans, LA 70118
T: (504) 233-3125
F: (504) 308-1266
jnadcock@gmail.com

Sarah Brannon*
American Civil Liberties Union Foundation
915 15th St., NW
Washington, DC 20005
sbrannon@aclu.org

T. Alora Thomas*

17

Michelle Leung*
Race & Law Clinic
Harvard Law School
1607 Massachusetts Avenue, 3rd Floor
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu
mleung@law.harvard.edu


*Pro hac vice* applications forthcoming

*Counsel for Plaintiffs*

NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

No. _____                                    DIVISION: _____

LEAGUE OF WOMEN VOTERS, NAACP

v.

JEFF LANDRY, GOVERNOR OF LOUISIANA AND
NANCY LANDRY, SECRETARY OF STATE OF LOUISIANA

FILED: _____          _____
                                                                DEPUTY CLERK

---

### TEMPORARY RESTRAINING ORDER

---

Considering the foregoing Verified Petition for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction filed by Plaintiffs:

**IT IS HEREBY ORDERED** that the Defendants Jeff Landry and Nancy Landry are temporarily restrained from taking any action to enforce or implement Executive Order 26-038 or taking any other action to suspend, cancel, delay, or in any way alter the procedures for or interfere with the congressional primary elections scheduled for May 16, 2026.

**IT IS HEREBY FURTHER ORDERED** that the Defendants Jeff Landry and Nancy Landry notify parish registrars of voters, clerks, and any other election official with whom they have communicated regarding the Executive Order the congressional primary elections scheduled for May 16, 2026 will be held as scheduled and that no actions may be taken pursuant to the Executive Order to suspend, cancel, delay, or in any way alter the procedures for or interfere with the May 16, 2026 congressional primary elections.

Baton Rouge, Louisiana, this _____ day of _____, 2026.

_____
19TH JUDICIAL DISTRICT COURT JUDGE

**PLEASE SERVE**:

Jeff Landry
Nancy Landry
*Through the Office of the Attorney General*
Liz Murrill

19

1885 N. Third St.
Baton Rouge, LA 70802