**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| LINDSAY GARCIA, a qualified voter and a candidate in the Democratic Party for the 5th congressional district, and on behalf of all others similarly situated; and EUGENE COLLINS, a qualified voter,<br>                 Plaintiffs,<br><br>v.<br><br>JEFF LANDRY, in his official capacity as Governor of the State of Louisiana; ELIZABETH B. MURRILL, in her official capacity as Attorney General of the State of Louisiana; and NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana,<br>                 Defendants. | CIVIL ACTION<br><br>NO. 3:24-cv-00122-DCJ-CES-RRS (Transferred from M.D. La. No. 3:26-cv-00471-SDD-RLB)<br><br>Related to:<br>Callais v. Landry,<br>No. 3:24-cv-00122-DCJ-CES-RRS |

**SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF MOTION FOR EMERGENCY INJUNCTIVE RELIEF**
*(Focusing on Procedural Due Process Under Logan v. Zimmerman Brush*
*and the Discarded May 16, 2026 Cast Ballots)*

Plaintiffs respectfully submit this Second Supplemental Memorandum in Support of their pending Motion for Emergency Injunctive Relief, focusing on a single doctrinal argument that has become operatively dispositive following Defendant Governor Jeff Landry's public statement on the May 10, 2026, 60 Minutes broadcast (the subject of Plaintiffs' Notice of Supplemental Authority filed contemporaneously herewith). That doctrinal argument is procedural due process under the Fourteenth Amendment as construed in Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and as applied to the more than 45,000 ballots cast in the federal U.S. House of Representatives contest on the May 16, 2026, closed party primary ballot that the Governor has now publicly confirmed are being discarded.

## I. INTRODUCTION AND OVERVIEW

1.  This Memorandum is filed to focus this Court's attention on a single doctrinal argument, separately and apart from the broader constitutional and statutory framework presented in Plaintiffs' prior filings. That argument is that the discarding of more than 45,000 cast absentee ballots in the federal U.S. House of Representatives contest, while the same ballots' votes for U.S. Senate, Louisiana Supreme Court, Public Service Commission, Board of Elementary and Secondary Education, and the five proposed constitutional amendments will be counted, constitutes a deprivation of vested procedural interests without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Plaintiffs respectfully submit that this argument, standing alone and independent of all other claims, supports the narrow injunctive relief Plaintiffs request in subpart (a) of the Conclusion to the Supplemental Memorandum filed contemporaneously herewith.

2.  The argument has three components. Part II establishes that Louisiana voters who cast and returned absentee ballots in the federal congressional contest before April 30, 2026, acquired vested procedural interests in having their votes counted on those ballots. Part III establishes that the Executive Order's selective post-cast voiding of those contests, while counting all other contests on the same ballots, deprives those voters of their vested interests without procedural protection. Part IV establishes that the harm is concrete, ongoing, and irreparable, and that the narrow injunctive relief Plaintiffs request remedies the harm without disrupting this Court's exclusive remedial authority over the post-Callais map process.

## II. LOUISIANA VOTERS WHO CAST AND RETURNED ABSENTEE BALLOTS ACQUIRED VESTED PROCEDURAL INTERESTS UNDER LOGAN v. ZIMMERMAN BRUSH

### A. The Logan Framework.

3.  The Fourteenth Amendment's Due Process Clause protects vested procedural interests from deprivation without due process of law. Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), is the controlling Supreme Court precedent. The Logan Court held that, once an

individual has completed the procedural acts required by state law for the vesting of an interest, the State cannot retroactively void that interest without procedural protection. The Court explained:

> [A] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause. ... Logan's right to use the adjudicatory procedures was a 'species of property' subject to the protections of the Due Process Clause.
>
> Logan, 455 U.S. at 428, 430.

4.      The Logan principle has been consistently applied by federal courts to a range of procedural rights established by state law. The animating principle is that, when state law gives an individual the right to take a procedural step in pursuit of a substantive interest, the State cannot, after the individual has taken that step, retroactively void the procedural act without due process. The vested interest is in the completion of the procedural act, not in the eventual substantive outcome.

