**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

PHILLIP CALLAIS, LLOYD PRICE,
BRUCE ODELL, ELIZABETH ERSOFF,
ALBERT CAISSIE, DANIEL WEIR,
JOYCE LACOUR, CANDY CARROLL
PEAVY, TANYA WHITNEY, MIKE
JOHNSON, GROVER JOSEPH REES,
ROLFE MCCOLLISTER,

       *Plaintiffs*,


       v.



NANCY LANDRY, in her official capacity
as Secretary of State for Louisiana,

       *Defendant*.

Civil Action No. 3:24-cv-00122


Judge David C. Joseph
Circuit Judge Carl E. Stewart
Judge Robert R. Summerhays


***ROBINSO*N AND *GALMO*N INTERVENORS' MEMORANDUM OF LAW IN SUPPORT**
**OF JOINT MOTION FOR STAY AND RESPONSE TO STATE'S BRIEF**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

    I.   Louisiana's 2024 Congressional Map and the *Callais* Litigation................................. 2

    II.  Hundreds of Thousands of Louisiana Voters Have Already Voted in the
        Primary Under the Current Congressional Map. ........................................................... 3

    III. This Court Initiates Remedial Proceedings Amid an Active Primary Election
        and Ongoing Election Confusion. .................................................................................. 4

ARGUMENT ........................................................................................................................ 10

    I.   The State Has Identified No Feasible Plan for Implementing the Injunction in
        2026 Without Harm to Louisiana Voters, Candidates, and Election Officials
        and Without Threatening the Integrity of the Democratic Process............................. 12

    II.  Staying the Injunction is Necessary to Avoid Irreparable Harm to Voters and
        Ensure an Orderly Remedial Process.......................................................................... 17

    III. The *Purcell* Principle Calls for Full Implementation of the Court's Order *After*
        the 2026 Election Cycle. .............................................................................................. 19

CONCLUSION..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. League of United Latin American Citizens*,
146 S. Ct. 418 (2025).................................................................................................... 19

*Alabama Legislative Black Caucus v. Alabama*,
575 U.S. 254 (2015)..................................................................................................... 14

*Baird v. Consolidated City of Indianapolis*,
No. IP87-111C, 1991 WL 557613 (S.D. Ind. Apr. 25, 1991)....................................... 18

*Bost v. Illinois State Board of Elections*,
146 S. Ct. 513 (2026).................................................................................................... 19

*Briscoe v. Kusper*,
435 F.2d 1046 (7th Cir. 1970) ...................................................................................... 13

*Brown v. Plata*,
563 U.S. 493 (2011)...................................................................................................... 10

*Callais v. Landry*,
732 F. Supp. 3d 574 (W.D. La. 2024).............................................................. 2, 14, 15

*Callais v. Louisiana*,
No. 25A1997 (U.S. May 4, 2026)............................................................................. 2, 15

*Charles H. Wesley Education Foundation, Inc. v. Cox*,
408 F.3d 1349 (11th Cir. 2005) .................................................................................... 17

*Clinton v. Jones*,
520 U.S. 681 (1997)...................................................................................................... 10

*Covington v. North Carolina*,
316 F.R.D. 117 (M.D.N.C. 2016) ................................................................................. 17

*Cowan v. Cleveland School District*,
748 F.3d 233 (5th Cir. 2014) ........................................................................................ 10

*Democratic National Committee v. Wisconsin State Legislature*,
141 S. Ct. 28 (2020)...................................................................................................... 20

*Duncan v. Poythress*,
657 F.2d 691 (5th Cir. 1981) ........................................................................................ 13

*Griffin v. North Carolina State Board of Elections*,
781 F. Supp. 3d 411 (E.D.N.C. 2025)........................................................................... 13

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944)..............................................................................................11

*Hoblock v. Albany County Board of Elections*,
422 F.3d 77 (2d Cir. 2005)..................................................................................13

*Kostick v. Nago*,
878 F. Supp. 2d 1124 (D. Haw. 2012) .................................................................18

*Landis v. North American Co.*,
299 U.S. 248 (1936).......................................................................................10, 11

*Louisiana v. Callais*,
No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026) ........................................1, 2

*Malliotakis v. Williams*,
146 S. Ct. 809 (2026).............................................................................................20

*Marks v. Stinson*,
19 F.3d 873 (3d Cir. 1994)....................................................................................17

*Merrill v. Milligan*,
142 S. Ct. 879 (2022).......................................................................................19, 20

*Norman v. Reed*,
502 U.S. 279 (1992)...............................................................................................13

*North Carolina v. Covington*,
581 U.S. 486 (2017)...............................................................................................11

*North Carolina v. Covington*,
585 U.S. 969 (2018)...............................................................................................11

*Pierce v. North Carolina State Board of Elections*,
97 F.4th 194 (4th Cir. 2024) ................................................................................18

*Purcell v. Gonzales*,
549 U.S. 1 (2006)........................................................................................2, 12, 18

*Republican National Committee v. Democratic National Committee*,
589 U.S. 423 (2020)...............................................................................................15

*Reynolds v. Sims*,
377 U.S. 533 (1964).................................................................................1, 12, 18, 19

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) ..................................................................................2

*Robinson v. Callais*,
144 S. Ct. 1171 (2024)................................................................................................ 2, 20

*Roe v. State of Alabama By & Through Evans*,
43 F.3d 574 (11th Cir. 1995) ............................................................................................ 13

*Seamon v. Upham*,
536 F. Supp. 1030 (E.D. Tex. 1982)................................................................................... 18

*Southwest Voter Registration Education Project v. Shelley*,
344 F.3d 914 (9th Cir. 2003) ...................................................................................... 15, 20

*Swann v. Charlotte-Mecklenburg Board of Education*,
402 U.S. 1 (1971)............................................................................................................. 11

*Upham v. Seamon*,
456 U.S. 37 (1982)........................................................................................................... 12

*Valley v. Rapides Parish School Board*,
702 F.2d 1221 (5th Cir. 1983) .................................................................................... 10, 17

