**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

PHILLIP CALLAIS, et al.,
                    Plaintiffs,

v.

NANCY LANDRY, in her official
capacity as Secretary of State
of the State of Louisiana,
                    Defendant.

Civil Action No. 3:24-cv-00122

Hon. Carl E. Stewart
Hon. Robert R. Summerhays
Hon. David C. Joseph

## REPLY IN SUPPORT OF LAUREN JEWETT'S MOTION TO INTERVENE

**INTRODUCTION**

The State's opposition rests on three premises, each of which collapses on inspection. First, the State contends that the transfer of Collins v. Landry to this Court renders intervention here "duplicative." It does not. Jewett's position as a Collins plaintiff (challenging the Executive Order that suspended scheduled elections) is procedurally and substantively distinct from her position as a movant-intervenor in this remedial proceeding (defending the temporal scope of any remedial decree against retroactive extinguishment of vested candidacies). Second, the State argues that Jewett's claims are unripe and speculative. They are neither. The May 16, 2026, congressional primary in which Jewett qualified has already been suspended by Executive Order JML 26-038. That suspension is not a contingent future event; it is the operative status quo as of this filing, and the harm it inflicts is concrete, particularized, and ongoing. Third, the State claims Jewett cannot satisfy Rule 24. She satisfies every element: her motion arrives at the earliest possible moment in the remedial phase, her interest in qualified candidate status under Louisiana election law is direct and legally protectable, and the Secretary (who is administering the very suspension Jewett challenges) does not and cannot adequately represent Jewett's interest in preserving the nomination process the Secretary has herself declared an emergency to suspend.

The State's requested disposition, denial, or indefinite abeyance pending the Legislature's action, is not a neutral procedural option. It is a calculated effort to ensure that Jewett has no voice during the only phase in which her interests can be meaningfully heard. If intervention is deferred

until after a remedial map is enacted and an implementing election schedule is set, Jewett's ability to shape the temporal scope of relief will have been foreclosed by the very passage of time the State urges this Court to permit. Rule 24 does not require, and Article III does not authorize, that result.

## ARGUMENT

## I.    JEWETT'S PLAINTIFF STATUS IN COLLINS DOES NOT MAKE HER INTERVENTION HERE UNNECESSARY OR DUPLICATIVE.

The State's lead argument depends entirely on a category error. Each of the cases the State cites involved consolidation or transfer that placed the movant in the same procedural posture, on the same side of the v., as a party already in the action. That is not Jewett's situation.

In *Christoff v. Inglese*, consolidation made the proposed intervenor a co-plaintiff with an existing plaintiff, sharing identical claims and relief. 2022 WL 1131605, at *1 (M.D. Fla. Mar. 10, 2022). The court denied intervention precisely because the movant's post-consolidation party status fully encompassed the participation intervention would have provided. The same is true of *Yungk* and *Los Lunas*. In each, the movant's post-consolidation procedural role was coextensive with what intervention would have granted.

Jewett's posture is the opposite. In Collins, she is a plaintiff seeking to invalidate Executive Order JML 26-038 and compel the scheduled May 16 and June 27 elections to proceed. In Callais, she moves to intervene as a defendant-intervenor on the remedial side of the case, addressing a narrower and distinct question: the temporal and prospective scope of any remedial map this Court approves and the constitutional limits on retroactive extinguishment of vested candidacies. These are not duplicative roles. They are complementary, addressing different questions in different procedural postures.

The Middle District's transfer order confirms this distinction. The court transferred Collins because the cases share a "core issue" regarding "whether the existing SB8 congressional map can be lawfully used." *Ruling & Order 5, Collins v. Landry*, No. 3:26-cv-00471 (M.D. La. May 8, 2026), ECF 26. But the transfer order expressly preserved this Court's "exclusive authority over the remedial scheme prompted by Callais." *Id.* at 8. Jewett's motion seeks participation in precisely

that remedial scheme. The State's reading would convert the transfer order into an order denying Jewett any voice in the remedial phase. The Middle District did not so order, and this Court should not so construe its sister court's ruling.

The State's position also produces a perverse rule. Under it, any litigant whose related case is transferred or consolidated into a remedial proceeding automatically loses Rule 24 standing in the remedial proceeding, no matter how distinct her interests at the remedial phase. Rule 24 does not impose that penalty for proximity to a remedial action, and no decision the State cites stands for that proposition.

## II.    JEWETT'S CLAIMS ARE RIPE, AND SHE HAS ARTICLE III STANDING.

The State's ripeness and standing arguments share a single premise: that Jewett's injury is "contingent" on future legislative action. That premise is incorrect as a matter of fact. Jewett's injuries are not contingent. They have already occurred and are continuing.

