**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

PHILLIP CALLAIS, et al.,
           Plaintiffs,

v.

NANCY LANDRY, in her official
capacity as Louisiana Secretary
of State,
           Defendant,

and

LAUREN JEWETT,
           Intervenor.

CIVIL DOCKET

NO. 3:24-CV-00122-DCJ-CES-RRS

THREE-JUDGE COURT

Judge David C. Joseph
Circuit Judge Carl E. Stewart
Judge Robert R. Summerhays

## INTERVENOR LAUREN JEWETT'S MOTION TO OBJECT TO S.B. 121 (ACT 2 OF 2026) AND TO PROPOSE LEAST-CHANGE MODIFICATIONS AND IMPLEMENTATION FRAMEWORK

Intervenor Lauren Jewett, by and through undersigned counsel of record, respectfully submits this Motion to Object to certain provisions of S.B. 121 (Act 2 of 2026), the remedial congressional districting map enacted by the Louisiana Legislature on May 28-29, 2026, and to propose specific modifications under the federal remediation-framework doctrine, together with an implementation framework for federal congressional elections under the modified map. This Motion is filed pursuant to Intervenor Jewett's enrolled status under this Court's Order of May 6, 2026 (Doc. 269).

Intervenor Jewett does not seek wholesale rejection of S.B. 121. Consistent with the Supreme Court's June 2, 2026 Per Curiam in Allen v. Milligan, 608 U.S. ___ (Nos. 25A1314, 25A1315, 25A1316), Intervenor Jewett accepts that S.B. 121 is presumptively entitled to deference as the State's chosen remedial map, subject to the pronouncements in Callais regarding the Louisiana map. Intervenor Jewett requests, however, that the Court (1) require specific modifications to S.B. 121's treatment of CD-1 and CD-3 under the least-change principle established by Wise v. Lipscomb, 437 U.S. 535 (1978), and Upham v. Seamon, 456 U.S. 37 (1982)

and also consistent with the principles in Callais; (2) preserve existing candidate-qualifying investments and nominee designations; (3) adopt the mid-September closed-party primary / November 3 general election implementation framework set forth in the Motion; (4) preserve the cast May 16, 2026, votes under 52 U.S.C. § 20701; and (5) reject any reversion to a jungle-primary structure on First Amendment associational-rights grounds.

## I. PROCEDURAL POSTURE AND INTRODUCTION

1.    Intervenor Lauren Jewett was the duly nominated Democratic candidate for the 1st Congressional District for the November 3, 2026, federal general election. She qualified by nominating petition under La. R.S. § 18:465 during the qualifying period that closed February 13, 2026, gathering well in excess of two thousand (2,000) signatures of qualified Louisiana voters in CD-1. Following the post-qualifying withdrawal of James 'Jim' Long, she became the Democratic nominee by automatic operation of La. R.S. § 18:410.9(A).

2.    Intervenor Jewett's Motion to Intervene was accepted by this Court on May 6, 2026 (Doc. 269). Following the Court's Electronic Minute Entry of May 18, 2026, Intervenor Jewett filed a Reply on jurisdiction and ripeness on May 25, 2026. On May 29, 2026, the State filed a Notice of Enactment of S.B. 121 (Act 2 of 2026) (Doc. 298). On June 1, 2026, the Secretary of State submitted concrete election dates pursuant to this Court's directive. On June 2, 2026, the Supreme Court issued its per curiam opinion in Allen v. Milligan, materially affecting the strategic and doctrinal posture of this Court's evaluation of S.B. 121.

3.    This Motion is structured in seven Parts. Part II addresses the post-Allen framework under which a remedial map may go forward. Part III sets forth the least-change principle and its application to CD-1 and CD-3. Part IV develops the candidate-side qualifying preservation argument. Part V develops the implementation framework for federal congressional elections under the modified S.B. 121. Part VI develops the First Amendment associational-rights argument against any jungle-primary reversion. Part VII sets forth the specific relief requested.

