**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| PHILLIP CALLAIS, et al., | Civil Action No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | |
| v. | THREE-JUDGE COURT |
| NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana, | Hon. Carl E. Stewart |
| | Hon. Robert R. Summerhays |
| | Hon. David C. Joseph |
| Defendant. | |

**PROPOSED INTERVENOR LAUREN JEWETT'S OPPOSITION TO
THE STATE'S MOTION TO RESET DEADLINES**

**INTRODUCTION**

This is the case that produced *Louisiana v. Callais*. On April 29, 2026, the Supreme Court affirmed this Court's judgment that Senate Bill 8 was an impermissible racial gerrymander. Act 2 of the 2026 Regular Session is the State's legislative response to that judgment. It is, in the most literal sense, a remedial map: a map drawn to cure the constitutional violation this litigation established and the Supreme Court confirmed. Whether Act 2 actually cures that violation, or instead perpetuates it in a new form, is not a separate dispute for another forum or a later year. It is the merits question that remains open in this very case, and it is reviewable from this Court directly to the Supreme Court on the same track that produced *Callais*.

The State now asks the Court to defer that question by resetting the schedule to opening briefs in sixty days, responses thirty days later, and a hearing at the Court's convenience. Its sole new justification is a one-page stay the Supreme Court entered the night before in unrelated Alabama litigation. *Allen v. Milligan*, No. 25A1314, 608 U.S. ___ (2026). But that order decides which map governs an imminent election; it does not decide, and could not decide, whether Louisiana's remedial map is lawful. The State conflates the ballot for 2026 with the merits of the

remedy. Proposed Intervenor Lauren Jewett opposes the motion and respectfully asks the Court to retain the existing schedule, including the June 17-18, 2026, hearing, and to adjudicate the lawfulness of Act 2 as the merits question it is.

**BACKGROUND**

1. Sitting as a three-judge court, this Court adjudicated the constitutionality of Louisiana's congressional districting and held that Senate Bill 8 was a racial gerrymander. On April 29, 2026, the Supreme Court affirmed. *Louisiana v. Callais*, No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026).

2. In response to that decision, the Louisiana Legislature enacted, and the Governor signed on May 29, 2026, Act 2 of the 2026 Regular Session, codified at La. R.S. 18:1276, establishing a new six-district congressional map.

3. The Court set a briefing schedule and a hearing for June 17-18, 2026, to address the remedial posture of the case.

4. On May 27, 2026, the Court ordered the Secretary of State to file a verified affidavit listing the true operational deadline to implement a new congressional districting map for the November 3, 2026 election. ECF No. 297. The Secretary filed her affidavit on June 1, 2026. ECF No. 299. It sets out the statutory calendar for that election: the first legal deadlines on July 8 and 9, 2026; candidate qualifying for U.S. House races on August 5 through August 7, 2026; mailing of military and overseas ballots by September 19, 2026; the November 3, 2026 election day for U.S. House races; and a December 12, 2026 general election if necessary. ECF No. 299 at 2, ¶¶ 5, 7. The Secretary estimates approximately five weeks of preparatory work and approximately three weeks of coding to implement a new map in the statewide voter registration system. *Id.* ¶¶ 5-6.

5. The Plaintiffs responded the same day. They observed that the affidavit does not state the true operational deadline the Court ordered, suggested live questioning of the Secretary to determine it, and told the Court that while Act 2 appears to remedy the District 6 gerrymander, they are "less certain" whether the map has avoided racial line-drawing around District 2, where at least one Plaintiff resides. ECF No. 300 ¶¶ 3, 6-7. They proposed that if the pressure of time requires the Court to approve Act 2 as a temporary, interim remedy for 2026, the Court should retain jurisdiction to ensure, before the 2028 election, that District 2 does not sort voters by race. *Id.* ¶ 7.

6. On June 2, 2026, the Supreme Court entered a stay in *Allen v. Milligan*, No. 25A1314, 608 U.S. ___ (2026), permitting Alabama to use its enacted map for the 2026 cycle on the ground that lower courts should not impose new court-drawn maps on the eve of an election.

7. On June 3, 2026, the State moved to reset the deadlines. ECF No. 302. The Robinson Intervenors and the Galmon Intervenors stated that they do not oppose the motion. Proposed Intervenor Jewett does oppose, and conveyed that position to the State the same morning.

**ARGUMENT**

**I.  THE LAWFULNESS OF ACT 2 IS A MERITS QUESTION THAT REMAINS IN THIS CASE AND IS REVIEWABLE DIRECTLY BY THE SUPREME COURT, BECAUSE ACT 2 IS THE REMEDIAL MAP THIS LITIGATION PRODUCED.**

A remedy is part of the merits of the case that generates it; it is not a freestanding matter. When a federal court holds a districting plan unconstitutional, the State is afforded the first opportunity to enact a lawful replacement, and the court then reviews that replacement to ensure it cures the violation. *Wise v. Lipscomb*, 437 U.S. 535 (1978). The court's jurisdiction over the controversy does not end when liability is found; it continues through the remedial phase until a constitutional map is in place. *See North Carolina v. Covington*, 138 S. Ct. 2548 (2018) (per curiam) (district court reviews the State's remedial plan in the same proceeding).

