RECEIVED    DTC
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

JUN 0 3 2026

BY:_____ DANIEL J. McCOY, CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

PHILLIP CALLAIS, ET AL.

v.

NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE

Civil Action No. 3:24-CV-00122

# BRIEF OF FRANCINE BROWN REGARDING THE RELIABILITY OF POPULATION DATA, COVID-19 ENUMERATION IMPACTS, AND THE NECESSITY OF FULL DEMOGRAPHIC ANALYSIS IN CONGRESSIONAL REDISTRICTING

## INTRODUCTION

I, Francine Brown, respectfully submit this brief as a material witness with professional experience in census enumeration operations. I served in a leadership capacity responsible for directing and overseeing enumeration activities within Ouachita, Franklin, Morehouse, East Carroll, and West Carroll Parishes during the 2020 Census.

My observations are offered to assist the Court in evaluating whether Senate Bill 121 ("SB 121"), now enacted as Act 2 of the 2026 Regular Session, adequately reflects population realities and complies with constitutional and statutory requirements, including the protections embodied in the Voting Rights Act.

## IMPACT OF COVID-19 ON 2020 CENSUS ENUMERATION

The 2020 Census was conducted during an unprecedented public health emergency. The U.S. Census Bureau acknowledged that COVID-19 required major operational adjustments and created risks to census quality and accuracy. The Bureau later published reports identifying potential impacts on data quality resulting from pandemic-related disruptions.

Among the significant disruptions were:

1. **Suspension and delay of field operations.** Census workers experienced interruptions in face-to-face enumeration efforts because of public health restrictions.
2. **Reduced in-person access to households.** Many residents were unwilling or unable to engage with census workers due to health concerns, lockdowns, and social distancing requirements.

3. **Delays in counting transient and vulnerable populations.** Enumeration of individuals experiencing homelessness and persons living in transitory locations was delayed for months.
4. **Operational delays in group quarters.** Colleges, nursing homes, correctional facilities, and other group living facilities faced disruptions that complicated accurate counting procedures.
5. **Recruitment and staffing challenges.** COVID-19 affected hiring, training, supervision, and retention of census personnel nationwide.
6. **Technology and internet access disparities.** The 2020 Census relied heavily on online responses. Rural, elderly, low-income, and historically underserved populations often faced greater barriers to participation.
7. **Higher reliance on proxy and administrative data.** Where direct contact could not be achieved, census operations relied more heavily on indirect methods, creating increased risk of error. Independent assessments have noted that several higher-risk procedures were used more frequently in 2020 than in 2010.

## RELEVANCE TO LOUISIANA REDISTRICTING

As a former enumeration leader in Northeast Louisiana, I observed firsthand the extraordinary challenges encountered during census operations. The Court should consider that population figures relied upon for redistricting were generated during conditions unlike any previous census cycle.

The Census Bureau itself has acknowledged that COVID-19 created potential risks to census quality and that isolating the precise impact of those disruptions is difficult.

Accordingly, caution should be exercised before assuming that 2020 population counts perfectly captured the demographic realities of communities throughout Louisiana.

## NECESSITY OF FULL DEMOGRAPHIC ANALYSIS

A fair congressional map requires examination of all affected populations, including:

- Black voters;
- White voters;
- Democratic voters;
- Republican voters;
- Independent voters;
- Minority communities protected by the Voting Rights Act.

Redistricting cannot be fairly evaluated if decision-makers selectively analyze only one political group while disregarding the impact on other voters.

Public reports regarding SB 121 indicate significant concerns that the map's effects may disproportionately benefit one political party. Critics have argued that the enacted plan could

produce five Republican districts and one Democratic district despite Louisiana's electorate being substantially more politically diverse.

## CONCERN REGARDING ANALYSIS OF DISTRICT IMPACTS

To the extent proponents of SB 121 relied primarily upon Republican voting performance while failing to conduct a comparable assessment of Democratic voters and Black voters within affected districts, such an approach would provide an incomplete picture of the map's impact.

Where a district contains a Republican electorate that is overwhelmingly white, analyzing only Republican voting behavior may fail to capture the practical effects on minority communities and voters protected under the Voting Rights Act.

Meaningful evaluation requires consideration of:

- Racial demographics;
- Voting-age population;
- Historical voting patterns;
- Minority voting cohesion;
- Political participation rates; and
- Whether minority voters retain a realistic opportunity to elect candidates of their choice.

Failure to evaluate all affected populations undermines confidence that district lines were drawn through a complete and neutral assessment.

## CONCLUSION

The Court should carefully consider:

1. The extraordinary and documented effects COVID-19 had on census enumeration operations;
2. The resulting concerns regarding population accuracy and representation;
3. The importance of examining impacts on all voters, including Black voters and Democratic voters;
4. Whether SB 121 satisfies the protections guaranteed by the Voting Rights Act and the Equal Protection Clause; and
5. Whether the enacted map provides fair and effective representation for Louisiana's diverse population.

Respectfully submitted,

Francine Brown
Former Census Enumeration Manager
Ouachita, Franklin, Morehouse, East Carroll, and West Carroll Parishes

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**PHILLIP CALLAIS, ET AL**

**CIVIL DOCKET NO. 3:24-CV-00122**
**DCJ-CES-RRS**

**VERSUS**

**THREE-JUDGE COURT**

**NANCY LANDRY, in her official**
**capacity as Louisiana Secretary of**
**State**

## ORDER

On May 29, 2026, the State of Louisiana notified the Court that Senate Bill 121 ("S.B. 121"), establishing a new congressional map, had passed both chambers of the Louisiana Legislature and had been signed into law by the Governor as Act 2 of the 2026 Regular Session. [Doc. 298].

In light of the enactment of Act 2, the Court will convene a hearing beginning on **June 17, 2026, at 10:00 a.m.**, in Courtroom 1 of the United States Courthouse, 300 Fannin Street, Shreveport, Louisiana, before United States Circuit Judge Carl E. Stewart, Judge David C. Joseph, and Judge Robert R. Summerhays, to determine whether the newly enacted congressional plan satisfies the requirements of *Louisiana v. Callais*, 608 U.S. \_\_\_\_ (2026). The hearing will continue on June 18, 2026, as necessary.

Accordingly,

IT IS HEREBY ORDERED that any party seeking to address the validity or effect of Act 2 shall file a brief no later than **June 5, 2026**. Any opposition or response brief shall be filed no later than **June 12, 2026**.