# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

PHILLIP CALLAIS, et al.,                  )
                                          )        Case No. 3:24-cv-00122-DCJ-CES-RRS
            Plaintiffs,                   )
                                          )
v.                                        )        District Judge  David C. Joseph
                                          )        Circuit Judge  Carl E. Stewart
NANCY LANDRY, IN HER OFFICIAL             )        District Judge  Robert R. Summerhays
CAPACITY AS LOUISIANA                     )
SECRETARY OF STATE, et al.,               )        Magistrate Judge Kayla D. McClusky
                                          )
            Defendants.                   )

**DECLARATION OF EDWARD D. GREIM IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

I, Edward D. Greim, pursuant to 28 U.S.C. § 1746, declare:

1.      I have served at all times as lead counsel for Plaintiffs in the above-referenced

matter, including as counsel of record in the U.S. Supreme Court.

2.      I am a partner in the firm of Graves Garrett Greim LLC, located at 1100 Main

Street, Suite 2700, Kansas City, Missouri 64105. I joined Graves Garrett Greim in 2006. I focus

my practice on free speech and election law, complex commercial and securities litigation, and

internal investigations and whistleblower claims.

3.      I have been engaged in the practice of law in Missouri continuously since 2006.

For four years before 2006, I was engaged in the practice of law in New York City and Kansas

City with the firm Bryan Cave LLP. I am a graduate of the University of Missouri (A.B.,

economics and political science, *summa cum laude*, 1999), and the Harvard University School of

Law (J.D., 2002). I am admitted to practice in the state and federal courts of Missouri, New York,

1

and Kansas, as well as in various other federal district and appellate courts and the United States Supreme Court.

4.      I regularly litigate constitutional and election law related cases across the country. During the pendency of this case, for example, I litigated several such cases. These included National Voter Registration Act ("NVRA") and First Amendment claims to challenge state laws and enforcement actions in New Mexico and Pennsylvania. *See*, *e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) (successful challenge to state election laws under National Voter Registration Act and First Amendment); *Voter Reference Found., LLC v. Schmidt*, Case No. 24-cv-294 (M.D. Penn. Apr. 23, 2026) (loss in district court, on appeal to the Third Circuit). NVRA claims against Massachusetts for its refusal to provide voter lists recently succeeded. *Voter Reference Found., LLC v. Galvin*, No. 24-CV-12592-DJC, 2026 WL 836855 (D. Mass. Mar. 26, 2026). I successfully litigated a Supremacy Clause challenge to a Kansas constitutional amendment pertaining to an Article V Convention of States. *Thompson v. Masterson*, 808 F. Supp. 3d 1241 (D. Kan. 2025) (successful motion for judgment under 42 U.S.C. § 1983 striking down Kansas constitutional provision as unconstitutional). And on behalf of New Mexico residents, I took up a religious liberty and preemption challenge to New Mexico's refusal to recognize health care sharing ministries, filing a petition for certiorari to the United States Supreme Court; the Court called for a response and for the views of the United States Solicitor General. *See Brenna Renteria, et al. v. New Mexico Office of the Superintendent of Insurance, et al.*, No. 25-113 (U.S.) (petition for cert. filed).

5.      In the years before this case was filed in 2024, I was also active in election and constitutional litigation. In just the previous few years, these cases included, for example, *Hendrix v. Jaeger*, 2022 ND 168, 979 N.W.2d 918 (prevailed on appeal in initiative petition litigation);

*American Constitutional Rights Union v. Beals*, 3:23-cv-00776 (E.D. Va. Nov. 15, 2023) (suit under NVRA resulting in consent judgment); and *Convention of States Pol. Fund v. Mangan*, No. 22-35878, 2023 WL 3244014 (9th Cir. Feb. 27, 2023) (First Amendment challenge to Montana campaign finance disclosures, resulting in settlement). Within the past year I have also drafted and advised on legislation regarding voting requirements.

