# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF LOUISIANA—MONROE DIVISION

PHILLIP CALLAIS, LLOYD PRICE,    )

BRUCE ODELL, ELIZABETH ERSOFF,   )

ALBERT CAISSIE, DANIEL WEIR,     )

JOYCE LACOUR, CANDY CARROLL    )

PEAVY, TANYA WHITNEY, MIKE      )

JOHNSON, GROVER JOSEPH REES,   )

ROLFE MCCOLLISTER,             )

                               )

        Plaintiffs,          )

                               )

v.                             )    Case No. 3:24-CV-00122-DCJ-CES-RRS

                               )

NANCY LANDRY, IN HER OFFICIAL   )

CAPACITY AS LOUISIANA         )

SECRETARY OF STATE,          )

                               )

        Defendant.        )

## DECLARATION OF PAUL LOY HURD, ATTORNEY AT LAW, IN
## SUPPORT OF THE MOTION FOR ATTORNEY FEES AND EXPENSES FILED
## BY PETITIONERS, PHILIP CALLAIS, ET AL.

I, Paul Loy Hurd, file this affidavit with this Honorable Court in support of the "Motion For Attorney's Fees And Expenses" filed in conjunction herewith by the Petitioners in this matter, including Philip Callais, et al ("Petitioners"), and do hereby declare and affirm the following, to wit:

1

1.      I am a double graduate of Tulane University (New Orleans, Louisiana).  My undergraduate degree was granted May 1976 (B.A., Philosophy) after my first year in law school.  I was admitted to Tulane University School of Law in the fall of 1975 upon completion of my junior year of undergraduate study.  I graduated from Tulane University's School of Law in 1978, Juris Doctor.

2.      I am presently in my 48th year of the active practice of Law in the State of Louisiana (since admission in October 1978).  I was the Chief Prosecutor for the City of Monroe, Louisiana from October 1978 to July 1979.  I conducted a general practice of law in Northeast Louisiana from 1979 until October 1980.  Beginning in 1980, I was hired as the "Consumer Compliance Officer" for Central Bank (Monroe, Louisiana), the second largest bank in Northeast Louisiana.

3.      As the "Bank Compliance Officer" for Central Bank, and as a Certified Bank Compliance Officer (Bank Administration Institute ; 1990 - 1995), I directed the bank's complete federal consumer compliance program related to its lending practices, and its consumer deposit services.  These compliance responsibilities included the implementation of Regulation B (12 CFR Part 1002) governing federal lending practices and the implementation of the Equal Credit Opportunity Act.

4.      With the internal staff of Central Bank, I designed and implemented the first consumer loan documentation system that could be completed by bank employees on the newly arrived PC computers and laser printers.  At our peak, Central Bank sold the loan documentation system, and loan documents that I had designed and compiled to approximately fourteen (14) smaller community banks to standardize their consumer compliance programs to pass federal banking regulator audits.  The sale of this compliance and loan documentation system created a

2

profit center at Central Bank for the first time. I ended my employment with Central Bank in 1989 as inside General Counsel through February 1989.

5.    Beginning in February 1989, I was hired as a "Consumer Compliance Officer" by multiple community banks (approximately twelve different banks) in Northeast Louisiana, to implement and maintain their consumer loan activities and documentation, and to establish their internal policies necessary for the Bank to meet their federal compliance obligations.

6.    By 1995, most of the community banks with whom I consulted, had been acquired and merged into larger banks with their own internal compliance programs. During this time, I conducted a general practice of law in Northeast Louisiana focused on real estate transactions, loan closings, and business formation and acquisition.

7.    I have served the legal community through the Louisiana State Bar Association as a prior member of the "House of Delegates," and past member of the "Board of Governors." I also served as a Member of the Louisiana Bankers Association, Security Device Task Force to Implement Article 9 of the UCC in Louisiana to implement the Uniform Commercial Code Article 9 in Louisiana (1989). I have published several articles on banking practices and also on governmental structure concerning Louisiana constitutional structures. Finally, I was included as one of twenty "Power Players" in the State of Louisiana for the years 1981-2001, in the *Louisiana Life Twentieth Year Edition (Autumn 2001)*.

