# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 3:24-cv-00122 |
| | ) | |
| v. | ) | Circuit Judge Carl E. Stewart |
| | ) | Judge David C. Joseph |
| NANCY LANDRY, in her official capacity | ) | Judge Robert R. Summerhays |
| as Secretary of State of the State of | ) | |
| Louisiana, | ) | |
| | ) | |
| Defendant. | ) | |

## THE STATE'S RESPONSE TO THE MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT AS MOOT AND MEMORANDUM IN SUPPORT
## OF THE STATE'S RULE 60(B) MOTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................ 4

I.      THIS CASE IS MOOT AND SHOULD BE DISMISSED. ................................................. 5

II.     VACATUR UNDER RULE 60(B) IS WARRANTED. ..................................................... 8

III.    THE COURT SHOULD VACATE THE JUNE 30 SCHEDULING ORDER......................... 9

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton,*
  521 U.S. 203 (1997) ...................................................................................8

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ....................................................................................5

*Carney v. Adams,*
  592 U.S. 53 (2020) ....................................................................................5

*Davis v. Abbott,*
  781 F.3d 207 (5th Cir. 2015) ....................................................................6

*Diffenderfer v. Cent. Baptist Church of Miami, Inc.,*
  404 U.S. 412 (1972) ..................................................................................5

*Dobbs v. Jackson Women's Health Organization,*
  597 U.S. 215 (2022) ..................................................................................8

*Freedom from Religion Found., Inc. v. Abbott,*
  58 F.4th 824 (5th Cir. 2023)......................................................................5

*Hackett v. Hous. Auth. of San Antonio,*
  750 F.2d 1308 (5th Cir. 1985) ..................................................................7

*In re Westcott,*
  135 F.4th 243 (5th Cir. 2025).....................................................................9

*June Med. Servs. LLC v. Phillips,*
  640 F. Supp. 3d 523 (M.D. La. 2022)........................................................8

*Keelan v. Majesco Software, Inc.,*
  407 F.3d 332 (5th Cir. 2005) .....................................................................7

*Kremens v. Bartley,*
  431 U.S. 119 (1977) ...................................................................................5

*Lewis v. Cont'l Bank Corp.,*
  494 U.S. 472 (1990) ...................................................................................5

*Louisiana v. Callais,*
  146 S. Ct. 1131 (2026) ...........................................................................2, 3

*MacArthur v. Univ. of Tex. Health Ctr. at Tyler,*
   45 F.3d 890 (5th Cir. 1995) ................................................................................. 7

*New York Life Ins. Co. v. Brown,*
   84 F.3d 137 (5th Cir. 1996) ................................................................................. 7

*North Carolina v. Covington,*
   585 U.S. 969 (2018) ........................................................................................ 6, 7

*Spell v. Edwards,*
   962 F.3d 175 (5th Cir. 2020) ............................................................................ 5, 6

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,*
   402 U.S. 1 (1971) ............................................................................................. 10

*Thomas v. Reeves,*
   961 F.3d 800 (5th Cir. 2020) ............................................................................... 6

*United States v. Sanchez-Gomez,*
   584 U.S. 381 (2018) ............................................................................................ 5

*Veasey v. Abbott,*
   888 F.3d 792 (5th Cir. 2018) ...................................................................... 5, 6, 10

## Rules

Fed. R. Civ. P. 60(b)(5) ....................................................................................... 8, 9

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 1

## Constitutional Provisions

U.S. Const. art. III, § 2 ........................................................................................... 5

iii

## INTRODUCTION

Under Federal Rule of Civil Procedure 12(b)(1), the *Robinson* and *Galmon* Intervenors (together, the "Intervenors") have moved to dismiss Plaintiffs' Complaint as moot. ECF 313 (motion), ECF 313-1 (memo). In compliance with the Court's request that the State respond to that motion and address the scope of any remedial proceedings (ECF 316), the State submits this brief.

