# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PHILLIP CALLAIS, LLOYD PRICE, BRUCE ODELL, ELIZABETH ERSOFF, ALBERT CAISSIE, DANIEL WEIR, JOYCE LACOUR, CANDY CARROLL PEAVY, TANYA WHITNEY, MIKE JOHNSON, GROVER JOSEPH REES, and ROLFE MCCOLLISTER, | Civil Action No. 3:24-cv-00122 |
| *Plaintiffs,* | Circuit Judge Carl E. Stewart |
| v. | Judge David C. Joseph |
| NANCY LANDRY, in her official capacity as Secretary of State for Louisiana, | Judge Robert R. Summerhays |
| *Defendant.* | |

## *ROBINSON* AND *GALMON* INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## INTRODUCTION

Plaintiffs' opposition concedes every fact that requires this Court to grant Intervenors' Motion to Dismiss. Plaintiffs concede Act 2 repealed S.B. 8, the only "challenged map." Dkt. No. 330 at 2 (hereinafter "Opp."). They concede Act 2 "does away with District 6's racial gerrymander," *id.* at 7, the only violation adjudicated by this Court and the Supreme Court, *see Louisiana v. Callais*, 146 S. Ct. 1131 (2026). And they concede that they cannot identify a single Plaintiff who is injured by the new districts in the new map. They represent only that one Plaintiff lives in Act 2's District 2, which, "on initial review, seems to have" features that "deserve[] *careful study*." Opp. 1 (emphasis added). On that basis alone, they ask this Court to hold this case open for another *five months* until December 15, 2026, when Plaintiffs might finally be ready to "state their position on the existence of a continuing injury." *Id.*

That is not a description of a live controversy. It is a concession, as the State recognizes, that none exists. Dkt. Nos. 328 at 5–7 & 329 at 1. A federal court must not keep a moot case on its docket while the prevailing party studies whether a sole plaintiff might—months from now—decide to object to a different district, under a different map, enacted by a different legislative session. Article III does not permit Plaintiffs' proposed course, converting the remedial phase of a completed case into a permanent forum for this Court to exercise "general legal oversight of" Louisiana's redistricting. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021).

As Intervenors previously explained, *North Carolina v. Covington*, 585 U.S. 969 (2018) (per curiam), does not hold otherwise. *See* Dkt. No. 313-1 at 9–11

(hereinafter "Mot."). In *Covington*, the plaintiffs proved that the challenged districts were racial gerrymanders, the district court gave the state an opportunity to redraw, and—unlike here—the plaintiffs once again objected that the supposed remedial districts left them "*still* segregated" in those same districts. *Id.* at 971, 976–77 (emphasis added). Even in that different posture, the Supreme Court reversed the district court to the extent it adopted redrawn special master districts untethered from any adjudicated violation. *Id.* at 977–79. *Covington* therefore defines the outer limit of any authority remaining in this Court: to confirm that the adjudicated violation—the racial gerrymander of District 6 in S.B. 8—has been remedied. Plaintiffs concede it has been. Because nothing live remains, the complaint should be dismissed as moot.

## ARGUMENT

### I.    Plaintiffs' Concessions Confirm that No Live Controversy Remains.

#### A.    The repeal and conceded cure of S.B. 8's District 6 moots this case.

Article III requires that an actual controversy exists "through all stages of federal judicial proceedings." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990). When intervening events "eliminate[] the 'actual controversy' during the duration of the lawsuit, the case becomes moot." *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 629 (5th Cir. 2023) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)). And "statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Fantasy Ranch, Inc. v. City of*

2

*Arlington*, 459 F.3d 546, 564 (5th Cir. 2006), *abrogated on other grounds by Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696 (5th Cir. 2020), rev'd on other grounds, 596 U.S. 61 (2022) (citation modified).

