UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS et al., | ) | |
| | ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | District Judge  David C. Joseph |
| | ) | Circuit Judge Carl E. Stewart |
| NANCY LANDRY, IN HER OFFICIAL | ) | District Judge  Robert R. Summerhays |
| CAPACITY AS LOUISIANA | ) | |
| SECRETARY OF STATE, et al., | ) | Magistrate Judge Kayla D. McClusky |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO THE STATE'S MOTION TO VACATE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ...........................................................................................................1

ARGUMENT ..................................................................................................................2

    I.     The State's Motion Is in Tension with Its Earlier Representations. .............................2

    II.    The Case Is Not Moot for the Reasons Set Forth in *Covington*....................................8

    III.   Plaintiffs' Status as Prevailing Parties Does Not Moot the Case.................................14

    IV.   Vacatur of the Permanent Injunction and Remedial Schedule Is Unwarranted...........16

CONCLUSION................................................................................................................20

CERTIFICATE OF SERVICE ........................................................................................20

# TABLE OF AUTHORITIES

**CASES**                                                          **Page(s)**

*Allen v. Milligan*,
No. 25A1314, 608 U.S. ___ (2026) ....................................................................... 11

*Agostini v. Felton*,
521 U.S. 203 (1997) ............................................................................................. 18

*AT&T Commc'ns of the Sw., Inc. v. City of Austin*,
235 F.3d 241 (5th Cir. 2000) ......................................................................... 17, 18

*Bernard v. Landry*,
No. 3:26-cv-00487-JWD-SDJ (M.D. La.) ....................................................... 3, 4, 5, 8

*Caster v. Allen*,
No. 2:21-cv-01536-AMM (N.D. Ala. July 30, 2024) ....................................... 15, 16

*Chron. Pub. Co. v. City of League City, Tex.*,
488 F.3d 613 (5th Cir. 2007) ......................................................................... 17, 18

*Callais v. Louisiana*,
No. 25A1197, 608 U.S. ___ (May 4, 2026) ............................................................. 2

*Covington v. North Carolina*,
283 F. Supp. 3d 410 (M.D.N.C. 2018) ................................................................. 11

*Covington v. North Carolina*,
316 F.R.D. 117 (M.D.N.C. 2016) ........................................................................ 10

*Davis v. Abbott*,
781 F.3d 207 (5th Cir. 2015) ......................................................................... 13, 15

*Diffenderfer v. Central Baptist Church of Miami, Florida, Inc.*,
404 U.S. 412 (1972) ....................................................................................... 13, 14

*Freedom from Religion Foundation, Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ............................................................................... 12

*Frew v. Suehs*,
775 F. Supp. 2d 930 (E.D. Tex. 2011) .................................................................. 19

*Garcia v. Landry*,
No. 3:26-cv-00471-SDD-RLB (M.D. La.) ..................................................... 1, 3, 4, 5, 8

*Horne v. Flores*,
  557 U.S. 433 (2009) ................................................................................................ 17, 18, 19

*Jordan v. Landry*,
  No. C-77783726 (La. 19th Jud. Dist. Ct.) ................................................................. 4

*Kremens v. Bartley*,
  431 U.S. 119 (1977) ................................................................................................ 14

*Lackey v. Stinnie,*
  604 U.S. 192 (2025) ................................................................................................ 16

*Lefemine v. Wideman*,
  568 U.S. 1 (2012) .................................................................................................... 15

*Louisiana v. Callais*
  608 U.S. ___ (2026) ............................................................................................... 3, 6

*Marbury v. Madison*,
  5 U.S. 137 (1803) .................................................................................................... 6

*Milligan v. Allen,*
  No. 2:21-cv-01530-AMM (N.D. Ala. Aug. 7, 2024) ................................................ 16

*Milliken v. Bradley*,
  433 U.S. 267 (1977) ................................................................................................ 19

*Mississippi State Chapter, Operation PUSH, Inc. v. Mabus*,
  932 F.2d 400 (5th Cir. 1991) .................................................................................... 14

*National Council of Jewish Women—Greater New Orleans Section v. Landry*,
  No. C-77781435 (La. 19th Jud. Dist. Ct.) ................................................................. 3

*North Carolina v. Covington*,
  581 U.S. 1015 (2017) ............................................................................................... 10

*North Carolina v. Covington*,
  585 U.S. 969 (2018) ................................................................... 8, 9, 10, 11, 12, 13

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................................................................... 5, 11, 19

*Rufo v. Inmates of Suffolk Cnty. Jail*,
  502 U.S. 367 (1992) ................................................................................................ 17

*Sec. & Exch. Comm'n v. Novinger*,
  40 F.4th 297 (5th Cir. 2022) ................................................................................ 17

*Shaw v. Reno*,
  509 U.S. 630 (1933) ............................................................................................... 9

*Shipes v. Trinity Indus., Inc.*,
  883 F.2d 339 (5th Cir. 1989) ............................................................................... 15

*Sierra Club v. Glickman*,
  156 F.3d 606 (5th Cir. 1998) ............................................................................... 18

*Sims v. Landry*,
  No. C-77781626 (La. 19th Jud. Dist. Ct.) ............................................................ 3

*Spell v. Edwards*,
  962 F.3d 175 (5th Cir. 2020) ............................................................................... 12

*Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*,
  489 U.S. 782 (1989) ....................................................................................... 14, 15

*Thomas v. Bryant*,
  938 F.3d 134 (5th Cir. 2019) ............................................................................... 13

*Thomas v. Reeves*,
  961 F.3d 800 (5th Cir. 2020) ............................................................................... 13

*Thornburg v. Gingles*,
  478 U.S. 30 (1986) ............................................................................................... 11

*U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) ..................................................................................... 16, 17, 18

