Case 3:24-cv-00122-DCJ-CHS-RRS   Document 332   Filed 08/04/26   Page 1 of 9
Case 3:26-cv-00471-SDD-RLB   Document 34   Filed 08/04/26   Page 1 of 9
PageID #: 6916

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

LINDSAY GARCIA, a qualified voter
and a candidate in the Democratic Party
for the 5th congressional district, and on
behalf of all others similarly situated; and
EUGENE COLLINS, a qualified voter

versus

JEFF LANDRY, in his official capacity as
Governor or the State of Louisiana;
ELIZABETH B. MURILL, in her official
capacity as Attorney General of the State
of Louisiana; and NANCY LANDRY, in her
official capacity as Secretary of State of the
State of Louisiana



CIVIL ACTION

26-471-SDD-RLB

## RULING AND ORDER

Before the Court is the *Motion to Transfer Venue*[1] filed by Defendants Jeff Landry ("Governor Landry"), Elizabeth B. Murrill ("Murrill"), and Nancy Landry ("Secretary Landry") (collectively "Defendants"). Plaintiffs Lindsay Garcia ("Garcia") and Eugene Collins ("Collins") have filed an *Opposition*.[2] The Court has considered the parties' submissions, arguments, and applicable law, and is prepared to rule. For the following reasons, the Defendants' motion is GRANTED, and this action is transferred to the United States District Court for the Western District of Louisiana.

### I.      FACTUAL & PROCEDURAL BACKGROUND

The Court considers this case in the aftermath of the Supreme Court's recent decision in *Louisiana v. Callais*, which declared Louisiana's congressional districting plan

---

[1] Rec. Doc. 6.
[2] Rec. Doc. 7.

1

(the "SB8 map") an unconstitutional racial gerrymander.[3]  The Court remanded the case to the United States District Court for the Western District of Louisiana (the "Western District") for remedial proceedings, namely the implementation of a new congressional districting map.[4]  By the time the Court issued the *Callais* decision on April 29, 2026, however, the State had already begun administering its 2026 election cycle, including a closed-party primary scheduled for May 16, 2026, for which absentee voting was underway, and early in-person voting slated to begin on May 2.  Against this backdrop, the Western District, on April 30, 2026, ordered a "permanent Injunction … prohibiting the State of Louisiana 'from using SB8's map of congressional districts for any election.'"[5]

The same day, Governor Landry signed Executive Order JML 26-038 (the "Order"), suspending the closed-party primary elections for the offices of United States Representative in Congress for the May 16, 2026 and June 27, 2026 election cycles—elections which would otherwise have been held pursuant to the now-invalidated SB8 map.[6]  Soon thereafter, Plaintiffs filed the instant action before this Court, challenging the Order under various provisions of the United States Constitution, § 2 of the Voting Rights Act of 1965, and the Louisiana Constitution.[7]  Plaintiffs sought a temporary restraining order and, ultimately, a declaratory judgment requiring Defendants to: (1) refrain from giving effect to the Executive Order, (2) proceed with the May 16 federal congressional primary and June 27 second primary under the existing congressional districts, (3) count

---

[3] No. 24-109, 2026 WL 1153054, at *18 (U.S. 2026).

[4] *Id.*

[5] Rec. Doc. 261, *Callais v. Landry*, No. 3:24-cv-00122 (W.D. La., Apr. 30, 2026).

[6] Rec. Doc. 1-2, p. 2.  The Order suspends these elections "until July 15, 2026 or until such time as determined by the Legislature."  *Id.*  Also on the ballot for May 16, 2026, are the United State Senate primary, a Louisiana Supreme Court election, a Louisiana Board of Elementary and Secondary Education election, two contests for the Louisiana Public Service Commission, and five proposed amendments to the Louisiana Constitution.  The Order does not purport to affect these elections.  *Id.* (Section 3).

[7] Rec. Doc. 1, p. 1.

2

every absentee ballot already cast; and (4) refrain from disenfranchising any qualified Louisiana voter or de-listing any qualified candidate in any contest on the May 16, 2026 or June 27, 2026 ballot.[8]  On May 1, 2026, Defendants filed this *Motion to Transfer Venue*[9] to the Western District.  The same day, Plaintiffs filed their *Opposition*.[10]  The issue has been fully briefed and is ripe for ruling.

