

 



May 27, 2026

Louisiana House of Representatives
c/o Speaker of the House Phillip R. DeVillier
P.O. 94062
900 North 3rd Street
Baton Rouge, LA 70804
*Submitted via email*

RE: Opposition to SB 121 and Call for Urgent Amendments

Dear Speaker DeVillier and Members of the Louisiana House of Representatives:

On behalf of the American Civil Liberties Union ("ACLU"), ACLU of Louisiana, NAACP Legal Defense and Educational Fund, Inc. ("LDF" or "Legal Defense Fund"), NAACP Louisiana State Conference, and Power Coalition for Equity and Justice, we write in opposition to Senate Bill 121 ("SB 121") in its current posture because it represents a flagrant effort to consolidate political power in the hands of the white majority and deny communities across the state—especially Black Louisianians—an equal opportunity to participate in the political process. Nothing in the Supreme Court's ruling in *Louisiana v. Callais* compels the Legislature to forgo procedural norms, forsake community input, devalue traditional redistricting criteria, or push forward a map that aims to roll back hard-won strides towards fair representation. The Legislature nonetheless is on rapid course to do all of this unless SB 121 is amended.[1] This letter presents alternative maps that better reflect the diverse needs of Louisiana's electorate and heed overwhelming calls from community members for a fair map, including *hundreds* of

---

[1] For example, the notice of the Louisiana House and Governmental Affairs Committee meeting on May 21, 2026 to address SB 121 was not posted 24 hours before the start of the meeting online nor in the Capitol and each committee meeting regarding congressional maps this session has been notably assigned to the smallest committee room in either chamber while larger spaces were left for overflow. *See also* Alyse Pfeil, *Crucial vote on Louisiana's controversial redistricting push scheduled for Tuesday afternoon*, NOLA.COM (May 11, 2026), https://www.nola.com/news/politics/louisiana-senate-redistricting-committee-meeting/article_3f2 (Noting changes to move meeting about maps to earlier time despite prior notice to public of later date. Justification of space availability was dubious given nighttime scheduling).

1

Louisianians who have made their voices heard in the last weeks alone and the countless others who have spoken up during this multi-year saga.[2]

**SB 121 Underperforms on Redistricting Criteria and Basic Principles of Fairness**

As reported from the Committee on House and Governmental Affairs, SB 121 trails behind alternative maps offered herein on traditional redistricting criteria, including the priorities emphasized by the Legislature in Joint Rule 21.[3] As Senator Morris asserts, he attempted to stay close to the map enacted in 2022, claiming that the Supreme Court upheld the map as lawful in *Callais*—a misrepresentation of the decision and the issues before the Court. Nonetheless, this admission means SB 121 inherits many of the shortcomings of the 2022 map on measures of traditional redistricting criteria, and amendments adopted since SB 121 was first introduced have exacerbated its flaws.[4]

**SB 121 as Reported from Committee
(HCA SB 121 – 5662)**



---

[2] *See, e.g.*, Wesley Muller, *Louisiana's start to US House redistricting riles lawmakers, voting rights crowd*, LA. ILLUMINATOR (May 9, 2026), https://lailluminator.com/2026/05/09/louisiana-redistricting-5/ ("Hundreds of people came to the State Capitol, filling several overflow rooms, to watch the Senate and Governmental Affairs Committee, which met to consider new U.S. House district boundaries and give the public a chance to comment."); *See also generally* La. Redistricting, Meetings: Docs and Comments (last visited May 20, 2026), https://redist.legis.la.gov/default_Meetings (cataloging roughly half a decade of public comments and materials submitted pertaining to Louisiana's redistricting process).
[3] La. Joint Rule 21, https://www.legis.la.gov/legis/Law.aspx?d=1238755.
[4] *Compare* La. SB 121 (2026) (Original), https://www.legis.la.gov/legis/ViewDocument.aspx?d=1442205; and SB 121 (2026) (Reengrossed), https://www.legis.la.gov/legis/ViewDocument.aspx?d=1472977; and SB 121 (2026) (HCA SB 121 – 5662), https://www.legis.la.gov/legis/ViewDocument.aspx?d=1473046.

