**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PHILLIP CALLAIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana.<br><br>Defendant. | Civil Action: 3:24-cv-00122<br><br>Hon. Carl E. Stewart<br>Hon. Robert R. Summerhays<br>Hon. David C. Joseph |

# THE STATE'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

BACKGROUND ..... 2

ARGUMENT ..... 6

I. PLAINTIFFS PLAINLY ARE NOT PREVAILING PARTIES. ..... 6

II. PLAINTIFFS CANNOT OBTAIN FEES AGAINST THE STATE. ..... 10

III. ANY FEE AWARD MUST BE REDUCED. ..... 14

A. The State Is Not Responsible for Costs Attributable to the *Robinson* and *Galmon* Intervenors ..... 14

B. Plaintiffs' Requested Fee Enhancement Is Meritless. ..... 15

C. Plaintiffs' Hours, Rates, and Costs Require Substantial Reduction. ..... 18

1. Plaintiffs' claimed hourly rates are excessive ..... 18

2. Plaintiffs cannot recover fees for non-compensable categories. ..... 19

CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Action on Smoking & Health v. Civil Aeronautics Bd.*,
724 F.2d 211 (D.C. Cir. 1984) ....... 11

*Ardoin v. Robinson*,
142 S. Ct. 2892 (2022) ....... 3

*Ardoin v. Robinson*,
143 S. Ct. 2654 (2023) ....... 3

*Assoc'd Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*,
919 F.2d 374 (5th Cir. 1990) ....... 19

*Avoyelles Sportsmen's League v. Marsh*,
786 F.2d 631 (5th Cir. 1986) ....... 13, 14

*In re Babcock & Wilcox Co.*,
526 F.3d 824 (5th Cir. 2008) ....... 20

*Bigby v. City of Chi.*,
927 F.2d 1426 (7th Cir. 1991) ....... 11

*Chastang v. Flynn & Emrich Co.*,
541 F.2d 1040 (4th Cir. 1976) ....... 12

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ....... 16

*Combs v. City of Huntington*,
829 F.3d 388 (5th Cir. 2016) ....... 17

*Cox v. Mignon Faget, Ltd.*,
No. CV 24-1068, 2025 WL 2022669 (E.D. La. July 18, 2025) ....... 21

*Defrese-Reese v. Healthy Minds, Inc.*,
No. 3:18-cv-1134, 2020 WL 5437743 (W.D. La. Sept. 10, 2020) ....... 18

*DeLeon v. Abbott*,
687 F. App'x 340 (5th Cir. 2017) ....... 21, 22

*Duval v. Physicians Med. Ctr., LLC*,
No. CV 22-2286, 2023 WL 9197748 (E.D. La. Nov. 7, 2023) ....... 21

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ....................7

*Gagnon v. United Technisource, Inc.*,
607 F.3d 1036 (5th Cir. 2010) ....................22

*Gisbrecht v. Barnhart*,
535 U.S. 789 (2002)....................15

*Guidry v. Comm'r of Soc. Sec.*,
No. 6:23-CV-01742, 2025 WL 2715485 (W.D. La. Sept. 23, 2025) ....................19

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)....................11, 19

*Hopwood v. Texas*,
236 F.3d 256 (5th Cir. 2000) .................... *passim*

*Indep. Found. of Flight Attendants v. Zipes*,
491 U.S. 754 (1989)....................13, 14

*James Clement v. Lumen Health Care Benefit Plan*,
No. 3:24-CV-00104, 2026 WL 1992328 (W.D. La. Jan. 28, 2026) ....................18

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................15, 16, 20

*La. Power & Light Co. v. Kellstrom*,
50 F.3d 319 (5th Cir. 1995) ....................21, 22

*Lackey v. Stinnie*,
604 U.S. 192 (2025).................... *passim*

*In re Landry*,
83 F.4th 300 (5th Cir. 2023) ....................3

*Leroy v. City of Houston*,
831 F.2d 576 (5th Cir. 1987) ....................20

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026).................... *passim*

*Louisiana v. Callais*,
146 S. Ct. 58 (2025)....................5

*Louisiana v. Callais*,
No. 24-109 (U.S. Feb. 20, 2025) .......... 4, 10

*Luv N' Care, Ltd v. Groupo Rimar*,
No. 14-cv-2491, 2015 WL 9463189 (W.D. La. Dec. 28, 2015),
*vacated and remanded on other grounds*, 844 F.3d 442 (5th Cir. 2016) .......... 18

*McClain v. Lufkin Indus., Inc.*,
649 F.3d 374 (5th Cir. 2011) .......... 18, 19

*Nash v. Chandler*,
848 F.2d 567 (5th Cir. 1988) .......... 12, 13

*Neyland v. Hutson*,
No. CV 23-1773, 2026 WL 1408454 (E.D. La. May 20, 2026) .......... 19

*Nkenglefac v. Garland*,
64 F.4th 251 (5th Cir. 2023) .......... 19

*Pelt v. U.S. Bank Tr. Nat'l Ass'n*,
259 F. Supp. 2d 541 (N.D. Tex. 2003) .......... 22

*Penn. v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) .......... 15, 16

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) .......... 15, 16, 17, 20

*Peter v. Jax*,
187 F.3d 829 (8th Cir. 1999) .......... 12

*Reeves v. Harrell*,
791 F.2d 1481 (11th Cir. 1986) .......... 11

*Robinson v. Ardoin*,
37 F.4th 208 (5th Cir. 2022) .......... 2

*Robinson v. Ardoin*,
605 F. Supp. 3d 759 (M.D. La. 2022),
*vacated and remanded,* 86 F.4th 574 (5th Cir. 2023) .......... 2

*Robinson v. Ardoin*,
731 F. Supp. 3d 711 (M.D. La. 2024) .......... 8

*Robinson v. Ardoin*,
86 F.4th 574 (5th Cir. 2023) .......... 3

*Robinson v. Ardoin*,
No. 22-cv-211 (M.D. La.) ........................................ *passim*

*Binta B. ex rel. S.A. v. Gordon*,
710 F.3d 608 (6th Cir. 2013) ........................................ 14

*Sanchez v. City of Austin*,
774 F.3d 873 (5th Cir. 2014) ........................................ 11

*Sossamon v. Texas*,
560 F.3d 316 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011) ........................................ 14

