IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS, et al., | ) | |
| | ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | District Judge David C. Joseph |
| | ) | Circuit Judge Carl E. Stewart |
| NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, et al., | ) | District Judge Robert R. Summerhays |
| | ) | Magistrate Judge Kayla D. McClusky |
| Defendants. | ) | |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR FEES AND COSTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. Plaintiffs Are the Prevailing Parties........ 1

II. The State Is Responsible for Fees........ 4

III. The Requested Fee Award Is Reasonable........ 10

A. The State is responsible for fees incurred responding to Intervenors........ 10

B. The Court should not reduce attorneys' reasonable hours........ 13

C. Attorneys' rates are reasonable........ 17

D. The fee enhancement is justified........ 20

CONCLUSION........ 20

CERTIFICATE OF SERVICE ........ 21

## TABLE OF AUTHORITIES

**CASES** **Pages**

*Action on Smoking & Health v. C.A.B.*,
724 F.2d 211 (D.C. Cir. 1984) ....... 6

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elecs.*,
522 F.3d 182 (2d Cir. 2008) ....... 19

*Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*,
919 F.2d 374 (5th Cir. 1990) ....... 16

*Avoyelles Sportsmen's League v. Marsh*,
786 F.2d 631 (5th Cir. 1986) ....... 6, 13

*Bigby v. City of Chicago*,
927 F.2d 1426 (7th Cir. 1991) ....... 6

*Black v. SettlePou, P.C.*,
732 F.3d 492 (5th Cir. 2013) ....... 20

*Blum v. Stenson*,
465 U.S. 886 (1984) ....... 17

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ....... 1, 3, 7

*Casey v. City of Cabool, Mo.*,
12 F.3d 799 (8th Cir. 1993) ....... 18

*Chrapliwy v. Uniroyal, Inc.*,
670 F.2d 760 (7th Cir. 1982) ....... 18, 19

*Combs v. City of Huntington, Tex.*,
829 F.3d 388 (5th Cir. 2016) ....... 20

*Cruz v. Hauck*,
762 F.2d 1230 (5th Cir. 1985) ....... 16

*Defrese-Reese v. Healthy Minds, Inc.*,
No. CV 3:18-1134, 2020 WL 5437743 (W.D. La. Sept. 10, 2020) ....... 17

*DeLeon v. Abbott*,
687 F. App'x 340 (5th Cir. Apr. 18, 2017) ....... 13, 14

*Donnell v. United States*,
682 F.2d 240 (D.C. Cir. 1982) ... 18

*Familias Unidas v. Briscoe*,
619 F.2d 391 (5th Cir. 1980) ... 12

*Farrar v. Hobby*,
506 U.S. 103 (1992) ... 1, 2, 5, 9

*Franciscan All., Inc. v. Becerra*,
681 F. Supp. 3d 631 (N.D. Tex. 2023) ... 11, 12, 16, 17, 18, 19

*Freedom from Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ... 4

*Gagnon v. United Technisource, Inc.*,
607 F.3d 1036 (5th Cir. 2010) ... 16

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ... 18

*Grisham v. City of Fort Worth, Tex.*,
837 F.3d 564 (5th Cir. 2016) ... 9

*Guidry v. Comm'r of Soc. Sec.*,
No. 6:23-CV-01742, 2025 WL 2715485 (W.D. La. Sept. 23, 2023) ... 17

*Hays v. Louisiana*,
936 F. Supp. 360 (W.D. La. 1996) ... 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ... 11, 13, 15, 20

*Hopwood v. Texas*,
236 F.3d 256 (5th Cir. 2000) ... 13, 18

*Hous. Chron. Pub'g Co. v. City of League City, Texas*,
488 F.3d 613 (5th Cir. 2007) ... 2, 3, 5, 9, 14

*Indep. Fed'n of Flight Attendants v. Zipes*,
491 U.S. 754 (1989) ... 5, 10, 11, 12

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005) ... 18

*Jenkins by Agyei v. Missouri*,
967 F.2d 1248 (8th Cir. 1992) ....................11, 12

*Johnson v. Georgia Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ....................17, 20

*Jordan v. Allain*,
619 F. Supp. 98 (N.D. Miss. 1985)....................11

*Kentucky v. Graham*,
473 U.S. 159 (1985)....................4, 5, 10, 11, 12

*Kirchberg v. Feenstra*,
708 F.2d 991 (5th Cir. 1983) ....................2, 3, 6, 9, 10, 16

*La. Power & Light Co. v. Kellstrom*,
50 F.3d 319 (5th Cir. 1995) ....................12, 13, 15, 16

*Lackey v. Stinnie*,
604 U.S. 192 (2025)....................1, 2, 3, 4, 7

*Latiolais v. Griffith*,
No. 09–00018, 2015 WL 4253976 (W.D. La. July 13, 2015) ....................5

*Little Rock Sch. Dist. v. Arkansas*,
674 F.3d 990 (8th Cir. 2012) ....................18

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026)....................5, 6, 9, 13

*Louisiana v. Callais*,
No. 24-109 (U.S. Aug. 1, 2025)....................7

*LULAC v. Roscoe Indep. Sch. Dist.*,
119 F.3d 1228 (5th Cir. 1997) ....................15

*M2 Tech., Inc. v. M2 Software, Inc.*,
589 F. App'x 671 (5th Cir. Oct. 20, 2014) ....................13

*Maceira v. Pagan*,
698 F.2d 38 (1st Cir. 1983)....................18

*Maher v. Gagne*,
448 U.S. 122 (1980)....................1, 5, 7

*McClain v. Lufkin Indus., Inc.*,
649 F.3d 374 (5th Cir. 2011) ....................17, 18, 19, 20

*Means v. Desoto Parish*,
No. 5:23-CV-00669-JE-MLH (W.D. La.) ....................19

*Miller v. Carson*,
628 F.2d 346 (5th Cir. 1980) ....................14

*Miller v. Johnson*,
515 U.S. 900 (1995)....................10, 14, 17, 18, 20, 21

*Moon v. Meadows*,
952 F. Supp. 1141 (E.D. Va. 1997) ....................10

*Nairne v. Landry*,
No. 24-30115 (5th Cir.) ....................8, 17, 18

*Nash v. Chandler*,
848 F.2d 567 (5th Cir. 1988) ....................11, 12, 13

*Nash v. City of Tyler, Tex.*,
736 F. Supp. 733 (E.D. Tex. 1989)....................10, 11, 13

*North Carolina v. Covington*,
585 U.S. 969 (2018)....................4

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010)....................19, 20

*Perez v. Texas*,
No. SA-11-CV-360-OLG (W.D. Tex. June 11, 2025) (ECF 1737) ....................17, 18

*Perez v. Texas*,
No. SA-11-CV-360-OLG, 2025 WL 3732018 (W.D. Tex. Dec. 8, 2025) ....................18

