# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS, et al., | ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | ) | |
| v. | ) | District Judge David C. Joseph<br>Circuit Judge Carl E. Stewart<br>District Judge Robert R. Summerhays |
| NANCY LANDRY, IN HER OFFICIAL CAPACITY AS LOUISIANA SECRETARY OF STATE, et al., | ) | Magistrate Judge Kayla D. McClusky |
| Defendants. | ) | |

**SECOND DECLARATION OF PAUL L. HURD IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

I, Paul L. Hurd, pursuant to 28 U.S.C. § 1746, declare:

1. I have served at all times as lead co-counsel for Plaintiffs in the above-referenced matter.

2. I have practiced law in Louisiana for almost 48 years and understand the legal market. I have many connections across the State and know many attorneys who practice herein, including lawyers and law firms that practice law dealing with the interface of Section 5 and Section 2 of the Voting Rights Act and the constitutional mandates under the Fourteenth and Fifteenth Amendment. My first racial gerrymandering/Equal Protection case was filed in 1992 as *Hays v. Louisiana* (862 F. Supp. 119 (W.D. La. 1994)) in personal consultation with Mr. Robinson O. Everett, the lead counsel in North Carolina that resulted in the U.S. Supreme Court's *Shaw v. Reno*. I believe the District Court opinion in *Hays*, was the first successful racial gerrymandering claim under *Shaw v. Reno* (509 U.S. 630, 1993).

3. I have significant experience in racial gerrymandering litigation, involving Voting Rights Act applications in compliance with the constitutional mandates under the 14th Amendment,

PLH

Equal Protection Clause and the Fifteenth Amendment, in Louisiana, Texas and Virginia, as outlined in my first declaration, Doc. 322-7. I was lead counsel in all of these cases.

4. Based on my knowledge of this particular subject matter, and the relevant legal market (State of Louisiana) and my connections herein, when I was initially consulted to become lead counsel in *Callais*, I believed the *Callais* clients needed a set of legal counsel who: (1) could provide the requisite legal manpower and legal skill and expertise to immediately address this unique area of the law raised by the *Callais* petitioners; (2) did not already have a legal or personal or political conflict considering the State and the State actors that would be opposing parties and legal counsel; (3) were willing to be the legal and public spokesman for the *Callais* plaintiffs' controversial, constitutional claims to racially colorblind districting; and (4) were willing to represent the *Callais* petitioners in constitutional litigation that can, and often does, drag on for years.

As of late 2023, and presently, I am unaware of any attorney, or law firm, in Louisiana that would have met these qualifications, or who would be a candidate as co-counsel with me in the *Callais* case.

5. While I was willing to serve as co-counsel, given my practice as a solo practitioner, I would not take on a case of this magnitude without co- counsel that meets the four criteria listed above.

6. The particularly controversial nature of racially colorblind advocacy, and the political emotions of some of the public that arise from this advocacy was a real barrier to finding local legal counsel for the *Callais* petitioners. Advocating against racial allocation of electoral office as in *Callais*, has had a limiting effect on my legal practice since taking *Hays* in 1992 through *Callais* in 2026. The controversial nature of this area of the law makes utilizing out of state lawyers, and firms, almost a necessity. For example, in *Hays*, I was lead counsel of record,

PHJ

but retained out of State counsel, Mr. Kenneth W. Starr (Kirkland &Ellis) as co-counsel to prepare our "Motion To Affirm" to the Court (U.S. Supreme Court No. 93-1539). With myself, and the joining of Graves Garrett Greim, LLC as co-counsel, we were able to successfully handle the volume of issues and alternative arguments, the uniquely current nature of the issues before this Court and the Supreme Court, and to address the peripheral issues that arose from multiple intervenors, and multiple amici who joined in this nationally important litigation. The contribution of Graves Garrett Greim, LLC and their constitutional advocacy was superb and was an absolute necessity for the petitioners in *Callais*.

7. Given Governor Landry's surprising but open advocacy for two majority-minority districts in SB8 (2024), and the resulting bipartisan political support for SB8 (2024), there was open opposition and hostility to plaintiffs' lawsuit from both sides of the political aisle. Also, many Louisiana lawyers had a conflict given the *Robinson* and *Nairne* litigation. As such, to the best of my knowledge, no other in-State attorneys were willing, qualified, and available, to represent the *Callais* petitioners.

8. Because of my long standing willingness to challenge the unconstitutional actions of State and local government, I often am contacted to discuss constitutional and equal protection claims arising in Louisiana involving racial governmental action. However, to this day, I know of no other lawyers, or any law firm, in Louisiana who are similarly willing to be counsel for parties like the *Callais* plaintiffs in such controversial challenges concerning Voting Rights Act/racially gerrymandered election districts. Graves Garrett Greim, LLC and their constitutional advocacy was a constitutional godsend.

9. Based on my experience, to attract out-of-State counsel in national, complex redistricting cases like this one, the clients must often pay rates similar to those charged by the

PWM

attorneys at Graves Garrett Greim, LLC. The rates for Graves Garrett Greim, LLC's attorneys fell well within the norm of reasonable rates to attract such counsel in this type of litigation.

10. I worked alongside attorneys at Graves Garrett Greim, LLC, including Edward Greim, Matthew Mueller, Jackson Tyler, Katherine Mitra (nee Graves), Sarah Pineau, A. Bradley Bodamer, as well as paralegals Rebekah Badell, Nichole Kruger, and Christina Black.

11. As co-counsel with Graves Garrett Greim, we jointly contributed to motions, briefs, and other filings, prepared witnesses, and attended depositions. The attorneys at Graves Garrett Greim handled the initial drafting of motions, briefs, and other filings, which were finally approved by myself and Mr. Greim. Mr. Edward D. Greim was the lead trial counsel at trial and gave our opening and closing arguments at trial. After discussions, I agreed to be "second chair" at the Supreme Court, and that Mr. Greim would have the honor of handling both rounds of oral argument at the Supreme Court. I submit that Mr. Greim's presentation was ultimately reflected in the opinion of the Supreme Court.

12. Plaintiffs' historic victory was accomplished through the ultimate joint advocacy by all *Callais* legal counsel: in-State counsel and out-of-State counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10 2026.

Paul L. Hurd