UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS et al., | ) | |
| | ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Circuit Judge Carl E. Stewart |
| | ) | District Judge David C. Joseph |
| NANCY LANDRY, IN HER OFFICIAL | ) | District Judge Robert R. Summerhays |
| CAPACITY AS LOUISIANA | ) | |
| SECRETARY OF STATE, et al., | ) | Magistrate Judge Kayla D. McClusky |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

As the report and recommendation ("R&R") rightly acknowledges, Plaintiffs Callais, et al., ("Plaintiffs") are the prevailing parties and are entitled to recover their attorneys' fees and expenses against the State of Louisiana and Secretary of State (collectively "the State") under 42 U.S.C. § 1988(b) and Federal Rule of Civil Procedure 54. However, the R&R lowers Plaintiffs' rightful award by cutting reasonably spent hours, counsel's rates, and costs. In doing so, it places the burden for these fees on Plaintiffs—rather than the liable party, *i.e.* the State. This was erroneous. Plaintiffs request the Court award the following described fees and costs without reduction.

## LEGAL STANDARD

This Court's review of the R&R is de novo. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

## OBJECTIONS

### I. Plaintiffs Should Recover Fees and Costs Attributable to the Intervenors.

The R&R acknowledges that Plaintiffs prevailed, that the State is solely and fully liable for SB8, that the Intervenors acted in support of the State's defense of SB8, that Plaintiffs necessarily

incurred fees in responding to them on their path to victory, and that fees are not recoverable against the Intervenors. Nonetheless, the R&R cuts 458.95 hours from the lodestar calculation and $17,520.59 in costs attributable to actions of the Intervenors in support of the State's defense of SB8. Doc. 345 at 33-35, 47. In reaching this conclusion, the R&R relied on cases from the Fourth and Seventh Circuits, rather than on-point precedents from the Supreme Court, the Fifth Circuit, and the Eighth Circuit. *Id*. at 33-35. This reasoning and result are incorrect.

The starting presumption is Plaintiffs should recover all fees as the prevailing party: "Where a plaintiff has obtained excellent results, his attorney should recover a *fully* compensatory fee. Normally this will encompass *all* hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (emphasis added). "[A]ll hours" plainly includes those incurred in response to intervenors. *Id. Kentucky v. Graham*, 473 U.S. 159 (1985), and *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), address who should pay that fee: "[T]he party legally responsible for relief on the merits . . . is the party who must pay the costs of the litigation [and] bear fee liability under § 1988." *Kentucky*, 473 U.S. at 164 (citation and footnote omitted); *see also Zipes*, 491 U.S. 754, 762 (1989). In other words, "liability on the merits and responsibility for fees go hand in hand." *Kentucky*, 473 U.S. at 165. And while *Zipes* limited recovery of fees against an intervenor, it left open the possibility to seek intervention-related fees against the liable defendant. 491 U.S. at 767 (Blackmun, J., concurring) ("I see nothing in the language of the statute or in our precedents to foreclose a prevailing plaintiff from turning to the Title VII defendant for reimbursement of all the costs of obtaining a remedy, including the costs of assuring that third-party interests are dealt with fairly. Thus where an intervenor enters the case to defend third-party interests and the plaintiff prevails, the costs of the intervention, in my view,

should presumptively be borne by the *defendant.*"). As such, because Plaintiffs are entitled to recover all their fees, and the State is the liable party, the State is responsible for the entire bill.

Fifth Circuit precedent makes this even clearer. As the R&R acknowledges, in *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995), the Fifth Circuit stated: "when claims against multiple parties share a common core of facts or related legal theories, a fee applicant may claim all hours reasonably necessary to litigate those issues." *Id.* at 327 (quotation omitted). If a party can recover fees attributable to one defendant against another (even though the claims against each are distinct), how much more should the party be able to recover fees incurred in response to Intervenors who were trying to defeat *the exact same claims* as the State?

