**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PHILLIP CALLAIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana.<br><br>Defendant. | Civil Action: 3:24-cv-00122<br><br>Hon. Carl E. Stewart<br>Hon. Robert R. Summerhays<br>Hon. David C. Joseph |

# THE STATE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

OBJECTIONS ........ 1

A. PLAINTIFFS ARE NOT PREVAILING PARTIES ........ 2

B. EVEN IF PLAINTIFFS WERE PREVAILING PARTIES, FEES AND COSTS ARE APPROPRIATELY ASSIGNED, IN WHOLE OR IN PART, TO THE *ROBINSON* INTERVENORS AND *GALMON* INTERVENORS. ........ 10

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) .......... 10

*Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Servs.*,
532 U.S. 598 (2001) .......... 7

*Callais v. Louisiana*,
146 S. Ct. 1111 (2026) .......... 3

*Callais v. Louisiana*,
No. 25A1197 (U.S. filed Apr. 30, 2026) .......... 3, 7

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) .......... 5

*Houston Chronicle Publishing Co. v. City of League City*,
488 F.3d 613 (5th Cir. 2007) .......... 9

*Independent Federation of Flight Attendants v. Zipes*,
491 U.S. 754 (1989) .......... 13

*Kirchberg v. Feenstra*,
708 F.2d 991 (5th Cir. 1983) .......... 8, 9, 12

*Lackey v. Stinnie*,
604 U.S. 192 (2025) .......... *passim*

*Lefemine v. Wideman*,
568 U.S. 1 (2012) .......... 10

*Louisiana v. Callais*,
608 U.S. 85 (2026) .......... 1, 10, 11, 13

*Rhodes v. Stewart*,
488 U.S. 1 (1988) .......... 9

*Robinson v. Callais*,
144 S. Ct. 1171 (2024) .......... *passim*

*UFO Chuting of Hawaii, Inc. v. Smith*,
508 F.3d 1189 (9th Cir. 2007) .......... 6

*Veasey v. Abbott*,
13 F.4th 362 (5th Cir. 2021) ....................8

*Walker v. City of Mesquite*,
313 F.3d 246 (5th Cir. 2002) ....................13

**Statutes**

42 U.S.C. § 1988(b) .................... *passim*

## OBJECTIONS

In the fall of 2025, Plaintiffs asked the State to lead oral (re)argument in the United States Supreme Court against S.B. 8's District 6. The State agreed, asserting the position it staked out in the preexisting *Robinson* litigation and had briefed for reargument in this case before the Supreme Court: that the Constitution prevents federal courts from forcing the State to draw congressional district lines based on race. In April 2026, the Supreme Court issued its decision, *Louisiana v. Callais*, 608 U.S. 85 (2026), agreeing with the State that what happened in the *Robinson* litigation was blatantly illegal—and that the State never should have been forced to adopt the S.B. 8 map. The next day, Louisiana suspended its congressional primary elections, and ultimately the State repealed S.B. 8 and adopted Act 2. Plaintiffs now concede that Act 2 "fully cures the racial gerrymander in SB8's District 6." ECF 322-1 at 29.

Plaintiffs now seek millions of dollars in fees and costs solely against the State.[1] On October 27, 2026, the Magistrate Judge entered a Report and Recommendation recommending that Plaintiffs' motion for fees and costs be granted in part and denied in part. *See* ECF 345 (R&R). The State agrees with the able Magistrate Judge's recommendation in substantial part, including, for example, the Magistrate Judge's rejection of Plaintiffs' overinflated numbers—assuming Plaintiffs could recover fees and costs to begin with. The State disagrees, however, with that assumption and thus submits the following "specific, written objections," R&R 48, preserved in their original opposition to Plaintiffs' motion, ECF 336: (A) Plaintiffs are not prevailing parties entitled to fees and costs; (B) even if they were, given the extraordinarily unique circumstances surrounding this case, the *Robinson* Intervenors and the *Galmon* Intervenors must be assigned all,

[1] From here on, this brief refers to the State and the Secretary of State collectively as "the State" unless otherwise noted.

or at least their portion, of the fees and costs. Accordingly, the Court should reject the Report and Recommendation on those grounds and deny Plaintiffs' motion in full.

