**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| PHILLIP CALLAIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NANCY LANDRY, in her official capacity as Secretary of State of the State of Louisiana.<br><br>Defendant. | Civil Action: 3:24-cv-00122<br><br>Hon. Carl E. Stewart<br>Hon. Robert R. Summerhays<br>Hon. David C. Joseph |

## THE STATE OF LOUISIANA AND SECRETARY OF STATE'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

As described in the State of Louisiana's and the Secretary of State's (collectively, the "State") Objections to the Report and Recommendation (ECF 352), the State's primary positions are that Plaintiffs are not prevailing parties and thus not entitled to fees, and alternatively, if any fees are awarded, they should be allocated in whole or in part to the *Robinson* and *Galmon* Intervenors. Even accepting the Report and Recommendation's contrary conclusion on those legal issues, however, Plaintiffs ask the Court to add $682,546.80 in fees and $44,308.72 in costs to the recommended award, for a total of $1,750,953.60. ECF 351. The Court should decline that invitation on its de novo review of those portions of the Report and Recommendation to which Plaintiffs object. *See* 28 U.S.C. § 636(b)(1)(C). Plaintiffs, as fee applicants, bear the burden of establishing the hours reasonably expended and the reasonable rates. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). They fail to carry that burden.

**ARGUMENT**

The Report and Recommendation's award of $905,586.75 in fees and $103,749.83 in costs is already generous, and Plaintiffs offer no sound basis for increasing it by more than 70%. ECF

345 at 48. Plaintiffs' attempt to saddle the State with fees for litigation the Intervenors generated relies on a concurring opinion, rather than any Supreme Court holding, on intervention-related fees. They also misstate the Report and Recommendation's travel reductions and seek to restore block-billed hours their records do not adequately document. The Court should overrule Plaintiffs' Objections in their entirety. In the event the Court also overrules the State's Objections (it should not), then the Court should adopt the Report and Recommendation in full.[1]

## I. THE REPORT AND RECOMMENDATION CORRECTLY EXC ATTRIBUTABLE TO THE INTERVENORS.

The Report and Recommendation correctly disallowed the $140,686.30 in fees and $17,520.59 in costs that Plaintiffs incurred litigating against the *Robinson* and *Galmon* Intervenors. ECF 345 at 33−35, 46–47. A prevailing plaintiff may recover fees from an intervenor only where the intervention was "frivolous, unreasonable, or without foundation." *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989); *see* ECF 345 at 19. Plaintiffs have not made that showing and instead ask the Court to charge the State for fees caused by the *Robinson* and *Galmon* Intervenors. ECF 345 at 35 n.18. They offer only a concurrence to justify that request. *See* ECF 351 at 2–3 (citing *Zipes*, 491 U.S. at 767 (Blackmun, J., concurring)).

This Court recently rejected reliance on a concurring opinion. *See Boudreaux v. Sch. Bd. of St. Mary Par.*, No. 6:65-CV-11351, 2026 WL 949114, at *6 (W.D. La. Apr. 7, 2026) (Summerhays, J.) ("This argument is supported solely by a concurring opinion in *Freeman.* A concurring opinion is not the law."). And the Fifth Circuit's binding precedent on *Zipes* is that plaintiffs who successfully oppose intervention "'prevail' on th[at] issue" against the *putative intervenors* but not "vis-à-vis [the defendant]." *Hopwood v. Texas*, 236 F.3d 256, 280 (5th Cir.

[1] The State continues to reserve the right to seek its own fees in the event any fees are awarded to Plaintiffs. *See* ECF 352 at 13 n.5.

2000). Since "[n]either logic nor equity supports taxing [the defendant] under [those] circumstances," *id.*, then so too when plaintiffs "elect[] to oppose intervention" and are "[un]successful." *Id.* They simply cannot claim to be the prevailing party on the intervention issue.[2]

Similarly, the Fifth Circuit has held that it is "not appropriate" to saddle a government defendant with expenses from "litigating an issue … in a phase of the litigation in which the party seeking an award was opposed only by other, nongovernmental parties." *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 632 (5th Cir. 1986). The Fourth, Sixth, and Seventh Circuits agree. Under *Zipes*, they bar a prevailing plaintiff from recovering intervention-related fees from the losing defendant. *See Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 177 (4th Cir. 1994) ("[W]e nevertheless conclude that *Zipes* instructs us not to shift intervention-related expenses to the losing defendant."); *Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 635 (6th Cir. 2013) ("*Zipes* discourages sticking defendant with the bill" for plaintiffs' litigation against intervenors); *Bigby v. City of Chicago*, 927 F.2d 1426, 1428–29 (7th Cir. 1991) (same). Citing *Hopwood*, the Magistrate Judge here correctly found *Rum Creek* and *Bigby* more faithful to *Zipes* than the non-binding decisions Plaintiffs cite. ECF 345 at 34.

