IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| PHILLIP CALLAIS, et al., | ) | |
| | ) | Case No. 3:24-cv-00122-DCJ-CES-RRS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | District Judge David C. Joseph |
| | ) | Circuit Judge Carl E. Stewart |
| NANCY LANDRY, IN HER OFFICIAL | ) | District Judge Robert R. Summerhays |
| CAPACITY AS LOUISIANA | ) | |
| SECRETARY OF STATE, et al., | ) | Magistrate Judge Kayla D. McClusky |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO THE STATE'S OBJECTIONS TO THE REPORT AND RECOMMENDATION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

ARGUMENT ........ 1

I. The State Knowingly Misrepresents the Procedural and Factual Record ........ 1

II. Plaintiffs Are the Prevailing Parties ........ 4

III. The State Is Responsible for Fees ........ 11

CONCLUSION ........ 17

CERTIFICATE OF SERVICE ........ 17

## TABLE OF AUTHORITIES

**CASES** **Pages**

*Avoyelles Sportsmen's League v. Marsh*,
786 F.2d 631 (5th Cir. 1986) ....................8

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001) ....................4, 9, 10

*Callais v. Louisiana*,
No. 25A1197 (U.S. Apr. 30, 2026) ....................9, 10

*Farrar v. Hobby*,
506 U.S. 103 (1992) ....................5, 6, 7, 12, 14

*Freedom from Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) ....................11

*Grisham v. City of Fort Worth, Tex.*,
837 F.3d 564 (5th Cir. 2016) ....................13, 14, 16

*Hays v. Louisiana*,
936 F. Supp. 360 (W.D. La. 1996) ....................16

*Hous. Chron. Pub'g Co. v. City of League City, Texas*,
488 F.3d 613 (5th Cir. 2007) .................... 8, 10, 13, 14

*Indep. Fed'n of Flight Attendants v. Zipes*,
491 U.S. 754 (1989) ....................12, 14, 16

*Kentucky v. Graham*,
473 U.S. 159 (1985) ....................11, 16, 17

*Kirchberg v. Feenstra*,
708 F.2d 991 (5th Cir. 1983) ....................8, 10, 13, 14, 16

*Lackey v. Stinnie*,
604 U.S. 192, 207 (2025) ....................5, 6, 7, 8, 9, 10, 15

*Latiolais v. Griffith*,
No. 09–00018, 2015 WL 4253976 (W.D. La. July 13, 2015) ....................12, 16

*Louisiana v. Callais*,
146 S. Ct. 1131 (2026) ....................5, 12

*Louisiana v. Callais*,
No. 24-109 (U.S. Aug. 1, 2025)....................................................................................3

*Maher v. Gagne*,
448 U.S. 122 (1980)..................................................................................5, 10, 12

*Miller v. Johnson*,
515 U.S. 900 (1995)..........................................................................................16

*Moon v. Meadows*,
952 F. Supp. 1141 (E.D. Va. 1997) ..................................................................16

*Nash v. City of Tyler, Tex.*,
736 F. Supp. 733 (E.D. Tex. 1989)....................................................................16

*North Carolina v. Covington*,
585 U.S. 969 (2018).......................................................................................7, 11

*Petteway v. Henry*,
738 F.3d 132 (5th Cir. 2013) ...............................................................................8

*Purcell v. Gonzalez*,
549 U.S. 1 (2006)................................................................................................6

*Riddell v. Nat'l Democratic Party*,
624 F.2d 539 (5th Cir. 1980) .............................................................................16

*Romain v. Walters*,
856 F.3d 402 (5th Cir. 2017) ........................................................................13, 14

*Shaw v. Hunt*,
154 F.3d 161 (4th Cir. 1998) .............................................................................16

*Shelton v. La. State*,
919 F.3d 325 (5th Cir. 2019) .............................................................................13

*UFO Chuting of Haw., Inc. v. Smith*,
508 F.3d 1189 (9th Cir. 2007) ..............................................................................6

*Veasey v. Abbott*,
13 F.4th 362 (5th Cir. 2021) ...........................................................................7, 8

*Walker v. City of Mesquite, Tex.*,
313 F.3d 246 (5th Cir. 2002) .............................................................................15

**STATUTES**

42 U.S.C. § 1988 .......................................................................................... 4, 5, 11, 13, 15, 16

The State of Louisiana's[1] Objections (Doc. 352) should be rejected, and Plaintiffs should be awarded fees as the prevailing parties in their historic win. The State's Objections avoid specific quarrels with the Magistrate Judge's Report and Recommendation (Doc. 345, "R&R"), waiving objections to counsel's rate and hours. Instead, the State makes the truly remarkable claim that the State, not Plaintiffs, prevailed. This misreads controlling law. Worse, it seriously misrepresents the record. In the most egregious example, the State contradicts the parties' filings and emails to claim Plaintiffs asked the State to "lead" their own side during re-argument in October 2025.