5.      The Logan framework applies with particular force to voting rights, where the procedural act (casting a ballot) is the exclusive mechanism by which the substantive interest (having one's vote counted) can be realized. A voter who completes the procedural act of casting and returning a ballot has exercised the only mechanism available under state law to have her vote counted in a particular election. Retroactive voiding of that procedural act without due process protection is the precise harm Logan addresses.

## B. The Procedural Act of Casting an Absentee Ballot in Louisiana.

6.      Louisiana law establishes the procedural framework for absentee voting under La. R.S. §§ 18:1301 et seq. A qualified Louisiana voter who wishes to vote by absentee ballot must (a) make a timely application for an absentee ballot under La. R.S. § 18:1303; (b) receive the ballot from the Office of the Registrar of Voters; (c) complete the ballot in accordance with the procedures set forth on the ballot and applicable instructions; (d) sign the ballot's outer envelope under the witness procedures of La. R.S. § 18:1306; and (e) return the ballot to the Office of the Registrar of Voters by the statutory deadline.

7.      Each of these procedural acts is required by Louisiana state law. Each is an act the voter takes in reliance on the State's representation that the completed ballot will be counted in

the election for which it was cast. When the voter completes the procedural act of signing and returning the ballot, the voter has done everything Louisiana state law requires for the vote to be counted. The voter has no further procedural act available to her under state law.

8.    For the May 16, 2026, closed party primary, the State of Louisiana, through the Office of the Secretary of State and the parish Registrars of Voters, distributed absentee ballots beginning on or about April 1, 2026. Louisiana voters who applied for absentee ballots received them, completed them, and returned them to the parish Registrars of Voters before the May 16, 2026, election date. By April 28, 2026, the Louisiana Secretary of State had received more than 42,000 absentee ballots; that number had grown to more than 45,000 by May 10, 2026, as Defendant Governor Jeff Landry publicly confirmed in his 60 Minutes interview broadcast that day.

*C. The Vesting of the Procedural Interest.*

9.    When each of these 45,000+ Louisiana voters completed and returned the absentee ballot, the voter's procedural interest in having that vote counted vested. The voter had done everything Louisiana state law required. The voter had no further procedural act available. The voter's expectation that the vote would be counted was not merely an aspiration; it was the operative legal consequence of the voter's completed procedural conduct under Louisiana state law.

10.   Plaintiffs respectfully submit that the vested procedural interest extends to each contest on the multi-contest ballot. When a Louisiana voter completed the absentee ballot for the May 16, 2026 closed party primary, the voter completed votes on the federal U.S. House of Representatives contest, the U.S. Senate contest, the Louisiana Supreme Court (1st District) contest, the Public Service Commission (Districts 1 and 5) contests, the Board of Elementary and Secondary Education (1st District) contest, and the five proposed constitutional amendments. The voter's procedural interest is in having each of these contests counted, in accordance with state law, because each was a completed procedural act under Louisiana state law.

## III. THE EXECUTIVE ORDER'S SELECTIVE POST-CAST VOIDING OF THE FEDERAL CONGRESSIONAL CONTEST, WHILE COUNTING ALL OTHER

## CONTESTS ON THE SAME BALLOT, DEPRIVES VESTED INTERESTS WITHOUT DUE PROCESS

### A. The Deprivation.

11.     On April 30, 2026, Defendant Governor Landry issued Executive Order JML 26-038, suspending the federal U.S. House of Representatives portion of the May 16, 2026, closed party primary. The Office of the Secretary of State, Defendant Nancy Landry, has confirmed that the federal U.S. House contest on already-cast absentee ballots will not be counted. Defendant Governor Landry has now publicly confirmed, on national television, that the cast ballots in the federal U.S. House contest 'are discarded.' See Plaintiffs' Notice of Supplemental Authority filed contemporaneously herewith. The State has not articulated any procedural protection extended to the 45,000+ affected voters before the discarding of their cast votes.