**Statutes**

52 U.S.C. § 20310...................................................................................................................... 3

La. Rev. Stat, § 18:410............................................................................................................. 16

La. Rev. Stat. § 18:1309........................................................................................................... 16

La. Rev. Stat. § 18:401............................................................................................................. 14

La. Stat. Ann. § 18:1306 ............................................................................................................ 3

La. Stat. Ann. § 18:1308 ............................................................................................................ 3

**Other Authorities**

Alyse Pfeil,
*Fiery hearing over Louisiana redistricting shows historic stakes: 'The country is
watching'*, NOLA.com, (May 8, 2026),
https://www.nola.com/news/politics/louisiana-redistricting-legislature-
hearing/article_e8c0fabc-6174-4902-99b9-8fa0541f8acf.html. ........................................... 16

Emily Cochraine, Tim Balk, Nick Corasaniti, and Aidan McCahill,
*'A Huge Mess' Delayed Louisiana Primaries Stoke Confusion at Ballot Box*, New
York Times (May 2, 2026),
https://www.nytimes.com/2026/05/02/us/politics/louisiana-voting-confusion-
court.html. ............................................................................................................................ 6

Emily Cochrane, Tim Balk, Nick Corasaniti, and Aidan McCahill,
*Delayed Louisiana Primaries Stoke Confusion at Ballot Box*, New York Times (May
2, 2026), https://www.nytimes.com/2026/05/02/us/politics/louisiana-voting-
confusion-court.html. ............................................................................................... 8

Gaby Vinick and Oren Oppenheim,
*Louisianians sound the alarm about voter confusion after House primaries delayed*,
ABC News (May 6, 2026), https://abcnews.com/Politics/louisianians-sound-alarm-
voter-confusion-after-house-primaries/story?id=132717237. ...................................... 4, 7, 14

Julie O'Donoghue,
*Louisiana's US House candidates in limbo continue their campaign*, LA Illuminator
(May 3, 2026), https://lailluminator.com/2026/05/03/louisiana-house-candidates/. ......... 6, 7, 9

Legislature's Calendar,
https://legis.la.gov/legisdocs/26RS/LastLegs.htm ...................................................... 16

Louisiana Secretary of State,
Statewide Early Voting Statistical Report, https://perma.cc/W5UV-4GXJ. ........................... 6

News Release, Louisiana Secretary of State Nancy Landry,
*Louisiana U.S. House of Representatives Races Suspended* (Apr. 30, 2026),
https://perma.cc/4XB9-WGHF. ................................................................................ 5

Office of the Governor,
Executive Order No. JML 26-038 (April 30, 2026), https://perma.cc/8K4G-JMVL. ......... 5, 14

Secretary of State,
Statewide Early Voting Statistical Report,
https://electionstatistics.sos.la.gov/Data/Early_Voting_Statistics/statewide/2026_0516
_StatewideStats.pdf.................................................................................................. 4

Tyler Bridges,
*As Louisiana makes big, sudden changes to elections, many voters report confusion*,
NOLA.com (May 5, 2026), https://www.nola.com/news/politics/recent-election-
changes-caused-confusion-for-early-voters/article_fb01521c-fbf7-400b-ba3c-
273c9e8181de.html................................................................................................. 7

**INTRODUCTION**

Following the U.S. Supreme Court's decision in *Louisiana v. Callais*, No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026), Louisiana officials, including Governor Jeff Landry and Defendant Secretary of State Nancy Landry, reacted with haste and little to no planning to attempt to comply with this Court's injunction against the use of Louisiana's current congressional map ("S.B. 8") in any election, ECF No. 198, by attempting to cancel the primary election that was already in progress. The result has been chaos and confusion for voters, candidates, and election officials, who have continued to vote, to campaign, and to conduct elections using ballots and voting machines that continue to include the congressional primary races. Despite the havoc the Governor's and Secretary's actions have caused, the State and state officials have identified no path forward that will ensure congressional elections can take place this year under a yet to be identified map without collaterally violating the constitutional rights of the hundreds of thousands of Louisianians who have already cast ballots. In these circumstances, this Court has the equitable power and discretion to stay the injunction pending the conclusion of the 2026 midterm elections, and then proceed with a deliberate remedial process that will allow the development of a constitutional map without disrupting an ongoing election and compounding the State's violation. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) ( "[W]here an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid.").

Accordingly, Intervenors respectfully request that the Court stay the injunction until after the conclusion of the 2026 election.

## FACTUAL BACKGROUND

**I.    Louisiana's 2024 Congressional Map and the *Callais* Litigation**

Louisiana enacted S.B. 8 on January 22, 2024. *See Callais v. Landry*, 732 F. Supp. 3d 574, 587 (W.D. La. 2024), *aff'd sub nom.*, *Louisiana v. Callais*, No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026). It did so after the Fifth Circuit Court of Appeals affirmed a district court finding that Black voters and organizations who had challenged the previous congressional districting plan were likely to succeed in showing that the challenged plan resulted in discrimination against Black Louisianians in violation of Section 2 of the Voting Rights Act. *See Robinson v. Ardoin*, 86 F.4th 574, 599 (5th Cir. 2023).

Plaintiffs here filed this lawsuit challenging S.B. 8, alleging that the new opportunity-to-elect district created by S.B. 8 was an unconstitutional racial gerrymander. ECF No. 1, ¶¶ 75-108. This Court agreed and enjoined S.B. 8 on April 30, 2024. *See Callais*, 732 F. Supp. 3d at 614. On May 15, 2024, the Supreme Court stayed the injunction, leaving S.B. 8 in place for the 2024 elections. *Robinson v. Callais*, 144 S. Ct. 1171 (2024). It did so by applying the principle derived from *Purcell v. Gonzales* that court-ordered changes made too close to an election "can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id*. (citing *Purcell v. Gonzales*, 549 U.S. 1 (2006)).