### A.    *The Executive Order Has Already Inflicted Concrete Injury.*

Executive Order JML 26-038 suspended the May 16 and June 27, 2026, congressional primary elections. That suspension is the operative legal status as of the filing of this reply. The May 16 election is no longer scheduled. Jewett's qualified candidate status, conferred by completion of Louisiana's statutory nomination process, has been functionally extinguished in mid-cycle. Her constituents' nominating petition signatures, gathered under the procedures then in effect, have been rendered inoperative without notice, hearing, or any process whatsoever. These are present harms, not speculative ones.

The State elides this by characterizing Jewett's claim as one about "the outcome of the legislative process." Op. 4. That mischaracterizes the motion. Jewett's injury arises from the existing Executive Order, not from a hypothetical future map. She seeks intervention to ensure that whatever remedial mechanism this Court approves does not operate retroactively to ratify the extinguishment of her completed nomination. That is a present question about the scope of the remedial decree this Court will enter, and *Texas v. United States*, 523 U.S. 296 (1998), has no application to it. *Texas* concerned a challenge brought before any operative state action had occurred. Here, the operative state action (the Executive Order) is already in force.

**B.**    *Mayfield Does Not Support the State's Position.*

The State's reliance on *Mayfield v. Texas*, 206 F. Supp. 2d 820 (E.D. Tex. 2001), is misplaced. *Mayfield* involved plaintiffs who sued preemptively to force the Texas Legislature to redistrict in a particular way before that body had been given an opportunity to act. The court found those plaintiffs' claims unripe because they sought to dictate the substance of legislation that did not yet exist. *Id.* at 823–24.

Jewett's posture is the inverse. She does not ask this Court to dictate the substance of the Legislature's redistricting work. She asks this Court to ensure that whatever map emerges from the legislative process is implemented through a remedial decree that respects the constitutional rights of candidates and voters who completed lawful nomination processes before the emergency declaration. That is not a preemptive dictation of legislative content. It is the ordinary task of crafting a remedial decree, the task this Court has set itself, and the task as to which intervention now is most useful.

**C.**    *The State's Emergency Posture Defeats Its Own Ripeness Argument.*

The most striking feature of the State's opposition is its internal inconsistency. The State asks this Court to find Jewett's claims unripe at the same moment the State is administering an election emergency. The Secretary of State has declared an emergency. The Governor has issued an Executive Order suspending scheduled elections. The Legislature is in active session, by the State's own account, until June 1, 2026, seven days from this filing. Act 7 has been signed into law.

If these conditions do not constitute "sufficient imminence" under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014), the doctrine has no operative content. The State cannot consistently maintain both that its own posture is so urgent it requires executive suspension of scheduled elections and that the same posture is too speculative to support Article III standing for a candidate whose election has been suspended. Those positions are mutually exclusive. The Court should hold the State to the urgent posture it has chosen.

**D.**     ***The State's Standing Argument Trivializes a Statutory Entitlement.***

The State characterizes Jewett's asserted injury as a "candidate-specific desire to preserve her claimed ballot status." Op. 9. The word "claimed" does substantial work in that sentence, and unjustifiably so. Jewett's ballot status is not merely claimed; it was conferred by completion of the statutory nomination process that Louisiana itself established for congressional candidates. Her petition signatures are not merely claimed; they were gathered and submitted under La. R.S. 18:464 and certified by the Secretary of State.

Louisiana election law treats qualification as a status with legal effect. It establishes filing periods, defines the consequences of qualification, and prescribes the only mechanisms by which a qualified candidate may be removed from the ballot. Executive Order JML 26-038 is not among those mechanisms. The Governor's purported authority to invalidate qualifications mid-cycle, without process, is precisely the question Jewett seeks to litigate. That question is concrete, particularized, and traceable to identified state action, and it is redressable by a remedial decree that preserves the integrity of the completed nomination process.

## III.     JEWETT SATISFIES RULE 24.

**A.**     ***The Motion Is Timely.***

The *Stallworth* factors favor timeliness. 558 F.2d 257, 263–66 (5th Cir. 1977). The remedial phase of this case began on April 29, 2026, when the Supreme Court affirmed this Court's injunction. Jewett moved to intervene before the Legislature completed its remedial work, before any remedial map was enacted, and before this Court had approved any implementing election schedule. There is no earlier moment at which her intervention could have occurred and no later moment at which it would be more useful.

The State's argument that Jewett must wait until after the Legislature acts inverts the timeliness analysis. By that point, the remedial framework will be set, the implementing schedule fixed, and judicial review constrained. The very prejudice the State invokes against present intervention (delaying the remedial process) is the prejudice that would befall Jewett if she were forced to wait. Stallworth is a practical inquiry. As a practical matter, this is the only moment intervention can serve its purpose.