## II. THE POST-ALLEN FRAMEWORK UNDER WHICH A REMEDIAL MAP MAY GO FORWARD

***A. The Supreme Court's June 2, 2026, per curiam opinion in Allen v. Milligan.***

4.  On June 2, 2026, the Supreme Court issued a Per Curiam decision in Allen v. Milligan, 608 U.S. ___ (Nos. 25A1314, 25A1315, 25A1316), staying the District Court's second injunction in the Alabama redistricting cases. The decision was issued one day after the Secretary of State's June 1, 2026, submission of concrete election dates in the present proceeding. Intervenor Jewett has carefully reviewed Allen and incorporates its doctrinal framework into the analysis below.

5.  Allen reinforces three doctrinal principles that govern this Court's evaluation of S.B. 121:

    **(a)** The Callais 'just as well' standard. Any plaintiff's alternative map must meet all of the State's legitimate districting objectives 'just as well' as the State's own map. Allen, 608 U.S. at ___ (slip op., at 2) (citing Callais, 608 U.S. at ___ (slip op., at 29)).

    **(b)** The presumption of legislative good faith. Federal courts cannot treat a state's substantive policy disagreement as evidence of discriminatory animus. Allen, 608 U.S. at ___ (slip op., at 3).

    **(c)** The Purcell principle, with the additional language that 'States are free to decide for themselves whether last-minute changes to an election are in their best interests.' Allen, 608 U.S. at ___ (slip op., at 4).

***B. The Framework for Going Forward.***

6.  Allen establishes a clear framework under which a State's remedial map may go forward, and identifies the boundaries within which a federal court may require modifications. Under this framework, a state legislative remedial choice is entitled to deference where:

    **(a)** The choice represents a substantive policy judgment about how to cure the constitutional defect identified by the federal court;

    **(b)** The choice does not exceed the scope of what is necessary to cure the constitutional defect;

(c) The choice respects the federal constitutional and statutory framework within which the State must operate; and

(d) The choice is the product of a legislative process that has considered the relevant federal and state interests.

7. Where each of these conditions is satisfied, the federal court should defer to the State's remedial map as enacted, applying the Allen presumption of legislative good faith. Where any of these conditions is not satisfied, the federal court retains authority and obligation to require modifications consistent with the least-change principle and the underlying constitutional and statutory requirements.

## C. S.B. 121's Compliance With the Going-Forward Framework.

8. S.B. 121 satisfies the first and second conditions identified above. The Legislature's enactment represents a substantive policy judgment about how to cure the CD-6 race-predominance defect identified in Callais. Intervenor Jewett does not contend that S.B. 121's general structure is unconstitutional; she accepts that S.B. 121's principal cure of the CD-6 defect is entitled to deference under Allen.

9. S.B. 121 does not, however, satisfy the third and fourth conditions in full. With respect to the third condition, S.B. 121 does not adequately address the federal statutory framework governing the implementation of federal congressional elections, specifically the requirements of 2 U.S.C. §§ 1 and 7 under Foster v. Love, 522 U.S. 67 (1997), and the absentee-ballot transmission requirements of 52 U.S.C. § 20302(a)(8) under UOCAVA. With respect to the fourth condition, S.B. 121 was enacted through a compressed twenty-day legislative process that did not consider candidate-side qualifying investments, voter-side associational interests, the least-change principle, or the operational consequences for federal election administration.

10. Where the legislative process has failed to consider the relevant federal and state interests, Allen's presumption of legislative good faith is functionally rebutted on procedural-irregularity grounds. The presumption protects substantive policy disagreements; it does not protect procedural failures to consider the operative framework. The federal court

retains authority and obligation to require modifications that address those procedural failures.

### III. THE LEAST-CHANGE PRINCIPLE AND THE PRESERVATION OF CD-1 AND CD-3

#### A. The Doctrinal Foundation.

11. The least-change principle, established by Wise v. Lipscomb, 437 U.S. 535 (1978), and developed in Upham v. Seamon, 456 U.S. 37 (1982), and White v. Weiser, 412 U.S. 783 (1973), requires that modifications to a state's remedial plan be 'limited to those necessary to cure any constitutional or statutory defect.' Upham, 456 U.S. at 43. The principle is the doctrinal corollary of Wise's foundational deference doctrine, ensuring that federal-court remediation does not exceed the scope of the constitutional defect.