Act 2 exists for one reason: the Supreme Court's decision in this case. The Legislature did not enact Act 2 in a vacuum. It enacted Act 2 to discharge the remedial obligation imposed by the judgment that the Supreme Court affirmed in *Callais*. The validity of that remedial map is therefore the direct and necessary continuation of this case's merits. The question whether the State cured the violation this Court found is the same controversy, in its remedial posture, that the Supreme Court has already once reviewed. And review of Act 2 proceeds on that same track: from this three-judge court directly to the Supreme Court. 28 U.S.C. § 1253. That is precisely what it means to say Act 2 is a remedial map produced from the Supreme Court's decision; the obligation to test it on the merits, here and on direct appeal, is the unfinished work of *Callais* itself.

Nor is the proposition contested. The Plaintiffs themselves have asked this Court to retain jurisdiction to review Act 2 before the 2028 election, ECF No. 300 ¶ 7, and the State invoked that very request in its motion, ECF No. 302 at 2. Every party thus proceeds on the understanding that the lawfulness of Act 2 is a question for this Court in this case. The only dispute is timing. And on

timing the State offers no reason to defer a merits question that is fully teed up and set for hearing in two weeks. Deferring the merits does not serve efficiency; it abdicates a remedial jurisdiction that no party disputes this Court holds.

## II.   ALLEN v. MILLIGAN DOES NOT SUPPORT DEFERRAL. IT IS A TIMING STAY THAT GOVERNS THE BALLOT, NOT THE MERITS OF A REMEDIAL MAP.

The State's entire new argument rests on the Supreme Court's June 2 order in *Allen v. Milligan*. That order does not bear the weight the State places on it.

First, *Milligan* is a stay grounded in the *Purcell* principle, not an adjudication of any map's constitutionality. The Supreme Court stayed a district court injunction that would have replaced Alabama's enacted map with a court-drawn map weeks before the 2026 election. The Court's stated concern was that lower courts should not alter the election rules on the eve of an election. *Purcell v. Gonzalez*, 549 U.S. 1 (2006). The order says nothing about whether Alabama's enacted map is lawful; to the contrary, that litigation proceeds with the merits unresolved. A timing stay that preserves a map for one cycle does not mean the map is valid, and it certainly does not mean that proceedings should be slowed.

Second, the State conflates two distinct questions. The first is which map governs the 2026 election; that is the *Purcell* question, and the State already has its answer in the stay posture of this litigation. *Robinson v. Callais*, 144 S. Ct. 1171 (U.S.). The second is whether Act 2 is a constitutional remedy; that is the merits question this Court must decide. *Milligan* addresses only the first. The State may run the 2026 election under Act 2 and still be required to defend Act 2 on the merits before this Court. Nothing in *Milligan* collapses those two questions into one, and nothing in it licenses converting a ballot-timing decision into a multi-month delay of merits review.

Third, if *Milligan* teaches anything about timing here, it cuts against the State. The lesson of *Purcell* and *Milligan* is that questions about a map's validity should be resolved with enough lead time that no court is forced to act on the eve of an election. Deferring review of Act 2 until after the 2026 cycle guarantees that any challenge to Act 2 will arrive in the next cycle under the same eve-of-election pressure the State now invokes. The way to avoid a repeat of *Milligan* is to decide the merits now, on the existing schedule, not to push them into the shadow of the next election.

Fourth, and most concretely, the State ignores what the Supreme Court meant by the eve of an election. In *Milligan*, that phrase described a matter of days, not months. When Alabama applied for its stay on May 27, 2026, its voter rolls were set to lock again on June 2, 2026, the very day the Court ruled, ahead of a primary runoff on June 16, 2026, and a court-ordered special congressional primary on August 11, 2026. County officials faced the prospect of manually reassigning hundreds of thousands of voters in, at most, a handful of days.[1] That is what made the 2026 election "imminent," and it is why the Court cautioned against altering "the election rules on the eve of an election." *Allen v. Milligan*, No. 25A1314, 608 U.S. ___ (2026) (slip op., at 3).