6.      I have also litigated against the United States in several significant matters, all of which ended in favorable settlements. During the pendency of this case, I sued the federal government in *Herzog Found. v. EEOC*, No. 4:24-cv-00651-RK (W.D. Mo. Nov. 18, 2025) (ECF 88) (successfully moved for preliminary injunction and obtained settlement and permanent injunction in lawsuit against the Federal Government challenging constitutionality of statute and regulations); and *Houck v. United States*, No. 25-1433 (3d Cir.) (obtained settlement against Federal Government in FTCA action on behalf of client and family targeted by an FBI raid and federal prosecution for alleged activity near abortion clinics). In 2018, in the longest-running case of my career, I obtained a successful multimillion dollar settlement and injunctive relief in *NorCal Tea Party Patriots, et al. v. Internal Revenue Service, et al.*, No. 1:13-cv-00341 (S.D. Ohio, Aug. 8, 2018), a class action against the United States Department of the Treasury, IRS, and several IRS officials regarding the viewpoint-based targeting of certain "Tea Party" and other groups during the Obama Administration.

7.      Redistricting-related work not included in the above references includes the defense before the Missouri Supreme Court in 2012 of Missouri's first 8-seat congressional map (where Missouri had just lost a seat) against multiple challenges based on the First and Fourteenth Amendments and the Missouri Constitution in *Pearson v. Koster*, 359 S.W.3d 35 (Mo. banc 2012), *on transfer after remand*, 367 S.W.3d 36 (Mo. banc 2012); the National Republican Redistricting

3

Trust's amicus brief regarding the reasons political gerrymandering claims are non-justiciable in *Rucho v. Common Cause*, 588 U.S. 684 (2019); the defense of the Kansas Legislature in a challenge to that state's congressional redistricting map after the 2020 Census, *Rivera v. Schwab*, 315 Kan. 877, 512 P.3d 168 (Kan. 2022); and an amicus brief for the American Redistricting Project, Restoring Integrity and Trust in Elections, and the St. Charles County Director of Elections in defense of Missouri's 2025 congressional redistricting map, in *Maggard v. State of Missouri*, No. SC101581 (Mo. banc, May 12, 2026). I have also advised clients regarding redistricting legislation and constitutional provisions controlling redistricting.

8.      Since 2018, I have been named to *Best Lawyers in America*. For seven years prior to 2018, I was named a Missouri *Super Lawyer* Rising Star in the field of Constitutional Law. In 2013, I received Missouri Lawyers Weekly's Influential Lawyer of the Year award. I have represented clients in trial and appellate courts in Arkansas, California, Florida, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Missouri, Michigan, Montana, Nevada, Nebraska, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Virginia, Washington, Wisconsin, and the District of Columbia. I have represented clients in administrative proceedings or have advised regarding constitutional and election issues in several additional states. I have argued before the Missouri, Kansas, Nebraska, and North Dakota Supreme Courts; the United States Courts of Appeals for the Sixth, Seventh, Eighth, and Tenth Circuits; and twice in this matter before the United States Supreme Court.

9.      In this litigation I was ably assisted by attorneys Matthew Mueller, Jackson Tyler, Katherine Mitra (nee Graves), Sarah Pineau, A. Bradley Bodamer, as well as paralegals Rebekah Badell, Nichole Kruger, and Christina Black. Law Clerks Autumn Duncan, Ben Graves, and

Matthew Kuckelman also performed research and drafting tasks that were essential to the favorable outcome here. I am personally familiar with the skills and experience of these professionals.

10.    Part of my job responsibilities as an attorney and partner with Graves Garrett Greim is to supervise work done under my direction, including its quality and the quantity of time expended for any given service. I review dozens of billing statements monthly and make judgments on a regular basis regarding time that is reasonably and necessarily spent on legal services performed on behalf of clients for whom I am the responsible partner.

11.    I was intimately involved in the work performed at my request or under my supervision in this matter on an ongoing basis. I regularly reviewed the monthly billing statements for this matter and, during that process, if I identified entries that I believed were redundant or excessive, I cut or reduced them accordingly. Usually, those reductions never appear in the final client bill because when I cut the time, the record of the attorney's time is reduced; those cuts are now lost to history. Sometimes, when I am unwilling to cut an attorney's time because it seemed necessary at the time, but I still believe the client should not be charged, I include a "courtesy discount" adjusting the overall bill downward. Some bills in this case include such discounts. The most common reason for a discount was to cut time spent by a new attorney on the matter because some tasks took longer due to the learning curve that comes with any new matter. I also cut time when I added an attorney anticipating the need for expedited proceedings and the attorney began to review emails and filings in preparation for the expected work, but that work was never needed because of case developments. Both of these situations are reflected as a "courtesy discount" in the original bill, because even at the time of bill issuance, I could perceive the fairness of a cut. These contemporaneous cuts include the following cuts:

- For Matthew Mueller in February 2024, $5,000 (to cover his $5,043 in billing for 13.1 hours at $385 per hour);

- For June 2025, for Matthew Mueller $6,000 (to mostly cover his $6,930 in time spent re-engaging in the case for a possible remedial trial that did not occur). This cut was later augmented on review as set forth in the next paragraph.

- For July 2026, a courtesy discount of $2,000 for about 25% of the work by Matthew Mueller and an able summer associate, Autumn Duncan, to conduct legal research laying the groundwork for re-argument.

- For June 2026, 1.0 hour of Katherine Mitra time at $470 for preparing a declaration which was not used (unshown on bill).

12.     Upon preparing for this application, I reviewed the bills once more and cut any additional hours that, upon reflection and with the distance of months or years, I believed were properly billable to Plaintiffs (and that were actually paid) but for purposes of this application, were not absolutely necessary to achieve the victory Plaintiffs did in this case. At times, I expanded the courtesy discount to include other work. Other times, I cut time for related work that advanced the interests of the Plaintiffs, but was not necessary to secure a win. In exercising this billing judgment, I cut the following additional fees. This includes the following cuts totaling roughly $60,000:

- For January 2024, Matthew Mueller, 12.8 hours at $385, for a total of $4,928.

- For March 2024, a rounded $5000 was cut for consideration of, and conferences with, a potential testifying expert who was ultimately not used;

- For April 2024, Matthew Mueller, 4.6 hours at $420, yielding $1,932, a rounded courtesy cut of $2,000 was applied;

6

- For May 2024, 6.9 hours for Katherine Graves at $395 per hour, and .9 hours for Eddie Greim at $680 per hour, for work on an amicus brief in the Fifth Circuit regarding the availability of a private right of action under the VRA; but this work was not directly in this litigation and the brief was not filed; the total cut is $3,337.50;

- For June 2024, .1 hours of Katherine Graves time on the aforementioned brief was cut, and 5.4 hours of summer clerk time at $255 per hour checking citations and proofing a brief, for a total cut of $1,416.50;

- For November 2024, .1 for Katherine Graves for a cut of $39.50 (not shown in the attached exhibits but made on review);

- For December 2024, .5 hours for Eddie Greim (at $680) and .5 for Jackson Tyler (at $395) for completing different tasks in negotiating the onboarding of a consultant used to later prepare for oral argument, for a courtesy discount of $537.50.

- For January 2025, $5,816 courtesy discount comprising 1.2 hours of Eddie Greim time ($816) on the aforementioned consultant, and $5,000 given the amount of work expended on drafting the appellant's brief.

- For February 2025, $6,100 for attendance by Eddie Greim, Katherine Mitra (nee Graves) and Jackson Tyler at another Supreme Court oral argument to observe courthouse and courtroom procedures and demeanor of justices in handling another Equal Protection-related case.

- For March 2025, $71 to remove administrative tasks dealing with a consultant for oral argument and in processing the withdrawal of Jackson Tyler.

7

- For April 2025, $316.50 in handling the withdrawal of Jackson Tyler.

- For May 2025, 2.1 hours of Matthew Mueller time at $495 for a total of $1039.50, shown as a courtesy discount.

- For June 2025 an increase in the previous $6000 courtesy discount by an additional $8,542 (for a total of $14,52.50, counting the amount already cut as set forth in the preceding paragraph) to fully eliminate time spent by Paul Brothers and Matthew Mueller to prepare for an expected fast-moving remedial proceeding that did not occur.

- For September 2025, a courtesy discount of $5,000 for work by Matthew Mueller in preparing the brief and preparing for moots.

- For October 2025, a courtesy discount of $5,000 for work by Matthew Mueller in preparing for argument.