8.    I am admitted to practice law in numerous courts including all the State courts within Louisiana (admitted October 6, 1978); the "United States Court of Appeals, Fifth Circuit" (admitted September 23, 1993); the "United States Court of Appeals, Fourth Circuit" (admitted

3

May 20, 1998); and the "Supreme Court of the United States of America" (admitted February 22, 1994).

9.      I am the sole owner of the law firm of "Paul Loy Hurd, A Professional Law Corporation" ("APLC") located at 1896 Hudson Circle, Suite 5: Monroe, Louisiana 71201, which has been in operation since 2010.  I have been the sole owner and primary litigator on behalf of APLC in this matter from its inception.

10.     At all times during this litigation before this District Court panel and the Supreme Court of the United States of America, I have served as lead co-counsel for the Petitioners, along with Edward D. Greim, a partner in the law firm of Graves Garrett Greim LLC ("GGG"), located at 1100 Main Street, Suite 2700, Kansas City, Missouri 64105.

11.     Throughout my legal career, my practice has also involved a large volume of business negotiations and business disputes, often involving real estate transactions or ownership disputed associated with commercial and residential real estate.

12.     Since 1992, my legal practice has included multiple challenges to apparent racial discrimination in the election and redistricting practices of Louisiana, Texas and Virginia.  These disputes focused on voter challenges to racial discrimination in redistricting impacting voters in these respective States, all based upon the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.  I was lead counsel in the following Equal Protection claims raised by voters challenging racially dominate redistricting plans:

**A.      Challenge To Illegal Call of Supreme Court Special Election By Governor Edwin Edwards.**  As potential candidate for Associate Justice, Louisiana Supreme Court, I successfully challenged an illegally scheduled election, called by then Governor Edwin Edward,

4

to quickly select an Associate Justice of the Louisiana Supreme Court. *Hurd v. McKeithen*, La. App. 28371, 663 So. 2d 537, 1995 La. App. LEXIS 2737 (La. App. 2 Cir. Oct. 31, 1995).

**B.     Constitutional Challenge to Louisiana Congressional Districts.** Lead Counsel at trial and at the United States Supreme Court in successful challenge of Louisiana congressional districts enacted in 1992 (Act 42) and 1994 (Act 1) as violative of the Equal Protection Clause as a racial gerrymander. The District Court voided each set of congressional districts and each case was affirmed by Supreme Court. *Hays v. Edwards*, 839 F. Supp. 1188 (W.D. La. 1993); 862 F. Supp. 119 (W.D. La. 1994); 114 S. Ct. 2731 (1994); 115 S. Ct. 2431 (1995); 936 F. Supp. 360 (1996). The *Hays* litigation was the first case in the nation to succeed in voiding excessive racial gerrymandering under the Equal Protection Clause of the Constitution following *Shaw v. Reno*'s holding by the Supreme Court as a valid cause of action.

**C.     Constitutional Challenge to Texas Congressional Districts.** Lead Counsel at trial and at the United States Supreme Court in successful challenge of Texas congressional districts enacted in 1992 as violative of the Equal Protection Clause as a racial gerrymander. The appeal of this case was orally argued before the United States Supreme Court on December 5, 1995, and the judgment was affirmed by the Supreme Court in June 1996. *Vera v. Richards*, 861 F. Supp. 1304 (S.D. Tex. 1994), *affirmed sub nom. Bush v. Vera*, 116 S. Ct. 1941 (1996).

**D.     Constitutional Challenge to Virginia Congressional Districts.** Lead Counsel at trial and at the United States Supreme Court, in successful challenge of Virginia's congressional districts enacted in the 1990's as violative of the Equal Protection Clause as a racial gerrymander. The judgment in favor of Plaintiffs was rendered and affirmed on appeal to the Supreme Court of the United States. *Moon v. Meadows*, 952 F. Supp. 1141 (E.D. Va. 1997);

5

*Meadows v. Moon* (U.S. Sup. Ct., Case No. 96-1779, and 96-1918) summarily affirmed June 1997.