The State agrees that this case should be dismissed. The Complaint challenges Senate Bill 8's ("SB8") creation of a majority-black district—District 6—as an unconstitutional racial gerrymander. In the last legislative session, the Louisiana Legislature passed Act 2, which superseded SB8 and eliminated SB8's District 6. So this case is over.

Although they initially equivocated on this issue, *see* ECF 300 at 2 (Act 2 "appears to remedy the racial gerrymander involving SB8 District 6"), Plaintiffs have now expressly conceded that Act 2 "cures Plaintiffs' racial gerrymandering injury in SB8's District 6," ECF 322-1 at 12. And although they initially suggested they might try to transform this case into a new challenge against a different district in Act 2, *see* ECF 300 at 2 ("Less certain is whether [Act 2] has avoided adopting racial line-drawing around District 2."), Plaintiffs have now waived any such effort. In their view, they have "prevailed" and "achieved complete success on all claims." ECF 322-1 at 1, 13; *id.* at 20 ("This case was vigorously and successfully litigated."); *id.* at 21 ("Plaintiffs' victory"); *id.* at 24 ("Plaintiffs' success in this case"); *id.* at 29 ("Plaintiffs' successful action"); *id.* at 33 ("Plaintiffs' victory in the case"); *id.* at 34 ("the success of Plaintiffs' efforts"). So this case is over.

1

There thus can be no dispute that this case is moot and should be dismissed for lack of jurisdiction. For the same jurisdictional reasons, moreover, the State respectfully moves the Court to vacate the permanent injunction and judgment, *see* ECF 198; ECF 261, under Rule 60(b). Indeed, vacatur is especially warranted given that this Court's permanent injunction and judgment are directed at a law (SB8) that no longer exists—and thus, neither the injunction nor the judgment have any practical effect or any legal and factual basis. Last, dismissal of this suit naturally will require vacatur of the June 30 Scheduling Order (ECF 325) because no remedial proceedings are warranted.

## BACKGROUND

The Complaint asserts that District 6 in former SB8 was an unconstitutional racial gerrymander. Compl. at 16 (¶ 41); *see id.* at 2–4 (¶¶ 2, 4, 5), 8–10 (¶¶ 5–9, 15–17), 27 (¶¶ 101–02), 29–30 (¶¶ 112–13, 116). For that reason, every Court that has reviewed this case has recognized that this case is about former SB8's District 6. In the Supreme Court's words, Plaintiffs tried and adjudicated one claim—that "SB8, and *specifically District 6*, was a racial gerrymander that violated the Equal Protection Clause." *Louisiana v. Callais*, 146 S. Ct. 1131, 1151–52, 1161 (2026) (emphasis added).

So, too, for this Court. In the first sentence of its post-trial injunction order, the Court recognized: "The present case involves a challenge … that *one of the congressional districts* created by the Louisiana State Legislature—*District 6*—is an impermissible racial gerrymander" in violation of the Equal Protection Clause. ECF 198 at 1 (emphasis added); *id.* at 2 ("The plaintiffs here … challeng[e] [SB8's]

congressional map on the grounds that [District 6] … violates the Equal Protection Clause."). Accordingly, the Court analyzed whether District 6 was racially gerrymandered, *id*. at 10–59, and concluded that creating District 6 was "not required to protect incumbents and supports [ ] Plaintiffs' contention that race was the predominant factor in drawing [District 6's] boundaries." *Id*. at 45. The Court concluded that analysis by holding that "District 6 does not satisfy the first *Gingles* precondition nor does it comply with traditional districting principles," and thus, "District 6 cannot withstand strict scrutiny." *Id*. at 58.

The Supreme Court affirmed, agreeing that "the Voting Rights Act did not require Louisiana to create [former SB8's District 6]," "no compelling interest" justified former District 6, the SB8 "map [was] an unconstitutional gerrymander," and "its use would violate the plaintiffs' constitutional rights." *Callais*, 146 S. Ct. at 1162. The next day, this Court renewed its permanent injunction, "prohibiting the State of Louisiana 'from using SB8's map of congressional districts for any election.'" ECF 261 (citation omitted).