Those settled principles resolve Intervenors' motion. Plaintiffs' complaint challenged S.B. 8, and the claim this Court adjudicated—and the Supreme Court affirmed—concerned only District 6 under that map. *See Callais*, 146 S. Ct. at 1151 (confirming that Plaintiffs' claim concerned "specifically District 6"). The Legislature has since repealed S.B. 8 and enacted Act 2 in its place. Plaintiffs concede that Act 2 remedies the District 6 racial gerrymander, the only district that this Court had remedial authority to consider. *See infra* Parts II.A, II.B. As a result, there is no relief left for this Court to grant. A case in which the plaintiff has already obtained the relief sought by judgment is the paradigm of mootness. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992). Plaintiffs do not—nor could they—assert any exception to these principles in this case.

## B. Plaintiffs' unformed reservations about Act 2's District 2 provide no basis for jurisdiction.

Plaintiffs' sole basis for keeping this case alive is the prospect of a new claim they have not investigated, let alone alleged, based on a new map. They claim that Mr. Callais "lives in a narrow neck of the new Act 2 District 2 which, on initial review, seems to have reached northwest via some of the same racial grouping" as the "now-repealed SB8 District 6." Opp. 1. Relying only on this description, they claim that it "deserves careful study." *Id.* "If indeed" that study reveals a new racial gerrymander, Plaintiffs will announce their "position on the existence of a continuing injury" in five

3

months. *Id.*; *see also id.* at 8 (Plaintiffs "continue to evaluate the constitutionality of Act 2.").

This Court's jurisdiction cannot rest on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation modified). Even Plaintiffs concede that "it is possible that the Plaintiffs determine Act 2 is *not* a racial gerrymander." Opp. 9 (emphasis added). A dispute that concerns allegations outside the existing complaint and that *may* potentially exist at some point only if the prevailing party later elects to assert a claim is, by definition, neither "definite and concrete" nor "real and substantial." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

Nor may this Court simply reserve the jurisdictional question until Plaintiffs decide to make up their mind. As explained above, *see also* Mot. 5, subject-matter jurisdiction is a continuing requirement throughout all stages of proceedings. A federal court may not proceed—or hold proceedings in suspense—on the hypothetical premise that jurisdiction may later materialize after a "study."

The Scheduling Order's December 15 deadline cannot defer the jurisdictional question. "[N]o action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). And a scheduling order is an instrument of case management, not an adjudication of Article III power. Plaintiffs' purported *Purcell*-driven decision and reservation-of-any-argument claim about whether Act 2 remedies their injuries equally fail. Those arguments may protect their contentions about waiver, but they

4

cannot protect a controversy from mootness. Waiver doctrine governs what arguments a party may make in a live case, while Article III governs whether a live case exists at all. These arguments simply confirm that, as of today, Plaintiffs can identify no live claim.

Plaintiffs' claim that they "prevailed" on a challenge to "SB8 writ large," Opp. 6, is misleading and contrary to this Court's judgment and the Supreme Court's affirmation of that judgment. Racial gerrymandering claims involve challenges to specific districts. *See Alexander v. S.C. State Conf. of the NAACP*, 602 U.S. 1, 7 (2024). Such claims do not permit challenges to redistricting plans writ-large or in their entirety. *See United States v. Hays*, 515 U.S. 737, 746 (1995). In any event, this Court made no finding that race predominated in the drawing of District 2, applied no strict scrutiny analysis to District 2, and entered no judgment respecting District 2. The Supreme Court confined its analysis to the creation of District 6 as a second majority-Black district. *Callais*, 146 S. Ct. at 1142–43. Plaintiffs' assertion that they "compil[ed] evidence on District 2's racial features[,]" Opp. 6, in their post-trial papers does nothing to change the outcome, and the fact that they did not pursue that strategy during trial only reinforces Intervenors' arguments. Arguments that could have been advanced at trial are not violations adjudicated. If Plaintiffs believed this Court erred by not adjudicating a District 2 claim, they could have pressed that grievance before either this Court or the Supreme Court. They did not. They cannot now resurrect this unpursued claim as a "remedial" objection to a statute that did not exist when the Court entered its judgment.