*Veasey v. Abbott*,
  13 F.4th 362 (5th Cir. 2021) ......................................................................... 14, 15, 16

*Veasey v. Abbott*,
  888 F.3d 792 (5th Cir. 2018) ......................................................................... 13, 14

**STATUTES**

42 U.S.C. § 1988 .................................................................................................... 16

**RULES**

Fed. R. Civ. P. 60(b)(5) .......................................................................................... 17

**OTHER AUTHORITIES**

Louisiana State Legislature, SB121 by Senator Jay Morris, https://perma.cc/ZFS2-YALS .......... 7

Piper Hutchinson, *Litigation looms as Louisiana Legislature approves new congressional map*, LA. ILLUMINATOR (May 29, 2026), https://perma.cc/JH3C-Z3SY ..............................................8

S.Rep. No. 94-1011 (1976)........................................................................................................ 15

Secretary of State, *2026 Elections Calendar*, https://perma.cc/E7DE-9DSL ...............................11

**INTRODUCTION**

Just over two months ago, the State of Louisiana argued that when the Supreme Court "remanded *Callais* to the Western District for further proceedings," it was "thereby entrusting [this] [C]ourt with responsibility for supervising the development and implementation of any remedy for the State's unconstitutional congressional map." Memorandum in Support of Defendants' Motion to Transfer Venue, *Garcia v. Landry*, No. 3:26-cv-00471-SDD-RLB (M.D. La.) (Doc. 6-1), attached as **Exhibit A**, at 9. In doing so, the State argued, the Supreme Court "assigned" the "ongoing remedial redistricting process" to this Court and "specifically charged" this Court "with overseeing a remedy." *Id*. at 8, 11. In other words, the Supreme Court "assigned responsibility for resolving what congressional map the State should use going forward." *Id*. at 10. In exercise of that authority, the State conceded that this Court had and retains jurisdiction to "establish a remedial map, adjust election timing, or otherwise supervise compliance with *Callais*." *Id*.; *see also* Reply in Support of Defendants' Motion to Transfer Venue, *Garcia v. Landry*, No. 3:26-cv-00471-SDD-RLB (M.D. La.) (Doc. 23), attached as **Exhibit B**, at 3-4 ("[I]n the ongoing *Callais* remedial proceedings . . . , the Western District has renewed its prior injunction of the State's use of SB8 and is supervising the creation of a remedial map. Order, *Callais*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261.").

The Supreme Court, this Court, and the State could not be more clear. On remand, the Supreme Court vested this Court with jurisdiction to ensure a remedial map is in place that fully remedies all Plaintiffs' constitutional injuries and does not leave them segregated based on race. Until this Court makes these findings, this case is not moot, and vacatur is improper. The Court should deny the Intervenors' Motion to Dismiss and the State's Rule 60(b) Motion to Vacate.

1

## ARGUMENT

**I.      The State's Motion Is in Tension with Its Earlier Representations.**

Everyone agrees that the Supreme Court fully affirmed this Court's permanent injunction and remanded the case for further remedial proceedings. And the Supreme Court granted Plaintiffs' application to expedite, which the State did not oppose, so that this District Court could oversee an orderly remedial process:

> The Callais appellees have asked for the Clerk to issue the judgment forthwith so that "in the event of a judicial remedy," the District Court may "oversee an orderly process." App. 3. Appellant Louisiana does not oppose this application. And while the Robinson appellants oppose it, they have not expressed any intent to ask this Court to reconsider its judgment. Thus, the application to issue the judgment forthwith presented to JUSTICE ALITO and by him referred to the Court is granted.

*Callais v. Louisiana*, No. 25A1197, 608 U.S. ___, slip op. at 1 (May 4, 2026). As such, the Supreme Court recognized that this Court would retain jurisdictional authority to ensure the State's compliance with its opinion.

On remand, this Court emphasized that its permanent injunction "remains in effect." Doc. 261. But as part of the remedial proceedings, this Court "afforded [the State] the opportunity" to repeal SB8 and enact a new map so long as it was "Constitutionally compliant" and "consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. ___ (2026) and this Court's injunction." *Id*. As the State put it just over two months ago when enacting a new map, "[t]he Legislature is taking advantage of the redistricting opportunity afforded by this Court," Doc. 284 at 4, and was operating under this Court's "renewed . . . injunction," *id*. at 1. In giving the State this chance, the Court expressly held its jurisdictional authority to review any new remedial map. Doc. 261. In other words, remedial proceedings picked up exactly where they left off in May 2024, only this time Plaintiffs had further support with the Supreme Court's affirmance.

2

And the State, in its response to this Court's order, acknowledged the Court's ongoing remedial authority to ensure full compliance with *Louisiana v. Callais*, 608 U.S. ___ (2026). The State provided an update on how it was "complying with *Callais*, 2026 WL 1153054, and this Court's injunction." Doc. 271 at 2. The State said it would keep the Court abreast of further legislative developments on a timely basis. Doc. 271 at 3-4 ("As this legislative process unfolds, Defendants commit to keeping the Court informed of any material developments. Defendants will notify the Court (and submit copies of any final legislation if applicable) within twenty-four hours of (a) the Governor's signing into law any legislation related to the 2026 congressional election, (b) a call for any extraordinary "redistricting" session, and/or (c) the Legislature's adjournment sine die without passing relevant legislation."). The State repeatedly represented its commitment to enacting a "constitutionally compliant congressional map." Doc. 271 at 2, 4; *see also* Doc. 298 at 1 (providing notice of enactment of "constitutionally compliant congressional map consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. ____ (2026)"). In other words, the State acknowledged the Court's ongoing authority, provided the Court with a detailed update, and made multiple promises about how it planned to remedy any vestiges of racial segregation.