## II.    DISCUSSION

Whether to transfer venue in a particular action is committed to the sound discretion of the district court.[11]  The federal change of venue statute provides that "[f]or the convenience of the parties and witnesses, [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[12]  A motion to transfer under § 1404(a) thus calls for the district court to make an individualized, case-by-case determination based on principles of fairness and convenience.[13]  Accordingly, the Court must consider the interests of both the litigants, and the interests of the public and judicial system writ large.[14]  Animating the former are considerations governing the cost and ease of litigation—in other words, private interest factors.[15]  "Animating the latter are a broader set of concerns, ranging from the interest in having a case involving local disputes and local law resolved by a local court, to facilitating judicial economy and avoiding duplicitous litigation."[16]  In any event, it is the Defendants' burden to establish that the proposed transferee venue is "clearly more convenient" than

---

[8] *Id* at p. 3.
[9] Rec. Doc. 6.
[10] Rec. Doc. 7.
[11] *Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).
[12] 28 U.S.C. § 1404(a).
[13] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).
[14] *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014).
[15] *Id* at 678.
[16] *Id.*

the transferor venue.[17]   In this matter, significant factors for consideration include "preventing the duplication of effort and incompatible rulings … and assessing the applicability of the 'first filed' rule."[18]

## A. Application of the First Filed Rule

Unlike a motion to transfer venue under 28 U.S.C. § 1404, the first-to-file (or 'first filed') rule is a distinct, judicially-created procedural mechanism for transferring venue.[19] The rule is designed to promote comity, uniform jurisprudence, and sound judicial administration by allowing the first-filed court to resolve the dispositive and jurisdictional issues in overlapping suits.[20]   Indeed, the purpose of the rule is to avoid "duplicative litigation," "rulings which may trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result."[21]   A second-filed court, faced with a motion to dismiss or transfer under the first-to-file rule, must evaluate whether a substantial overlap exists between the two actions.[22]   The focal inquiry is "whether the core issue … [is] the same" or if "much of the proof adduced … would likely be identical."[23] "Where the overlap between two suits is less than complete, the judgment is made case by case, based on factors such as the extent of overlap, the likelihood of conflict, the

---

[17] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

[18] *Barnett v. Alabama*, 171 F. Supp. 2d 1292, 1294-95 (S.D. Ala. 2001).

[19] *See White v. Peco Foods, Inc.*, 546 F. Supp. 2d 339, 343 (S.D. Miss. 2008) ("As other district courts have pointed out, a motion to transfer pursuant to the first-to-file rule does not depend on the presence or absence of the § 1404 considerations"); *FCX Solar, LLC v. FTC Solar, Inc.*, 2021 WL 4953912, at *4 (W.D. Tex. Oct. 25, 2021) (citing *In re Spillman Dev. Group, Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013) ("In determining whether to transfer a civil action to another district, the Fifth Circuit utilizes the well-established first-to-file rule")).

[20] *See Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("avoid the waste and duplication, to avoid rulings which may trench upon the authority of sister courts").

[21] *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

[22] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).

[23] *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011) (internal citations omitted).

comparative advantage[,] and the interest of each forum in resolving the dispute."[24]  In either case, "[o]nce the likelihood of substantial overlap between the two suits has been demonstrated … the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court.[25]

It is well-established that the first-to-file rule has "particular" application where "a declaratory judgment or injunctive suit" concerns an issue "pending in litigation elsewhere."[26]  Defendants argue that because the instant action is a "collateral attack on the first-filed Western District's injunction prohibiting the use of the existing congressional map [SB8], the first-to-file rule mandates dismissal."[27]  They contend that the "core issue" in both this case and in *Callais v. Landry* is whether the existing SB8 congressional map can be lawfully used and, thus, the core issue is the same.[28]  Plaintiffs counter that the cases are sufficiently different such that the first-to-file rule should not apply.  They point to the fact that the cases involve different legal claims, a different combination of defendants, seek different relief, and operate on different timelines.[29]  In essence, the crux of Plaintiffs' differentiation argument is that "the Western District proceeding is a redistricting challenge … [and] this proceeding is a § 1983 challenge to executive action."[30]  They therefore maintain that, while the present action may be "causally and substantively connected to the apportionment issue at the heart of *Callais* [,]" that does not render the issues substantially overlapping for purposes of the first-to-file rule.[31]

---

[24] *Id* (citing *Save Power Ltd.*, 121 F.3d at 951).
[25] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).
[26] *W. Gulf Maritime Ass'n*, 751 F.2d at 729.
[27] Rec. Doc. 6-1, p. 5.
[28] *Id* at 5 and 7.
[29] Rec. Doc. 7, p. 5.
[30] *Id.*
[31] *Id* at 6.