SB121's districts are less compact than alternatives and split more parishes, cities, and towns.[5] On the "eyeball test," SB 121 should offend even the least expert of observers—especially for how Congressional District 2 and District 6 are configured. The Committee on House and Governmental Affairs heard testimony during public comment that it would take roughly seven and a half hours to drive from one end of District 6 to the other as it snakes counterclockwise from St. Charles through East Baton Rouge and down to Lafourche.[6] To drive the full length of the district this way likely cannot be completed contiguously that fast—if at all—because access to key throughways would require breaking into District 2 or 3.

The amendment adopted by the Committee on House and Governmental Affairs also increased the number of parish splits from fifteen to eighteen compared to the version reported by the Senate.[7] Now as amended, more Louisianians live in a parish split by SB 121 than in a parish that remains whole.[8]

Most importantly, in any iteration adopted by lawmakers in this session so far, SB 121 fails on the fundamental values of fairness and equal representation. This observation echoed through the over 27 hours of combined committee hearings, including testimony from Louisianians from every corner of the state and spanning generations from schoolchildren to elders who endured Jim Crow and lamented its return.[9] Hundreds of red cards were submitted in opposition to SB 121 while green cards favored alternatives, including herein.[10] In nearly ten hours of committee meeting and roughly five and a half hours of public comments, not a single community member spoke in favor of SB 121 in House and Governmental Affairs.[11]

This Legislature must not settle for a flawed, unfavored map. The alternatives presented here provide just a small window into the myriad alternatives that could result from a more thoughtful, deliberative, and values-based process to achieve a new, fair congressional map.

**The "Amici Map"**

The Legislature should first consider a map created by professors of mathematics and computer science at Tulane University Michael Mislove, Lisa J. Fauci, and Nicholas Mattei, that was offered when the professors served as intervenors in the *Robinson v. Landry* litigation and

---

[5] *See infra* pages 5-6.

[6] May 21, 2026 Meeting of the Committee on House and Governmental Affairs (Testimony of Bruce Reilly at 8:04:47: "District 6 that does the loop around thing, it takes seven and a half hours, at least according to Google Maps that I did while I was sitting here waiting,") https://www.house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2026/May/0521_26_hg.

[7] *Compare* SB 121 (2026) (Reengrossed), https://www.legis.la.gov/legis/ViewDocument.aspx?d=1472977.

[8] *Id.*

[9] *See, e.g.*, May 21, 2026 Meeting of the Committee on House and Governmental Affairs (4:24:26: Testimony of an 8-year-old girl from Shreveport) https://www.house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2026/May/0521_26_hg; (5:50:25 Testimony from Ms. Roberta Brown, a 90-year-old woman from New Orleans).

[10] *See, e.g.,* May 12, 2026 Meeting of the Committee on Senate and Governmental Affairs https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2026/05/0512_26_sg (video 1 of 4); https://senate.la.gov/s_video/VideoArchivePlayer.aspx?v=senate/2026/05/0512_26_sg2 (video 2 of 4); https://senate.la.gov/s_video/VideoArchivePlayer.aspx?v=senate/2026/05/0512_26_sg3 (video 3 of 4); https://senate.la.gov/s_video/VideoArchivePlayer.aspx?v=senate/2026/05/0512_26_sg4 (video 4 of 4).

[11] *See generally* May 21, 2026 Meeting of the Committee on House and Governmental Affairs https://www.house.louisiana.gov/H_Video/VideoArchivePlayer?v=house/2026/May/0521_26_hg

again as amici in *Louisiana v. Callais*.[12] It was introduced as an amendment to SB 407 on the Senate side,[13] garnering support from hundreds of Louisianians who came to the Capitol,[14] and was offered again as an amendment to SB 121 in the Committee on House and Governmental Affairs.[15]