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*,
713 F.2d 128 (5th Cir. 1983) ........................................ 21

*UFO Chuting of Haw., Inc. v. Smith*,
508 F.3d 1189 (9th Cir. 2007) ........................................ 7

*Veasey v. Abbott*,
13 F.4th 362 (5th Cir. 2021) ........................................ 9

*Veasey v. Abbott*,
No. 2:13-cv-193, 2020 WL 9888360 (S.D. Tex. May 27, 2020),
*aff'd*, 13 F.4th 362 (5th Cir. 2021) ........................................ 9, 10, 17

*Watkins v. Fordice*,
7 F.3d 453 (5th Cir. 1993) ........................................ 19, 20

*Williams v. D'Argent Franchising, L.L.C.*,
No. 1:20-CV-01501, 2024 WL 993882 (W.D. La. Mar. 7, 2024) ........................................ 18

**Statutes**

42 U.S.C. § 1988 ........................................ 6, 8, 11, 12

**Other Authorities**

*Board Member Eddie Greim Testifies at Senate Judiciary on* Callais *Decision*,
Ctr. for Election Confidence (May 19, 2026),
perma.cc/XS56-LZU9 ........................................ 17

*GGG's Greim Reargues Louisiana Voter District Case in U.S. Supreme Court*,
Graves Garrett Greim (Oct. 20, 2025), perma.cc/K6B6-TR9H ........................................ 17

Fed. R. Civ. P. 60 ........................................ 6

*Redistricting on Trial: Inside* Louisiana v. Callais,
Univ. of Va. Sch. of Law (Feb. 26, 2026),
www.law.virginia.edu/event/redistricting-trial-inside-louisiana-v-callais ............................17

## INTRODUCTION

In the fall of 2025, Plaintiffs asked the State to lead oral (re)argument in the United States Supreme Court against S.B. 8's District 6. The State agreed, asserting the position it staked out in the preexisting *Robinson* litigation and had briefed for reargument in this case before the Supreme Court: that the Constitution prevents federal courts from forcing the State to draw congressional district lines based on race. In April 2026, the Supreme Court issued its decision, *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), agreeing with the State that what happened in the *Robinson* litigation was blatantly illegal—and that the State never should have been forced to adopt the S.B. 8 map. Mere weeks after that ruling, the Louisiana Legislature and the Governor eliminated the S.B. 8 map, adopting Act 2 in its stead. Plaintiffs now concede that Act 2 "fully cures the racial gerrymander in SB8's District 6." ECF 322-1 at 29.

That history points up the bizarre nature of Plaintiffs' demand that the State now pay them some $2.6 million in attorney's fees. They cannot obtain fees because they are not prevailing parties under *Lackey v. Stinnie*, 604 U.S. 192 (2025): There is no judicial order granting them "enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. The only relief this Court entered is an injunction against elections under S.B. 8, which never took effect and never will take effect because S.B. 8 no longer exists. That alone plainly forecloses Plaintiffs' fee request.

Plaintiffs certainly also could not claim fees *from the State*. If Plaintiffs prevailed, then so, too, did the State: This years-long fight began with the State's complaint in *Robinson* that it could not constitutionally be forced to racially discriminate against its citizens, and it ended with the Supreme Court in this case agreeing with the State's position. It is hornbook law that a plaintiff cannot recover fees from an aligned party. More, the deeply unusual circumstances of this case confirm not only that the State cannot be saddled with fees, but also that the *Robinson* and *Galmon*

Intervenors—who precipitated this lawsuit—alone must bear any fees and costs. When the Supreme Court issued its reargument order in August 2025, it was apparent that the order reset the parties to their *Robinson* positions and that the validity of *Robinson* itself would be litigated in this case. *See Callais*, 146 S. Ct. at 1161 (concluding that, "at every step of the *Gingles* framework, the *Robinson* plaintiffs failed to prove their § 2 case"). Accordingly, Louisiana's victory and the fees issue in this case properly must be assessed in that light—and that forecloses any award of fees against the State.[1]

Setting those core issues aside, Plaintiffs' numbers are wildly overstated and must be reduced for various reasons explained below. In short, the fees motion is meritless. The Court should deny it out of hand.

## BACKGROUND

From 2011 to 2020, Louisiana had six congressional voting districts—five Republican-leaning and one Democratic-leaning district. After the 2020 Census (which was delayed due to the COVID-19 pandemic), Louisiana again enacted a 5-1 map. The *Robinson* and *Galmon* Plaintiffs sued the-then Secretary of State in the Middle District of Louisiana, claiming that Louisiana violated Section 2 of the Voting Rights Act by failing to draw a second majority-black district violated; those cases were consolidated. *Robinson v. Ardoin*, No. 22-cv-211 (M.D. La.). After the State intervened, the Middle District held that the 5-1 map likely violated § 2 and preliminarily enjoined Defendants from using that map. *Robinson v. Ardoin*, 605 F. Supp. 3d 759, 766 (M.D. La. 2022), *vacated and remanded,* 86 F.4th 574 (5th Cir. 2023).

The State appealed, and the Fifth Circuit denied a stay pending appeal. *Robinson v. Ardoin*, 37 F.4th 208, 222 (5th Cir. 2022) ("[T]he defendants have not shown they are likely to succeed on

---

[1] For ease of reading, this brief refers to the State and the Secretary of State collectively as "the State" unless otherwise indicated.

the merits of their appeal."). The State then sought a stay of the preliminary injunction from the Supreme Court, continuing to argue (among other things) that "[t]he district court improperly ordered a racial gerrymander, which was wrong and worthy of certiorari before judgment." Emergency Appl. & Pet. Writ Cert. Before J. 16, No. 21A814 (U.S. June 17, 2022). The Supreme Court granted a stay and cert before judgment and held *Robinson* in abeyance pending resolution of a similar redistricting case arising out of Alabama. *Ardoin v. Robinson*, 142 S. Ct. 2892 (2022). The Supreme Court ultimately did not answer the State's racial-gerrymander question in *Robinson* because the Court dismissed the petition as improvidently granted to "allow the matter to proceed before … the Fifth Circuit for review in the ordinary course and in advance of the 2024 congressional elections in Louisiana." *Ardoin v. Robinson*, 143 S. Ct. 2654 (2023).