*Petteway v. Henry*,
738 F.3d 132 (5th Cir. 2013) ....................4

*Polk v. N.Y. State Dept. of Corr. Servs.*,
722 F.2d 23 (2d Cir. 1983)....................18

*Reeves v. Harrell*,
791 F.2d 1481 (11th Cir. 1986) ....................6, 13

*Riddell v. Nat'l Democratic Party*,
624 F.2d 539 (5th Cir. 1980) ....................9, 16

*Robinson v. Landry*,
No. 24-30115 (5th Cir.) ....................1, 8, 12, 13, 18

*Romain v. Walters*,
856 F.3d 402 (5th Cir. 2017) ....................9

*RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*,
429 F. Supp. 3d 238 (E.D. La. 2019).................... 15

*Rum Creek Coal Sales, Inc v. Caperton*,
31 F.3d 169 (4th Cir. 1994) ....................18, 19

*Saizan v. Delta Concrete Prods. Co., Inc.*,
448 F.3d 795 (5th Cir. 2006) ....................15, 16

*Shaw v. Hunt*,
154 F.3d 161 (4th Cir. 1998) .................... 9, 10

*Shelton v. La. State*,
919 F.3d 325 (5th Cir. 2019) ....................9

*Sigley v. Kuhn*,
205 F.3d 1341, 2000 WL 145187 (6th Cir. 2000) ....................18

*Torres v. SGE Mgmt., LLC*,
945 F.3d 347 (5th Cir. 2019) ....................20

*UFO Chuting of Haw., Inc. v. Smith*,
508 F.3d 1189 (9th Cir. 2007) ....................2, 3

*Veasey v. Abbott*,
13 F.4th 362 (5th Cir. 2021) ....................4, 6

*Walker v. U.S. Dept. of Hous. & Urb. Dev.*,
99 F.3d 761 (5th Cir. 1996) ....................14

*Watkins v. Fordice*,
7 F.3d 453 (5th Cir. 1993) ....................14

**STATUTES**

42 U.S.C. § 1988....................1, 4, 5, 6, 9, 10, 11, 13

**OTHER AUTHORITIES**

Oral Arg. Tr., https://perma.cc/X52M-LVL3 ....................................................................13

The State of Louisiana tries to flip the script. But *it* enacted SB8; abandoned its defense in *Robinson v. Landry*, No. 3:22-cv-211 (M.D. La.); intentionally discriminated against its voters; was found liable for racial gerrymandering and enjoined; sought a stay to impose its racial gerrymander in the 2024 election; filed serial briefs ardently defending SB8; only belatedly and partially backed this Court's injunction; refused to repeal SB8 until ordered by the Supreme Court; seeks to dismiss the case and vacate that very injunction now; and refuses to negotiate fees when there is no real doubt of its liability. Plaintiffs, by contrast, successfully challenged SB8; pushed for a new, constitutional map in 2024; raised the key issue in the Supreme Court that prompted supplemental briefing; brought distinct winning arguments; and won affirmance. Absent Plaintiffs, the State would still be racially gerrymandered. The Court should award Plaintiffs' fees in full.

## I. Plaintiffs Are the Prevailing Parties.

Plaintiffs are textbook prevailing parties. In crafting 42 U.S.C. § 1988, Congress believed the phrase "prevailing party" would indisputably capture recipients of a final judgment on the merits after trial, like Plaintiffs, and concerned itself with dispelling confusion for other categories of prevailing parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001) ("The House Report to § 1988 states that [t]he phrase 'prevailing party' is not intended to be *limited* to the victor only after entry of a final judgment following a full trial on the merits . . . ." (quotation omitted) (emphasis added)); *Maher v. Gagne*, 448 U.S. 122, 129 (1980) (finding § 1988 does not require "full litigation [or] a judicial determination that the plaintiff's rights have been violated" and the "Senate Report expressly" allows fees even with a "consent judgment or without formally obtaining relief" (quotation omitted)). The Supreme Court has repeatedly held that recipients of a "judgment on the merits" are obvious prevailing parties. *See, e.g.*, *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (quotation omitted)); *Farrar v. Hobby*, 506

U.S. 103, 111 (1992). Plaintiffs fought for a final judgment on the merits and permanent injunction, which this Court granted and the Supreme Court affirmed. That judicial order—regardless of the State's subsequent repeal of SB8 and enactment of Act 2—entitles Plaintiffs to fees.

The State's objections are baseless. First, the State attempts to rewrite *Lackey*. But *Lackey* makes rather than undermines Plaintiffs' argument. *Lackey* only held fees were unavailable for preliminary injunctions and *reaffirmed* fee availability where plaintiffs obtain permanent injunctions, final judgments, and even consent decrees. 604 U.S. at 206-08. In fact, the *Lackey* majority chastised the dissent for committing the State's same blunder—*i.e.* "conflat[ing] preliminary judicial relief . . . with relief that is *permanent* by virtue of a judicial order." *Id*. at 207.

Nor does the repeal of SB8 negate Plaintiffs' success. Again, Plaintiffs were the prevailing parties long before the State repealed SB8 by virtue of the permanent injunction. In *Kirchberg v. Feenstra*, 708 F.2d 991 (5th Cir. 1983), the State of Louisiana similarly argued its repeal of a statute after a plaintiff's successful challenge defeated prevailing party status. *Id*. at 997-98. And there the State's argument was more compelling because it started "revising the unconstitutional . . . statutes independent of [the plaintiff's] action" before the appeal was complete, and the "suit had no effect on their eventual repeal." *Id*. at 994, 997. Nonetheless, the Fifth Circuit held the State had to pay plaintiff's fees: "The fact that the Louisiana Legislature has repealed [the] statutes is quite beside the point. Mrs. Feenstra prevailed in the most convincing manner possible; she obtained a judgment from this Court, affirmed by the Supreme Court of the United States, that [the statute] was unconstitutional." *Id*. at 997; *see also id.* at 998, 1000; *see also Hous. Chron. Pub'g Co. v. City of League City, Tex.*, 488 F.3d 613, 615-16 (5th Cir. 2007) (holding plaintiffs prevailed via permanent injunction of unconstitutional ordinance, even though city repealed it after judgment).[1]

---

[1] *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189 (9th Cir. 2007), is non-binding and inapposite. There, the district court entered an injunction in favor of a plaintiff because federal law preempted state law, but it then vacated that

Plaintiffs do not, nor need they, rely on Act 2. Their permanent injunction alone was plainly "a judicial order," bore a "judicial *imprimatur*," was "judicially sanctioned," and entitles them to fees. *Lackey*, 604 U.S. at 203-04, 207 (quotation omitted); *see also Buckhannon Bd.*, 532 U.S. at 605. The State's replacement of SB8 with Act 2 is "beside the point." *Kirchberg*, 708 F.2d at 997.