Indeed, Intervenors tried to defeat the exact same claims *in the exact same way*. At trial and in Supreme Court briefing until rehearing, the State let Intervenors mount the primary defense of SB8, presenting the State's position that (1) factors other than race predominated in drawing SB8; and (2) even if race predominated, the *Robinson* litigation provided a strong basis in evidence for drawing SB8. To win, Plaintiffs *had* to defeat the State and Intervenors' joint showing by proving that (1) race predominated; and (2) the *Robinson* litigation did not provide a strong basis in evidence. United in battle, the State and Intervenors shared defeat at trial. The State's lean against Intervenors only came on rehearing, and was limited: the State argued that existing law required reversal, and that the Supreme Court should affirm *only* if it changed controlling law in the manner suggested by the State—a path the Court ultimately did not take. *See* State Supp. Brief at 5, 43-47.[1] The State's ambivalent "frenemy" stance at rehearing only confirmed that Plaintiffs

[1] The Court also rejected the State's arguments that existing precedent should be changed to forbid any use of race at all, even in a remedial context, without racial predominance or strict scrutiny analyses or regard for instances of intentional discrimination, State Supp. Brief 43-47; that it "makes no sense" to reconsider whether SB8-6 complied with Section 2, since *Robinson* had already done so, State Jur. Stmt. 31; and that racial gerrymandering claims—including Plaintiff's winning claim—were non-justiciable, *id.* at 32-33. The State plainly did not prevail.

needed to continue briefing and arguing to ensure that the Court's final decision would not just affirm, but would affirm on grounds yielding a true remedy on remand. Plaintiffs' vigilance at rehearing seems even more prudent in retrospect, now that the State and Intervenors have renewed their 2024-2025 alliance in seeking to dismiss this case and even to vacate this Court's final order.

Such close alliances between intervenors and a state are unnecessary to justify a complete fee award; this Circuit's background rule is sufficient. In *Nash v. Chandler*, 848 F.2d 567 (5th Cir. 1988), a case the R&R does not address, the Fifth Circuit affirmed an *entire* fee award including fees expended due to intervenors and remanded. *Id*. at 573. The Fifth Circuit reasoned that "liability on the merits" informs "liab[ility] for attorney's fees," and § 1988 justly shifts a plaintiff's burden for all fees to the defendant. *Id*. On remand, the district court held that the defendant was liable for all those fees. *Nash v. City of Tyler, Tex*., 736 F. Supp. 733, 735 (E.D. Tex. 1989). It noted that *Zipes* "does not in any way require that attorney's fees governed by § 1988 are necessarily to be borne by a prevailing plaintiff rather than a losing defendant when a third party intervenes to vindicate its rights." *Id.* at 734. Rather, *Zipes* compels that where a losing intervenor "may not bear the costs and fees mandated in [a] civil action, *all* reasonable fees and costs shall be levied against the [liable party]," *id*. at 735 (emphasis added), including "the cost of the attorney's fees which are attributable to the intervention," *id*. at 734.

And this reasoning comports with decisions from the Eighth Circuit and other district courts in the Fifth Circuit. *Jenkins by Agyei v. Missouri*, 967 F.2d 1248, 1251 (8th Cir. 1992) (upholding "award of fees plaintiffs incurred in litigating against intervenors"); *Franciscan All., Inc. v. Becerra*, 681 F. Supp. 3d 631, 638-39 (N.D. Tex. 2023) (holding plaintiffs could recover "hours spent litigating against the intervenor's merits arguments" against defendants, where defendants did not join intervenors' filings, because "intervenors' defense was directly related to

the underlying controversy" and plaintiffs' "claims against Defendants and the defenses put forth by the intervenors shared a 'common core of facts' and 'related legal theories'" (quoting *Kellstrom*, 50 F.3d at 327) (footnote omitted)); *Jordan v. Allain*, 619 F. Supp. 98, 109 (N.D. Miss. 1985) (upholding fee award against state defendants for time spent "reviewing pleadings" of other defendants and an amicus brief over objection that hours were "attributable to other parties over whom [state defendants] exercised no control" because hours were "sufficiently related to plaintiffs' prosecution of their claims against the state defendants").