**A. Plaintiffs Are Not Prevailing Parties.**

The Court should deny Plaintiffs' motion in full because Plaintiffs are not "prevailing part[ies]" entitled to recover fees and costs. 42 U.S.C. § 1988(b). As the Magistrate Judge explained, the American Rule generally bars a litigant in this country from recovering fees and costs from his opponent. R&R 12–13. As a result, Plaintiffs can recover fees and costs in this case only if they fall within § 1988(b), which provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." "[F]or the purposes of § 1988(b), a plaintiff 'prevails' when a court conclusively resolves his claim by granting enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025). "Critically," the Supreme Court has emphasized, "both the change in relationship and its permanence must result from a judicial order." *Id.* Plaintiffs plainly do not meet that standard—and respectfully, the Report and Recommendation is wrong to conclude otherwise.

1. The only putative relief entered by this Court is its April 30, 2024 injunction providing that "[t]he State of Louisiana is prohibited from using SB8's map of congressional districts for any election." ECF 198 at 59. Everyone agrees that this injunction never took effect in 2024: The Supreme Court almost immediately stayed the injunction pending appeal, *Robinson v. Callais*, 144 S. Ct. 1171 (2024), and the 2024 Louisiana congressional elections were administered under the S.B. 8 map. Accordingly, the Report and Recommendation rightly does not suggest that the April 2024 injunction constituted "enduring judicial relief on the merits that alters the legal relationship between the parties"—at least in 2024. *Lackey*, 604 U.S. at 207. The injunction did not endure at all at that point, much less alter the legal relationship between the parties.

2. That did not change with the Supreme Court's merits decision on April 29, 2026. The Court's judgment did not issue until May 4, *see Callais v. Louisiana*, 146 S. Ct. 1111 (2026), thereby reviving this Court's April 2024 injunction on that day. *Contra* ECF 261 at 1 (mistakenly stating that the Supreme Court's merits decision immediately revived the injunction).[2] Days before the Supreme Court's judgment issued, the Louisiana Governor already had suspended the Louisiana congressional primaries and urged the Louisiana Legislature to immediately pass a new congressional map. *See* Letter of Louisiana, *Callais v. Louisiana*, No. 25A1197 (U.S. filed Apr. 30, 2026). This Court likewise affirmed that Louisiana would have the voluntary choice "to enact a Constitutionally compliant map." ECF 261 at 1.

There can be no question that the Supreme Court's merits decision itself does not constitute "enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. That decision standing alone is no more than a mere declaration that S.B. 8 is unconstitutional. And a litigant is not a prevailing party "when a court enters a declaratory judgment but does not modify the defendant's behavior toward the plaintiff." *Id.* at 202; *see id.* at 207 (stating that it is "[c]ritical[]" that "both the change in [the parties'] relationship and its permanence must result from a judicial order").

As a result, the only conceivable basis for deeming Plaintiffs prevailing parties is the fact that the Louisiana Legislature subsequently passed (and the Governor signed) Act 2, which eliminated S.B. 8. Indeed, this is exactly what Plaintiffs have represented to this Court. *See* ECF 322-1 at 12, 29 (claiming that "Act 7 [sic] cures Plaintiffs' racial gerrymandering injury in SB8's District 6" and that "the State repealed SB8 and enacted Act 7 [sic] for use in the 2026 election,

[2] In fairness to this Court, the State highlighted for the United States Supreme Court how its 2024 stay order "plausibl[y]" (though ultimately incorrectly) could be viewed as allowing for the immediate reinstatement of the injunction when the merits decision was issued. Louisiana's Resp. to Appl. for Issuance of Opinion and Judgment Forthwith 2 & n.1, *Callais v. Louisiana*, No. 25A1197 (U.S. filed Apr. 30, 2026).

which fully cures the racial gerrymander in SB8's District 6"). But Act 2 bears none of the hallmarks required by *Lackey*: Act 2 is not "a judicial order," does not "bear[] a judicial *imprimatur*," and is not "judicially sanctioned." *Lackey*, 604 U.S. at 202, 207. In fact, Louisiana could have done nothing at all and would have violated no court directive—which is a dead giveaway that Act 2 cannot be the basis for deeming Plaintiffs prevailing parties. *See* ECF 261 at 1 ("afford[ing] [Louisiana] the opportunity to enact a Constitutionally compliant map").