Plaintiffs attempt to distinguish *Rum Creek* because the fees there arose from opposing intervention and *Bigby* because the intervenors there advanced only their own interests. ECF 351 at 5–6. But the disallowed work here was "exclusively or predominantly related to [the Intervenors'] tasks," ECF 345 at 35, and the Intervenors likewise advanced their own interests. The *Robinson* Intervenors sought to protect "the legal rulings in their favor in *Robinson*," and the *Galmon* Intervenors sought to preserve "the victory" they had achieved there. ECF 352 at 11–12

[2] The Fifth Circuit has left open the question "whether a prevailing plaintiff is absolutely barred from shifting to the defendant the costs associated with defending against an intervention." *Hopwood*, 236 F.3d at 280.

(quoting ECF 18-1 at 10; ECF 10 at 2). Whether the Intervenors themselves should bear those fees (they should) is a separate question addressed in the State's Objections. ECF 352 at 10–14.

Plaintiffs' other authorities do not help them. Start with *Kentucky v. Graham*, 473 U.S. 159, 162 (1985). The plaintiffs there "sought only money damages," there were no intervenors, the case was decided before *Zipes*, and the question on which the Supreme Court granted cert—whether "fees can be recovered from a governmental entity when a plaintiff prevails in a suit against government employees in their personal capacities"—is irrelevant here. *Id.* at 162, 163. In fact, the piece of *Graham* that Plaintiffs cite—that "liability on the merits and responsibility for fees go hand in hand"—is actually about "the distinction between personal- and official-capacity action suits." *Id.* at 165. The full quote is:

> Thus, liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.
>
> Proper application of this principle in damages actions against public officials requires careful adherence to the distinction between personal- and official-capacity action suits. Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions.

*Id.* at 165 (internal citations and footnotes omitted).

Plaintiffs' other cases are equally unavailing. *Nash v. Chandler*, 848 F.2d 567 (5th Cir. 1988), was decided before *Zipes* and *Hopwood*. *Nash v. City of Tyler*, 736 F. Supp. 733, 734–35 (E.D. Tex. 1989), is not binding and predates *Hopwood*, *Rum Creek*, and *Bigby*.

Plaintiffs offer *Jenkins ex rel. Agyei v. Missouri*, 967 F.2d 1248, 1251 (8th Cir. 1992), as persuasive authority, but it deviates from the Fifth Circuit's decisions in *Hopwood* and *Marsh* and those of the other circuits that have addressed this precise issue. *See Binta B.*, 710 F.3d at 635−36; *Mills ex rel. Mills v. Freeman*, 118 F.3d 727, 733 (11th Cir. 1997); *Rum Creek*, 31 F.3d at 177;

*Bigby*, 927 F.2d at 1428–29; *Action on Smoking & Health v. C.A.B.*, 724 F.2d 211, 216 (D.C. Cir. 1984). And the Eighth Circuit has since (a) acknowledged that its *Jenkins* decision runs counter to the majority approach, (b) distinguished *Jenkins* as making defendants "pay plaintiffs' fees incurred in litigating [not] against intervenors" but rather against "the [Desegregation Monitoring Committee], an arm of the court," for the purpose of "defending or monitoring implementation of a desegregation remedy," and (c) followed *Jenkins* in later appeals in that same litigation only due to the Eighth Circuit's version of the rule of orderliness. *Jenkins ex rel. Agyei v. Missouri*, 73 F.3d 201, 205 (8th Cir. 1996).

The remaining district court decisions Plaintiffs cite are not binding. And the Magistrate Judge rightly found that "[t]here is no indication that [*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995)] may be extended to hold a defendant liable for fees attributed to an intervenor, which otherwise is liable for fees only if its position was frivolous or the like." ECF 345 at 34–35 n.17.