This Court should reject the State's attempt to flip the script. The *State* enacted SB8; abandoned its defense in *Robinson v. Landry*, No. 3:22-cv-211 (M.D. La.); intentionally discriminated against its voters; was found liable for racial gerrymandering and enjoined; sought a stay to impose its racial gerrymander in the 2024 election; filed serial briefs ardently defending SB8; only belatedly and partially backed this Court's injunction; refused to repeal SB8 until ordered by the Supreme Court; made arguments against all reason, including that it didn't racially gerrymander, and then that its remedial statute was voluntary and not to comply with this Court's injunction; and now, seeks to dismiss the case and vacate that very injunction. Plaintiffs, by contrast, successfully challenged SB8; pushed for a new, constitutional map in 2024; raised the key issue in the Supreme Court that prompted supplemental briefing; brought distinct winning arguments; and won affirmance. Absent Plaintiffs, the State would still be racially gerrymandered.

## ARGUMENT

### I. The State Knowingly Misrepresents the Procedural and Factual Record.

The State's multiple legal errors alone defeat its Objections. But the Objections' opening paragraph also contains a seriously false misrepresentation of the record that requires a response.

---

[1] Plaintiffs refer to the State and Secretary of State collectively as "the State" unless otherwise noted.

On reargument of this case in October 2025, Plaintiffs did not ask the State to "lead," nor did the State lead, Plaintiffs-Appellees' side of the argument. State Objection (Doc. 352) at 5.

Rather, the State remained an Appellant, filed with Appellants, and originally moved for divided reargument time, seeking 20 of Plaintiffs' 30 allotted minutes—which Plaintiffs-Appellees adamantly opposed. Exhibit A, E. Greim Declaration, Ex. EG-1 at 4. In the State's own words, "Counsel for appellees stated that he would not cede any appellee time to the State." *Id*. It was only after further negotiations, the addition of the United States, and the United States' own motion for divided argument that Plaintiffs consented to give either the State or Secretary of State ("SOS") 10 minutes of their argument time—and then, only if the State and SOS could reach agreement; Plaintiffs did not grant those 10 minutes specifically to the State. Ex. A, Ex. EG-2 at 2. Plaintiffs noted the State's untrustworthiness given that it "seeks affirmance on narrow grounds, and it continues to oppose Appellees and seek reversal on the issues originally briefed." *Id*. Plaintiffs pointed out that the State's "original position impacts how the State argues the supplemental issue" and asked that if the Court permitted the State to argue during their time to also enable them "to argue after the State so Appellees can respond to the State's arguments that would continue to align with the other Appellants." *Id*. at 2-3. Plaintiffs' counsel had previously laid out this public position in private emails to the State's counsel. Ex. A, Ex. EG-3. In short, the first sentence of the State's brief is blatantly false; the State knows it; and there is no excuse for its misrepresentation.

And Plaintiffs' position makes perfect sense given the State's erratic behavior before and since. The Court will recall that after the State decided to enact SB8 in January 2024, it did everything in its power to force SB8 to be used in the 2024 elections, even without any final judgment or continuing jurisdiction in the *Robinson* court. The State forced Plaintiffs to rack up thousands of dollars in fees as their attorneys worked at breakneck speed for a constitutional map

for the 2024 election. And then when Plaintiffs secured their victory, and this Court enjoined the State, the State sought emergency relief in the Supreme Court to force SB8 on Louisiana voters for 2024—notwithstanding the State's later admission that it was unconstitutional. State Supp. Br. 1, *Louisiana v. Callais*, No. 24-109 (U.S. Aug. 27, 2025). The State then dragged Plaintiffs through four rounds of briefing at the Supreme Court. In the first round, the State ran up costs by seeking reversal based on truly novel arguments—such as its argument that Plaintiffs' racial gerrymandering theory (which won the case) was non-justiciable and the lawsuit was a nuisance. State Jur. Stmt. 32-33, *Louisiana v. Callais*, No. 24-109 (U.S. July 30, 2024). The SOS pressed this theory through supplemental briefing. Sec'y of State Supp. Br. 40-43, *Louisiana v. Callais*, No. 24-109 (U.S. Sept. 17, 2025). Had the State had its way, the Supreme Court would have reversed, left this gerrymander in place, and permanently foreclosed any future claims for racial gerrymandering in Louisiana and nationwide. The State fought for the exact opposite of what the Supreme Court eventually held.

Indeed, it was Plaintiffs who raised the issue of the VRA's continuing use to justify racial gerrymandering in their initial merits brief, and it was this argument that sparked the Supreme Court's request for supplemental briefing. Appellees Op. Br. 36-38, *Louisiana v. Callais*, No. 24-109 (U.S. Jan. 21, 2025); Order, *Louisiana v. Callais*, No. 24-109 (U.S. Aug. 1, 2025) (referencing Appellees' Brief). The State neither raised nor advanced this argument until the Court's instruction. And for years, the State never mentioned any doubt as to SB8's constitutionality, notwithstanding its multiple, clear opportunities to do so.[2] It waited until that last round of briefing when it was clear the Supreme Court favored Plaintiffs' position; a reversal of position had become politically

[2] The question before this Court and the Supreme Court was *always* (not just at supplemental briefing) whether SB8 violated the Fourteenth and Fifteenth Amendments so the State *always* had the chance to surrender its defense of SB8. That opportunity was even more explicit on reply to Plaintiffs' initial merits brief.

advantageous for the State; and fees loomed in the State's future. Yet according to the State, it knew all along that SB8 was unconstitutional. State Supp. Br., *supra*, at 1; Doc. 336 at 10-11, 18. That admission, far from proving the State's innocence, means that for years, the State not only imagined but *comprehended* the egregiousness of its actions and then deliberately chose and relentlessly adhered to that route. The State's audacity to play victim of its own racial gerrymandering is truly remarkable.