12.     The Governor's public confirmation is significant. The Governor did not say the ballots are 'preserved pending this Court's remedial-map process.' The Governor did not say the ballots are 'set aside while the State and the courts evaluate appropriate procedures.' The Governor said the ballots 'are discarded.' That word, used by the State's chief executive officer, is the State's operative characterization of its own conduct. Discarding is the retroactive voiding of completed procedural acts. The voiding is being conducted without any procedural protection for the affected voters.

### B. The Differential Treatment Confirms the Procedural Nature of the Deprivation.

13.     The State's selective treatment of contests within the same ballot underscores the procedural nature of the deprivation. The State will count the voter's votes for U.S. Senate, Louisiana Supreme Court, Public Service Commission, Board of Elementary and Secondary Education, and the five proposed constitutional amendments. The State will discard only the voter's vote for the federal U.S. House contest. The State has not asserted that there is any procedural difficulty with counting the federal U.S. House contest, or that the federal U.S. House contest is physically unreadable, or that the federal U.S. House contest is administratively impossible to tabulate. The State has simply chosen not to count it.

14.   This selective treatment confirms that the deprivation is procedural, not substantive. The voter's procedural act of casting a ballot is identical for the federal U.S. House and U.S. Senate contests. The voter signed the same outer envelope, used the same witness procedure, returned the ballot to the same Registrar of Voters, and completed the same procedural acts. The State's differential treatment of these procedurally identical acts is itself a procedural due process injury.

### C. No Procedural Protection Has Been Extended.

15.   The State has not extended procedural protection to the 45,000+ affected voters. The State has not provided notice of the discarding before the discarding takes effect. The State has not provided an opportunity for the voter to be heard on the discarding. The State has not provided a mechanism for the voter to challenge the discarding before it takes operative effect. The State has not provided a remedy for the discarded vote that approximates the original vote in any meaningful procedural sense.

16.   The State has, instead, taken the position that the affected voters 'will vote again in November.' See Plaintiffs' Notice of Supplemental Authority. That position is not procedural protection; it is procedural substitution. The State proposes to substitute a future general-election vote for a vote already cast in a primary. But a primary vote is structurally and functionally distinct from a general-election vote. A primary vote determines a party's nominee for the general election; a general-election vote is constrained by the slate of party nominees produced by the primary. The State's proposed substitution does not give the affected voters the substantive interest they had a procedural right to exercise, because the substantive interest in the primary, namely the selection of a party nominee, will be lost regardless of the substitution.

### D. Mathews v. Eldridge Balancing.

17.   Even if this Court were to apply the procedural-due-process balancing framework of Mathews v. Eldridge, 424 U.S. 319 (1976), the State's discarding of cast ballots without procedural protection fails. The Mathews factors are: (1) the private interest affected by the State's action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional procedural safeguards; and (3) the State's interest, including

the fiscal and administrative burdens that additional procedural requirements would entail. 424 U.S. at 335.

18.    Applied here, each Mathews factor favors the affected voters. The private interest is the right to have one's vote counted in a federal election, which the Supreme Court has consistently characterized as fundamental. Reynolds v. Sims, 377 U.S. 533, 555 (1964) ('The right to vote freely for the candidate of one's choice is of the essence of a democratic society.'). The risk of erroneous deprivation from procedure-free discarding is total: every affected ballot is discarded without any opportunity for the voter to be heard. The probable value of additional procedural safeguards is high: at a minimum, preservation of the cast ballot pending this Court's remedial map decision would permit appropriate treatment of the vote in accordance with this Court's remedial framework. The State's interest in avoiding procedural protection is minimal: the affected ballots have already been received and processed; preservation does not require new administrative apparatus; no fiscal burden is imposed.