After two rounds of briefing and argument, the Supreme Court rendered its decision on April 29, 2026, affirming the decision of this Court finding that District 6 in S.B. 8 was a racial gerrymander and remanded for further proceedings. *Callais*, 2026 WL 1153054. The Supreme Court then issued a mandate: "it is ordered and adjudged by this Court that the judgment . . . is affirmed, and the cases are remanded to the United States District Court for the Western District of Louisiana for proceedings consistent with the opinion of this Court." *Callais v. Louisiana*, No.

2

25A1197 (U.S. May 4, 2026). The Supreme Court did not offer guidance on the scope or timing

of the remedy, but left that determination to this Court's discretion.

**II.     Hundreds of Thousands of Louisiana Voters Have Already Voted in the Primary Under the Current Congressional Map.**

Louisiana's primary elections this year—including the congressional party primaries,

several ballot initiatives, and other races—were scheduled for May 16, 2026. The Supreme Court's

decision came *almost a month after voting had already begun* in that election. Indeed, as of today,

*hundreds of thousands of voters* have already cast ballots in this election.

The voting process began on or before April 1, 2026, when Louisiana registrars mailed

primary ballots to overseas voters (including members of the military) at least 45 days before

Election Day for the primary, as required under the federal Uniformed and Overseas Citizen

Absentee Voting Act ("UOCAVA"). *See* 52 U.S.C. § 20310. Subsequently, around April 25, 2026,

or about 20 days before the election, local registrars began mailing ballots to all eligible voters

who had previously requested to vote by mail and who were qualified to do so under Louisiana

law. *See* La. Stat. Ann. §§ 18:1306(C)(1), 18:1308(A)(1)(a). Thereafter, registrars continued to

mail ballots upon receipt of a valid vote-by-mail request from a qualified voter. *See id*.

Many voters subsequently marked and returned their mail ballots, including casting votes

in the congressional party primary elections. One of these voters is Intervenor Ambrose Sims. Mr.

Sims has already filled out his ballot completely, including voting in his congressional primary

election, and returned his ballot by mail on April 30, 2026. *See* Ex. A, May 1, 2026 Affidavit of

Ambrose Sims at ¶¶ 6-8. Additionally, Intervenor Louisiana NAACP has approximately 5,000

members throughout Louisiana, including Louisianians who are registered voters and live in each

of the six congressional districts. *See* Ex. B, May 11, 2026 Declaration of Michael McClanahan

(Decl. McClanahan) at ¶¶ 7-8. Louisiana NAACP members have also already cast their absentee

3

ballots in the 2026 congressional primaries. *See id*. at ¶ 7. This includes NAACP member Shawon

Bernard. *See* Ex. C, May 1, 2026 Affidavit of Shawon Bernard at ¶¶ 6-8; Decl. McClanahan at ¶

4. Many other Louisiana voters have casts ballots in the 2026 primaries as well. According to the

Secretary of State, currently more than 56,000 absentee and overseas complete ballots have been

received as of May 10, 2026.[1]

Additionally, early voting started in Louisiana on May 2, 2026, and, as of May 10, 2026,

more than 192,000 early votes have been cast, including in all current congressional districts

having primaries under the current Louisiana law.[2] This means that as of the date of this filing,

*more than 249,000 voters in Louisiana have already voted*. The contests for the congressional

primaries appeared on all the absentee ballots that have been sent to voters in this election and

appeared on the voting machines and ballots provided to voters at early voting locations, even as

the Governor purports to have suspended the election as to those races.[3] These contests will also

appear on the ballots and voting machines used on Election Day, May 16, 2026.[4]

### III.    This Court Initiates Remedial Proceedings Amid an Active Primary Election and Ongoing Election Confusion.

On remand from the Supreme Court, this Court initiated a process to provide the State an

"opportunity to enact a Constitutionally compliant map consistent with the Supreme Court's

---

[1]    Secretary    of    State,    Statewide    Early    Voting    Statistical    Report, https://electionstatistics.sos.la.gov/Data/Early_Voting_Statistics/statewide/2026_0516_Statewide Stats.pdf.

[2] *Id*.

[3] A spokesman for the Secretary's office explained to the press that "the names of House candidates will appear on the ballot for early voters and on May 16." This is because it is "too late in the process to have to reprogram the [voting] software." *See* Gaby Vinick, Oren Oppenheim, *Louisianians sound the alarm about voter confusion after House primaries delayed*, ABC News (May 6, 2026), https://abcnews.com/Politics/louisianians-sound-alarm-voter-confusion-after-house-primaries/story?id=132717237.

[4] *Id*.

opinion . . . and this Court's injunction." ECF No. 261. At that point, the Secretary and the Governor worked together in an attempt to suspend the election, creating mass confusion among voters, candidates, and election officials, and threatening to nullify the votes that had already been and have continued to be cast. First, on April 30 the Secretary issued a press release certifying an "emergency," citing the Supreme Court's *Callais* decision, without explaining how that ruling constituted an emergency under state law:

> Pursuant to 18:401.1(B), I have certified the emergency in light of the Supreme Court ruling. This is a mandatory step prior to the Governor issuing an executive order suspending the upcoming Louisiana U.S. House races. All other races on the ballot, besides the U.S. House races, will continue as scheduled, with early voting beginning on Saturday . . . .[5]

Just a few hours after the Secretary issued her press release, the Governor signed an Executive Order that purported to suspend the congressional primary elections set for May 16.[6] Citing this Court's injunction "barring Louisiana from conducting any congressional elections under SB 8", the Executive Order provides:

> Due to the election emergency of unconstitutional maps as determined by the United States Supreme Court in *Louisiana v. Callais* et al., the closed party primaries for the offices of representative in the United States Congress are hereby suspended for the duration of the May 16, 2026 and June 27, 2026 election cycles and until July 15, 2026 or until such time as determined by the Legislature.[7]

The Executive Order states further, "The Legislature is hereby encouraged to pass legislation to enact new congressional maps and schedule those elections as soon as practical, including laws governing qualification of candidates, in order to conduct the November 3, 2026 election."[8]

---

[5] News Release, La. Sec'y of State Nancy Landry, Louisiana U.S. House of Representatives Races Suspended (Apr. 30, 2026), https://perma.cc/4XB9-WGHF.