**B.**      *Jewett Has a Direct, Substantial, Legally Protectable Interest.*

The State characterizes Jewett's interest as a "generalized" one. It is not. Jewett's interests include: (1) qualified candidate status conferred by Louisiana's statutory nomination process; (2) the First Amendment associational interests of the constituents who signed her nominating petition; (3) Equal Protection interests against being singled out mid-cycle for retroactive disenfranchisement while other ballot positions (including the May 16 state-level offices) proceeded to election as scheduled; and (4) procedural due process interests in not having a vested ballot position extinguished without notice or hearing. These are particularized interests cognizable under *Anderson v. Celebrezze*, 460 U.S. 780 (1983), *Burdick v. Takushi*, 504 U.S. 428 (1992), and their progeny.

The State's contrary argument relies on a strawman. It contends that "no candidate has a legally protectable entitlement to run in districts drawn under a congressional map that this Court enjoined and the Supreme Court affirmed as unconstitutional." Jewett does not assert that entitlement. She does not claim a right to run in SB8 districts. She asserts the distinct right not to have a completed statutory nomination process invalidated retroactively, without process, by executive fiat. The unconstitutionality of SB8 does not authorize the State to extinguish, without process, candidacies and petition signatures lawfully completed under the qualification procedures then in effect. The State's position would mean that a finding of unconstitutionality as to a districting map authorizes unlimited collateral consequences for everyone who participated in the electoral process under that map. No decision the State cites supports that proposition, and the Anderson-Burdick line of cases forecloses it.

**C.**      *Disposition Without Jewett's Participation Will Impair Her Interests.*

The State argues that Collins, now transferred, provides Jewett an adequate vehicle. It does not, for the reasons stated in Part I. Collins challenges the Executive Order. The remedial proceeding here will determine the temporal scope of any decree implementing a new map, including whether that decree operates prospectively only or sweeps backward to ratify the suspension of completed nominations. That is a question that can be addressed only in this proceeding, before the decree is entered.

Without intervention here, Jewett cannot present arguments about the temporal scope of the remedial decree to the Court that will enter that decree. Once entered, the decree will constrain her remaining options. That is precisely the practical impairment Rule 24(a)(2) protects against.

### D.    *The Secretary Cannot Adequately Represent Jewett's Interests.*

The analysis of adequacy of representation analysis here is straightforward. The Secretary of State is currently administering the very suspension that has inflicted Jewett's injury. The Secretary declared the election emergency. ECF 271-1. The Secretary is the named defendant in Collins, in which Jewett is a plaintiff. By the State's own framing, the Secretary represents "the governmental interest in a lawful remedial map and orderly congressional election process." Op. 11. That governmental interest is, by definition, distinct from and in tension with Jewett's individual interest in preserving the nomination process that the Secretary herself has suspended.

The State's argument here proves too much. If a state defendant's general institutional interest in defending its own remedial scheme were sufficient to displace the representation needs of an affected individual, no candidate or voter could ever intervene in any redistricting remedial proceeding. Rule 24(a)(2) plainly contemplates otherwise.

### E.    *Permissive Intervention Would Aid the Court's Work.*

Should the Court conclude that any element of intervention as of right is wanting, permissive intervention is plainly warranted. Jewett's motion presents questions of law and fact in common with those before this Court: the proper temporal scope of a remedial decree, the constitutional limits on retroactive suspension of vested candidacies, and the relationship between executive emergency powers and statutory nomination processes. Resolution of these questions now, in an orderly fashion with input from a directly affected party, is preferable to addressing them later through post-judgment motions, appeals, and collateral proceedings. Intervention will assist, not delay, the orderly disposition of the remedial phase.

## IV.    THE STATE'S POSITION HERE IS INCONSISTENT WITH ITS REPRESENTATIONS IN CALLAIS.

One final point bears noting. Throughout the merits litigation in *Callais*, Louisiana defended the products of its legislative process and emphasized the deference owed to state

legislative authority over election administration and districting. It urged the Supreme Court to respect the integrity of completed electoral processes and to constrain the scope of any judicial remedy. The State now asks this Court to bless an executive action that, without statutory authorization, suspended the products of that very legislative process: the qualification of candidates and the certification of nominating petitions completed under the procedures the Legislature established.

The State cannot consistently maintain that state legislative authority over election administration is entitled to deference when defending a districting map, and that executive suspension of that same legislative authority is unreviewable when it operates to extinguish completed candidacies. Jewett's intervention is the procedural vehicle through which this Court can ensure that the constitutional principles the State invoked in defending the merits are honored in the design of the remedy.

## CONCLUSION

The State's opposition does not refute Jewett's entitlement to intervene. It restates institutional preferences for unconstrained executive action and delayed judicial review. Neither preference is grounded in Rule 24, Article III, or this Court's remedial obligations under Callais. The Motion to Intervene should be granted.

Respectfully submitted,


/s/ Donald C. Hodge, Jr.
LSB# 29251
Box 481
Westminster, CO 80036
225-800-7124
donaldhodgejr@proton.me
Counsel for Movant-Intervenor Lauren Jewett

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 25, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.


<u>/s/ Donald C. Hodge, Jr.</u>