12. The least-change principle applies with full force post-Allen. Allen reinforces deference to state legislative remedial choices but does not eliminate the least-change requirement. Where a state's remedial plan exceeds what is necessary to cure the constitutional defect, the federal court retains authority to require modifications. Allen protects the State's substantive policy choices; the least-change principle protects against modifications that exceed those choices' necessary scope.

#### B. The Callais Holding Identified the Defect in CD-6.

13. The Supreme Court's decision in Louisiana v. Callais, 608 U.S. ___ (April 29, 2026), identified the constitutional defect in S.B. 8 as the race-predominance in CD-6. The Court did not invalidate CD-1, CD-2, CD-3, CD-4, or CD-5 under S.B. 8. The constitutional defect is, by the Court's own holding, the configuration of CD-6.

14. Under the least-change principle, the appropriate scope of remediation is therefore confined to curing the CD-6 defect. Modifications to CD-1 and CD-3, which were not subject to the Callais invalidation, are subject to least-change scrutiny. The Legislature retains authority to modify those districts as necessary to accommodate the CD-6 cure, but not beyond what is required.

*C. Application to CD-1 (Intervenor Jewett's District).*

15.     CD-1, as configured under S.B. 8, was not a race-predominant district and was not the subject of the Callais invalidation. Intervenor Jewett qualified for CD-1 under the S.B. 8 configuration and developed her candidacy in reliance on that configuration. Her petition-qualifying signatures under La. R.S. § 18:465 was gathered from voters within the S.B. 8 CD-1 boundaries.

16.     To the extent S.B. 121 modifies CD-1 beyond what is necessary to accommodate the CD-6 cure, those modifications are subject to least-change scrutiny. Intervenor Jewett respectfully proposes that the Court require S.B. 121's CD-1 to be modified to preserve substantially the constituent base on which Intervenor Jewett qualified, subject to such adjustments as are demonstrably necessary to accommodate the CD-6 cure.

*D. Application to CD-3 (Representative Higgins's District).*

17.     CD-3, as configured under S.B. 8, was similarly not a race-predominant district and was not the subject of the Callais invalidation. Representative Clay Higgins qualified for CD-3 under the S.B. 8 configuration. Although Representative Higgins is not a party to this proceeding, the least-change principle applies to CD-3 on an institutional basis: to the extent S.B. 121 modifies CD-3 beyond what is necessary to accommodate the CD-6 cure, those modifications exceed the proper scope of remediation.

18.     Intervenor Jewett respectfully proposes that the Court require S.B. 121's CD-3 to be modified to preserve substantially the constituent base of the S.B. 8 CD-3, subject to such adjustments as are demonstrably necessary to accommodate the CD-6 cure.

*E. The 'Just As Well' Standard Applied to the Modifications.*

19.     Under Callais, as reinforced by Allen, any alternative or modified map must perform 'just as well' as the State's enacted map with respect to the State's legitimate districting objectives. Callais, 608 U.S. at ___ (slip op., at 29); Allen, 608 U.S. at ___ (slip op., at 2). Intervenor Jewett's proposed modifications satisfy this standard:

(a) Compactness: Modifications preserving CD-1 and CD-3 substantially intact maintain or improve compactness relative to S.B. 121's configurations of those districts;

(b) Contiguity: Modifications preserving CD-1 and CD-3 substantially intact maintain contiguity as required by Louisiana law;

(c) Population equality: Modifications can be calibrated to achieve population equality within the constitutional tolerance, accommodating any adjustments required by the CD-6 cure;

(d) Communities of interest: Modifications preserving the constituent base of CD-1 and CD-3 respect the communities of interest within those districts, consistent with Louisiana's traditional districting criteria;

(e) Political subdivision boundaries: Modifications can be calibrated to respect parish lines to the extent S.B. 121 itself respects them; and

(f) The CD-6 cure: Modifications preserve S.B. 121's substantive cure of the CD-6 race-predominance defect, ensuring they do not undermine the principal purpose of S.B. 121's enactment. The cure addresses the holding in Callais directed at Louisiana, which forbids race-based gerrymandering.