Louisiana's calendar bears no resemblance; the Secretary of State's own verified affidavit supplies the dates. The contest governed by Act 2 is the November 3, 2026, election day for U.S. House races, with a December 12, 2026, general election if necessary. ECF No. 299 at 2. The first legal deadline for that election arrives on July 8, 2026, three weeks after the scheduled hearing. *Id.* ¶ 5. Candidate qualifying does not close until August 7, 2026, seven weeks after the hearing, and military and overseas ballots are not mailed until September 19, 2026. *Id.* at 2, ¶ 7. As of this filing, the election itself is roughly five months away, and any general election is more than six. A ruling on the lawfulness of Act 2 at or shortly after the June 17-18 hearing would precede the first legal deadline on Louisiana's calendar, let alone the election. Nothing here resembles voter rolls locking on the day of the decision and a runoff fourteen days out. That is the opposite of the last-minute, days-before-the-polls intervention that *Purcell* and *Milligan* forbid. The State cannot borrow the urgency of Alabama's days-away runoff to justify postponing review of a Louisiana map whose first administrative deadline has not yet arrived. The available runway confirms the opposite of what the State contends: the merits can be decided now, on the existing schedule, precisely so that no court is forced to act on the eve of the November election.

---

[1] In *Milligan*, the record reflected that switching to the State's enacted map required county officials to reassign hundreds of thousands of voters by hand. Three counties split between congressional districts accounted for roughly 600,000 registered voters, about fifteen percent of the State's electorate, and two smaller counties had only three officials each to move another 100,000. Alabama's own prior representations put the reassignment process at three to four months, yet officials had at most seven days, and perhaps only hours, before the voter rolls relocked; as the record reflected, no split county in Alabama had ever completed reassignment in seven days. *Allen v. Milligan*, No. 25A1314, 608 U.S. ___ (2026) (Sotomayor, J., dissenting) (slip op., at 11-13). No comparable administrative burden is present here: the operative election is months away, and nothing in the existing schedule would require any last-minute reassignment of voters.

Fifth, the Secretary's implementation estimate does not fill the gap. The State leans on the affidavit's projection of roughly eight weeks of preparatory and coding work overlapping the current schedule. ECF No. 302 at 2-3. But that estimate is untested; the Plaintiffs themselves have asked the Court to determine the true operational deadline through live questioning of the Secretary. ECF No. 300 ¶ 6. More fundamentally, the State conflates the Court deciding with the Court changing. Briefing and a hearing alter no election rule; only a remedial order could, and whether and how any remedy should be framed for 2026, including the interim use the Plaintiffs contemplate, is exactly what the June 17-18 hearing exists to sort out. The Secretary can implement Act 2 while the Court adjudicates its validity. Whatever the true operational deadline proves to be, it bears on the remedy available for 2026; it says nothing about whether the merits should be heard on schedule. A pending factual dispute over that deadline is a reason to hold the hearing, not to vacate it.

## III.  DEFERRAL PREJUDICES JEWETT AND THE PUBLIC INTEREST IN A CONSTITUTIONAL MAP.

Jewett is not a bystander to Act 2. She is a candidate for the United States House of Representatives, and she contends that Act 2's Districts 2 and 6 are themselves racial gerrymanders that do not comply with *Callais*, thereby affecting District 1, where she is a candidate. Her position follows directly from the State's own concession, accepted by this Court and affirmed by the Supreme Court, that race predominated in the State's districting choices. A map drawn to satisfy that concession by again sorting voters by race in Districts 2 and 6 does not cure the violation; it relocates it. Resetting the schedule to defer review of that map past the 2026 election would entrench the very harm this litigation exists to remedy and would deny Jewett any timely adjudication of her claim.

The public interest runs the same way. It is not served by leaving an alleged racial gerrymander in place, unreviewed, through another federal election. It is served by prompt resolution on the merits, which the current schedule provides and the proposed reset defeats.

Jewett is not alone in questioning Act 2. The Plaintiffs have told this Court they are uncertain whether the map avoided racial line-drawing around District 2, where at least one Plaintiff resides, and have proposed that any 2026 use of Act 2 be expressly temporary and interim, with jurisdiction retained to ensure, before 2028, that District 2 does not sort voters by race. ECF

No. 300 ¶ 7. No party asks this Court to treat Act 2's lawfulness as settled. The only live question is when the Court will decide it, and the answer the existing schedule already gives, at the June 17-18 hearing, is the right one.

**CONCLUSION**

For these reasons, Proposed Intervenor Lauren Jewett respectfully requests that the Court deny the State's Motion to Reset Deadlines, maintain the existing briefing schedule and the June 17-18, 2026 hearing, and proceed to adjudicate the lawfulness of Act 2 as a merits question in this case, subject to direct review by the Supreme Court under 28 U.S.C. § 1253.


Respectfully submitted,

/s/ Donald C. Hodge, Jr.
Donald C. Hodge, Jr. (La. Bar No. 29251)
Box 481
Westminster, CO 80036
Telephone: 225-800-7124
donaldhodgejr@proton.me
Counsel for Intervenor Lauren Jewett

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all counsel of record.


/s/ Donald C. Hodge, Jr.