- For January 2026, a courtesy discount of $6,000 covering most of the time and billing ($6,552) spent by new attorney to the case Sarah Rafie Pineau, in recognition of any inefficiency for bringing a new attorney to the case to revisit and update the motion to expedite materials we had drafted in June 2025, even though Pineau also did not bill certain time spent reviewing case materials.

- For May 2026, a courtesy discount of $7,060 for 8.0 hours spent by Eddie Greim in testifying before the U.S. Senate regarding the implications of the Plaintiffs' win and in preparing, revising, and submitting written testimony, and for 2.0 hours for Katherine Mitra in assisting with research and drafting on this task.

8

13.    Filed contemporaneously herewith as **Exhibit 1** to my declaration and incorporated herein are true and correct copies of bills that reflect the amounts expended by Plaintiffs on attorney's fees, costs, and expenses related to the above-captioned case that were reasonably and necessarily completed to secure a win for Plaintiffs. They are redacted to protect the attorney-client privilege and to preserve the attorney work product doctrine.

14.    With regard to the billing records detailing the hours which I and my colleagues have spent on this case, our Firm's policies require all professional employees to maintain daily contemporaneous time sheets of activities on a case-by-case basis (without regard to whether fee recovery is possible), which is entered into our firm's database system. Time is recorded in increments of 1/10 of an hour. Thus, the computer printout is directly and completely derived from my personal entries as to my time, and those of my colleagues.

15.    As detailed in the attached billing records, the Firm's total fees from January 2024-June 25, 2026 are $1,817,319.00. Attorneys spent the following hours on the matter and on the fee application. After deductions before and after billing, I spent a total of 1,103 hours litigating this matter and 25.6 hours related to this fee application, for a total fee of $772,193. Partner Matthew Mueller spent a total of 187.3 hours litigating this matter and .3 hours related to this fee application, for a total fee of $64,049. Associate Katherine Mitra spent a total of 1,357.3 hours litigating this matter and 46.2 hours related to this fee application, for a total fee of $566,138.50. Associate Jackson Tyler spent a total of 745.9 hours on this matter, for a total fee of $289,945. Associate Sarah Pineau spent a total of 38.1 hours litigating this matter and .5 hours related to the fee application for a total fee of $12,045. Senior Counsel A. Bradley Bodamer spent a total of 70.5 hours on this matter for a total fee of $45,472.50. Additionally, paralegal Nichole Kruger spent a total of 5.1 hours litigating this matter and 10.7 on the fee application, for a total fee of $4,420;

9

paralegal Rebekah Badell (nee Smith) spent a total of 167.9 hours on this matter, for a total fee of $42,169; paralegal Christina Black spent 27.6 hours on this matter and 9.1 hours related to preparation of this fee application for a total fee of $9,914.50; and paralegal Leah Bye spent 1.4 hours on this matter and 9.1 hours related to preparation of this fee application for a total fee of $3,448.50. Three Graves Garrett Greim law clerks also worked on this matter, billing a combined total of 28.5 hours and $7,523.50. **Exhibit 2** attached hereto is a spreadsheet detailing all of our billing by rate, timekeeper, and month. All of the time submitted here was reasonably and necessarily spent in representing Plaintiffs in this matter.

16.    I am familiar with the prevailing reasonable hourly rates customarily charged by attorneys who specialize in election law litigation. There are not many attorneys that engage in redistricting litigation, and even fewer of those attorneys work in private practice. Many work for non-profit groups whose services may not be available to people like Plaintiffs. These rates not only reflect the rates of litigators in complex redistricting litigation at the U.S. Supreme Court level but also the rates of litigators in the Kansas City market.

17.    The hourly rates for each professional on the attached billing were based upon regular analysis of the market rate for attorneys or paralegals of the requisite experience level. Rates at Graves Garrett Greim are adjusted on an annual basis in March of each year. In this case, our Firm's 2023-2024, 2024-2025, 2025-2026, and 2026-2027 rates were applicable.

18.    In my experience and knowledge, partners with more than 20 years' experience in election law litigation typically bill at rates between approximately $600 to $800 per hour. My own typical hourly rate for litigation matters was $625 in 2023-2024, $680 in 2024-2025, $725 in 2025-2026, and $765 in 2026-2027. I believe that these rates are reasonable in complex election

10

law litigation, given my qualifications, years of experience, and the prevailing market rates nationwide for election law litigators.