E.    **Volunteer Assistant In The Constitutional Challenge to New York Congressional Districts.**  Assisted counsel of record in successful challenge of New York congressional districts in the Bronx, Brooklyn area enacted in the 1990's as violative of the Equal Protection Clause as a racial gerrymander.  District Court's judgment rendered in favor of Plaintiffs and affirmed on appeal by the Supreme Court of the United States.  *Diaz, et al. v. Silver, et al.*; CA No. 95-CV-2591 (E.D. N.Y.).

F.    **Constitutional Challenge to Texas State Senate and House Districts.**  Co-counsel in successful challenge of Texas state house and senate districts enacted in 1991 as violative of the Equal Protection Clause as a racial gerrymander.  *Thomas, et al. v. Bush, et al.*, Civil No. A-95-CA-186 (W.D. Tex.).  Districts were redrawn in settlement of case.

G.    **Constitutional Challenge to Louisiana State Senate and Board Of Elementary and Secondary Education Districts.**  Lead Counsel in successful challenge of Louisiana State Senate districts and Board of Elementary and Secondary Education districts.  Based upon filed challenge, the Louisiana legislature reconfigured the State Senate and BESE Board Districts.  *Currie, et al. v. Foster, et al*; Civil No. 97- 0368  (W.D. La.).

H.    **Constitutional and Statutory Challenge to Racial Sub-Distrcts to Elect State Trial Judges in 23rd Judicial District Court.**  *Oren, et al. v. Foster, et al.*, Civil No. 96-3418-A-1 (M.D. La.).  *Prejean v. Foster*, Civil No. 99-30360 (5th Cir.).  Lead Counsel in challenge of racial sub-districts to elect state district judges in the State of Louisiana.  Motion for summary judgment was granted by District Court against the Plaintiffs.  Plaintiffs appealed adverse

6

judgment to U.S. Court of Appeals, Fifth Circuit. Plaintiffs' appeal was orally argued on February 1, 2000. Gerrymandering found to be "political gerrymander" and not "racial gerrymander."

13.    In this litigation I have billed since January 2024 at a rate of $425 per hour, based upon the extensive knowledge and expertise that I have acquired during my career challenging racial gerrymandering, and the unconstitutional application of Section 2 of the Voting Rights Act, before and after the Supreme Court's issuance of *Shaw v. Reno* in June 1993. In this type of political and electoral litigation, I regularly am associated with, and opposed by, lawyers from Washington, D.C., New York, and other major metropolitan areas whose billing rates greatly exceed my chosen billing rate.

14.    I believe my knowledge concerning *Shaw* claims, the proper constitutional application of Section 2 of the Voting Rights Act, and the constitutional limitations on racial gerrymandering fully support this billing rate for these type of specialized constitutional challenges of national jurisprudential importance, and in this community's election practices, and the Courts throughout the nation where these high stake constitutional, electoral and politically determinative claims have been litigated for the last thirty years.

15.    My billing practices include billing at a minimum of a 1/10th of an hour, and also involved the waiving of otherwise billable hours when the time expended on a given legal matter seems disproportionately larger than the issue should have required. My billings by the hour identify the subject matter, and involved a great deal of legal theory conceptualization to conform the facts of the case to the newly enunciated constitutional and voting rights legal principles. I billed travel time (by automobile or air travel) at one half my legal rate, and billed the usual mileage for the miles driven to Court and to the public hearings, and legislative

7

sessions that arose in conjunction with the enactment of the alleged remedial plan known as SB121, and Act 2.

16.    With my co-counsel residing and litigating principally outside of Louisiana, I contributed substantial time and effort identifying the principal legislators and other elected officials involved in enactment of SB8, and identifying other persons involved in the legislature and the State's decision making process. I also focused substantial effort on conceptualizing the ever developing principles associated with the Supreme Court's jurisprudential movement toward "Colorblind" application of the Equal Protection Clause on State action.

17.    In this litigation, I worked alongside my co-counsel, Edward Greim, and his associated firm attorneys, Katie Mitra, Matthew Mueller, Jackson Tyler, and Brad Bodamer.  I am personally familiar with the skills and experience of these associated attorneys and do readily confirm their superior legal work on this matter. I can confirm that their efficient and high quality work was rendered prudently, and for the benefit of our clients and the ultimate vindication of the legal and constitutional rights of our clients.