In response to the Supreme Court's opinion and this Court's renewed injunction, the State sprung to action on its own accord to suspend the previously scheduled congressional primary and enact a new congressional map. The Secretary immediately declared an emergency, and the Governor signed an Executive Order suspending the closed primary elections and "encourag[ing]" the Legislature to enact a new map "as soon as practicable." ECF 263-1 at 47, 48–50. The Legislature was already in session, immediately accepted the Governor's invitation, and got to work

3

on Act 2, which entirely superseded SB8. The Governor soon signed Act 2 into law. *See* ECF 298-1 (full text of Act 2).

In response, the Intervenors moved to dismiss the Complaint as moot. ECF 313; ECF 313-1. And the Court requested that the State respond to that motion and address the scope of the remedial proceedings, if any. ECF 316.

After this Court's directive, Plaintiffs filed a request for attorney's fees, effectively claiming that this lawsuit is over. They agree that "Act 7 [sic] cures Plaintiffs' racial gerrymandering injury in SB8's District 6." ECF 322-1 at 12. And they say that they have "prevailed" and "achieved complete success on all claims." *Id.* at 1, 13; *id.* at 20 ("This case was vigorously and successfully litigated."); *id.* at 21 ("Plaintiffs' victory"); *id.* at 24 ("Plaintiffs' success in this case"); *id.* at 29 ("Plaintiffs' successful action"); *id.* at 33 ("Plaintiffs' victory in the case"); *id.* at 34 ("the success of Plaintiffs' efforts").

## ARGUMENT

Plaintiffs' concession that Act 2 "cures Plaintiffs' racial gerrymandering injury in SB8's District 6," *id.* at 12, is dispositive. That was the only claim Plaintiffs pressed at trial—and that claim is now moot in light of Act 2. That is why Plaintiffs now proclaim that they have "achieved complete success on all claims." *Id.* at 13. The proper course, therefore, is to dismiss this case as moot. Relatedly, the same jurisdictional defect warrants the vacatur of the injunction and judgment against SB8 under Rule 60(b). And finally, such dismissal and vacatur, in turn, warrant vacatur of the June 30 Scheduling Order (ECF 325), especially as to the necessarily limited scope of any such remedial proceedings.

4

## I.    THIS CASE IS MOOT AND SHOULD BE DISMISSED.

**A.** Article III limits federal courts to live "Cases" and "Controversies." U.S. Const. art. III, § 2. That requirement must be satisfied throughout the litigation, not just when the complaint is filed. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990). "A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 584 U.S. 381, 385–86 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). Plaintiffs, as the parties invoking the Court's jurisdiction, always "bear[] the burden of establishing standing." *Carney v. Adams*, 592 U.S. 53, 59 (2020).

When "a statute … is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute … *mootness is the default*." *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023) (emphasis added); *accord Veasey*, 888 F.3d at 799; *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020). When a new statute "completely repeal[s] and replace[s] the statutes challenged," it moots any request for declaratory or injunctive relief from that statute. *Kremens v. Bartley*, 431 U.S. 119, 129 (1977); *accord Diffenderfer v. Cent. Baptist Church of Miami, Inc.*, 404 U.S. 412, 414–15 (1972). "[N]o live controversy remains concerning the old law, because it is no longer in force." *Veasey v. Abbott*, 888 F.3d 792, 799 (5th Cir. 2018).

That is true in the redistricting context as in others: When a challenged map is superseded by a new legislative map and the prior map will "neither be used nor operate as a base for any future election," the challenge to the prior map is moot.

5

*Thomas v. Reeves*, 961 F.3d 800, 801 (5th Cir. 2020) (en banc) (per curiam); *see also*

*Davis v. Abbott*, 781 F.3d 207, 215 (5th Cir. 2015) (state legislation repealing and

replacing prior map mooted redistricting lawsuit).