Plaintiffs' suggestion that the same "racial maneuvers" condemned in District 6 necessarily condemn District 2, Opp. 6, assumes the very adjudication that did not happen. Again, racial-gerrymander analysis is district specific. *See Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015). Whether the lines of Act 2's District 2 were drawn predominantly on the basis of race is a fact-intensive question that no party has ever pressed and no court has ever examined. It therefore lies well beyond the scope of this Court's remedial authority.

## II.    *Covington* Refutes Plaintiffs' Position.

### A.    *Covington*'s mootness holding is confined to its remedial posture.

Plaintiffs principally stake their opposition on *Covington*, but they discuss only half of the decision, and even that half does not support their position. *See* Mot. 9–11. In *Covington*, the plaintiffs proved at trial that several North Carolina legislative districts were unconstitutional racial gerrymanders. 585 U.S. at 971. The district court "ordered the General Assembly to draw remedial maps . . . [and] to file those maps in the District Court for approval." *Id*. at 971. After the North Carolina Legislature filed its remedial plans, the plaintiffs objected that particular remedial districts perpetuated the very harm the district court had adjudicated, leaving the plaintiffs "still segregated . . . on the basis of race" in those same districts. *Id*. at 971–72, 976. It was "in the remedial posture in which th[at] case [wa]s presented"—that is, a court-supervised remedial process addressed to adjudicated violations—that the Supreme Court held that the plaintiffs' claims were not mooted by the redrawing of district lines. *Id*. at 976.

6

Here, by contrast, Plaintiffs do not, and cannot, assert that adjudicated violations persist. They concede that the harm this Court has adjudicated with respect to District 6 is remedied. Opp. 7. Their potential objection—pending further study—runs to a different district, in a different part of the State, and would relate to a new statute that has never been challenged in court. *Covington* holds that a proven racial-gerrymandering claim may survive the redrawing of the *same* district found to be unconstitutional. 585 U.S. at 976. Nowhere does it suggest that a plaintiff who prevails as to one district thereby acquires the ability to audit every district of a new statute that enacts a new map in the existing litigation. Plaintiffs' reading would mean that no redistricting case could ever end—that a single adjudicated violation entitles plaintiffs, "for multiple election (and sometimes even census) cycles to ensure states' compliance," Opp. 3, to serial review of maps and claims never before the court. Article III and established precedent forbid such a result.

Furthermore, in *Covington*, the remedial maps came before the district court because that court had ordered them drawn by a special master and "file[d] . . . for approval" as part of its own decree. 585 U.S. at 971. Those plaintiffs' objections went to the adequacy of compliance with an outstanding court order. Here, by contrast, the Legislature enacted Act 2 in the exercise of its own sovereign authority after the Supreme Court's affirmation of this Court's judgment. Unlike the proposed special master remedial maps awaiting judicial approval in *Covington*, Act 2 is a duly enacted statute. *Covington* instructs that the Court's role in remedial proceedings is bounded by the violation this Court actually found. Because Plaintiffs concede the

7

violation has been cured, any remedial inquiry would therefore—as the State agrees—begin and end with that concession.

> **B.      *Covington* confirms that a federal court's remedial authority extends no further than the adjudicated violation.**

The half of *Covington* that Plaintiffs omit is dispositive here. After holding that the plaintiffs' objections to certain remedial districts were not moot, the Supreme Court reversed the district court's remedial order as to several additional districts, finding that the district court erred in directing those districts be redrawn to address concerns that were not tethered to any adjudicated federal violation. *Covington*, 585 U.S. at 979. The Supreme Court explained that "[o]nce the District Court had ensured that the racial gerrymanders *at issue in this case* were remedied, its proper role in North Carolina's legislative districting process was at an end." *Id.* (emphasis added). *Covington*'s instruction is that a district court's remedial authority in a redistricting case is measured by, and limited to, the violation a district court actually found. A court's remedial authority is not a license to pursue other objections to a state's proposed plan—let alone a newly enacted statute. *See Upham v. Seamon*, 456 U.S. 37, 43 (1982) (per curiam) (explaining a court's remedial authority is "limited to those [modifications] necessary to cure any constitutional or statutory defect").