Moreover, in the wake of the Supreme Court's decision and remand, the State fought for this Court to retain exclusive remedial jurisdiction. Various plaintiffs, including plaintiffs represented by the Intervenors' attorneys, collaterally attacked this Court's permanent injunction and remedial authority by bringing lawsuits against state officials in *Garcia v. Landry*, No. 3:26-cv-00471-SDD-RLB (M.D. La.) [hereinafter *Garcia*], *Bernard v. Landry*, No. 3:26-cv-00487-JWD-SDJ (M.D. La.) [hereinafter *Bernard*], *National Council of Jewish Women—Greater New Orleans Section v. Landry*, No. C-77781435 (La. 19th Jud. Dist. Ct.) (state court action brought by Galmon Intervenors' attorneys), *Sims v. Landry*, No. C-77781626 (La. 19th Jud. Dist. Ct.) (state

3

court action brought by Robinson Intervenors' attorneys), and *Jordan v. Landry*, No. C-77783726 (La. 19th Jud. Dist. Ct.). *See* Docs. 263, 263-1, 264, 264-1, 264-2. But the State labored to transfer the federal actions to this Court due to this Court's pending "remedial proceedings," this Court's oversight authority over any remedial map, and the overlap of those cases with this one.[1] The State even admitted that this Court "has already been assigned responsibility for resolving what congressional map the State should use going forward" and "has been specifically charged with overseeing a remedy." Ex. A at 10-11.

---

[1] Ex. A at 2 ("The *Callais* remedial proceedings are pending before that three-judge panel in the Western District. *See Callais v. Landry*, No. 3:24-cv-00122 (W.D. La.). That panel has presided over the presently pending redistricting litigation from its inception, has developed deep institutional familiarity with the record, and is the court to which the Supreme Court expressly remanded the case. As the plaintiffs themselves acknowledge, the claims raised in the present action are inextricably intertwined with the *Callais* remedial proceedings. . . . This case therefore overlaps with, and seeks to interfere with, the Western District's pre-existing and ongoing exercise of remedial authority in *Callais v. Landry*, No. 3:24-cv-00122 (W.D. La.)."); *id.* at 8 ("The ongoing remedial redistricting process is therefore assigned to the Western District."); *id.* at 9 ("The Supreme Court remanded *Callais* to the Western District for further proceedings, thereby entrusting that court with responsibility for supervising the development and implementation of any remedy for the State's unconstitutional congressional map. The issues raised in this case, including the timing and manner of conducting congressional elections following *Callais*, fall squarely within that remedial framework."); *id.* (discussing "the remedy that the Western District has been tasked to oversee"); *id.* at 10 ("The Western District may be called upon to establish a remedial map, adjust election timing, or otherwise supervise compliance with *Callais*."); *id.* at 11 ("The Supreme Court has returned *Callais* to the Western District three-judge court for further proceedings, including supervision of the remedy for the State's unconstitutional congressional map."); Memorandum in Support of Defendant's Motion to Dismiss or Transfer Venue, *Bernard* (Doc. 12-1), attached as **Exhibit C**, at 7-8 (arguing that "the *Callais* remedial proceedings remain pending in the Western District" and discussing "the ongoing *Callais* remedial proceedings" and "ongoing *Callais* remedial framework"); *id.* at 8-9 ("How the 2026 congressional election should proceed in Louisiana in the wake of *Callais* . . . is part of the remedial process now committed to the three-judge court in the Western District on remand from the Supreme Court."); Ex. B at 1, 3 ("[I]n the ongoing *Callais* remedial proceedings . . . , the Western District has renewed its prior injunction of the State's use of SB8 and is supervising the creation of a remedial map. Order, *Callais*, No. 3:24-cv-00122 (W.D. La. Apr. 30, 2026), ECF 261."); *see also Garcia* (Doc. 6); *Bernard* (Doc. 12).

4

The Middle District granted the Motion to Transfer *Garcia* to this Court on that basis and asked the plaintiffs in *Bernard* to show cause, which led those plaintiffs to voluntarily dismiss their action. Ruling and Order, *Garcia* (Doc. 26), attached as **Exhibit D**; *Bernard* (Docs. 15, 16, 17). And the Middle District acknowledged that this Court has "exclusive jurisdiction over the remedial framework that [the *Callais*] decision requires," which includes "adjudicating challenges to the State's chosen mechanism for adhering to the Supreme Court's *Callais* decision." Ex. D at 8-9; *see also id.* at 8 (discussing "the Western District's exclusive authority over the remedial scheme prompted by *Callais*"); *id.* at 2 ("The [Supreme] Court remanded the case to the [Western District] for remedial proceedings, namely the implementation of a new congressional districting map." (footnote omitted)); *id.* at 8 n.42. In transferring *Garcia*, the Middle District anticipated, based on the State's representations, that this Court would have jurisdiction to hear challenges to any law enacted in SB8's stead.

And then when the Intervenors moved to stay this case just two months ago, the State opposed on the grounds that this Court had jurisdiction to continue the remedial proceedings. Doc. 284. The State did the same in moving to reset the deadlines even after SB8 was repealed and Act 2 was enacted. Specifically, the State acknowledged that the Court could engage in "proceedings to review Act 2" and sought an adjusted briefing schedule. Doc. 302 at 3.

But then just a few weeks later, once this Court (and all other courts) had granted the State all the relief it sought (including an opportunity for the State to enact a new map, allowance of Act 2 for the 2026 election based on *Purcell v. Gonzalez*, 549 U.S. 1 (2006), an adjustment of the briefing deadlines until after the 2026 election, and in other cases, transfer to this Court, dismissal, or denials of plaintiffs' requested relief), the State reversed course. In response to the Intervenors'

5

Motion to Dismiss, the State suddenly agreed with the Intervenors' assessment and filed a Motion to Vacate even though this Court had yet to decide the constitutionality of Act 2.