It is well-settled, however, that "cases need not be identical or encompass a complete identity of parties to be duplicative and fall within the purview of the first-to-file rule."[32]  Notwithstanding "very real differences," substantial overlap between two suits will exist for first-to-file purposes "if the simultaneous entertainment of both suits presents the likelihood of conflicting judgments between two coequal district courts."[33]  That is the case here.  While Plaintiffs contend they do not request relief requiring the use of SB8, it is glaring to the Court that they seek a functional equivalent: "*a Temporary Restraining Order … enjoining Defendants from giving any force or effect to [the Order] … or to any other suspension, postponement, or cancellation of the May 16, 2026 federal congressional primary election*."[34]  If Plaintiffs are successful on the merits, the relief they seek is for the election to proceed under an existing congressional mapping scheme— but only one such map exists: SB8.  While Plaintiffs do not expressly ask the Court to order an election pursuant to the SB8 map, they cannot argue in good faith that this would not be the natural result of a ruling in their favor.  Indeed, Plainitffs' request to convene a three-judge panel under 28 U.S.C. § 2284 concedes that "the relief sought directly governs the conduct of federal elections under the <u>existing</u> apportionment."[35]  The Court therefore runs the significant risk of being put in an untenable position: ordering a business-as-usual election pursuant to a map that the Supreme Court has declared unconstitutional and the use of which is presently enjoined by the Western District.  Where the first-to-file rule's primary purpose is to "avoid burdening the federal judiciary and to

---

[32] *KCCR, Inc. v. Brunner*, 210 WL 4236868, at *3 (S.D. Tex. Oct. 21, 2010); *Edwards v. Genesco Inc.*, 2025 WL 2085040, at *1 (E.D. Tex. Jul. 24, 2025) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950-51 (5th Cir. 1997)).

[33] *Rosas v. Raytheon Aircraft Co.*, 2007 WL 1520992, at *2-4 (S.D. Tex. May 21, 2007).

[34] Rec. Doc. 7, p. 3.

[35] Rec. Doc. 1, p. 36 (emphasis added).

prevent the judicial embarrassment of conflicting judgments,"[36] the Court finds it neatly fits the present circumstances.

Notably, Plaintiffs' attempt to clarify their requested relief to avoid the first-to-file rule further weighs in favor of its application.  More specifically, Plaintiffs' *First Notice of Supplemental Authority*[37] clarifies the relief sought as follows: "*An order directing that any remedial process undertaken with respect to the United States House of Representatives primary be conducted under the supervision of the [Western District] … and in a manner that preserves the rights of all already-cast absentee ballots, all qualified candidates, and all qualified voters*."  Certainly, the principles of judicial efficiency, judicial comity and sound judicial administration, are implicated (and likely deteriorated) whenever the requested relief is, in substance, an order requiring the defendant to follow the directives of a coordinate court of equal rank with exclusive jurisdiction over a certain issue.[38]  That is precisely the relief sought by Plaintiffs' "clarified" request.[39]  On remand, the Western District has taken significant steps to address the effect of the Supreme Court's Ruling on the elections underlying the present action.  In addition to the above-mentioned injunction,

---

[36] *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990); *Save Power Ltd.*, 121 F.3d at 950 ("the concern manifestly is to avoid … rulings which may trench upon the authority of sister courts.") (internal citations omitted); *Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964) ("as a matter of comity and of the orderly administration of justice … [a] court should refuse to exercise its jurisdiction to interfere with the operation of a decree of another federal court.").

[37] Rec. Doc. 3, p. 5.

[38] *See W. Gulf Maritim Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985) (noting the first-to-file rule is based in the "the principle of comity (that) requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs.").  Even so, Plaintiffs' "clarified" request for relief—as outlined in its *Notice of Supplemental Authority*—is presented in addition to, and not in place of, the request for "[a]n injunction enjoining Defendants from giving any force effect to the [the Order]."  Rec. Doc. 3, p. 5.  Thus, while Plainitffs' attempt at clarification is used to support their contention that they do not request relief requiring use of the constitutionally defective SB8 map, they do not explain what map will be used in its place were the elections to proceed as planned—the natural result of Plaintiff's desired injunction.  Obviously, at present, there is no other map.  It is telling that Section 2 of the Order encourages the Legislature "to pass legislation to enact new Congressional maps and schedule those elections as soon as practical."  Rec. Doc. 1-2, p. 2.