**Amici Map**



The Amici Map was made using algorithms that attempt to optimize multiple districting criteria. Notably, the mapping algorithm used *did not* use race to decide where to draw the lines or how to assign voters to districts, and it did not set out to create a particular number of majority-Black or majority-minority districts or to hit a demographic threshold.[16] Instead, it "used election returns to evaluate actual electoral opportunity for voters of all races."[17] Moreover, the algorithm *did not* rely on generalizations or stereotypes about how Black or white voters are expected to vote.[18] Instead, it used "actual data in the form of precinct-by-precinct

---

[12] Brief of Louisiana Mathematics and Computer-Science Professors as Amici Curiae in Support of Neither Party, *Louisiana v. Callais*, 608 U.S. ____ (2026), https://www.supremecourt.gov/DocketPDF/24/24-109/373561/20250903155934220_24-109%20and%2024-110%20ac%20La.%20Mathematics%20and%20Computer-Science%20Professors.pdf (herein after "Amici Br.")

[13] La. S.B. 470 (2026), Senate Committee Amendment #3584 S&G Draft https://www.legis.la.gov/legis/ViewDocument.aspx?d=1471247.

[14] *See generally* May 12, 2026 Meeting of the Committee on Senate and Governmental Affairs https://senate.la.gov/s_video/VideoArchivePlayer?v=senate/2026/05/0512_26_sg (video 1 of 4).

[15] La. S.B. 470 (2026), House Committee Amendment #5670 H&G Draft, https://www.legis.la.gov/legis/BillInfo.aspx?s=26RS&b=SB121&sbi=y.

[16] Amici Br., *supra* n.12 at 18.

[17] *Id.*

[18] *Id.*

returns from recent elections to group precincts together into districts that could then be evaluated as to whether they would afford voters an equal electoral opportunity."[19]

Because voters were not assigned to districts based on a racial classification, the map complies with the Equal Protection Clause of the U.S. Constitution as recently reinterpreted by the Supreme Court.[20] It does so while outperforming SB 121 on traditional redistricting criteria, including the objectives highlighted by the Legislature in Joint Rule 21.

The map is compact, both visually and on mathematical measures of compactness for each of the districts, and does not pair any incumbents in the same districts.[21] It splits only seven parishes between two districts—and never more than two.[22] It keeps fully intact *every* Louisiana city with more than 20,000 residents, including New Orleans, Baton Rouge, Shreveport, Lafayette, Lake Charles, Kenner, Bossier City, Monroe, and Alexandria.[23]

On all standard measures, the Amici Map performs better than SB 121.[24] Still, the map represents just one way that fairer districts can be drawn. Below, we offer an alternative map that, instead of looking at past election data, uses a variety of socioeconomic indicators with the aim of uniting voters with shared socioeconomic interests that would uniquely benefit from focused, intentional leadership and accountability in Congress.

### The "Latner Map"

Mathematical models and simulations can produce numerous maps that would better reflect Louisiana's communities than SB 121 and support principles of fair representation around common interests. Below, we offer just one example that improves upon SB 121 by reducing parish splits and increasing compactness scores, while still ensuring districts are contiguous, are generally equal in population, and do not pit incumbents against one another. Using mathematical models and standard map drawing tools, the map was produced by Dr. Michael Latner of the Charles Hamilton Houston Institute for Race & Justice at Harvard Law School and Cal Poly San Luis Obispo. Importantly, Dr. Latner *did not* rely on race or election data when configuring the map. Instead, along with the parameters defined by Joint Rule 21, the mapping model and process was focused on socioeconomic data that seeks to join areas with similar socioeconomic profiles. By uniting communities based on this economic data, the map centers the shared experiences of neighborhoods, towns, and cities in particular need of investment and resources. It unites voters uniquely impacted by congressional spending, policymaking, and leadership on socioeconomic reforms—the very point of valuing communities of interest in redistricting.

---

[19] *Id.*

[20] *Id.* at 4-5; *see also Louisiana v. Callais*, 608 U.S. at 29 (2026) (holding that race cannot be the only districting criterion).

[21] *See supra* Amici Br., *supra* n.12 at 20-22.