On remand, the Fifth Circuit affirmed that the *Robinson* and *Galmon* "Plaintiffs were likely to succeed on their claim that there was a violation of Section 2 of the Voting Rights Act" and vacated the preliminary injunction to allow the case to "proceed" in the district court in the ordinary course. *Robinson v. Ardoin*, 86 F.4th 574, 583 (5th Cir. 2023). On remand, the district court "expedited" proceedings "to determine a court-ordered redistricting map." *In re Landry*, 83 F.4th 300, 304 (5th Cir. 2023). The State sought, and the Fifth Circuit partially granted, mandamus relief to "afford[] the Louisiana legislature the first opportunity to [draw a new map]." *Id.* at 307. As the Supreme Court later recounted, the Louisiana Legislature elected to draw a second district ("District 6") in S.B. 8 with "a black voting-age population over 50% because it knew that if it failed to do so, the *Robinson* court would very likely find its map unlawful and order the use of something like the *Robinson* plaintiffs' illustrative maps, which would have imperiled one of the influential incumbents the legislature sought to protect." *Callais*, 146 S. Ct. at 1161; *accord id.* at 1143 ("Louisiana adopted the challenged map and created the second majority-black district

because it quite reasonably anticipated that, if it did not do so, the Middle District of Louisiana would order the use of a map with a differently configured second majority-black district that would effectively oust an incumbent whom the legislature sought to protect.”).

Plaintiffs here then sued the State, claiming District 6 was a racial gerrymander in violation of their Fourteenth Amendment rights. ECF 1. Inexplicably, however, Plaintiffs did not press the one issue that the Supreme Court repeatedly had “left open” and that the State had pressed in *Robinson*: that the VRA, properly interpreted, could not force a state to violate the Fourteenth Amendment by intentionally using race to draw district lines. *Callais*, 146 S. Ct. at 1147–48. Instead, Plaintiffs elected to litigate this case before this Court—and at the jurisdictional stage in the Supreme Court—on the longstanding assumption that compliance with the VRA is a compelling interest for purposes of the strict scrutiny analysis under the Fourteenth Amendment. *See* La. Reply Br. 14–15, *Louisiana v. Callais*, No. 24-109 (U.S. Feb. 20, 2025) (collecting citations). As an intervenor, the State thus defended District 6 because, on that assumption (and given the unique circumstances giving rise to District 6), there was a serious argument that the Supreme Court would have to uphold District 6 under its then-current precedents. This Court likewise “assume[d], without deciding, that compliance with Section 2 was a compelling interest for the State to attempt to create a second majority-Black district in the present case.” ECF 198 at 47.

In their original appellee brief in the Supreme Court, however, Plaintiffs argued for the first time that compliance with the VRA was not a compelling interest for purposes of strict scrutiny. And at oral argument, Justice Kavanaugh and the State’s counsel specifically discussed the oddity of Plaintiffs’ failure to preserve this issue—particularly since the State had long taken that position,

including both in *Robinson* and in separate litigation involving the State's state legislative maps. Tr. of Oral Arg. 10–12 (Mar. 24, 2025).

That discussion resulted in a reargument and rebriefing order from the Supreme Court on the very question the State had presented in *Robinson*—"[w]hether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U.S. Constitution." *Louisiana v. Callais*, 146 S. Ct. 58 (2025). And that order reset the parties to their original positions from *Robinson* as if Plaintiffs had preserved the compelling-interest issue all along: Arguing first on the appellee side in the Supreme Court, the State vehemently opposed District 6 as unconstitutional, while the *Robinson* Plaintiffs opened the argument defending District 6 as constitutional.

The Supreme Court ultimately vindicated the State's position: "[A]t every step of the *Gingles* framework, the *Robinson* plaintiffs failed to prove their § 2 case." *Callais*, 146 S. Ct. at 1161. "[B]ecause the Voting Rights Act did not require Louisiana to create an additional majority-minority district, no compelling interest justified the State's use of race in creating [District 6]. That map is an unconstitutional gerrymander, and its use would violate the plaintiffs' constitutional rights." *Id.* at 1162.

In the wake of the Supreme Court's decision, the Secretary of State certified an election emergency, and the Governor suspended the closed congressional primary that was about to start. *See* ECF 271-1 (Secretary's Certification); ECF 271-2 (Governor's Executive Order). The Legislature then passed Act 7 rescheduling that primary as an open primary in November 2026 and Act 2 enacting a new map. ECF 283-1 (Act 7); ECF 298-1 (Act 2). Plaintiffs have now conceded that Act 2 "cures Plaintiffs' racial gerrymandering injury in SB8's District 6," ECF 322-1 at 12. And although they initially suggested they might try to transform this case into a new

challenge against a different district in Act 2, *see* ECF 300 at 2 ("Less certain is whether [Act 2] has avoided adopting racial line-drawing around District 2."), Plaintiffs have now waived any such effort. In their view, they have "prevailed" and "achieved complete success on all claims." ECF 322-1 at 1, 13; *id.* at 20 ("This case was vigorously and successfully litigated."); *id.* at 21 ("Plaintiffs' victory"); *id.* at 24 ("Plaintiffs' success in this case"); *id.* at 29 ("Plaintiffs' successful action"); *id.* at 33 ("Plaintiffs' victory in the case"); *id.* at 34 ("the success of Plaintiffs' efforts").

The *Robinson* and *Galmon* Plaintiffs have moved to dismiss this case as moot, and the State agrees that dismissal is warranted. ECF 313 (motion); ECF 313-1 (memo); ECF 328 (State's response). The State also has moved under Rule 60(b)(5) to vacate the injunction against S.B. 8 given that S.B. 8 no longer exists. ECF 329 (motion); ECF 329-1 (memo). The Court will hear those motions in October. ECF 334. In the meantime, Plaintiffs have moved for attorney's fees and costs, citing their alleged "complete success on all claims." ECF 322-1 at 1, 13. The Court may wish to schedule the pending fees motion for argument at the same October hearing scheduled for the other pending motions.