Likewise, the catalyst theory does not apply. It only bars fees when litigation, without more, prompts "a voluntary change in the defendant's conduct." *Buckhannon Bd.*, 532 U.S. at 601, 607. It does not apply "where the plaintiff has received a judgment on the merits." *Id*. at 605. The State only repealed SB8 once mandated by this Court (Doc. 198), the Supreme Court (who affirmed and expeditiously issued the mandate), and again by this Court (Doc. 261), that it could not under any circumstances use SB8 for any congressional election. This Court "afforded [the State] the opportunity to enact a Constitutionally compliant map consistent with the Supreme Court's opinion in *Louisiana v. Callais*, 608 U.S. ___ (2026) and this Court's injunction" under this Court's supervision. Doc. 261 at 1. The State admitted it only "spr[a]ng to action" "[f]ollowing the Supreme Court's April 29 decision and this Court's April 30 order" to "comply[] with *Callais*, 2026 WL 1153054, and this Court's Injunction." Doc. 271 at 2. Before these orders, the State did not budge, and SB8 remained in place. It even filed an emergency motion to use SB8 for the 2024 election. The State only acted in response to the clear, "judicially sanctioned change in the legal relationship of the parties" and a "judgment on the merits"—not on its own accord. *Buckhannon Bd.*, 532 U.S. at 605 (citation omitted); *see also Lackey*, 604 U.S. at 207.

Likewise, the State's arguments about mootness and vacatur are unfounded. Even if they had merit (they do not, *see Hous. Chron. Publ'g Co.*, 488 F.3d at 615; Doc. 333 at 22-25), per the

---

judgment and *granted summary judgment in favor of defendants* because the federal law changed during the appeal and the injunction was never in effect. *Id*. at 1191-92. That diverges from this case, where Plaintiffs prevailed at all stages on the merits, Defendants lost on the merits, and the injunction was and remains in effect.

*very precedent on which the State relies*, Doc. 336 at 14, mootness and vacatur are irrelevant to and "wholly independent" of Plaintiffs' prevailing party status. *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 828, 835-36 (5th Cir. 2023) (quotation omitted).[2]

Ultimately, the State's desired result makes zero sense. The State contends Plaintiffs did not prevail because the State obtained a stay of this Court's judgment under *Purcell v. Gonzalez*, 549 U.S. 1 (2006), so it could use SB8's racial gerrymander for the 2024 election, and it repealed SB8 in response to numerous orders from this Court and the Supreme Court demanding it before the 2026 election. Doc. 336 at 14. Under the State's theory, Plaintiffs could only have "prevailed" under a bizarre state of affairs: where (1) SB8 was still the State's map, but (2) the permanent injunction barred SB8. In that world, the State would hold elections with *no* map, or would keep using SB8 in contempt of this Court's order. But Plaintiffs did not seek to block congressional elections, so they did not have to win on this straw man claim.[3]

## II. The State Is Responsible for Fees.

The State argues that even if Plaintiffs won (which they did), it is not responsible for fees because it too was a prevailing party. Doc. 336 at 18. That is wrong. Under § 1988, "liability on the merits and responsibility for fees go hand in hand." *Kentucky v. Graham*, 473 U.S. 159, 165

[2] Furthermore, *Freedom from Religion Foundation* does not support finding mootness or vacatur because Plaintiffs' "asserted injury" is not "tied to the existence of [an administrative] Rule" or proclamation, 58 F.4th at 832, but to the Legislature's racial gerrymandering, *North Carolina v. Covington*, 585 U.S. 969, 975-76 (2018). Doc. 333 at 18. And there, unlike here, the injunction "pose[d] serious federalism concerns" because the injunction required the State to include the plaintiff in an already-repealed state program to display private exhibits in the Capitol, forcing the State to maintain the program. *Freedom from Religion Found.*, 58 F.4th at 830-31, 837 (citation omitted). Here, by contrast, the injunction *forbids* the State from enforcing SB8—it does not *compel* the State to enforce it.

[3] The State tries and fails to sidestep *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021), to undermine Plaintiffs' prevailing party status. First, whatever *Lackey*'s impact may be on the interim order in *Veasey* has no import here because Plaintiffs secured final, permanent injunctive relief—an obvious basis for fees under *Lackey* and other precedents. Second, the Fifth Circuit has not held that any portion of *Veasey* is no longer good law. Third, even if it had, all other parts of *Veasey*, including its reliance on precedents that a plaintiff prevails if it "receiv[es] a final judgment in its favor," 13 F.4th at 358 (quoting *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013)), are viable. The State also tries to distinguish *Veasey*'s finding of prevailing party status on the facts. But the permanent injunction *has* relieved Plaintiffs from SB8's burdens for the upcoming election by barring SB8's use and continuing in effect.

(1985). "[T]he party legally responsible for relief on the merits . . . is the party who must pay the costs of the litigation [and] bear fee liability under § 1988." *Id.* at 164 (citation and footnote omitted); *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989). In other words, where a plaintiff obtains "an enforceable judgment against the defendant," that defendant must pay. *Latiolais v. Griffith*, No. 09–00018, 2015 WL 4253976, at *9 (W.D. La. July 13, 2015) (citing *Maher*, 448 U.S. at 129; *Farrar*, 506 U.S. at 109).

The State is not a prevailing party and is liable for fees because this Court (and the Supreme Court) held that *the State* violated Plaintiffs' constitutional rights in enacting and enforcing SB8 and permanently enjoined *the State* from perpetuating SB8's racial gerrymander. *Louisiana v. Callais*, 146 S. Ct. 1131, 1143 (2026) (holding "the State's use of race-based districting" "was an unconstitutional race gerrymander"); *id*. at 1150 ("Louisiana decided to draw its own map. After a deliberative process, Louisiana enacted the map at issue in this suit: SB8."); Doc. 198 at 44 (holding "the State first made the decision to create a majority-Black district" and "[t]he predominant role of race in the State's decisions" was evident); *id*. at 45-52 (noting *the State* had the burden to satisfy strict scrutiny and failed to meet it); *id*. at 2 ("[T]he State is enjoined from using SB8 in any future elections."); *id*. at 59 ("The State of Louisiana is prohibited from using SB8's map of congressional districts for any election."). As the State admitted in its first sentence of its supplemental brief: "Louisiana's intentional creation of a second majority-minority district in S.B. 8—at the behest of a federal district judge and a Fifth Circuit panel—violates the Constitution as properly understood." State Supp. Br. 1.[4] The State was no innocent bystander, and

[4] As a result, the Robinsons' role was "limited" to certain matters "to supplement the State's defense." Doc. 184 at 7-8; *see also id*. at 8 ("But the map of the plaintiffs' challenge is not the Robinson intervenors' map. It's the State's map, duly enacted into law by the Legislature and signed by the Governor through the democratic process. It's primarily the State's duty to defend the map."); Doc. 79 at 6 ("To be clear – SB8 is not the Congressional districting map of the proposed *Robinson* and *Galmon* intervenors. It is the Congressional districting map of the State of Louisiana – passed by both Houses of the Louisiana Legislature and signed into law by the Governor."); Doc. 114 at 2.

it certainly did not prevail. It was the culprit behind SB8's egregious racial gerrymander, which it vociferously defended and which was condemned by this Court and the Supreme Court.