The R&R relies on two out-of-circuit cases to reach the opposite result—*Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169 (4th Cir. 1994), and *Bigby v. City of Chicago*, 927 F.2d 1426 (7th Cir. 1991). Even if these were binding (they are not), they are distinct. Plaintiffs in *Rum Creek* incurred just over $30,000 in contested fees solely from opposing the proposed intervenor's intervention; no part was due to the intervenor's defense of the claims against the defendant. 31 F.3d at 176-78. That makes *Rum Creek* a dramatically different case from the present one where Intervenors came to the State's defense and Plaintiffs racked up nearly $200,000 fending off their attacks on the road to victory. And *Bigby* only dealt with fees attributable to intervenors from an appeal where the principal defendant did not participate and where intervenors only advanced their own interests—unlike here, where the State was there every step of the way and the Intervenors defended the State's interests in SB8. 927 F.2d at 1427-28.

Indeed, as noted above, the State let the Intervenors take up the primary defense of SB8. The State relied on Intervenors because it wanted the deals it cut in SB8 to remain the law; it was the party enjoined for enacting SB8; it continued to defend SB8; and it refused to repeal SB8 until the Supreme Court affirmed this Court's injunction two years later. It rode the Intervenors' coattails as far as it could, not from indifference, but lured by opportunity. Absent the Intervenors,

the State would have had far more work to do. Now once again, the State glides in Intervenors' draft by trying to rescind the parties' scheduling agreement, dismiss this case prematurely, and even vacate this Court's final injunction. The State's cynical alliance with Intervenors to defend SB8 and undermine the protections of this Court's final judgment has persistently multiplied Plaintiffs' fees. It now threatens to yield a windfall to the State. This Court should enforce in-Circuit authority and restore $140,686.30 in fees and $17,520.59 in costs expended in defeating the State's litigating partners. Exhibit A, "Third Declaration of E. Greim," Ex. EG-1, Tbl. 1-A.

**II. Plaintiffs Should Recover Fees and Costs for Supplemental Briefing.**

Plaintiffs should also recover their fees and costs from supplemental briefing—including $401,512.30 in cut fees and $24,036.10 in cut costs. *Id.*, Ex. EG-1, Tbl. 2. The State remained an Appellant, filed with Appellants, and sought relief that contradicted Plaintiffs' requested relief. State Supp. Br. 17-41. The State—not the private Intervenors alone—continued to prosecute their appeal. As such, supplemental briefing was not "overwhelmingly necessitated by the private litigants" but by the *State*. Doc. 345 at 36-37 (footnote omitted). And given the State's proclivity to fling marginal theories against the wall to see what would stick (including by telling the Supreme Court that Plaintiffs' winning claim was "non-justiciable") the State's ninth-inning about-face seeking technical affirmance did not suddenly make it a trustworthy ally. It would have been malpractice for Plaintiffs' counsel to stop representing Plaintiffs (the only Appellees) on rehearing. The Court ultimately granted Plaintiffs' requested relief, providing lower courts with additional clarity on Section 2. By so doing, the Supreme Court rejected the State's extreme and risky position that this Court could not be affirmed under existing precedent, and that Plaintiffs could only win if the Court adopted new rules regarding racial predominance and strict scrutiny. *Callais*, 146 S. Ct. at 1153-61. By insisting even on rehearing that this Court's injunction was wrong under

existing precedent, the State continued its errant challenge to this Court's reasoning and maintained "related legal theories" to Intervenors. *Kellstrom*, 50 F.3d at 327 (quotation omitted); State Supp. Br. 1; Oral Arg. Tr., 49:20-50:1, https://perma.cc/X52M-LVL3.[2] Plaintiffs' time responding to those errant claims was inseparable from work on the rest of the brief and oral argument, so Plaintiffs can recover all fees. *Kellstrom*, 50 F.3d at 327 & n.12.

Moreover, the State's latest campaign for vacatur of this Court's injunction of SB8, attempt to circumvent this Court's remedial authority, and argument that it repealed SB8 entirely of its own volition without any instruction from this Court proves that it only wanted to claim credit for the *win* at the Supreme Court—but not be actually bound by the *result*. The Supreme Court resoundingly affirmed this Court's injunction against SB8. Now the State wars against that result with its Motion to Vacate—a bridge too far even for Intervenors. This latest maneuver confirms that Plaintiffs could never trust the State by trotting to the sideline. Plaintiffs' presence at every stage of this litigation has been imperative; they should recover all fees incurred along the way.