Worse, Act 2 is precisely the sort of "voluntary action[]" that the Supreme Court has held *insufficient* to confer prevailing-party status. *Lackey*, 604 U.S. at 202–03. The Supreme Court has long "rejected the 'catalyst theory'—the theory that a plaintiff may receive attorney's fees under § 1988(b) when he 'achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.'" *Id.* at 202. Such voluntary changes do not render a litigant a prevailing party "because there [is] 'no judicially sanctioned change in the legal relationship of the parties.'" *Id.* That is the case here: Although Louisiana could have done nothing at all, it adopted Act 2, which both eliminated the basis of this lawsuit (S.B. 8) and (by Plaintiffs' own account) "fully" "cure[d] Plaintiffs' racial gerrymandering injury in SB8's District 6." ECF 322-1 at 12, 29. Their claim for attorney's fees and costs now thus rests on a textbook invocation of the long-rejected catalyst theory.

*Lackey* itself presents a perfect example of why Plaintiffs' motion is foreclosed on catalyst grounds. There, the Virginia General Assembly "repealed" a challenged law after a federal district court preliminarily enjoined it. 604 U.S. at 197. The case was thus "moot," and the only question was whether the plaintiffs still could obtain attorney's fees. *Id.* In dissent, Justices Jackson and Sotomayor complained about "the strategic mooting of cases by defendants to avoid paying attorney's fees." *Id.* at 223 (Jackson, J., dissenting). They claimed that Virginia had seen "the

writing on the wall" and thereafter moved its General Assembly to moot the lawsuit and relieve the State of paying costly legal fees. *Id.* Yet the *Lackey* majority squarely rejected those complaints: "We found similar concerns to be 'entirely speculative' when we rejected the catalyst theory ...." *Id.* at 204 (maj. op.). All the same here: There is no serious claim that Louisiana sought to "strategically" moot this suit to avoid fees and costs—it just wanted its preferred congressional map. But, even if Louisiana had done so, *Lackey* and its predecessors squarely foreclose using a voluntary legislative act to supply the basis for assessing attorney's fees and costs.

3. Respectfully, the Magistrate Judge misapplied the law in concluding otherwise. The Magistrate Judge principally erred by failing to articulate and apply *Lackey*'s governing rule: "[A] plaintiff 'prevails' under the statute when a court conclusively resolves a claim by granting enduring judicial relief on the merits that materially alters the legal relationship between the parties." *Id.* at 203–04; *see id.* at 203 ("Today, we establish that the enduring nature of that change must itself be judicially sanctioned."). Without that guidepost, the Report and Recommendation went awry in three critical respects.

*First*, the Magistrate Judge reasoned that "Plaintiffs obtained judicially sanctioned relief via permanent injunction after a trial on the merits, which was affirmed by the Supreme Court." R&R 15. But, as the Magistrate Judge did not dispute, the April 2024 injunction against S.B. 8 never had any effect: The Supreme Court stayed it before it could govern the 2024 Louisiana congressional elections, and it did not govern the 2026 Louisiana congressional elections because Louisiana adopted a new map repealing S.B. 8. Indeed, as Louisiana has separately explained, ECF 329-1, that injunction is unquestionably moot because it purports to enjoin the use of a law that does not exist.[3] Because the April 2024 injunction never governed any election, it cannot be

[3] Although Louisiana does not need vacatur of the 2024 injunction order to prevail here, it bears noting that such vacatur—which is plainly warranted because the injunction enjoins nothing—will confirm that there is no

characterized as "relief" at all, much less "enduring judicial relief." *Lackey*, 604 U.S. at 203. At most, it was akin to "a declaratory judgment" regarding S.B. 8, which does "not" render a plaintiff a prevailing party. *Id.* at 202; *see UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1197–98 (9th Cir. 2007) (where a permanent injunction is "stayed before the State had to change its behavior," the plaintiff "cannot be considered the 'prevailing party'" because the plaintiff does "not receive a direct benefit").