Nor were the State and the Intervenors "[u]nited in battle" as Plaintiffs suggest. ECF 351 at 3. After all, the State and the Intervenors had just duked it out in the *Robinson* litigation—all the way to the Supreme Court, the Intervenors joined this case expressly to protect their win in *Robinson*, and the State opposed. There was no alliance there. The Magistrate Judge agreed, finding the State and Intervenors were "nominal allies" at most, the State "never wanted SB8 in the first place," and there was no "evidence that the State endorsed or ratified the [Intervenors'] filings and arguments." ECF 345 at 34. Plaintiffs' general assertion that the State "let Intervenors mount the primary defense," ECF 351 at 3, is nonsense. Plaintiffs have not identified and cannot identify any issue on which the State was not fully engaged. In fact, as discussed below (*see* Section II *infra*), Plaintiffs demanded that the State lead re-argument in the Supreme Court.

The reality is that the Intervenors generated their own extensive motions practice, including motions to intervene and to transfer, motions for reconsideration, a motion in limine, a motion to strike, a motion to reconsider the exclusion of an expert, a last-minute motion to continue trial, stay motions, a separate Fifth Circuit appeal, and repeated efforts by the *Galmon* movants to join the litigation in the Supreme Court. ECF 345 at 4–8. Despite that volume of Intervenor-driven work, the Magistrate Judge made surgical cuts, rather than sweeping ones, to Plaintiffs' requested fees. She excluded in full only entries "exclusively or predominantly" tied to the Intervenors and reduced by a single 25% reduction (that also accounted for block billing) entries partially attributable to them. ECF 345 at 35–36. In the event the Court determines that the State can be held responsible for fees generated by the Intervenors (it should not, *see* ECF 352 at 10–14), the Court should adopt the Report and Recommendation's approach.

## II. The 85% Reduction for Supplemental Briefing Is Warranted and Already Favors Plaintiffs.

Plaintiffs seek $401,512.30 in fees and $24,036.10 in costs for supplemental briefing in the Supreme Court. ECF 351 at 6. But in resolving the question added for re-argument, the Supreme Court agreed with the State's position in *Robinson* that § 2 of the Voting Rights Act did not require an additional majority-minority district. *Louisiana v. Callais*, 608 U.S. 85, 124–25 (2026); ECF 352 at 11; *see* ECF 345 at 9. And Plaintiffs demanded that the State lead oral reargument against S.B. 8's District 6. ECF 352 at 1; Resp. to Mot. for Divided Argument, *Louisiana v. Callais*, Nos. 24–109 & 24–110 (Sept. 24, 2025). Plaintiffs cannot now claim they were unable to "trust" the State, ECF 351 at 6–7, when they themselves demanded that the State lead the case in the Supreme Court. The supplemental-briefing work thus was "overwhelmingly necessitated" by the Intervenors, and the Magistrate Judge's 85% reduction (as opposed to a 100% reduction) already accounts for the State's continued status as an appellant and its later motion to vacate. ECF 345 at

36–37. In the event the Court awards any fees for work generated by the Intervenors (it should not, *see* ECF 352 at 10–14), it should adopt the Report and Recommendation's approach.

## III. Mr. Hurd's $375 Rate Is Supported by the Record.

The relevant market is where the Court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Mr. Hurd practices in Monroe. The Magistrate Judge surveyed recent awards in the Western District showing a $275 to $425 range for civil-rights work done by attorneys in Monroe and $350 to $375 for specialized practitioners in Monroe. ECF 345 at 28–29. Mr. Hurd's own engagement agreement implies about $390 per hour. ECF 345 at 26 n.12. Plaintiffs' objection merely restates credentials the Magistrate Judge expressly considered. ECF 351 at 7; ECF 345 at 29–30, 32. Plaintiffs simply disagree with the Magistrate Judge's $375 hourly rate for Mr. Hurd and offer no basis for rejecting her determination.

## IV. The Block-Billing Reductions Were Proper.

Plaintiffs bear the burden of documenting their hours. *See Hensley*, 461 U.S. at 437. They also bear "the burden of showing the reasonableness of the hours they bill and, accordingly, are charged with proving that they exercised billing judgment." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 770 (5th Cir. 1996). A percentage reduction is the proper remedy for inadequate billing judgment. *See id.* (imposing a 15% reduction based on a "review of the record").

Contrary to Plaintiffs' claim, ECF 351 at 8, the State identified the entries and supplied the detail the Court requested, ECF 345 at 12, 33. The records show that (a) counsel "lumped multiple tasks into one multi-hour billing entry" and (b) the entries subject to the 25% reduction reflected work as to both the State and the Intervenors. ECF 345 at 36–37. That is precisely what prevents the Court (and the State) from any meaningful review and thus justifies reduction. Even so, the Magistrate Judge's 25% and 10% reductions are more modest than what the State requested, *id.*,

and Plaintiffs' own authority affirmed a 10% reduction. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006).