Even after the State openly admitted the error of its ways, the case or controversy persisted and required Plaintiffs' continuous, zealous advocacy. While the State exclusively demanded the end of Section 2 as the only path to affirmance and denied that precedents supported the injunction, State Supp. Br., *supra*, at 17, Plaintiffs acknowledged Section 2 could have some constitutional applications, advocated for a result that narrowed its reach, alternatively relied on the Court's precedents, and sought remand to this Court to ensure a constitutional map. Appellees Supp. Br., *supra*, at 1, 42-47. The Supreme Court ultimately adopted Plaintiffs' approach, not the State's. *Callais*, 146 S. Ct. at 1153-61. On remand, the parties remain at odds. The State has re-allied with the Intervenors by seeking to dismiss the case. Indeed, it surpasses even the Intervenors in seeking to vacate the very injunction it told the Supreme Court was necessary.

## II. Plaintiffs Are the Prevailing Parties.

This history emphatically demonstrates that Plaintiffs are textbook prevailing parties. In crafting 42 U.S.C. § 1988, Congress believed the phrase "prevailing party" would indisputably capture recipients of a final judgment on the merits after trial, like Plaintiffs, and concerned itself with dispelling confusion for other categories of prevailing parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001) ("The House Report to § 1988 states that [t]he phrase 'prevailing party' is not intended to be *limited* to the victor only

after entry of a final judgment following a full trial on the merits . . . ." (quotation omitted) (emphasis added)); *Maher v. Gagne*, 448 U.S. 122, 129 (1980) (finding § 1988 does not require "full litigation [or] a judicial determination that the plaintiff's rights have been violated" and the "Senate Report expressly" allows fees even with a "consent judgment or without formally obtaining relief" (quotation omitted)). The Supreme Court has repeatedly held that recipients of a "judgment on the merits" are obvious prevailing parties. *See, e.g.*, *Lackey v. Stinnie*, 604 U.S. 192, 207 (2025) (quotation omitted)); *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).[3] Plaintiffs fought for a final judgment on the merits and permanent injunction, which this Court granted and the Supreme Court affirmed. That judicial order—regardless of the State's later repeal of SB8 and enactment of Act 2—entitles Plaintiffs to fees. The State's objections lack legal citations and merit.

1. First, the State—with no real precedent on its side—attempts to rewrite *Lackey*. But as the State's own attorney recently argued in a Motion for Fees in another Louisiana racial gerrymandering case, *Lackey* requires a finding of prevailing party status in this exact situation. There, the State attorney's clients, voters who brought a racial gerrymandering claim, entered a consent order with Desoto Parish and the Desoto Parish Police Jury specifically because of *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), which prompted the parish defendants to settle rather than contest summary judgment. Exhibit B at 11. The State's attorney counted this as a win for prevailing party status, even though there was no final judgment, by likening it to a permanent injunction. *Id*. at 12. He noted that *Lackey* holds that attorney's fees are available "where the plaintiff has received a judgment on the merits"—as Plaintiffs did here—and where an order "permanently enjoined Defendants from using [a challenged] plan in any future elections"—as this

---

[3] *Farrar* nonetheless affirmed the denial of fees where the plaintiff had been unable to prove actual injury, let alone his asserted $17 million in damages from a procedural due process violation, and received only $1 in nominal damages. *Id*. at 114-15. That sort of pyrrhic victory is a far cry from Plaintiffs' historic win here overturning SB8.

Court's injunction did here. *Id*. at 13, 15. In fact, he repeatedly stated that a permanent injunction is enough for fees per *Lackey*. *Id*. at 15-16, 18-19. As he eloquently put it:

> The permanent nature of this relief distinguishes it from preliminary or temporary orders. The injunction is not contingent on future proceedings or reversible upon changed circumstances. It is a final, enforceable judicial order that conclusively resolves Plaintiffs' claims for prospective relief. *See Lackey*, 604 U.S. at 203-04. This enduring relief satisfies the requirement that the change in legal relationship be permanent by virtue of a judicial order, not merely temporary or subject to later modification. *Id.* at 207.
>
> Courts have consistently recognized that permanent injunctions materially alter the legal relationship between parties for purposes of prevailing party status. *See Farrar v. Hobby*, 506 U.S. 103 (1992).

*Id*. at 15-16.

Plaintiffs could not agree more. *Lackey* only held fees were unavailable for preliminary injunctions and *reaffirmed* their availability where plaintiffs obtain permanent injunctions, final judgments, and even consent decrees. 604 U.S. at 206-08. The *Lackey* majority even chastised the dissent for committing the State's same blunder—"conflat[ing] preliminary judicial relief . . . with relief that is *permanent* by virtue of a judicial order." *Id*. at 207.[4] This Court should reject the State's latest about-face.