## IV. THE HARM IS CONCRETE AND IRREPARABLE; THE NARROW RELIEF PLAINTIFFS REQUEST REMEDIES IT WITHOUT DISRUPTION TO THIS COURT'S REMEDIAL AUTHORITY

### A. The Harm Is Irreparable.

19.    Once a ballot is discarded, the discarding is final. The vote is lost. The voter cannot retroactively recover the vote. The voter cannot effectively substitute a future vote for the lost vote, because (as Part III(C) above explains) the future vote would be for a different election in a different procedural posture under a different operative framework. The harm is, by definition, irreparable. The Fifth Circuit has consistently recognized that the loss of constitutional rights, particularly voting rights, constitutes irreparable injury sufficient to support preliminary injunctive relief. See, e.g., Texas Democratic Party v. Abbott, 961 F.3d 389, 411 (5th Cir. 2020); Republican Party of La. v. Boulet, 142 F.3d 1379, 1382 (5th Cir. 1998).

### B. The Narrow Relief Plaintiffs Request.

20. The narrow relief Plaintiffs request, as set forth in subpart (a) of the Supplemental Memorandum filed contemporaneously herewith, is: an Order enjoining Defendants from selectively voiding the federal U.S. House of Representatives contest on absentee ballots already cast and returned in advance of April 30, 2026, and directing Defendants to preserve those votes pending this Court's remedial-map decision.

21. This relief operates entirely within this Court's remedial authority. It does not require any election under SB8. It does not interfere with the post-Callais remedial process. It does not prejudge any districting outcome. It requires only that the cast ballots be preserved, with their federal U.S. House contests preserved, pending this Court's decision on the appropriate treatment of those votes in light of the remedial-map process. The Court may, in due course, direct that the preserved votes be (a) counted under whatever remedial map this Court approves; (b) preserved as part of the historical record without operative effect; or (c) treated in such other manner as this Court determines to be consistent with the constitutional and statutory framework. The relief requested is preservation pending appropriate procedural treatment by this Court, not any specific substantive outcome.

### C. The State's Asserted Justifications Do Not Survive Scrutiny.

22. The State has asserted, in the Governor's 60 Minutes statement and in prior briefing, that the discarding of cast ballots is required by Callais and by this Court's April 30, 2026 Order (Doc. 261 in 3:24-cv-00122). That assertion is not correct. This Court's April 30 Order prohibits the State from 'using SB8's map of congressional districts for any election.' That prohibition is operative with respect to future elections; it does not, by its terms, require the retroactive voiding of votes already cast. The State has equated this Court's prohibition with an obligation to discard ballots already cast. That equation is the State's policy choice, not this Court's mandate.

23. Plaintiffs respectfully request that this Court make explicit, by Order on the present Motion, that this Court's April 30, 2026 Order does not require the State to discard already-cast ballots, and that preservation of those ballots pending this Court's remedial-map decision is consistent with, and not in derogation of, this Court's prior Order.

### V. CONCLUSION

**24.**  For the foregoing reasons, Plaintiffs respectfully request that this Court grant the narrow injunctive relief described in subpart (a) of the Conclusion to the Supplemental Memorandum filed contemporaneously herewith, namely:

> An Order enjoining Defendants from selectively voiding the federal U.S. House of Representatives contest on absentee ballots already cast and returned in advance of April 30, 2026, and directing Defendants to preserve those votes pending this Court's remedial-map decision, in a manner consistent with this Court's remedial-map process and the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. § 20301 et seq.

**25.**  This relief is narrowly tailored to remedy the procedural-due-process injury identified in this Memorandum without disrupting this Court's exclusive remedial authority over the post-Callais map process. The relief preserves the vested procedural interests of more than 45,000 Louisiana voters while leaving entirely to this Court the operational details of how those interests are to be treated in the remedial framework.

Respectfully submitted,

/s/ Donald C. Hodge, Jr.
**DONALD C. HODGE, JR. (LSB #29251)**
Box 481
Westminster, CO 80036
Telephone: (225) 800-7124
Email: donaldhodgejr@proton.me

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 11th day of May, 2026, a copy of the foregoing Plaintiffs' Second Supplemental Memorandum in Support of Motion for Emergency Injunctive Relief was served upon all counsel of record by the Court's CM/ECF system, which will provide notice of service to all counsel enrolled in this matter.


<u>/s/ Donald C. Hodge, Jr.</u>
**DONALD C. HODGE, JR. (LSB #29251)**