[6] *See* Off. of the Gov., Exec. Order No. JML 26-038 (April 30, 2026), https://perma.cc/8K4G-JMVL.

[7] Exec. Order No. JML 26-038 at 2.

[8] *Id.*

The Governor issued this Executive Order after tens of thousands of Louisianians—including many of the Individual Intervenors and members of Intervenor Louisiana NAACP—had already cast their absentee ballots selecting their choice of congressional representative in the primary and less than two days before early voting began.[9] This includes Individual Intervenors and NAACP members whose votes will be nullified if this Court does not stay its Order, ECF No. 198, enjoining Louisiana's congressional map (i.e., S.B. 8) pending the 2026 Election. Beyond the impact on the votes of Individual Intervenors and their members, the State's attempt to comply with the injunction amid an ongoing election has caused widespread confusion among voters, candidates, and election officials.[10] In addition to the congressional elections, primary ballots include the race for U.S. Senate, a series of constitutional amendments, and, in many places, primaries for local offices. The Executive Order purports to cancel only the congressional primary, but, as explained, given the late date of the Executive Order, neither absentee ballots nor in-person ballots have been changed, and all ballots still include the congressional primary election, where multiple candidates are running for office. With their names still appearing on ballots and voters continuing to go to the polls, congressional candidates have continued to campaign. For example, as early voting began, a large campaign sign for state Rep. Mike Echols, a Republican running in Congressional District 5, still stood outside an early voting location in Livingston Parish.[11] Rep.

---

[9] La. Sec'y of State, Statewide Early Voting Statistical Report, https://perma.cc/W5UV-4GXJ (last updated May 10, 2026).

[10] *See* Emily Cochraine, Tim Balk, Nick Corasaniti, and Aidan McCahill, *'A Huge Mess' Delayed Louisiana Primaries Stoke Confusion at Ballot Box*, New York Times (May 2, 2026), https://www.nytimes.com/2026/05/02/us/politics/louisiana-voting-confusion-court.html.

[11] Julie O'Donoghue, *Louisiana's US House candidates in limbo continue their campaign*, LA Illuminator (May 3, 2026), https://lailluminator.com/2026/05/03/louisiana-house-candidates/.

Echols said he would be stumping parish to parish and go ahead with three campaign events he had scheduled for last Saturday.[12]

In short, there can be no doubt there is significant chaos and confusion about the status of the congressional primary and all the other races being voted on in Louisiana's primary election.[13] Many Louisiana voters have reported confusion about whether the entire primary election has been cancelled.[14] In fact, U.S. Senator Cassidy, who is running in the Republican primary, commented that some voters had learned the U.S. House primaries were postponed and "inevitably" think the Senate primaries have been delayed as well.[15] Intervenors are among those who experienced and witnessed confusion because of the Governor's sudden and unprecedented Executive Order. *See* Ex. D, May 1, 2026 Affidavit of Ashley K. Shelton at ¶¶ 11-12; *see also* Ex. B at ¶¶ 12-15 (noting that "[v]oters are not sure which elections have been cancelled or if they need to vote at all in this primary election. Voters are also extremely confused as whether votes they have already cast in a congressional primary election will be counted or voided."). Additionally, the confusion has resulted in lower participation in the early vote than would have been expected without the confusion caused by the Governor's Executive Order. *Id*. at ¶ 14.

---

[12] *Id.*

[13] Tyler Bridges, *As Louisiana makes big, sudden changes to elections, many voters report confusion*, NOLA.com (May 5, 2026) (describing widespread confusion), https://www.nola.com/news/politics/recent-election-changes-caused-confusion-for-early-voters/article_fb01521c-fbf7-400b-ba3c-273c9e8181de.html.

[14] For example. a voter reported to ABC News "It's a lot of chaos. A lot of people thinking we shouldn't vote today or there's no election". Gaby Vinick, Oren Oppenheim, *Louisianians sound the alarm about voter confusion after House primaries delayed*, ABC News (May 6, 2026), https://abcnews.com/Politics/louisianians-sound-alarm-voter-confusion-after-house-primaries/story?id=132717237.

[15] *Id.*

Interventors Louisiana NAACP and the Power Coalition had already expended significant resources to encourage voters to participate in the 2026 congressional primaries as they were originally scheduled. As result of the suspension of the primary and in response to the confusion it engendered, the Louisiana NAACP will need to expend more resources educating voters on when and how to cast their ballot. *See* Ex. B at ¶¶ 9-11. Additionally, if the election is rescheduled, the Louisiana NAACP will be forced to spend additional resources repeating its Get-Out-the-Vote efforts for these new elections, efforts that will be rendered even more difficult because of the confusion over whether voters are able to participate if they already voted in the originally scheduled election. *Id.* Similarly, Power Coalition created sample ballots for print and digital distribution reflecting the dates, offices, and amendments for the elections that had been set months in advance of the May 16 primary. *See* Ex. D at ¶¶ 8-11. Power Coalition also engaged in a statewide roadshow to education voters about the items on their ballots, including congressional races. *Id.* Following the Executive Order, Power Coalition will need to create new materials to rapidly equip voters with the information they need about the upcoming elections. *Id.*

This state of confusion and disillusionment extended to candidates and officials from both parties, with Senator Bill Cassidy decrying that, "[t]he way that the election has transpired, that has almost treated the voter with disrespect," and is "confusing to voters."[16] Similarly, Louisiana Republican strategist Lionel Rainey III called the fallout from the Executive Order "a huge mess," and "a nightmare scenario for elected officials," adding that "there is going to be unquestionably mass confusion at the polls."[17] One candidate explained that he did not receive word about the

---

[16] *See* Emily Cochrane, Tim Balk, Nick Corasaniti, Aidan McCahill, *Delayed Louisiana Primaries Stoke Confusion at Ballot Box*, New York Times (May 2, 2026), https://www.nytimes.com/2026/05/02/us/politics/louisiana-voting-confusion-court.html.