## IV. CANDIDATE-SIDE QUALIFYING PRESERVATION

### A. The Doctrinal Foundation.

20. Candidate-side qualifying preservation rests on the constitutional and statutory framework protecting vested procedural interests and ballot-access rights. The doctrinal foundation is established by three lines of cases.

21. First, Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), protects vested procedural interests from retroactive voiding without due process. Candidates who have completed the qualifying process under state law have a vested procedural interest in their qualifying status, which cannot be retroactively voided without due process.

22. Second, Williams v. Rhodes, 393 U.S. 23 (1968), and Anderson v. Celebrezze, 460 U.S. 780 (1983), protect candidate-side ballot-access rights from severe burdens not narrowly

tailored to a compelling state interest. Severe burdens on candidate-side ballot access trigger strict scrutiny.

23.     Third, La. R.S. §§ 18:464 (fee-qualifying), 18:465 (petition-qualifying), and 18:410.9(A) (automatic nominee designation), create state-law-protected interests in candidate qualifying status and nominee designations. These interests vest upon the close of the qualifying period and are not subject to retroactive extinguishment by subsequent legislative action.

### B. The Affected Candidates.

24.     The candidates affected by the post-Callais reconfiguration of Louisiana's congressional districts include, without limitation:

  (a) Intervenor Lauren Jewett (Democratic nominee, CD-1), who qualified by nominating petition under La. R.S. § 18:465 with well in excess of 2,000 signatures, and who became the Democratic nominee by operation of La. R.S. § 18:410.9(A);

  (b) Representative Clay Higgins (Republican nominee, CD-3), who became the Republican nominee by operation of La. R.S. § 18:410.9(A);

  (c) Cleo Fields (Democratic nominee, CD-6), who became the Democratic nominee by operation of La. R.S. § 18:410.9(A); and

  (d) Other duly qualified candidates whose qualifying status is affected by the S.B. 121 reconfiguration.

### C. The Specific Preservation Request.

25.     Intervenor Jewett respectfully proposes that the implementation framework preserve existing qualifications and nominee designations to the maximum extent consistent with the new districting framework:

  (a) Candidates who qualified by petition under La. R.S. § 18:465 retain their qualifying status with respect to the new district that includes their qualifying constituent base, without need for re-qualification;

**(b)** Candidates who became party nominees under La. R.S. § 18:410.9(A) retain their nominee status with respect to the new district that includes their qualifying constituent base; and

**(c)** Where the new district under S.B. 121 substantially differs from the prior district, such that the candidate's constituent base is divided or distributed across multiple new districts, the Court should establish a procedural mechanism by which the candidate may elect to qualify in the new district that includes the largest portion of her qualifying constituent base, with appropriate preservation of her prior qualifying investments.

## V. THE IMPLEMENTATION FRAMEWORK FOR FEDERAL CONGRESSIONAL ELECTIONS UNDER MODIFIED S.B. 121

### A. The Proposed Two-Phase Framework.

26. Intervenor Jewett proposes a two-phase implementation framework for federal congressional elections under modified S.B. 121, consisting of:

**(a)** Phase One: A closed party primary held in mid-September 2026 (proposed date: September 12, 2026), conducted under the modified S.B. 121 framework, with the candidate receiving the plurality of votes within each party becoming the party nominee. No runoff is held; the plurality winner is the party's nominee; and

**(b)** Phase Two: The federal general election on Tuesday, November 3, 2026, the federal election day established by 2 U.S.C. § 7. Louisiana's customary early-voting period under La. R.S. § 18:1309 applies, running from Saturday, October 17, 2026, through Saturday, October 24, 2026.

### B. Foster v. Love Compliance.

27. The proposed framework satisfies Foster v. Love, 522 U.S. 67 (1997), and 2 U.S.C. § 7. The federal contest is decided by general-election voters on November 3, 2026, the federal election day mandated by Congress. The September primary selects party nominees, not federal officeholders. There is no possibility that the federal contest is operatively concluded before federal election day.