19.    Based on these same considerations, counselors with 40 years of experience, such as A. Bradley Bodamer, would reasonably bill at rates between approximately $600 and $800 per hour. Mr. Bodamer's hourly rate for this matter was $645 per hour. I believe that this rate is reasonable in complex redistricting and election law litigation, given Mr. Bodamer's qualifications, years of experience, and the prevailing market rates for election law litigators. Mr. Bodamer is a 1980 graduate of the University of Missouri School of Law. He has over four decades of legal experience in civil litigation and has first-chaired more than 30 trials to verdict in federal and state courts across the country. Prior to his time at Graves Garrett Greim, he was a partner at both Shook, Hardy & Bacon L.L.P. and Stinson LLP, major firms with a national presence. Mr. Bodamer focused exclusively on depositions and trial involving our key expert, a task to which his experience suited him well.

20.    Based on these same considerations, a partner with nine years of experience, such as Matthew Mueller, would reasonably bill at rates between approximately $400 and $550 per hour. Mr. Mueller's hourly rate for this matter was $420 per hour in 2024, $495 per hour in 2025, and $525 per hour in 2026. I believe that this rate is reasonable in complex redistricting and election law litigation, given Mr. Mueller's qualifications, years of experience, and the prevailing market rates for election law litigators. Matthew Mueller is a 2017 graduate of the University of Missouri School of Law. He joined Graves Garrett Greim upon graduation and has litigated constitutional and election issues for the last nine years. *See*, *e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) (successful challenge to state election laws under National Voter Registration Act and First Amendment); *Hendrix v. Jaeger*, 2022 ND 168, 979 N.W.2d 918

11

(prevailed on appeal in initiative petition litigation); *American Constitutional Rights Union v. Beals*, 3:23-cv-00776 (E.D. Va. Nov. 15, 2023) (suit under NVRA resulting in consent judgment); *Voter Reference Found., LLC v. Galvin*, No. 24-CV-12592-DJC, 2026 WL 836855 (D. Mass. Mar. 26, 2026) (successful challenge to state election laws under National Voter Registration Act); *Convention of States Pol. Fund v. Mangan*, No. 22-35878, 2023 WL 3244014 (9th Cir. Feb. 27, 2023) (First Amendment challenge to Montana campaign finance disclosures, resulting in settlement). Mr. Mueller is also experienced in commercial litigation. *See, e.g., Allenspach-Boller v. United Cmty. Bank*, No. 5:19-CV-06073-DGK, 2022 WL 808695 (W.D. Mo. Mar. 16, 2022) (defended bank and prosecuted counterclaims resulting in multimillion-dollar judgment in client's favor); *NDMascendant, LLC v. Matze*, No. 86495, 2026 WL 1264524 (Nev. May 7, 2026) (agued successful appeal of denial of anti-SLAPP motion to dismiss); *Stickland v. Schlegel*, No. 02-22-00281-CV, 2023 WL 8112889 (Tex. App. Nov. 22, 2023) (successful appeal of denial of anti-SLAPP motion to dismiss). Mr. Mueller provided valuable assistance in this matter, but I cut much of his early 2024 time, and some later time, because he was brought into the case in anticipation that he would need to take the laboring oar on some drafting and trial work. Because that ultimately proved necessary for only part of the matter, I included courtesy discounts roughly equal to his time spent at the time bills were submitted to the client, and later made some additional cuts in preparing this application.

21.    Based on these same considerations, an associate with three to five years of experience, such as Jackson Tyler, would reasonably bill at rates between $300 and $450 per hour. Mr. Tyler's hourly rate for this matter was $395 per hour. I believe that this rate is reasonable in complex redistricting and election law litigation, given Mr. Tyler's qualifications, years of experience, and the prevailing market rates for election law litigators. Mr. Tyler is a 2020 graduate

12

of the University of Missouri School of Law. He clerked for the Honorable Zel M. Fisher on the

Missouri Supreme Court before joining GGG. He also has extensive experience in election law.

*See*, *e.g.*, *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) (successful

challenge to state election laws under National Voter Registration Act and First Amendment);

*Voter Reference Found., LLC v. Galvin*, No. 24-CV-12592-DJC, 2026 WL 836855 (D. Mass. Mar.