18.    I have relied upon Edward Greim's commitment to his responsibility as my Co-Counsel and as a partner with Graves Garrett Greim LLC to the close supervision of the work done under his, including its quality.  I witnessed Mr. Greim's supervision of his personnel, and can confirm that their efficient and high quality work was rendered prudently, and for the benefit of our clients and the ultimate vindication of the legal and constitutional rights of our clients.

19.    I am familiar with the rates charged by the attorneys and staff of Graves Garrett Greim LLC in connection with this complex constitutional and Voting Rights Act litigation. It is my observation that in major legal firms with a national practice in election law and related

8

litigation, Partners with over 20 years' experience in election law litigation, such as Edward D. Greim, would reasonably bill at rates between $600 and $800 per hour in such complex election law litigation of national importance. Mr. Greim's hourly rate for this matter was $625 per hour in early 2024, $680 per hour for 2024-2025, $725 per hour for 2025-2026, and $765 per hour since March 2026. I believe that these rates are reasonable in complex redistricting and election law litigation like the *Callais* case given Mr. Greim's qualifications and years of experience, and the prevailing market rates in such nationally important constitutional and election law litigation.

20.     Relative to attorney fees charged by the litigators involved in the Callais case, which was, from the beginning, a complex constitutional and Voting Rights Act litigation, it is my observation that major legal firms with a national practice in election law and related constitutional litigation are regularly retained to litigate such matters.

21.     In such a constitutionally significant case as *Callais*, a partner with nine years of experience, such as Matthew Mueller, typically could reasonably bill at rates between approximately $400 and $550 per hour. Mr. Mueller's hourly rate for this matter was $420 per hour in 2024, $495 per hour in 2025, and $525 per hour in 2026. I believe that this rate is reasonable in such complex constitutional and election law litigation, given Mr. Mueller's qualifications, years of experience, and the prevailing market rates charged nationally for such precedent setting constitutional and election law litigators.

22.     In such a constitutionally significant case as *Callais*, an associate with three to five years of experience, such as Jackson Tyler, typically could reasonably bill at rates between $300 and $450 per hour. Mr. Tyler's hourly rate for this matter was $395 per hour. I believe that this rate is reasonable in complex constitutional and election law litigation, given Mr. Tyler's

9

qualifications, years of experience, and the prevailing market rates charged nationally for such precedent setting constitutional and election law litigators.

23.    In such a constitutionally significant case as *Callais*, an associate with nine years of experience, such as Sarah Pineau, typically could reasonably bill at rates between approximately $400 and $500 per hour. Ms. Pineau's hourly rate for this matter was $455 per hour in 2025 and $475 in 2026. I believe that this rate is reasonable in such complex constitutional and election law litigation, given her qualifications, years of experience, and the prevailing market rates charged nationally for such precedent setting constitutional and election law litigators.

24.    In such a constitutionally significant case as *Callais*, an associate with two to four years of experience, including a clerkship on the U.S. Court of Appeals for the Fifth Circuit, such as Katherine Mitra (nee Graves), typically could reasonably bill at rates between approximately $300 and $480 per hour. Ms. Mitra's hourly rate for this matter was $395 per hour in 2024, $445 in 2025, and $470 in 2026. I believe that this rate is reasonable in such complex constitutional and election law litigation, given her qualifications, years of experience, skills, contributions to the case, and the prevailing market rates charged nationally for such precedent setting constitutional and election law litigators.

25.    With regard to the billing records which I have submitted herewith, my firm's policies require all professional employees to maintain daily contemporaneous time sheets of activities on a case-by-case basis, and that same be entered into our firm's database system. These detailed hours spent, and expenses incurred, are true and accurate and were imputed into the firm's account system on a daily basis.

10

26.     Based upon my detailed and itemized hourly expenditures, Paul Loy Hurd, APLC expended 572.55 billable hours at the rates specified therein, totaling $271,533.75 for a fee submittal to this Honorable Court.

27.     Based on my records, total recoverable costs are $14,354.90.

THUS DONE AND PASSED by the undersigned, declare under penalty of perjury that the foregoing is true and correct.

Executed on _____June 25, 2026_____

_____

Paul Loy Hurd, Attorney at Law

Paul Loy Hurd, APLC

11