**B.** This black-letter law controls here. "[N]o live controversy remains

concerning [SB8] because it is no longer in force." *Veasey*, 888 F.3d at 799. Put

otherwise, following the passage of Act 2, "mootness is the default." *Freedom From*

*Religion Found*, 58 F.4th at 832 (emphasis added); *accord Veasey*, 888 F.3d at 799;

*Spell*, 962 F.3d at 179. This challenge to SB8—and in particular, SB8's District 6—is

thus unquestionably moot under binding Fifth Circuit precedent.

Before the Louisiana Legislature passed Act 2, Plaintiffs hinted that they

thought this Court could retain Article III jurisdiction "to verify that a newly enacted

map remedies [SB8's] [un]constitutional gerrymander[.]" ECF 279 at 2 (citing *North*

*Carolina v. Covington*, 585 U.S. 969 (2018) (per curiam)). But now that they have

seen Act 2, Plaintiffs concede that Act 2 "cures Plaintiffs' racial gerrymandering

injury in SB8's District 6." ECF 322-1 at 12; *id.* at 29 (Act 2 "fully cures the racial

gerrymander in SB8's District 6"). There is thus no Article III case or controversy

over SB8's District 6, which no longer exists.

Similarly, Plaintiffs previously hinted that they might try to transform this

case into a new challenge against new District 2 in new Act 2. *See* ECF 300 at 2 ("Less

certain is whether [Act 2] has avoided adopting racial line-drawing around District

2."). They have now strategically waived any such effort, apparently trying to better

position themselves for seeking attorney's fees. *See* ECF 322-1 at 1, 13 (claiming that

6

Plaintiffs have "prevailed" and "achieved complete success on all claims"); *id.* at 20

("This case was vigorously and successfully litigated."); *id.* at 21 ("Plaintiffs' victory");

*id.* at 24 ("Plaintiffs' success in this case"); *id.* at 29 ("Plaintiffs' successful action");

*id.* at 33 ("Plaintiffs' victory in the case"); *id.* at 34 ("the success of Plaintiffs' efforts").

Having told the Court that they now enjoy "complete success on all claims," *id.* at 13,

Plaintiffs cannot seriously suggest that there remains an Article III case or

controversy—let alone one that warrants wasting untold judicial and party resources

over the next year.[1]

To be sure, the State does not dispute this Court's continuing ancillary

jurisdiction to resolve Plaintiffs' pending fees motion. But there is no question that

dismissal under Rule 12 is in order.

---

[1] Even if Plaintiffs had not recently waived any position to the contrary, it bears noting that they would be foreclosed multiple times over from challenging new District 2 in new Act 2. *First, Covington* at best holds only that a new legislative map will not a moot a case if it perpetuates the *same constitutional defect* that the plaintiff originally challenged. 585 U.S. at 975–76. Because Plaintiffs agree that Act 2 cures their alleged injury from SB8's District 6, *Covington* would not permit continuing jurisdiction. *Second,* there is no live complaint challenging new District 2 or even old District 2—and Plaintiffs did not press at trial any challenge to any district other than SB8's District 6; they have thus waived any such challenge. *See MacArthur v. Univ. of Tex. Health Ctr. at Tyler*, 45 F.3d 890, 895, 899 (5th Cir. 1995) (a pleaded claim is abandoned if plaintiff "fail[s] to argue or present it" to the trier of fact); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (party "must press and not merely intimate the argument during the proceedings before the district court" to preserve it on appeal (quoting *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996))); *Hackett v. Hous. Auth. of San Antonio*, 750 F.2d 1308, 1309 n.1 (5th Cir. 1985) (argument is waived by "failing to present it at trial."). They are free to file a new lawsuit challenging Act 2 if they so wish—but they may not commandeer this lawsuit to bring that challenge.