> **C.      Plaintiffs' retained jurisdiction authorities do not undermine Intervenors' Motion.**

The remaining decisions Plaintiffs collect, Opp. 3–4, involved judicial authority to oversee and enforce *court-ordered* maps—they do not authorize freestanding judicial review of a *legislatively enacted* map absent a live dispute. *Milligan v. Allen*, No. 21-cv-01530, 2025 WL 2451593, at *1 (N.D. Ala. Aug. 7, 2025) (per curiam), for

8

instance, involved an adjudicated Section 2 violation and a court-ordered remedial plan; no parties objected to the court retaining jurisdiction to enforce its own judgment. *See id.* at *5–6. *Hays v. Louisiana*, 936 F. Supp. 360, 362 (W.D. La. 1996) likewise involved a court imposing its own remedial map after successive maps were adjudicated unlawful. *United States v. City of W. Monroe*, No. 21-CV-0988, 2021 WL 12363712, at *4 (W.D. La. Apr. 15, 2021), involved a consent decree through which the district court retained jurisdiction, with consent of the parties, "to enforce the provisions of th[e] Decree" for a fixed period of time. *Vera v. Bush*, 980 F. Supp. 251, 252 (S.D. Tex. 1997), also concerned a court's equitable flexibility in implementing its own interim remedy for adjudicated violations. And both *Perry v. Perez*, 565 U.S. 388, 394 (2012), and *Abrams v. Johnson*, 521 U.S. 74, 85–86 (1997), address the governing standards for when a court must itself draw or adopt a plan to remedy adjudicated violations.

Retaining jurisdiction to enforce a judgment already entered is indeed "a normal result in redistricting cases." Opp. 4. But that jurisdiction must nevertheless be tethered to a live controversy. Here, Plaintiffs are asking this Court to stretch its equitable powers in contravention of *Covington* to potentially consider new claims—against a new statute and a new district enacted by a new legislature—that no party pleaded and no court has adjudicated is unlawful.

## III. Intervenors' Interest Cannot Supply the Controversy Plaintiffs Lack.

Plaintiffs suggest that this case must remain open because Intervenors "necessarily object" to Act 2 and must "follow through" on the interests that supported

9

their intervention. Opp. 9 & n.1. But that gets Article III backwards. As discussed above, mootness is measured by the claims of the plaintiffs who invoked federal jurisdiction. Intervenors seek no relief from this Court. To the contrary, they seek dismissal of the complaint, which is fully consistent with the interests for which they intervened. Nor can Plaintiffs manufacture jurisdiction by speculating about hypothetical future disagreements among the Defendants' side of the caption. At present, the State agrees with Intervenors that the complaint should be dismissed. In any event, Plaintiffs' own description of the proceedings they envision—in which the December 15 filings "will finally determine the positions of the parties," Opp. 9— is an admission that the parties have no determinate dispute today. Federal courts resolve actual controversies. They do not convene schedules on which parties may later develop them.

## CONCLUSION

For these reasons and those stated in Intervenors' Motion, this Court should dismiss Plaintiffs' complaint as moot.