But the remedial proceedings did not conclude, and this Court's remedial authority did not evaporate, with the inception of Act 2. It is not enough that the State thinks Act 2 is constitutional. This Court expressly reserved that question, and that question is plainly the province of this Court. *Marbury v. Madison*, 5 U.S. 137, 177-78 (1803); Doc. 261. If Act 2 truly is constitutional, it will be able to withstand this Court's review.

The opposite result would give the State free rein to intrude upon constitutional rights. A court could permanently enjoin (and the U.S. Supreme Court could affirm) a State's racial gerrymandering scheme as unconstitutional, and the State, with a narrow reading of the case, could merely shift a few congressional lines around without further review. The pattern could repeat itself in multiple courts such that the State evades full review of its remedy and never produces a fully constitutional map. That result is far from hypothetical. The State is on its third map for this census cycle, and if Plaintiffs must start over in another court—notwithstanding their live challenge, the record before this Court, and the need for a constitutional remedy in this case—the State may make it to 2030 with an unconstitutional map still in place. That result significantly limits any victory Plaintiffs won through years and rounds of litigation to ensure the State no longer segregates them based on race. It leaves Mr. Callais in a potentially racially gerrymandered district, even though *Louisiana v. Callais*, 608 U.S. ___ (2026), promised him otherwise. It compromises judicial efficiency and wastes party resources. *Cf.* Ex. A at 11-12 (State arguing it "would be inefficient" to commence remedial proceedings in a different court than this one); Ex. B at 7 (similar); Ex. C at 7-8 (similar); Ex. D at 8-9 & n.43 (Middle District finding that this Court is best positioned to evaluate any remedy based on *Callais*).

6

Moreover, the State's latest argument that this case is moot is wholly inconsistent with the State's actions as of a few weeks ago, including its efforts to transfer other challenges to the remedial proceedings before this Court. And it reflects a pattern of flip-flopping that Plaintiffs know all too well. From the time the State first gave up the fight over HB1 and enacted SB8 to the State's sudden enlightenment amid supplemental briefing at the Supreme Court to shift from a defensive to an offensive position on SB8, the State has been anything but consistent.

And the State's most recent about-face only threatens to extend, not end, litigation. As discussed, the Intervenors' attorneys have already shown their cards by challenging in other courts the State's preliminary legislative steps to repeal SB8 and enact a new map after the Supreme Court decision came down. *See* Docs. 264, 264-1, 264-2. Even more telling, during the legislative session, Intervenors NAACP Louisiana State Conference and Power Coalition for Equity and Justice (two of the Robinson Intervenors) wrote the Legislature in opposition to then-SB121 and, specifically, its inclusion of only one majority-Black district. *See* Letter, attached as **Exhibit E**, at 1, 7-8 (arguing "a map that conscientiously and unnecessarily truncates Black voters' political power into one district cannot be rationalized").[2] And throughout the entire census cycle (from *Robinson* to *Callais*), the Intervenors have claimed they are entitled to two majority-Black districts and sought to intervene in this case to vindicate that interest in the remedial phase. Doc. 18-1 at 7, 10; Doc. 75 at 5. The Court only allowed the Robinsons to intervene permissively in the remedial phase on the basis that "[a] remedial phase would implicate the main objective movants fought for in the *Robinson* case, two Black-majority Congressional districts as they allege is required by the Voting Rights Act and provide an opportunity to introduce the same or similar evidence and maps

---

[2] The final amendments to SB121 after the Letter was drafted on May 27, 2026, were minor, and none of the amendments resolved the Letter's objections. Louisiana State Legislature, SB121 by Senator Jay Morris, https://perma.cc/ZFS2-YALS.

as in that case." Doc. 79 at 6 (allowing Robinsons to intervene); *see also* Doc. 205 (allowing Galmons to intervene without further explanation).

While the Intervenors previously sought to vindicate their claims in this Court and at least two publicly opposed SB121 and its inclusion of only one majority-Black district as recently as May 27, 2026 (**Ex. E**), they refuse to do so now. Meanwhile, their allies have threatened lawsuits challenging Act 2. Piper Hutchinson, *Litigation looms as Louisiana Legislature approves new congressional map*, LA. ILLUMINATOR (May 29, 2026), https://perma.cc/JH3C-Z3SY ("Members of the Louisiana Legislative Black Caucus have also indicated they plan to explore litigation against the map . . . ."). If the Intervenors and other parties transferred to this case do not have to prosecute claims here, they (or others) will probably do it elsewhere—perhaps in the Middle District of Louisiana where the *Robinson* litigation took place and where SB8 proponents brought their recent challenges in *Garcia* and *Bernard*.

While the State recently urged that jurisdiction was proper here, it now seems to commend a resolution that will free these parties to return to their preferred strategy of collateral attacks in other courts. Ironically, that result will not only delay the State's desire for finality and extend litigation beyond the parties' proposed schedule in this case, but it will also cost the State much more in litigation fees in part because the record will have to be entirely rebuilt. *Cf.* Doc. 329-1 at 11 (State arguing that the Court should dismiss this case because continuing litigation risks "wasting untold judicial and party resources over the next year" (footnote omitted)). All of this will compromise judicial efficiency, party resources, and certainty for Louisiana voters.

## II.  The Case Is Not Moot for the Reasons Set Forth in *Covington*.

Even if the State did not repeatedly advance that a live controversy persisted in this Court until final approval of the remedy, the case still would not be moot. Both the State and Intervenors

try to distinguish and downplay the impact of *North Carolina v. Covington*, 585 U.S. 969 (2018) (per curiam). But *Covington* is dispositive on the question of mootness. So, they must attempt to rewrite *Covington* and this case.