[39] Rec. Doc. 7, p. 3.

that court has since ordered the State to explain "how [it] intends to comply with the Supreme Court's opinion in [*Callais*]."[40]  Plainitffs' requested relief would thus deprive the State an opportunity to present the Order, its chosen mechanism of initial response to the *Callais* decision, to the court with exclusive jurisdiction over the remedial framework that decision requires.  This does more than simply interfere with the affairs of the Western District, it fundamentally hamstrings the State's participation in those proceedings by declaring unconstitutional an Executive Order it will almost certainly present as evidence of compliance with that court's April 30, 2026 Order.

The Court finds that such relief—even if facially directed to invalidating the Executive Order—in effect asks the Court to mandate use of the SB8 map.  This would constitute a duplicative application of judicial resources, trench upon the Western District's exclusive authority over the remedial scheme prompted by *Callais*, and provide a piecemeal approach to an issue that calls for a uniform result, one which the Western District has dedicated significant judicial resources to craft.[41]  Not to mention, the Supreme Court's express mandate in *Callais* was a remand to the Western District, not this Court.[42]  The Western District is therefore the forum with a comparative advantage[43]

---

[40] Rec. Doc. 261, *Callais v. Landry*, No. 24-122 (W.D. La. Apr. 30, 2026).  Importantly, the Western District's Order requires the State to file briefing on this issue "within three (3) days of receipt by [that] Court of a certified copy of the Supreme Court's Judgment.").  *Id*.  The Western District received a certified copy of the Supreme Court's Judgment on May 4, 2026.  Rec. Doc. 265.  Accordingly, the Executive Order will almost certainly be brought to the attention of the Western District by the State.  Any challenges concerning its constitutionality will thereafter be more appropriately raised before the Western District—the tribunal entrusted to consider not only the legal propriety of the State's remedial efforts in light of *Callais*, but also the one best positioned to weigh any practical considerations invited thereby.
[41] *Id.*
[42] In granting the *Callais* appellee's *Application to Issue the Judgment Forthwith*, for instance, the Supreme Court made clear its concern that the Western District's ability to "oversee an orderly process" in fashioning a "judicial remedy" might be impacted if the Clerk of Court were to follow the ordinary procedure of waiting 32 days following the Court's judgment to send a certified copy to the clerk of that court.  *Callais v. Louisiana*, 2026 WL 1209010, at *1.
[43] The Western District has a deep familiarity with the facts and legal issues that animated the Supreme Court's opinion in *Callais* and is the forum best positioned to give them effect in the remedial scheme

and clear interest in adjudicating challenges to the State's chosen mechanism for adhering to the Supreme Court's *Callais* decision.  The Court finds the first-to-file rule warrants transfer of this action to that district.[44]

Having found that transfer is appropriate under the first-to-file rule, the Court does not address whether transfer is warranted under § 1404(a).

### III.    CONCLUSION

For the foregoing reasons, Defendants' *Motion to Transfer* is GRANTED.  It is therefore ORDERED that the above-captioned case shall be TRANSFERRED in its entirety to the Western District of Louisiana.  The Clerk of this Court shall take such steps as are needed to effectuate this transfer.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 8th day of _____May_____, 2026.


_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

effectuating that decision.  Importantly, this includes evaluating how the Order fits into that remedial scheme—something the Supreme Court's decision entrusts to the Western District to accomplish, at least in connection to the State's use of the SB8 map. This case can therefore be tried much more expeditiously and inexpensively before that court; it is to the advantage of the parties and to the administration of justice.

[44] While Defendants' *Motion to Transfer Venue* requests that this Court dismiss the action under the first-to-file rule, Rec. Doc. 6-1, p. 7, the decision of whether to dismiss or transfer a case is committed to a district court's discretion.  *MARMAC, LLC v. InterMoor, Inc.*, 566 F. Supp. 3d 559, 583 (E.D. La. 2021). Instead of outright dismissal, the Court—finding it the most prudent and efficient course of action—exercises discretion to transfer the case to the Western District, where the first-filed case is currently pending.  *See W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 n. 1 (5th Cir. 1985) ("[i]n addition to outright dismissal, it sometimes may be appropriate to transfer the action").

9