[22] *Id.*

[23] *Id.*

[24] *Id.*

**Latner Map**



Source: Michael Latner, Charles Hamilton Houston Institute for Race & Justice at Harvard Law School and Cal Poly San Luis Obispo. Image generated by tidyverse, a collection of R packages.

The Latner Map matches or outperforms SB 121 on each standard measure of traditional redistricting criteria. It has a population deviation of only 25 people between the most and least populous districts, conforming better to the principle of "one person, one vote" than SB 121 with a deviation of 89.[25] It splits only seven parishes compared to SB 121's eighteen split parishes.[26] While 54.07% of people in the state live in split parishes under SB 121, that number plummets by nearly one fifth to 35.20% of people under the Latner Map. The Latner Map keeps 292 cities whole—seven more than SB121 at 285.[27] It passes the "eyeball test" and scores higher on

---

[25] Analysis from Maptitude software based on map files uploaded to redist.legis.la.gov.

[26] Analysis from Maptitude software based on map files uploaded to redist.legis.la.gov. The Latner Map splits Jefferson, East Baton Rouge, Iberia, Lafourche, Lincoln, Livingston, Orleans while SB 121 splits Acadia, Ascension, Assumption, East Baton Rouge, Iberville, Jefferson, Lafayette, Lafourche, Livingston, Orleans, Pointe Coupee, St. Charles, St. John the Baptist, St. Landry, St. Martin, Tangipahoa, Terrebonne, West Baton Rouge.

[27] Analysis from Maptitude software. Whole cities/towns count includes cities/towns with splits affecting zero population.

multiple standard measures for compactness, including the Reock measure,[28] which looks at the area of the district as a percentage of the area of the smallest circle that can enclose it, and the Polsby-Popper measure, which compares each district's area to the area of a circle with a matching perimeter.[29] On the very scorecard this Legislature enshrined in Joint Rule 21, the Latner Map beats SB 121. On fulfilling the promise of fair representation, there is no contest between them.

**Louisianians Deserve a Transparent Process that Yields a Fair Map**

For *years* now, Louisianians across the state have called for a fair map and a fair process. They deserve nothing less. At every stage of the redistricting process, community members galvanized around maps that performed best on nearly every redistricting measure compared to the maps that this Legislature ultimately passed and SB 121 in any of its recent forms. The Legislature must adopt a map that complies with the priorities codified in Joint Rule 21 and adheres to the fundamental principles of our democracy. Fairness should be the North Star. Amending SB 121 is the only way to reach it.

Further amendments to SB 121 are a foreseeable step ahead in the process of finalizing SB 121 across chambers, but remain vague in substance.[30] A transparent process that yields a fair map is critical, and this Legislature should not engage in the same gamesmanship and closed-door meetings that resulted in the post-hoc change of the election dates and processes that predicated this rushed mapping effort for 2026.[31] Opportunity for analysis, debate, and public feedback must be the standard before a final map is enacted—including any version offered herein. Last-minute amendments and secretive conference committee meetings cannot disguise malicious intent—they would only emphasize it. New amendments should lie over and committee debates should be reopened as necessary to ensure opportunity for public input on any evolving iteration of the map.

**A Fair Map Cannot Deny *Any* Community An Equal Voice:**
**That Includes Black Louisianians.**

"The right to vote freely for the candidate of one's choice," and "to have one's vote counted" is "the essence of a democratic society."[32] The need to protect the equal opportunity of

---

[28] Latner Map Reock Score: 0.4092 > SB 121 Reock Score: 0.3532. Analysis from Maptitude software based on map files uploaded to redist.legis.la.gov.

[29] Latner Map Polsby Popper Score: 0.2467 > SB 121 Polsby Popper Score: 0.1362. Analysis from Maptitude software based on map files uploaded to redist.legis.la.gov.