## ARGUMENT

### I. PLAINTIFFS PLAINLY ARE NOT PREVAILING PARTIES.

Plaintiffs seek a hefty sum of attorney's fees and other expenses under 42 U.S.C. § 1988. But Plaintiffs are not "prevailing part[ies]" as required by § 1988(b). "[A] plaintiff 'prevails' when a court conclusively resolves his claim by granting enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. "Critically," the Supreme Court has emphasized, "both the change in relationship and its permanence must result from a judicial order." *Id.* Just as importantly, the Supreme Court has long "rejected the 'catalyst theory'—the theory that a plaintiff may receive attorney's fees under § 1988(b) when he 'achieves the desired result because the lawsuit brought about a voluntary change in the defendant's

conduct.'" *Id.* at 202 (citation omitted). That is because "voluntary actions" lack "'the necessary judicial *imprimatur*.'" *Id.* at 203–04 (citation omitted). Instead, the enduring relief "must be 'judicially sanctioned.'" *Id.* at 203 (citation omitted).

*Lackey* squarely forecloses Plaintiffs' cursory claim of prevailing-party status. That is because there is no enduring judicial relief that materially alters the relationship between the parties. The Court's existing injunction against elections under S.B. 8 (which the State has moved to vacate) has no effect whatsoever because S.B. 8 no longer exists. *See, e.g.*, *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 837 (5th Cir. 2023) ("Ordinarily, a permanent injunction relating to a challenged law or regulation cannot continue after the law or regulation is removed."). The Court can (and should) vacate that injunction, and vacatur would have precisely zero effect on Plaintiffs. In fact, the injunction never provided *any relief* to Plaintiffs because the Supreme Court's May 2024 stay ensured the use of S.B. 8 in the 2024 congressional elections. *See Ardoin*, 142 S. Ct. at 2892. And now that S.B. 8 no longer exists, Act 2 is being used for the 2026 congressional elections. The injunction thus not only is not enduring—it was never effectual to begin with. *See, e.g.*, *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1197−98 (9th Cir. 2007) (holding that plaintiffs had not prevailed by obtaining permanent injunction that was quickly stayed and ultimately set aside due to intervening change in statutory law because the injunction did not produce "some action (or cessation of action) by the defendant").

The only conceivable basis for Plaintiffs' claim that they have "prevailed" and "achieved complete success on all claims," ECF 322-1 at 1, 13, is *Act 2 itself*. Indeed, Plaintiffs accidentally gave the game away twice in their fees memorandum: They say that "Act 7 [sic] cures Plaintiffs' racial gerrymandering injury in SB8's District 6," and that "the State repealed SB8 and enacted Act 7 [sic] for use in the 2026 election, which fully cures the racial gerrymander in SB8's District

6." *Id.* at 12, 29. That is fatal—because Act 2 is not "a judicial order," bears no "'judicial *imprimatur*,'" and was not "'judicially sanctioned.'" *Lackey*, 604 U.S. at 203–04, 207. Act 2 instead is a purely "voluntary action[]" by the Louisiana Legislature (and the Governor). *Id.* at 202–03 (alternation and citation omitted). And understandably so: Louisiana never wanted S.B. 8 in the first place and thus took the first available opportunity to draw Act 2. *Lackey* thus squarely forecloses Plaintiffs' reliance on the relief they obtained from Act 2.

Importantly, Plaintiffs' bank shot off Act 2 runs afoul of *Lackey* in a particularly egregious way—because *Lackey* says a plaintiff cannot claim that a lawsuit itself was "the catalyst" for "a voluntary change" in a defendant's conduct. 604 U.S. at 202 (citation omitted). Yet that is exactly Plaintiffs' claim: that, "[a]s a result" of this litigation, "the State repealed SB8 and enacted a new map that eliminated the racially gerrymandered District 6[.]" ECF 322-1 at 14. That is the long-rejected catalyst theory. And it cannot overcome the fact that Act 2 presents no "change in legal relationship [that is] judicially sanctioned and enduring." *Lackey*, 604 U.S. at 202; *see id.* at 203 ("Today, we establish that the enduring nature of the change *must itself* be judicially sanctioned." (emphasis added)).

The jurisdictional issues separately raised in the pending motions to dismiss underscore the point. *See* ECF 313; ECF 313-1; ECF 328. Act 2 is an "external event[] that moots" Plaintiffs' challenge to S.B. 8's District 6, and thus, there can be no enduring relief that could give Plaintiffs prevailing-party status. *Lackey*, 604 U.S. at 207; *see Robinson v. Ardoin*, 731 F. Supp. 3d 711, 720−21 (M.D. La. 2024) (holding that the Legislature's enactment of District 6 mooted the *Robinson* and *Galmon* Plaintiffs' claims against the old 5-1 map); *see also Lackey*, 604 U.S. at 207–08 ("Because the [plaintiffs] in the present case gained only preliminary injunctive relief

before this action became moot, they do not qualify as 'prevailing part[ies]' eligible for attorney's fees under § 1988(b).").

Plaintiffs' reliance (at 13–14) on the Fifth Circuit's pre-*Lackey* decision in *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021), is unavailing. There, the district court struck down Texas's voter ID statute and imposed an interim order—"agreed to" by Texas—which then governed elections in 2016 and 2017. *Id.* at 366; *see id.* at 365 ("Plaintiffs successfully challenged the Texas photo ID requirement before our en banc court, and used that victory to secure a court order permanently preventing its enforcement during the elections in 2016 and 2017."); *id.* at 369 ("Nor can Defendants dispute that this change benefitted Plaintiffs during the November 2016 elections, as well as additional elections in 2017."). The case was ultimately dismissed, however, because Texas passed a new law substantially mirroring the interim order. *Id.* at 367. Based solely on the effect of "the interim order alone," the Fifth Circuit determined that the plaintiffs in that case were prevailing parties. *Id.* at 368.

As an initial matter, it is doubtful that *Veasey* survives *Lackey* because the interim *Veasey* order was effectively a preliminary injunction—which *Lackey* subsequently held is insufficient to confer prevailing-party status on a plaintiff. *See Veasey*, 13 F.4th at 370–71 (relying on "preliminary injunction" caselaw to determine prevailing-party status, but describing the interim order as resting on "*actual* success on the merits"); *Lackey*, 604 U.S. at 207 ("A preliminary injunction, which temporarily preserves the parties' litigating positions based in part on a prediction of the likelihood of success on the merits, does not render a plaintiff a 'prevailing party.'"). But even if *Veasey* remained good law, the facts of this case are self-distinguishing. Unlike the interim *Veasey* order which actually governed 2016 and 2017 elections, this Court's injunction against elections under S.B. 8 never took effect, never had any effect, and—because

S.B. 8 no longer exists—will never have any effect. *Cf. Veasey*, 13 F.4th at 369 (reasoning that the interim order was "indisputably a form of judicially sanctioned relief" and "materially altered the legal relationship between the parties" "[b]ecause the order relieved Plaintiffs from the burdens of SB 14" "during the November 2016 elections, as well as additional elections in 2017"). *Veasey* this is not.