The State's counterpoints are meritless. First, the State's wholehearted reliance on out-of-circuit case law does not change this outcome. Doc. 336 at 18. To the extent these cases conflict with Supreme Court and Fifth Circuit precedents, they cannot control. That's especially true for *Reeves v. Harrell*, 791 F.2d 1481 (11th Cir. 1986), and *Action on Smoking & Health v. C.A.B.*, 724 F.2d 211 (D.C. Cir. 1984), which pre-date *Zipes*. Moreover, none of these cases held that plaintiffs were not prevailing parties for the entire litigation, so they do not prove the State's point.[5]

Second, the State's sudden, last-minute decision to relinquish its dogged defense of SB8's racial gerrymander, without any repeal of SB8, when it felt advantageous does not save this argument. *Cf. Veasey v. Abbott*, 13 F.4th 362, 369 (5th Cir. 2021) (holding plaintiffs prevailed even though State "agreed to the order" before the court implemented it); *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 637 (5th Cir. 1986) ("[F]ederal defendants should not be able to insulate the government from all attorney fees liability simply by yielding to the plaintiff's demands after the litigation begins but before it proceeds to final judgment."); *Kirchberg*, 708 F.2d at 994, 997 (holding State had to pay fees even when it *repealed* challenged statute while appeal was pending and did not defend merits on appeal). Plaintiffs *already had* a merits judgment against the State.

[5] These cases are distinct on other grounds. Unlike *Bigby v. City of Chicago*, 927 F.2d 1426 (7th Cir. 1991), a Title VII case where the State fully opposed and fought the intervenors' appeal alongside plaintiffs from the outset, *id*. at 1428, here *the State* appealed this Court's injunction and dragged Plaintiffs through four rounds of briefing. *Callais*, 146 S. Ct. at 1152. Also, here, unlike there, Plaintiffs "obtained some benefit from [their] victory" on appeal. *Bigby*, 927 F.2d at 1429. Likewise, in *Reeves*, unlike here, the State's *only* role was entry of a consent judgment two years earlier. When third parties "act[ing] independently of the original defendants" filed a new motion to intervene and complaint, the State took no position. *Id*. at 1483-84. There, unlike here, plaintiffs' dismissal of the intervenors' complaint did not secure any judgment against the State. Even though the State was not liable for fees, the intervenors were; Plaintiffs were still prevailing parties with recourse. *Id*. at 1485. Similarly in *Action on Smoking*, the government "concede[d]" the plaintiff was "entitled to fees" under a separate fee statute (not § 1988). 724 F.2d at 215. The non-compensable work was proportionally "very small" so "its effect on the application [was] minimal." *Id*. at 216. And here, unlike there, Plaintiffs were not "supporting" the State's position; they were defending their injunction on the State's appeal.

Congress, worried about this very bait-and-switch to evade fees, specified that even consent judgments render plaintiffs prevailing parties. *Lackey*, 604 U.S. at 207; *Buckhannon Bd.*, 532 U.S. at 604; *Maher*, 448 U.S. at 129. If those voluntary agreements prior to final judgment are covered, then this situation, where the State held tight to SB8's racial gerrymander until the Supreme Court affirmed and this Court reiterated its injunction, certainly is.

Third, the State completely mischaracterizes the facts. Again, after the State decided to enact SB8, it did everything in its power to enshrine SB8. It forced Plaintiffs to rack up thousands of dollars in fees as their attorneys worked at breakneck speed for a constitutional map for the 2024 election. And then when Plaintiffs secured their victory, the State sought emergency relief in the Supreme Court to protect SB8—notwithstanding the State's later admission that it was unconstitutional. State Supp. Br. 1. The State then dragged Plaintiffs through four rounds of briefing at the Supreme Court. In the first round, the State sought reversal based on truly novel arguments—running up costs. For example, it argued Plaintiffs' racial gerrymandering theory—which won the case—was non-justiciable and the lawsuit was a nuisance. State Jur. Stmt. 32-33. Had the State had its way, the Supreme Court would have reversed, left this gerrymander in place, and permanently foreclosed any future claims for racial gerrymandering in Louisiana and nationwide. The State fought for the exact opposite of what the Supreme Court eventually held.

Indeed, it was Plaintiffs who raised the issue of the VRA's continuing use to justify racial gerrymandering in their initial merits brief, and it was this argument that sparked the Supreme Court's request for supplemental briefing. Appellees Op. Br. 36-38; Order, *Louisiana v. Callais*, No. 24-109 (U.S. Aug. 1, 2025) (referencing Appellees' Brief). The State neither raised nor advanced this argument until the Court's instruction. Doc. 333 at 11-12, 18. And for years, the State never mentioned any doubt as to SB8's constitutionality, notwithstanding its multiple, clear

opportunities to do so,[6] until that last round of briefing when it was clear the Supreme Court favored Plaintiffs' position, a reversal of position had become politically advantageous for the State, and fees lay in the State's future. Yet according to the State, it knew all along that SB8 was unconstitutional. State Supp. Br. 1; Doc. 333 at 10-11, 18. That admission, far from proving the State's innocence, means that for years, the State not only imagined but *comprehended* the egregiousness of its actions and then deliberately chose and relentlessly adhered to that route. It racially gerrymandered its own voters, jerked them through years of protracted, grinding litigation, begged the Supreme Court to insulate its racial gerrymandering from review, raised frivolous defenses that ran up costs, only admitted at the last minute that SB8 was unlawful, and yet sought and still seeks to shift the blame to its voters for its own actions. State Supp. Br. 1, 12; Doc. 333 at 11-12. The State's audacity to play victim of its own racial gerrymandering is truly remarkable.

Even after the State openly admitted the error of its ways, the case or controversy persisted and required Plaintiffs' continuous, zealous advocacy. The State remained an Appellant and straddled the line on supplemental briefing. While the State exclusively demanded the end of Section 2 as the only path to affirmance and denied that precedents supported affirmance, State Supp. Br. 17, Plaintiffs acknowledged Section 2 could have some constitutional applications, advocated for a result that narrowed its reach, alternatively relied on the Court's precedents, and sought remand to this Court to ensure a constitutional map. Appellees Supp. Br. 1, 42-47. Plaintiffs only suggested the State go first with the second round of oral argument so they could respond to the State, especially given its shiftiness, and highlight the differences between the State's requested

[6] The question before this Court and the Supreme Court was *always* (not just at supplemental briefing) whether SB8 violated the Fourteenth and Fifteenth Amendments so the State *always* had the chance to surrender its defense of SB8. That opportunity was even more explicit on reply to Plaintiffs' initial merits brief. That the State argued its intentional creation of majority-black districts violated the Fourteenth Amendment in *Robinson* and *Nairne v. Landry*, No. 24-30115 (5th Cir.), only demonstrates the State knew SB8 was unconstitutional but adamantly denied it. *Cf.* Doc. 336 at 11-12, 18; Appellee Op. Br. 36-37 & n.9. It is no credit to the State.

remedy and Plaintiffs'. The Supreme Court ultimately adopted Plaintiffs' approach, not the State's. *Callais*, 146 S. Ct. at 1153-61. On remand, the parties remain at odds. The State has cozied up to the Intervenors once again by seeking to dismiss the case. Really, it has gone even *further* than the Intervenors in seeking to vacate the very injunction it told the Supreme Court was necessary.