## III. The Court Should Not Reduce Paul Hurd's Reasonable Rate.

The R&R also reduces Louisiana co-counsel Paul Hurd's rate from $425 to $375 with little comment. Mr. Hurd's affidavit detailed his 48 years of legal experience, including over 30 years in redistricting litigation; he was lead trial counsel in the original *Hays* litigation, *Vera v. Bush*, 861 F. Supp. 1304 (S.D. Tex. 1994), and *Moon v. Meadows*, 952 F. Supp. 1141 (E.D. Va. 1997)—all successful *Shaw* claims. Doc. 340-2. His extensive experience and specialized knowledge were essential to Plaintiffs' success. His full hourly rate is not just reasonable, it is the bare minimum given his qualifications. Use of that rate yields a lodestar net gain of $14,761.50. Ex. A at ¶ 8.

---

[2] That distinguishes this case from *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631 (5th Cir. 1986), where "the government did not challenge any aspect of the district court's decision that was affirmed by this court." *Id.* at 636. Moreover, that decision hinged on the statutory term, "appropriate," a term absent from § 1988. *Id.* at 632.

## IV. The Court Should Not Reduce Any Fees for "Block Billing."

The R&R also reduces 448.65 hours by 25% and 1,543.45 hours by 10% for alleged "block billing." This is a common billing practice and doesn't justify a reduction without some showing—which the State never made—that fees were excessive or unjustified. Underscoring this point, the State's own attorney in this matter (and others in his firm) *themselves* "block billed" another matter where they seek recovery for *all* fees (without any reduction for block billing) against DeSoto Parish and the DeSoto Parish Police Jury. *See* Exhibit B, "Plaintiffs' Motion for Attorneys' Fees and Expenses, *Means v. Desoto Parish*, No. 5:23-cv-00669-JE-MLH (W.D. La.)," at 35-133.[3]

Moreover, there is no reduction requirement or problem with block billing per se. Trouble arises when descriptions are "too vague to permit meaningful review." *Kellstrom*, 50 F.3d at 326 (citation omitted). But the State never makes that argument. Nor does it claim these hours were unreasonable, duplicative, or excessive. Thus, it does not provide the necessary basis for reduction. *RSDC Holdings, LLC v. M.G. Mayer Yacht Servs., Inc.*, 429 F. Supp. 3d 238, 244 (E.D. La. 2019) (finding no reason to reduce block billed entries where no concerns arose about reasonableness of hours). Moreover, "Plaintiff[s'] counsel . . . is not required to record in great detail how each minute of his time was expended"—only "the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Counsel need only submit "records containing the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered." *LULAC v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). Courts must be "mindful that practical considerations of the daily practice of law in this day and age preclude

[3] Tellingly, there, counsel argues that his clients, who brought Fourteenth Amendment racial gerrymandering claims, are prevailing parties based only on a consent decree, *id*. at 15; that attorney's fees are available "where the plaintiff has received a judgment on the merits" or permanent injunction, *id*. at 13, 15-16; and that the court should enhance the award given the difficulty of navigating the law in the midst of *Louisiana v. Callais*, *id*. at 23, 32. All these points should estop the State from arguing here, via the same attorney, that the Plaintiffs are somehow not prevailing parties.

'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour" and "that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry." *Id.* (quotation omitted). Even had the State justified any specific cut, a catch-all cut of 25% is grossly inflated and 10% is too high given the clarity of the billing records. *See, e.g.*, *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006) (only affirming 10% where records were vague, duplicative, and not indicative of billing judgment); *Franciscan All.*, 681 F. Supp. 3d at 642 (allowing 5%).

Plaintiffs should recover $99,937.25 of the cut fees. Ex. A, Ex. EG-1, Tbls. 1-B & 8.