*Second*, the Magistrate Judge claimed that the April 2024 injunction "materially altered the parties' legal relationship because, without the order, Plaintiffs would have been required to continue to vote in an unconstitutionally drawn congressional district." R&R 15. As a matter of fact, that is incorrect because—given the Supreme Court's 2024 stay—Plaintiffs *were* required to vote under the S.B. 8 map. That is proof positive that the April 2024 injunction did not alter the parties' relationship at all. In addition, it is incorrect to say that S.B. 8 would have continued to govern without the April 2024 injunction. As the timeline makes clear, Louisiana suspended its congressional primary elections with an eye toward adopting its new and preferred map *before* the April 2024 injunction was reinstated by the Supreme Court's judgment. *Contra* R&R 16 n.4 (mistakenly stating that "the State only took action to re-draw its congressional map once the permanent injunction became final"). As Louisiana contemporaneously told the Supreme Court, the State's ability "to immediately produce a constitutional map and electoral process for Louisiana" was in no way "contingent" upon additional actions by the federal judiciary.

enduring judicial relief in this case permitting an award of attorney's fees. *See, e.g.*, *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 837 (5th Cir. 2023) ("Ordinarily, a permanent injunction relating to a challenged law or regulation cannot continue after the law or regulation is removed."). Louisiana sought to defer the filing of these objections in part because the Court has now deferred (ECF 347) its own decision on the vacatur issue, but the Court denied that request, ECF 350.

Louisiana's Resp. to Appl. for Issuance of Opinion and Judgment Forthwith 3, *Callais v. Louisiana*, No. 25A1197 (U.S. filed Apr. 30, 2026).

*Third*, the Magistrate Judge concluded that the April 2024 injunction—combined with this Court's April 30, 2026 order—"modified the State's behavior" by giving Louisiana the "opportunity" (or "motivat[ing]" Louisiana) to adopt Act 2. R&R 15–17. That is a misstatement of the governing legal standard—and it is a direct invocation of the catalyst theory. The question here is whether this Court "grant[ed] enduring judicial relief on the merits that materially alters the legal relationship between the parties"—and whether "the enduring nature of that change [was] itself [] judicially sanctioned." *Lackey*, 604 U.S. at 203–04. There can be no dispute that the "change" in the parties' relationship came through Louisiana's voluntary adoption of Act 2. Nor can there be any dispute that this Court did not order the adoption of Act 2, much less dictate its enduring nature. Relying on Act 2's winning effects for Plaintiffs, therefore, is to resurrect the prohibited catalyst theory.

The Magistrate Judge had no answer to this problem. The Magistrate Judge emphasized (again) that "there was a judicially sanctioned change in the legal relationship of the parties via the permanent injunction." R&R 17. That is a red herring. The Magistrate Judge did not acknowledge that the April 2024 injunction itself gave no relief to Plaintiffs; the relevant "change" here came through Act 2 (which Louisiana was free to adopt or not adopt); and there is no serious claim that this Court "grant[ed] enduring judicial relief" in the form of Act 2, *Lackey*, 604 U.S. at 203; *see Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Servs.*, 532 U.S. 598, 606 (2001) ("Never have we awarded attorney's fees for a nonjudicial 'alteration of actual circumstances.'"). The Court need only take Plaintiffs at their word: It is Act 2 that "fully cures" their asserted injuries. *See* ECF 322-1 at 12, 29. That is the end of this matter.

4. The Magistrate Judge's cited cases do not change anything. The Magistrate Judge relied on *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021), for its statements of black-letter law. Those statements must be understood in light of the later *Lackey* decision, particularly insofar as *Lackey* for the first time "establish[ed] that the enduring nature of th[e] change [in the parties' legal relationship] must itself be judicially sanctioned." 604 U.S. at 203. But insofar as the Magistrate Judge attempted (R&R 16) to draw a parallel between this case and *Veasey*, that was mistaken.

*Veasey*'s holding itself is likely no longer good law because it based prevailing-party status on the entry of an "interim" district court order intended to govern 2016 and 2017 elections. 13 F.4th at 366. To the extent that the order was effectively a preliminary injunction, *Lackey* appears to abrogate *Veasey*. *See* 604 U.S. at 201 (generally holding that preliminary injunctions "do not confer prevailing party status"). But the Court need not go that far because *Veasey* is night-and-day different from this case. There, the district court's interim order actually barred the enforcement of the challenged voter-identification law during the 2016 and 2017 elections. Put otherwise, it was "judicially sanctioned relief ... that materially altered the legal relationship between the parties and directly benefited Plaintiffs during the [] elections." *Veasey*, 13 F.4th at 369. Here, by contrast, the 2024 injunction never barred anything: S.B. 8 was used in 2024 (because the injunction was stayed), and it was not used in 2026 (because S.B. 8 no longer exists). The facts in *Veasey* do not move the needle for Plaintiffs. *Contra* R&R 16 n.4.