Plaintiffs are grasping at straws when they attempt to enlarge fees that will be borne by the Louisiana taxpayer. That other individuals not involved in this case have hired the same attorney and directed that attorney to make arguments that may differ from what the State argues here is irrelevant. *See* ECF 351 at 8 & n.3 (citing *Means v. Desoto Parish*, No. 5:23-cv-00669-JE-MLH (W.D. La.)). *Contra Culotta v. Lafayette Par. Consol. Gov't*, No. CV 17-0093, 2018 WL 3550499, at *2 (W.D. La. July 20, 2018) (judicial estoppel requires the *same* "*party* against whom [estoppel] is sought [to have] asserted a legal position that is plainly inconsistent with [its] prior position" (emphasis added) (quoting *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013))). How time was recorded in an unrelated matter says nothing about Plaintiffs' records here.

## V. Plaintiffs Misstate the Treatment of Travel.

Plaintiffs say the Report and Recommendation cut Graves Garrett Greim attorneys' travel time by 50%. ECF 351 at 9. Not so. The Magistrate Judge left untouched Mr. Hurd's and Ms. Smith's travel time and trimmed that of other attorneys by "only 30 percent" because the entries showed work while traveling. ECF 345 at 38–39. Mr. Hurd's three $700-plus hotel nights and three $1,000-plus flights were properly cut by 50% as "extravagant." ECF 345 at 47–48; *see Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987) (expenses not awarded when "extravagant or unnecessary"). Plaintiffs' new explanations that the Monroe airport is small and there was a convention in Washington, ECF 351 at 10, say nothing about whether less expensive options were unavailable and thus such extravagance was "necessary." *Curtis*, 822 F.2d at 553. And again, the travel expenses that different individuals may be seeking in a different lawsuit have no bearing on the reasonableness of Plaintiffs' expenses here. *Id.* at 9–10.

## VI. No Additional Fees on Fees Are Warranted.

Plaintiffs seek $27,160.00 for their fee reply, their response to the State's request for an extension to object to the Report and Recommendation, and their own Objections to the Report and Recommendation. ECF 351 at 10. Time spent litigating fees may be compensable, but any such award should reflect "the degree of success obtained." *Hensley*, 461 U.S. at 436; *see also La. Power & Light Co.*, 50 F.3d at 336 ("Refusing to tax fees and costs" for litigating fee motion when the plaintiff "recovered only part of the costs and fees it requested."). Given Plaintiffs' limited success on the fee motion, the Magistrate Judge correctly declined to award fees for their reply. ECF 345 at 39–40. Similarly, any fees for Plaintiffs' Objections to the Report and Recommendation should be denied as premature, not properly raised in a motion, and resting on a declaration not before the Magistrate Judge.

**CONCLUSION**

For these reasons and those in the State's Objections (ECF 352), the Court should deny Plaintiffs' fee motion in full. Alternatively, it should overrule Plaintiffs' Objections, award no more than the recommended $905,586.75 in fees and $103,749.83 in costs, and apportion any award so that the State bears no more than 30%.

Dated: November 24, 2026

Respectfully submitted,

NANCY LANDRY
Louisiana Secretary of State

*/s/ Jennifer Bollinger*
Jennifer Bollinger
La. Bar Roll No. 32349
Executive Counsel
Secretary of State Nancy Landry
8585 Archives Ave.
Baton Rouge, LA 70809
Telephone: (225) 362-5101
Jennifer.bollinger@sos.la.gov

John C. Walsh
Louisiana Bar Roll No. 2490

ELIZABETH B. MURRILL
Attorney General of Louisiana

MORGAN BRUNGARD (LA 40298)
Deputy Solicitor General

OFFICE OF THE ATTORNEY GENERAL
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70804
(225) 324-9866
BrungardM@ag.louisiana.gov

*/s/ Jason B. Torchinsky*
JASON B. TORCHINSKY*

Baton Rouge, LA 70821
Telephone: (225) 346-1461
Facsimile: (225) 346-5561
*john@scwllp.com*

*Counsel for the Secretary of State*

Holtzman Vogel Baran
Torchinsky & Josefiak PLLC
2300 N Street NW, Suite 643
Washington, DC 20037
(540) 341-8808
jtorchinsky@holtzmanvogel.com
*Admitted pro hac vice*

*Counsel for the State of Louisiana*