2. The State nonetheless audaciously contends that this Court's injunction, affirmed by the Supreme Court, did not constitute enduring judicial relief. Why? The State points to the stay it obtained against this Court's judgment on narrow *Purcell v. Gonzalez*, 549 U.S. 1 (2006), grounds, so it could continue imposing SB8's racial gerrymander for the 2024 election; the State

---

[4] *UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189 (9th Cir. 2007), the main other case on which the State relies, is non-binding and inapposite. There, the district court entered an injunction in favor of a plaintiff because federal law preempted state law, but it then vacated that judgment and *granted summary judgment in favor of defendants* because the federal law changed during the appeal and the injunction was never in effect. *Id*. at 1191-92. That diverges from this case, where Plaintiffs prevailed at all stages on the merits, Defendants lost on the merits, and the injunction was and remains in effect.

then repealed SB8 in response to numerous orders from this Court and the Supreme Court. Doc. 352 at 6-7. This contention fails for several reasons.

First, the racial gerrymandering injury does not arise merely when a voter must vote under a racially segregated map. Rather, the irreparable, constitutional injury begins the moment voters are sorted based on race. *North Carolina v. Covington*, 585 U.S. 969, 976 (2018) (per curiam). So the permanent injunction, once imposed, provided necessary relief even though the election was months away. *Contra* Doc. 352 at 6 (wrongly asserting that "this injunction never took effect in 2024"). And the injunction's ongoing prohibition on the State's invidious racial sorting had a lasting impact on the most recent election cycle and will continue to do so for future elections. In fact, the State has already conceded on multiple occasions (including by pressing for vacatur) that this Court's injunction remains in effect. *See, e.g.*, Doc. 284 at 2; Doc. 271 at 1-2. That injunction plainly constitutes "enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey*, 604 U.S. at 207. The State's theory would only grant Plaintiffs fees under a bizarre state of affairs: where during an election (1) SB8 was still the State's map, but (2) the permanent injunction barred SB8. In that world, the State would hold elections with *no* map or would use SB8 in contempt of this Court's order. But Plaintiffs did not seek to block congressional elections, so they did not have to win on this straw man claim. Plaintiffs only had to obtain a permanent injunction or final judgment on the merits—which they did. *Lackey*, 604 U.S. at 207; *Farrar*, 506 U.S. at 111.

3. Nor does the repeal of SB8 over two years after the final judgment negate Plaintiffs' success. Again, Plaintiffs were prevailing parties long before then by virtue of the permanent injunction. When the State finally did act, it was too late. *Cf. Veasey v. Abbott*, 13 F.4th 362, 369 (5th Cir. 2021) (holding plaintiffs prevailed even though State "agreed to the order" before the

court implemented it); *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631, 637 (5th Cir. 1986) ("[F]ederal defendants should not be able to insulate the government from all attorney fees liability simply by yielding to the plaintiff's demands after the litigation begins but before it proceeds to final judgment." (citation omitted)). In *Kirchberg v. Feenstra*, 708 F.2d 991 (5th Cir. 1983), the State of Louisiana similarly argued its repeal of a statute after a plaintiff's successful challenge defeated prevailing party status. *Id.* at 997-98. And there the State's argument was more compelling because it started "revising the unconstitutional . . . statutes independent of [the plaintiff's] action" before the appeal was complete, and the "suit had no effect on their eventual repeal." *Id.* at 994, 997. Nonetheless, the Fifth Circuit held the State had to pay plaintiff's fees: "The fact that the Louisiana Legislature has repealed [the] statutes is quite beside the point. Mrs. Feenstra prevailed in the most convincing manner possible; she obtained a judgment from this Court, affirmed by the Supreme Court of the United States, that [the statute] was unconstitutional." *Id.* at 997; *see also id.* at 998, 1000. The Fifth Circuit has held the same is true when a district court permanently enjoins a statute—as this Court did here; plaintiffs still prevail even if the State repeals the challenged law after judgment. *Hous. Chron. Pub'g Co. v. City of League City, Tex.*, 488 F.3d 613, 615-16 (5th Cir. 2007).[5]

---

[5] The State tries and fails to sidestep *Kirchberg* and *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021), to undermine Plaintiffs' prevailing party status. Doc. 352 at 12-13. But whatever *Lackey*'s impact may be on the interim order in *Veasey* and declaratory judgment in *Kirchberg* has no import here because Plaintiffs secured final, permanent injunctive relief—an obvious basis for fees under *Lackey* and other precedents. Second, the Fifth Circuit has not held that any portion of *Veasey* or *Kirchberg* is no longer good law. Third, even if it had, all other parts of *Veasey*, including its reliance on precedents that a plaintiff prevails if it "receiv[es] a final judgment in its favor," 13 F.4th at 358 (quoting *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013)), and the relevant parts of *Kirchberg*, including that a State cannot obviate prevailing party status by repealing a challenged statute (which *Houston Chronicle* reinforced), are viable. *Lackey* did not overturn those critical holdings. The State also tries to distinguish *Veasey*'s finding of prevailing party status on the facts. But the permanent injunction *has* relieved Plaintiffs from SB8's burdens by barring its use in the 2026 election and continuing in effect for subsequent ones.
Moreover, *Houston Chronicle* is applicable and decides this case. *Contra* Doc. 352 at 13. Plaintiffs secured relief they sought under the permanent injunction that has benefited them, continues to benefit them, and remains in effect notwithstanding the State's attempts to vacate that order. *Hous. Chron.*, 488 F.3d at 623-24. Moreover, *Houston Chronicle* never relied on the length of time between the injunction order and the repeal of the statute as a basis for attorneys' fees. *Id.* at 623-24.