[17] *Id.*

suspension of the primary until "less than a day before early voting started," but also "received an email from the secretary of state's office saying his name would still appear on the ballot but votes for him would not be counted."[18] Another candidate told voters that "[e]ven though the governor is telling you those races have been suspended, if you see my name on the ballot, vote for me."[19] No further actions have been taken by the Governor or the Secretary of State to address the extreme voter and candidate confusion about the suspended primary. Even more concerning, the Legislature has taken no steps to address the situation either.

On May 7, 2026, the State filed its brief explaining how it is complying with the Supreme Court's opinion and this Court's injunction. Without providing any details, the State asserts that the "Governor is committed to signing into law any constitutionally compliant map that the Legislature enacts and in doing so in time for the congressional election to occur on November 3, 2026, as required by federal law." *See* State's Brief Explaining How It Is Complying With the Supreme Court's Opinion and This Court's Injunction, ECF No. 271 ("State's Brief"). In this Court and other courts, the State and the Secretary have previously argued that changing the congressional maps even months before an election would be impossible and that attempting to rush the process would risk errors that could disenfranchise voters, burden local election officials, and create chaos and confusion.[20]

---

[18] Julie O'Donoghue, *Louisiana's US House candidates in limbo continue their campaigns*, La. Illuminator (May 3, 2026), https://lailluminator.com/2026/05/03/louisiana-house-candidates.

[19] *Id.*

[20] ECF No. 217 at 2-3, 6 (asserting the Secretary "needed an approved congressional plan no later than May 15, 2024 in order to have sufficient time and resources needed to administer the 2024 elections pursuant to federal and state law" for a November election); ECF No. 222-1 at 5; Emergency App. for Stay Pending Appeal, No. 23A1002, *Landry v. Callais* at 21–24 (U.S May 10, 2024) (detailing the burdens on voters, candidates, and local election officials if Louisiana did not have a congressional map by May 15, 2024 for its November elections).

9

## ARGUMENT

"The scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011); *see also Cowan v. Cleveland Sch. Dist.*, 748 F.3d 233, 239 (5th Cir. 2014) (quoting *Valley v. Rapides Par. Sch. Bd.*, 702 F.2d 1221, 1225 (5th Cir. 1983)). More specifically, this Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). When the Supreme Court issued its judgment, that had the effect of lifting its stay of this Court's injunction against the use of S.B. 8. Subsequently, based on the threat of the injunction, the State has initiated a hasty and disordered process of attempting to halt an election already in progress.

But while the Supreme Court has now affirmed this Court's finding that Louisiana violated the Fourteenth Amendment when it drew District 6 and enacted S.B. 8, it left the scope and timing of the remedy to this Court's discretion. To allow for an orderly remedial process—one that does not result in mass confusion and disenfranchisement of voters, harm to candidates who have been running their campaigns for months, and disruption and added expense for local election officials—this Court should exercise its discretion to stay its injunction until after the conclusion of the 2026 congressional election. Doing so will permit the State to engage in a transparent and meaningful deliberative process to produce a congressional redistricting plan for the 2028 election that complies with the law and serves the interests of all Louisianians. *See Landis v. North American Co.*, 299 U.S. 248, 256 (1936) ("Especially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted."). Perhaps even more importantly, it will avoid the anti-democratic result of canceling hundreds of thousands of ballots already cast in the primary election and remedy the extensive confusion—among voters and

10

candidates alike—that has followed the State's unprecedented and hasty efforts to revamp the map during an ongoing election.

Courts possess the inherent equitable power to withhold, delay, and shape the implementation of any remedy in the public interest, and they routinely exercise that power in redistricting cases when not doing so would result in chaos and confusion (as the circumstances now before the Court have proven will follow in this case). *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. Of Ed.*, 402 U.S. 1, 16 (1971) ("The task is to correct, by a balancing of the individual and collective interests, the condition that offends the Constitution."); *Hecht Co. v. Bowles*, 321 U.S. 321, 331 (1944); *Landis*, 299 U.S. at 256. Relief must be calibrated to the circumstances and account for the practical realities that immediate implementation would impose on the public interest, especially when implementation involves great complexity. *Landis*, 299 U.S. at 256. While this Court has a "duty to cure illegally gerrymandered districts"—here, only District 6—it must also do so in "an orderly process *in advance of* elections." *North Carolina v. Covington* ("*Covington II*"), 585 U.S. 969, 977 (2018) (emphasis added). An orderly process is one calibrated so that remedying one constitutional violation does not create another constitutional violation. *North Carolina v. Covington* ("*Covington I*"), 581 U.S. 486, 488 (2017) (reversing order after trial requiring special elections where the district court failed to consider "the extent of the likely disruption to the ordinary processes of governance," the "need to act with proper judicial restraint," and the "'balancing of the individual and collective interests' at stake") (citation omitted).

In granting relief, this Court "must undertake an 'equitable weighing process' to select a fitting remedy for the legal violations it has identified, taking account of 'what is necessary, what is *fair*, and what is *workable*.'" *Id.* (emphasis added) (citations omitted). Courts have consistently

11

recognized—in the redistricting context specifically—that "equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid." *Reynolds*, 377 U.S. at 585. When "[n]ecessity" so requires, the Supreme Court has "authorized District Courts to order or to permit elections to be held pursuant to apportionment plans that do not in all respects measure up to ... constitutional requirements." *Upham v. Seamon*, 456 U.S. 37, 44 (1982). Thus, "where an impending election is imminent and a State's election machinery is already in progress," delaying implementation of a remedy may be justified. *Reynolds*, 377 U.S. at 585; *see also Purcell*, 549 U.S. at 4-5 (tailoring injunctive relief around an impending election).

> In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

*Reynolds*, 377 U.S. at 585-586.

**I.      The State Has Identified No Feasible Plan for Implementing the Injunction in 2026 Without Harm to Louisiana Voters, Candidates, and Election Officials and Without Threatening the Integrity of the Democratic Process.**

The State's response to this Court's request to detail how it "intends to comply with the Supreme Court's Opinion" and "this Court's Injunction," proves exactly why the proper course is for this Court to defer implementation of a new congressional plan until <u>after</u> this year's elections. The State's response provides this Court with nothing of substance beyond empty assurances about what the Legislature may or may not do and when, and the vague promise that it is "committed to a constitutional congressional election in Louisiana in 2026." ECF No. 271 at 4. There is good reason for this vagueness.