28.     The proposed framework is materially distinct from the pre-Foster Louisiana system. The pre-Foster system was an open primary in which a candidate winning a majority in the October primary was elected to federal office without the need for any subsequent contest. The proposed framework is a closed-party primary in which the plurality winner becomes the party nominee, not a federal officeholder. The federal officeholder is selected by general-election voters on November 3.

### C. UOCAVA Compliance.

29.     The proposed framework satisfies UOCAVA, 52 U.S.C. § 20302(a)(8), which requires that absentee ballots be transmitted to UOCAVA-protected voters.

30.     The mid-September primary date is calibrated to permit Phase One nominee certification on or before September 17-18, 2026, allowing UOCAVA transmission for Phase Two to proceed by the statutorily mandated September 19 deadline. The framework respects the federal statutory requirement without operational difficulty.

### D. Louisiana's Customary Early-Voting Period.

31.     Louisiana's customary early-voting period under La. R.S. § 18:1309 runs from the second Saturday before the election through the Saturday before the election, providing a seven-day in-person early-voting window. For the November 3 general election, this period runs from Saturday, October 17, 2026, through Saturday, October 24, 2026. The proposed framework preserves Louisiana's established early-voting practice without modification.

### E. Preservation of Cast May 16 Votes.

32.     The proposed framework preserves the more than 249,000 ballots cast in the May 16, 2026, closed party primary in the federal U.S. House of Representatives contest. Under 52 U.S.C. § 20701, those ballots must be preserved in the chain of custody for twenty-two months, with willful destruction constituting a federal felony. Intervenor Jewett respectfully proposes that the Court make explicit that nothing in the implementation framework permits or requires the destruction of those ballots, consistent with the framework set forth in the Joint Motion to Stay filed by the Robinson and Galmon Intervenors on May 11, 2026.

## VI. THE FIRST AMENDMENT ASSOCIATIONAL-RIGHTS OBJECTION TO ANY JUNGLE-PRIMARY REVERSION

### A. The Doctrinal Foundation.

33.    The First Amendment associational-rights doctrine, as developed in Tashjian v. Republican Party of Connecticut, 479 U.S. 208 (1986); Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214 (1989); California Democratic Party v. Jones, 530 U.S. 567 (2000); and Clingman v. Beaver, 544 U.S. 581 (2005), establishes that the State cannot, consistent with the First Amendment, impose a primary structure that forces political parties to associate with non-party voters for purposes of nominee selection without the parties' consent.

34.    Jones is the controlling case. In Jones, the Supreme Court invalidated California's blanket primary system because it violated the political parties' associational rights. Justice Scalia, writing for the Court, held that 'the freedom to associate for the common advancement of political beliefs necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only.' Jones, 530 U.S. at 574 (citation omitted).

### B. The Specific Associational Harm.

35.    Intervenor Jewett qualified for the Democratic Party's nomination under Louisiana's closed party primary system as enacted by Acts 2024, 1st Extraordinary Session, No. 1. She associated with the Democratic Party for the purpose of obtaining the Party's nomination. The voters who signed her qualifying petition under La. R.S. § 18:465 associated with her candidacy for the Democratic Party's nomination. The Democratic Party of Louisiana itself, as an association of party-affiliated voters and candidates, organized its primary participation around the closed party structure.

36.    Any reversion to a jungle-primary structure, applied to candidates who qualified under the closed party system and to voters who organized their political participation around the closed party structure, would violate the associational rights of the candidate, the voters, and the party. This is the precise harm Jones identified: 'forced association' that has 'the likely outcome ... of changing the parties' message.' Jones, 530 U.S. at 575.