26, 2026) (successful challenge to state election laws under National Voter Registration Act). Mr.

Tyler helped to brief and try this case with skill beyond his years. He left the firm after the Supreme

Court oral argument in March 2025, and because of that fortunate timing, none of his work had to

be taken up and completed by another person. It did however become necessary to fill his slot later

in 2025 as proceedings continued.

22.    Based on these same considerations, an associate with nine years of experience,

such as Sarah Pineau, would reasonably bill at rates between approximately $400 and $500 per

hour. Ms. Pineau's hourly rate for this matter was $455 per hour in 2025 and $475 in 2026. I

believe that this rate is reasonable in complex redistricting and election law litigation, given her

qualifications, years of experience, and the prevailing market rates for election law litigators. In

my experience and knowledge, an associate such as Mrs. Pineau, with nine years of experience in

complex litigation, typically bills at rates between approximately $400 to $500 per hour. I believe

that this rate is reasonable, given Mrs. Pineau's qualifications, years of experience, and the

prevailing market rates nationwide for litigators. Mrs. Pineau is a 2016 graduate of the University

of Virginia School of Law. As a law student, Mrs. Pineau served as the research assistant to

constitutional scholar Douglas Laycock during his successful representation of the petitioner in

*Holt v. Hobbs*, 574 U.S. 352 (2015) (unanimous decision holding that Arkansas violated the

Religious Land Use and Institutionalized Persons Act by prohibiting a Muslim inmate from

growing a short beard in accordance with his religious beliefs). After law school, Mrs. Pineau completed a two-year clerkship with the Honorable Kathryn H. Vratil of the United States District Court for the District of Kansas. Before joining Graves Garrett Greim, Mrs. Pineau practiced at nationally recognized law firms, including Polsinelli PC, which is consistently ranked among the Am Law 100, and Jones Day, a global law firm regularly ranked among the Am Law 20. She has extensive litigation experience, with an emphasis on commercial disputes and discrimination law. *See, e.g.*, *Bjorman v. Alegent Health – Bergan Mercy Health Systems*, No. 8:21-cv-00259 (D. Neb. 2022) (ECF 47) (successful motion for summary judgment on complex claims of discrimination and wrongful discharge); *Eustice v. Experian Information Solutions, Inc.*, No. 4:20-cv-01824 (S.D. Tex. 2021) (ECF 31) (successful motion for summary judgment on commercial claims brought against a credit reporting agency); *Dang v. Johnson, et al.*, No. 3:21-cv-05544 (W.D. Wa. 2021) (ECF 16, 36) (successful motion to dismiss of claims of racial discrimination and constitutional violations; related motion to strike pursuant to Washington's anti-SLAPP law); *Dang v. Moore, et al.*, No 21-36040 (9th Cir. 2022) (Dkt. 2) (successful motion to dismiss appeal for lack of jurisdiction in a case involving claims of racial discrimination and constitutional violations). Mrs. Pineau also has particularized experience in election litigation and disputes in other states. Mrs. Pineau joined the litigation team only in early 2026 in anticipation of possible work in the remedial phase of the case. Mrs. Pineau had already taken care not to bill study time to familiarize herself with the case, but to guard against any duplication, I reduced some of her early 2026 time in our fee application to account for any possible inefficiency.

23.    Based on these same considerations, an associate with two to four years of experience, including a clerkship on the U.S. Court of Appeals for the Fifth Circuit, such as Katherine Mitra (nee Graves), would reasonably bill at rates between approximately $300 and