7

## II.    VACATUR UNDER RULE 60(B) IS WARRANTED.

The same jurisdictional problem warrants vacatur of the permanent injunction and judgment against the enforcement of SB8, which no longer exists. *See* ECF 198; ECF 261. Among other available bases for post-judgment relief, a court may grant such relief where "applying [the judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). Interpreting this aspect of Rule 60(b)(5), the Supreme Court has said that "it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from an injunction ... can show 'a significant change either in factual conditions or in law.'" *Agostini v. Felton*, 521 U.S. 203, 215 (1997). Such changes include "subsequent changes in either statutory or decisional law." *See id.* (collecting authorities). Where such changes exist, "[a] court errs when it refuses to modify an injunction ... in light of such changes." *Id.*; *see June Med. Servs. LLC v. Phillips*, 640 F. Supp. 3d 523, 542 (M.D. La. 2022) (applying these precedents to conclude "that it is no longer equitable to maintain the permanent injunction in this case in the post-*Dobbs* [*v. Jackson Women's Health Organization*, 597 U.S. 215 (2022)] legal regime").

*Agostini* and its progeny require vacatur of the permanent injunction and judgment against the enforcement of SB8. There can be no question that Act 2 is a "significant change" in statutory law—it entirely superseded SB8. As a result, the permanent injunction against SB8 and judgment have zero practical effect because SB8 no longer exists and thus there is nothing to enjoin. This is a textbook case where "it is no longer equitable to maintain the permanent injunction." *Phillips*, 640 F. Supp. 3d at 542.

8

The jurisdictional issue underscores this point. It would be one thing to perpetuate an injunction despite a significant change in law that requires vacatur under Rule 60(b)(5) and *Agostini*. But it would be quite another to do so despite a lack of Article III jurisdiction. That would be similar to the situation in *In re Westcott*, 135 F.4th 243 (5th Cir. 2025), where the Fifth Circuit issued mandamus relief after a district court abused Rule 60(b)*(6)* (which does *not* permit reopening based on changes in law) in a plainly moot case. Said the Fifth Circuit: "The district court usurped judicial power when it invoke Rule 60(b) to re-open a moot case. As the Supreme Court has reminded us, it is 'by very definition' an 'ultra vires' act '[f]or a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so.'" *Id.* at 246. So here: Maintaining the permanent injunction and judgment notwithstanding the absence of Article III jurisdiction would be ultra vires.

For these reasons, the State respectfully asks the Court to vacate the permanent injunction and judgment against the enforcement of SB8.

### III.    THE COURT SHOULD VACATE THE JUNE 30 SCHEDULING ORDER.

As the foregoing establishes, there is no legal basis for remedial proceedings. If (as the State requests) the Court dismisses this case, then that dismissal necessarily would compel the vacatur of the June 30 Scheduling Order. *See* ECF 325. That is the proper result.

If the Court had Article III jurisdiction to conduct remedial proceedings, the State's position would be that the scope of such proceedings legally would be limited to assessing whether Act 2 remedied the violation of law that Plaintiffs asserted and

9

the Court adjudicated—namely, the racial gerrymander presented by SB8's District

6.  *See, e.g.*, *Veasey*, 888 F.3d at 800 (the "nature of the violation determines the scope

of the remedy" (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 17

(1971))); *supra* n.2. Because Plaintiffs now concede that Act 2 "cures Plaintiffs' racial

gerrymandering injury in SB8's District 6," ECF 322-1 at 12, there is no Article III

case or controversy on that limited topic. Accordingly, the absence of Article III

jurisdiction resolves the State's position on the scope of remedial proceedings: No such

proceedings are warranted.

## CONCLUSION

The Court should dismiss this lawsuit, vacate the permanent injunction and

judgment, and vacate the June 30 Scheduling Order.

Dated: July 13, 2026

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Morgan Brungard*
MORGAN BRUNGARD (LA 40298)
Deputy Solicitor General

CAREY TOM JONES (LA 07474)
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 324-9866
brungardm@ag.louisiana.gov

*Counsel for the State of Louisiana*

10