10

DATED: July 21, 2026                          Respectfully submitted,


By: /s/ *Tracie L. Washington*               By: /s/ *John Adcock*
Tracie L. Washington                         John Adcock
LA. Bar No. 25925                            Adcock Law LLC
 Louisiana Justice Institute                 8131 Oak St., Unit 100
8004 Belfast St.                             New Orleans, LA 70118
New Orleans, LA 70125                         Tel: (504) 233-3125
Tel: (504) 872-9134                          jnadcock@gmail.com
tracie.washington.esq@gmail.com

*Counsel for Robinson Intervenors Dorothy*   *Counsel for the Robinson Intervenors*
*Nairne, Martha Davis, Clee Earnest Lowe,*
*and Rene Soule*

Stuart Naifeh (admitted pro hac vice)        Sarah Brannon (admitted pro hac vice)
Victoria Wenger (admitted pro hac vice)      American Civil Liberties Union
John S. Cusick (admitted pro hac vice)       Foundation
Colin Burke (admitted pro hac vice)          915 15th St., N.W.
NAACP Legal Defense and                      Washington, DC 20005
Educational Fund, Inc.                       sbrannon@aclu.org
40 Rector St., 5th Floor
New York, NY 10006                           Sophia Lin Lakin (admitted pro hac vice)
Tel: (212) 965-2200                          American Civil Liberties Union
snaifeh@naacpldf.org                         Foundation
vwenger@naacpldf.org                         125 Broad St., 18th Floor
jcusick@naacpldf.org                         New York, NY 10004
cburke@naacpldf.org                          slakin@aclu.org

I. Sara Rohani (admitted pro hac vice)       Nora Ahmed (admitted pro hac vice)
NAACP Legal Defense and                      ACLU Foundation of Louisiana
Educational Fund, Inc.                       1340 Poydras St., Ste. 2160
700 14th St. N.W. Ste. 600                   New Orleans, LA 70112
Washington, DC 20005                         Tel: (504) 522-0628
Tel: (202) 682-1300                          nahmed@laaclu.org
srohani@naacpldf.org

Robert A. Atkins (admitted pro hac vice)     T. Alora Thomas-Lundborg (admitted pro
Yahonnes Cleary (admitted pro hac vice)      hac vice)
Amitav Chakraborty (admitted pro hac         Race and Law Clinic
vice)                                        Harvard Law School
Adam P. Savitt (admitted pro hac vice)       6 Everett St., Ste. 4105
Arielle B. McTootle (admitted pro hac        Cambridge, MA 02138
vice)

11

Robert Klein (admitted pro hac vice)
Paul, Weiss, Rifkind, Wharton & Garrison
LLP 1285 Ave. of the Americas
New York, NY 10019
Tel: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
ycleary@paulweiss.com
achakraborty@paulweiss.com
asavitt@paulweiss.com
amctootle@paulweiss.com
rklein@paulweiss.com

*Additional counsel for Robinson
Intervenors*

Tel: (617) 495-5202
tthomaslundborg@law.harvard.edu


J. E. Cullens, Jr. (LA # 23011)
Andrée Matherne Cullens (LA # 23212)
Stephen Layne Lee (LA # 17689)
WALTERS, THOMAS, CULLENS, LLC
12345 Perkins Road, Bldg. One
Baton Rouge, LA 70810
(225) 236-3636
cullens@lawbr.net
acullens@lawbr.net
laynelee@lawbr.net

*Counsel for Galmon Intervenors*

/s/ *Abha Khanna*
Abha Khanna (admitted pro hac vice)
ELIAS LAW GROUP LLP
1700 Seventh Avenue
Suite 2100
Seattle, Washington 98101
(206) 656-0177
AKhanna@elias.law

Lalitha D. Madduri (admitted pro hac
vice)
Jacob D. Shelly (admitted pro hac
vice)
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW
Suite 400
Washington, D.C. 20001
(202) 968-4490
lmadduri@elias.law
jshelly@elias.law

12

## CERTIFICATE OF SERVICE

I hereby certify that I have electronically filed a copy of the foregoing with the

Clerk of Court using the CM/ECF system, which provides electronic notice of filing to

all counsel of record, on this twenty-first day of July, 2026.

/s/ *John Adcock*

John Adcock