As expressed at length in Plaintiffs' Response to the Intervenors' Motion to Dismiss, Doc. 330, Plaintiffs brought and prosecuted a *Shaw* challenge to the racial gerrymandering in SB8 writ large, including District 2. *Id*. at 3, 6-7. Plaintiffs did not limit their challenge, nor did this Court confine relief, to District 6's precise boundaries. *See, e.g.*, Doc. 198 at 59 ("The Court agrees and finds that SB8 violates the Equal Protection Clause as an impermissible racial gerrymander. In light of the foregoing, the Court GRANTS PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF. The State of Louisiana is prohibited from using SB8's map of congressional districts for any election."). While the State and Intervenors repeatedly try to narrow Plaintiffs' injury to the exact lines drawn in District 6, the Supreme Court rejected this same attempt in *Covington*. Doc. 330 at 975-76. Here, like there, Plaintiffs' asserted and preserved injury is that they have been "separate[d] . . . into different districts on the basis of race," *Shaw v. Reno*, 509 U.S. 630, 649 (1933)—not "the legislature's line drawing" in SB8 District 6. *Covington*, 585 U.S. at 975-76. Here, as there, "in the remedial posture in which this case is presented, [Plaintiffs'] claims that they were organized into legislative districts on the basis of race [do] not become moot simply because the [Legislature] drew new district lines around them." *Id*. at 976. Rather, this Court must retain jurisdiction to ensure Plaintiffs do not "remain[] segregated on the basis of race." *Id*. In light of the parties' agreed upon briefing schedule, Plaintiffs will state their position on or before December 15, 2026, as to whether the new Act 2 perpetuates those same violations that saturated SB8 by racially gerrymandering Mr. Callais into District 2. That is sufficient to perpetuate a live controversy under *Covington*.

The fact that Plaintiffs have not amended their Complaint to challenge Act 2 is no reason to dismiss this case as moot. *Cf.* Doc. 329-1 at 11 n1. *Covington* itself involved a repeal and enactment of a new law without amendment to the operative complaint. 585 U.S. at 975.[3]

Plaintiffs' admission that some Plaintiffs in District 6 are no longer racially segregated also does not change this outcome. A case is not moot if it resolves some of but not all of the injury. That's exactly what happened in *Covington*. The district court held, and the Supreme Court summarily affirmed, that 28 legislative districts in the original map were racial gerrymanders. *Covington v. North Carolina*, 316 F.R.D. 117, 124 (M.D.N.C. 2016), *summarily aff'd*, *North Carolina v. Covington*, 581 U.S. 1015 (2017). The State repealed that map and enacted a new one, remedying all but four districts. *Covington*, 585 U.S. at 971. And still the Supreme Court found some plaintiffs were racially gerrymandered, and the case was not moot. *Id*. at 976. A live controversy persists where the State repeals and enacts a new law that merely reconfigures a racial gerrymander. *Id*. Act 2's District 2 is awfully similar to SB8's District 2, and if it perpetuates a racial gerrymander, it is a "mere continuation[] of the old, gerrymandered district[]." *Id*.

Moreover, this Court, under the instruction of the Supreme Court, has ordered that the State must draw a "Constitutionally compliant map consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. ___ (2026) and this Court's injunction." Doc. 261. The Court has yet to approve Act 2 as such a remedy, and until the Court does so, the controversy remains live. *Covington*, 585 U.S. at 975-76. For these reasons, the Intervenors' contention that this case is distinct from *Covington* because there is no "outstanding court order," is a non-starter. Doc. 332 at 7. And the Intervenors' argument that *Covington* did not involve a challenge to a newly drawn

---

[3] For the foregoing reasons, the State's brief attempts to distinguish *Covington* in a mere footnote—*i.e.* because Plaintiffs allegedly did not challenge SB8's District 2 or Act 2's District 2 and because Plaintiffs' only injury allegedly arose from District 6—fail.

map by the Legislature is blatantly wrong. *Id*.; *Covington*, 585 U.S. at 971. The Legislature repealed the offending map and enacted a new one, and the *Covington* district court only appointed the special master *after* plaintiffs objected to the State's proposal. 585 U.S. at 971-72; *Covington v. North Carolina*, 283 F. Supp. 3d 410, 413-14 (M.D.N.C. 2018) (per curiam) (discussing this history). Here, as there, the Legislature put forward a new map pursuant to a Court order.

The State and Intervenors also imply that Plaintiffs cannot claim a live controversy because briefing will commence after the 2026 election. Doc. 332 at 2; Doc. 329-1 at 11. This argument is erroneous. The State and Intervenors agreed to this briefing schedule mere weeks ago. Doc. 320. And *the State and Secretary of State* were the parties who initially pushed for the Court to reset the deadlines until *after the 2026 election* based on *Purcell*, *Allen v. Milligan*, No. 25A1314, 608 U.S. ___ (2026), and the Secretary's election schedule. Docs. 300, 302. The Secretary said, and the State quoted in its own motion to reset the deadlines, that Act 2 likely must "control the 2026 congressional elections" and asked the Court to "retain jurisdiction" to review Act 2 "before the 2028 election." Doc. 300 at 2, ¶ 7; Doc. 302 at 2. The State, likewise, argued: "The upshot is that Act 2 will be used for Louisiana's 2026 congressional elections—and thus, there is no need to rush proceedings to review Act 2 *in advance of the 2026 congressional elections*." Doc. 302 at 3 (emphasis added). Plaintiffs, the State, and the Intervenors then agreed to a briefing schedule that set the deadline for opening briefs to be due on Tuesday, December 15, 2026, just three days after the Saturday, December 12, 2026, general election date. Doc. 320; Secretary of State, *2026 Elections Calendar*, https://perma.cc/E7DE-9DSL. That timeline gives all parties the ability to conduct any necessary analysis based on the most recent election data, particularly relevant to any Section 2 and *Thornburg v. Gingles*, 478 U.S. 30 (1986), analysis, which the Intervenors previously argued required two majority-Black districts as their basis to intervene in the case. Doc.