[30] *See* Alyse Pfeil, *New Louisiana congressional map advances with some tweaks*, NOLA.COM (May 21, 2026), https://www.nola.com/news/politics/louisiana-house-committee-approves-updated-congressional-map/article_f4845f1e-3bac-43a6-bcb9-b2803d37aa54.html ("'I don't like the map,' said Sen. Caleb Kleinpeter, a Port Allen Republican who chairs the Senate committee that handles redistricting. 'I don't understand why they changed the map that drastically over on the House side.' Kleinpeter said he doesn't plan to work with House members while the legislation moves through the lower chamber. 'I'm not messing with what they do in the House,' he said. 'If it comes back like we don't like it, then we'll fix it. That's what the Senate does.'").

[31] Piper Hutchinson, *Louisiana Senate advances redistricting bill to add Republican seat ahead of tight midterms*, LA. ILLUMINATOR (May 14, 2026), https://lailluminator.com/2026/05/14/louisiana-redistrict-3/ (Detailing how the bill to manipulate the dates and process of conducting congressional elections for 2026 after ballots were already cast was passed through a "closed-door meeting and adopted by both chambers over the course of an hour without an opportunity for public comment."

[32] *Reynolds v. Sims*, 377 U.S. 533, 554–55 (1964).

Black voters to elect candidates of their choice is borne out by clear evidence that voting in Louisiana is still heavily polarized along racial lines and that this polarization cannot be explained by party alone.[33] While the Supreme Court's ruling in *Louisiana v. Callais* has, without doubt, done incredible harm to voting rights protections and sewn chaos into election processes nationwide,[34] a map that conscientiously and unnecessarily truncates Black voters' political power into one district cannot be rationalized by the *Callais* decision nor any tenet of representative democracy.

The Legislature must center community needs as amendments to SB 121's districts are considered before final passage. Shared experiences defined by cultural identities, socioeconomic status, shared history (good and bad), traditions, industries, environmental conditions, and more shape the lives and experiences of Louisianians. Communities should be united by these common experiences—not divided in the name of centralizing power in the hands of the few. As our submissions here prove, a fair map *is* possible. Anything less is an intentional affront to equal representation.

Sincerely,

ACLU
ACLU of Louisiana
Legal Defense Fund
NAACP Louisiana State Conference
Power Coalition for Equity and Justice

CC:
Michelle Fontenot, Clerk of the House & Custodian of House Records
Members of the Louisiana Legislature

---

[33] *Nairne v. Landry*, 151 F.4th 666, 702–03 (5th Cir. 2025), *vacated*, No. 24-30115, 2026 WL 1255781 (5th Cir. May 7, 2026) (affirming credibility of findings that "Even controlling for political party affiliation, there was strong evidence of racially polarized voting in Louisiana" based on robust data from two testifying experts showing, for example, that in multiple elections analyzed "in every area in all instances white voters gave more support to the white Democrats than the Black Democrats."). *See* Expert Report of Dr. Lisa Handley, *Nairne v. Ardoin*, 3:22-cv-00178 (Oct. 10, 2023), https://acrobat.adobe.com/id/urn:aaid:sc:US:afa77345-9563-4ef3-a2e3-3d77c639879b; Rebuttal Expert Report of Dr. Marvin P. King, Jr., *Nairne v. Ardoin*, 3:22-cv-00178 (Nov. 27, 2023), https://acrobat.adobe.com/id/urn:aaid:sc:US:f49c2a01-ad6d-4bd7-8611-886505383261; Rebuttal Expert Report of Dr. Lisa Handley, *Nairne v. Ardoin*, 3:22-cv-00178, https://acrobat.adobe.com/id/urn:aaid:sc:US:62b398fd-d7ac-4454-9069-49b89d3eac71.

[34] Sam Levine, *US Supreme Court 'demolishes' Voting Rights Act, gutting provision that prevented racial discrimination*, THE GUARDIAN (Apr. 29, 2026), https://www.theguardian.com/us-news/2026/apr/29/supreme-court-louisiana-congressional-map-case-ruling; Anna Commander, *Ketanji Brown Jackson warns Supreme Court orders have spawned chaos*, NEWSWEEK (May 4, 2026), https://www.msn.com/en-us/politics/government/ketanji-brown-jackson-warns-supreme-court-orders-have-spawned-chaos/ar-AA22ol3l?ocid=BingNewsVerp.