In sum, *Lackey* squarely and unambiguously forecloses Plaintiffs' claim that they are prevailing parties—and that is all this Court need hold to reject Plaintiffs' fees motion.

## II. Plaintiffs Cannot Obtain Fees Against the State.

Even if Plaintiffs were prevailing parties, they could not obtain any fees against the State. That is because the State itself is as much a prevailing party as Plaintiffs claim to be; the extraordinarily unique circumstances surrounding this case would foreclose fees against the State; if any fees award were appropriate, it must be borne solely by the *Robinson* and *Galmon* Intervenors who initiated this entire saga; and the State's status as an intervenor especially forecloses any fee award against the State.

*First*, if Plaintiffs are prevailing parties, then the State is a prevailing party, too.[2] The Supreme Court's decision in this case not only vindicated the State's long-held position from the *Robinson* litigation—it also vindicated the State's position in this case once the Supreme Court reconfigured the issues presented to raise the key issue Plaintiffs inexplicably elected not to litigate in this Court. In fact, when it was time for Plaintiffs to submit their supplemental merits brief to the Supreme Court, Plaintiffs simply parroted the State's own supplemental merits brief. Appellees' Supp. Br. 1, 2, 8, 12, 13, 19, 20, 22, 26, 29, 30, 31, 32, 33, 36, 37, 41–42, 49, *Louisiana*

[2] As explained above, the State's top-line position is that no fees or costs are warranted at all because Plaintiffs are not prevailing parties. If the Court were to disagree, however, the State reserves the right to seek (from the *Robinson* and *Galmon* Intervenors) its own fee award as a prevailing party following the Court's conclusion of this matter.

*v. Callais*, No. 24-109 (U.S. Sept. 17, 2025) (citing the State's brief). And when it was time for oral (re)argument, Plaintiffs asked the State to lead the argument time against S.B. 8's constitutionality. So, when the Supreme Court rendered its decision affirming the State's longstanding position that Louisiana cannot constitutionally be required to draw district lines based on race, it rendered the State no less a prevailing party than Plaintiffs claim to be.

It is hornbook law that a "plaintiff [is] not considered a prevailing party on an issue upon which it took the same position as the defendant." *Bigby v. City of Chi.*, 927 F.2d 1426, 1429 (7th Cir. 1991) (citing *Action on Smoking & Health v. Civil Aeronautics Bd.,* 724 F.2d 211, 216 (D.C. Cir. 1984)); *see also Reeves v. Harrell*, 791 F.2d 1481, 1483 (11th Cir. 1986) (denying a fees motion because "plaintiffs did not 'prevail' vis-a-vis the defendants"). In that circumstance, the defendant is "as much a prevailing party" as is the plaintiff. *Bigby*, 927 F.2d at 1429. That basic rule thus prevents Plaintiffs from recovering fees from the State.

*Second*, the extraordinarily unique circumstances giving rise to this case would independently foreclose an award of fees against the State. The Supreme Court and the Fifth Circuit have long held that, "[u]nder § 1988, a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Sanchez v. City of Austin*, 774 F.3d 873, 880 (5th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983)). And although the special-circumstances exception is "extremely limited," *id.* at 880 (citation omitted), this would be a textbook case for applying it if fees were otherwise available.

That is because of the virtually unprecedented position in which the State found itself in the *Robinson* and *Callais* litigation. In *Robinson*, the State vehemently disputed that it could constitutionally be required to draw a new district based on race. But, as the Supreme Court agreed, the State initially faced an impossible situation in front of the *Robinson* court. "The State never

hid the ball: It configured District 6 to achieve a black voting-age population over 50% because it knew that if it failed to do so, the *Robinson* court would very likely find its map unlawful and order the use of something like the *Robinson* plaintiffs' illustrative maps, which would have imperiled one of the influential incumbents the legislature sought to protect." *Callais*, 146 S. Ct. at 1161. That situation became doubly impossible when Plaintiffs in this case sued the State from the other direction, claiming that the State had violated the Fourteenth Amendment—the position that the State itself took in *Robinson*. The State could not win as far as the federal courts were concerned. That is why the Supreme Court thought it "understandable" that Louisiana tried to thread the needle as it did. *Id.* at 1143. In fact, Louisiana's dilemma was so unprecedented that the Supreme Court took the dramatic step of not only ordering rebriefing and reargument but also overhauling its Section 2 jurisprudence.

Given these remarkable facts, it would be deeply unjust to penalize the State by assessing fees. And that is especially so given (a) the State's refusal to defend S.B. 8 on reargument in the Supreme Court and (b) the State's immediate post-*Callais* action eliminating the constitutional problem introduced by the *Robinson* court—within a month of the Supreme Court's decision, the Louisiana Legislature enacted, and the Governor signed, Act 2. That voluntary and expeditious response to the change in the Supreme Court jurisprudence underscores that assessing fees against the State would be inappropriate. *See, e.g.*, *Peter v. Jax*, 187 F.3d 829, 837 (8th Cir. 1999) (citing *Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976)).

*Third*, and as a corollary, if any fees award were appropriate, it must be borne solely by the *Robinson* and *Galmon* Intervenors. The Fifth Circuit has long held that § 1988 awards must be tailored to reflect the various parties' contributions to the cost of litigation. *See Nash v. Chandler*, 848 F.2d 567, 574 (5th Cir. 1988) (remanding for "appropriate division of the fees, based upon the

extent to which the presence of the State of Texas in this case increased the costs of litigation"); *see Hopwood v. Texas*, 236 F.3d 256, 280 (5th Cir. 2000). That rule is dispositive in an exceedingly unique case like this—because this case would not exist but for the *Robinson* and *Galmon* Intervenors who prosecuted the *Robinson* lawsuit in an avowed effort to force the State into drawing a map that the Supreme Court has now held was unconstitutional. Indeed, they then intervened in this case for the express purpose of preserving the result of their *Robinson* suit. If any fees were warranted in this suit, therefore, the *Robinson* and *Galmon* Intervenors are the sole cause of this suit—and thus properly may be required to bear any related fees and costs alone.