Fourth, the State has not met its burden to show special circumstances. "Because Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires [a defendant to make] *an extremely strong showing of special circumstances* to justify a denial of fees" to a prevailing plaintiff. *Hous. Chron. Publ'g Co*., 488 F.3d at 623 (quoting *Kirchberg*, 708 F.2d at 998). "[T]he discretion to deny § 1988 fees is extremely narrow," and "[a] district court abuses this discretion if it applies an erroneous interpretation of special circumstances to justify denial of fees to an otherwise prevailing party." *Shelton v. La. State*, 919 F.3d 325, 328 (5th Cir. 2019) (quotation omitted). "[I]n [the] absence of special circumstances a district court not merely may but *must* award fees to the prevailing plaintiff." *Romain v. Walters*, 856 F.3d 402, 408 (5th Cir. 2017) (quotation omitted). The Fifth Circuit has "recognized the rarity of such circumstances" and only identified two—one of which it has since rejected—in addition to the Supreme Court's one narrow exception for nominal damages. *Grisham v. City of Fort Worth, Tex*., 837 F.3d 564, 568-69 (5th Cir. 2016); *Kirchberg*, 708 F.2d at 998; *Romain*, 856 F.3d at 407; *Farrar*, 506 U.S. at 104. None apply here.

At best, the State argues a special circumstance exists because it enacted SB8 with good faith and believed conformity with the law. That position is far from "unprecedented," Doc. 233 at 18; the Fifth Circuit has already rejected it. *Kirchberg*, 708 F.2d at 999 & n.7; *Grisham*, 837 F.3d at 569; *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 545 (5th Cir. 1980). Moreover, it ignores many earlier lawsuits where Southern states faced similar binds. *See, e.g.*, *Shaw v. Hunt*,

517 U.S. 899 (1996); *Miller v. Johnson*, 515 U.S. 900 (1995); *Hays v. Louisiana*, 936 F. Supp. 360 (W.D. La. 1996); *Moon v. Meadows*, 952 F. Supp. 1141 (E.D. Va. 1997).[7] Nor is the State's new tune on re-argument or its repeal of SB8 (under order by the Supreme Court and this Court, twice) a special circumstance. Doc. 336 at 19-20. If that's true, then *Kirchberg* was decided incorrectly.

Finally, Plaintiffs take no position on whether State Defendants can force the Intervenors to indemnify them for part of Plaintiffs' fees. *Cf*. Doc. 336 at 19. But State Defendants must pay Plaintiffs first. *Kentucky*, 473 U.S. at 165; *Zipes*, 491 U.S. at 762; *Latiolais*, 2015 WL 4253976, at *9; *Nash v. City of Tyler, Tex*., 736 F. Supp. 733, 734 (E.D. Tex. 1989). They are the ones liable for racial gerrymandering, who could take and voluntarily did take unconstitutional actions to segregate Plaintiffs, and who were permanently enjoined. They are not blameless, and they certainly did not prevail. They must pay fees. *Kentucky*, 473 U.S. at 165.

## III. The Requested Fee Award Is Reasonable.

### A. The State is responsible for fees incurred responding to Intervenors.

The State argues it cannot be responsible for fees attributable solely to Plaintiffs' responses to Intervenors' filings. Doc. 336 at 21. But that is incorrect. The starting presumption is Plaintiffs should recover all fees as the prevailing party: "Where a plaintiff has obtained excellent results, his attorney should recover a *fully* compensatory fee. Normally this will encompass *all* hours reasonably expended on the litigation, and indeed in some cases of exceptional success an

[7] In those cases, the DOJ required an additional majority-minority district, and each State abandoned its map to accede to the DOJ's pre-clearance demands. There too the states believed they were complying with federal law. Nonetheless, each court held that the federal districting mandate did not absolve the states of liability for racial gerrymandering. As a result, plaintiffs recovered fees. *Shaw v. Hunt*, 154 F.3d 161, 164-65 (4th Cir. 1998) (noting State paid fees to plaintiffs and rejecting "special circumstances" justified denying fees to plaintiffs-intervenors); *Miller*, No. 1:94-cv-00008-DHB-JLE (S.D. Ga. Sept. 12, 1995) (ECF 305) (noting settlement of interim award of fees); *id*. (July 31, 1997) (ECF 434) (settling final award of fees); *id*. (Sept. 11, 1997) (ECF 436) (same); *Hays*, No. 5:92-cv-01522-DEW-RSP (W.D. La. Jan. 5, 1996) (ECF 288) (ordering "that, as prevailing parties in all phases of this case to date, the Plaintiffs are entitled to recover all reasonable costs, attorneys' fees and expenses, including reasonable expert witness fees, pursuant to 42 USC 1988"); *Moon*, 952 F. Supp. at 1151 ("Plaintiffs are entitled to reasonable counsel fees and all taxable costs."). This is far from a "special circumstance." It's *Shaw* all over again.

enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added). Courts do not reduce awards in these circumstances even if "the plaintiff failed to prevail on every contention raised in the lawsuit." *Id*. (citation omitted). And that's true even if some fees are incurred due to defendant-intervenors. *See, e.g.*, *Nash v. Chandler*, 848 F.2d 567, 573 (5th Cir. 1988) (affirming *entire* fee award including fees expended due to intervenors); *Jenkins by Agyei v. Missouri*, 967 F.2d 1248, 1251 (8th Cir. 1992) (upholding "award of fees plaintiffs incurred in litigating against intervenors"); *Jordan v. Allain*, 619 F. Supp. 98, 109 (N.D. Miss. 1985) (upholding fee award against state defendants for time spent "reviewing pleadings" of other defendants and an amicus brief over objection that hours were "attributable to other parties over whom [state defendants] exercised no control" because hours were "sufficiently related to plaintiffs' prosecution of their claims against the state defendants"). The Supreme Court opinion in *Zipes* "does not in any way require that attorney's fees governed by § 1988 are necessarily to be borne by a prevailing plaintiff rather than a losing defendant when a third party intervenes to vindicate its rights." *City of Tyler*, 736 F. Supp. at 734. Rather, *Zipes* compels that where a losing intervenor "may not bear the costs and fees mandated in [a] civil action, *all* reasonable fees and costs shall be levied against the [liable party]," *id*. at 735 (emphasis added), including "the cost of the attorney's fees which are attributable to the intervention," *id*. at 734. That's because "liability on the merits" informs "liab[ility] for attorney's fees," and § 1988 justly shifts Plaintiffs' burden. *Chandler*, 848 F.2d at 573; *see also Kentucky*, 473 U.S. at 164-65; *Zipes*, 491 U.S. at 762.