## V. Plaintiffs Should Recover All Travel Fees and Costs.

The R&R also reduces travel time for attorneys at Graves Garrett Greim by 50%. But this is not standard. The State's own attorney (and his associates) noted no cuts to their travel time in their recent fee application. Ex. B at 67, 78, 80-81. And as the R&R acknowledges, courts only sometimes lower travel hours, and they do not when "any legal work was accomplished during travel time." Doc. 345 at 28 (quotation omitted). Here, the R&R admits: "Plaintiffs state that the attorneys often worked while traveling. Their time entries confirm same." *Id.* at 39. Therefore, the Court should not reduce travel hours and should allow for recovery of $13,251 of the previously cut fees. Ex. A, Ex. EG-1, Tbl. 7.

Nor should the Court eliminate part of Plaintiffs' reasonable travel expenses. Doc. 345 at 47 (cutting $5,504.05 of travel expenses as extravagant by 50%). Again, the State's own attorney incurred and seeks to fully recover comparable travel expenses, including $956.40 for one round trip to Shreveport, $1,086.40 for another flight, $764.35 in lodging in Shreveport for one trip, and $558.22 in lodging for another trip. Ex. B at 136; Doc. 336 at 29 (State counsel chastising Plaintiffs for "overly luxurious travel-related expenses, such as multiple flights for over a thousand dollars

and hotel stays for over $500 per night"). These expenses confirm that when parties travel to certain parts of Louisiana, flights will cost more. Mr. Hurd lives in Monroe, Louisiana, which only has a small airport and no direct flights to Washington, D.C., so naturally his travel was more expensive. His hotel costs were also unavoidable due to a large convention in Washington, D.C.

### VI. Plaintiffs Should Recover Fees for Their Reply Brief, Response to the Motion for Extension of Time, and Other Actions Taken in Support of Motion for Fees.

Finally, as the R&R acknowledges, Plaintiffs are entitled to recover fees related to the Motion for Fees. Doc. 345 at 39; *Cruz v. Hauck*, 762 F.2d 1230, 1233-35 (5th Cir. 1985); *Kirchberg v. Feenstra*, 708 F.2d 991, 1001 (5th Cir. 1983); *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 547 (5th Cir. 1980); *Kellstrom*, 50 F.3d at 336. That should include Plaintiffs' Reply Brief, Response to the State's Motion for an Extension of Time to File Objections, and these Objections—which were not part of Plaintiffs' initial calculation in June 2026. *Cruz*, 762 F.2d at 1234 ("As any prudent and reasonable attorney would do in this situation, Plaintiffs' attorneys replied to the Defendants' objections. The time spent so replying is compensable under § 1988. To hold otherwise would dilute the fee award and be inconsistent with the purposes of § 1988."); *Franciscan All.*, 681 F. Supp. 3d at 643 (allowing recovery of all fees incurred in litigating fees even though plaintiffs did not recover all hours sought in the motion for fees). Those amount to $27,160.00 in fees. *See* Ex. A at ¶ 6, Ex. EG-2. Since Plaintiffs filed their initial Motion for Fees, the State has multiplied proceedings and refused to meet and confer, so these fees and expenses have been absolutely necessary to obtain relief.

## CONCLUSION

Plaintiffs respectfully ask the Court to make the foregoing adjustments to the R&R and award Plaintiffs an additional $682,546.80 in fees and $44,308.72 in costs and expenses, for a total recovery of $1,602,895.05 in fees and $148,058.55 in costs and expenses—or $1,750,953.60 total.

Dated this 10th day of November, 2026

PAUL LOY HURD, APLC
/s/ Paul Loy Hurd
Paul Loy Hurd
Louisiana Bar No. 13909
1896 Hudson Circle, Suite 5
Monroe, Louisiana 71201
Tel.: (318) 323-3838
paul@paulhurdlawoffice.com
*Attorney for Plaintiffs*

Respectfully submitted,

GRAVES GARRETT GREIM LLC
/s/ Edward D. Greim
Edward D. Greim,* Mo. Bar No. 54034
Matthew Mueller,* Mo. Bar No. 70263
Katherine E. Mitra,* Mo. Bar No. 74671
Sarah R. Pineau,* Mo. Bar No. 74483
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com
spineau@gravesgarrett.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 10th day of November, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

/s/ Edward D. Greim
Edward D. Greim
*Attorney for Plaintiffs*