The Magistrate Judge also found "apt[]" (R&R 17–18) the four-decade-old decision in *Kirchberg v. Feenstra*, 708 F.2d 991 (5th Cir. 1983). As its age reflects, *Kirchberg* predates nearly every relevant Supreme Court decision interpreting § 1988(b). *See Lackey*, 604 U.S. at 202–04. That matters because subsequent Supreme Court precedents abrogated, or at least limited, *Kirchberg*. *Kirchberg* held that a mere declaratory judgment that a statute "was unconstitutional"

is sufficient to render the plaintiff a prevailing party. 708 F.2d at 997–98. Five years later, however, the Supreme Court held that "a party does not qualify as a 'prevailing party' ... when a court enters a declaratory judgment but does not modify the defendant's behavior toward the plaintiff." *Lackey*, 604 U.S. at 202 (citing *Rhodes v. Stewart*, 488 U.S. 1 (1988) (per curiam)). Insofar as *Kirchberg* endorsed the opposite rule (which is why the Magistrate Judge block-quoted *Kirchberg*, R&R 18), *Kirchberg* is no longer good law.[4] The Magistrate Judge also summarily cited *Houston Chronicle Publishing Co. v. City of League City*, 488 F.3d 613 (5th Cir. 2007), but, in that case, a permanent injunction at final judgment benefited the newspapers for three months (as to subsequently repealed ordinance provisions). *Id.* at 617. There was thus no doubt that the newspapers "obtained the primary relief they sought" from the federal courts. *Id.* at 624. And that, of course, is nothing like the facts presented here.

* * *

In short, Plaintiffs come nowhere close to satisfying the standard the Supreme Court recently deemed "[c]ritical" to establishing prevailing-party status: that "both the change in relationship [between the parties] and its permanence must result from a judicial order." *Lackey*, 604 U.S. at 207. Act 2 is not a judicial order—and it is the only thing that "fully cures" Plaintiffs' asserted injuries. *See* ECF 322-1 at 12, 29. Plaintiffs are not prevailing parties entitled to fees and costs under § 1988(b).

[4] Although *Kirchberg* did not make this argument, it is possible to construe *Kirchberg* as standing for a more-limited proposition consistent with *Lackey* and *Rhodes*—namely, that a declaratory judgment that has the effect of voiding a legal document (there, a mortgage) suffices to render a plaintiff a prevailing party. *See* 708 F.2d at 994 (explaining the putative plaintiff's "challeng[e] [to] the constitutionality of the statutory scheme empowering her husband to unilaterally execute a mortgage on their jointly-owned home"). It is unclear whether the facts in *Kirchberg* could support that argument, but, in any event, the Magistrate Judge rightly did not cite *Kirchberg* for this narrower standard because Plaintiffs could not meet it.

### B. Even If Plaintiffs Were Prevailing Parties, Fees and Costs Are Appropriately Assigned, in Whole or in Part, to the *Robinson* Intervenors and *Galmon* Intervenors.

Even if the Court thought otherwise, it should exercise "its discretion," § 1988(b), to decline to assign full responsibility for fees and costs against the State—and assign full or partial responsibility to the *Robinson* Intervenors and *Galmon* Intervenors.

1. The Supreme Court has emphasized that such "discretion is not without limit: the prevailing party 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989); *accord Lefemine v. Wideman*, 568 U.S. 1, 5 (2012). Special circumstances exist here in two interrelated ways.