And the State's repeal was far from voluntary. It only started turning the legislative gears after *four* separate orders from this Court and the Supreme Court. First, this Court, after a trial on the merits, issued a final judgment that permanently enjoined the State from using SB8's map for any election. Second, the Supreme Court affirmed this Court's injunction and remanded to this Court for further proceedings. Third, this Court issued an order that required the State to draw a constitutionally compliant map and file a brief explaining how it would do so as part of this Court's remedial proceedings. Doc. 261. And finally, the Supreme Court expedited the mandate to this Court in response to Plaintiffs' motion, on which the State took no position, given the necessity of a new map in advance of the pending 2026 election. The State only acted two years after this Court's clear, "judicially sanctioned change in the legal relationship of the parties" and "judgment on the merits" and after further judicial involvement. *Buckhannon Bd.*, 532 U.S. at 605 (citation omitted); *see also Lackey*, 604 U.S. at 207. The State in no way repealed SB8 of its own free will. *Cf.* Ex. B at 17 (State attorney arguing plaintiffs are entitled to fees where judicial relief is necessary). The State was dragged to that inevitable conclusion kicking and screaming.

Even if the Louisiana Governor sought to follow this Court's injunction *after* the Supreme Court issued its opinion affirming it (and not a moment before), that is no credit to the State. *Contra* Doc. 352 at 7. On the State's own admission, the Governor followed the order of the Supreme Court and acted in belief that the Supreme Court's opinion reinstated this Court's permanent injunction, which required such a response. Louisiana's Response to Application for Issuance of Opinion and Judgment Forthwith 2-3, *Callais v. Louisiana*, No. 25A1197 (U.S. Apr. 30, 2026); Letter of State, *Callais v. Louisiana*, No. 25A1197 (U.S. Apr. 30, 2026).

Nor did this Court give the State "the *voluntary* choice to enact a constitutionally compliant map." *Contra* Doc. 352 at 7 (emphasis added) (quotation omitted). A constitutional map was not

optional. All these aforementioned orders from this Court and the Supreme Court demanded it. The State even admitted in its brief entitled, "THE STATE'S BRIEF EXPLAINING HOW IT IS COMPLYING WITH THE SUPREME COURT'S OPINION AND THIS COURT'S INJUNCTION," that its legislative efforts were specifically to "comply[] with *Callais*, 2026 WL 1153054, and this Court's Injunction." Doc. 271 at 1-2, 4. And the State promised to submit and did submit its map to this Court as evidence that it had complied therewith. *Id*. at 4; Doc. 298.

For similar reasons, the State cannot invoke the catalyst theory. *Contra* Doc. 352 at 8 (quotation omitted). That theory only bars fees when litigation, without more, prompts "a voluntary change in the defendant's conduct." *Buckhannon Bd.*, 532 U.S. at 601, 607. It does not apply where, as here, Plaintiffs have "received a judgment on the merits." *Id*. at 605. The State's own attorney has recently argued as much. Ex. B at 12, 16-17. If, as he claimed, a consent order—by which a defendant who does "not admit liability" voluntarily agrees to an injunction that forbids it from using a map in any future elections without any trial or final judgment from the court—is not enough to invoke the catalyst theory, then surely this situation does not qualify. *Id*. at 12, 16; *see also Lackey*, 604 U.S. at 207; *Buckhannon Bd.*, 532 U.S. at 604; *Maher*, 448 U.S. at 129.

4. The State further errs by claiming "the only conceivable basis" for Plaintiffs' prevailing party status is Act 2. Doc. 352 at 3. But Plaintiffs do not, nor need they, rely on Act 2. Their permanent injunction alone was plainly "a judicial order," bore a "judicial *imprimatur*," was "judicially sanctioned," and entitles them to fees. *Lackey*, 604 U.S. at 203-04, 207 (quotation omitted); *see also Buckhannon Bd.*, 532 U.S. at 605. For fee purposes, the State's replacement of SB8 with Act 2 is "beside the point." *Kirchberg*, 708 F.2d at 997.