Louisiana cannot commit to a "constitutional congressional election" this year by discarding the one that is ongoing. This negation of hundreds of thousands of properly cast ballots in the middle of an election constitutes exactly the type of decision that violates "the right to be free from the purposeful decision of state officials to deny the citizens of a state the right to vote in an election mandated by law," which "jeopardize[s] the integrity of the electoral process." *Duncan v. Poythress*, 657 F.2d 691, 705, 702 (5th Cir. 1981). For the hundreds of thousands of voters who have already cast a ballot in the congressional primaries, it is "hard to envision a more 'severe restriction' than retroactive invalidation of one's vote." *Griffin v. N.C. State Bd. of Elections*, 781 F. Supp. 3d 411, 449 (E.D.N.C. 2025) (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

The "substantive guarantees of the due process clause" include "the right to be free from the purposeful decision of state officials to deny the citizens of a state the right to vote in an election mandated by law." *Duncan*, 657 F.2d at 705. This constitutional violation includes situations where, as here, "election officials refuse to tally absentee ballots that they have deliberately (even if mistakenly) sent to voters . . . ." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 98 (2d Cir. 2005). As such, where "fundamental, constitutionally protected liberties are adversely affected," applying a new rule "to nullify previously acceptable" ones is "unfair and violate[s] due process." *Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970); *see also Roe v. State of Ala. By & Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) (finding a substantive due process violation where "plaintiffs have demonstrated fundamental unfairness" in election procedures due to a ruling that occurred after voting).

Knowing that it has no solution for the chaos currently playing out in election offices and early voting sites across the state, Louisiana demurs as to any real plan. It points to Governor

13

Landry's Executive Order that purports to order election officials to stop counting votes for the congressional primaries mid-stream, based on his questionable assertion that the Supreme Court's opinion and this Court's injunction constitute the type of situation that justifies the invocation of emergency powers. *See* State's Brief at 2 (citing Exec. Order); s*ee also* La. Rev. Stat. §18:401(A), (B).[21]

Putting aside whether the Governor had the legal authority to issue the Executive Order, he has not, in fact, halted voting in the congressional primary elections. Because the names of the candidates for congress still appear on the ballots and voting machines voters receive, voters are continuing to cast their votes for their preferred candidates in those races. *See supra* n.3. Thus, the harm Louisiana voters will suffer if these elections are invalidated after the fact continues to compound. Louisiana has offered no explanation of how it intends to remedy this harm and it has offered no clear plan for how any reschedule primary would proceed. This harm is especially egregious given that this racial gerrymandering claims apply "district-by-district"—not to the map "as an undifferentiated 'whole.'" *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015)—and this Court only found that one district, District 6, was a racial gerrymander. *Callais v. Landry*, 732 F. Supp. 3d 574, 613 (W.D. La. 2024), *aff'd sub nom. Louisiana v. Callais*, No. 24–109, 2026 WL 1153054 (U.S. Apr. 29, 2026). As much as it can be deciphered, Louisiana's plan appears as follows. First, the State will act as if the Governor's legally unsound Executive

---

[21] The text of the provision invoked by the Governor, Section 401.1, appears to contemplate natural disasters or similar threats to life or health as the sort of emergencies that justify delaying or suspending elections, not court rulings or intervening changes in legal standards. *See*, *e.g.*, La. Rev. Stat. § 18:401.1(A) (authorizing executive action to "provide a safe and orderly procedure for persons seeking to qualify or exercise their right to vote" and "minimize to whatever degree possible a person's exposure to danger during declared states of emergency"); *id.* § 18:401.1(B) (empowering local officials to seek executive action "due to natural disasters"); *id.* § 18:401.1(D) (requiring local election officials, at the conclusion of the emergency, to "identify the number of polling places that are functional and the number of polling places that have been destroyed").

Order suspending voting in a single race in a statutorily required election that otherwise continues has in fact established a status quo in which the primary has not already taken place. Second, the State will ignore the hundreds of thousands of voters who already cast ballots and continue to cast ballots and offer a vague promise of some future resumption of voting under an as yet unidentified map at some point in 2026. Third, the State will pretend that its choice to sow chaos in its elections is the mandate from the Supreme Court and/or this Court.

Having addressed the deficiencies in the first two parts of Louisiana's plan above, we turn to the third. The Supreme Court's decision to grant Louisiana's application to issue the judgment forthwith does not mean that the Court's majority has endorsed—much less commanded—relief that would stop an ongoing election and throw out hundreds of thousands of properly cast votes. The order granting the application was premised entirely on the (mistaken) view that the *Robinson* appellants had "not expressed any intent to ask this Court to reconsider its judgment," and there was therefore no reason to delay allowing this Court to exercise its discretion to engage in appropriate remedial proceedings. *Id.* Tellingly, Justice Alito's concurrence in that decision, suggesting that elections under new maps may go forward this year, *see* Order on Appl. to Issue the Judgment Forthwith, *Callais v. Louisiana*, No. 25A1997 (U.S. May 4, 2026) (Alito, J., concurring), was joined by only two other members of the Court. Thus, there is no basis for the suggestion that the Supreme Court intended to set loose "this kind of judicially created confusion." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 425 (2020). Indeed, "[t]he decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (collecting cases).

15

Moreover, the Legislature's inaction has contributed greatly to the confusion created by the suspended election. As the Executive Order appears to recognize, the Governor does not actually have the power to change the election date or processes. This lack of authority is why neither the Governor nor the Secretary of State have provided any guidance about how the supposedly canceled congressional primary election will actually be conducted. Attempting to do so would be plainly inconsistent with Louisiana law, which clearly delineates the date and the process for the primaries.[22] Only the Legislature has the authority to amend these existing laws. Yet days after the Governor issued his improper Executive Order, the Legislature has not even attempted to address rescheduling the primary even though they were in session all last week.[23] And a hearing on potential new maps at the capitol last week devolved into shouting and acrimony as legislators attempted to shut down public input and debate.[24]

To avoid the disruption, confusion, and threat to the electoral process that would result from a hurried and chaotic remedial process, this Court should exercise its discretion to stay the injunction and institute an orderly path to new maps once the current election cycle has concluded.