*C. Strict Scrutiny Cannot Be Satisfied.*

37.    Any State-imposed jungle-primary reversion would be subject to strict scrutiny under Jones. The State bears the burden of demonstrating a compelling state interest and narrow tailoring. Eu, 489 U.S. at 222. The State cannot satisfy this burden because:

   (a) The proposed implementation framework (mid-September closed party primary, November 3 general election) satisfies any legitimate state interest in conducting federal congressional elections under the modified S.B. 121 framework, without burdening associational rights;

   (b) There is no compelling state interest in reverting to a jungle-primary structure that would justify the associational harm; and

   (c) Any State interest in administrative efficiency or post-Callais compliance can be served by less restrictive alternatives, specifically the mid-September closed party primary framework proposed here.

## VII. SPECIFIC RELIEF REQUESTED

38.    Intervenor Jewett respectfully requests that this Court enter an Order:

   (a) Accepting S.B. 121 (Act 2 of 2026) as the State's remedial congressional districting map, consistent with Allen v. Milligan's reinforcement of the presumption of legislative good faith, with the modifications required by the least-change principle as set forth and adherence to the principles of Callais forbidding racial gerrymandering;

   (b) Requiring modifications to S.B. 121's CD-1 and CD-3 to preserve those non-offending districts substantially intact, where Intervenor Jewett demonstrates that the State's modifications to those districts exceed what is necessary to cure the CD-6 race-predominance defect identified in Callais, in accordance with Wise v. Lipscomb, Upham v. Seamon, and White v. Weiser;

   (c) Preserving existing candidate qualifying investments and nominee designations under La. R.S. §§ 18:464, 18:465, and 18:410.9(A), in accordance with Logan, Williams, and Anderson;

**(d)** Adopting Intervenor Jewett's mid-September closed party primary / November 3 general election implementation framework as the operative framework for federal congressional elections under modified S.B. 121, with Louisiana's customary early-voting period under La. R.S. § 18:1309 (October 17-24, 2026) applying to the November 3 general election;

**(e)** Preserving the cast May 16, 2026, votes in the federal U.S. House of Representatives contest under 52 U.S.C. § 20701, with the Court's explicit instruction that nothing in the implementation framework permits or requires the destruction of those ballots;

**(f)** Rejecting any reversion to a jungle-primary structure for federal congressional elections, on First Amendment associational-rights grounds under Tashjian, Eu, Jones, and Clingman; and

**(g)** Granting such further and additional relief as the Court deems just and proper to give full effect to the framework set forth in this Motion.

39. Intervenor Jewett submits the attached specific remedial-map modification proposal, demonstrating that CD-1 and CD-3 can be preserved substantially intact while accepting S.B. 121's CD-6 cure (Exhibit "A"). The proposal will demonstrate that the modifications satisfy the Callais 'just as well' standard with respect to compactness, contiguity, population equality, communities of interest, political subdivision boundaries, and the CD-6 cure itself, as well as the commandment of Callais against race-based gerrymandering.

## CONCLUSION

40. Intervenor Jewett's Motion to Object, presented under the post-Allen framework, is not a request to override the Louisiana Legislature. It is a request that this Court require the Legislature to honor the federal constitutional and statutory framework that it failed to consider during its compressed twenty-day enactment process. The Motion respects Allen's presumption of legislative good faith by accepting S.B. 121's general structure while invoking the least-change principle, the candidate-side preservation framework, the implementation framework, the ballot preservation requirements, and the First Amendment

associational-rights doctrine to require the specific modifications necessary to honor the federal framework.

41.     For the foregoing reasons, Intervenor Lauren Jewett respectfully requests that this Court grant the Motion to Object and proceed to a hearing on the remedial plans.


Respectfully submitted this 3rd day of June, 2026.


/s/ Donald C. Hodge, Jr.
**DONALD C. HODGE, JR. (LSB #29251)**
Box 481
Westminster, CO 80036
Telephone: (225) 800-7124
Email: donaldhodgejr@proton.me

Counsel of Record for Intervenor Lauren Jewett

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of June, 2026, a copy of the foregoing Motion to Object was served upon all counsel of record by the Court's CM/ECF system.


/s/ Donald C. Hodge, Jr.
**DONALD C. HODGE, JR. (LSB #29251)**
Counsel of Record for Intervenor Lauren Jewett