14

$480 per hour. Mrs. Mitra's hourly rate for this matter was $395 per hour in 2024, $445 in 2025, and $470 in 2026. I believe that this rate is reasonable in complex redistricting and election law litigation, given her qualifications, years of experience, skills, contributions to the case, and the prevailing market rates for election law litigators. Mrs. Mitra is a 2022 graduate of the University of Virginia School of Law, where she served on the managing board of the *Virginia Law Review* and was a member of the Order of the Coif. Upon graduation, Mrs. Mitra clerked for the Honorable Andrew S. Oldham of the U.S. Court of Appeals for the Fifth Circuit before joining GGG in 2023. Since then, she has briefed, argued, and prevailed in numerous constitutional, election, and civil rights litigation matters. *See, e.g.*, *Kirk v. City of St. Joseph*, No. 24-06023-CV-SJ-GAF (W.D. Mo. Aug. 21, 2024) (ECF 34) (successful motion to dismiss 42 U.S.C. § 1983 case); *Kirk*, No. 24-06023-CV-SJ-GAF (W.D. Mo. Nov. 4, 2024) (ECF 58) (successful motion for attorneys' fees to defendants under 42 U.S.C. § 1988); *Thompson v. Masterson*, 808 F. Supp. 3d 1241 (D. Kan. 2025) (successful motion for judgment under 42 U.S.C. § 1983 striking down Kansas constitutional provision as unconstitutional); *Herzog Found. v. EEOC*, No. 4:24-cv-00651-RK (W.D. Mo. Nov. 18, 2025) (ECF 88) (successfully briefed and argued motion for preliminary injunction and obtained settlement and permanent injunction in lawsuit against the Federal Government challenging constitutionality of statute and regulations); *Houck v. United States*, No. 25-1433 (3d Cir.) (obtained settlement against Federal Government in FTCA action); *Kirk v. Grace Evangelical Church*, No. WD 88127, 2026 WL 1073399 (Mo. App. W.D. Apr. 21, 2026) (successfully briefed and argued anti-SLAPP motion to dismiss on appeal); *Brenna Renteria, et al. v. New Mexico Office of the Superintendent of Insurance, et al.*, No. 25-113 (U.S.) (petition for cert. filed); *Maggard v. State of Missouri*, No. SC101581 (Mo. banc, May 12, 2026) (filed amicus brief in challenge to Missouri congressional districts). Mrs. Mitra was essential to our research and

15

drafting efforts, helping to conceive the case, try it, brief it, and hone our arguments before the United States Supreme Court. Her work quality and efficiency has saved the Plaintiffs substantial time and has reduced the amount of fees being requested here.

24.     Based on these same considerations, the rates of Graves Garrett Greim's paralegals Nichole Kruger, Rebekah Smith (nee Badell), Christina Black, and Leah Bye of $255 per hour in 2024, $265 per hour in 2025, and $285 per hour in 2026, are in my opinion entirely reasonable in complex redistricting and election law litigation.

25.     Ms. Kruger has been a paralegal for more than 25 years, including more than 20 years at Graves Garrett Greim. Rates of $255 to $285 per hour for the work performed by Ms. Kruger are in my opinion entirely reasonable in complex First Amendment and election law litigation, given her paralegal skill, qualifications, and years of experience.

26.     Ms. Badell was a paralegal with Graves Garrett Greim for more than 9 years, working with me on election law litigation. Rates of $255 per hour in 2024 and $265 per hour in 2025 for the work performed by Ms. Badell are in my opinion entirely reasonable in complex commercial litigation, given her paralegal skill, qualifications, and years of experience.

27.     Ms. Black has been a paralegal at Graves Garrett Greim for more than 4 years. Rates of $255 to $285 per hour for work performed by Ms. Black are in my opinion entirely reasonable in complex election law litigation, given her skill, qualifications, and years of experience.

28.     The rate of paralegal Ms. Bye is reasonable in complex election law litigation.

29.     Based on these same considerations, the rates of Graves Garrett Greim's law clerks of $250 per hour in 2025 for Autumn Duncan, and of $285 per hour in 2026 for Matthew Kuckelman and Ben Graves, are in my opinion entirely reasonable in complex redistricting and

16

election law litigation, given their skills and the tasks assigned to them. All three clerks are exceptionally talented and provided invaluable assistance at different points in the litigation.

30.     This case took an enormous amount of effort and skill given the complexity of the matter, uniqueness of the issues, expedited timeline to trial, and multiple rounds of briefing before the U.S. Supreme Court. Given the small size of our Firm, which currently employs 15 attorneys, this case was a massive undertaking and precluded our election law group's ability to accept other employment during the times that the case was active. For example, one partner-level attorney who had been detailed for playing a major role in briefing and trial in the case, Matthew Mueller, was instead given a more limited role so that he could pivot to prosecute the Firm's substantial other litigation. A commercial litigation attorney, Brad Bodamer, aided with expert depositions and the Hefner direct at trial despite having a pending matter in St. Louis, Missouri around the same time as trial. Plaintiffs' matter did not fill unused capacity at this Firm.