18-1 at 7, 10; Doc. 75 at 5-8, 9-10. Defendants cannot moot the case merely by extending briefing deadlines to a reasonable date.

The Intervenors also attempt to distinguish *Covington* based on the second half of the opinion, where the Supreme Court held that part of the district court's redraw went too far. But they only do so by omitting key language. The Supreme Court reached this conclusion because the plaintiffs' asserted injury—"that they had been placed in their legislative districts on the basis of race"—"limited" the district court's "remedial authority . . . to ensuring that the plaintiffs were relieved of the burden of voting in racially gerrymandered districts." *Covington*, 585 U.S. at 978 (citation omitted). The district court exceeded that authority when it redrew districts only because those districts "violated the North Carolina Constitution's ban on mid-decade redistricting, not federal law." *Id*. at 978-79. In doing so, the Supreme Court affirmed that a district court has authority to ensure a remedial map's conformity with "the clear commands of federal law." *Id*. at 979 (quotation omitted). Here, Plaintiffs' injury is racial segregation in violation of federal law (not state law), so under *Covington*, this Court has jurisdiction to ensure that the new law does not perpetuate that injury.

Finally, the State's citations to various cases do not undermine *Covington*'s clear holding. Here, unlike *Freedom from Religion Foundation, Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023), and *Spell v. Edwards*, 962 F.3d 175 (5th Cir. 2020), Plaintiffs' "asserted injury" is not "tied to the existence of [a specific administrative] Rule" or proclamation. *Freedom from Religion Found*., 58 F.4th at 832. Rather, like in *Covington*, their injury under *Shaw* is tied to the Legislature's racial gerrymandering, which transcends any particular statute, and they have standing to ensure the State's new law remedies that injury. *Covington*, 585 U.S. at 975-76. And unlike *Spell*, where the "lapse" in the law "was predetermined" prior to litigation, here the law was repealed in "response

12

to litigation." 962 F.3d at 180; *see also id.* (noting that "a postsuit repeal" of a law "might not moot a case" (citation omitted)).

Similarly, *Thomas v. Reeves*, 961 F.3d 800 (5th Cir. 2020) (en banc) (per curiam), is inapposite. There, when the Legislature repealed a law so that it would never go back into effect and the challenged election came and went, the plaintiffs did not assert any ongoing constitutional injury from the new law—only the old, repealed one. *Thomas v. Bryant*, 938 F.3d 134, 143 (5th Cir. 2019), *vacated on other grounds*, *Reeves*, 961 F.3d 800 ("On April 4, 2019, Plaintiffs informed the district court that they would not challenge the State's newly drawn plan . . . ."); *id.* at 144 ("Plaintiffs do not challenge the Legislature's newly reconfigured boundaries for District 22."); *id.* at 152 ("The Legislature then acted, and created new lines for Districts 22 and 13 on March 27, 2019, which Plaintiffs do not challenge."); *id.* at 164 ("Plaintiffs do not challenge the new plan."). Plaintiffs have made no such concession here.

Likewise, in *Davis v. Abbott*, 781 F.3d 207 (5th Cir. 2015), which pre-dated *Covington*, Texas repealed the offending law prior to any final judgment on the merits and adopted a plan to which plaintiffs did not object. *Id.* at 211, 217-18. In fact, the plaintiffs proposed that very plan. *Id.* at 211. This stands in stark contrast to *Covington* and this case, where Plaintiffs have not conceded that the new law remedies all their injuries and the district court retains exclusive jurisdiction to oversee and ensure the remedy complies with the Constitution and its order after entering a final permanent injunction. 585 U.S. at 976; Doc. 261.

And *Veasey v. Abbott*, 888 F.3d 792 (5th Cir. 2018), supports rather than undermines Plaintiffs' position. There, the court held that the appeal was *not* moot when the State repealed the offending law because the court was evaluating whether the new law was an adequate remedy for the plaintiffs' claims. *Id.* at 799. *Veasey* distinguished *Diffenderfer v. Central Baptist Church of*

13

*Miami, Florida, Inc.*, 404 U.S. 412 (1972) (per curiam)—a case on which the State relies—on that basis.[4] *Veasey*, 888 F.3d at 799. And in reaching its jurisdictional conclusion, *Veasey* relied on *Mississippi State Chapter, Operation PUSH, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991), which arose in a "similar" posture to *Veasey*. 888 F.3d at 799. *Veasey* reasoned that in *Operation PUSH*, "[t]here was no suggestion of mootness arising from the passage of the responsive legislation, which was analyzed for its effectiveness as a proposed remedy." *Id.* (citing *Operation PUSH*, 932 F.2d at 409). This Court is in a very similar remedial posture. Accordingly, the case is not moot. *Id*.

### III.    Plaintiffs' Status as Prevailing Parties Does Not Moot the Case.

The State relies heavily on Plaintiffs' arguments that they are the prevailing parties in their Motion for Fees as a basis to dismiss the case as moot. Doc. 329-1 at 10-11. But a party's prevailing party status is not an admission that all live claims are gone. As the Fifth Circuit has held, a prevailing party is merely "one who has been awarded . . . at least some relief on the merits." *Veasey v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) ("*Veasey II*") (quotation omitted). "[A] plaintiff's success . . . need not address the central claim of the case; instead, a party may attain prevailing status by succeeding on 'any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Id.* (quoting *Tex. State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)) (quotation omitted) (emphasis added).