*Fourth*, the State and the Secretary of State are, for practical purposes, "blameless" bystanders in the dispute between Plaintiffs and the *Robinson* and *Galmon* Intervenors over the makeup of Louisiana's congressional map—ping-ponged back and forth between the Middle District and this Court. *Indep. Found. of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989). The State is an actual intervenor, while the Secretary of State is functionally an intervenor, in that dispute. And it is well established that fees are appropriate "against losing intervenors only where the intervenors' action was frivolous, unreasonable, or without foundation." *Id.* Neither the State nor the Secretary of State committed any frivolous, unreasonable, or groundless conduct in this action. As explained above, the Supreme Court itself agreed that the State's actions throughout have been "understandable" and "reasonabl[e]." *Callais*, 146 S. Ct. at 1143. That only underscores that Plaintiffs cannot recover fees against the State and the Secretary of State.

## III. ANY FEE AWARD MUST BE REDUCED.

In all events, on the numbers, Plaintiffs' fee request is wildly overinflated.

### A. The State Is Not Responsible for Costs Attributable to the *Robinson* and *Galmon* Intervenors.

At a minimum, Plaintiffs cannot recover from the State fees that are solely attributable to the *Robinson* and *Galmon* Intervenors. *See Nash*, 848 F.2d at 574; *Hopwood*, 236 F.3d at 280; *see also Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 632 (5th Cir. 1986) ("An award [against a governmental party] is not appropriate for expenses incurred … in litigating an issue … in a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties."); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 635 (6th Cir. 2013) (holding that *Zipes*, 491 U.S. 760, "clearly implies" that the cost of "plaintiffs' litigation against plaintiff-intervenors … should be borne by plaintiffs" (collecting cases)). Those fees generally fall into two buckets here.

*First*, a significant portion of Plaintiffs' cited fees and expenses were incurred solely to address the *Robinson* and *Galmon* Intervenors' actions in this case, including the *Galmon* Intervenors' appeal to the Fifth Circuit from the initial denial of their intervention. *See* Ex. 1 (cataloguing such fees and expenses). That also includes a tranche of block-billed entries that include work done by Plaintiffs' attorneys to address filings from the *Robinson* and *Galmon* Intervenors. Because those entries reflect expenses incurred by Plaintiffs due to the actions of the *Robinson* and *Galmon* Plaintiffs, those expenses may not be charged to the State. *See Marsh*, 786 F.2d at 632; *Hopwood*, 236 F.3d at 280.

*Second*, a significant portion of Plaintiffs' cited fees and expenses were incurred solely after the Supreme Court ordered reargument on August 1, 2025. Plaintiffs cannot recover any of those fees and expenses from the State. That is because the State thereafter refused to defend

S.B. 8's constitutionality on the reargument question presented—taking precisely the position that Plaintiffs subsequently adopted when citing the State's brief ad nauseum. *Cf. Marsh*, 786 F.2d at 632; *Hopwood*, 236 F.3d at 280. At that point in this lawsuit, there would be no Article III case or controversy, and this case would have ended in a brief per curiam from the Supreme Court. Except that the *Robinson* and *Galmon* Intervenors took the opposite view on the merits, thereby continuing this litigation through extensive rebriefing and reargument. *Cf., e.g.*, *Sossamon v. Texas*, 560 F.3d 316, 324 (5th Cir. 2009) ("If the controversy between Sossamon and Texas has resolved to the point that they no longer qualify as 'adverse parties with sufficient legal interests to maintain the litigation,' we are without power to entertain the case." (citation omitted)), *aff'd*, 563 U.S. 277 (2011). Because the *Robinson* and *Galmon* Intervenors unquestionably were responsible for the continuation of litigation following the August 1, 2025 reargument order, they alone must bear any fees and costs post-dating that order.

**B. Plaintiffs' Requested Fee Enhancement Is Meritless.**

Plaintiffs also cannot obtain their requested 20% fee enhancement on top of the $2,088,852.75 in attorney fees that they seek. The Supreme Court has endorsed the lodestar method, which "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *see Gisbrecht v. Barnhart,* 535 U.S. 789, 801 (2002) (describing the method as "the guiding light of [its] fee-shifting jurisprudence"). "[T]he lodestar method yields a fee that is presumptively sufficient to … induce a capable attorney to undertake the representation of a meritorious civil rights case," *Perdue*, 559 U.S. at 552, and "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Penn. v. Del. Valley Citizens' Council for Clean Air* (*Penn I*), 478 U.S. 546, 566 (1986). Accordingly, "it is unnecessary to enhance the fee for superior performance in order to serve the statutory purpose

of enabling plaintiffs to secure legal assistance." *Id.* More directly, the Supreme Court has "repeatedly" limited enhancements to "rare" and "exceptional" circumstances. *See Perdue*, 559 U.S. at 552 (quotation marks omitted). Plaintiffs come nowhere close to meeting that high bar.

Their first misstep is resting (at 20) on a Fifth Circuit case from 1974—*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)—that identified no fewer than twelve factors a court may weigh in determining a reasonable fee. That decision was explicitly criticized by the Supreme Court in *Perdue*, 559 U.S. at 551 (describing *Johnson* as "a series of sometimes subjective factors" that "gave very little actual guidance to district courts" and "produced disparate results" (citation omitted)). Instead, the lodestar method now fills that role. That method "is flexible enough to account for great variation in the nature of the work performed in, and the challenges presented by, different cases," including the "novelty and complexity of the issues," the "special skill and experience of counsel," and "most other problems posed by the litigation." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 at 734 (1987) (*Penn II*) (O'Connor, J., concurring). Because "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee … an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 553 (quoting *Penn II*, 483 U.S. at 726−27).

Plaintiffs' error is accentuated by their double-counting. *Johnson* urged courts to consider such factors as complexity, novelty, expedited proceedings, specialized skill, time pressure, and results obtained. *Johnson*, 488 F.2d at 717−20. Plaintiffs cite those factors to justify their lodestar rates and also invoke those *same factors* to support enhancement. The Supreme Court has expressly forbidden such "double counting." *City of Burlington v. Dague*, 505 U.S. 557, 562−63 (1992) (denying enhancement for "the difficulty of establishing" the merits of a claim because that

factor was already "reflected in the lodestar"). Since these factors are already reflected in the premium rates, they cannot also support an enhancement.