Here as in *Nash v. City of Texas*, the Robinsons intervened "solely for the limited purpose" of supplementing the State's defense of SB8, and the Galmons intervened on an even narrower basis. 736 F. Supp. at 734; *see also Franciscan All., Inc. v. Becerra*, 681 F. Supp. 3d 631, 639 (N.D. Tex. 2023) (requiring State to pay fees from intervenors' actions where "the sole basis for

intervention . . . was to defend the same [] actions challenged by Plaintiffs against the same legal theories Plaintiffs urged"); Doc. 184 at 7-8; Doc. 79 at 6; Doc. 114 at 2.[8] The State remained the principal defender. The Robinsons' and Galmons' zealous advocacy only benefited and furthered the State's defense of SB8, and Plaintiffs had to overcome their arguments to prevail. The State's chosen defense, that the Intervenors' own *Robinson* case supplied the State's strong basis in evidence to racially gerrymander Plaintiffs, made the State and Intervenors natural, hand-in-glove allies from trial through the first round of Supreme Court argument. And again, the State Defendants were the only liable and enjoined parties. As such, they must pay all Plaintiffs' fees. *Franciscan All.*, 681 F. Supp. 3d at 638-39 (holding plaintiffs could recover "hours spent litigating against the intervenor's merits arguments" against defendants, where defendants did not join intervenors' filings, because "intervenors' defense was directly related to the underlying controversy" and plaintiffs' "claims against Defendants and the defenses put forth by the intervenors shared a 'common core of facts' and 'related legal theories'" (quoting *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995)) (footnote omitted)).

This includes fees for supplemental briefing. The State remained an Appellant, filed with Appellants, and sought relief that contradicted Plaintiffs' requested relief. State Supp. Br. 17-41. As such, Plaintiffs had to respond. And given the State's proclivity to raise novel "non-justiciability" arguments and throw whatever arguments it could at the wall to see what would stick, it was far from a trustworthy ally even where Plaintiffs agreed with its latest about-face. If Plaintiffs' counsel had not represented Plaintiffs (the only Appellees) at this stage, they would have committed malpractice. The Court ultimately granted Plaintiffs' requested relief, including

[8] Even though the State also intervened, "the State, unlike the intervenor in *Zipes*, is a constitutional violator, and not entitled to the solicitude *Zipes* showed." *Jenkins*, 967 F.2d at 1251; *see also Kentucky*, 473 U.S. at 165; *Chandler*, 848 F.2d at 573-74. Moreover, since the SOS was sued in her official capacity, the State is the effective payor. *Familias Unidas v. Briscoe*, 619 F.2d 391, 406 (5th Cir. 1980).

providing lower courts with additional clarity on Section 2, and rejected the State's extreme position. *Callais*, 146 S. Ct. at 1153-61. Furthermore, the State maintained "related legal theories" to Intervenors on supplemental briefing, including that precedent *did not* support affirmance, which Plaintiffs opposed. *Kellstrom*, 50 F.3d at 327 (quotation omitted); State Supp. Br. 1; Oral Arg. Tr., 49:20-50:1, https://perma.cc/X52M-LVL3. Plaintiffs' time in responding to those misguided claims was reasonably commingled with and inseparable from work on the rest of the brief and oral argument, so Plaintiffs can recover all fees. *Kellstrom*, 50 F.3d at 327 & n.12.[9]

Plaintiffs can recover for opposing the Robinsons' and Galmons' intervention, especially since they sought intervention due to the State's concessions in *Robinson* and enactment of SB8. *City of Tyler*, 736 F. Supp. at 734 (defendant liable for all fees from intervention, partly because its conduct sparked intervention); *DeLeon v. Abbott*, 687 F. App'x 340 (5th Cir. Apr. 18, 2017); *M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. App'x 671, 677 (5th Cir. Oct. 20, 2014) (per curiam).[10]

Furthermore, if the Court finds the State is not liable for fees for any particular filings, it should hold the Robinsons and Galmons are. *Chandler*, 848 F.2d at 573; *Reeves*, 791 F.2d at 1485. Plaintiffs should have recourse to recover "*all* hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435 (emphasis added).

**B. The Court should not reduce attorneys' reasonable hours.**

The Court should not cut any additional time. Plaintiffs' attorneys have already exercised billing judgment and cut roughly $70,000 prior to filing this fee application. Doc. 322-1 at 24; Doc. 322-2 at 6-9. All remaining hours were reasonably necessary for Plaintiffs' success.

---

[9] *Avoyelles* is not binding; it hinged on the meaning of "appropriate" in 33 U.S.C. § 1365(d) and federal government sovereign immunity concerns—all absent for § 1988 and its pro-plaintiff framework—and the Fifth Circuit has not applied it to § 1988. 786 F.2d at 632, 634. Moreover, Plaintiffs' counsel's participation was still "necessary" given the State's unpredictability and continuing opposition to Plaintiffs' requested and granted relief. *Id*. at 637 n.8, 638.

[10] *Hopwood v. Texas*, 236 F.3d 256 (5th Cir. 2000), does not "absolutely bar[]" "shifting to the defendant the costs associated with defending against an intervention." *Id.* at 280. It only limits recovery where a defendant is always "neutral on the intervention issue" and intervenors add nothing—which was not the case here. *Id*. (footnote omitted).

1. The State moves to eliminate 58.2 hours for media and public relations events. Doc. 336-1, Ex. 1-D. But many of these hours were for attorney work on briefs, case strategy, responses to Defendants' argument, etc.—not events. As such, the Court should not cut them. Moreover, the Fifth Circuit has not adopted a categorical rule, and this Court has broad discretion to award these fees, especially since they contributed to Plaintiffs' victory. *DeLeon*, 687 F. App'x 340 (affirming award for media interactions); *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993); Second Declaration of E. Greim, attached as Exhibit A, ¶ 2.

2. The State seeks to cut 48.1 hours for what it deems legislative and political strategy events. Doc. 336-1, Ex. 1-E. But this work was also necessary to Plaintiffs' success. It involved attorneys' discussions with *amici* or review of remedial legislative efforts in compliance with the Court order, Doc. 261, as part of the remedial stage or in the wake of this Court's permanent injunction, Doc. 198, to protect Plaintiffs' rights. Counsel relied on this research in briefing on the remedy. Thus, it is compensable. *Walker v. U.S. Dept. of Hous. & Urb. Dev.*, 99 F.3d 761, 767 (5th Cir. 1996); *Miller v. Carson*, 628 F.2d 346, 349 (5th Cir. 1980).