*First*, this lawsuit—and this fees issue—would not exist but for the *Robinson* Intervenors and the *Galmon* Intervenors. Together, they sued the State in the Middle District of Louisiana, challenging Louisiana's 2022 congressional map. *See Callais*, 608 U.S. at 103. Together, they successfully demanded a preliminary injunction against the 2022 map on the ground that the map "likely violated the Voting Rights Act by failing to include a second majority-black district." *Id.* Together, they secured the Fifth Circuit's affirmance that the injunction "was valid when it was issued." *Id.* (citation omitted). And thus, together, they placed Louisiana in an impossible situation where—as the Supreme Court realized—"Louisiana did not have many options." *Id.* at 104. In particular, "if Louisiana refused to adopt [] a map" with "a second majority-black district," "the District Court would likely draw one and mandate its use." *Id.*; *see id.* at 122–23 ("The State never hid the ball: It configured District 6 to achieve a black voting-age population over 50% because it knew that if it failed to do so, the *Robinson* court would very likely find its map unlawful and order the use of something like the *Robinson* plaintiffs' illustrative maps, which would have imperiled one of the influential incumbents the legislature sought to protect."); *id.* at 92 ("In this suit, Louisiana adopted the challenged map and created the second majority-black district because it

quite reasonably anticipated that, if it did not do so, the Middle District of Louisiana would order the use of a map with a differently configured second majority-black district that would effectively oust an incumbent whom the legislature sought to protect."). S.B. 8, this lawsuit, and this fees issue thus unquestionably would not exist but for the *Robinson* Intervenors and *Galmon* Intervenors.

*Second*, although this case began as an Equal Protection Clause challenge, it ended as a relitigation of the Voting Rights Act question in *Robinson* itself. *See id.* at 122–25 ("Under the updated *Gingles* framework, the facts of this suit easily require affirmance."). Specifically, the Supreme Court held that, "at every step of the *Gingles* framework, the *Robinson* plaintiffs failed to prove their § 2 case." *Id.* at 123. "On the first *Gingles* precondition," the Court held that "the *Robinson* plaintiffs did not meet their burden" and that "[t]he *Robinson* court erroneously concluded" otherwise. *Id.* "[O]n the second and third *Gingles* preconditions," the Court likewise held that the *Robinson* plaintiffs did not "meet their burden" and that "[t]he *Robinson* court" committed a litany of errors. *Id.* at 124. Having now decided the *Robinson* Voting Rights Act question *exactly as Louisiana had litigated it in that case*, the Supreme Court concluded that "no compelling interest justified the State's use of race in creating SB8" because "the Voting Rights Act did not require Louisiana to create an additional majority-minority district." *Id.* at 124–25.

That transformation of this case into *Robinson* itself matters. It demonstrates the on-the-ground reality that this entire saga in Louisiana is the handiwork of the *Robinson* Intervenors and the *Galmon* Intervenors. They started the whole thing with the *Robinson* litigation. Having effectively prevailed there, they then ran to this Court claiming "a strong interest in the maintenance of two majority-black congressional districts in Louisiana and in protecting the legal rulings in their favor in *Robinson*." ECF 18-1 at 10 (capitalization omitted); *accord* ECF 10 at 2 (Galmon Intervenors seeking to "preserv[e] both their own voting rights and the victory that

Galmon Movants achieved as a result of their litigation"). And now the Supreme Court has ended this saga by holding that the *Robinson* Intervenors and *Galmon* Intervenors should have never succeeded in the first place in *Robinson*.

Put otherwise, although the State is "nominally a defendant" in this case, *Kirchberg*, 708 F.2d at 996–97, the *Robinson* Intervenors and *Galmon* Intervenors are the real defendants in interest because—by their own admission—*this* suit was about whether they could maintain their "victory" in *Robinson*. Indeed, by prevailing on the position it adopted all along in the *Robinson* litigation, the State *itself* is just as much of a prevailing party as Plaintiffs claim to be. *See* ECF 336 at 10–11. That is the best reason imaginable to exercise this Court's discretion by assigning responsibility for fees and costs to the *Robinson* Intervenors and the *Galmon* Intervenors.

2. The Magistrate Judge mistakenly declined to do so for reasons that are difficult to understand. Most important is the Magistrate Judge's misunderstanding of the discretion to award and allocate attorney's fees. Specifically, the Magistrate Judge never addressed whether the *Robinson* Intervenors and *Galmon* Intervenors' responsibility for this entire saga warrants an exercise of discretion to decline to award fees against the State or at least apportion the fees and costs fairly between the parties. *Cf.* ECF 336 at 12–13 (State's brief pressing this point). The Magistrate Judge simply included a footnote summarily "reject[ing]" the argument. R&R 19 n.6. Above the line, the Magistrate Judge appears to have believed that, if the Intervenors could not be characterized as acting frivolously, then they cannot be responsible for fees. R&R 19. But that is obvious error: Just as in any comparative fault analysis, whether a defendant can actually pay a judgment does not affect the assignment of that defendant's percentage of fault (and a co-defendant's corresponding reduced percentage of fault). Here, the *Robinson* Intervenors and