5. Finally, the State's arguments about mootness and vacatur are unfounded. Even if they had merit (they do not, *see Hous. Chron.*, 488 F.3d at 615; Doc. 333 at 22-25), per the *very*

*precedent on which the State relies* (Doc. 336 at 14; Doc. 352 at 5-6 n.3), mootness and vacatur are irrelevant to and "wholly independent" of Plaintiffs' prevailing party status. *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824, 828, 835-36 (5th Cir. 2023) (quotation omitted).[6]

Surprisingly, Louisiana says the quiet part out loud: "There is no serious claim that Louisiana sought to 'strategically' moot this suit to avoid fees and costs . . . ." Doc. 352 at 9. At this point, it's hard to take even that contention seriously. The Court will recall that the State fought doggedly to transfer all other congressional election cases to this one in May 2026 based on this Court's continuing jurisdiction to enforce its injunction and oversee a remedy. Reversing course, the State is now working just as doggedly to vacate this Court's injunction, even though at oral argument it could cite no equitable hardship, detriment to the public interest, or even a mere interest in doing so. Its briefing never filled that gap. And now, the State continues to contest Plaintiffs' obvious prevailing party status, even after its own attorney claims to have prevailed in a similar case on much weaker grounds. The Court should reject the State's gamesmanship and award Plaintiffs the fees and costs due to them.

### III. The State Is Responsible for Fees.

The State's fallback position, assuming Plaintiffs did prevail, is that the Intervenors, rather than the State, must pay fees. Doc. 352 at 14. That is wrong, as even the State's scant citations confirm. Under § 1988, "liability on the merits and responsibility for fees go hand in hand." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[T]he party legally responsible for relief on the merits . . . is the party who must pay the costs of the litigation [and] bear fee liability under § 1988."

[6] Furthermore, *Freedom from Religion Foundation* does not support finding mootness or vacatur because Plaintiffs' "asserted injury" is not "tied to the existence of [an administrative] Rule" or proclamation, 58 F.4th at 832, but to the Legislature's racial gerrymandering, *North Carolina v. Covington*, 585 U.S. 969, 975-76 (2018). Doc. 333 at 18. And there, unlike here, the injunction "pose[d] serious federalism concerns" because the injunction required the State to include the plaintiff in an already-repealed state program to display private exhibits in the Capitol, forcing the State to maintain the program. *Freedom from Religion Found.*, 58 F.4th at 830-31, 837 (citation omitted). Here, by contrast, the injunction *forbids* the State from enforcing SB8—it does not *compel* the State to enforce it.

*Id.* at 164 (citation and footnote omitted); *see also Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 762 (1989). In other words, where a plaintiff obtains "an enforceable judgment against the defendant," that defendant must pay. *Latiolais v. Griffith*, No. 09–00018, 2015 WL 4253976, at *9 (W.D. La. July 13, 2015) (citing *Maher*, 448 U.S. at 129; *Farrar*, 506 U.S. at 109).

This Court (and the Supreme Court) held that *the State* (not Intervenors) violated Plaintiffs' constitutional rights in enacting and enforcing SB8 and permanently enjoined *the State* (not Intervenors) from perpetuating SB8's racial gerrymander. *Louisiana v. Callais*, 146 S. Ct. 1131, 1143 (2026) (holding "the State's use of race-based districting" "was an unconstitutional race gerrymander"); *id*. at 1150 ("Louisiana decided to draw its own map. After a deliberative process, Louisiana enacted the map at issue in this suit: SB8."); Doc. 198 at 44 (holding "the State first made the decision to create a majority-Black district" and "[t]he predominant role of race in the State's decisions" was evident); *id*. at 45-52 (noting *the State* had the burden to satisfy strict scrutiny and failed to meet it); *id*. at 2 ("[T]he State is enjoined from using SB8 in any future elections."); *id*. at 59 ("The State of Louisiana is prohibited from using SB8's map of congressional districts for any election."). As the State admitted in its first sentence of its supplemental brief: "Louisiana's intentional creation of a second majority-minority district in S.B. 8—at the behest of a federal district judge and a Fifth Circuit panel—violates the Constitution as properly understood." State Supp. Br., *supra*, at 1. And as this Court held, the State was not a nominal defendant—it was SB8's principal defender. Doc. 184 at 7-8 (holding the Robinsons' role was "limited" to certain matters "to supplement the State's defense"); *id*. at 8 ("But the map of the plaintiffs' challenge is not the Robinson intervenors' map. It's the State's map, duly enacted into law by the Legislature and signed by the Governor through the democratic process. It's primarily the State's duty to defend the map."); Doc. 79 at 6 ("To be clear – SB8 is not the Congressional

districting map of the proposed *Robinson* and *Galmon* intervenors. It is the Congressional districting map of the State of Louisiana – passed by both Houses of the Louisiana Legislature and signed into law by the Governor."); Doc. 114 at 2 (limiting Robinsons' role to presenting evidence and argument on specific issues). The State was no innocent bystander, and it certainly did not prevail. It was the culprit behind SB8's egregious racial gerrymander, which it vociferously defended and which this Court and the Supreme Court condemned.