---

[22] Under La. Rev. Stat, § 18:410.3(A), Louisiana conducts semi-closed party primaries for elections to seats in the United States House of Representatives, among other offices. The use of party primaries is the result of legislation enacted in 2024. *See* Act 1 of the 2024 First Extraordinary Session. The date of the primary is also established by statute - early voting for the May 16, 2026 primary election began on Saturday, May 2, 2026. La. Rev. Stat. § 18:1309.A(1)(a)(i).

[23] *See* the Legislature's Calendar, available at https://legis.la.gov/legisdocs/26RS/LastLegs.htm.

[24] *See* Alyse Pfeil, *Fiery hearing over Louisiana redistricting shows historic stakes: 'The country is watching'*, NOLA.com, (May 8, 2026) (describing disputes during Friday's public hearing, including as to when and whether to take breaks in the hearing and cut off testimony of witnesses), https://www.nola.com/news/politics/louisiana-redistricting-legislature-hearing/article_e8c0fabc-6174-4902-99b9-8fa0541f8acf.html.

**II.     Staying the Injunction is Necessary to Avoid Irreparable Harm to Voters and Ensure an Orderly Remedial Process.**

A stay of the injunction will advance the public interest by avoiding upending an election already in progress with ballots already cast. Protecting "franchise-related rights is without question in the public interest." *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005). And certainly, the public interest "is not served by arbitrarily ignoring the absentee vote." *Marks v. Stinson*, 19 F.3d 873, 888 (3d Cir. 1994). Instead, "the public interest is enhanced" by ensuring that eligible citizens are entitled to cast an effective ballot, "which comports with basic protections of due process to which all citizens are entitled." *Valley*, 118 F.3d 1047 at 1056. In *Covington*, for example, the Supreme Court affirmed a district court judgment that invalidated a state legislative map as an unconstitutional racial gerrymander, but delayed remedial proceedings until after the general election, concluding that

> due to the mechanics of state and federal election requirements, there is insufficient time, at this late date, for: the General Assembly to draw and enact remedial districts; this Court to review the remedial plan; the state to hold candidate filing and primaries for the remedial districts; absentee ballots to be generated as required by statute; and for general elections to still take place as scheduled.

*Covington v. North Carolina*, 316 F.R.D. 117, 177 (M.D.N.C. 2016), *aff'd*, 581 U.S. 1015 (2017).

As in *Reynolds* and *Covington*, here, the public interest in the orderly administration of ongoing elections counsels that this Court exercise its equitable power to delay imposing a remedy for Louisiana's violation of the Fourteenth Amendment to avoid the disruption, chaos, voter confusion, disillusionment, and disenfranchisement that would result from immediate implementation. Doing so will avoid allowing the remedy for a newly established constitutional violation to create a collateral violation of the constitutional rights of hundreds of thousands of Louisiana voters. Doing otherwise would void timely cast ballots and unsettle expectations after candidates have already invested significant effort and expense in their campaigns and local

17

election officials have committed substantial resources to administering the election. *See Reynolds*, 377 U.S. at 585-586. No public interest is served by cancelling an election that is already in process, resulting in "voter confusion concerning both issues and candidates" and "in diminished voter participation." *Seamon v. Upham*, 536 F. Supp. 1030, 1034 (E.D. Tex. 1982); *see also Kostick v. Nago*, 878 F. Supp. 2d 1124, 1147 (D. Haw. 2012) (delaying specific election would cause "grave confusion and potential chaos at the polls," which "is directly contrary to the powerful public interest in avoiding disruption of the primary election"); *Baird v. Consol. City of Indianapolis*, No. IP87-111C, 1991 WL 557613, at *11 (S.D. Ind. Apr. 25, 1991) (postponing "the primary would . . . raise the possibility of disappointingly low voter turnout at a subsequent election").

With the 2026 primary well underway and over 249,000 votes cast, "candidates and voters alike are now entitled to the stability and sense of repose that engender trust and confidence in our elections." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 229 (4th Cir. 2024). A stay to protect the integrity of the 2026 congressional elections and allow a remedy to be developed in an open and transparent process is necessary and appropriate.

Appropriately tailoring the timing of the remedy in no way casts doubt on the seriousness of Louisiana's constitutional violation or minimizes the harm to Plaintiffs. *See Reynolds*, 377 U.S. at 585; *Purcell*, 549 U.S. at 6 (Stevens, J., concurring). Consistent with this Court's inherent authority, Intervenors simply seek a deliberative remedial process focused on District 6 that is tailored to best serve the public interest and avoid Louisiana compounding its constitutional violation through a rushed and haphazard process. This is consistent with the approach that federal courts have consistently taken for decades in the redistricting context. It has long been understood that where "an impending election is imminent and the State's election machinery is already in

18

progress, equitable considerations" demand that courts stay any relief that would upend the process until after the "impending" election. *Reynolds*, 377 U.S. at 585. Here, the election is not just "impending," it has been ongoing for well over a month.

**III.    The *Purcell* Principle Calls for Full Implementation of the Court's Order *After* the 2026 Election Cycle.**

Precisely because of concerns about the voter confusion that we are now witnessing firsthand in Louisiana, the Supreme Court developed the *Purcell* principle, pursuant to which federal courts are warned against modifying or altering a state's voting rules, including electoral maps, close to an election. *See Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). The principle applies a fortiori when voters have already cast votes in an election. *Cf. Abbott v. League of United Latin American Citizens*, 146 S. Ct. 418, 419 (2025) ("The District Court improperly inserted itself into an active primary campaign, causing much confusion and upsetting the delicate federal-state balance in elections."); *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 521 (2026) (explaining that "[t]he democratic consequences" of late-breaking judicial changes to election rules "can be even more dire if courts intervene only after votes have been counted").