31.     Plaintiffs and their attorneys also faced significant opposition and bad press for their prosecution of this matter. They withstood significant criticism publicly and privately from Democrats and Republicans alike given the widespread bipartisan support in Louisiana for SB8 from the beginning of the case until now.

32.     In addition to the attorney's fees and expenses Plaintiffs incurred from Graves Garrett Greim's representation in this matter, I have also reviewed the invoices from Plaintiffs' co-counsel, Paul Hurd, in connection with this litigation. Mr. Hurd billed Plaintiffs, and was paid, a total of $271,533.75 in fees and $14,354.90 in costs for services performed on Plaintiffs' behalf by Mr. Hurd. I found Mr. Hurd's services and insight to be of particular value in this case. Mr. Hurd provided necessary local knowledge regarding redistricting, communities of interest, and maneuvering by legislators and local politicians to sustain SB8 and defeat Plaintiffs' effort. Mr.

17

Hurd also brings deep subject matter expertise due to his litigation of the first wave of *Shaw* claims after the 1990 Census in Louisiana, Texas, and Virginia. This included the long-running *Hays* litigation. As further supported by Mr. Hurd's declaration, I believe these fees were reasonable and necessary.

33.    Counsel Dale Oldham was also essential to this matter, first as a legal consultant retained directly by the Firm, and then as counsel on the briefs in the United States Supreme Court. Mr. Oldham has several decades of redistricting litigation experience and is one of the most experienced and skilled Republican attorneys in the field of redistricting and election law. Mr. Oldham attended each day of trial, reviewed every brief and major motion, attended every moot, and attended both oral arguments in the U.S. Supreme Court. None of Mr. Oldham's hundreds of hours of expended time is sought in this fee application, but his contributions and connections to other litigators and attorney advisors were invaluable. Mr. Oldham's several years of persistent and wise counsel saved Plaintiffs from having to retain a much larger research and briefing team, like the teams hired by the Intervenors and the State Defendants. They also contributed to the team's strategy and argument in ways that are not quantifiable, because much of Mr. Oldham's contribution could not be duplicated by other attorneys no matter how large, skilled, and experienced the legal team. In short, Mr. Oldham's essential contributions were of enormous value to the Plaintiffs.

34.    I have knowledge of the costs incurred related to this matter. As demonstrated in the spreadsheet attached as Exhibit 2 to my declaration, Plaintiffs incurred a total of $148,298.34 in costs and out-of-pocket expenses on this case. These include $4,271.66 in recoverable costs for experts; $14,354.90 incurred by Paul Hurd; and $129,671.78 incurred by our Firm. It is my opinion

that all expenses set forth in **Exhibit 3** to this declaration were reasonably and necessarily expended on this case.

35.     Attached as **Exhibit 4** of my declaration are true and correct copies of the relevant receipts and/or invoices, where available, demonstrating that Plaintiffs did actually incur the costs identified in **Exhibit 3** to this declaration.

36.     In sum, the Plaintiffs are currently seeking $2,237,151.09 in fees and costs from January 2024 to June 25, 2026, broken down as follows:

   a.   In attorneys' fees, $1,817,319 from Graves Garrett Greim (*see* ¶ 15) and $271,533.75 from Paul Hurd (*see* ¶ 32).

   b.   In costs, $148,298.34 (*see* ¶¶ 34-35).

37.     Plaintiffs have sustained some additional fees in preparing this motion itself, and will likely sustain costs in litigating the motion and obtaining their fee award. Plaintiffs made a good-faith effort to approach the State Defendants to determine whether they would consider a negotiated resolution of the fee issue, obviating the need for party and judicial resources to be expended on this Motion. In response, both State Defendants stated that they were uninterested in receiving any offer from the Plaintiffs regarding fees. The final fees and costs for the extra litigation the State position will require therefore cannot be determined or submitted at this time, but Plaintiffs will respectfully request an opportunity to make a final submission including those additional costs at the time the Court enters a final decision on this case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 25, 2026.

_Edward D. Greim_
Edward D. Greim

19