---

[4] Thus, for the same reasons, *Diffenderfer*, which involved a challenge to a Florida tax law and repeal of that law while the case was on appeal, is distinct here. 404 U.S. at 413. And there too, when the offending law was repealed, plaintiffs did not "attack the newly enacted legislation" so the Supreme Court remanded to give them the opportunity to do so. *Id.* at 415 (citation omitted).

Similarly *Kremens v. Bartley*, 431 U.S. 119 (1977), which involved a challenge to "Pennsylvania statutes governing the voluntary admission and voluntary commitment to Pennsylvania mental health institutions of persons 18 years of age or younger," and where the plaintiffs' "concerns were eradicated with the passage of the new Act" and no constitutional issue remained, is inapplicable. *Id*. at 121, 129.

14

The Supreme Court has "repeatedly held that an injunction or declaratory judgment, like a damages award, will usually satisfy [the prevailing-party] test." *Lefemine v. Wideman*, 568 U.S. 1, 4 (2012) (per curiam) (citation omitted); *see also Davis*, 781 F.3d at 214. For example, in *Veasey II*, the Fifth Circuit concluded that a party prevailed based only on an interim injunctive order that prohibited the State from using a state voter ID law for the 2016 election—without regard to whether the final remedy conferred prevailing party status. 13 F.4th at 368. Likewise, in *Lefemine* the Supreme Court held that the mere entry of an injunction "supported the award of attorney's fees." 568 U.S. at 5.

"The relief need not be awarded at the conclusion of the case—a prevailing party is simply 'one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation.'" *Id*. (quoting *Tex. State Tchrs. Ass'n*, 489 U.S. at 791) (quotation omitted). "Congress clearly contemplated that interim fee awards would be available 'where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues.'" *Tex. State Tchrs. Ass'n*, 489 U.S. at 790 (quoting S.Rep. No. 94-1011, p.5 (1976)) (citation omitted). Where an appellate court affirms a party's victory and remands other issues (such as the proper remedy) for further proceedings in the district court, a party is entitled to a fee award at that juncture even though litigation remains. *Id*. at 790-91. In other words, "Congress cannot have meant 'prevailing party' status to depend entirely on the timing of a request for fees." *Id*. at 791. And courts have repeatedly allowed and granted motions for attorneys' fees even while part of the live controversy persists. *See, e.g.*, *Shipes v. Trinity Indus., Inc.*, 883 F.2d 339, 345 (5th Cir. 1989) (approving district court's decision in accord with congressional policy to award interim fees for success at liability stage while remedial proceedings were pending); Order, *Caster v. Allen*, No. 2:21-cv-01536-AMM (N.D. Ala. July 30,

15

2024) (Doc. 297) (awarding motion for attorneys' fees while litigation remained pending); Order, *Milligan v. Allen*, No. 2:21-cv-01530-AMM (N.D. Ala. Aug. 7, 2024) (Doc. 383) (same).

Plaintiffs are undoubtedly the prevailing parties given the final, permanent injunction in this Court, which was affirmed in the Supreme Court. 42 U.S.C. § 1988; *Veasey II*, 13 F.4th at 368-70; *cf. Lackey v. Stinnie*, 604 U.S. 192, 207-08 (2025) (holding plaintiffs who only obtained "preliminary judicial relief," as opposed to "*permanent*" relief "by virtue of judicial order" were not prevailing parties and that parties are prevailing where the judicial order results in a "change in relationship and its permanence"). Plaintiffs could accordingly move for an interim fee award as prevailing parties while they ensure the State's proposed remedy removes all vestiges of racial segregation. Plaintiffs' point in their interim Motion for Fees that they prevailed on all claims at the liability stage does not waive any arguments about the constitutionality of the State's proposed remedy in the remedial stage.

If the State's efforts to suddenly moot this case (after arguing for months that a live controversy existed to stave off litigation elsewhere) or vacate the permanent injunction (as discussed in *infra* Part IV) are really an attempt to strip Plaintiffs of their prevailing party status and avoid paying fees in this matter, the Court should reject those efforts. Again, Plaintiffs are already the prevailing parties, and the State cannot revoke that status now.

IV.    **Vacatur of the Permanent Injunction and Remedial Schedule Is Unwarranted.**

"It goes without saying that federal courts must vigilantly enforce federal law and must not hesitate in awarding necessary relief." *Horne v. Flores*, 557 U.S. 433, 450 (2009). Therefore, when a court considers whether to vacate a judgment that protects constitutional rights, it must ensure that those rights will be adequately protected absent the judgment. As such vacatur is an "extraordinary remedy." *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26

(1994). "Rule 60(b)(5) does not provide relief 'when it is no longer convenient to live with the terms of a [judgment].'" *Sec. & Exch. Comm'n v. Novinger*, 40 F.4th 297, 307 (5th Cir. 2022) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)). Rather, under that Rule, a court may vacate a judgment if a moving party demonstrates that "applying [the judgment] prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). The moving party bears the burden to show "a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest." *Horne*, 557 U.S. at 447 (quotation omitted). "[A] critical question in this Rule 60(b)(5) inquiry is whether the objective of the District Court's [order and judgment] has been achieved." *Id*. at 450. In other words, a court assesses whether a "durable remedy has been implemented." *Id*. This Rule "may not be used to challenge the legal conclusions on which a prior judgment or order rests." *Id*. at 447.