The other factors Plaintiffs invoke (at 29), such as purported "undesirability" of this litigation and preclusion of other employment, do not warrant enhancement. Political controversy is common in high-profile civil-rights litigation. And preclusion of other employment reflects the firm's choice to maintain a nimble team, not inadequate lodestar compensation. Illustrating that Plaintiffs' invocation of these factors is pure puffery, Plaintiffs' counsel's public advertising about this case suggests that the case may be their favorite, and most-desirable, case ever. *See, e.g.*, *Redistricting on Trial: Inside* Louisiana v. Callais, Univ. of Va. Sch. of L. (Feb. 26, 2026), www.law.virginia.edu/event/redistricting-trial-inside-louisiana-v-callais (promising "an insider's perspective on Supreme Court advocacy" from Plaintiffs' counsel); *GGG's Greim Reargues Louisiana Voter District Case in U.S. Supreme Court*, Graves Garrett Greim (Oct. 20, 2025), perma.cc/K6B6-TR9H (directing readers to Plaintiffs' counsel's "extensive coverage in national media," including that he has been "quoted in the New York Times, Wall Street Journal, Law360 and more"); *Board Member Eddie Greim Testifies at Senate Judiciary on* Callais *Decision*, Ctr. for Election Confidence (May 19, 2026), perma.cc/XS56-LZU9 (claiming that Plaintiffs' counsel "was instrumental in securing the Supreme Court ruling that clarified the constitutional limits on race-based redistricting").

Nor is the fact that courts have made high-dollar fee awards in other redistricting cases compelling. Those cases involved a greater number of distinct parties with their own law firms and attorneys, lasted significantly longer, took place in higher-rate jurisdictions, or all of the above. And even then, none of those cases granted a fee enhancement. In fact, in *Veasey v. Abbott*, the district court cut the requested relief by over twenty-three percent. No. 2:13-cv-193, 2020 WL

9888360 (S.D. Tex. May 27, 2020), *aff'd*, 13 F.4th 362 (5th Cir. 2021). Plaintiffs have not demonstrated that this is one of the "rare" and "exceptional" circumstances in which enhancement is proper. *Perdue*, 559 U.S. at 553 (quotation marks omitted); *Combs v. City of Huntington*, 829 F.3d 388, 395 (5th Cir. 2016) ("In light of the 'strong presumption' that the lodestar represents a sufficient fee, enhancements must necessarily be rare."). If anything, the extraordinarily unique facts of this case warrants reducing (if not denying) Plaintiffs' request, not enhancing it.

**C. Plaintiffs' Hours, Rates, and Costs Require Substantial Reduction.**

**1. Plaintiffs' claimed hourly rates are excessive.**

Turning to the numbers, Plaintiffs' rates should be measured against those commonly charged in the Western District of Louisiana: "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market." *Hopwood*, 236 F.3d at 279. Recent cases in this district indicate that fee awards in the $300−400/hour range are typical. *See, e.g.*, *James Clement v. Lumen Health Care Benefit Plan*, No. 3:24-CV-00104, 2026 WL 1992328, at *3 (W.D. La. Jan. 28, 2026) ("$300.00 to $400.00 per hour is a reasonable range for attorney fees in the Monroe area"); *Williams v. D'Argent Franchising, L.L.C.*, No. 1:20-CV-01501, 2024 WL 993882, at *4 (W.D. La. Mar. 7, 2024) (setting $350/hour rate); *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 3:18-1134, 2020 WL 5437743, at *4 (W.D. La. Sept. 10, 2020) ($325).

It is only in "the unusual cases where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff [that] the rates charged by that firm are the starting point for the lodestar calculation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir. 2011); *cf. Luv N' Care, Ltd v. Groupo Rimar*, No. CV 14-2491, 2015 WL 9463189, at *9 (W.D. La. Dec. 28, 2015) ("Although it might have been reasonable for Plaintiffs to hire D.C. counsel, Plaintiffs have failed to prove that it was necessary, as *McClain* requires." (citation omitted)), *vacated & remanded on other grounds*, 844 F.3d 442 (5th Cir. 2016).

Here, Plaintiffs have not shown that it was *necessary* to hire out-of-district counsel. They argue that their local counsel, Mr. Hurd, could not litigate the case on his own. But they make no effort to show that no other firm in the Western District of Louisiana could have assisted or that they even asked any Western District firms before looking out of district and, in fact, out of state. That other parties may have retained out-of-district counsel is simply not the "abundant and uncontradicted evidence prov[ing] the necessity" of doing so in *this case* that the Fifth Circuit requires. *McClain*, 649 F.3d at 382.

In line with this Court's precedents, therefore, the relevant rates should be capped at $350/partners (and $200/associates), as well as $100/hour for paralegals. *See, e.g.*, *Guidry v. Comm'r of Soc. Sec.*, No. 6:23-CV-01742, 2025 WL 2715485, at *2 (W.D. La. Sept. 23, 2025) ("The Fifth Circuit has affirmed an hourly paralegal rate of $100.00." (citing *Nkenglefac v. Garland*, 64 F.4th 251, 255 (5th Cir. 2023))). Plaintiffs' claimed rates should be reduced accordingly.

**2. Plaintiffs cannot recover fees for non-compensable categories.**

Not only are Plaintiffs' rates too high for this district, many of their entries also reflect time not "reasonably expended *on th*[*is*] *litigation*." *Hensley*, 461 U.S. at 433 (emphasis added). "Only work of a legal nature is compensable." *Neyland v. Hutson*, No. CV 23-1773, 2026 WL 1408454, at *2 (E.D. La. May 20, 2026). Accordingly, Plaintiffs' entries in the following categories, specifically detailed in Exhibit 1, should be excluded.

**a. Time spent on media and public-relations events should be excluded**. The Fifth Circuit is "chary about granting requests for media fees," *Hopwood*, 236 F.3d at 280, and has consistently affirmed exclusions of time spent on activities like press conferences and other public messaging where the applicant failed to show the work "contributed, directly and substantially, to the attainment of [the party's] litigation goals," *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir.