3. Nor should this Court discount by 90% 53.5 hours of what the State deems "clerical work" where a non-lawyer could have performed it. Doc. 336-1, Ex. 1-F. Most of these hours were already performed by paralegals, Rebekah Smith, Christina Black, Nichole Kruger, and Leah Bye, and involved paralegal work. Other flagged hours were not clerical at all. For example, they involved consultation with experts or other attorneys, legal research and writing, legal decisions and strategy, and final edits to briefs before filing—work that only attorneys could perform. Finally, *Johnson* does not support discounting paralegals' hours or a severe 90% discount.

4. The State also moves to discount 290.25 hours of travel time by 50%. Doc. 336-1, Ex. 1-H. But Mr. Hurd already discounted his travel time by 50%. Doc. 322-7 ¶ 15. The remaining

hours for Graves Garrett Greim, LLC often involved other work while the attorneys were traveling. Moreover, many flagged entries included other tasks such as trial/oral argument preparation and participation. Or they entailed no travel at all. For example, the State seeks to discount Mr. Hurd's hours for the first day of trial in Shreveport on April 8, 2024, and Ms. Smith's hours on April 2, 2024, and April 10, 2024, even though they were not travelling.

5. The State asks the Court to reduce 1542.45 hours by 25% and 80 hours by 43.75% for what it deems "block billing." Doc. 336-1, Ex. 1-B, 1-I. But there is no reduction requirement or issue with block billing per se. Trouble arises when descriptions are "too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326 (citation omitted). But the State never makes that argument. Nor does it claim these hours were unreasonable, duplicative, or excessive. Thus, it does not provide the necessary basis for reduction. *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc*., 429 F. Supp. 3d 238, 244 (E.D. La. 2019) (finding no reason to reduce block billed entries where no concerns arose about reasonableness of hours). Moreover, "Plaintiff[s'] counsel . . . is not required to record in great detail how each minute of his time was expended"—only "the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Counsel need only submit "records containing the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered." *LULAC v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Courts must be "mindful that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour" and "that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry." *Id*. (quotation omitted). Even if some reductions were justified, 25% and 43.75% are grossly inflated. *See, e.g.*, *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800

(5th Cir. 2006) (only affirming 10% where records were vague, duplicative, and not indicative of billing judgment); *Franciscan All.*, 681 F. Supp. 3d at 642 (allowing 5%).

6. The State moves to strike 5.2 hours of what it calls business or client development. Doc. 336-1, Ex. 1-G. But the State's case cites do not support the cuts, especially since these hours were charged to the client. And these discussions with potential clients were imperative to ensure standing and litigation success. Moreover, at least 3.8 hours of this work from Matthew Mueller involved litigation strategy and research, not just vetting.

7. Fees from working on this motion are recoverable. *Cruz v. Hauck*, 762 F.2d 1230, 1233-35 (5th Cir. 1985); *Kirchberg*, 708 F.2d at 1001; *Riddell*, 624 F.2d at 547; Doc. 322-1 at 42-43.

8. The State also seeks to cut costs attributable to the Robinsons and Galmons and incurred after supplemental briefing was ordered. Doc. 336-2. These arguments are meritless. *Supra* Part III.A. All these expenses were "charged to a fee-paying client" so they are "plainly recoverable." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (quotation omitted). The State also seeks to reduce expenses incurred by Paul Hurd for flights and hotel stays in Washington, D.C., for a moot court, oral argument attendance, and Plaintiffs' first oral argument. Doc. 336-2. But all three trips were essential to Plaintiffs' success, and Mr. Hurd's presence was imperative. His "contemporaneous billing records" adequately document these costs. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (quoting *Kellstrom*, 50 F.3d at 325).[11] And Defendants do not dispute the necessity of these trips for the rest of the team. Mr. Hurd's airfare was more expensive because he lives in Monroe, Louisiana, which only has a small airport and no direct flight to Washington, D.C. Lest the State

[11] For the same reason, the State's other arguments about documentation fail.

forget, if it had prevailed on its request for the Supreme Court to reverse, it would be paying expenses (including hotel stays and flights) for over a dozen out-of-state attorneys in *Nairne*.

**C. Attorneys' rates are reasonable.**

Plaintiffs' attorneys' rates are also reasonable. Doc. 322-1 at 25-28. To determine the appropriate rate, courts must look to rates charged "in the community for *similar services* by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus.*, Inc., 649 F.3d 374, 381 (5th Cir. 2011) (emphasis added) (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n.11 (1984)). Therefore, what matters are the rates in complex redistricting cases appealed to the Supreme Court. *See, e.g.*, *Guidry v. Comm'r of Soc. Sec.*, No. 6:23-CV-01742, 2025 WL 2715485, at *2 (W.D. La. Sept. 23, 2023) (looking to the "prevailing market rate for social security fee awards under the EAJA"). In these circumstances, higher rates are to be expected. *Johnson*, 488 F.2d at 719.[12] As one of the State's citations put it, "in a specialized area of the law," like redistricting, "the Court may consider evidence outside the relevant legal market if there are not a sufficient number of practitioners in that area." *Defrese-Reese v. Healthy Minds, Inc.*, No. CV 3:18-1134, 2020 WL 5437743, at *4 (W.D. La. Sept. 10, 2020). "[O]ut-of-district counsel might be necessary, for example, where local counsel is not willing and/or able to assist or counsel have shown they participate in a market requiring more specialized and sophisticated legal services." *Franciscan All.*, 681 F. Supp. 3d at 643 (citing *McClain*, 649 F.3d at 383) (citation omitted) (looking to Washington, D.C. rates). That's especially true when "most major law firms are hesitant to get involved." *Id.* at 644. The Kansas City rates are reasonable for several independent reasons.

First, as discussed in Plaintiffs' brief, Doc. 322-1 at 26-27, these rates are very reasonable for complex redistricting in the Fifth Circuit. *See, e.g.*, Order at 12-14, 18, *Perez v. Texas*, No. SA-

[12] By contrast, the State's cited district court cases did not involve complex civil rights litigation on direct appeal to the Supreme Court that required out-of-district counsel.

11-CV-360-OLG (W.D. Tex. June 11, 2025) (ECF 1737) ($850/hr.); *Perez v. Texas*, No. SA-11-CV-360-OLG, 2025 WL 3732018, at *5 (W.D. Tex. Dec. 8, 2025) ($830/hr. and $750/hr.).