*Galmon* Intervenors are 100% at fault for this litigation, which correspondingly should reduce the State's own percentage of fault and liability for fees and costs.[5]

More fundamentally, the Magistrate Judge misunderstood *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), to effectively immunize the *Robinson* Intervenors and *Galmon* Intervenors from liability for fees and costs. *Zipes* erects a "high bar" (R&R 19) for fees and costs against intervenors who are "blameless." 491 U.S. at 761. These Intervenors are not blameless. By their own telling, they are responsible for the *Robinson* rulings that precipitated S.B. 8 and this lawsuit itself. Indeed, as emphasized above, they are the real defendants in interest in this lawsuit. And that renders *Zipes* inapposite. *See* ECF 336 at 13 (State's brief explaining how the State and the Secretary of State are functionally true blameless intervenors).

The Magistrate Judge ended by citing *Walker v. City of Mesquite*, 313 F.3d 246 (5th Cir. 2002), which stated that "a state actor's good faith compliance with an official or legal requirement that is unconstitutional is not a special circumstance that justifies the denial of attorney's fees." *Id.* at 251. But, unlike here, the cases *Walker* cited for that proposition addressed only a state actor's supposed belief about what their duties or the law require. And in *Walker* itself, although the defendant was subject to a court order, that defendant never "litigate[d] the unconstitutional terms of the [] order" and "chose not to contest" it. *Id.* By contrast here, the Supreme Court expressly emphasized that Louisiana litigated *Robinson* to the hilt: "Louisiana objected to the decision and promptly appealed. But because of circumstances outside the State's control, its appeal ended up in limbo." *Callais*, 608 U.S. at 103. More, the federal courts left Louisiana without "many options," *id.*—hence S.B. 8. On its own terms, therefore, *Walker* is irrelevant here.

---

[5] The State's primary position is that no fees should be awarded. In the event the Court adopts the Magistrate Judge's Report and Recommendation and makes the State pay any portion of Plaintiffs' attorney fees, the State reserves the right to seek recovery of its own attorney fees and costs. *See* ECF 282 ("Any motion for attorneys' fees shall be due 21 days after the Court's approval of a remedial plan ...unless such time period is extended by the Court.").

* * *

In short, if Plaintiffs were prevailing parties, then the most equitable exercise of this Court's discretion—given the extraordinarily unique circumstances of this case—is to assign the full percentage of fault to the *Robinson* Intervenors and *Galmon* Intervenors, including for fees in the amount of $905,586.75 and costs in the amount of $103,749.83. R&R 48. Alternatively, the Court should equitably allocate responsibility for those fees and costs across the *Robinson* Intervenors, the *Galmon* Intervenors, and the State, such that the State is responsible for no more than 30%.

## CONCLUSION

For these reasons, the Court should decline to adopt the Report and Recommendation and summarily deny the fees motion. Alternatively, the Court should reduce and apportion any award as detailed above.

Dated: November 10, 2026

Respectfully submitted,

NANCY LANDRY
Louisiana Secretary of State

*/s/ Jennifer Bollinger*
Jennifer Bollinger
La. Bar Roll No. 32349
Executive Counsel
Secretary of State Nancy Landry
8585 Archives Ave.
Baton Rouge, LA 70809
Telephone: (225) 362-5101
Jennifer.bollinger@sos.la.gov

JOHN C. WALSH
Louisiana Bar Roll No. 24903
SHOWS, CALI & WALSH, L.L.P.
628 St. Louis St.
P.O. Box 4225
Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561
*john@scwllp.com*

*Counsel for the Secretary of State*

ELIZABETH B. MURRILL
Attorney General of Louisiana

*/s/ Morgan Brungard*
MORGAN BRUNGARD (LA 40298)
Deputy Solicitor General

CAREY TOM JONES (LA 07474)
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 324-9866
BrungardM@ag.louisiana.gov

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY*
Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
2300 N. Street NW, Suite 643
Washington, DC 20037
(540) 341-8808
jtorchinsky@holtzmanvogel.com
*Admitted pro hac vice*

*Counsel for the State of Louisiana*