The State, perhaps in recognition of the weakness of its claim, skips right to special circumstances as a basis to redirect fees. Doc. 352 at 14-15. But it has not met this nearly impossible burden. "Because Congress believed that the incentive of attorney's fees was critical to the enforcement of the civil rights laws, section 1988 requires [a defendant to make] *an extremely strong showing of special circumstances* to justify a denial of fees" to a prevailing plaintiff. *Hous. Chron.*, 488 F.3d at 623 (quoting *Kirchberg*, 708 F.2d at 998). "[T]he discretion to deny § 1988 fees is extremely narrow," and "[a] district court abuses this discretion if it applies an erroneous interpretation of special circumstances to justify denial of fees to an otherwise prevailing party." *Shelton v. La. State*, 919 F.3d 325, 328 (5th Cir. 2019) (quotation omitted). "[I]n [the] absence of special circumstances a district court not merely may but *must* award fees to the prevailing plaintiff." *Romain v. Walters*, 856 F.3d 402, 408 (5th Cir. 2017) (quotation omitted). The Fifth Circuit has "recognized the rarity of such circumstances" and only identified two[7] in addition to the Supreme Court's one narrow exception for nominal damages. *Grisham v. City of Fort Worth, Tex.*, 837 F.3d 564, 568-69 (5th Cir. 2016); *see also Kirchberg*, 708 F.2d at 998;

[7] The only Fifth Circuit special circumstance are "(1) situations in which the plaintiff filed under section 1983 to recover what was essentially a tort claim for private monetary damages, which did not require injunctive relief or confer significant civil rights to the public and (2) cases in which even though the plaintiffs received the benefits desired from their litigation, their efforts did not contribute to achieving those results." *Grisham*, 837 F.3d at 568-69 (quotation omitted).

*Romain*, 856 F.3d at 407; *Farrar*, 506 U.S. at 104. The State does not argue, nor could it, that any of these exceptions apply here. The Fifth Circuit has otherwise "rejected a host of other asserted special circumstances." *Grisham*, 837 F.3d at 569 (quotation omitted).

The State nonetheless contends that new uncharted special circumstances exist and justify an award against Intervenors because "this lawsuit—and this fees issue—would not exist but for the *Robinson* Intervenors and the *Galmon* Intervenors" and this case became "a relitigation of the Voting Rights Act question in *Robinson*." Doc. 352 at 14-15. This is wrong for multiple reasons.

First, special circumstances are a basis to *deny*, not *redirect* fees. *Hous. Chron.*, 488 F.3d at 623. Regardless, the first alleged special circumstance is a non-starter. As this Court (and the Supreme Court) held, as the State admitted, and as Plaintiffs just relayed, the State Defendants are indisputably the ones liable on the merits so, per *Zipes*, they are liable for fees, regardless of the Intervenors' role. The State tries (and fails) to distinguish *Zipes* on the basis that Intervenors are not "blameless." Doc. 352 at 17. But *Zipes* used the term "blameless" to describe those without *legal liability*—not those without any influence. 491 U.S. at 761, 763. And it held that only those with legal liability carry fee liability. *Id*. at 762-63. Here, the only liable parties, and therefore the ones left holding the fees are the State Defendants.

The second alleged special circumstance is even more egregiously wrong. The mere fact that the Supreme Court addressed whether *Robinson* could provide a strong basis in evidence for purposes of Plaintiffs' racial gerrymandering claim does not obviate the State's liability for several reasons. First, the State refused to present this position at trial. Instead, it argued that its racial gerrymander was based on politics, so that race didn't predominate and *Robinson* didn't need to be questioned. But if this Court did apply strict scrutiny, the State argued, *Robinson* was the strongest possible basis in evidence for its racial gerrymander. Plaintiffs had budgeted trial time

for the State or their Intervenor allies to put on the *Robinson* evidence, and had marshalled rebuttal. But instead, the State rested on the face of the *Robinson* decision alone, and complained that its analysis could not be revisited in this case. Second, and relatedly, the State then proceeded to lose on this issue. While the Intervenors cited the Voting Rights Act ("VRA") itself as a compelling interest to satisfy strict scrutiny, the State raised the *Robinson* opinion as its compelling interest (and later argued that the VRA never could be). The Supreme Court emphatically rejected the State's position twice over, *upholding* the VRA as a compelling interest in some circumstances, but also holding that the *Robinson* decision alone was not legitimate basis (let alone a strong basis in evidence) for racial map-drawing. It's hard to see where the State can claim victory here. Third, the Intervenors had no real win in *Robinson* for the Supreme Court to overturn or even relitigate. *Robinson* was, at best, a vacated preliminary injunction that had yet to proceed to a trial on the merits.[8] There was nothing for the Supreme Court to reverse there because *Robinson* was already a dead letter. Fourth, the State really seeks a "bad faith" special circumstance. On its own admissions, rather than proceed to a trial on the merits and an appealable final judgment, it conformed with *Robinson*'s non-binding, vacated, and legally flawed holding by intentionally creating majority-minority districts that it knew all along were unconstitutional. The State, not the Intervenors, was fully responsible for SB8. That is no special circumstance or credit to the State. If the Fifth Circuit has previously heard and rejected a "good faith" exception to § 1988's clear command, then surely a *bad faith* exception is off the table. *Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002)[9] (collecting cases); *Kirchberg*, 708 F.2d at 999 & n.7; *Grisham*, 837

---

[8] Ironically, the State argues that Intervenors "effectively prevailed" in *Robinson* based on this vacated preliminary injunction notwithstanding *Lackey*, Doc. 352 at 15, while it vociferously contends that Plaintiffs did not prevail here.

[9] The State's attempt to distinguish *Walker* is unconvincing. Doc. 352 at 17-18. Here, like there, the State laid down its arms in *Robinson* and "acquiesced to a remedy that infringed upon [Plaintiffs'] rights." *Walker*, 313 F.3d at 251 (granting award of fees partly because "[g]iven the DHA's ongoing involvement in this litigation, it seems particularly inappropriate to deny the Homeowners attorney's fees because the DHA acquiesced to a remedy that infringed upon the Homeowners' rights"). In fact, the basis for a special circumstance in *Walker* was *stronger* (and still ultimately

F.3d at 569; *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 545 (5th Cir. 1980). Fifth, the suggestion of a special circumstance here ignores many earlier lawsuits where Southern states faced similar binds. *See, e.g.*, *Shaw v. Hunt*, 517 U.S. 899 (1996); *Miller v. Johnson*, 515 U.S. 900 (1995); *Hays v. Louisiana*, 936 F. Supp. 360 (W.D. La. 1996); *Moon v. Meadows*, 952 F. Supp. 1141 (E.D. Va. 1997).[10] The only things remarkable about this case are the State's admitted unconstitutional actions and constant, unconvincing attempts to recast those actions, along the way.

The State also seeks to hold Intervenors partially responsible for the fees at the outset. The Fifth Circuit has rejected this exact argument. *Walker*, 313 F.3d at 251 n.2. Plaintiffs take no position on whether the State can force the Intervenors to indemnify it for part of Plaintiffs' fees. But the State must pay Plaintiffs first. *Kentucky*, 473 U.S. at 165; *Zipes*, 491 U.S. at 762; *Latiolais*, 2015 WL 4253976, at *9; *Nash v. City of Tyler, Tex*., 736 F. Supp. 733, 734 (E.D. Tex. 1989). It was found liable for racial gerrymandering, it could take and voluntarily did take unconstitutional actions to segregate Plaintiffs, and it was permanently enjoined. The State is not blameless, and it certainly did not prevail. It must pay fees. *Kentucky*, 473 U.S. at 165.

---

rejected) than it is here. For one, the state actor acted in good faith, unlike the State's acknowledged unconstitutional conduct. Second, there, unlike here, the state actor abided by a final, enforceable remedial order, and that remedial order itself was the subject of the lawsuit. Here, Plaintiffs successfully challenged the State's independent unconstitutional action, which had no basis in an enforceable order, and they did not challenge the vacated *Robinson* preliminary injunction.

[10] In those cases, the DOJ required an additional majority-minority district, and each State abandoned its map to accede to the DOJ's pre-clearance demands. The states believed they were complying with federal law. Nonetheless, each court held that the federal districting mandate did not absolve the states of liability for racial gerrymandering. As a result, plaintiffs recovered fees. *Shaw v. Hunt*, 154 F.3d 161, 164-65 (4th Cir. 1998) (noting State paid fees to plaintiffs and rejecting "special circumstances" justified denying fees to plaintiffs-intervenors); *Miller*, No. 1:94-cv-00008-DHB-JLE (S.D. Ga. Sept. 12, 1995) (ECF 305) (noting settlement of interim award of fees); *id*. (July 31, 1997) (ECF 434) (settling final award of fees); *id*. (Sept. 11, 1997) (ECF 436) (same); *Hays*, No. 5:92-cv-01522-DEW-RSP (W.D. La. Jan. 5, 1996) (ECF 288) (ordering "that, as prevailing parties in all phases of this case to date, the Plaintiffs are entitled to recover all reasonable costs, attorneys' fees and expenses, including reasonable expert witness fees, pursuant to 42 USC 1988"); *Moon*, 952 F. Supp. at 1151 ("Plaintiffs are entitled to reasonable counsel fees and all taxable costs."). This is far from a "special circumstance." It's *Shaw* all over again.

## CONCLUSION

In addition to the fees and costs awarded in the R&R, the Court should award Plaintiffs' attorneys fees and costs as set forth in their Objections to the R&R and as incurred in filing this Response to the State's Objections, for a total of $1,759,353.60. Ex. A at ¶ 5, Ex. EG-4.

Dated this 24th day of November, 2026

Respectfully submitted,

PAUL LOY HURD, APLC
*/s/ Paul Loy Hurd*
Paul Loy Hurd
Louisiana Bar No. 13909
1896 Hudson Circle, Suite 5
Monroe, Louisiana 71201
Tel.: (318) 323-3838
paul@paulhurdlawoffice.com
*Attorney for Plaintiffs*

GRAVES GARRETT GREIM LLC
*/s/ Edward D. Greim*
Edward D. Greim,* Mo. Bar No. 54034
Matthew Mueller,* Mo. Bar No. 70263
Katherine E. Mitra,* Mo. Bar No. 74671
Sarah R. Pineau,* Mo. Bar No. 74483
**Admitted Pro Hac Vice*
1100 Main Street, Suite 2700
Kansas City, Missouri 64105
Tel.: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
mmueller@gravesgarrett.com
kmitra@gravesgarrett.com
spineau@gravesgarrett.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that, on this 24th day of November, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which gives notice of filing to all counsel of record.

*/s/ Edward D. Greim*
Edward D. Greim
*Attorney for Plaintiffs*