Changing the electoral map long after candidates have qualified to appear on the ballot, after ballots with their names have been printed, after voters have already returned ballots (even before the purported cancellation of the election), and while voters continue to appear at early voting cites and choose candidates in the congressional primaries is precisely the type of chaos that gave rise to the *Purcell* principle and runs in clear violation of that and several subsequent decisions of the Supreme Court. *See*, *e.g.*, *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring) ("changes [must] be feasible without significant cost, confusion, or hardship"). As Justice Kavanaugh explained in staying an injunction against Alabama's congressional map with the

beginning of voting in a primary seven weeks away, even "heroic efforts by . . . state and local authorities in the next few weeks . . . likely would not be enough to avoid chaos and confusion." *Id*. at 880 (Kavanaugh, J., concurring).

*Purcell* prevents this sort of "'[l]ate judicial tinkering' that 'can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others.'" *Malliotakis v. Williams*, 146 S. Ct. 809, 811 (2026) (Alito, J., concurring) (citation modified). "The Court's precedents recognize a basic tenet of election law: When an election is close at hand, the rules of the road should be clear and settled . . . because running a statewide election is a complicated endeavor." *Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring). "The decision to enjoin an impending election is so serious that the Supreme Court has allowed elections to go forward even in the face of an undisputed constitutional violation." *Sw. Voter Registration Educ. Project*, 344 F.3d at 918 (collecting cases).

In earlier stages of this very litigation, when the November congressional election in 2024 was months and months away and even though there was no intervening primary election, the Supreme Court stayed this Court's Order on May 15, 2024, in reliance on *Purcell*, despite this Court's ruling that S.B. 8 was unconstitutional. *See Robinson v. Callais*, 144 S. Ct. 1171 (2024). Now, when candidates have declared their candidacy, ballots have been printed and sent, and voters have already cast and are in the middle of casting ballots, the concerns that animate the *Purcell* principle are far more acute and the doctrine plainly requires staying or delaying the injunction.

## **CONCLUSION**

For all of the reasons above, the Robinson and Galmon Intervenors respectfully request that this Court stay the injunction of S.B. 8 pending the completion of the 2026 election in November so that an orderly remedial process can produce a constitutionally-compliant map for

the 2028 election—without disenfranchising the nearly 250,000 Louisianians who have already

cast ballots in the ongoing primary or sowing further chaos in an election already underway.


DATED: May 11, 2026                              Respectfully submitted,

By: /s/ *Tracie L. Washington*                   By: /s/ *John Adcock*
Tracie L. Washington                             John Adcock
LA. Bar No. 25925                                Adcock Law LLC
Louisiana Justice Institute                      3110 Canal Street
8004 Belfast Street                              New Orleans, LA 70119
New Orleans, LA 70125                            Tel: (504) 233-3125
Tel: (504) 872-9134                              jnadcock@gmail.com
tracie.washington.esq@gmail.com

                                                 *Counsel for Robinson Intervenors*
*Counsel for Intervenors Dorothy Nairne,*
*Martha Davis, Clee Earnest Lowe, and Rene*
*Soule*


Stuart Naifeh (admitted *pro hac vice*)          Sarah Brannon (admitted *pro hac vice*)
Victoria Wenger (admitted *pro hac vice*)        American Civil Liberties Union Foundation
Colin Burke (admitted *pro hac vice*)            915 15th Street, N.W.
NAACP Legal Defense and                          Washington, DC 20005
Educational Fund, Inc.                           sbrannon@aclu.org
40 Rector Street, 5th Floor
New York, NY 10006                               Sophia Lin Lakin (admitted *pro hac vice)*
Tel: (212) 965-2200                              Davin Rosborough (*pro hac vice forthcoming)*
snaifeh@naacpldf.org                             Theresa J. Lee (*pro hac vice forthcoming)*
vwenger@naacpldf.org                             Dayton Campbell-Harris (*pro hac vice*
cburke@naacpldf.org                              forthcoming)*
                                                 American Civil Liberties Union Foundation
I. Sara Rohani (admitted *pro hac vice*)         125 Broad Street, 18th Floor
NAACP Legal Defense and                          New York, NY 10004
Educational Fund, Inc.                           slakin@aclu.org
700 14th Street N.W. Ste. 600                    drosborough@aclu.org
Washington, DC 20005                             tlee@aclu.org
Tel: (202) 682-1300                              dcampbell-harris@aclu.org
srohani@naacpldf.org
                                                 Nora Ahmed
Robert A. Atkins (admitted *pro hac vice*)       NY Bar No. 5092374 (admitted *pro hac vice*)
Yahonnes Cleary (admitted *pro hac vice*)        ACLU Foundation of Louisiana
Amitav Chakraborty (admitted *pro hac vice*)     1340 Poydras Street, Ste. 2160
Adam P. Savitt (admitted *pro hac vice*)         New Orleans, LA 70112
Arielle B. McTootle (admitted *pro hac vice*)    Tel: (504) 522-0628

21

Robert Klein (admitted *pro hac vice*)
Neil Chitrao (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
LLP
1285 Avenue of the Americas
New York, NY 10019
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com
nchitrao@paulweiss.com

*Additional counsel for Robinson Intervenors*

\*Practice is limited to federal court.

nahmed@laaclu.org

T. Alora Thomas-Lundborg (admitted *pro hac vice*)
Race and Law Clinic
Harvard Law School
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 495-5202
tthomaslundborg@law.harvard.edu

Lalitha D. Madduri
Jacob D. Shelly
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW
Suite 400
Washington, D.C. 20001
(202) 968-4490
lmadduri@elias.law
jshelly@elias.law

/s/ *Abha Khanna*
Abha Khanna
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, Washington 98101
(206) 656-0177
AKhanna@elias.law

*Counsel for Galmon Intervenors*

22

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, a true copy of this document was filed via the

Court's CM/ECG system and that a copy will be sent automatically to all counsel of record.

/s/ *John Adcock*
John Adcock