And the Fifth Circuit, in following Supreme Court precedent, has repeatedly held that vacatur is unwarranted due to "*voluntary action of the losing party*," such as a losing governmental entity's repeal of legislation, even where such voluntary action moots the case. *Hous. Chron. Pub. Co. v. City of League City, Tex.*, 488 F.3d 613, 619 (5th Cir. 2007) (collecting cases) (citation omitted); *see also U.S. Bancorp*, 513 U.S. at 25 (holding that a losing party's voluntary actions lead him to "surrender[] his claim to the equitable remedy of vacatur"). Rather, a party must show that any claimed mootness occurred due to "happenstance"—or "circumstances unattributable to any of the parties." *U.S. Bancorp*, 513 U.S. at 23 (quotation omitted). Otherwise, a party could moot the case and then "employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment," which "would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Id.* at 27; *see also AT&T*

17

*Commc'ns of the Sw., Inc. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000); *Sierra Club v. Glickman,* 156 F.3d 606, 620 (5th Cir. 1998).

The State seeks to vacate this Court's permanent injunction before this Court enters a remedy. But vacatur is unwarranted for at least four reasons. First, the State relies wholly on its repeal of SB8 and the alleged mootness of the lawsuit as the basis for vacatur. Doc. 329-1 at 12. But even if the lawsuit was moot due to the State's action (it is not), that is plainly insufficient under the law for vacatur. *See, e.g.*, *Hous. Chron. Pub. Co.*, 488 F.3d at 619; *U.S. Bancorp*, 513 U.S. at 25; *AT&T Commc'ns of the Sw., Inc.*, 235 F.3d at 244; *Sierra Club,* 156 F.3d at 620. *Agostini v. Felton*, 521 U.S. 203 (1997), and the other cases cited by the State do not hold otherwise. Thus, the State's only claimed basis for vacatur fails. *U.S. Bancorp*, 513 U.S. at 25-26.

Second, even if the State's repeal of SB8 was possible grounds for vacatur (it is not), the State's erratic ways and intrusions into Plaintiffs' constitutional rights indicate that there has not been a significant change either in factual conditions or in law that render continued enforcement of the judgment detrimental to the public interest. The State may be seeking this relief just to claim it does not have to pay the necessary fees to Plaintiffs for their success in achieving permanent injunctive relief.[5] And it may be seeking this relief so it can revert to SB8 when the inevitable litigation from the Intervenors or their allies comes in response to Act 2. With the State's contradictory, unpredictable actions this whole election cycle—including its conflicting litigating positions, vociferous defenses of, and zealous attacks on, the same redistricting legislation, and inconsistent representations to different (or even the same) courts—it's anyone's guess. That is not a sound basis for vacatur of a Supreme Court affirmed injunction to protect Plaintiffs'

---

[5] Such an outcome would of course be improper because even vacatur does not undermine Plaintiffs' legal victory and "the legal conclusions on which a prior judgment or order rests." *Horne*, 557 U.S. at 447.

18

constitutional rights. Moreover, the injunction does not restrict the State in such a way that is

"detrimental to the public interest." *Horne*, 557 U.S. at 447 (quotation omitted). It merely prohibits

the State from enforcing an unconstitutional law.

Third, this Court has yet to determine that there is a "durable remedy" in place, *id.* at 450

(citation omitted), meaning a "remedy that gives the Court confidence that defendants will not

resume their violations of plaintiff's constitutional rights once judicial oversight ends." *Frew v.

Suehs*, 775 F. Supp. 2d 930, 935 n.2 (E.D. Tex. 2011) (quotation omitted). The "critical question

in this Rule 60(b)(5) inquiry is whether the objective of the District Court's" permanent injunction

(Doc. 198) and subsequent order for the State to "enact a Constitutionally compliant map

consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. __ (2026) and this

Court's injunction" (Doc. 261), "has been achieved." *Horne*, 557 U.S. at 450 (citation omitted).

Because the Court has yet to answer that necessary question, vacatur is improper. *Id.*[6]

Finally, vacatur is often appropriate when there has been a consent judgment in place for

years "aimed at eliminating a condition that does not violate [federal law] or does not flow from

such a violation." *See, e.g.*, *Horne*, 557 U.S. at 450 (quoting *Milliken v. Bradley*, 433 U.S. 267,

282 (1977)). Here, no one disputes that the permanent injunction is narrowly tailored to only block

blatant violations of federal law. And the Supreme Court affirmed this permanent injunction just

a few months ago. Accordingly, the typical equitable concerns for vacatur are not present here,

and the State has failed to carry its burden to vacate the permanent injunction.

---

[6] The State may respond that Plaintiffs' acceptance of Act 2's inevitable use for the 2026 election
or acknowledgment that Act 2 remedies injuries for 11/12 Plaintiffs is sufficient to demonstrate
that there is a durable remedy in place. But Plaintiffs were only willing to tolerate Act 2 for the
2026 election, without waiving any arguments about its constitutionality, because they knew any
successful contest would result in a *Purcell* stay and a potential reversion to SB8. Doc. 305. And
neither Plaintiffs nor the Court have yet to reach the necessary question of whether Act 2 is
"Constitutionally compliant" as required for all Plaintiffs. Doc. 261.

19

## CONCLUSION

For the foregoing reasons, the Court should deny the pending Motion to Dismiss and Motion to Vacate.

Dated this 4th day of August, 2026

PAUL LOY HURD, APLC
*/s/ Paul Loy Hurd*
Paul Loy Hurd
Louisiana Bar No. 13909
1896 Hudson Circle, Suite 5
Monroe, Louisiana 71201
Tel.: (318) 323-3838
paul@paulhurdlawoffice.com
*Attorney for Plaintiffs*

Respectfully submitted,

GRAVES GARRETT GREIM LLC
*/s/ Edward D. Greim*
Edward D. Greim,* Mo. Bar No. 54034
Matthew Mueller,* Mo. Bar No. 70263
Katherine E. Mitra,* Mo. Bar No. 74671
Sarah R. Pineau,* Mo. Bar No. 74483
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com
spineau@gravesgarrett.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 4th day of August, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs*

20