1993); *see Assoc'd Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (affirming discount for time spent preparing press releases). Plaintiffs are not entitled to compensation for their attorneys' time spent on media and public-relations events.

**b. Time spent on legislative and political-strategy events should be excluded**. Pre-litigation lobbying and other such political efforts are an "optional remedy" pursued through the political process. *Watkins*, 7 F.3d at 457–58. The Fifth Circuit requires that any administrative or legislative activity be "tied both qualitatively and timely to the lawsuit" to qualify as work performed "on the litigation." *Leroy v. City of Houston*, 831 F.2d 576, 582 (5th Cir. 1987). Plaintiffs fail to make this showing and so are not entitled to compensation for their attorneys' time spent on legislative and political-strategy events.

**c. Time spent on clerical work should be excluded or reduced**. Such work must be excluded or reduced if billed at attorney or paralegal rates. As the Fifth Circuit held in *Johnson*, non-legal work such as filing, copying, calendaring, and scheduling "may command a lesser rate" and "[i]ts dollar value is not enhanced just because a lawyer does it." 488 F.2d at 717. Plaintiffs are not entitled to compensation from Defendants at attorney rates for time spent on clerical work.

**d. Time spent on business and client development should be excluded**. Time on these activities is likewise non-compensable because it would not be chargeable to a private client. See *Perdue*, 559 U.S. at 551 (lodestar method "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case"); *see Hopwood*, 999 F. Supp. at 914–16 & n.9 (excluding fees for items such as "fundraising, publicity, [and] efforts to obtain additional counsel"). Plaintiffs are not entitled to compensation for business and client development.

**e. Travel time should be reduced**. Plaintiffs seek to recover significant fees for travel time, not surprising given their choice of out-of-district counsel nearly 600 miles away. Such time should be reduced by at least half per Fifth Circuit precedent. *See In re Babcock & Wilcox Co.*, 526 F.3d 824, 828 (5th Cir. 2008) (affirming 50% reduction in fees for travel time and holding that "it is not an abuse of discretion to discount non-working (and even working) travel time"); *Cox v. Mignon Faget, Ltd.*, No. CV 24-1068, 2025 WL 2022669, at *7 (E.D. La. July 18, 2025) ("The practice in the Fifth Circuit is that travel time is often reduced by 50% of the attorney's rate absent evidence that any legal work was accomplished during travel time.") (citation omitted). The Court should reduce Plaintiffs' attorneys' travel time—whether working or not—by at least half.

**f. Block-billing should be reduced**. A large portion of Plaintiffs' time entries are block-billed, meaning that they reflect work on multiple tasks. The Fifth Circuit disfavors block-billing because it makes it difficult for courts to assess "whether *the particular hours claimed* were reasonably expended." *DeLeon v. Abbott*, 687 F. App'x 340, 346 (5th Cir. 2017) (Elrod, J., concurring) (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995)); *id.* at 346 n.4 ("[L]itigants . . . will have no cause to complain if a district court reduces the amount requested [because it is block-billed]."); *Duval v. Physicians Med. Ctr., LLC*, No. CV 22-2286, 2023 WL 9197748, at *6 (E.D. La. Nov. 7, 2023) ("[T]he method most often used to compensate for block billing is a flat reduction of a specific percentage from the award."). The Court thus should significantly reduce Plaintiffs' entries that are block-billed.

**g. Plaintiffs' claimed expenses should be excluded.** Plaintiffs seek a significant sum in expenses, which "are taxable as costs only if 'necessarily obtained for use in the case.'" *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983) (citation omitted)). Their expenses incurred because of the *Robinson* and *Galmon* Intervenors' actions and

after the Supreme Court ordered supplemental briefing must be excluded for the same reasons explained above as to their fees. *See* Ex. 2 (detailing such alleged expenses).

Moreover, Plaintiffs mostly have provided few to no receipts, invoices, or other documentation for their claimed costs. Without such documentation, the State and the Court cannot determine the necessity of those costs. Put otherwise, Plaintiffs have failed to "produce documentation that is 'sufficient for the court to verify that the applicant has met its burden of establishing an entitlement to a specific award.'" *DeLeon*, 687 F. App'x at 346 n.4 (quoting *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010)); *accord La. Power & Light Co.*, 50 F.3d at 325 (supporting documentation must be "adequate to determine reasonable hours"); *Pelt v. U.S. Bank Tr. Nat'l Ass'n*, 259 F. Supp. 2d 541, 543 (N.D. Tex. 2003) ("[T]he applicant must provide the court with sufficient documentation that will allow it to determine the reasonableness and necessity of the fees sought.") Supporting documentation is particularly warranted with respect to what appear to be certain overly luxurious travel-related expenses, such as multiple flights for over a thousand dollars and hotel stays for over $500 per night. *See* Ex. 2. Plaintiffs have not justified those costs or proven that they are reasonable or necessary. Those costs should be excluded or reduced.

**h. Plaintiffs' fees on fees should be excluded.** Plaintiffs also include time spent preparing their fee application. The Court should reject that request out of hand. But, even if Plaintiffs were to recover only a portion of the fees they request, then fees on fees should be reduced accordingly. *See La. Power & Light Co.*, 50 F.3d at 336 ("Refusing to tax fees and costs" is "well within the district court's proper exercise of its discretion" when the plaintiff "recover[s] only part of the costs and fees it request[s]").

## CONCLUSION

For these reasons, the Court should summarily deny the fees motion. Alternatively, the Court should reduce and apportion any award as detailed above.

Dated August 17, 2026

Respectfully submitted,

NANCY LANDRY
Louisiana Secretary of State

*/s/ Jennifer Bollinger*
JENNIFER BOLLINGER
La. Bar Roll No. 32349
Executive Counsel
Secretary of State Nancy Landry
8585 Archives Ave.
Baton Rouge, LA 70809
Telephone: (225) 362-5101
Jennifer.bollinger@sos.la.gov

JOHN C. WALSH
Louisiana Bar Roll No. 24903
SHOWS, CALI & WALSH, L.L.P.
628 St. Louis St.
P.O. Box 4225
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561
john@scwllp.com

*Counsel for the Secretary of State*

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Morgan Brungard*
MORGAN BRUNGARD (LA 40298)
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 324-9866
BrungardM@ag.louisiana.gov

*Counsel for the State of Louisiana*