Second, local counsel was "unable or unwilling to litigate this case" alone. *Franciscan All.*, 681 F. Supp. 3d at 644. The only available, willing local practitioner with the necessary knowledge of redistricting law was Paul Hurd. Second Declaration of P. Hurd, attached as Exhibit B, ¶ 4. But he is a solo practitioner who did not have the resources or ability to handle a case of this magnitude on his own. *Id.* ¶ 5. He was unable to find any other counsel in Louisiana, particularly given the controversial subject matter and opposition from both sides of the aisle post-*Robinson*. *Id.* ¶¶ 4, 6-8; Doc. 322-2 ¶ 31; *cf. Franciscan All.*, 681 F. Supp. 3d at 644. Out-of-state counsel drafted motions and briefs, handled the trial, and conducted oral arguments, among other tasks, unlike in *Hopwood*. Ex. B ¶ 11. Plainly, "(1) [P]laintiffs' counsel required assistance in prosecuting the case and (2) no lawyers within the district or state were available to assist." *McClain*, 649 F.3d at 387.[13]

Third, this case relied on attorneys from "market[s] requiring more specialized and sophisticated legal services." *Franciscan All.*, 681 F. Supp. 3d at 645 (quotation omitted) (awarding fees based on Washington, D.C. rates).[14] Evidence of out-of-State counsel's necessity is that all parties required them, Doc. 322-1 at 27, as did all other major, recent redistricting cases in Louisiana (*e.g.*, *Robinson*, *Nairne*, and *Means v. Desoto Parish*, No. 5:23-CV-00669-JE-MLH (W.D. La.)). *McClain*, 649 F.3d at 388 (Dennis, J., concurring in judgment) (noting when defendant hires out-of-district counsel, plaintiff is "justified in saying that the nature of the case required the

---

[13] *See also, e.g.*, *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005); *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (collecting cases); *Rum Creek Coal Sales, Inc v. Caperton*, 31 F.3d 169, 178-79 (4th Cir. 1994); *Donnell v. United States*, 682 F.2d 240, 252 (D.C. Cir. 1982).

[14] *See also, e.g.*, *Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 997 (8th Cir. 2012); *Interfaith Cmty. Org.*, 426 F.3d at 705; *Sigley v. Kuhn*, 205 F.3d 1341, 2000 WL 145187, at *7 (6th Cir. 2000); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993); *Rum Creek*, 31 F.3d at 178-79; *Maceira v. Pagan*, 698 F.2d 38, 40 (1st Cir. 1983); *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982); *Polk v. N.Y. State Dept. of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

skills of out of town specialists" (quoting *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 n.18 (7th Cir. 1982)). Even excluding the Galmons' eight attorneys, at least 35 attorneys appeared for the other side in "many briefs and motions filed throughout the case, evidencing the complexity and sophistication of the issues." *Cf. Franciscan All.*, 681 F. Supp. 3d (only 20 attorneys on other side) (footnote omitted). The case involved constitutional rights, an appeal to the Fifth Circuit, and numerous rounds of Supreme Court briefing. *Cf. id.* (case involved religious rights and only two appeals to Fifth Circuit). And the Supreme Court stepped in to correct confusion in the lower courts. *Cf. id.* The stakes were "extraordinary," and "this was a highly complex case wherein having counsel with specialized expertise in the subject matter was necessary." *Id.* at 643, 645 (footnote omitted). The Court should award fees based on Plaintiffs' attorneys' Kansas City rates—the accuracy of which the State does not dispute. *McClain*, 649 F.3d at 387.

Fourth, "it is clear that a reasonable, paying client would have paid those higher rates" because they did. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elecs.*, 522 F.3d 182, 191 (2d Cir. 2008); *see also Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 178-79 (4th Cir. 1994).

Finally, if rates must be reduced, then an enhancement is warranted to ensure Plaintiffs' attorneys are "compensated at the rate that [they] would receive in cases not governed by the federal fee-shifting statute." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-55 (2010) (allowing enhancement "where the method used in determining the hourly rate in the lodestar calculation does not adequately measure the attorney's true market value"). That's especially true given the "superior attorney performance," extraordinary success, and necessity of a higher rate to attract counsel. *Id.* at 554; *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 392-95 (5th Cir. 2016); Ex. B ¶ 9; Doc. 322-7 ¶¶ 19-24; *see also infra* Part III.D.

### D. The fee enhancement is justified.

The fee enhancement request is reasonable because Plaintiffs achieved "exceptional success" in this lawsuit, *Hensley*, 461 U.S. at 435, which "is the most critical factor," *Combs*, 829 F.3d at 395; Doc. 322-1 at 11-19. And even if they had not, other *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), factors support enhancement. *Hensley*, 461 U.S. at 449 n.8 (Brennan, J., concurring in part, dissenting in part) (noting the majority "expressly approves consideration of the full range of *Johnson v. Georgia Highway Express* factors" (citing *id*. at 434)).

*Perdue* never displaced the *Johnson* factors or held that fee enhancements were unavailable. 559 U.S. at 553; *Combs*, 829 F.3d at 393 (rejecting that *Perdue* "make[s] it impermissible to [] consider any relevant *Johnson* factors" or "calls into question the[ir] use"). Courts in the Fifth Circuit still must look to these factors. *See, e.g.*, *Torres v. SGE Mgmt., LLC*, 945 F.3d 347, 349 (5th Cir. 2019) (mandating *Johnson* factors and vacating award because district court did not clearly consider them); *Combs*, 829 F.3d at 392-93; *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013); *McClain*, 649 F.3d at 380-81.

Enhancement is therefore still available where "the lodestar does not adequately take into account a [*Johnson*] factor." *Combs*, 829 F.3d at 393 (quoting *Perdue*, 559 U.S. at 554). Then, there is no "double-counting." Doc. 336 at 23. And enhancement is appropriate here because, as the State admits, the lodestar does not account for all the *Johnson* factors (Doc. 336 at 24)—including Factors 4, 7, 8, 10, and 12, all of which favor enhancement (Doc. 322-1 at 33, 35-39).[15]

## CONCLUSION

The Court should award Plaintiffs' attorneys fees and costs as set forth in their application.

---

[15] The State's remaining arguments are not compelling. *Cf.* Doc. 336 at 17-18. For example, even though enhancement was not awarded in similar cases cited by Plaintiffs, the lodestar calculations there greatly exceeded this one, and were reasonable for redistricting litigation. Fee enhancement here would rightly compensate where the lodestar falls short.

Dated this 14th day of September, 2026

Respectfully submitted,

PAUL LOY HURD, APLC
*/s/ Paul Loy Hurd*
Paul Loy Hurd
Louisiana Bar No. 13909
1896 Hudson Circle, Suite 5
Monroe, Louisiana 71201
Tel.: (318) 323-3838
paul@paulhurdlawoffice.com
*Attorney for Plaintiffs*

GRAVES GARRETT GREIM LLC
*/s/ Edward D. Greim*
Edward D. Greim,* Mo. Bar No. 54034
Matthew Mueller,* Mo. Bar No. 70263
Katherine E. Mitra,* Mo. Bar No. 74671
Sarah R. Pineau,* Mo. Bar No. 74483
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com
spineau@gravesgarrett.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I do hereby certify that, on this 14th day of September, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs*